**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF MISSISSIPPI**
**NORTHERN DIVISION**

**PHI THETA KAPPA HONOR SOCIETY,**

*Plaintiff,*

*v.*

CAUSE NO. 3:22-CV-208-CWR-FKB

**HONORSOCIETY.ORG, INC., et al.,**

*Defendants.*

**ORDER**

Before the Court are the Defendants' *Motion to Dismiss*, the Plaintiff's response in opposition, and the Defendants' reply. *See* Docket Nos. 22, 38, and 47. Upon review, the motion will be granted in part and denied in part.

## I. Factual and Procedural History

Plaintiff Phi Theta Kappa Honor Society ("PTK Honor Society") is a non-profit corporation organized under the laws of the State of Mississippi with its principal place of business in Jackson, Mississippi. Docket No. 20 at 2. Founded in 1918, PTK Honor Society is an international academic honor society that provides recognition for academic excellence and opportunities for its members to develop professional and leadership skills. *Id.* at 4. It claims more than 3.8 million total members and approximately 250,000 active members on nearly 1,300 community college campuses in 11 nations. *Id.*

Defendant HonorSociety.Org, Inc. ("Honor Society"), is a corporation incorporated under the laws of Nevada with its principal place of business in Las Vegas, Nevada. *Id*. at 2. Founded by President, Treasurer, and Director Michael Moradian in 2014, Honor Society seeks to achieve three goals: 1) provide scholarships to high achievers to pursue their dreams, 2) create values-driven educational content, and 3) preserve the distinguished history of honor societies.[1]

In this suit, PTK Honor Society alleges that Honor Society and Moradian (together, "defendants") knowingly and intentionally used a piece of PTK Honor Society's intellectual property called the Edge Mark and PTK Honor Society's trade dress without authorization. Docket No. 20 at 24-25. That usage, PTK Honor Society asserts, has "caused and will continue to cause serious and irreparable injury to the reputation and goodwill of PTK Honor Society." *Id*. PTK Honor Society commenced this suit bringing claims against defendants for false designation of origin, federal trade dress infringement and false advertising, common law trade dress infringement, and unfair competition in violation of Mississippi law. Docket No. 20.

The present motion to dismiss followed. Docket No. 22.

Defendants assert two reasons why this action should be dismissed. First, this Court lacks personal jurisdiction over Moradian. *Id*. And second, Plaintiff has failed to state claims against Moradian and Honor Society. *Id*.

The Court addresses each argument in turn.

---

[1] *See* Honor Society, https://www.honorsociety.org/ (last visited Mar. 10, 2023).

## II. Legal Standard

### A. Rule 12(b)(2) Standard

"Where a defendant challenges personal jurisdiction, the party seeking to invoke the power of the court bears the burden of proving that jurisdiction exists." *Luv N' care, Ltd. v. Insta-Mix, Inc.*, 438 F.3d 465, 469 (5th Cir. 2006). "When a court rules on a motion to dismiss for lack of personal jurisdiction without holding an evidentiary hearing, as in the present case, however, the nonmoving party need only make a prima facie showing of personal jurisdiction." *Guidry v. U.S. Tobacco, Co., Inc.*, 188 F.3d 619, 625 (5th Cir. 1999). To determine whether the plaintiff has met this burden, the court must accept as true the uncontroverted allegations in the plaintiffs' complaint and must resolve all factual conflicts in the plaintiff's favor. *Latshaw v. Johnston*, 167 F.3d 208, 211 (5th Cir. 1999).

### B. Rule 12(b)(6) Standard

Federal Rule of Civil Procedure 12(b)(6) permits a court to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed R. Civ. P. 12(b)(6). Upon considering a Rule 12(b)(6) motion, the Court accepts the plaintiff's factual allegations as true and makes reasonable inferences in the plaintiff's favor. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The complaint must "contain a short and plain statement of the claim showing that the pleader is entitled to relief." *Id*. Though the plaintiff need not "plead detailed factual allegations," a successful complaint requires "more than an unadorned, the defendant unlawfully-harmed-me accusation." *Id*. A claim must be "plausible on its face," enabling the court to draw reasonable inferences that the defendant is liable for the misconduct alleged." *Id*.

## III. Discussion

### A. Personal Jurisdiction over Michael Moradian

#### 1. Law

To exercise personal jurisdiction over a nonresident defendant under Federal Rule of Civil Procedure 12(b)(2), a federal court sitting in diversity must satisfy two requirements. First, the forum state's long-arm statute must confer personal jurisdiction. *Mink v. AAAA Dev. LLC*, 190 F.3d 333, 335 (5th Cir. 1999). And second, the exercise of such jurisdiction must comport with the Due Process Clause of the Fourteenth Amendment. *Id.*

Mississippi's long-arm statute confers personal jurisdiction over "[a]ny nonresident person . . . who shall commit a tort in whole or in part in this state against a resident or nonresident of this state." Miss. Code Ann. § 13-3-57. Under this statute, "a tort is not complete until injury occurs." *Thompson v. Chrysler Motors Corp.*, 755 F.2d 1162, 1168 (5th Cir. 1985) (quoting *Smith v. Temco, Inc.*, 252 So. 2d 212, 216 (Miss. 1971)). If the injury occurs in Mississippi, then the "tort is committed, at least in part, in the state, and the requirements of the long-arm statute are satisfied." *Id.* "[T]he tortfeasor's presence in Mississippi is not required; causing an injury that occurs in the state is sufficient." *Id.* (quoting *Brown v. Flowers Indus., Inc.*, 668 F.2d 328, 333 (5th Cir. 1982)).

The Due Process Clause of the Fourteenth Amendment limits the power of a State to exert personal jurisdiction over a nonresident defendant. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 413-14 (1984). Specifically, the Clause permits the exercise of personal jurisdiction over a nonresident defendant only when: 1) that

defendant has purposefully availed himself of the benefits and protections of the forum state by establishing minimum contacts with the forum state; and 2) the exercise of jurisdiction over that defendant does not offend traditional notions of fair play and justice. *Mink*, 190 F.3d at 336 (quoting *Int'l Shoe Co. v. State of Washington*, 326 U.S. 310, 316 (1945)).

The "minimum contacts" requirement may be established through contacts sufficient to assert either general or specific jurisdiction. *See Wilson v. Belin*, 20 F.3d 644, 647 & n.1 (5th Cir. 1994). Specific jurisdiction over a nonresident defendant exists "where an alleged injury arises out of or relates to actions by the defendant himself that are purposefully directed toward forum residents, and where jurisdiction would not otherwise offend 'fair play and substantial justice.'" *Burger King Corp v. Rudzewicz*, 471 U.S. 462, 473 (1985). General jurisdiction, however, may be found only when the defendant's contacts with the forum state are substantial, continuous, and systematic. *Hall*, 466 U.S. 408 at 414-19. The "continuous and systematic contacts test is a difficult one to meet, requiring extensive contacts between a defendant and a forum." *Submersible Sys., Inc. v. Perforadora Cent., S.A.*, 249 F.3d 413, 419 (5th Cir. 2001).

When a defendant disputes the factual basis for personal jurisdiction, the district court may consider the record before it, including "affidavits, interrogatories, depositions, oral testimony, or any combination of the recognized methods of discovery." *Quick Technologies, Inc. v. Sage Group PLC*, 313 F.3d 338, 344 (5th Cir. 2002).

### 2. Arguments

Moradian asserts that he "has had no purposeful contacts with Mississippi in his personal capacity" and that the "exercise of personal jurisdiction over him by this Court would not comport with notions of fair play and substantial justice." Docket No. 22 at 2. Specifically, Moradian argues that: 1) he is not a "resident of, owns no property in, and never even set foot inside" of Mississippi; 2) did not "personally engage in any conduct" having any effect upon Mississippi; and 3) the alleged misconduct described in the Amended Complaint was not aimed at or did not occur in Mississippi. Docket No. 23 at 11. Moradian further contends that Plaintiff erroneously relies on his role as an officer of the company to impute Honor Society's alleged contacts with Mississippi to him. *Id.* at 10.

Plaintiff disagrees. Because the motion to dismiss stage requires that uncontroverted allegations be taken as true and resolved in Plaintiff's favor, PTK Honor Society contends that the Amended Complaint makes the requisite prima facie case to establish personal jurisdiction. Docket No. 39 at 4. Those jurisdictional allegations are as follows:

> 8. Michael Moradian is the President, Treasurer, and Director of Honor Society. *Id.*
>
> 9. On the "Society Leadership" page of Honor Society's website, Honor Society lists "Our Leaders"; Moradian is called the "Executive Director,"; and he is the only person listed. *Id.*
>
> 10. On information and belief, Moradian developed and/or controlled the creation, development, and implementation of the infringing materials, marks, and commercial impression. *Id.*

> 11. Moradian directs and/or controls Honor Society, its website, its image, and its programming including but not limited to its actions in Mississippi. *Id*.
>
> 12. On information and belief, Moradian controls, ratifies, participates in, and/or is the moving force behind the following complained of infringing conduct. *Id*.

Docket No. 20 at 2-3. Second, PTK Honor Society argues that Moradian's "intentional direction of Honor Society's infringement does not entitle him to protection under the fiduciary shield doctrine." *Id*. at 5. Third, PTK Honor Society asserts that this Court's exercise of personal jurisdiction over Moradian comports with due process. *Id*. at 16.

**3. The Due Process Clause is Not Satisfied**

Even assuming that Mississippi's long arm statute has been satisfied in this case, the Court finds that Plaintiff fails to meet its burden under the minimum contacts test.

Before beginning its analysis, the Court summarizes Plaintiff's allegations against Moradian. Plaintiff alleges that Moradian is the President, Treasurer, and Director of Honor Society – the only person listed on Honor Society's website, in fact. *Id*. at 4. It also alleges that Moradian is personally liable[2] for "developing and/or controlling the creation, development, and implementation of infringing materials, marks, and commercial impression" and that he "controls, ratifies, participates in, and/or is the moving force" behind the infringing conduct.[3] *Id*. at 3. Finally, Plaintiff alleges that

---

[2] The Magistrate Judge found that Plaintiff raised factual allegations that suggest with reasonable particularity the possible existence of Moradian's requisite contacts with Mississippi. Accordingly, the court granted Plaintiff's request for leave to conduct jurisdictional discovery against Moradian.

[3] Plaintiff avers that documents produced during limited jurisdictional discovery gave rise to Moradian's personal involvement in several alleged tortious activities. Those activities include Moradian's role in leading Honor Society, control over Honor Society's branding, sale of infringing merchandise on

Moradian's tortious activities were directed at and took place in Mississippi, with an injurious effect felt by Mississippi residents. *Id.* at 4. In support, Plaintiff says that Honor Society has two chapters in Mississippi and has awarded four scholarships to students in Mississippi. *Id*.

These claims do not to establish that Moradian had minimum contacts with Mississippi sufficient to include him in this litigation.

First, the Court notes that Plaintiff's lawsuit only concerns causes of action related to the Edge Mark, trade dress infringement, and unfair competition under Mississippi common law. Those claims center on Honor Society's marketing materials, website, social media, and regalia. Plaintiff's allegations related to Honor Society's presence in Mississippi and its award of four scholarships to students in Mississippi are unrelated to the subject matter of this lawsuit. Those allegations cannot be imputed to Moradian. *Sangha v. Vavig8 ShipManagement Private Limited*, 882 F.3d 96, 101 (5th Cir. 2018) ("Specific jurisdiction is confined to adjudication of issues deriving from, or connected with, the very controversy that establishes jurisdiction.").

Second, Plaintiff fails to distinguish between actions made by Moradian in his personal capacity and actions made by Honor Society in its corporate capacity. Neither the Amended Complaint nor jurisdictional discovery point to any fact that Moradian operated either Mississippi chapter or made unlawful advertisements in his personal capacity. Furthermore, neither document points to any specific fact (dates, meetings,

---

Honor Society's online store, and involvement in the marketing of Honor Society to potential new chapters. Docket No. 23 at 7-15.

property, accounts, notes, specific correspondences, etc.) that would suggest Moradian purposefully availed himself of the laws of Mississippi. Rather, Plaintiff attempts to mask Moradian's role as a corporate officer, and the actions he allegedly took in that capacity, as personal actions. That is not enough.

Plaintiff presses "that when a corporate officer directly participates in or authorizes the commission of a tort, even on the behalf of the corporation, he may be held personally liable." *Mozingo v. Correct Mfg. Corp.*, 752 F.2d 168, 173 (5th Cir. 1985) (citations omitted) (quoted in Plaintiff's Brief at 4). Missing from this case, however, are the words "personal jurisdiction."

A different Fifth Circuit case from 1985 provides the applicable rule in situations like ours. It states that "jurisdiction over an individual" can only "be predicated upon jurisdiction over a corporation . . . when the corporation is the alter ego of the individual. In these cases, courts attribute a corporation's contacts with the forum state to an individual defendant for jurisdictional purposes." *Stuart v. Spademan*, 772 F.2d 1185, 1197 (5th Cir. 1985) (citations omitted). Under this standard, Honor Society's contacts with Mississippi cannot be imputed to Moradian because Plaintiff has not alleged that Honor Society is Moradian's alter ego.

Because Plaintiff has not met its burden under the minimum contacts test, the Court finds that personal jurisdiction does not exist over Moradian.

**B. Count I: Trademark Infringement: Edge Mark**

Next, the Court turns to whether Plaintiff's claim of infringement of its Edge Mark requires dismissal under Rule 12(b)(6).

To succeed on a trademark infringement claim, a plaintiff must show ownership of a legally protectable mark and then establish infringement of the mark. *TGI Friday's, Inc. v. Great Nw. Rest., Inc.*, 652 F. Supp. 2d 763, 767 (N.D. Tex. 2009) (citing *Am. Rice, Inc. v. Producers Rice Mill, Inc.*, 518 F.3d 321, 329 (5th Cir. 2008)). Under the Lanham Act, infringement exists when a person uses: 1) "any reproduction, counterfeit, copy, or colorable imitation of a mark; 2) without the registrant's consent; 3) in commerce; 4) in connection with the sale, offering for sale, distribution, or advertising of any goods; and 5) where such use is likely to cause confusion, or to cause mistake or to deceive." *Id*.

To determine the likelihood of confusion, a court will generally consider: "1) the strength of the plaintiff's trademark; 2) mark similarity; 3) product similarity; 4) outlet and purchaser identity; 5) advertising media similarity; 6) defendant's intent; 7) actual confusion; and 8) care exercises by potential purchases." *Am. Rice*, 518 F.3d at 226. These factors are "a flexible and non-exhaustive list" which "do not apply mechanically to every case" and serve "only as guides." *Paulsson Geophysical Servs., Inc. v. Sigmar*, 529 F.3d 303, 311 (5th Cir 2008). A finding of "likelihood of confusion" requires "a probability of confusion" rather than a mere possibility. *Xtreme Lashes, LLC v. Xtended Beauty, Inc.*, 576 F.3d 221, 226 (5th Cir. 2009).

Defendants assert that their use of CAREER EDGE is unlikely to cause confusion with PTK Honor Society's trademark PTK EDGE. Docket No. 23 at 13. Evaluating both trademarks as a whole, rather than in isolation, Defendants argue that these marks "create very different commercial impressions due to the distinct environments in which they are used (i.e., differently branded websites)," allowing consumers to "distinguish

between the sources of the services being offered in connection with those marks." *Id*. at 15.

Plaintiff argues that likelihood of confusion is a fact-specific inquiry that is not appropriate for resolution at the motion to dismiss stage. Docket No. 39 at 35. Furthermore, Plaintiff contends that it has alleged sufficient facts to state a plausible claim of consumer confusion. *Id*. at 35. Among other reasons, Plaintiff argues that it has alleged Defendants have "reproduce[ed], display[ed] market[ed], and distribut[ed] works and materials that infringe the Edge Mark" and "taken steps to mimic PTK Honor Society's regalia." *Id*.

The Court agrees with Plaintiff. PTK Honor Society has sufficiently and plausibly alleged that it is the owner of the PTK EDGE trademark and that Defendants' mark creates a likelihood of confusion.

First, Plaintiff has alleged that it has used the PTK Edge "extensively for many years and acquired exclusive common law rights to the designation." Docket No. 20 at 8. Second, Plaintiff posits that PTK Edge is an important benefit associated with membership in PTK Honor Society and distinguishes the program from other honor societies. *Id*. at 10-11. It states that PTK Edge is a "collection of free, online courses available only to PTK Honor Society members covering a broad range of topics including pursing employment opportunities, transferring to a four-year college, professional development, and research skills." *Id*. at 8. Third, Plaintiff contends that Defendants are "reproducing, displaying, marketing, and distributing works and materials that infringe the Edge Mark." *Id*. at 11. Fourth, Plaintiff avers that Defendants have "promoted that

[they have] trademarked 'Career Edge,' and taken steps to mimic PTK Edge." Fifth, Plaintiff asserts that Defendants "are using the Edge Mark with full knowledge of PTK Honor Society's rights, and in bad faith with willful and deliberate intent to trade on PTK Honor Society's substantial recognition, reputation, and goodwill." *Id*. at 20. Lastly, Plaintiff maintains that it has received more than 100 complaints from several individuals. *Id*. at 17. Those complaints include persons who: 1) "received invitations from Honor Society after attempting to join PTK Honor Society; 2) mistakenly joined Honor Society thinking they were joining PTK Honor Society; and 3) elected not to join PTK Honor Society thinking it was Honor Society." *Id*. at 17-18.

Taking the Plaintiff's allegations as true, the Court finds that Plaintiff has sufficiently pled a trademark infringement claim as to the Edge Mark.

### C. Counts II and III: Federal Trade Dress Infringement, False Advertising, and Common Law Trade Dress Infringement

"[T]rade dress refers to the total image and overall appearance of a product and may include features such as the size, shape, color, color combinations, textures, graphics, and even sales techniques that characterize a particular product." *Amazing Spaces, Inc. v. Metro Mini Storage*, 608 F.3d 225, 251 (5th Cir. 2010) (quoting *Pebble Beach Co. v. Tour 18 I Ltd*., 155 F.3d 526, 536 (5th Cir. 1998)). To succeed on a trade dress infringement claim, a plaintiff must prove three elements: 1) that the trade dress is inherently distinctive or has acquired a secondary meaning; 2) that the trade dress is primarily nonfunctional and therefore protectable; and 3) that there is a likelihood that the defendant's trade dress will lead to customer confusion. *Sparrow Barns & Events, LLC v. Ruth Farm Inc.*, Cause No:

4:19-CV-67, 2019 WL 15600442, at *4 (E.D. Tex. April 10, 2019) (citing *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 769 (1992)).

**1. Description of Trade Dress**

The first question is whether Plaintiff has adequately described its trade dress.

Recall that to survive a motion to dismiss, a complaint "'does not need detailed factual allegations,' but must provide the plaintiff's grounds for entitlement to relief – including factual allegations that when assumed to be true 'raise a right to relief above the speculative level.'" *Culliver v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

Defendants argue that Plaintiff has failed to identify the discrete elements of the trade dress that it wishes to protect. Docket No. 23 at 18. By using vague phrases such as "some ways," "include but is not limited to," "frequently," "including but for example," "which frequently," and "as well as other elements," Plaintiff's loose and amorphous descriptions fail to establish that its claimed trade dress is protectible, the argument goes. *Id*. at 19.

In response, Plaintiff contends that at this stage, it need only articulate its trade dress claims with enough specificity to state a plausible claim and provide fair notice. Docket No. 39 at 23. Under that standard, Plaintiff says the Amended Complaint sufficiently details: 1) PTK Honor Society's navy and gold colors; 2) branding featuring a wreath of leaves symbolizing stability and strength; 3) graduation stoles made of gold material featuring PTK Honor Society imagery embroidered in blue at the bottom; and 4) social media posts conveying motivational and inspirational messaging using PTK

Honor Society's colors, logos, and other identifying markers. *Id*. at 24-25. These allegations, it says, are sufficient to survive Defendants' motion to dismiss.

In *Alpha Kappa Alpha v. Converse, Inc.*, the Fifth Circuit held that a plaintiff satisfactorily identified its trade dress by claiming particular color combinations and years. 175 F. App'x 672, 680-81 (5th Cir. 2006). Under that standard, the Court finds that Plaintiff has sufficiently described its trade dress. Plaintiff has identified the elements comprising its trade dress, including but not limited to the consistent use of navy and gold, the frequent feature of a wreath of leaves, and its embroidery location. Plaintiff has also supplemented its descriptions with no fewer than 10 photographs of each product at issue. *See Yeti Coolers, LLC v. Magnum Solace, LLC*, Cause No: 1:16-CV-63-RP, 2017 WL 5515910 at *3 (W.D. Tex. March 30, 2017) (recognizing that a list of discrete elements accompanied with photographs was sufficient to provide notice of the elements of a trade dress violation). Because courts analyze verbal descriptions methodically, and not in a temporal vacuum, the addition of terms such as "frequently," or "including but not limited to" do not necessarily render the alleged trade dress unworkably vague. *Gen. Motors Corp. v. Lanard Toys, Inc.*, 468 F.3d 405, 415-16 (6th Cir. 2006). Plaintiff's list of elements make clear precisely what it is looking to protect.

**2. Inherently Distinctive or Secondary Meaning**

The next question is whether Plaintiff has sufficiently alleged that its trade dress is inherently distinctive or has secondary meaning.

A mark is inherently distinctive "if its intrinsic nature serves to identify a particular source." *Amazing Spaces*, 608 F.3d at 237. Even if it is not inherently distinctive,

a mark has acquired distinctiveness "if it has developed secondary meaning, which occurs when, 'in the minds of the public, the primary significance of a mark is to identify the source of the product rather than the product itself.'" *Nola Spice Designs, L.L.C. v. Haydel Enterprises, Inc.*, 783 F.3d 527, 537 (5th Cir. 2015) (citing *Wal-Mart Stores, Inc. v. Samara Bros.*, 529 U.S. 205, 210-11 (2000)).

In determining whether a mark has developed secondary meaning, courts consider: 1) the length and manner of use of the mark or trade dress; 2) volume of sales; 3) amount and manner of advertising; 4) nature and use of the mark or trade dress in newspapers and magazines; 5) consumer evidence; 6) direct consumer testimony; and 7) the defendant's intent in copying the trade dress. *Viacom Int'l v. IJR Cap. Invs., L.L.C.*, 891 F.3d 178, 190 (5th Cir. 2018). Multiple "factors in combination may show that" a mark has developed secondary meaning "even if each factor alone would not." *Id.*

Here, Defendants contend that Plaintiff's claimed trade dress is not inherently distinctive and has not developed secondary meaning. Specifically, they argue that several of Plaintiff's claimed elements (the colors navy and gold, wreathes featuring leaves, graduation stoles, and website and social media posts featuring motivational messaging) are "generic" and "ordinary." Docket No. 23 at 20-21. Because Plaintiff's claimed elements are "common within the academic and membership services communities," they are incapable of constituting protectable trade dress. *Id.* at 23.

In response, Plaintiff argues that the Amended Complaint lays out the claimed trade dress with sufficient particularity. It emphasizes that "over 100 years of investment

in [it's] trade dress" has allowed it to "develop secondary meaning" or "otherwise promote the inherent look and feel of PTK's well-known brand." Docket No. 39 at 2.

Plaintiff's argument is persuasive. It has alleged "consistent use and recognition of its trade dress" for nearly a century. Docket No. 20 at 24. Since 1924, Plaintiff has remained the "exclusive owner" of its trade dress with respect to junior colleges. *Id*. Over that same period, Plaintiff has built a reputation as a prestigious and widely recognized honor society. *Id*. at 5. Plaintiff further alleges that Defendants are "reproducing, displaying, marketing, and distributing works and materials that infringe on PTK Honor Society's trade dress" and have "taken steps to mimic PTK Honor Society's regalia intending to palm off the goodwill and reputation associate[d] with PTK)." *Id*. at 14. Finally, Plaintiff has alleged that it has received over "100 individual complaints, including instances of actual confusion" *Id*. 17-18. Considering these facts, the Court finds that Plaintiff has sufficiently alleged that its trade dress has acquired secondary meaning.

**3. Recognizable and Consistent Overall Look**

Defendants contend that Plaintiff's social media posts vary significantly from one another, and frequently fail to consistently "utilize the navy blue and gold color scheme claimed by Plaintiff to comprise part of its trade dress." Docket No. 23 at 25. The only "consistent thing about Plaintiff's claimed trade dress," Defendants say, is the display of "Phi Theta Kappa" or "PTK" on its marketing materials, regalia, website, and social media posts." *Id*.

In response, Plaintiff asserts that Defendants' argument is a "subjective one" and does not "pertain to the sufficiency of PTK's Amended Complaint." Docket No. 39 at 30.

It further explains that Defendants have failed to cite any "authority supporting their claim" and that there "is no obligation on PTK to even plead [a] 'consistent look.'" *Id*.

The Court agrees. The Defendants fail to point to any binding authority requiring the same "recognizable and consistent overall look" across all conceivable products (including website and social media posts). Consequently, the Court finds Defendants' argument unpersuasive.

**4. Likelihood of Customer Confusion**

The final issue is whether Plaintiff has sufficiently alleged a likelihood of consumer confusion.

To succeed on a claim of trade dress infringement, a plaintiff must show likelihood of confusion in the minds of potential consumers. *Elvis Presley Enters., Inc. v. Capece*, 141 F.3d 188, 193 (5th Cir. 1998). In assessing whether a likelihood of confusion exists, the Fifth Circuit considers the following non-exhaustive list of factors: 1) the type of trademark allegedly infringed; 2) the similarity between the two marks; 3) the similarity of the products or services; 4) the identity of the retail outlets and purchasers; 5) the identity of the advertising media used; 6) the defendant's intent; and 7) the evidence of actual confusion. *Id*. at 194. Even though "no one factor is dispositive" and a finding of likelihood "does not even require a positive finding on a majority of these 'digits of confusion,'" evidence of actual confusion is "nevertheless the best evidence of a likelihood of confusion." *Id*. at 203; *see also Conan Properties, Inc. v. Conans Pizza, Inc.*, 752 F.2d 145, 150 (5th Cir. 1985).

Defendants assert that the mere fact that Plaintiff's materials all display the names such as "PTK" or "Phi Theta Kappa," while Defendant's materials feature its own name, renders it unlikely that consumers will be confused. Docket No. 23 at 26. In response, Plaintiff contends that as alleged in the Amended Complaint, actual confusion between PTK Honor Society and Honor Society – as opposed to a reasonable likelihood of confusion – has already occurred. Docket No. 39 at 30.

As before, Plaintiff has sufficiently alleged a likelihood of confusion. The Amended Complaint states that PTK Honor Society has "received more than 100 complaints from individuals concerning issues related to Honor Society." Docket No. 20 at 17. Those complaints include persons who: 1) "received invitations from Honor Society after attempting to join PTK Honor Society; 2) mistakenly joined Honor Society thinking they were joining PTK Honor Society; and 3) elected not to join PTK Honor Society thinking it was Honor Society." *Id.* at 17-18. These allegations satisfy the pleading standard under Rule 12(b)(6).

**E. Count IV: Unfair Competition in Violation of Mississippi Common Law**

The hallmark of unfair competition in violation of Mississippi common law on trademark infringement is the likelihood of confusion. *See Richardson v. Thomas*, 257 So. 2d 877, 880 (Miss. 1972). Under Mississippi law for unfair competition, it is sufficient to show that confusion is probable or likely to occur; "it is not necessary to show actual confusion." *Cockrell v. Davis*, 23 So. 2d 256, 261 (Miss. 1945).

Defendants contend that Plaintiff does not specify whether its PTK Edge or trade dress infringement claims form the basis of its unfair competition claim. Regardless,

Defendants maintain that because Plaintiff cannot assert a viable trademark or trade dress infringement claim, the claim for unfair competition must fail as well.

For reasons already mentioned above in detail, Plaintiff has alleged several instances of actual confusion, including over 100 complaints regarding confusion between PTK Honor Society and Honor Society. Docket No. 20 at 17-18. These allegations are sufficient to state a claim at the motion to dismiss stage.

## IV. Conclusion

In sum, the Court finds that: (1) personal jurisdiction does not exist over Michael Moradian, and (2) Plaintiff has sufficiently stated claims upon which relief can be granted. For the foregoing reasons, the *Motion to Dismiss* is granted in part and denied in part. Within 10 days, the parties must contact the chambers of the Magistrate Judge for entry of a scheduling order.

**SO ORDERED**, this the 15th day of March, 2023.

s/ Carlton W. Reeves
UNITED STATES DISTRICT JUDGE