IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

| | |
|---|---|
| PHI THETA KAPPA HONOR SOCIETY,<br><br>    Plaintiff,<br><br>v.<br><br>HONORSOCIETY.ORG, INC.,<br><br>    Defendant. | Civil Action No. 3:22-cv-208-CWR-FKB |
| HONORSOCIETY.ORG, INC.,<br><br>    Counter-Claimant,<br><br>v.<br><br>PHI THETA KAPPA HONOR SOCIETY,<br><br>    Counter-Defendant. | |
| HONORSOCIETY.ORG, INC.,<br><br>    Third-Party Plaintiff,<br><br>v.<br><br>DR. LYNN TINCHER-LADNER,<br><br>    Third-Party Defendant. | |

## **ORDER**

This case is before the Court on the Motion To Quash The Third-Party Subpoena To NAVEX Global, Inc. Or, In The Alternative, For A Protective Order [88], filed by Plaintiff and Counter-Defendant Phi Theta Kappa Honor Society ("PTK"). Defendant, Counter-Claimant, and

1

Third-Party Plaintiff HONORSOCIETY.ORG, INC. ("Honor Society") filed a response [90] and supporting memorandum [91] in opposition, and PTK filed a reply [92]. Having considered the matter, the Court finds that the motion [88] should be granted.

**FACTS**

PTK seeks recovery from Honor Society in this case, asserting claims of trade dress infringement, false designation of origin, false advertising, and unfair competition. Honor Society, in turn, seeks recovery from PTK and its CEO and President, Dr. Lynn Tincher-Ladner ("Tincher-Ladner"), for alleged defamation, tortious interference with business relations, and false or misleading representations of fact.

In discovery, Honor Society served a subpoena *duces tecum* on NAVEX, a non-party company providing services to PTK. Specifically, NAVEX provides a private online platform, EthicsPoint®, and toll-free telephone number through which PTK employees and constituents[1] may report alleged violations of PTK's Code of Ethics.[2] *See* [89-1] at 2-3. Through NAVEX's services, PTK employees and constituents can make these reports privately, confidentially, and, if they so choose, anonymously. *Id*. at 2. NAVEX is contractually bound not to share the reports with anyone, except select PTK administrators. *Id*. at 2-3. The reports are fully accessible by those select PTK administrators and, therefore, also under PTK's ownership, possession, and control. *Id*. at 2-3.

---

[1] The PTK Code of Ethics defines "constituents" as "anyone who volunteers or participates in [PTK] activities. These persons can include, but are not limited to, Members (prospective or active), Alumni Advisors, Regional Coordinators and International Officers." https://www.ptk.org/policies/code-of-ethics/ (last visited December 5, 2023). However, even people not affiliated with PTK may submit a report on the EthicsPoint® platform or via the toll-free telephone number. *See* [89-1] at 2, n. 1.

[2] The PTK Code of Ethics states that PTK "is committed to the highest ethical standards, efficient stewardship of resources, and compliance with all applicable federal, state, and local laws and regulations" and "appl[ies] in all Organizational operations and to all employees and constituents of [PTK], regardless of rank or position." https://www.ptk.org/policies/code-of-ethics/ (last visited December 5, 2023). The PTK Code of Ethics includes a list of things PTK employees and constituents "must endeavor to" do in accordance with PTK's Code of Ethics. *See id*.

The subpoena at issue contains thirteen (13) document requests. Request No. 1 seeks "[a]ll DOCUMENTS, COMMUNICATIONS, and ESI concerning any ETHICS VIOLATIONS."[3] [89-2] at 9. The remaining requests seek "[a]ll DOCUMENTS, COMMUNICATIONS, and ESI concerning" PTK or Tincher-Ladner, or "exchanged between" NAVEX and PTK, Tincher-Ladner, or "any PERSON concerning" PTK or Tincher-Ladner. [89-2] at 9-10. Although some of those (Request Nos. 4, 5, 8, and 11) limit the request to "ETHICS VIOLATIONS," others (Request Nos. 2, 3, 6, 7, 9, 10, 12, and 13) do not. *Id*. All of the requests seek documents for "the period of November 9, 2015 to present." *Id*.

PTK asks this Court to quash the subpoena. It contends, *inter alia*, that the subpoena does not seek relevant information and is overbroad. PTK further asserts that the EthicsPoint® reports were made with an "expectation of privacy" and that the reports and identities of those making such reports are confidential. [89] at 14-16.

## ANALYSIS

"[D]iscovery from a third party as permitted through a subpoena issued under Rule 45 is limited to the scope of discovery permitted under Rule 26(b)(1) in the underlying action." *MetroPCS v. Thomas*, 327 F.R.D. 600, 609-10 (N.D. Tex. 2018). The scope of discovery under Rule 26(b)(1) is as follows:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

Fed. R. Civ. P. 26(b)(1).

---

[3] The subpoena defines "ETHICS VIOLATION" as "any actual or claimed ethics violations of PTK's Code of Ethics that have been reported to" NAVEX. [89-2] at 6.

3

Honor Society contends that the documents and information requested in the subpoena are relevant. First, it points to PTK's interrogatory response in which PTK stated that it seeks the following damages from Honor Society:

> (2) lost revenues arising from either confusion created by the infringement and false advertising, or otherwise by Honor Society's tarnishment of the general academic honor society industry and market generally, which upon information and belief has caused some prospective honor society members to simply not join PTK in the belief that all honor societies are as fraudulent as Honor Society is; . . . .

[91] at 7. Honor Society then argues that "[t]o rebut this claim, Honor Society . . . is entitled [to] seek discovery confirming that one or more other factors caused or contributed to the claimed harm that PTK allegedly sustained to its goodwill and reputation, namely, public complaints about PTK and misconduct committed by PTK's executives." *Id*. at 11.

Next, Honor Society points to PTK's claim that Honor Society "'willfully' sought to use PTK's intellectual property . . . , which may warrant the imposition of additional damages . . . , including profits allegedly obtained by Honor Society because of its alleged infringement." *Id*. at 12. Honor Society then argues that "[t]o rebut this claim, Honor Society . . . is entitled to seek discovery confirming that it had no reason or desire to associate itself with PTK based, among other reasons, on PTK's poor public reputation." *Id*.

Based on Honor Society's own arguments, the NAVEX subpoena does *not* seek relevant information. Simply put, the complaints made on the EthicsPoint® platform are private, not "public complaints," and those private complaints, themselves, would not impact or necessarily reflect PTK's "public reputation." Honor Society has not convinced the Court that the requested documents are relevant to its described defenses.

But even if some EthicsPoint® complaints are relevant to claims or defenses in this case, the Court finds that the NAVEX subpoena should be quashed on the grounds that the document

requests are overbroad and, therefore, not proportional to the needs of this case. "Courts have found that a subpoena for documents from a non-party is facially overbroad where the subpoena's document requests seek all documents concerning the parties to [the underlying] action, regardless of whether those documents relate to that action and regardless of date; [t]he requests are not particularized; and [t]he period covered by the requests is unlimited." *MetroPCS*, 327 F.R.D. at 610 (citation omitted). Although the document requests in the NAVEX subpoena are limited to an eight-year period, they otherwise seek "all documents concerning" PTK and Tincher-Ladner. Admittedly, some of the requests contain the particularization of "ETHICS VIOLATIONS," but PTK's Code of Ethics (on which those requests are based) covers all sorts of issues, including, but not limited to, compliance with PTK's own internal policies and procedures. And the EthicsPoint® platform exists for complaints related to *any* violation of the PTK Code of Ethics. The limitation of "ETHICS VIOLATIONS" simply does not amount to much, and it does not sufficiently limit the requests to what would be relevant to the claims or defenses in this case. All requests in the subpoena are, therefore, overbroad.

## CONCLUSION

Accordingly, PTK's motion to quash [88] is granted. PTK's request for attorneys' fees and costs is denied.

SO ORDERED on the 7th day of December, 2023.

 /s/ F. Keith Ball  
UNITED STATES MAGISTRATE JUDGE