# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
# NORTHERN DIVISION

**PHI THETA KAPPA HONOR SOCIETY,**

   *Plaintiff / Counter-Defendant*,

v.

**HONORSOCIETY.ORG, INC.,**

   *Defendant/ Counter-Plaintiff*,

v.

**DR. LYNN TINCHER-LADNER,**

   *Third-Party Defendant.*

CAUSE NO. 3:22-CV-208-CWR-RPM

## PRELIMINARY INJUNCTION

On March 27, 2024 the Court heard argument on Docket Nos. 112, 114, and 116, plaintiff Phi Theta Kappa Honor Society's *Motion for Leave to File a Supplemental First Amended Complaint*, *Motion to Expedite Discovery*, and *Motion for Temporary Restraining Order and Preliminary Injunction.* The Court granted from the bench the *Motion for Leave to File a Supplemental First Amended Complaint*, Docket No. 112. This Order resolves the remaining two motions.

After reviewing the arguments, evidence, briefs, and applicable law, the Court finds that part of the plaintiff's requested relief should be granted, and therefore issues this Preliminary Injunction pursuant to Rule 65 of the Federal Rules of Civil Procedure.

At issue is the recent conduct of defendant/counter-plaintiff HonorSociety.Org, Inc. ("Honor Society"). In the first weeks of March 2024, Honor Society sent surveys to plaintiff/counter-defendant Phi Theta Kappa's ("PTK") members, and submitted public records requests to PTK's college partners across the country seeking information on PTK.[1]

The surveys contained questions that PTK calls malicious and misleading. Docket No. 117 at 9. The questions were, in no particular order:

- Does it hurt the reputation of Phi Theta Kappa (PTK) that a chapter advisor was arrested in February 2024 for allegedly embezzling funds?
- Does it hurt the reputation of Phi Theta Kappa (PTK) that their last executive director resigned after alleged sexual harassment of multiple members of the society?[2]
- Does it hurt the reputation of Phi Theta Kappa (PTK) that their last executive director took a $3 million golden parachute of non-profit student dues while resigning?
- If PTK falsely claimed it was the OFFICIAL honor society for community colleges, would that make you skeptical/wary of PTK?
- If PTK falsely claimed the average member gets $2,500 in scholarships, would that make you skeptical/wary of PTK?
- If PTK falsely claimed you were in the Top 10% of students, would that make you skeptical/wary of PTK?

The survey questions related to the executive director and former chapter advisor also contained a link after the question reading "Click here for more information," which redirects people to Google search results such as: "phi theta kappa sexual harassment." Docket No. 117 at 11.

---

[1] At the hearing, PTK stated that colleges have told them that they continue to receive public records requests from Honor Society as recently as Sunday, March 24, 2024.

[2] Michael Moradian's declaration states that "five survey questions at issue in PTK's motion," and goes on to explain that Honor Society believes these questions are "each true and based on reliable information." Docket No. 120-1 at 11. His declaration does not include the question asking, "Does it hurt the reputation of Phi Theta Kappa (PTK) that their last executive director resigned after alleged sexual harassment of multiple members of the society?" This question is included in PTK's motion, though, and shown via screenshots. *See* Docket No. 117 at 11. The Court includes this question, making a grand total of six questions subject to this Court's Order.

Honor Society did not deny sending the surveys to PTK's members. Rather, it argued that these surveys are part of routine "market research," and said it will likely send more in the future—although perhaps using different questions. *See* Docket No. 120-1 at 11. Counsel for Honor Society, however, also advised at the hearing that the above questions do not have to be used further as Honor Society has, or is receiving, the responsive information it needs to do its research.

The public records requests at issue have been sent to PTK's collegiate partners across the country in recent weeks. The requests were not sent from an official Honor Society email account or using letterhead, but rather the personal Gmail address of Honor Society employee David Asari.[3] The subject line of the requests was "PTK Records Request." The requests stated:

> Greetings, I would like to make a public records request for the following for all of your campuses.
> **PTK Records Request**
> - Since the academic term starting January 1, 2019
> - All records (e-mails and otherwise) from to and from Phi Theta Kappa / PTK / PTK.org (including files and student lists provided by the school to PTK.
> - This includes any mailings to and from chapter advisor of PTK to this campus.
> - All communications to or from Lynn Tincher-Ladner[4] from anyone at this community college (lynn.tincher-ladner@ptk.org).

PTK alleges that these requests have caused confusion, as the colleges think PTK is responsible for the requests.

---

[3] Asari has identified himself as a Director of Honor Society Foundation and Honor Society.org. Docket No. 112-3, at 3-4.
[4] Lynn Tincher-Ladner is the President and CEO of Phi Theta Kappa. Docket No. 112-3, at 2.

3

Honor Society did not deny sending these requests. It insisted that it has the right to send public records requests and will likely send more in the future.

PTK alleges that these actions create a claim for tortious interference with contractual relations under Mississippi law. PTK also asserts that these actions demonstrate that Honor Society, it's business competitor, is not "engaging in 'fair and lawful competition.'" Docket. No. 125, at 4. For these reasons, PTK seeks a temporary restraining order and preliminary injunction. "[I]t only seeks to enjoin a limited set of records requests and survey questions that were intended to interfere with PTK's contracts and business relations," explains PTK. Docket No. 126, at 5.

Of course, a TRO or a preliminary injunction is "an extraordinary and drastic remedy." *Black Fire Fighters Ass'n of Dallas v. City of Dallas, Texas*, 905 F.2d 63, 65 (5th Cir. 1990). Before either may issue, the movant must demonstrate:

> (1) a substantial likelihood of prevailing on the merits; (2) a substantial threat of irreparable harm if the injunction is not granted; (3) that the threatened injury outweighs any harm that may result from an injunction; and (4) that the injunction will not undermine the interest of the public.

*Bluefield Water Ass'n Inc. v. City of Starkville, Miss.*, 577 F. 3d 250, 252-53 (5th Cir. 2009).

To prevail on the merits of a tortious interference claim, a party must show:

> (1) the acts were intentional and willful, (2) the acts were calculated to cause damage to the plaintiffs in their lawful business, (3) the acts were done with the unlawful purpose of causing damage and loss without right or justifiable cause on the part of the defendant, and (4) actual loss and damage resulted.

*Neider v. Franklin*, 844 So. 2d 433 (Miss. 2003).

The survey questions and public records requests were intentional and willful – Honor Society doesn't contest this. The content of and hyperlinks within the survey show malicious intent to harm PTK's lawful business, and it is unclear why Mr. Asari laundered

4

his public records requests through his personal email account. Colleges have contacted PTK and Dr. Tincher-Ladner expressing confusion as to why *PTK* was making such requests, and in this Circuit, "[a]ctual consumer confusion may be the best indicator of the existence of a likelihood of deception." *Better Bus. Bureau of Metro. Houston, Inc. v. Med. Directors, Inc.*, 681 F.2d 397, 403 (5th Cir. 1982). The Court therefore agrees that PTK has a substantial likelihood of prevailing on the merits of this claim.

The remaining elements of injunctive relief are also satisfied. The Fifth Circuit has held that damage to a business's reputation can constitute irreparable injury. *See id.*; *see also Multiplan, Inc. v. Holland*, No. 1:14-CV-315, 2014 WL 12575800, at *3 (S.D. Miss. Aug. 19, 2014) (finding that "Because the harm to the plaintiffs' reputation and business in this case will probably be difficult to quantify, they have demonstrated irreparable harm."). The injury to PTK from this conduct outweighs any harm to Honor Society. As the Court in *Multiplan* stated, "the defendants will not be harmed, because they will merely be forced to utilize judicially-recognized means of seeking [information] from the plaintiffs." 2014 WL 12575800, at *3. And there is no evidence that the public interest will be undermined with an injunction. For these reasons, the Court finds that a Preliminary Injunction should be granted.

"The district court must narrowly tailor an injunction to remedy the specific action which gives rise to the order." *John Doe #1 v. Veneman*, 380 F. 3d 807 (5th Cir. 2004). Here, the Preliminary Injunction will require Honor Society to follow the course of conduct discussed at the hearing. Specifically, it is hereby ordered that Honor Society, its extensions and affiliates, including Honor Society Foundation, Inc., as defined by Rule 65(d)(2), shall:

1) Refrain from sending the above six survey questions out;
2) Turn over to PTK all responses to surveys distributed from March 4-11;

5

    3)    Provide PTK with reasonable advance notice should Honor Society desire to use similar but reworded questions in future surveys; and

    4)    Make future PTK-related public records requests clear that they are coming from Honor Society, rather than PTK. Such requests shall include language indicating that the requestor is not affiliated with PTK.[5]

This Preliminary Injunction shall remain in place until the conclusion of this case.

Lastly, as the Court mentioned from the bench, the discovery schedule does not require changing, even with the addition of PTK's newest claim. The parties expressed that any further discovery can be completed under the existing discovery schedule.

It is therefore **ORDERED** that the *Motion for Temporary Restraining Order and Preliminary Injunction* is **GRANTED** as set forth above. The *Motion to Expedite Discovery*, meanwhile, is **granted in part and denied in part**.

**SO ORDERED**, this the 28th day of March, 2024.

                                              s/ Carlton W. Reeves
                                              UNITED STATES DISTRICT JUDGE

---

[5] Of course, Honor Society can utilize the discovery process, including properly-issued subpoenas, to find out further information relevant to its claims and defenses.