IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

**PHI THETA KAPPA HONOR SOCIETY,**

  *Plaintiff / Counter-Defendant,*

*v.*

CAUSE NO. 3:22-CV-208-CWR-RPM

**HONORSOCIETY.ORG, INC.,**

  *Defendant/ Counter-Plaintiff,*

*v.*

**DR. LYNN TINCHER-LADNER,**

  *Third-Party Defendant.*

## ORDER

Before the Court are Plaintiff Phi Theta Kappa Honor Society ("PTK") and Third-Party Defendant Dr. Lynn Tincher-Ladner's *Motion to Dismiss HonorSociety.Org, Inc.'s Amended Counterclaims and Amended Third-Party Complaint for Failure to State a Claim*[1], Docket No. 65, and PTK's *Motion for Leave to File Second Amended Complaint*, Docket No. 79. The motions are fully briefed and ready for adjudication. Upon review, the *Motion to Dismiss* will be granted in part and denied in part, and the *Motion for Leave to File Second Amended Complaint* will be granted.

---

[1] PTK and Tincher-Ladner's prior *Motion to Dismiss*, Docket No. 56, is moot, as defendant Honor Society filed an Amended Answer and Counterclaims, Docket No. 61, and an Amended Third-Party Complaint, Docket No. 62. Those are now the operative pleadings.

## I.      Factual and Procedural History

PTK is a Mississippi non-profit corporation. Docket No. 20 at 2. Founded in 1918, it is an international academic honor society that provides recognition for academic excellence and opportunities for its members to develop professional and leadership skills. *Id*. at 4. It claims more than 3.8 million total members and approximately 250,000 active members on nearly 1,300 community college campuses in 11 nations. *Id*.

HonorSociety.Org, Inc. ("Honor Society") is a Nevada corporation. *Id*. at 2. Founded in 2014, it seeks to provide scholarships to high achievers to pursue their dreams, create values-driven educational content, and preserve the distinguished history of honor societies.[2]

In this suit, PTK alleges that Honor Society is infringing upon PTK's trademarks and trade dress. PTK says it has received more than 100 individual complaints about this, including instances of actual confusion. Docket No. 66 at 3. PTK subsequently commenced this suit for false designation of origin, "federal trade dress infringement and false advertising," common law trade dress infringement, and unfair competition in violation of Mississippi law. Docket No. 20.

Honor Society counterclaimed seeking recovery for defamation, tortious interference with business relations, and false or misleading representations of fact. Docket No. 49. Honor Society also filed a Third-Party Complaint against Dr. Lynn Tincher-Ladner, the CEO and Executive Director of PTK, for defamation, tortious

---

[2] *See* Honor Society, https://www.honorsociety.org/ (last visited Mar. 20, 2024).

interference, and false advertising. Docket No. 50. Honor Society objects to a press release by PTK announcing this litigation on April 21, 2022.[3] *Id.* It argues that Tincher-Ladner, through the press release "maliciously published additional false statements about Honor Society." Docket No. 62. Honor Society later amended its Counterclaims and Third-Party Complaint. Docket Nos. 61-62.

PTK and Tincher-Ladner now seek to dismiss the Counterclaims. Docket No. 65. In addition, PTK seeks to resolve a discovery dispute regarding whether PTK properly plead Count II of its Amended Complaint—its false advertising claim. Docket No. 79. PTK has moved for leave to file a Second Amended Complaint to "clarify" that claim. Docket Nos. 79-80. Honor Society opposes this motion, arguing that PTK never included an actual false advertising claim in its First Amended Complaint and now seeks to add an entirely new claim. Docket Nos. 85-86.

## II.    Legal Standards

### A.    Motion to Dismiss Standard

Federal Rule of Civil Procedure 12(b)(6) permits a court to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed R. Civ. P. 12(b)(6). Upon considering a Rule 12(b)(6) motion, the Court accepts the plaintiff's factual allegations as true and makes factual inferences in the plaintiff's favor. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The complaint must "contain a short and plain statement of the claim showing that the pleader is entitled to relief." *Id*. Though the plaintiff need not "plead detailed

---

[3] *See Phi Theta Kappa Honor Society Sues Las Vegas Company for Trademark Infringement*, https://www.ptk.org/2022/04/21/phi-theta-kappa-sues-las-vegas-company-for-trademark-infringement/ (last visited March 18, 2024).

factual allegations," a successful complaint requires "more than an unadorned, the defendant unlawfully-harmed-me accusation." *Id*. A claim must be "plausible on its face," enabling the court to draw reasonable inferences that the defendant is liable for the misconduct alleged." *Id*.

### B. Leave to Amend Standard

Federal Rule of Civil Procedure 16(b) governs amendment of pleadings once a scheduling order has been issued. It provides that a scheduling order shall not be modified except upon a showing of good cause. "It requires a party to show that the deadlines cannot be met despite the diligence of the party needing the extension." *Marathon Fin. Ins., Inc. v. RRG v. Ford Motor Co.*, 591 F.3d 458, 470 (5th Cir. 2009) (punctuation omitted).

Courts consider (1) the explanation for the failure to timely move to amend; (2) the importance of the amendment; (3) potential prejudice in allowing the amendment; and (4) the availability of a continuance to cure such prejudice. *S&W Enterprises, L.L.C. v. SouthTrust Bank of Alabama, NA*, 315 F.3d 533, 535-36 (5th Cir. 2003) (quotation marks, citations, and brackets omitted). Only upon the movant's demonstration of good cause to modify the scheduling order will the more liberal standard of Rule 15(a) apply to the court's decision to grant or deny leave. *Id*.

Rule 15 of the Federal Rules of Civil Procedure governs amended and supplemental pleadings. "Leave to amend is in no way automatic, but the district court must possess a 'substantial reason' to deny a party's request for leave to amend." *Marucci Sports, L.L.C. v. National Collegiate Athletic Ass'n*, 751 F.3d 368, 378 (5th Cir. 2014) (citation

omitted). In determining whether to grant leave to amend, the court is to consider: "1) undue delay, 2) bad faith or dilatory motive, 3) repeated failure to cure deficiencies by previous amendments, 4) undue prejudice to the opposing party, and 5) futility of the amendment." *Smith v. EMC Corp.*, 393 F.3d 590, 595 (5th Cir. 2004) (citation omitted).

### III.   Discussion

#### A.   PTK's Motion to Dismiss Honor Society's Counterclaims, Docket No. 65

##### 1.   Count I: Defamation

Under Mississippi law, to prove defamation, the plaintiff must show: "(1) a false and defamatory statement concerning plaintiff; (2) unprivileged publication to third party; (3) fault amounting at least to negligence on part of publisher; (4) and either actionability of statement irrespective of special harm or existence of special harm caused by publication." *Franklin v. Thompson,* 722 So. 2d 688, 692 (Miss. 1998) (citations omitted).

For a statement to be actionable, it must constitute "an unprivileged publication." *Lehman v. Holleman*, 526 F. App'x 346, 348 (5th Cir. 2013). Mississippi courts consider statements made in connection with judicial proceedings, "if in any way relevant to the subject matter of the action," as "absolutely privileged and immune from attack as defamation, even if such statements are made maliciously and with knowledge of their falsehood." *Id*. Mississippi courts favor a "liberal rule" as "to the determination of the degree of relevancy or pertinency necessary to make alleged defamatory matter privileged." *Id.*

Honor Society claims that statements in PTK's press release are defamatory. Docket No. 61 at 14. The first line at issue states that Honor Society "has deliberately

confused students and diluted the value of membership by knowingly using a visual identity, marketing materials, regalia and online content which are strikingly similar to those of [PTK]." *Id*. Next at issue is the line, attributed to Tincher-Ladner, stating that Honor Society "has misled countless students into believing they were joining [PTK] when they were not." *Id.*; *see also* Docket Nos. 62-1 and 66 at 8.

In response, PTK points to similar statements in its Amended Complaint. Docket No. 66 at 8-9. It argues that the press release and Tincher-Ladner's statements "paraphrase the allegations set forth in the Amended Complaint, and are undeniably relevant to the subject matter of the action," thus are "absolutely privileged and immune from attack as defamation." *Id.* at 9.

Honor Society replies that PTK's press release introduced new defamatory information that is neither pertinent nor relevant to the claims in PTK's original or Amended Complaint. Docket No. 69 at 14. For this, Honor Society points to five statements in the press release it believes are not covered by litigation privilege. *See id.* at 11-12. They are claims that: 1) Honor Society infringed on PTK's "registered trademarks," 2) Honor Society "diluted the value of [PTK's] membership, 3) Honor Society "deliberately" confused students, 4)  an implication that Honor Society engaged in criminal conduct by telling consumers to contact their state's attorney general, and 5) an implication that Honor Society "has engaged in behavior that is incompatible with the proper conduct of its business, trade, or profession[]" by telling consumers to "contact the Better Business Bureau." *Id*. Honor Society also believes that PTK has referred to Honor Society as a "scam," which it says is defamation per se. *Id*. at 15-17.

PTK relies on this Court's prior decision in *Beauchene v. Mississippi Coll.*, 986 F. Supp. 2d 755 (S.D. Miss. 2013), for the proposition that a press release about pending litigation is privileged. In *Beauchene*, though, this Court determined that allegedly-defamatory statements in question were privileged because the "only publication" they appeared in were "MC Law's papers requesting relief from this Court." 986 F. Supp. 2d at 766. To reach that conclusion, this Court relied on *Smith v. White*, 799 So. 2d 83 (Miss. 2001), which held that:

> A communication made in good faith and on a subject-matter in which the person making it has an interest, or in reference to which he has a duty, is privileged if made to a person or persons having a corresponding interest or duty, even though it contains matter which without this privilege would be slanderous, provided the statement is made without malice and in good faith.

799 So. 2d at 86.

PTK claims it and Tincher-Ladner made the statements to "advise other members of the higher education community of these matters." Docket No. 70 at 3. It contends that "the *Beauchene* privilege is broad enough to cover the communications alleged here[.]" *Id*.

The Court agrees. While the press release contained statements that were not verbatim quotes from the complaint, the first three statements that Honor Society challenges regarding registered trademarks, diluting PTK's membership, and deliberately confusing students are so similar to PTK's claims in the Amended Complaint that they warrant privilege. *See* Docket No. 20. And the audience of the press release are only those who visit PTK's website -- most likely "members of the higher education

community." The subject matter of the press release is sufficiently related to the action

and the audience of the press release has an interest in the topic, thus these statements in

the press release are privileged.

The Court can also dismiss the fourth and fifth statements that Honor Society is

concerned with—encouraging consumers to contact their state Attorney General and/or

the Better Business Bureau. As PTK properly points out, the Mississippi Attorney

General, like many of her peers across the country, has a responsibility for enforcing civil

consumer protection statutes. *See* Docket No. 70 at 5 n.4. Encouraging consumers to

contact an AG's office or the Better Business Bureau are merely suggestions for any

potentially-aggrieved consumers.

Nor can Honor Society show that PTK or Tincher-Ladner actually called Honor

Society a "scam." The statements in question were made by students asking for refunds

who claimed that their schools or other entities called Honor Society a "scam." *See* Docket

No. 61 at 17-19. Absent is an allegation that PTK told students Honor Society was a scam.

The Court concludes that this portion of the *Motion to Dismiss* must be granted.

### 2.      Count II: Tortious Interference with Business Relations

"[T]ortious interference with business relations occurs when a person unlawfully

diverts prospective customers away from one's business." *Par Indus., Inc. v. Target*

*Container Co.*, 708 So. 2d 44, 48 (Miss. 1998). To succeed on a claim for tortious interference

with a business relationship, the plaintiff must show:

> (1) The acts were intentional and willful; (2) The acts were calculated to
> cause damage to the plaintiffs in their lawful business; (3) The acts were
> done with the unlawful purpose of causing damage and loss, without right

or justifiable cause on the part of the defendant (which constitutes malice); [and] (4) Actual damage and loss resulted.

*MBF Corp. v. Century Bus. Commc'ns, Inc.*, 663 So. 2d 595, 598 (Miss. 1995) (citations omitted).

Here, Honor Society alleges that PTK and Tincher-Ladner intentionally and willfully made statements to delegitimize Honor Society. Docket No. 69 at 20. This included statements on social media, at colleges, and in the press release. *Id.*

PTK argues that Honor Society makes general allegations and cannot identify any specific relationship, prospective or actual, that was harmed by PTK or Tincher-Ladner's conduct. Docket No. 66 at 18-19. It directs the Court to *Ronaldo Designer Jewelry, Inc. v. Cox*, No. 1:17-CV-2-DMB-DAS, 2019 WL 1245787, at *4 (N.D. Miss. Mar. 18, 2019), in which the party seeking relief "wholly failed to identify a specific relationship (prospective or actual) that was allegedly harmed by [the] alleged conduct."

While it does not name the students, Honor Society says 880 student members have sought to cancel memberships and receive refunds in the six months following the commencement of litigation in 2022. Docket No. 61 at 22-23. The press release was posted shortly after the start of litigation, on April 21, 2022. Honor Society also includes 10 "representative samples" of the third-party "parrot[ing]" of Tincher-Ladner and PTK's statements/insinuations about Honor Society being a "scam." Docket No. 61 at 16-19. It also names three colleges—Ivy Tech Community College, Motlow College, and the College of Dupage—where (it claims) people have repeated the wrongful accusations

which harmed Honor Society, presumably at the request of PTK or its representatives. *Id*. at 17.

As mentioned above, there is no allegation that PTK or Tincher-Ladner called Honor Society a "scam." The closest statement that Honor Society included was the content of an email a student received from the PTK Coordinator at Motlow College, who is not an employee. *Id*. at 17-18. In that message, the PTK coordinator said "this organization has been soliciting Motlow students to join . . . and we don't know anything about this organization. The only honors society for two year colleges is Phi Theta Kappa (PTK)[.]" *Id*.

While the Court takes Honor Society's allegations as true, as it must, not enough has been pled for a plausible tortious interference with business relations claim. Honor Society cannot attribute its accusations to PTK and Tincher-Ladner. This portion of the *Motion to Dismiss* must be granted.

### 3.    Count III: False Advertising Under 15 U.S.C. § 1125(a)

Section 43(a) of the Lanham Act states, in relevant part:

> Any person who . . . in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities, shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

15 U.S.C. § 1125(a)(1)(B). The Fifth Circuit has "interpreted this section of the Lanham Act as providing protection against a myriad of deceptive commercial practices,' including false advertising or promotion." *Pizza Hut, Inc. v. Papa John's Int'l, Inc.*, 227 F.3d 489, 495 (5th Cir. 2000) (quotations omitted).

To establish a false advertising claim under the Lanham Act, a plaintiff must establish:

> (1) That the defendant made a false or misleading statement of fact about its product; (2) the statement actually deceived or has a tendency to deceive a substantial segment of potential consumers; (3) the deception is likely to influence the purchasing decision; (4) the defendant caused the false statement to enter interstate commerce; and (5) the plaintiff has been or is likely to be injured as a result of the statement at issue.

*Id.*; *see also Logan v. Burgers Ozark Country Cured Hams Inc.*, 263 F. 3d 447, 462 (5th Cir. 2001). If the statement is shown to only be misleading, the plaintiff must introduce evidence of the statement's impact on consumers. *Id.*

Honor Society's false advertising claim argues that PTK and Tincher-Ladner have claimed to third parties they are the "only" or "official" honor society for two-year colleges. Docket No. 61 at 23. For proof of this, Honor Society includes screenshots of PTK's page on several community college websites. Docket No. 61-2. These webpages include language stating that PTK is "the official honor society for two-year colleges." *Id.*

PTK responds that Honor Society has not pointed to any specific instance of the statement being made by PTK officials. Docket No. 66 at 23. As mentioned above, the Court sees evidence that at least one PTK coordinator at a two-year college stated to students, "The only honors society for two year colleges is Phi Theta Kappa (PTK)[.]"

PTK then argues that any statements of PTK as the "only" or "official" community college honor society are nothing more than "non-actionable puffery." *Id.* at 25; *see also* Docket No. 70 at 9.

In this Circuit,

11

non-actionable "puffery" comes in at least two possible forms: (1) an exaggerated, blustering, and boasting statement upon which no reasonable buyer would be justified in relying; or (2) a general claim of superiority over comparable products that is so vague that it can be understood as nothing more than a mere expression of opinion.

*Pizza Hut*, 227 F.3d at 497.

Based on this definition, this Court does not think PTK's claims to be the "only" or "official" community college honor society are puffery. In fact, PTK repeats these claims to the Court in its First Amended Complaint and proposed Second Amended Complaint. *See* Docket No. 20 at 4, *see also* Docket No. 79-1 at 4. If the Court is to believe them, as it must at this stage, then it is reasonable that a buyer would be justified in relying on them, too. Honor Society has sufficiently pled its False Advertising claim under the Lanham Act.

For these reasons, the *Motion to Dismiss* is granted in part and denied in part. The claims of defamation and tortious interference with business relations will be dismissed. Honor Society can proceed with its False Advertising claim.

### B.      PTK's Motion for Leave to Amend, Docket No. 79

At issue in PTK's *Motion for Leave to File Second Amended Complaint* is Count II of PTK's First Amended Complaint, a claim for false advertising. Docket No. 20 at 20. This claim was added in the First Amended Complaint. Docket No. 20. It was titled "Federal Trade Dress Infringement and False Advertising." *Id*. at 20.

During a series of discovery conferences in July 2023, Honor Society told PTK that it thought Count II "only alleged a claim for trade dress infringement." Docket No. 86 at 5. As a result, Honor Society refused PTK's discovery requests concerning its name

selection. Docket No. 80 at 7. That set in motion PTK's present request to amend its complaint by adding "additional facts" that are meant as "merely supplementing and clarifying [] the factual averments that created the confusion in the first place." *Id.* at 12.

The Case Management Order required amendments to the pleadings by June 5, 2023. *See* Docket No. 59. PTK argues that the late motion is justified because it was not until July 2023 that Honor Society claimed confusion about the false advertising claim and would not produce discovery responsive to it. Docket No. 80 at 9.

Honor Society challenges PTK's framing of the issue and says PTK never actually asserted a false advertising claim. Docket No. 86. It alleges PTK is attempting to add "new and substantial allegations that were never before asserted." *Id.* at 7. Honor Society says trade dress infringement and false advertising are "completely different causes of action, with completely different elements." *Id.* PTK never plead a false advertising claim, it contends, because the words "false advertising" in the header of Count II had no connection to the allegations of trade dress infringement within that Count. *Id.*

PTK, of course, disagrees. It argues that it claimed both "trade dress infringement and false advertising." Docket No. 80 at 11. Count II reflects PTK's allegation that Honor Society chose a generic name by design to confuse consumers, so people sign up for Honor Society instead of PTK. *Id.*

PTK's proposed Second Amended Complaint removes the words "False Advertising" from the heading of Count II. Docket No. 79-1 and 79-2. It does not have a separate count exclusively dedicated to false advertising. *Id.* Honor Society argues this means PTK concedes it has no false advertising claim. Docket No. 86 at 9. Honor Society

relies on Federal Rule of Civil Procedure 10(b) for the proposition that each claim must

be stated in a separate count. *Id*.

After considering the legal standard, the Court will permit the amendment.

PTK's explanation for the delay is reasonable. Honor Society did not express

"confusion" until after the deadline elapsed and, even then, PTK did not unreasonably

delay the filing of this motion seeking to clarify the claim. PTK's amendment is also

important and, as it observes, its false advertising claim already survived Honor Society's

first *Motion to Dismiss*, Docket No. 87 at 11; *see also* Docket No. 48.

Nor does the Court think Honor Society will be unduly prejudiced if PTK is

granted leave to clarify this Count. Much of the discovery PTK seeks on this claim was

already requested and motion practice is ongoing. Discovery deadlines have been pushed

back already, and can be done so again to cure any prejudice.[4] The "mere passage of time

need not result in refusal of leave to amend; on the contrary, it is only *undue* delay that

forecloses amendment." *Dussouy v. Gulf Coast Inv. Corp.*, 660 F. 2d 594, 598 (5th Cir. 1981)

(emphasis added). Depending on the circumstances, the Fifth Circuit has said

"[a]mendment can be appropriate as late as trial or even after trial." *Id*.

Good cause exists to modify the scheduling order. Thus, the final question is

whether under Rule 15 the Court has a "substantial reason" to deny the request for leave

to amend again. *Marucci Sports*, 751 F.3d at 378. No such reason is present here and, of

---

[4] PTK places in a footnote that "[i]f PTK's Motion for Leave to file its Second Amended Complaint is granted (ECF No. 79), PTK requests that the pleadings therein be merged with those of its Supplemental First Amended Complaint. PTK's false advertising claims clarified in its Second Amended Complaint do not affect PTK's tortious interference claims, which PTK seeks to add by its Supplemental First Amended Complaint." Docket No. 113 at 2 n.2.

course, "[t]he court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). PTK will be allowed leave to file its Second Amended Complaint.

## IV.    Conclusion

The *Motion to Dismiss HonorSociety.Org, Inc.'s Amended Counterclaims and Amended Third-Party Complaint for Failure to State a Claim* is granted in part and denied in part. PTK's *Motion for Leave to File Second Amended Complaint* is granted. PTK shall file its amended pleading within 10 days.

**SO ORDERED**, this the 29th day of March, 2024.

s/ Carlton W. Reeves
UNITED STATES DISTRICT JUDGE