## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF MISSISSIPPI
## NORTHERN DIVISION

| | |
|---|---|
| PHI THETA KAPPA HONOR SOCIETY, | Civil Action No. 3:22-cv-00208-CWR-RPM |
|     Plaintiff/Counter-Defendant, | |
| v. | **URGENT AND NECESSITOUS** |
| HONORSOCIETY.ORG INC., | |
|     Defendant/Counter-Plaintiff | |
| HONOR SOCIETY FOUNDATION, INC., | |
|     Defendant. | |
| HONORSOCIETY.ORG INC., | |
|     Defendant/Counter-Plaintiff/Third-Party Plaintiff | |
| v. | |
| LYNN TINCHER-LADNER, | |
|     Third-Party Defendant. | |

**HONORSOCIETY.ORG INC. AND HONOR SOCIETY FOUNDATION, INC.'S MEMORANDUM IN SUPPORT OF MOTION TO STAY PRELIMINARY INJUNCTION PENDING APPEAL**

# Table of Contents

Introduction ........................................................................................................................... 1

Facts ....................................................................................................................................... 2

    A.   HonorSociety added true information to the Wikipedia page about PTK but is not responsible for Wikipedia's decision to ban PTK from editing the page. ........................ 3

    B.   The injunction concerned articles that HonorSociety published on its website. .............. 6

    C.   PTK admitted that it cannot identify a single lost contract or customer caused by HonorSociety publishing the articles. ........................................................................... 7

    D.   The Court issued a six-part preliminary injunction. ...................................................... 8

Argument ............................................................................................................................... 8

    A.   The injunction is an unconstitutional prior restraint and overbroad because it prohibits First Amendment protected speech and is not limited to specific false statements. .................................................................................................................... 9

        1.   The first order forbidding Wikipedia page editing is overbroad because it prohibits all speech, even true speech, and speech that is of public concern. ....... 10

        2.   The second order prohibiting cartoon art is overbroad because it does not target false speech, or even any speech that is capable of being proven true or false. .................................................................................................................... 11

        3.   The third order prohibiting discussion about the Itawamba Community College chapter advisor's arrest is overbroad because it applies to completely true statements and is vague as to what is "false". ................................................ 13

        4.   The fourth order prohibiting reporting on the sexual-harassment allegations against Risley is viewpoint discrimination, and overbroad because it forbids true statements and opinions about a matter of public interest. ......................... 15

    B.   The preliminary injunction unconstitutionally compels speech, which the First Amendment does not allow a court to do in these circumstances. ................................ 16

        1.   The fifth order requiring HonorSociety to include PTK's address information on HonorSociety's own website compels HonorSociety to promote its competitor's business, which is unconstitutional viewpoint discrimination. ........ 17

        2.   The sixth order requiring HonorSociety to include a prewritten "disclaimer" unconstitutionally compels HonorSociety to speak the court's preferred message and not HonorSociety's own message. ................................................ 17

    C.   The preliminary injunction is invalid because it relies on correlation that is not causation on whether HonorSociety interfered with a contract or sale. ......................... 20

D.    When First Amendment rights are at stake, both irreparable harm to the enjoined party and substantial harm to other parties are presumed, which also means the public interest would be served by a stay. ...................................................................22

Conclusion...........................................................................................................................22

# Table of Authorities

**Cases**

*303 Creative LLC v. Elenis,*
  600 U.S. 570 (2023) ..................................................................................16, 17

*Am. Millenium Ins. Co. v. First Keystone Risk Retention Grp, Inc.,*
  332 F. App'x 787 (3d Cir. 2009) .................................................................. 20, 21

*Bailey v. Iles,*
  87 F.4th 275 (5th Cir. 2023) ............................................................................ 11

*Bernard v. Gulf Oil Co.,*
  619 F.2d 459 (5th Cir. 1980) ........................................................................... 11

*Bigelow v. Virginia,*
  421 U.S. 809 (1975) ......................................................................................... 19

*Bluefield Water Ass'n Inc. v. City of Starkville, Miss.,*
  577 F.3d 250 (5th Cir. 2009) ........................................................................... 20

*Bolger v. Youngs Drug Prod. Corp.,*
  463 U.S. 60 (1983) .......................................................................................18, 19

*Carroll v. President & Comm'rs of Princess Anne,*
  393 U.S. 175 (1968) ......................................................................................... 11

*CBS v. Davis,*
  510 U.S. 1315 (1994)......................................................................................9, 10

*Christian Legal Soc'y v. Walker,*
  453 F.3d 853 (7th Cir. 2006) ........................................................................... 22

*Elrod v. Burns,*
  427 U.S. 347 (1976) ......................................................................................... 22

*Ginzburg v. United States,*
  383 U.S. 463 (1966) ......................................................................................... 19

*HN6 R. A. V. v. St. Paul,* 505 U.S. 377 (1992) ......................................................... 16

*Hurley v. Irish-American Gay,*
  515 U.S. 557 (1995) ......................................................................................16, 18

*Huss v. Gayden,*
  571 F.3d 442 (5th Cir. 2009) ........................................................................... 21

*Hustler Magazine v. Falwell*,
    485 U.S. 46 (1988) ................................................................... 13

*Ingebretsen ex rel. Ingebretsen v. Jackson Pub. Sch. Dist.*,
    88 F.3d 274 (5th Cir. 1996) ....................................................... 22

*International Society for Krishna Consciousness v. Eaves*,
    601 F.2d 809 (5th Cir. 1979) ..................................................... 11

*Louisiana v. Biden*,
    45 F.4th 841 (5th Cir. 2022) ..................................................... 14

*Marceaux v. Lafayette City-Parish Consol. Gov't*,
    731 F.3d 488 (5th Cir. 2013) ..................................................... 11

*Matal v. Tam*,
    582 U.S. 218 (2017)................................................................... 12

*Missouri v. Biden*,
    83 F.4th 350 (5th Cir. 2023) ....................................................... 9

*Nat'l Inst. of Family & Life Advocates v. Becerra*,
    585 U.S. 755 (2018)................................................................... 19

*New York Times Co. v. United States*,
    403 U.S. 713 (1971) .................................................................. 11

*Nken v. Holder*,
    556 U.S. 418 (2009) ...............................................................8, 9

*Opulent Life Church*,
    697 F.3d 279 (5th Cir. 2012) ..................................................... 22

*Par Indus. v. Target Container Co.*,
    708 So. 2d 44 (Miss. 1998)........................................................ 20

*Perez v. City of San Antonio*,
    98 F.4th 586 (5th Cir. 2024) ..................................................... 19

*Pittsburgh Press Co. v. Human Relations Comm'n*,
    413 U.S. 376 (1973) .................................................................. 18

*Plaquemines Par. v. Chevron United States, Inc.*,
    84 F.4th 362 (5th Cir. 2023) ....................................................... 9

*Police Dept. of Chicago v. Mosley*,
    408 U.S. 92 (1972) .................................................................... 15

*Procter & Gamble Co. v. Amway Corp.*,
    242 F.3d 539 (5th Cir. 2001) ..................................................... 18

*R J Reynolds Tobacco Co. v. FDA*,
     96 F.4th 863 (5th Cir. 2024) ....................................................................................18, 19

*Riley v. National Federation of Blind, Inc.*,
     487 U.S. 781 (1988) ......................................................................................................18

*Roman Catholic Diocese v. Cuomo*,
     592 U.S. 14 (2020) ....................................................................................................9, 22

*Rosenberger v. Rector & Visitors of the Univ. of Va.*,
     515 U.S. 819 (1995) ......................................................................................................16

*Ruiz v. Estelle*,
     650 F.2d 555 (5th Cir. 1981) ..........................................................................................9

*Scott v. Schedler*,
     826 F.3d 207 (5th Cir. 2016) ..........................................................................................9

*Southeastern Promotions, Ltd. v. Conrad*,
     420 U.S. 546 (1975) ......................................................................................................11

*Street v. New York*,
     394 U.S. 576 (1969) ......................................................................................................12

*Thornhill v. Alabama*,
     310 U.S. 88 (1940) ........................................................................................................19

*Tinker v. Des Moines Independent Community School Dist.*,
     393 U. S. 503 (1969) .....................................................................................................16

*Tory v. Cochran*,
     544 U.S. 734 (2005) ......................................................................................................11

*Tribal Sols. Grp., L.L.C. v. Valandra*,
     No. 23-60233, 2023 U.S. App. LEXIS 29539 (5th Cir. Nov. 6, 2023) ....................21

*United States v. Brown*,
     218 F.3d 415 (5th Cir. 2000) ........................................................................................10

*United States v. Valencia*,
     600 F.3d 389 (5th Cir. 2010) ........................................................................................21

*Veasey v. Perry*,
     769 F.3d 890 (5th Cir. 2014) ..........................................................................................8

*Virginia State Bd. of Pharmacy v. Virginia Citizens Consumer Council*,
     425 U.S. 748 (1976) ......................................................................................................18

*Whitney v. California*,
     274 U.S. 357 (1927) ......................................................................................................11

**Statutes**

15 U.S.C. § 1052 ................................................................................................. 13

**Constitutional Provisions**

U.S. Constitution, Amendment I .......................................................................... 13, 14

## Introduction

The First Amendment to the United States Constitution generally forbids prior restraints, including orders against ongoing or future speech about any issue. The Court issued an injunction prohibiting HonorSociety from contributing to a Wikipedia page about PTK, even if all contributions are true and matters of public concern. The order also requires HonorSociety to remove and not publish:

- a cartoon image that the Court finds despicable which does not convey any statements, true or false, from a website and social-media posts;

- "false" content, without identifying specifically what is false, about a PTK chapter advisor that was arrested for embezzlement; and

- truthful reporting about sexual-harassment allegations against PTK's former executive director, Rod Risley.

In addition to these prohibitions, the Court's order compels HonorSociety to:

- promote PTK's business by adding PTK's contact information to HonorSociety's own website; and

- publish a prominent "disclaimer" that the Court wrote, which HonorSociety considers to represent PTK's viewpoint and not its own, at the top of any article about PTK before HonorSociety is allowed to publish any other information about PTK.

The Court's order is a prior restraint because it prohibits truthful edits to a Wikipedia page, regulates where an image can be used, and prevents honest reporting about sexual-harassment allegations and embezzlement.

The First Amendment also prohibits compelled speech in most circumstances, and always prohibits viewpoint discrimination. The Court's order compelling HonorSociety to publish PTK's contact information on HonorSociety's website, and include a pro-PTK message that HonorSociety doesn't agree with, imposes PTK's viewpoint on HonorSociety, and unconstitutionally compels HonorSociety to publish that opposing viewpoint.

Finally, the First Amendment allows offensive speech such as the "despicable" image that the Court ordered HonorSociety to remove. The First Amendment does not allow overbroad restrictions that sweep into the prohibition a ban on true statements. The order here is also vague because it requires HonorSociety to remove "false" statements without specifying which statements, in particular, the Court found false.

In addition to imposing an unconstitutional prior restraint, the Court issued the order even though the underlying tortious-interference claims are not substantially likely to succeed. PTK is required to show that it lost a contract or sale. But at the hearing, PTK admits it knows of no specific lost contract or sale and is just "assuming" lost sales were due to HonorSociety's articles. The Court found that PTK had shown a substantial likelihood of proving the lost-contract-or-sale element. But in doing so, the Court violated the Fifth Circuit's mandate that "correlation is not causation" by leaping to the conclusion that PTK lost sales based on HonorSociety's articles without any evidence linking the two, other than mere correlation.

HonorSociety has appealed the order and now asks the Court to stay enforcement until the appeal is resolved. Because free speech is at issue, HonorSociety respectfully requests that the Court resolve this matter as soon as possible, preferably by Tuesday, September 3, so that HonorSociety may promptly seek appellate relief, if necessary.

## Facts

On August 22, the Court issued an order denying HonorSociety's motion to strike and granting in part PTK's motion for preliminary injunction. Docket No. 230. HonorSociety's motion to strike asked the Court to strike materials that PTK filed after the close of the preliminary-injunction hearing. Docket No. 203. Those materials concerned edits to a Wikipedia page about PTK, for which PTK speculated HonorSociety was responsible. Docket No. 200.

HonorSociety asked that if the Court considered those materials after the close of the record, that HonorSociety be allowed to file a response so that record would include all material facts about the Wikipedia page. Docket No. 203 at 3. HonorSociety did not file its own supplemental materials in response to PTK's supplemental filing because (a) it viewed the motion

to strike as a procedural motion regarding procedural issues, and (b) because filing supplemental materials without leave of court is generally considered improper. In the end, the Court ordered that it would consider all of PTK's materials and denied HonorSociety's request to respond to the Wikipedia allegations. Docket No. 230.

**A.    HonorSociety added true information to the Wikipedia page about PTK but is not responsible for Wikipedia's decision to ban PTK from editing the page.**

Wikipedia is a public marketplace of ideas. *See* Declaration of Michael Moradian ¶ 4. It provides an online platform known as a "wiki" which allows anyone to contribute content and make edits to the content of others. *Id*. Wikipedia features "pages" about particular topics, ranging from individuals to science facts to companies to countries. *Id*. Each page is created by an individual or individuals, and then released to the public for further additions and edits. *Id*. Anyone can create or edit, and each contributor is called an "editor." *Id*. Individual pages are not owned by any person other than Wikipedia. *Id*.

Wikipedia has rules about what is an acceptable edit to a Wikipedia page. *Id*. ¶ 7. It blocks persons from deleting or editing content that is well sourced. *See*, *e.g.*, *id*. ¶ 20. Wikipedia has Five Pillars, one of which is a neutral point of view. *Id*. ¶ 7. Central to viewpoint neutrality is verifiability. *Id*. Wikipedia states that "[a]ll articles must strive for verifiable accuracy with citations based on reliable sources, especially when the topic is controversial or is about a living person." *Id*. Wikipedia specifies that "verifiability means people using the encyclopedia can check that the information comes from a reliable source." *Id*. This demands that articles' content be "determined by previously published information rather than editors' beliefs, opinions, experiences, or previously unpublished ideas or information." *Id*. Wikipedia also emphasizes that it is "not a soapbox or means of promotion" and specifically proscribes advertising, marketing, and self-promotion. *Id*. ¶ 8.

A Wikipedia page exists about PTK. *Id*. ¶ 9. HonorSociety founder Michael Moradian is a Wikipedia user and editor with the username "WikiObjectivity." *Id*. ¶ 3. As a Wikipedia user and editor, his stated goals are to "bring neutral objectivity and meaningful update where I can"

particularly in the "honor society space [which] is filled with puffery and bias, and needs to be reviewed across the board for neutral objectivity, modern values and update." *Id*. ¶ 5.

In addition to creating original articles, he also edits existing articles. *Id*. ¶ 7. Moradian has edited a Wikipedia page about PTK to make it more objective and in line with Wikipedia's verifiability standards. *Id*. ¶ 9. For example, on April 26, 2024, he added to PTK's Wikipedia article a detailed history of the organization with over 25 citations. *Id*. ¶ 10. In the spirit of Wikipedia's viewpoint neutrality pillar, this history included facts that were both flattering and unflattering to PTK such as: (a) Margaret Mosal's election as the first National President of PTK in 1930, (b) Rod Risley's induction in the AACC Hall of Fame in 2008, as well as (c) the well-documented claims of sexual harassment against Risley. *Id*. Mr. Moradian also included the allegations of embezzlement against "Robin Lowe, a former advisor for the PTK chapter at Itawamba Community College," and specified Lowe was "accused of converting public funds meant to benefit the PTK chapter for her own personal use." *Id*.

On April 27, 2024 "Rublamb," an experienced Wikipedia user, historian, and librarian— with no connection at all to Mr. Moradian or HonorSociety—moved certain information from Moradian's April 26, 2024 revision into a "Chapter and member misconduct" section, which was later renamed "Leadership Misconduct." *Id*. ¶ 11. Neither Mr. Moradian nor HonorSociety had anything to do with these edits or characterizations. *Id*.

Wikipedia's PTK article also has a "Notable members" section. *Id*. ¶ 12. Previously, this section had 23 "Notable members." *Id*. But only three of those 23 "Notable members" had citations verifying their membership in PTK. *Id*. So, on July 20, 2024, Moradian deleted from PTK's article the 20 members without any citation. *Id*. He explained the edit by stating: "No citations or documentation to verify. Aiming to help create a neutral objective tone based on fact." *Id*.

He further edited the "Notable members" section on July 20, 2024 to add Thomas Matthew Crooks, who attempted to assassinate Donald Trump just seven days earlier, citing a news article verifying his PTK membership. *Id*. ¶ 13. Also on July 20, 2024, Moradian added a

"PTK Lawsuit" section to PTK's article concerning this case, citing to a Bloomberg Law article, PR Newswire press release, and an article from PTK's own website. *Id.* ¶ 14. Given that part of PTK's claims concern HonorSociety's alleged trademark infringement for using wreaths in its marketing, he cited to an article demonstrating that wreaths have been a symbol of success dating back to the ancient Greeks. *Id.*

On July 22, 2024, Moradian noticed that another Wikipedia user named "Coralreef78" had deleted (a) all mentions of Rod Risley, who was PTK's executive director for over 30 years, (b) the entire PTK Lawsuit section, (c) the entire Leadership Misconduct section, and (d) the Notable Members section. *Id.* ¶ 15. Coralreef78 claimed these changes "were made for accuracy and to correct changes that were made in bad faith to cause disruption." *Id.* Moradian suspected a PTK representative was behind Coralreef78's changes. *Id.* ¶ 16.

In fact, Lynn Tincher-Ladner's July 24, 2024 Declaration confirms that she ordered these wholesale deletions from PTK's Wikipedia article. Tincher-Ladner Declaration ¶ 17. Given that the information Coralreef78 deleted was well-cited within Wikipedia's guidelines, Moradian undid Coralreef78's revisions that same day. Moradian Declaration ¶ 17.

The next day, July 23, 2024, PTK's Coralreef78 again deleted the same information, this time with no justification. *Id.* Shortly thereafter on July 23, 2024, another Wikipedia user named "Viewmont Viking" undid Coralreef78's second wholesale deletion. *Id.* ¶ 18. Viewmont Viking cited Coralreef78's "unexplained removal of well sourced information." *Id.*

Neither Moradian nor anybody else at HonorSociety is affiliated with the user Viewmont Viking. *Id.* Minutes after Viewmont Viking's edits, Coralreef78 again deleted this well-sourced information from PTK's Wikipedia article. *Id.* ¶ 19. Then, Viewmont Viking undid PTK's deletion, stating that Coralreef78 was "POV [point of view] pushing." *Id.* One minute later, Coralreef78 again deleted the information. *Id.* And a few minutes after that, Viewmont Viking undid PTK's deletion, stating they were "[r]everting back to sourced information." *Id.*

The "revision history" attached to Lynn Tincher-Ladner's July 24, 2024 Declaration as Exhibit E-2, which she claims is a "true and correct copy of the PTK 'Revision History' page,"

ends at July 5, 2024. Tincher-Ladner Declaration Ex. E-2. Tincher-Ladner's Declaration therefore omits material edits, namely Coralreef78's repeated flagrant deletions of well-sourced information. *Compare* Tincher-Ladner Declaration ¶¶ 17–19 and Ex. E-2 *with* Moradian Declaration ¶¶ 15–19 and Ex. 16. Neither Mr. Moradian nor HonorSociety were responsible or had any influence or control over this back-and-forth between PTK and Viewmont Viking. Moradian Declaration ¶¶ 18–20.

On July 23, 2024, Wikipedia blocked Coralreef78—PTK's account—from editing due to PTK's repeated deletion of well-sourced information. *Id.* ¶ 20. The following day, another Wikipedia user named "Makemyday1918" (a) deleted the PTK Lawsuit and Leadership Misconduct sections, and (b) added back the un-cited 23 "Notable members" to PTK's Wikipedia article. *Id.* ¶ 21. Makemyday1918 claimed to have made these revisions to "revere[] [sic] to a clean version due to vandalism." *Id.*

It was clear that Makemyday1918 was another PTK representative attempting to circumvent Coralreef78's ban and reinstate PTK's wholesale deletions of well-sourced information. *Id.* ¶ 22. So Moradian undid Makemyday1918's revisions on July 24, 2024, citing "POV washing and vandalism. Makemyday1918 is Coralreef78 circumventing wikiban. Also Makemyday1918 is a company representative against Wiki TOS trying to subvert the page into an advert." *Id.*

On July 24, 2024, a Wikipedia moderator named "Lectonar" blocked Makemyday1918 for "Block evasion." *Id.* ¶ 23. Wikipedia editors had determined that Moradian's edits were well sourced and objectively true, and that PTK's edits were an attempt to shield the public from truthful information. *See id.* ¶¶ 15–23.

## B. The injunction concerned articles that HonorSociety published on its website.

PTK's underlying motion requested a preliminary injunction and gag order barring HonorSociety from speaking about this lawsuit and PTK. Docket No. 221. It filed the motion after HonorSociety had published 5,000 articles on its website and some social-media posts about this lawsuit and PTK's business practices. *Id.*

One article and social-media post contained a cartoon illustration of a woman that the Court determined was a depiction of HonorSociety's CEO, Dr. Tincher-Ladner, as East Asian. Docket No. 230 at 14–15. The Court characterized the woman in the cartoon as appearing "to be untrustworthy as she is selling fake medals or certificates." *Id*. at 15. In reality, the image was not intended to depict Dr. Tincher-Ladner or convey any racial message whatsoever, but was likely the result of artificial intelligence associating sashes with both graduation attire and Japanese Kimonos. Moradian Declaration ¶ 27. HonorSociety did not itself create the image. *Id*.

Other HonorSociety articles:

- reported about Robin Lowe, a PTK chapter advisor at Itawamba Community College, who was arrested for embezzling funds meant to benefit the PTK chapter;

- reported about PTK's former executive director, Rod Risley, who was accused by multiple women of sexual harassment, which was documented in many media articles that HonorSociety's articles linked to; and

- contained a directory of PTK's chapters with information that HonorSociety believes is important for the public to know. Docket No. 230 at 3, 12–14.

## C. PTK admitted that it cannot identify a single lost contract or customer caused by HonorSociety publishing the articles.

At the hearing, PTK's only witness, Dr. Lynn Tincher-Ladner, testified that she was unaware of a single lost contract or sale as a result of HonorSociety's articles. Evid. Hr'g Tr. vol. 1, July 12, 2024, 175:19–179:23. When pressed as to why she believes that PTK lost a sale or contract due to HonorSociety, she testified that she just assumed it was because of HonorSociety's articles and other communications. *Id*. at 178:17–179:23. "I don't know why these people are pulling out. I'm assuming it's because of this, but I'm not going to sit here and tell you anything that I don't know. So they haven't told me why they have left." *Id*. at 179:3–6. Dr. Tincher-Ladner further admitted that, of the "$80,000 in revenue from new members" PTK alleges it lost since HonorSociety's articles "hit the internet," there was no way for PTK to know it was due to the articles. *Id*. at 180:6–11.

**D.    The Court issued a six-part preliminary injunction.**

On August 22, 2024, the Court issued the following preliminary injunction with six parts ordering that HonorSociety, Moradian, and everyone associated with them:

> 1) Immediately cease edits to PTK's Wikipedia page, and subject itself to discovery on Wikipedia edits it may have made or caused during this litigation.

> 2) Remove all images of the cartoon East Asian woman vendor from its webpages and social media posts.

> 3) Remove all false subject matter from its webpages and social media posts regarding the Itawamba Community College chapter advisor's arrest.

> 4) Limit its reporting on the sexual harassment allegations against Risley to existing media articles only, rather than articles of its own creation.

> 5) Add the actual contact information for every PTK chapter into the "Directory," or delete the "Directory."

> 6) Add the following disclaimer, in 12 point or larger size font, to the top of all remaining webpages and social media posts that concern or reference this litigation:

> > Disclaimer: The author of this article is not a neutral party in the referenced litigation. HonorSociety.org Inc., Honor Society Foundation Inc., and its president Michael Moradian were sued in federal court by PTK on April 20, 2022 for False Designation of Origin, Trade Dress Infringement, and Unfair Competition. Honor Society and Michael Moradian countersued and are presently defendants/counter-plaintiffs in this litigation. Litigation is still ongoing and all claims made regarding this case are just allegations against the parties.

Honor Society, of course, may elect to take down prior content if adding this disclaimer to every page or post would be too burdensome. Docket No. 230 at 26.

## Argument

A stay pending appeal "simply suspends judicial alteration of the status quo." *Veasey v. Perry*, 769 F.3d 890, 892 (5th Cir. 2014) (citing *Nken v. Holder*, 556 U.S. 418, 429 (2009)). In deciding whether to grant a stay, a court considers four factors: "'(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant

will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interest in the proceeding; and (4) where the public interest lies.'" *Plaquemines Par. v. Chevron United States, Inc.*, 84 F.4th 362, 373 (5th Cir. 2023) (quoting *Nken*, 556 U.S. at 434).

The first two factors are most critical. *Nken*, 556 U.S. at 434. Where one factor—such as likelihood of success on the merits here—is strong, the showing on the other factors need not be as much. *See, e.g.*, *Ruiz v. Estelle*, 650 F.2d 555, 565 (5th Cir. 1981). And when the enjoined party has lost its First Amendment freedoms even temporarily, irreparable injury is presumed. *Roman Catholic Diocese v. Cuomo*, 592 U.S. 14, 19 (2020).

**A.    The injunction is an unconstitutional prior restraint and overbroad because it prohibits First Amendment protected speech and is not limited to specific false statements.**

An injunction "is overbroad if it is not narrowly tailored to remedy the specific action which gives rise to the order as determined by the substantive law at issue." *Scott v. Schedler*, 826 F.3d 207, 211 (5th Cir. 2016). It is "axiomatic that an injunction is overbroad if it enjoins a defendant from engaging in legal conduct." *Missouri v. Biden*, 83 F.4th 350, 395 (5th Cir. 2023) (reversed on other grounds). In *Missouri v. Biden*, for example, the Fifth Circuit held that a preliminary injunction was "broader than necessary" to remedy the plaintiffs' injuries. There, the district court enjoined government officials from engaging in any action "for the purpose of urging, encouraging, pressuring, or inducing" content moderation. *Id.* But the Fifth Circuit reasoned in vacating the preliminary injunction that none of this conduct would violate the Constitution "unless and until" it became coercion or significant encouragement. *Id.*

An injunction against speech—also known as a prior restraint—may only occur in exceptional cases. *CBS v. Davis*, 510 U.S. 1315, 1317 (1994). In *CBS*, CBS was alleged to have obtained video footage of an unsanitary meat-packing plant. The meat-packing plant sued to prevent telecast of the footage, alleging claims of trespass and violations of the Uniform Trade Secrets Act, among others. *Id.* at 1315–16.

Despite acknowledging the broadcast could "result in significant economic harm" to the meat plant and the footage was likely obtained through "calculated misdeeds" by CBS, the Court issued a stay of the injunction. *Id.* at 1318. "[T]he gagging of publication has been considered acceptable only in 'exceptional cases.'" *Id.* at 1317. The Court noted that "even where questions of allegedly urgent national security...or competing constitutional interests...are concerned, we have imposed this 'most extraordinary remedy' only where the evil that would result from the reportage is both great and certain and cannot be militated by less intrusive measures." *Id.*

1.  **The first order forbidding Wikipedia page editing is overbroad because it prohibits all speech, even true speech, and speech that is of public concern.**

A prior restraint prohibits future speech. *United States v. Brown*, 218 F.3d 415, 424 (5th Cir. 2000) (defining prior restraints as "predetermined judicial prohibition[s] restraining specified expression"). The Court ordered that HonorSociety not edit PTK's Wikipedia page. Wikipedia is a public forum where anyone can add or revise information. Pages are not owned by anyone; everyone is free to contribute, and Wikipedia's value lies in crowdsourcing. If one person adds something that is untrue or incomplete, others can correct or comment on it. And then Wikipedia moderators make the final decision, such as the decision they made banning PTK because its edits were not well sourced, while HonorSociety's edits were well sourced.

The Court's order is a prior restraint because it prevents HonorSociety from making any statements at all—about anything—on the Wikipedia page referencing PTK. HonorSociety is banned from publishing true information and information that is of public concern. Wikipedia has already determined that HonorSociety's edits were well sourced. This means that HonorSociety's contributions to Wikipedia are valuable and positive for discussion about matters of public concern. The order prohibiting these edits not only interferes with HonorSociety's First Amendment rights, but also the public's right to valuable information.

There is a "strong presumption against the constitutionality of any prior restraint, and the burden of justification is therefore heavier than that imposed in cases involving only subsequent restrictions on freedom of expression." *Bernard v. Gulf Oil Co.*, 619 F.2d 459, 473–74 (5th Cir.

1980) (collecting cases). A prior restraint is justified only if the expression sought to be restrained will "surely result in direct, immediate, and irreparable damage." *International Society for Krishna Consciousness v. Eaves*, 601 F.2d 809, 833 (5th Cir. 1979) (quoting *New York Times Co. v. United States*, 403 U.S. 713, 730 (1971)). The restraint "must fit within one of the narrowly defined exceptions to the prohibition against prior restraints," *Southeastern Promotions, Ltd. v. Conrad*, 420 U.S. 546, 559 (1975). The Supreme Court has noted that these narrow exceptions are limited to those few circumstances where "the publication must inevitably, directly, and immediately cause the occurrence of an event kindred to imperiling the safety of a transport already at sea." *New York Times Co. v. U. S., supra*, 403 U.S. at 726–27 (Brennan, J., concurring); *see also Whitney v. California*, 274 U.S. 357, 377 (1927) (Brandeis, J., concurring) ("Only an emergency can justify repression").

Even if there is a basis for a prior restraint, it must be narrowly tailored "to achieve the pin-pointed objective of the needs of the case." *Tory v. Cochran*, 544 U.S. 734, 738 (2005) (internal quotation marks omitted); *see also Marceaux v. Lafayette City-Parish Consol. Gov't*, 731 F.3d 488 (5th Cir. 2013) (protective order requiring website be taken down not narrowly tailored to address competing constitutional fair trial concerns). And the participation of both sides is necessary to narrowly tailor an injunction on speech. *Carroll v. President & Comm'rs of Princess Anne,* 393 U.S. 175, 184 (1968).

None of these requirements are met here. The injunction prohibits all speech on a Wikipedia page even though HonorSociety's past edits were all truthful, matters of public concern, and found to be well sourced. There is no emergency. The order is not narrowly tailored but instead bars all speech. It was drafted by the Court alone without input from any party and constitutes a prior restraint.

## 2. The second order prohibiting cartoon art is overbroad because it does not target false speech, or even any speech that is capable of being proven true or false.

The First Amendment safeguards most speech, extending protection to jokes, parodies, and satire, "whether clever or in poor taste." *Bailey v. Iles*, 87 F.4th 275, 283 (5th Cir. 2023) (citation

omitted). The Court ordered HonorSociety to cease publication of a cartoon artwork that the order described as an "East Asian woman." The order indicates that the Court found the caricature offensive because the Court believed the illustration played into racial stereotypes. To be clear, HonorSociety did not intend to perpetrate racial stereotypes. The illustration was created by artificial intelligence. HonorSociety did not realize that the image might be interpreted in a racially insensitive manner. But even if the Court does not believe HonorSociety, whether the illustration is offensive should not be considered in deciding whether to ban it.

A court may not ban speech on the basis that it expresses offensive ideas. *Matal v. Tam*, 582 U.S. 218, 223 (2017). The Supreme Court emphasizes that this is a bedrock principle of the First Amendment. *Id.* In *Matal*, the lead singer of "The Slants" sought registration of THE SLANTS as a trademark through the United States Patent and Trademark Office. *Id.* at 228. "Slants" is a derogatory term for those of Asian descent. *Id.* at 223. The Asian American band members believed that by using the slur as the name of their group, they could "reclaim" the term and "drain its denigrating force." *Id.*

The Trademark Office denied the trademark application based on a federal provision that prohibited the registration of any trademarks that may "disparage any persons." *Id.* (citing 15 U.S.C. § 1052(a)). The Supreme Court disagreed, holding that it has "said time and time again that 'the public expression of ideas may not be prohibited merely because the ideas are themselves offensive to some of their hearers.'" *Id.* at 244 (quoting *Street v. New York*, 394 U.S. 576, 592 (1969)).

Here, the Court's order violates the First Amendment for the same reason that the Trademark Office's refusal to register THE SLANTS did in *Matal*. This Court believes that the image of an East Asian woman is "despicable." But "the public expression of ideas may not be prohibited merely because the ideas are themselves offensive to some of their hearers." *Id.* In *Matal*, the Supreme Court held that an Asian racial slur must be protected even if it is offensive. The image here was not intended to perpetrate any offensive stereotypes. But even assuming the image is offensive, under *Matal* it is still protected speech. Because the Supreme Court held that

an outright racial slur is protected, an image that some might interpret as perpetrating a racial stereotype is also protected.

Separately, illustrations and parodies are protected by the First Amendment. In *Hustler Magazine v. Falwell*, the court found that a parody of an advertisement was protected speech under the First Amendment. 485 U.S. 46, 57 (1988). There, the magazine portrayed a famous televangelist as a drunkard partaking in an "incestuous rendezvous with his mother in an outhouse." *Id.* at 48. In ruling that the caricature was protected speech, the court stated that "satirical cartoons have played a prominent role in public and political debate." *Id.* at 54. The Supreme Court has had a "longstanding refusal to allow damages to be awarded because the speech in question may have an adverse emotional impact on the audience." *Id.* at 55.

Here, HonorSociety posted a parody created by artificial intelligence that some might find offensive, just like the parody in *Hustler*. But under the precedent, a court may not consider offensiveness when determining if speech is protected. Rather, the court must determine whether the illustration can be provable as a false assertion of fact. The parody image that HonorSociety published may lead to subjective interpretations but did not assert objective facts capable of being proven false. The illustration was a caricature subject to full First Amendment protection as established by *Hustler*.

### 3. The third order prohibiting discussion about the Itawamba Community College chapter advisor's arrest is overbroad because it applies to completely true statements and is vague as to what is "false".

Without identifying any particular false statements to delete, the order requires HonorSociety to "remove all false subject matter from its webpages and social media posts regarding the Itawamba Community College chapter advisor's arrest." Order at 26. The pages in question discuss—with links to news articles and other documents—an incident where a PTK chapter adviser was arrested for taking funds intended for PTK and converting them to her own use.

Injunctions are considered vague and violate due-process rights unless "an ordinary person reading the court's order [can] ascertain from the document itself exactly what conduct is proscribed." *Louisiana v. Biden*, 45 F.4th 841, 846 (5th Cir. 2022). To the extent the order requires HonorSociety to determine what is "false" in general, it is vague.

Other sections of the order suggest that the false subject matter in question is the Court's belief that the article "makes Lowe appear as a PTK employee" when in fact she was an unpaid volunteer. Order at 12. But the article refers to Lowe only as an "adviser" without making any statements about whether she was paid. HonorSociety's articles never referred to Lowe as an employee, only as an advisor. And in truth, Lowe was an advisor. So the order is vague as to what specifically HonorSociety must remove.

The order next objects to HonorSociety's misstatement that television station "WLBT reported that the funds were meant for scholarships, events, and other educational purposes, underscoring the betrayal of trust." WLBT reported the theft but did not explain what the funds were for. But there is no dispute that the funds were meant for scholarships, events, or other educational purposes. The only mistake was attributing those true facts to WLBT's story. HonorSociety has since corrected this minor mistake, and that it made a mistake is not grounds for removing all true statements about the incident.

Directing HonorSociety's attention to a specific page of its article, the order compels HonorSociety to remove the key reason the article was written: to convey HonorSociety's opinion that Lowe's ability to steal funds was due to PTK's lack of leadership and internal controls. Order at 12. That is an opinion protected by the First Amendment—not a false factual statement. But the Court appears to have misread or misunderstood sections of the page. The order appears to find false the opinion that PTK's leadership led to the embezzlement because public funds are taxpayer funds, which appears nowhere in the article:

> Honor Society's webpage repeatedly attributes Lowe's alleged conduct to PTK's
> leadership and internal controls. Ex. A-8 at 4. But the Mississippi Office of the State
> Auditor stated that Lowe is "accused of converting public funds meant to benefit the PTK

> chapter for her own personal use." [citation omitted]. Public funds are taxpayer funds, not
> PTK membership dues or other money students paid to PTK. Honor Society's claim is a
> lie. Honor Society knows it is a lie. How do we know? It refers to the State Auditor's
> website in Moradian's Declaration. [citation omitted] This was done without right or
> justifiable cause.

Order at 12–13. Whether funds are taxpayer funds is irrelevant to whether PTK's internal

controls failed. That a chapter advisor could embezzle funds leads HonorSociety to conclude that

PTK's internal controls failed because PTK did not put into place any procedures to prevent

chapter-advisor transgressions. That's HonorSociety's opinion.

HonorSociety is free under the First Amendment to express its opinion. And whether the

funds were "taxpayer funds" is not germane to that conclusion. No false statements appeared in

the article about Lowe's embezzlement. So the order to "remove all false subject matter from its

webpages and social media posts regarding the Itawamba Community College chapter advisor's

arrest" without identifying any specific false statements or text to remove is overbroad, vague,

and violates the First Amendment.

4. **The fourth order prohibiting reporting on the sexual-harassment allegations against Risley is viewpoint discrimination, and overbroad because it forbids true statements and opinions about a matter of public interest.**

The next order prevents HonorSociety from making any statements about sexual

harassment allegations against former PTK Director Ron Risley other than linking to "existing

media articles only." Preventing HonorSociety from making any comments about Ron Risley

other than what has already been published is a prior restraint, overbroad, and deprives

HonorSociety of all means of communicating about an important topic—whether Mr. Risley's

actions during his leadership of PTK harmed PTK or its members.

It is also unlawful viewpoint discrimination. The government may not regulate speech

based on its content or the message it conveys. *Police Dept. of Chicago v. Mosley*, 408 U.S. 92, 96

(1972). "When the government targets not subject matter, but particular views taken by speakers

on a subject, the violation of the First Amendment is all the more blatant." *Rosenberger v. Rector & Visitors of the Univ. of Va.*, 515 U.S. 819, 829 (1995); *see HN6 R. A. V. v. St. Paul*, 505 U.S. 377, 391 (1992). Viewpoint discrimination is a form of content discrimination and is presumed impermissible when directed against speech otherwise within a forum's limitations. *Rosenberger,* 515 U.S. 819 at 829–30.

Forbidding HonorSociety from commenting on sexual-harassment allegations, and only allowing it to refer to other sources, violates the First Amendment in two respects. First, it is viewpoint discrimination: HonorSociety cannot express its own views, but instead must limit itself only to those of others. Second, prohibiting HonorSociety from speaking truthfully about the Rod Risley allegations is overbroad because the order prevents HonorSociety from speaking about truthful matters totally protected by the First Amendment.

**B.    The preliminary injunction unconstitutionally compels speech, which the First Amendment does not allow a court to do in these circumstances.**

"[T]he First Amendment protects an individual's right to speak his mind regardless of whether the government considers his speech sensible and well intentioned or deeply 'misguided.'" *303 Creative LLC v. Elenis*, 600 U.S. 570, 586 (2023) (citing *Hurley v. Irish-American Gay*, 515 U.S. 557, 574 (1995)). "Generally, too, the government may not compel a person to speak its own preferred messages." *Id.* (citing *Tinker v. Des Moines Independent Community School Dist.*, 393 U. S. 503, 505–506 (1969)). The Court may not compel a person to speak a message that the Court thinks is appropriate or require a party to include other ideas with the party's own message that it would prefer not to include. *See id.* (citing *Hurley*, 515 U. S., at 568–70, 576).

But here, the Court's order forces HonorSociety to include the Court's ideas with its own message that HonorSociety would prefer not to include. This violates the First Amendment prohibition against compelled speech.

- 16 -

1. **The fifth order requiring HonorSociety to include PTK's address information on HonorSociety's own website compels HonorSociety to promote its competitor's business, which is unconstitutional viewpoint discrimination.**

Impermissible viewpoint discrimination occurs when an order compels a person to include material on a website that the person does not wish to include. *See 303 Creative LLC v. Elenis*, 600 U.S. 572 (2023). Here, the Court compels HonorSociety to include "the actual contact information for every PTK chapter" in HonorSociety's directory. But HonorSociety does not wish to promote or endorse PTK's business. *See* Moradian Declaration ¶ 25. Nor does HonorSociety take the view that the address of its competitor should be included in its directory about the competitor's practices. *Id*. The articles serve the purpose of informing the public about what HonorSociety considers important about each chapter, and not what others consider important—such as PTK's contact information.

Yet the Court ordered that HonorSociety promote its competitor's business by including PTK's contact information in the directory pages. The Court converts a list that enables students to learn that their particular chapter is part of a nationwide organization with questionable practices into advertising for PTK. This viewpoint discrimination violates the First Amendment mandate against compelled speech.

2. **The sixth order requiring HonorSociety to include a prewritten "disclaimer" unconstitutionally compels HonorSociety to speak the court's preferred message and not HonorSociety's own message.**

The Court drafted a "disclaimer" that it requires HonorSociety to include at the top of all its articles. The disclaimer characterizes this lawsuit from the PTK's point of view, requiring HonorSociety to state on its websites that it is not a neutral party, when the facts it includes in the articles are neutral and objective, and when the articles already state that HonorSociety is in litigation with PTK.

The disclaimer characterizes this lawsuit from PTK's point of view rather than HonorSociety's point of view. The order requires HonorSociety to first post that PTK has sued HonorSociety, when HonorSociety's viewpoint and the message it wishes to convey is that it sued PTK through its counterclaims. HonorSociety believes that the focus of the lawsuit should

be on HonorSociety's claims and not PTK's meritless claims. Moradian Declaration at ¶ 26. But the order requires HonorSociety to express the oppositive view. HonorSociety has the right to express its own views about the lawsuit, namely that it filed its claims against PTK.

HonorSociety should not have to publish PTK's viewpoint that HonorSociety is more of a defendant than a plaintiff because that gives the impression that PTK's claims have more merit than HonorSociety's claims. This is government-compelled speech which "inherently regulates speech on the basis of its content." *R J Reynolds Tobacco Co. v. FDA*, 96 F.4th 863, 875–76 (5th Cir. 2024); *see also Hurley v. Irish-Am. Gay, Lesbian & Bisexual Grp. of Bos.*, 515 U.S. 557, 573–74 (1995); *see also Riley v. National Federation of Blind, Inc.*, 487 U.S. 781, 795 (1988). This content-based restriction is reviewed under strict scrutiny unless an exception applies, such as commercial speech. *Id.*

Commercial speech is "speech which does 'no more than propose a commercial transaction.'" *Virginia State Bd. of Pharmacy v. Virginia Citizens Consumer Council*, 425 U.S. 748, 762 (1976) (quoting *Pittsburg Press Co. v. Human Relations Comm'n*, 413 U.S. 376, 385 (1973)). To determine if speech is commercial, some courts consider: (1) whether the communication is an advertisement, (2) whether the communication refers to a specific product or service, and (3) whether the speaker has an economic motivation for the speech. *Procter & Gamble Co. v. Amway Corp.*, 242 F.3d 539, 552 (5th Cir. 2001); *Bolger v. Youngs Drug Prods. Corp.*, 463 U.S. 60, 67 (1983). "If all three factors are present, there is strong support for the conclusion that the speech is commercial." *Proctor & Gamble Co.*, 242 F.3d at 552 (internal quotation marks omitted).

HonorSociety's 5,000 articles about PTK's business practices are not commercial speech because they do not advertise any product, and only a few refer to PTK's services. While some HonorSociety articles discuss PTK's false claims—such as that PTK only accepts the top 10% of students—most discuss matters that do not relate to PTK's services, such as the sexual-harassment allegations and embezzlement arrest. While HonorSociety does have some economic motivation for posting the articles, an economic motivation "would clearly be insufficient by itself to turn the materials into commercial speech." *Bolger*, 463 U.S. at 67 (citing *Bigelow v. Virginia*,

421 U.S. 809, 818 (1975); *Ginzburg v. United States*, 383 U.S. 463, 474 (1966); and *Thornhill v. Alabama*, 310 U.S. 88 (1940)).

Under strict scrutiny, which applies if the speech is not commercial, a challenged government action is invalid "unless it is (1) justified by a compelling governmental interest and (2) is narrowly tailored to advance that interest." *Perez v. City of San Antonio*, 98 F.4th 586, 611 (5th Cir. 2024.) "Narrow tailoring requires the government to show that measures less restrictive of the First Amendment activity could not address its interest." *Id.* These standards are not met here. There is no compelling governmental interest in ensuring the minutiae of litigation—such as whether a counter-plaintiff is materially different than being an original plaintiff—are displayed. And no less restrictive means were even considered.

Even if the speech was commercial, a government-compelled disclaimer must be both factual and noncontroversial, as well as justified by a legitimate state interest such that it remedies a potentially real harm and not a purely hypothetical one. *R J Reynolds Tobacco Co. v. FDA*, 96 F.4th at 876–77. For example, in *National Institute of Family & Life Advocates* ("NIFLA"), California required certain clinics to notify women that California had not licensed the clinics to provide medical services. *Nat'l Inst. of Family & Life Advocates v. Becerra*, 585 U.S. 755, 760–61 (2018). The Court held that California had not demonstrated anything more than hypothetical harm because it provided no evidence that women did not know the covered facilities were staffed by unlicensed providers. *Id.* at 776–77.

By contrast, in *R J Reynolds Tobacco Co.*, Congress required cigarette manufacturers to place warnings about the danger of cigarettes on its packages and advertisements, as required by the FDA. *R J Reynolds Tobacco Co.*, 96 F.4th at 867. The *R J Reynolds* court found that increasing public understanding of the risks of smoking was a legitimate state interest. *Id.* at 883. A government-compelled disclaimer must also not be unduly burdensome, which means that the burden cannot be excessive or disproportionate to the benefits gained. *Id.* at 885.

The criteria for a government-imposed message is not met here. There is no state interest in providing a disclaimer about the details of a lawsuit: that HonorSociety's suit might be

characterized as a counter-lawsuit rather than a lawsuit is immaterial because a counter-lawsuit is still a lawsuit. Leading with PTK's claims rather than HonorSociety's claims serves no purpose other than to impose PTK's viewpoint. And that HonorSociety is not a disinterested party is obvious because HonorSociety's webpages all note that HonorSociety sued PTK. Consumers would not review those pages seeing that litigation is pending and believe HonorSociety is totally neutral.

And revising thousands of individual webpages to add a disclaimer that characterizes the lawsuit from PTK's point of view rather than HonorSociety's is burdensome. The disclaimer at the top might lead the public to stop reading and never see the information below it, which is important and of public concern. There's no public benefit to informing consumers before any other speech that a lawsuit is pending and that HonorSociety didn't file its claims before PTK filed its claims.

Whether analyzed under strict scrutiny or intermediate scrutiny as commercial speech, the disclaimer is unconstitutional.

### C.    The preliminary injunction is invalid because it relies on correlation that is not causation on whether HonorSociety interfered with a contract or sale.

For a preliminary injunction to issue, the movant must demonstrate a substantial likelihood of prevailing on the merits. *Bluefield Water Ass'n Inc. v. City of Starkville, Miss.*, 577 F.3d 250, 252 (5th Cir. 2009). A tortious-interference plaintiff must show that a contract existed between it and a third party, that the third party failed to perform, and the contract would have been performed if the defendant did not engage in wrongful acts. *Par Indus. v. Target Container Co.*, 708 So. 2d 44, 48 (Miss. 1998). The plaintiff must prove that the contract would have been performed but for the alleged interference. *Id.*

In other words, tortious interference requires specific contracts or customers that the defendant caused the plaintiff to lose. For example, the Third Circuit in *Am. Millenium Ins. Co. v. First Keystone Risk Retention Grp, Inc.* found that the plaintiff's tortious-interference claim could not succeed because it did not identify a single, specific customer that the plaintiff lost or could

have acquired due to the defendant's conduct. *Am. Millenium Ins. Co. v. First Keystone Risk Retention Grp, Inc.,* 332 F. App'x 787, 790 (3d Cir. 2009). As with every claim in federal court, the plaintiff's harm must be both real and not speculative. *Tribal Sols. Grp., L.L.C. v. Valandra*, No. 23-60233, 2023 U.S. App. LEXIS 29539, at *4 (5th Cir. Nov. 6, 2023).

Here, like the plaintiff in *Am. Millenium Ins. Co.*, PTK's tortious-interference claim is not likely to succeed because it did not identify a single, specific customer that it lost or could have acquired due to the defendant's conduct. Instead, PTK's only witness admitted that she merely is "assuming" that PTK lost business because of HonorSociety's articles. Evid. Hr'g Tr. vol. 1, July 12, 2024, 178:17–179:23. Assumption is, by definition, speculation and conjecture—and not evidence of a specific contract.

The Court found that PTK showed a lost contract or sale by presenting evidence that at least 20 students had left lifetime membership, many of them after HonorSociety's posts. (Order at 16.) It further noted that one canceling student said it was canceling because its personal information was being disclosed, and that disclosure of personal information was the topic of an HonorSociety post. *Id.* Finally, the court relied on testimony that 15% of PTK's college and corporate partners have decided not to renew PTK Connect memberships. (Order at 17.)

That finding is mere correlation between HonorSociety's actions and decreased revenue. But "correlation is not causation." *Huss v. Gayden*, 571 F.3d 442, 459 (5th Cir. 2009). "Evidence of mere correlation, even a strong correlation, is often spurious and misleading when masqueraded as causal evidence, because it does not adequately account for other contributory variables." *United States v. Valencia*, 600 F.3d 389, 425 (5th Cir. 2010).

No evidence exists that the one student who canceled because PTK's partners were marketing to the student saw or relied on HonorSociety's posts before its email and social-media inbox was suddenly full of unsolicited offers. The more likely scenario is that the student was sick of getting marketing solicitations, so she asked to cancel her membership. There is no evidence that links HonorSociety to lack of revenue or partnerships.

- 21 -

Rather than finding a specific lost contract or sale, which the law requires, the Court found correlation between alleged lost sales and the posting of articles. Because correlation is not causation, the Court erred in making that finding. PTK failed to show a lost contract or sale, and so it is not substantially likely to succeed on the merits of its tortious-interference claim. For that reason, the injunction should not have issued.

**D. When First Amendment rights are at stake, both irreparable harm to the enjoined party and substantial harm to other parties are presumed, which also means the public interest would be served by a stay.**

In addition to showing a likelihood of success on the merits of its appeal, HonorSociety must show that if a stay is not entered it will suffer irreparable injury and other parties will suffer substantial harm, and that public interest would be served by a stay.

"The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Roman Catholic Diocese*, 592 U.S. at 19 (quoting *Elrod v. Burns*, 427 U.S. 347 (1976)). Likewise, protecting First Amendment freedoms is "always in the public interest." *Opulent Life Church*, 697 F.3d 279, 298 (5th Cir. 2012) (citing *Christian Legal Soc'y v. Walker*, 453 F.3d 853, 859 (7th Cir. 2006)); *see also Ingebretsen ex rel. Ingebretsen v. Jackson Pub. Sch. Dist.*, 88 F.3d 274, 280 (5th Cir. 1996).

The injunction prevents HonorSociety from exercising free-speech rights in a fundamental way: HonorSociety seeks to disseminate information that a business competitor is not what it claims to be and that, in truth, its competitor is a scheme designed to extract money from college students while at the same time selling their personal information to marketers.

The public interest is served by a stay of the injunction so that true information about PTK's business practices is available for the public to consider.

### Conclusion

The Court's injunction is unconstitutionally overbroad because it prevents HonorSociety from speaking at all on key issues, it unconstitutionally compels HonorSociety to include speech that HonorSociety does not wish to publish, and it limits HonorSociety's ability to express its

views. Also, the injunction is based on tortious-interference claims that cannot succeed because PTK admits that it knows of no lost contract or sale arising from HonorSociety's articles.

HonorSociety is likely to succeed on its appeal. And because First Amendment rights are at stake, irreparable injury to HonorSociety and harm to the public are presumed. The injunction is unconstitutional, and its effects should be stayed while HonorSociety pursues an appeal.

HonorSociety respectfully requests that the Court stay enforcement of the preliminary injunction pending appeal and resolve this motion as soon as possible, and preferably by Tuesday, September 3, so that HonorSociety may promptly seek appellate relief, if necessary.

Dated: August 27, 2024

Respectfully Submitted,

s/ Derek A. Newman
Derek A. Newman (pro hac vice)
Derek Linke (pro hac vice)
Keith P. Scully (pro hac vice)
Newman llp
100 Wilshire Blvd, Suite 700
Santa Monica, CA 90401
Tel: (310) 359-8200
dn@newmanlaw.com
linke@newmanlaw.com
keith@newmanlaw.com

s/ Dakota J. Stephens
W. Whitaker Rayner (MS Bar # 4666)
Dakota J. Stephens (MS Bar # 106695)
Hugh A. Warren, V (MS Bar #106711)
Jones Walker llp
190 E. Capitol St., Suite 800
Jackson, Mississippi 39201
Tel: (601) 949-4724
wrayner@joneswalker.com
dstephens@joneswalker.com
hwarren@joneswalker.com

Attorneys for Defendant, Counter-Claimant, and Third-Party Plaintiff HonorSociety.org Inc. and Defendant Honor Society Foundation, Inc.

## Certificate of Service

I hereby certify that on August 27, 2024, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system. Participants in the case are registered CM/ECF users and service will be accomplished by the CM/ECF system.

Executed this 27th day of August, 2024          s/ Derek A. Newman
                                                 Derek A. Newman