### UNITED STATES DISTRICT COURT
### SOUTHERN DISTRICT OF MISSISSIPPI
### NORTHERN DIVISION

| | | |
|---|---|---|
| PHI THETA KAPPA HONOR SOCIETY, | ) | |
| | ) | |
| Plaintiff/Counter-Defendant | ) | Civil Action No. 3:22-cv-00208-CWR-RPM |
| | ) | |
| v. | ) | |
| | ) | |
| HONORSOCIETY.ORG, INC., | ) | |
| | ) | |
| Defendant/Counter-Plaintiff /Third-Party-Plaintiff | ) | |
| | ) | |
| HONOR SOCIETY FOUNDATION, INC., | ) | |
| | ) | |
| Defendant | ) | |
| | ) | |
| --------------------------------------------------- | ) | |
| | ) | |
| HONORSOCIETY.ORG, INC., | ) | |
| | ) | |
| Defendant/Counter-Plaintiff /Third-Party-Plaintiff | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| DR. LYNN TINCHER-LADNER, | ) | |
| | ) | |
| Third-Party Defendant | ) | |

## PHI THETA KAPPA HONOR SOCIETY'S AND DR. LYNN TINCHER-LADNER'S <u>THIRD MOTION TO COMPEL DISCOVERY</u>

# TABLE OF CONTENTS

**Page**

I.  INTRODUCTION ................................................................................................. 1

II.  LEGAL STANDARDS ........................................................................................ 2

III.  PTK'S AND TINCHER-LADNER'S SECOND SETS OF INTERROGATORIES ........ 3

    A.  The Discovery and the Events Leading to this Motion ........................................ 3

    B.  Motion to Compel Responses to PTK's and Tincher-Ladner's Second Set of Interrogatories ...................................................................................... 6

IV.  AUDIO RECORDINGS WITH STUDENTS REQUESTING REFUNDS AND CUSTOMER SERVICE ISSUES ...................................................................... 14

    A.  The Events Leading to the Filing of this Motion ............................................... 14

    B.  Motion to Compel the Audio Recordings ......................................................... 16

V.  SUPPLEMENTAL RESPONSES TO PTK'S AND TINCHER-LADNER'S FIRST SETS OF INTERROGATORIES ........................................................... 18

    A.  The Events Leading to the Filing of this Motion ............................................... 18

    B.  Motion to Compel Supplemental Responses to PTK's and Tincher-Ladner's First Set of Interrogatories ................................................................. 19

VI.  TIMING OF PRODUCTION ........................................................................... 25

VII.  AWARD OF ATTORNEYS' FEES TO PTK ...................................................... 25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Anding v. Ace Am. Ins.*,
No. 22-627-SDD-RLB, 2023 WL 4280921 (M.D. La. June 29, 2023) ...........................2, 3, 26

*BNY Mellon, N.A. v. Affordable Holdings, Inc.*,
No. 1:09-CV-00226-SA-JAD, 2010 WL 3717600 (N.D. Miss. Sept. 14, 2010).....................26

*Foster v. State Farm Fire and Cas. Co.*,
2023 WL 9181333 (S.D. Miss. Mar. 13, 2023) ...................................................................13, 14

*Hernandez v. Newell*,
No. 1:21-CV-322-TBM-RPM, 2023 WL 3881354 (S.D. Miss. Mar. 27, 2023) ................2, 26

**Other Authorities**

Fed. R. Civ. Pro. 33...............................................................................................................................2

Fed. R. Civ. Pro. 34...............................................................................................................................2

Fed. R. Civ. Pro. 37...............................................................................................................................2

## I.    Introduction

Phi Theta Kappa Honor Society comes to this Court a third time seeking relief arising from Defendants' discovery deficiencies. The discovery disputes here are simple in that there have been no disclosed disputes over the relevancy, burden, or proportionality of the four categories of responsive information sought. Instead, HonorSociety.org, Inc. ("Honor Society") has simply failed to produce the responsive information despite agreeing to do so by October 8, 2024 during the parties' conference with the Court on September 18, 2024. Phi Theta Kappa Honor Society ("PTK") and Dr. Lynn Tincher-Ladner ("Tincher-Ladner") are entitled to this responsive information, which is crucial to both proving their claims against Honor Society and defending against Honor Society's claims. Specifically, PTK and Tincher-Ladner seek the following information Honor Society has agreed to but failed to produce:

1.  Substantive responses to PTK's and Tincher-Ladner's Second Sets of Interrogatories (PTK No. 20, and Tincher-Ladner Nos. 19, 20, 21, 23, 24, 25, 26, 27, 28, 29, 30, 31, 32, and 33);

2.  Audio recordings of customer service calls with existing, former or prospective members concerning, in part, refunds from Honor Society (responsive to PTK RFP Nos. 7, 35, 36, 38, 57, 58, and 59, and Tincher-Ladner RFP Nos. 11, 14, 34, 47, and 48); and

3.  Supplemental Responses to PTK's and Tincher-Ladner's First Sets of Interrogatories (PTK Nos. 10, 14, 21, 22, and 23, and Tincher-Ladner Nos. 5, 6, and 7).

Left with no other choice but to seek the Court's intervention, PTK and Tincher-Ladner move to compel the above-mentioned responses and document production from Honor Society.

PTK seeks its fees in connection with this motion. Time and again, PTK has served discovery requests, provided correspondence identifying Honor Society's deficiencies (often repeatedly), met and conferred <u>to reach agreement</u> with Honor Society that it would produce responsive documents and supplement its responses – only for Honor Society to ignore its agreement and force PTK to seek Court intervention. By law (and in fairness), where PTK's

motion is successful in compelling Honor Society to provide responses and documents it promised to (and inexplicably did not) provide, Honor Society should pay for PTK's attorney's fees incurred in connection with such a motion.

## II.    Legal Standards.

Federal Rule of Civil Procedure 37(a) governs motions to compel discovery responses and provides that a party seeking discovery may move for an order compelling production against another party when the latter has failed to produce documents requested under Federal Rule of Civil Procedure 34. *Hernandez v. Newell*, No. 1:21-CV-322-TBM-RPM, 2023 WL 3881354, at *1 (S.D. Miss. Mar. 27, 2023). "If a party fails to answer interrogatories or permit inspection as required under Rule 33 and 34, the party seeking discovery may move to compel disclosure and for appropriate sanctions under Rule 37. An 'evasive or incomplete disclosure, answer, or response must be treated as a failure to disclose, answer, or respond.'" *Anding v. Ace Am. Ins.,* No. 22-627-SDD-RLB, 2023 WL 4280921, at *5 (M.D. La. June 29, 2023) (citing Fed. R. Civ. P. 37).

In *Anding*, Plaintiff sought to compel Defendants to provide responses to Plaintiff's written discovery requests after Defendants failed to do so on the parties' agreed upon extension date. *Id.* at *1. The court found that Plaintiff met its burden of proving the Motion to Compel should be granted, as Defendants not only missed deadlines set by the Federal Rules but also the agreed upon extension deadline. *Id.* at *5. The court also determined Plaintiff's reasonable attorneys' fees were an appropriate sanction "unless circumstances make an award of expenses unjust." *Id.* at *6. While the court was "sympathetic of defense counsel's [personal] circumstances, said circumstances do not make an award of attorney's fees unjust" and Defendants' counsel was not the only defense counsel of record. *Id.* Because Defendants argued the delay in response was solely the fault of counsel, the Court ordered expenses and fees to be paid by Defendants' counsel. *Id.*

Just as in *Anding*, Honor Society (or its counsel) has made commitments that it has failed to meet (i.e., production deadlines). As such, Honor Society should be compelled to produce the documents it has already agreed to produce. Further, an award of attorneys' fees is appropriate. It is unclear who continues to drop the ball on production—Honor Society or its counsel.

## III.    PTK's and Tincher-Ladner's Second Sets of Interrogatories.[1]

### A.    The Discovery and the Events Leading to this Motion.

On August 5, 2024, PTK served its Second Set of Interrogatories to Honor Society, some of which related to Honor Society's counterclaim for attempted monopolization, with others relating to other counterclaims asserted by Honor Society. Ex. A, Polak Decl. ¶ 2, Ex. A-2. On August 5, 2024, Dr. Tincher-Ladner served her Second Set of Interrogatories to Honor Society, some of which related to Honor Society's counterclaims, third-party claims and alleged damages. *Id.*, Ex. A-1. On September 5, 2024, Honor Society served its Responses to the Second Sets of Interrogatories which contained, in nearly every instance, boilerplate objections not authorized by the Federal Rule of Civil Procedure or otherwise acknowledged by the Fifth Circuit. *Id.*, Exs. A-1, A-2. The next day, PTK detailed the deficiencies with Honor Society's Responses and requested Honor Society provide confirmation by September 9 that full responses would be tendered by Honor Society by September 11, 2024. *Id.* ¶ 3, Ex. A-3.

No response was received by September 9, and PTK again requested a response to the September 6 communication.  *Id*. On September 10, 2024, Honor Society advised it would provide a "response" to the September 6 communication by no later than September 13, 2024. *Id.* ¶ 3. The

---

[1] During the September 18th conference, Honor Society did not report that it was withholding any documents or Interrogatory responses based on any of its boilerplate objections. And, the Court has made it clear that boilerplate objections are not sufficient on which to withhold documents.  Nonetheless, in an abundance of caution, PTK has set forth the objections asserted by Honor Society in response to each request, as would otherwise be required by local rule.

parties however had a meet and confer scheduled on other issues for September 12, 2024. *Id.*, ¶ 4. During that conference this issue of the September 6 communication was taken up, and Honor Society confirmed it would provide a supplemental "response" to the Second Sets of Interrogatories on September 13, 2024, and this "response" would include substantive answers. *Id.* ¶ 4. September 13 came and went with no supplementation despite this promise to do so. *Id.*

On September 14, 2024, PTK informed the Court by email of the outstanding discovery issues, including Honor Society's failure to fully respond to the Second Sets of Interrogatories. *Id.* ¶ 5, Ex. A-4. Following that request for a hearing, on September 16, Honor Society served its "supplemental responses" to PTK (Second Set) Interrogatory No. 20 only, and Dr. Tincher-Ladner's (Second Set) Interrogatory Nos. 22[2] and 30. *Id.* Exs. A-5 and A-6 (respectively). This was despite 13 other interrogatories being raised in the September 6 email and being discussed in the September 12 meet and confer.

All of these responses (other than the now supplemented No. 22) are at issue in this motion. The supplemental response provided by Honor Society to PTK Interrogatory No. 20 remains deficient. This interrogatory sought the identity of those facts relied on in Honor Society's monopolization/antitrust claim, the witnesses that will testify to those facts (including specificity as to what each witness will testify to) and the document supporting the claim. In this supplemental response, although 57 persons were identified as "witnesses" with knowledge, no description at all was provided as to the knowledge of those witnesses. Honor Society has still yet to identify any documents on which it relies for the claim. And although Honor Society claims in the original response that "In numerous instances, PTK informed community colleges that HonorSociety [sic]

---

[2] This interrogatory seeks information evidencing Honor Society's claim that PTK misuses or sells student data. This interrogatory is not at issue in this motion.

was a 'scam' and otherwise disparaged HonorSociety [sic] to convince colleges to block HonorSociety's [sic] emails to students or to otherwise interfere with HonorSociety's [sic] ability to compete", it provides no facts supporting this allegation at all – which is the entire point of the interrogatory. It is likely that Honor Society has no evidence of this activity by PTK, and Honor Society should admit that if that is the case.

Similarly, the supplemental response provided by Honor Society to Tincher-Ladner Interrogatory No. 30 is also deficient. This interrogatory seeks "principal and material facts" showing that any Honor Society member "believed PTK's allegedly defamatory statements", as well as to identify any documents that also evidence that fact. Honor Society's original response contained no substantive response. The supplemental response was no better. Honor Society claimed nakedly that "Many of the HonorSociety [sic] members who received emails from their community colleges warning that HonorSociety [sic] was a "scam" (after PTK had told the colleges to send those emails) canceled their memberships, citing the 'scam' warning emails." No documents were identified, nor is there any evidence cited for the proposition that "PTK had told the colleges to send those emails." This is a critical disclosure required by Honor Society, because if it has no evidence that PTK prompted any emails by the community colleges, or otherwise evidence that any student canceled its membership because of some action by PTK, then Honor Society's counterclaims for defamation and tortious interference are baseless.

These deficiencies were raised at the September 18 discovery conference with the Court, including that Honor Society had already committed to providing substantive supplemental answers but had failed to do so. *Id.* ¶ 6. The Court instructed that production of this discovery should occur within 21 days from the date of the conference (October 8, 2024). *Id.* ¶ 7. If Honor Society failed to produce the agreed information and documents, the Court further instructed that

PTK was permitted to file its motion to compel without further need for a court conference. *Id.* Nonetheless, October 8 came and went with no response from Honor Society. *Id.* ¶ 8. PTK has waited nearly an additional two weeks to file this motion in case Honor Society simply miscalculated the date.  Despite its promises, Honor Society has still failed to provide full responses to the Second Sets of Interrogatories. *Id.*

### B. Motion to Compel Responses to PTK's and Tincher-Ladner's Second Set of Interrogatories.

PTK and Tincher-Ladner thus seek this Court's order compelling Honor Society's full responses to their Second Sets of Interrogatories, which seek critical facts underlying Honor Society's counterclaims. This material information is covered in the following Interrogatories:

> **PTK INT No. 20:** Identify the principal and/or material facts which support Your claim of Attempted Monopolization as stated in Count I of Your Second Amended Counterclaim. Please be sure to include the following information: (a) those acts or omissions of PTK You contend support Your claim; (b) the Documents You contend support Your claim; (c) the witnesses with knowledge of that claim and the principal or material facts known to them.
>
> **Response**: HonorSociety objects to this interrogatory to the extent it seeks expert information, the production of which is governed by the Federal Rules of Civil Procedure. HonorSociety also objects to this interrogatory to the extent it seeks information protected by the attorney-client privilege or work product doctrine. HonorSociety further objects because this interrogatory is compound and constitutes more than one interrogatory.
>
> Subject to and without waiving these objections, and while fact discovery is ongoing, HonorSociety responds as follows:
>
> PTK has attempted to monopolize the relevant market including in the following ways:
>
> PTK maintains a close relationship with The American Association of Community Colleges ("AACC") by, among other things, joint conventions and having individuals employed and/or serving on the board of directors for both PTK and AACC. PTK uses this close relationship with AACC to maintain AACC's recognition of PTK as the sole "official" honor society for community college students.  Moreover, PTK uses its relationship with AACC through PTK's Presidential Advisory Board to help maintain PTK's dominant position, and

6

assist with its attempted monopolization, of the relevant market.

PTK and community college officials have engaged in coordinated behavior to maintain PTK's dominant position and exclude competitors. This coordinated behavior includes community college officials warning PTK when other honor societies attempt to open chapters on their campuses. PTK has also encouraged community college leaders to not approve honor societies other than PTK.

PTK advised or encouraged community colleges to have their IT department block HonorSociety emails from reaching students. In numerous instances, PTK informed community colleges that HonorSociety was a "scam" and otherwise disparaged HonorSociety to convince colleges to block HonorSociety's emails to students or to otherwise interfere with HonorSociety's ability to compete.

**Tincher-Ladner INT No. 19:** Identify every statement of PTK that You contend is either false or misleading and Relates To Your claim of False Advertising as stated in Count II of Your Second Amended Counterclaim. In identifying each, please provide the statement, who made it, where it was made, when it was made and how it was made. If there is a Document or Documents that You contend evidence the statement, Identify the Document.

**Response**: HonorSociety objects to this Interrogatory as it is overbroad, unduly burdensome, and seeks to impose a requirement on HonorSociety to marshal its evidence in the form of an interrogatory response. HonorSociety also objects because this Interrogatory seeks irrelevant information in seeking "where" and "how" the statements were made.

Subject to and without waiving these objections, and while fact discovery is ongoing, HonorSociety responds as follows: HonorSociety and its counsel continue to identify, gather and evaluate information relevant to this inquiry. HonorSociety will provide the responsive information once it is identified and confirmed. HonorSociety reserves the right to reference responsive information in documents pursuant to Fed. R. Civ. P. 33(d).

**Tincher-Ladner INT No. 20:** For each statement identified in response to Tincher-Ladner Interrogatory No. 4 or 19, (1) state whether You contend it is false or whether it is misleading; (2) provide the principal or material facts on which You contend demonstrate that each of those statements is either false or misleading; and (3) Identify the Persons with knowledge of those facts along with a description of that knowledge for each Person.

**Response**: HonorSociety objects to this Interrogatory as it is overbroad, unduly burdensome, and seeks to impose a requirement on HonorSociety to marshal its evidence in the form of an interrogatory response. HonorSociety also objects because this Interrogatory is compound and, counting discrete subparts,

constitutes more than one interrogatory.

Subject to and without waiving these objections, and while fact discovery is ongoing, HonorSociety responds as follows: HonorSociety and its counsel continue to identify, gather and evaluate information relevant to this inquiry. HonorSociety will provide the responsive information once it is identified and confirmed. HonorSociety reserves the right to reference responsive information in documents pursuant to Fed. R. Civ. P. 33(d).

**Tincher-Ladner INT No. 21:** If You contend that PTK made false or misleading statements in connection with any PPP or PPP2 loan, Identify those principal and material facts on which You rely in making that contention. Please include in Your answer the Persons with knowledge of those facts and any Documents they relied on in forming that knowledge.

     **Response:** HonorSociety objects to this Interrogatory as it is overbroad, unduly burdensome, and seeks to impose a requirement on HonorSociety to marshal its evidence in the form of an interrogatory response. HonorSociety further objects to this Interrogatory to the extent it seeks information protected by the attorney-client privilege or work product doctrine. HonorSociety also objects because this Interrogatory is compound and constitutes more than one interrogatory.

Subject to and without waiving these objections, and while fact discovery is ongoing, HonorSociety responds as follows:

PTK has refused to respond to discovery requests concerning PPP and PPP2 loans. HonorSociety and its counsel continue to identify, gather and evaluate information relevant to this inquiry. HonorSociety will provide the responsive information once PTK responds to discovery requests concerning PPP and PPP2 loans and such information is identified and confirmed. HonorSociety reserves the right to reference responsive information in documents pursuant to Fed. R. Civ. P. 33(d).

**Tincher-Ladner INT No. 23:** Identify by Bates Number the Document(s) where the "880 requests" identified in the Second Amended Counterclaims can be found, and if more than 880 students are shown on that Document identify the specific 880 that You are referencing in the Document.

     **Response:** HonorSociety objects to this Interrogatory because it is unduly burdensome and seeks to impose a requirement on HonorSociety to marshal its evidence in the form of an interrogatory response.

Subject to and without waiving these objections, and while fact discovery is ongoing, HonorSociety responds as follows: HonorSociety and its counsel continue to identify, gather and evaluate information relevant to this inquiry. HonorSociety will provide the responsive information once it is identified and confirmed.

HonorSociety reserves the right to reference responsive information in documents pursuant to Fed. R. Civ. P. 33(d).

**Tincher-Ladner INT No. 24:** Identify those principal and material facts on which You contend shows that PTK commercially used (as opposed to merely registered) any of the Infringing Domain Names (as that term is used in Your Second Amended Complaint). Include in Your answer the identification of any Documents supporting Your contention, and the names of those witnesses with knowledge of the facts You state in response to this interrogatory.

**Response**: HonorSociety objects to this Interrogatory because it is overbroad, unduly burdensome, and seeks to impose a requirement on HonorSociety to marshal its evidence in the form of an interrogatory response. HonorSociety also objects because the phrase "commercially used" is vague and ambiguous. HonorSociety further objects to this Interrogatory to the extent it seeks information protected by the attorney-client privilege and work product doctrine. HonorSociety also objects to this Interrogatory because it is compound and constitutes more than one interrogatory.

Subject to and without waiving these objections, and while fact discovery is ongoing, HonorSociety responds as follows:

PTK registered the Infringing Domain Names to siphon internet traffic away from HonorSociety, its competitor. In further answering, HonorSociety and its counsel continue to identify, gather and evaluate information relevant to this inquiry. HonorSociety will provide the responsive information once it is identified and confirmed. HonorSociety reserves the right to reference responsive information in documents pursuant to Fed. R. Civ. P. 33(d).

**Tincher-Ladner INT No. 25:** If You contend that PTK is responsible for the public statements of PTK advisors who are not employed by PTK and are employed by the schools, Identify the principal and material facts on which You make that contention.

**Response**: HonorSociety objects to this Interrogatory because it is overbroad, unduly burdensome, and seeks to impose a requirement on HonorSociety to marshal its evidence in the form of an interrogatory response. HonorSociety further objects to this interrogatory as overbroad and unduly burdensome in that it asks about an entire class of individuals without identifying any of them. HonorSociety further objects to the term "responsible" as vague and ambiguous. HonorSociety also objects because this interrogatory calls for a legal conclusion, and seeks information protected by the attorney-client privilege and/or work product doctrine.

**Tincher-Ladner INT No. 26:** Identify all principal and material facts on which You contend that You are entitled to punitive damages for any of Your counterclaims.

**Response**: HonorSociety objects to this Interrogatory because it is overbroad, unduly burdensome, and seeks to impose a requirement on HonorSociety to marshal its evidence in the form of an interrogatory response. HonorSociety also objects because this interrogatory calls for a legal conclusion, and seeks information protected by the attorney-client privilege and/or work product doctrine.

Subject to and without waiving these objections, and while fact discovery is ongoing, HonorSociety responds as follows:

It is evident from PTK's false and defamatory communications with the schools that such communications were made with an element of aggression, or some coloring of insult, malice, oppression, fraud, or gross negligence, evincing ruthless disregard for the rights of others. In further answering, HonorSociety and its counsel continue to identify, gather and evaluate information relevant to this inquiry. HonorSociety will provide the responsive information once it is identified and confirmed. HonorSociety reserves the right to reference responsive information in documents pursuant to Fed. R. Civ. P. 33(d).

**Tincher-Ladner INT No. 27:** Identify every statement by PTK that You contend "delegitimized" You. If there is a Document or Documents that You contend evidence the statement, Identify the Document.

**Response**: HonorSociety objects to this Interrogatory because it is overbroad, unduly burdensome, and seeks to impose a requirement on HonorSociety to marshal its evidence in the form of an interrogatory response. HonorSociety further objects to this Interrogatory to the extent it seeks information protected by the attorney-client privilege or work product doctrine.

Subject to and without waiving these objections, and while fact discovery is ongoing, HonorSociety responds as follows:

PTK communicated to numerous community colleges that HonorSociety was a "scam," and accusing HonorSociety of fraudulent conduct and insinuating that HonorSociety is not a legitimate honor society. PTK's communications to community colleges in which it attempted to have those colleges block HonorSociety's emails to students further delegitimized HonorSociety.

In further answering, HonorSociety and its counsel continue to identify, gather and evaluate information relevant to this inquiry. HonorSociety will provide the responsive information once it is identified and confirmed. HonorSociety reserves

the right to reference responsive information in documents pursuant to Fed. R. Civ. P. 33(d).

**Tincher-Ladner INT No. 28:** Identify Your evidence that "PTK also urged community colleges to block delivery of HonorSociety's [sic] emails to students, which would prevent HonorSociety [sic] from communicating with current members."

**Response**: HonorSociety objects to this Interrogatory because it is overbroad, unduly burdensome, and seeks to impose a requirement on HonorSociety to marshal its evidence in the form of an interrogatory response. HonorSociety further objects to this Interrogatory to the extent it seeks information protected by the attorney-client privilege or work product doctrine.

Subject to and without waiving these objections, and while fact discovery is ongoing, HonorSociety responds as follows:

PTK sent numerous emails to community colleges encouraging them to block HonorSociety's emails to students. The students at these community colleges who were also HonorSociety members would have HonorSociety's emails block, preventing HonorSociety from communicating with its members.

In further answering, the documents HonorSociety may cite in responding to this Interrogatory have been designated by PTK as "Highly Confidential – Attorneys' Eyes Only," thus preventing HonorSociety from having access to them for the purpose of preparing verified interrogatory responses. HonorSociety and its counsel continue to identify, gather and evaluate information relevant to this inquiry. HonorSociety will provide the responsive information once it is identified and confirmed. HonorSociety reserves the right to reference responsive information in documents pursuant to Fed. R. Civ. P. 33(d).

**Tincher-Ladner INT No. 29:** Identify all principal and material facts on which You contend that Honor Society members were exposed to PTK's allegedly defamatory statements. If there is a Document or Documents that You contend evidence the statement, Identify the Document.

**Response**: HonorSociety objects to this Interrogatory because it is overbroad, unduly burdensome, and seeks to impose a requirement on HonorSociety to marshal its evidence in the form of an interrogatory response. HonorSociety further objects to this Interrogatory to the extent it seeks information protected by the attorney-client privilege or work product doctrine.

Subject to and without waiving these objections, and while fact discovery is ongoing, HonorSociety responds as follows:

11

HonorSociety members received emails from their community colleges warning those members that HonorSociety was a "scam" or not a legitimate honor society after PTK conveyed those messages to the community college leadership.

In further answering, HonorSociety and its counsel continue to identify, gather and evaluate information relevant to this inquiry. HonorSociety will provide the responsive information once it is identified and confirmed. HonorSociety reserves the right to reference responsive information in documents pursuant to Fed. R. Civ. P. 33(d).

**Tincher-Ladner INT No. 30:** Identify all principal and material facts on which You contend that Honor Society members believed PTK's allegedly defamatory statements. If there is a Document or Documents that You contend evidence the statement, Identify the Document.

**Response**: HonorSociety objects to this Interrogatory because it is overbroad, unduly burdensome, and seeks to impose a requirement on HonorSociety to marshal its evidence in the form of an interrogatory response. HonorSociety further objects to this Interrogatory to the extent it seeks information protected by the attorney-client privilege or work product doctrine.

Subject to and without waiving these objections, and while fact discovery is ongoing, HonorSociety responds as follows: HonorSociety and its counsel continue to identify, gather and evaluate information relevant to this inquiry. HonorSociety will provide the responsive information once it is identified and confirmed. HonorSociety reserves the right to reference responsive information in documents pursuant to Fed. R. Civ. P. 33(d).

**Tincher-Ladner INT No. 31:** Identify those Persons that asked for a refund due to PTK's alleged misconduct. If there is a Document or Documents that You contend evidence the statement, Identify the Document.

**Response**: HonorSociety objects to this Interrogatory because it is overbroad, unduly burdensome, and seeks to impose a requirement on HonorSociety to marshal its evidence in the form of an interrogatory response. HonorSociety also objects to the phrase "asked for a refund" as vague and ambiguous, as it does not specify for what "those Persons" asked for a refund. HonorSociety further objects to this Interrogatory to the extent it seeks information protected by the attorney-client privilege or work product doctrine.

Subject to and without waiving these objections, and while fact discovery is ongoing, HonorSociety responds as follows: HonorSociety and its counsel continue to identify, gather and evaluate information relevant to this inquiry. HonorSociety will provide the responsive information once it is identified and confirmed. HonorSociety reserves the right to reference responsive information in documents

pursuant to Fed. R. Civ. P. 33(d).

**Tincher-Ladner INT No. 32:** Identify those damages You contend You incurred as a result of lost merchandise sales due to PTK's alleged misconduct.

      **Response:** HonorSociety objects to this Interrogatory because it is overbroad, unduly burdensome, and seeks to impose a requirement on HonorSociety to marshal its evidence in the form of an interrogatory response. HonorSociety further objects to this Interrogatory to the extent it seeks information protected by the attorney-client privilege or work product doctrine. HonorSociety also objects to this interrogatory to the extent it seeks expert information, the production of which is governed by the Federal Rules of Civil Procedure.

Subject to and without waiving these objections, and while fact discovery is ongoing, HonorSociety responds as follows: HonorSociety and its counsel continue to identify, gather and evaluate information relevant to this inquiry. HonorSociety will provide the responsive information once it is identified and confirmed. HonorSociety reserves the right to reference responsive information in documents pursuant to Fed. R. Civ. P. 33(d).

**Tincher-Ladner INT No. 33:** Identify the Document(s) that You contend describe the overall mix of two-year program students, community college students, junior college students and technical schools students in Your membership, by year, from 2016 to present.

      **Response**: HonorSociety objects to this Interrogatory because it is overbroad, unduly burdensome, and seeks to impose a requirement on HonorSociety to marshal its evidence in the form of an interrogatory response. HonorSociety also objects to this interrogatory to the extent it seeks expert information, the production of which is governed by the Federal Rules of Civil Procedure. HonorSociety objects to the phrase "describe the overall mix" because it is vague, ambiguous, and seeks irrelevant information. HonorSociety will provide a response to this interrogatory to the best of its ability following further explanation from Tincher-Ladner as to what it means or what information is sought.

PTK and Tincher-Ladner have *no* substantive answers to most of these Interrogatories, and deficient answers as to PTK Interrogatory No. 20 and Tincher-Ladner Interrogatory No. 30. With the exception of PTK No. 20 and LTL No. 30, Honor Society has provided only boilerplate objections, which should be stricken as such. "The party resisting discovery must show specifically how each discovery request is not relevant or otherwise objectionable." *Foster v. State Farm Fire and Cas. Co.,* 2023 WL 9181333, at *3 (S.D. Miss. Mar. 13, 2023). "Failing to do so, as a general

matter, makes such an unsupported objection nothing more than unsustainable boilerplate." *Id.* (cleaned up). As to PTK No. 20 and LTL No. 30, the responses are really non-responses, because the information provided is so woefully deficient.

Because Honor Society has failed to meet its burden and has agreed to provide substantive responses to these Interrogatories, PTK asks the Court to compel Honor Society to fully respond to No. 20 of its Second Set of Interrogatories, and Tincher-Ladner requests the same for Nos. 19, 20, 21, 23, 24, 25, 26, 27, 28, 29, 30, 31, 32, and 33 of her Second Set of Interrogatories.

**IV.    Audio Recordings with Students Requesting Refunds and Customer Service Issues.**

**A.    The Events Leading to the Filing of this Motion.**

On April 12, 2023, PTK served its First Set of Requests for Production to Honor Society, some of which sought documents relating to complaints by Honor Society's customers, its communications referencing PTK or Tincher-Ladner, and confusion between PTK and Honor Society. Ex. A, Polak Decl. ¶ 9. On April 12, 2023, Dr. Tincher-Ladner also served her First Set of Requests for Production to Honor Society, some of which related to confusion between PTK and Honor Society, complaints by Honor Society's customers, and communications for Honor Society's customers on why they terminated their relationship. *Id.* Honor Society served its initial Responses to the First Sets of Requests for Production on May 12, 2023, its First Amended Responses on August 17, 2023, and its Second Amended Responses on November 20, 2023. *Id.* ¶ 10, Exs. A-8 and A-9. None of Honor Society's responses indicate that audio recordings had been withheld on the basis of any objection, and at no time has Honor Society produced to PTK audio recordings of Honor Society's customer service calls with prospective or current members. *Id.*

On August 27, 2024, PTK deposed Boldr, Inc., Honor Society's outsourced customer service vendor from 2017 to 2020. *Id.* ¶ 11. Boldr, Inc. testified that Honor Society gave it access

to Zendesk, a software platform maintained by Honor Society to handle its customer support channels. *Id.*, Ex. A-10 (Boldr, Inc. Dep. Tr.) at 39:23-40-7. And through Zendesk, Honor Society has audio recordings of its customer service calls with potential and actual customers. Ex. A, Polak Decl. ¶¶ 11-12. Despite these audio recordings being responsive to many of PTK and Tincher-Ladner's First Sets of Requests for Production served in April 2023, Honor Society never notified PTK that these audio recordings existed. *Id.* Further, in Honor Society's own production, it has produced documents that show these audio recordings not only existed then, but that Michael Moradian himself reviewed some of them. *Id.*

On August 29, 2024, PTK and Tincher-Ladner requested that Honor Society search for and produce these audio recordings and respond by September 3, 2024 with confirmation that they would be produced and on what schedule. *Id.* ¶ 13, Ex. A-11. Having received no timely response at all by September 6, 2024 (a consistent recurring frustration in the meet and confer process on this and other issues with Honor Society), PTK wrote Honor Society again asking for confirmation on whether the audio recordings will be produced. *Id.* Honor Society acknowledged receipt of this correspondence, stating that it would respond by September 13, 2024. *Id.* ¶ 14. But September 13 came and went with no response from Honor Society.  *Id.*

On September 14, 2024, along with the identification of other discovery issues, PTK raised by email Honor Society's failure to produce the audio recordings. *Id.* ¶ 14, Ex. A-4. Honor Society responded by email dated September 17, that "HonorSociety [sic] has confirmed that ZenDesk does not have customer-service call recordings.  That feature is provided under a service level that HonorSociety [sic] does not have." *See Id.* ¶ 14, Ex. A-7.  Honor Society repeated this position at the September 18 discovery conference with the Court. PTK and Tincher-Ladner informed the Court that this was unlikely in light of Mr. Sudolsky's (CEO of Boldr) testimony as well as because

Honor Society's own documents showed that the recordings had been made. *See Id.* ¶ 14. The Court asked Honor Society to then re-confirm whether the audio recordings existed and report that to PTK within 21 days of the hearing, and if they did exist, to produce them to PTK. Honor Society, although representing that it did not believe the recordings existed, agreed it would check again for the audio recordings. *Id.*

On September 19, 2024, Honor Society finally confirmed that the audio recordings existed. *Id.* ¶ 15, Ex. A-12. Nonetheless, Honor Society has still failed to produce the audio recordings by October 8, 2024, or at all. *Id.* This motion is ripe.

### B.    Motion to Compel the Audio Recordings.

PTK and Tincher-Ladner seek an order compelling the production of the audio recordings of student communications with Honor Society taken during the customer service process, including those that relate to potential customer confusion, a critical element of PTK's trademark claims, as well as potential evidence of students claiming they were misled by Honor Society's false advertising and other complaints by Honor Society. These documents are covered in the following requests:[3]

> **PTK RFP No. 7:** Documents, including Communications, other than Communications with Your attorneys or Documents from Your attorneys, relating to or referencing Plaintiff, PTK, any employee, former or present, of PTK, Lynn Tincher-Ladner, PTK EDGE, CAREER EDGE and/or the above-captioned litigation, whether created before or after the date of filing this Lawsuit.

> **PTK RFP No. 35:** Documents, including Communications, relating to complaints made by consumers, colleges, academic organizations, and any other third parties concerning HonorSociety or any of its employees.

---

[3] Honor Society admitted to the likely existence of the audio recordings and does not appear to have objected to producing them. Therefore, because the previous question was over existence, Honor Society's Responses and objections to these RFPs (as would otherwise be required by the Local Rules) are not included with this motion. If Honor Society relies on its Responses or objections as justification for not producing the audio recordings, PTK will address such contentions in its Reply. First, of course, Honor Society should have to state definitively whether and to what extent they exist, and whether they can be produced.

**PTK RFP No. 36:** Documents, including Communications, related to any efforts by You to manage, control, repair, remediate, resolve or mitigate negative information or opinions concerning the reputation of HonorSociety, or any of its employees.

**PTK RFP No. 38:** Documents, including Communications, with any third-parties with whom You either engaged or considering engaging to manage, control, repair, remediate or mitigate negative information or opinions concerning the reputation of HonorSociety, or any of its employees.

**PTK RFP No. 57:** Documents, including Communications, containing any reference by anyone employed by You, anyone within Your organization, or any third-party, that the colors blue and gold are or are not associated with PTK.

**PTK RFP No. 58:** Documents, including Communications, relating to confusion, or lack thereof, between PTK and HonorSociety, by any third-party.

**PTK RFP No. 59:** Documents, including Communications, sufficient to show the identity of every person that has stated they joined Your organization thinking they were joining PTK.

**Tincher-Ladner RFP No. 11:** Documents, including Communications, in which any person(s) has(have) stated they joined Your organization thinking it was PTK.

**Tincher-Ladner RFP No. 14:** Documents, including Communications, where any person other than PTK or Tincher-Ladner, has referred to HonorSociety [SIC] as a "scam", "fraud" or similar description.

**Tincher-Ladner RFP No. 34:** Documents, including Communications, relating to any complaints made against You by any member or prospective member.

**Tincher-Ladner RFP No. 47:** Documents, including Communications, from any prospective member providing any explanation as to why they chose not to join HonorSociety [SIC].

**Tincher-Ladner RFP No. 48:** Documents, including Communications, from any existing member, providing any explanation as to why they chose to terminate their relationship with HonorSociety [SIC].

It has been confirmed that Honor Society, either through its own employees or through its outsourced customer service representatives, recorded a high volume of calls with students who were unhappy with Honor Society and were requesting refunds, or who otherwise were being solicited by Honor Society to resume payment for Honor Society's services. *Id.* ¶ 11, Ex. A-10.

17

These audio recordings were within the definition of "Documents" for the First Sets of Requests for Production.  They likely contain evidence of consumer statements about the quality of Honor Society's services (i.e., whether they were a "scam" or illegitimate), consumer confusion and attribution (or lack thereof) of negative statements about Honor Society to PTK.  These are all issues that are highly relevant to PTK, Dr. Tincher-Ladner and Honor Society's claims and defenses in this matter.  PTK and Tincher-Ladner thus ask the Court to compel Honor Society to produce all the audio recordings that exist.

## V.    Supplemental Responses to PTK's and Tincher-Ladner's First Sets of Interrogatories.

### A.    The Events Leading to the Filing of this Motion.

On April 12, 2023, PTK served its First Set of Interrogatories to Honor Society, some of which related to its complaints received, its reputation management, and likelihood of confusion. *Id.* ¶ 16. On April 12, 2023, Tincher-Ladner served her First Set of Interrogatories to Honor Society, some of which also related to Honor Society's identification of all misleading or false statements it will rely on at trial, and a description of its damages. *Id.* Honor Society served its initial Responses to the First Sets of Interrogatories on June 2, 2023, its First Amended Responses on August 17, 2023, and Second Amended Responses on November 20, 2023. *Id.*, Exs. A-13 and A-14.

On August 6, 2024, PTK identified the need for Honor Society to supplement these Interrogatory Responses.  Polak Decl. ¶ 17, Ex. A-15. On August 12, 2024, the parties had a meet and confer, during which Honor Society refused to supplement these Interrogatory Responses. Polak Decl. ¶ 17. PTK communicated the issue to the Court later that day, and Honor Society responded by email with its position later that day as well.  *Id.* ¶ 18, Ex. A-16. After reviewing

18

these communications, the Court instructed that if the issue was unresolved by September 3, 2024, PTK and Tincher-Ladner were to inform the Court. Polak Decl. ¶ 18, Ex. A-16.

On September 4, 2024, Honor Society communicated its intent to supplement some responses to Interrogatories by September 6, 2024, but not all the deficient Interrogatories. *Id.* ¶ 19, Ex. A-17. On September 6, 2024, Honor Society failed to supplement the following interrogatories that remained at issue: Nos. 10, 14, 21, 22, and 23 of PTK's First Set of Interrogatories, and Nos. 5, 6, and 7 of Tincher-Ladner's First Set of Interrogatories. *Id.* ¶ 19. The parties met and conferred on this issue on September 12, 2024, but no progress was made. *Id.* On September 14, 2024, PTK informed the Court of outstanding discovery issues to be discussed at the upcoming discovery conference, including Honor Society's failure to supplement these Interrogatory Responses. Polak Decl. ¶ 5, Ex. A-4. The parties discussed supplementation during a conference with the Court on September 18, 2024, and Honor Society was directed to respond to these Interrogatories within 21 days, or October 8, 2024, and agreed to do so. *Id.* ¶ 20. Nonetheless, Honor Society has still failed to supplement these Interrogatories. *Id.* This Court instructed PTK to move forward with a motion to compel in the event that the interrogatories were not supplemented to PTK's satisfaction. *Id.*

**B.    Motion to Compel Supplemental Responses to PTK's and Tincher-Ladner's First Set of Interrogatories.**

PTK and Tincher-Ladner seek an order compelling Honor Society's full supplemental responses to their First Sets of Interrogatories, which relate to crucial information such as all misleading or false statements Honor Society will rely on at trial, a description of its damages, and likelihood of confusion between Honor Society and PTK:

**PTK INT No. 10:** Identify all ways in which you market Your company and/or its goods/services to potential or existing customers, since inception. If it has changed at all over time, describe those changes. If applicable, include in your answer the

identification of any internet websites, social media accounts, etc. that are responsive to this interrogatory.

**Response**: Responding Party objects to this Interrogatory as overbroad and unduly burdensome to the extent it seeks information that is not relevant to any party's claim or defense nor proportional to the needs of this case. Responding Party further objects to this Interrogatory as vague, ambiguous, overbroad and unduly burdensome with respect to the term "all ways." Responding Party further objects to this Interrogatory to the extent it seeks Responding Party's confidential and/or proprietary business information, including sensitive financial information, marketing plans and/or trade secrets.

Subject to and without waiver of the foregoing objections, Responding Party responds as follows: Since its inception in January 2014, Responding Party has used Email, Display Marketing, and Search Engine Marketing (SEM) for marketing purposes. Responding Party sends e-mail invitations to potential members and places Google Ads inviting the general public to interact with Responding Party's organization. Since 2016, Responding Party has used Direct Mail to send invitations to potential members. Since 2022, Responding Party has communicated to potential members and invited them to join via Short Message Service (SMS) if they have opted-in to such communications. Responding Party has also engaged in marketing efforts through the activities of its school chapters, as well as in-person marketing. In particular, Honor Society has hosted events with its school chapters, member events at NBA and NHL games, member banquets, and member trips to locations such as Washington D.C. and Los Angeles.

**PTK INT No. 14:** Identify all references to PTK that have ever existed in connection with any marketing of HonorSociety, including without limitation to any email, direct mail, website content, and social media content.

**Response**: To the best of Responding Party's current knowledge, none.

**PTK INT No. 21:** If You contend there is no likelihood of confusion between HonorSociety's use of CAREER EDGE and PTK's use of the EDGE Mark, identify: (a) all facts on which You base that contention; (b) all witnesses with knowledge of those facts; and (c) any documents supporting that contention.

**Response:** Responding Party objects to this Interrogatory on the grounds that it exceeds the number of interrogatories agreed upon by the parties and ordered by the Court in its Case Management Order, which "are limited to 25 succinct questions." (Dkt. 59.) Responding Party further objects to this Interrogatory as vague, ambiguous, overbroad and unduly burdensome with respect to the term "all facts." Responding Party further objects to this Interrogatory to the extent it seeks Responding Party's confidential and/or proprietary business information, including sensitive financial information, marketing plans and/or trade secrets. Responding Party further objects to this Interrogatory to the extent it seeks information

that is protected from disclosure by the attorney client privilege and/or attorney work product doctrine.

**PTK INT No. 22:** If You contend that there is no likelihood of confusion between HonorSociety's use of the blue and gold color scheme, and any other elements claimed in PTK's Trade Dress, identify: (a) all facts on which you base that contention; (b) all witnesses with knowledge of those facts; and (c) any documents supporting that contention.

     **Response:** Responding Party objects to this Interrogatory on the grounds that it exceeds the number of interrogatories agreed upon by the parties and ordered by the Court in its Case Management Order, which "are limited to 25 succinct questions." (Dkt. 59.) Responding Party further objects to this Interrogatory as vague, ambiguous, overbroad and unduly burdensome with respect to the term "all facts." Responding Party further objects to this Interrogatory to the extent it seeks Responding Party's confidential and/or proprietary business information, including sensitive financial information, marketing plans and/or trade secrets. Responding Party further objects to this Interrogatory to the extent it seeks information that is protected from disclosure by the attorney client privilege and/or attorney work product doctrine.

**PTK INT No. 23:** For each affirmative defense you have alleged in this matter, identify: (a) all facts on which you base that affirmative defense; (b) all witnesses with knowledge of those facts; and (c) any documents supporting that affirmative defense.

     **Response**: Responding Party objects to this Interrogatory on the grounds that it exceeds the number of interrogatories agreed upon by the parties and ordered by the Court in its Case Management Order, which "are limited to 25 succinct questions." (Dkt. 59.) Responding Party further objects to this Interrogatory as vague, ambiguous, overbroad and unduly burdensome with respect to the term "all facts." Responding Party further objects to this Interrogatory as overbroad and unduly burdensome to the extent it seeks information that is not proportional to the needs of this case. Responding Party further objects to this Interrogatory to the extent it seeks Responding Party's confidential and/or proprietary business information, including sensitive financial information, marketing plans and/or trade secrets. Responding Party further objects to this Interrogatory to the extent it seeks information that is protected from disclosure by the attorney client privilege and/or attorney work product doctrine.

**Tincher-Ladner INT No. 5:** Identify each and every act of interference with business relations made by Tincher-Ladner and/or PTK relevant to your claim for tortious interference with business relations.

     **Response:** Responding Party objects to this Interrogatory on the grounds that it seeks information that is equally and/or more readily available to

Propounding Party. Responding Party further objects to this Interrogatory to the extent it seeks Responding Party's confidential and/or proprietary business information, including sensitive financial information, marketing plans and/or trade secrets.

Subject to and without waiver of the foregoing objections, Responding Party responds as follows: Other than the press release attached as Exhibit A to the Amended Counterclaims (Dkt. 61), Responding Party is not currently aware of any defamatory statements made directly by Tincher-Ladner and/or PTK. However, discovery is continuing. Moreover, as alleged in the Amended Counterclaims, Responding Party alleges that various third parties have made defamatory statements about Responding Party, namely, that it is a "scam," which Responding Party believes are likely attributable to statements made by Tincher-Ladner and/or PTK. Responding Party has already produced copies of those statements. An answer to his interrogatory may be determined by examining, auditing, compiling, abstracting, or summarizing these statements, and the burden of deriving or ascertaining the answer would be substantially the same for Propounding Party as Responding Party. Accordingly, pursuant to Federal Rule of Civil Procedure 33(d), Responding Party refers to these statements by bates number: HS_044445-HS_044446, HS_044471-HS_044472, HS_044724, HS_044996-HS_044997, HS_045029-HS_045030, HS_129531, HS_129540, HS_129694-HS_129696, HS_129723-HS_129724, HS_129725-HS_129726, HS_129727, HS_129733, HS_129736, HS_129739, HS_129757-HS_129765, HS_129766-HS_129778, HS_129782-HS_129787, HS_129788-HS_129792, HS_129793-HS_129799, HS_129800-HS_129805, HS_129806-HS_129810, HS_129815, HS_129816, HS_129817, HS_129818, HS_129819, HS_129820, HS_129821, HS_129822, HS_129899-HS_129900, HS_129910-HS_129911, HS_134302-HS_134310, HS_135803, HS_136621, HS_169888-HS_169891, HS_170370, HS_170381-HS_170384, HS_170385-HS_170387, HS_170419, HS_170420, HS_170422, HS_170423, HS_170424, HS_170429, HS_170430, HS_170432, HS_170433, HS_170434, HS_170437, HS_170439, HS_170441, HS_170493, HS_170496, HS_170526, HS_170598, HS_170599-HS_170600, HS_170601, HS_170602, HS_170611, HS_170614, HS_170615, HS_170616, HS_170617, HS_170618, HS_170620, HS_170621, HS_170622, HS_170623, HS_170626, HS_170852-HS_170853, HS_170854-HS_170855, HS_171567, HS_171646, HS_171748, HS_170627, HS_171000-HS_171002, HS_171003-HS_171006, HS_171031-HS_171032, HS_171037, HS_171038, HS_171039-HS_171040, HS_171041, HS_171059, HS_171064, HS_171075-HS_171076, HS_171564, HS_171606, HS_171665, HS_171668, HS_173423, HS_173430, HS_173443, HS_173444, HS_173485, HS_173507, HS_173525-HS_173526, HS_173527-HS_173528, HS_173529-HS_173530, HS_173531-HS_173532, HS_173533-HS_173534, HS_173535-HS_173536, HS_173788, HS_173789-HS_173790, HS_173791, HS_173792, HS_173794-HS_173795, HS_173799, HS_173810, HS_173817-HS_173818, HS_176710, HS_176713, HS_176714, HS_176715-HS_176716, HS_176717-HS_176718, HS_176735, HS_176746, and HS_176754-HS_176755.

**Tincher-Ladner INT No. 6:** Identify every each and every contract or business relation that you claim were interfered with by Tincher-Ladner and/or PTK. Please include the name and contact information for each such contracting or potentially contracting party.

  **Response**: Responding Party objects to this Interrogatory on the grounds that it seeks information that is equally and/or more readily available to Propounding Party. Responding Party further objects to this Interrogatory to the extent it seeks Responding Party's confidential and/or proprietary business information, including sensitive financial information, marketing plans and/or trade secrets.

Subject to and without waiver of the foregoing objections, Responding Party responds as follows: An answer to this interrogatory may be determined by examining, auditing, compiling, abstracting, or summarizing Responding Party's business records, and the burden of deriving or ascertaining the answer would be substantially the same for Propounding Party as Responding Party. Accordingly, pursuant to Federal Rule of Civil Procedure 33(d), Responding Party refers to the following documents by bates number, which Responding Party has produced in discovery, and which are reasonably responsive to this Interrogatory: HS_007465-HS_007631, HS_129727, HS_129733, HS_129757-HS_129765, HS_129766-HS_129778, HS_129782-HS_129787, HS_129788-HS_129792, HS_129793-HS_129799, HS_129800-HS_129805, HS_129899-HS_129900, HS_129910-HS_129911, HS_135803, HS_136621, HS_170370, HS_170598, HS_170599-HS_170600, HS_170601, HS_170622, HS_170852-HS_170853, HS_170854-HS_170855, HS171031-HS_171032, HS_173789-HS_173790, HS_176715-HS_176716.

**Tincher-Ladner INT No. 7:** Identify with specificity all damages you claim in connection with your claims against Tincher-Ladner and/or PTK. Be specific as to each claim you have asserted, if your damages for any claim are different than any other. And, be specific as to each Defendant if the damages sought are different as to each in any way.

  **Response**: Responding Party objects to this Interrogatory to the extent it seeks Responding Party's confidential and/or proprietary business information, including sensitive financial information, marketing plans and/or trade secrets. Furthermore, Responding Party objects to this Interrogatory as premature to the extent it seeks information that is the subject of expert opinion as provided by Fed. R. Civ. Proc. 26(a)(2)(D) and this Court's case management order.

Subject to and without waiver of the foregoing objections, Responding Party responds as follows: As a result of defamatory statements made by Tincher-Ladner and PTK about Honor Society in April 2022, Honor Society suffered substantial losses in the form of a significant drop-off in membership sales and an increase in

membership refunds, disputes and chargebacks. In the first six months after Tincher-Ladner and PTK's defamatory comments were made in the Press Release, Honor Society's membership sales dropped by $1,303,998 dollars in recurring revenue, and Honor Society incurred $52,800 in membership cancellations. Furthermore, Honor Society memberships constitute recurring revenue, which renews at a rate of 90% every six months, which further magnifies the damages that have and will be incurred by Honor Society as a result of Tincher-Ladner and PTK's defamatory statements. At this rate, in 5 years, the lost memberships will result in $9,310,083 in lost revenue to Honor Society, and over a ten-year horizon, the total lost revenue damages will be $12,083,259.

In addition to these losses, Honor Society has suffered harm to its brand and reputation, as well as its relationships with individuals and entities that Honor Society was partnered or sought to partner with, including academic institutions, student populations, other honor societies, and donors to the Honor Society Foundation. Honor Society's reputation has been further harmed by Tincher-Ladner and PTK's defamatory comments because they have caused people to file reports with the BBB and state attorney generals. Additionally, through prior misleading and defamatory statements by PTK to schools such as Ivy Tech, Bergen, and Motlow College, Honor Society has suffered damages in the form of membership cancellations and chargebacks.

In connection with Responding Party's first cause of action, for defamation, Responding Party is seeking from both Tincher-Ladner and PTK its actual damages, which it believes to be in excess of $1 million (as set forth above), punitive damages and injunctive relief. In connection with Responding Party's second cause of action, for tortious interference with business relations, Responding Party is seeking from both Tincher-Ladner and PTK its actual damages, which it believes to be in excess of $1 million (as set forth above), punitive damages and injunctive relief. In connection with Responding Party's third cause of action, for false advertising, Responding Party is seeking from both Tincher-Ladner and PTK its actual damages and disgorgement of Tincher-Ladner and PTK's profits, which it believes to be in excess of $1 million (as set forth above), treble damages, attorneys' fees, and injunctive relief. On all causes of action, Responding Party is also seeking costs and attorneys' fees to the extent permitted by law, and such other and further relief as the Court deems just and proper.

Despite Honor Society's commitment to supplement these Interrogatories within 21 days as required by the Court, Honor Society has failed to do so. PTK and Tincher-Ladner thus ask the Court to compel Honor Society to fully supplement its responses to PTK's First Set of

Interrogatories Nos. 10, 14, 21, 22, and 23, and Tincher-Ladner's First Set of Interrogatories Nos. 5, 6, and 7.

## VI.    Timing of Production.

This Court's recent discovery orders have allowed 21 days to provide responsive documents where relief was granted under a motion to compel.  PTK respectfully requests that under these circumstances, the time be shortened to seven (7) days.  For one, the responsive information and documents were to be delivered already by October 8, pursuant to the Court's instruction provided in the September 18, 2024 conference.  Assuming a standard briefing schedule and subsequent order, it may be that this critical information will not be produced until after the existing discovery deadline of December 15.  For obvious reasons, time is of the essence.  PTK has been seeking this information for months, and any further delay will certainly prejudice PTK in its discovery efforts.

## VII.    Award of Attorneys' Fees to PTK.

PTK appreciates this Court's reluctance to award fees in discovery disputes.  But here, Honor Society has no justification for failing to produce the requested documents and interrogatory responses to PTK.  As for most of the formal and informal requests PTK identifies above, Honor Society has *agreed* to produce responsive documents but then never kept that promise. Honor Society has failed to fulfill its obligations under the Court's orders and ignored its own representations to the Court that the information will be provided. Honor Society's unfulfilled promises and non-compliance have forced the filing of this Motion. Honor Society's refusal to produce these documents and responses is not principled. If it were, then Honor Society would have said definitively months ago that the documents are being withheld and will not be produced or at least stated so to the Court at the latest conference. In the instance of a non-principled position that smacks only of delay, fees should be awarded.

The case law is law is clear: if a motion to compel is granted, unless 1) the movant did not attempt to obtain discovery responses without court action; 2) the failure to respond was substantially justified; or 3) any other circumstance makes the award unjust, "the court *must*, . . . , require the party . . . whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorneys' fees." *BNY Mellon, N.A. v. Affordable Holdings, Inc.*, No. 1:09-CV-00226-SA-JAD, 2010 WL 3717600, at *1 (N.D. Miss. Sept. 14, 2010) (emphasis in original).

Here, the Court must award PTK its fees. As for the first exception, PTK attempted, exhaustively, to obtain discovery responses from Honor Society. As for the second exception, Honor Society's failure to respond to PTK's Requests has been far from justified. To the contrary, Honor Society has committed to producing documents but then never followed through with its commitments. This is egregious and unjustifiable. As to the third exception, PTK is unaware of any other circumstance that would make an award of fees unjust, especially considering Honor Society's blatant refusal to produce documents and respond to Interrogatories as it has promised.

For these reasons and because Honor Society's conduct "necessitated [PTK's] motion to enforce discovery [Honor Society should be] required to pay [PTK's] reasonable expenses and attorney fees." *Hernandez*, 2023 WL 3881354, at *1 (S.D. Miss. Mar. 27, 2023) (citing FED. R. CIV. P. 37(a)(5)(A)). *See also Anding*, 2023 WL 4280921, at *6 (awarding reasonable attorneys' fees for bringing motion after Defendants missed agreed upon deadline to serve written discovery responses). There is also an inherent power of the Court to sanction a party independent of PTK's fees where the circumstances merit it. Honor Society's failure to honor its commitments to PTK and under the Federal Rules and the Court's own orders, certainly merit some consideration of this

as a remedy. If the Court awards PTK its attorneys' fees, PTK respectfully requests leave to file

supporting documentation attesting to the fees incurred as a result of bringing this motion.

Dated: October 21, 2024          Respectfully submitted,

*/s/ Jonathan G. Polak*
Jonathan G. Polak (*Pro Hac Vice*)
W. Michael Etienne (*Pro Hac Vice*)
TAFT STETTINIUS & HOLLISTER LLP
One Indiana Square, Suite 3500
Indianapolis, IN 46204-2023
(317) 713-3500 – phone
(317) 713-3699 – fax
jpolak@taftlaw.com
metienne@taftlaw@taftlaw.com

Rachel Smoot (*Pro Hac Vice*)
TAFT STETTINIUS & HOLLISTER LLP
41 S. High Street, Suite 1800
Columbus, OH 43215
(614) 221-2838 – phone
(614) 221-2007 – fax
rsmoot@taftlaw.com

Daniel R. Warncke (Pro Hac Vice)
TAFT STETTINIUS & HOLLISTER LLP
425 Walnut Street, Suite 1800
Cincinnati, OH 45202
(513) 357-9397 – phone
dwarncke@taftlaw.com

*/s/Charles E. Cowan*
Michael B. Wallace, MSB # 6904
Charles E. Cowan, MSB #104478
WISE CARTER CHILD & CARAWAY, P.A.
Post Office Box 651
Jackson, Mississippi 39205
Phone 601-968-5500

*Counsel for Plaintiff*

27

## <u>CERTIFICATE OF SERVICE</u>

I, Jonathan G. Polak, do hereby certify that I have this day electronically filed the foregoing pleading or other paper with the Clerk of the Court using the ECF system which sent notification to all counsel of record.

Dated: October 21, 2024                    */s/ Jonathan G. Polak*
                                           Jonathan G. Polak