Exhibit A

### UNITED STATES DISTRICT COURT
### SOUTHERN DISTRICT OF MISSISSIPPI
### NORTHERN DIVISION

| | |
|---|---|
| PHI THETA KAPPA HONOR SOCIETY,     ) | Civil Action No. 3:22-cv-00208-CWR-RPM |
|                   ) | |
|        Plaintiff/Counter-Defendant  ) | |
| v.                     ) | |
|                   ) | |
| HONORSOCIETY.ORG, INC.,    ) | |
|                   ) | |
|   Defendant/Counter-Plaintiff   ) | |
|   /Third-Party-Plaintiff      ) | |
|                   ) | |
| HONOR SOCIETY FOUNDATION, INC.,  ) | |
|                   ) | |
|   Defendant               ) | |
|                   ) | |
| ------------------------------------------------- ) | |
| --                     ) | |
|                   ) | |
| HONORSOCIETY.ORG, INC.,    ) | |
|                   ) | |
|   Defendant/Counter-Plaintiff   ) | |
|   /Third-Party-Plaintiff      ) | |
| v.                     ) | |
|                   ) | |
| DR. LYNN TINCHER-LADNER,    ) | |
|                   ) | |
|   Third-Party Defendant | |

### DECLARATION OF JONATHAN POLAK IN SUPPORT OF
### PHI THETA KAPPA HONOR SOCIETY'S AND DR. LYNN TINCHER-LADNER'S
### <u>THIRD MOTION TO COMPEL DISCOVERY</u>

I, Jonathan Polak, upon my personal knowledge, hereby submit this declaration pursuant to 28 U.S.C. § 1746 and declare as follows:

1.       I am counsel of record for Plaintiff, Phi Theta Kappa Honor Society ("PTK") and Dr. Lynn Tincher-Ladner ("Tincher-Ladner") in this action. I tender this Declaration in support of PTK's and Tincher-Ladner's Third Motion to Compel Discovery and for Sanctions.

2.      On August 5, 2024, PTK and Tincher-Ladner served the respective Second Sets of Interrogatories on Defendant, Honorsociety.org, Inc. ("Honor Society"). On September 5, 2024, Honor Society served its Responses to the Second Sets of Interrogatories. *See* Exs. A-1, A-2.

3.      On September 6, 2024, I detailed the deficiencies with Honor Society's Responses and requested Honor Society provide confirmation by September 9 that full responses would be tendered by September 11, 2024. *See* Ex. A-3. No response to that communication was received on September 9. I wrote Honor Society again asking for a response to my September 6 communication, as well as an explanation as to why no response had been provided. *Id.* Honor Society responded on September 10, 2023, advising that it would provide a "response to your points" by no later than September 13, 2024. *Id.*

4.      The parties had a scheduled meet and confer on September 12, 2024 on other issues, but the sufficiency of Honor Society's responses to the second sets of interrogatories was also discussed. During that conference, Honor Society confirmed that it would provide this new "response" to the Second Sets of Interrogatories on September 13, 2024, and this "response" would include substantive answers. Honor Society delivered nothing on September 13 in the way of supplemental responses despite this promise to do so.

5.      On September 14, 2024, I informed the Court of outstanding discovery issues to be discussed at the upcoming discovery conference, including Honor Society's failure to provide full responses to the Second Sets of Interrogatories, to produce the audio recordings, and to supplement its Responses to the First Sets of Interrogatories. *See* Ex. A-4. The Court scheduled a discovery conference for September 18, 2024. After setting that hearing, on September 16, Honor Society served on PTK its Supplemental Responses to PTK's Second Set of Interrogatories, but only as to Interrogatory No. 20 (Exhibit A-5 hereto), and Dr. Tincher-Lander's Second Set of Interrogatories,

but only as to Interrogatory Nos. 22 and 30 (Exhibit A-6 hereto). These were only 3 of 16 interrogatories at issue, and only the supplemental response to Tincher-Ladner Interrogatory No. 22 (concerning use of student data) was satisfactory. On September 17, 2024, Honor Society provided by email a response to my September 14 email to the Court. *See* Ex. A-7.

6.     During the discovery conference with the Court on September 18, 2024, the parties discussed Honor Society's failure to provide full responses to the Second Sets of Interrogatories (other than Tincher-Ladner Interrogatory No. 22), and Honor Society agreed to provide substantive answers to the Interrogatories at issue.

7.     The Court instructed that production of these discovery responses must occur within 21 days (by October 8, 2024). And if Honor Society failed to produce the agreed information and documents, the Court instructed that PTK was permitted to move to compel without further need for a court conference.

8.     Honor Society did not produce any of this agreed-upon information by October 8, 2024, and still has not produced any of the information as of the filing of this motion to compel.

9.     On April 12, 2023, PTK and Tincher-Ladner served their respective First Set of Requests for Production to Honor Society.

10.     Honor Society served its initial Responses to the First Sets of Requests for Production on May 12, 2023, its First Amended Responses on August 17, 2023, and its Second Amended Responses on November 20, 2023. *See* Exs. A-8 and A-9 (I attach only the November 20, 2023 responses (Exs. A-8 and A-9) because they contain references to all prior responses). None of these indicate that audio recordings were withheld on the basis of any objection, and at no time has Honor Society produced to PTK any audio recordings of Honor Society's customer service calls with prospective or current members.

11.     On August 27, 2024, PTK deposed third-party Boldr, Inc., which served as Honor Society's outsourced customer service vendor from 2017 to 2020 and had access to Honor Society's customer service software, Zendesk. During this deposition, Boldr. Inc. confirmed that Honor Society has audio recordings of its customer service calls with potential and actual customers through Zendesk. *See* Ex. A-10 (providing excerpts from the deposition of David Sudolsky, CEO of Boldr, Inc).  Honor Society, either through its own employees or through its outsourced customer service representatives, recorded a high volume of calls with students who were unhappy with Honor Society and were requesting refunds, or who otherwise were being solicited by Honor Society to resume payment for Honor Society's services. Honor Society never notified PTK and Tincher-Ladner of the existence of these audio recordings, even though these documents had been responsive to many of the First Sets of Requests for Production served on April 12, 2023 and Honor Society was fully aware of their existence.

12.     Moreover, documents Honor Society produced in this litigation confirm not only the existence of these audio recordings, but that Michael Moradian himself may have reviewed them.

13.     On August 29, 2024, I requested that Honor Society search for and produce these audio recordings and respond by September 3, 2024 with confirmation that they would be produced and on what schedule. *See* Ex. A-11. Having received no timely response (a consistent recurring frustration in the meet and confer process), I contacted Honor Society again on September 6, 2024, asking for confirmation on whether the audio recordings will be produced. *See Id.*

14.     Honor Society acknowledged receipt of this correspondence, stating that it would respond by September 13, 2024. *Id.* It never did, and PTK raised this issue by email to the Court

on September 14. *See* Ex. A-4. Honor Society reported to the Court by email dated September 17 that "HonorSociety [sic] has confirmed that ZenDesk does not have customer-service call recordings.  That feature is provided under a service level that HonorSociety [sic] does not have." *See* Ex. A-7.  Honor Society repeated this statement at the discovery conference on September 18. I informed the Court that we found this unlikely due to Mr. Sudolsky's testimony as well as because Honor Society's own documents showed that the recordings had been made.  The Court asked Honor Society to then re-confirm whether they existed and report that to PTK within 21 days of the hearing, and if they did exist, to produce them to PTK.

15. After the discovery conference with the Court, on September 19, 2024, Honor Society confirmed the audio recordings may exist.  *See* Ex. A-12. Despite this representation and the instruction by the Court that if they do exist, they should be reported and/or produced within 21 days of the hearing, Honor Society has never produced them.

16. On April 12, 2023, PTK and Tincher-Ladner served their respective First Set of Interrogatories on Honor Society. Honor Society served its initial Responses to the First Sets of Interrogatories, its First Amended Responses on August 17, 2023, and Second Amended Responses on November 20, 2023. *See* Ex. A-13 (Honor Society's Second Amended Responses to PTK dated November 20, 2023, which shows all prior responses) and Ex. A-14 (Honor Society's First Amended Responses to Dr. Tincher-Ladner dated August 17, 2023, which shows all prior responses).

17. On August 6, 2024, I contacted Honor Society and advised that it needed to supplement these Interrogatories. *See* Ex. A-15. On August 12, 2024, the parties had a meet and confer, during which Honor Society refused to supplement these Interrogatories as requested.

18.     That same day, on August 12, 2024, I communicated the issue to the Court. *See* Ex. A-16. Honor Society provided the Court its position later that evening. *Id.* The Court instructed that a supplementation within 21 days by Honor Society would be reasonable, and that if the issue was unresolved by September 3, 2024 (21 days later), PTK and Tincher-Ladner were to inform the Court. *Id.*

19.     On September 4, 2024, Honor Society communicated its intent to supplement some responses to Interrogatories by September 6, 2024, but not all the deficient Interrogatories. *See* Ex. A-17. On September 6, 2024, Honor Society failed to supplement the following interrogatory responses that were at issue: Nos. 10, 14, 21, 22, and 23 of PTK's First Set of Interrogatories, and Nos. 5, 6, and 7 of Tincher-Ladner's First Set of Interrogatories. *Id.* The parties met and conferred on this issue on September 12, 2024, but no progress was made.

20.     These issues too were discussed with the Court at the September 18, 2024 discovery conference. The Court instructed and Honor Society agreed, to supplement these responses. In the event Honor Society failed to supplement its interrogatories by October 8, 2024 (21 days after the hearing), the Court instructed that PTK was authorized to file this motion. Honor Society has failed to provide any supplementation of these interrogatories.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on this 21ˢᵗ day of October, 2024.

_____
Jonathan G. Polak
Attorney
Taft Stettinius & Hollister LLP

# EXHIBIT 1

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF MISSISSIPPI**
**NORTHERN DIVISION**

| | |
|---|---|
| PHI THETA KAPPA HONOR SOCIETY, | Civil Action No. 3:22-cv-00208-CWR-RPM |
|     Plaintiff/Counter-Defendant, | |
| v. | |
| HONORSOCIETY.ORG INC., | |
|     Defendant/Counter-Plaintiff | |
| HONOR SOCIETY FOUNDATION, INC., | |
|     Defendant. | |
| HONORSOCIETY.ORG INC., | |
|     Defendant/Counter-Plaintiff/Third-Party Plaintiff | |
| v. | |
| LYNN TINCHER-LADNER, | |
|     Third-Party Defendant. | |

**HONORSOCIETY.ORG INC.'S RESPONSES TO THIRD-PARTY DEFENDANT LYNN TINCHER-LADNER'S SECOND SET OF INTERROGATORIES**

HonorSociety.org Inc. responds to Lynn Tincher-Ladner's Second Set of Interrogatories as follows:

**Preliminary Statement**

1.    These objections and responses are made solely for the purpose of this action, and are made without waiving: (a) the right to object (on the grounds of competency, admissibility, privilege, proprietary information, relevancy, materiality, or any other proper grounds) to the use of these responses for any purpose, in whole or in part, in any subsequent step or proceeding in this action; (b) the right to object on any and all grounds, at any time, to interrogatories, other

requests for production, or other discovery involving or relating to the subject matter of the Interrogatories; and (c) the right at any time to revise, correct, add to, or clarify any of the responses provided herein. To the extent that any of Tincher-Ladner's Interrogatories are vague and ambiguous, HonorSociety will not engage in fact-finding or draw conclusions beyond what is required by the Federal Rule of Civil Procedure or applicable local rules or court orders.

3.      Tincher-Ladner's Second Set of Interrogatories also requests that HonorSociety "produce the documents requested herein" "[p]ursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure," and contains sets of instructions for both production of documents and answers to interrogatories. HonorSociety will ignore the instructions concerning production of documents in responding to the below interrogatories.

4.      HonorSociety has not completed its discovery in this action and has not fully completed its preparation for trial. The answers contained in these responses are based only on the information and documents which are presently available and specifically known to HonorSociety and disclose only those contentions which presently are apparent to HonorSociety. Additionally, further discovery, independent investigation, legal research, and analysis may supply additional facts, add meaning to known facts, and establish entirely new factual conclusions and legal contentions, all of which may lead to substantial additions to, and changes in variations from the contentions set forth herein. These responses are given without prejudice HonorSociety's right to produce evidence of subsequently discovered facts, of which HonorSociety may later recall. HonorSociety accordingly reserves the right to change any and all answers herein as additional facts and additional analysis are made, legal research is completed, and contentions are made. These answers and/or documents supplied in this set of responses are provided in a good faith effort to supply as much factual information and as much specification of legal contentions as is presently known, but should in no way prejudice HonorSociety in relation to further discovery, research and analysis and producing additional information at time of trial. These introductory comments shall apply to every answer given herein, and shall be incorporated by reference as though fully set forth in each and every response appearing in the following pages.

**Objections to Definitions**

HonorSociety objects to the definition of "Communication(s)" because it seeks information related to oral communications that may not have been reduced to writing, and production of such things is outside the scope of Rule 34.

HonorSociety objects to the definition of "Describe" to the extent that its inclusion in an interrogatory would require that, in responding that interrogatory, a party identify numerous documents, communications, persons, and locations, thereby turning the interrogatory with the term into a compound interrogatory.

**Objections to Instructions**

**Instruction No. 7:** Honor Society objects to this instruction because it requires the production of documents in response to interrogatories, which is outside the scope of Fed. R. Civ. P. 33. HonorSociety will interpret this instruction as allowing it the option to produce business records in responding to an interrogatory consistent with Fed. R. Civ. P. 33(d).

**Instruction No. 8:** HonorSociety objects to this instruction because it appears incomplete in failing to provide a list of what details Tincher-Ladner requests for information withheld due to privilege. HonorSociety will provide details of any information it withholds on the basis of privilege consistent with the Federal Rules of Civil Procedure.

**Responses to Tincher-Ladner's Second Set of Interrogatories**

**INTERROGATORY NO. 19:**

Identify every statement of PTK that You contend is either false or misleading and Relates To Your claim of False Advertising as stated in Count II of Your Second Amended Counterclaim. In identifying each, please provide the statement, who made it, where it was made, when it was made and how it was made. If there is a Document or Documents that You contend evidence the statement, Identify the Document.

**RESPONSE:**

HonorSociety objects to this Interrogatory as it is overbroad, unduly burdensome, and seeks to impose a requirement on HonorSociety to marshal its evidence in the form of an interrogatory response. HonorSociety also objects because this Interrogatory seeks irrelevant information in seeking "where" and "how" the statements were made.

Subject to and without waiving these objections, and while fact discovery is ongoing, HonorSociety responds as follows: HonorSociety and its counsel continue to identify, gather and evaluate information relevant to this inquiry. HonorSociety will provide the responsive information once it is identified and confirmed. HonorSociety reserves the right to reference responsive information in documents pursuant to Fed. R. Civ. P. 33(d).

**INTERROGATORY NO. 20:**

For each statement identified in response to Tincher-Ladner Interrogatory No. 4 or 19, (1) state whether You contend it is false or whether it is misleading; (2) provide the principal or material facts on which You contend demonstrate that each of those statements is either false or misleading; and (3) Identify the Persons with knowledge of those facts along with a description of that knowledge for each Person.

**RESPONSE:**

HonorSociety objects to this Interrogatory as it is overbroad, unduly burdensome, and seeks to impose a requirement on HonorSociety to marshal its evidence in the form of an interrogatory response. HonorSociety also objects because this Interrogatory is compound and, counting discrete subparts, constitutes more than one interrogatory.

Subject to and without waiving these objections, and while fact discovery is ongoing, HonorSociety responds as follows: HonorSociety and its counsel continue to identify, gather and evaluate information relevant to this inquiry. HonorSociety will provide the responsive

information once it is identified and confirmed. HonorSociety reserves the right to reference responsive information in documents pursuant to Fed. R. Civ. P. 33(d).

**INTERROGATORY NO. 21:**

If You contend that PTK made false or misleading statements in connection with any PPP or PPP2 loan, Identify those principal and material facts on which You rely in making that contention. Please include in Your answer the Persons with knowledge of those facts and any Documents they relied on in forming that knowledge.

**RESPONSE:**

HonorSociety objects to this Interrogatory as it is overbroad, unduly burdensome, and seeks to impose a requirement on HonorSociety to marshal its evidence in the form of an interrogatory response. HonorSociety further objects to this Interrogatory to the extent it seeks information protected by the attorney-client privilege or work product doctrine. HonorSociety also objects because this Interrogatory is compound and constitutes more than one interrogatory.

Subject to and without waiving these objections, and while fact discovery is ongoing, HonorSociety responds as follows:

PTK has refused to respond to discovery requests concerning PPP and PPP2 loans. HonorSociety and its counsel continue to identify, gather and evaluate information relevant to this inquiry. HonorSociety will provide the responsive information once PTK responds to discovery requests concerning PPP and PPP2 loans and such information is identified and confirmed. HonorSociety reserves the right to reference responsive information in documents pursuant to Fed. R. Civ. P. 33(d).

**INTERROGATORY NO. 22:**

If You contend that PTK made false or misleading statements to anyone Concerning the use of personal data, Identify those principal and material facts on which You rely in making that contention. Please include in Your answer the Persons with knowledge of those facts and any Documents they relied in forming that knowledge, or that otherwise support Your contention. Please also include any federal, state or third-party regulations that You contend demonstrate that PTK has made false or misleading statements Concerning the use of personal data.

**RESPONSE:**

HonorSociety objects to the phrase "use of personal data" as vague and ambiguous. HonorSociety further objects to this Interrogatory as it is overbroad, unduly burdensome, and seeks to impose a requirement on HonorSociety to marshal its evidence in the form of an interrogatory response. HonorSociety further objects to this Interrogatory to the extent it seeks information protected by the attorney-client privilege or work product doctrine. HonorSociety also objects because this Interrogatory is compound and constitutes more than one interrogatory.

**INTERROGATORY NO. 23:**

Identify by Bates Number the Document(s) where the "880 requests" identified in the Second Amended Counterclaims can be found, and if more than 880 students are shown on that Document identify the specific 880 that You are referencing in the Document.

**RESPONSE:**

HonorSociety objects to this Interrogatory because it is unduly burdensome and seeks to impose a requirement on HonorSociety to marshal its evidence in the form of an interrogatory response.

Subject to and without waiving these objections, and while fact discovery is ongoing, HonorSociety responds as follows: HonorSociety and its counsel continue to identify, gather and evaluate information relevant to this inquiry. HonorSociety will provide the responsive

information once it is identified and confirmed. HonorSociety reserves the right to reference responsive information in documents pursuant to Fed. R. Civ. P. 33(d).

**INTERROGATORY NO. 24:**

Identify those principal and material facts on which You contend shows that PTK commercially used (as opposed to merely registered) any of the Infringing Domain Names (as that term is used in Your Second Amended Complaint). Include in Your answer the identification of any Documents supporting Your contention, and the names of those witnesses with knowledge of the facts You state in response to this interrogatory.

**RESPONSE:**

HonorSociety objects to this Interrogatory because it is overbroad, unduly burdensome, and seeks to impose a requirement on HonorSociety to marshal its evidence in the form of an interrogatory response. HonorSociety also objects because the phrase "commercially used" is vague and ambiguous. HonorSociety further objects to this Interrogatory to the extent it seeks information protected by the attorney-client privilege and work product doctrine. HonorSociety also objects to this Interrogatory because it is compound and constitutes more than one interrogatory.

Subject to and without waiving these objections, and while fact discovery is ongoing, HonorSociety responds as follows:

PTK registered the Infringing Domain Names to siphon internet traffic away from HonorSociety, its competitor. In further answering, HonorSociety and its counsel continue to identify, gather and evaluate information relevant to this inquiry. HonorSociety will provide the responsive information once it is identified and confirmed. HonorSociety reserves the right to reference responsive information in documents pursuant to Fed. R. Civ. P. 33(d).

**INTERROGATORY NO. 25:**

If You contend that PTK is responsible for the public statements of PTK advisors who are not employed by PTK and are employed by the schools, Identify the principal and material facts on which You make that contention.

**RESPONSE:**

HonorSociety objects to this Interrogatory because it is overbroad, unduly burdensome, and seeks to impose a requirement on HonorSociety to marshal its evidence in the form of an interrogatory response. HonorSociety further objects to this interrogatory as overbroad and unduly burdensome in that it asks about an entire class of individuals without identifying any of them. HonorSociety further objects to the term "responsible" as vague and ambiguous. HonorSociety also objects because this interrogatory calls for a legal conclusion, and seeks information protected by the attorney-client privilege and/or work product doctrine.

**INTERROGATORY NO. 26:**

Identify all principal and material facts on which You contend that You are entitled to punitive damages for any of Your counterclaims.

**RESPONSE:**

HonorSociety objects to this Interrogatory because it is overbroad, unduly burdensome, and seeks to impose a requirement on HonorSociety to marshal its evidence in the form of an interrogatory response. HonorSociety also objects because this interrogatory calls for a legal conclusion, and seeks information protected by the attorney-client privilege and/or work product doctrine.

Subject to and without waiving these objections, and while fact discovery is ongoing, HonorSociety responds as follows:

It is evident from PTK's false and defamatory communications with the schools that such communications were made with an element of aggression, or some coloring of insult, malice,

oppression, fraud, or gross negligence, evincing ruthless disregard for the rights of others. In further answering, HonorSociety and its counsel continue to identify, gather and evaluate information relevant to this inquiry. HonorSociety will provide the responsive information once it is identified and confirmed. HonorSociety reserves the right to reference responsive information in documents pursuant to Fed. R. Civ. P. 33(d).

**INTERROGATORY NO. 27:**

Identify every statement by PTK that You contend "delegitimized" You. If there is a Document or Documents that You contend evidence the statement, Identify the Document.

**RESPONSE:**

HonorSociety objects to this Interrogatory because it is overbroad, unduly burdensome, and seeks to impose a requirement on HonorSociety to marshal its evidence in the form of an interrogatory response. HonorSociety further objects to this Interrogatory to the extent it seeks information protected by the attorney-client privilege or work product doctrine.

Subject to and without waiving these objections, and while fact discovery is ongoing, HonorSociety responds as follows:

PTK communicated to numerous community colleges that HonorSociety was a "scam," and accusing HonorSociety of fraudulent conduct and insinuating that HonorSociety is not a legitimate honor society. PTK's communications to community colleges in which it attempted to have those colleges block HonorSociety's emails to students further delegitimized HonorSociety.

In further answering, HonorSociety and its counsel continue to identify, gather and evaluate information relevant to this inquiry. HonorSociety will provide the responsive information once it is identified and confirmed. HonorSociety reserves the right to reference responsive information in documents pursuant to Fed. R. Civ. P. 33(d).

**INTERROGATORY NO. 28:**

Identify Your evidence that "PTK also urged community colleges to block delivery of HonorSociety's [sic] emails to students, which would prevent HonorSociety [sic] from communicating with current members."

**RESPONSE:**

HonorSociety objects to this Interrogatory because it is overbroad, unduly burdensome, and seeks to impose a requirement on HonorSociety to marshal its evidence in the form of an interrogatory response. HonorSociety further objects to this Interrogatory to the extent it seeks information protected by the attorney-client privilege or work product doctrine.

Subject to and without waiving these objections, and while fact discovery is ongoing, HonorSociety responds as follows:

PTK sent numerous emails to community colleges encouraging them to block HonorSociety's emails to students. The students at these community colleges who were also HonorSociety members would have HonorSociety's emails block, preventing HonorSociety from communicating with its members.

In further answering, the documents HonorSociety may cite in responding to this Interrogatory have been designated by PTK as "Highly Confidential – Attorneys' Eyes Only," thus preventing HonorSociety from having access to them for the purpose of preparing verified interrogatory responses. HonorSociety and its counsel continue to identify, gather and evaluate information relevant to this inquiry. HonorSociety will provide the responsive information once it is identified and confirmed. HonorSociety reserves the right to reference responsive information in documents pursuant to Fed. R. Civ. P. 33(d).

**INTERROGATORY NO. 29:**

Identify all principal and material facts on which You contend that Honor Society members were exposed to PTK's allegedly defamatory statements. If there is a Document or Documents that You contend evidence the statement, Identify the Document.

**RESPONSE:**

HonorSociety objects to this Interrogatory because it is overbroad, unduly burdensome, and seeks to impose a requirement on HonorSociety to marshal its evidence in the form of an interrogatory response. HonorSociety further objects to this Interrogatory to the extent it seeks information protected by the attorney-client privilege or work product doctrine.

Subject to and without waiving these objections, and while fact discovery is ongoing, HonorSociety responds as follows:

HonorSociety members received emails from their community colleges warning those members that HonorSociety was a "scam" or not a legitimate honor society after PTK conveyed those messages to the community college leadership.

In further answering, HonorSociety and its counsel continue to identify, gather and evaluate information relevant to this inquiry. HonorSociety will provide the responsive information once it is identified and confirmed. HonorSociety reserves the right to reference responsive information in documents pursuant to Fed. R. Civ. P. 33(d).

**INTERROGATORY NO. 30:**

Identify all principal and material facts on which You contend that Honor Society members believed PTK's allegedly defamatory statements. If there is a Document or Documents that You contend evidence the statement, Identify the Document.

**RESPONSE:**

HonorSociety objects to this Interrogatory because it is overbroad, unduly burdensome, and seeks to impose a requirement on HonorSociety to marshal its evidence in the form of an

interrogatory response. HonorSociety further objects to this Interrogatory to the extent it seeks information protected by the attorney-client privilege or work product doctrine.

Subject to and without waiving these objections, and while fact discovery is ongoing, HonorSociety responds as follows: HonorSociety and its counsel continue to identify, gather and evaluate information relevant to this inquiry. HonorSociety will provide the responsive information once it is identified and confirmed. HonorSociety reserves the right to reference responsive information in documents pursuant to Fed. R. Civ. P. 33(d).

**INTERROGATORY NO. 31:**

Identify those Persons that asked for a refund due to PTK's alleged misconduct. If there is a Document or Documents that You contend evidence the statement, Identify the Document.

**RESPONSE:**

HonorSociety objects to this Interrogatory because it is overbroad, unduly burdensome, and seeks to impose a requirement on HonorSociety to marshal its evidence in the form of an interrogatory response. HonorSociety also objects to the phrase "asked for a refund" as vague and ambiguous, as it does not specify for what "those Persons" asked for a refund. HonorSociety further objects to this Interrogatory to the extent it seeks information protected by the attorney-client privilege or work product doctrine.

Subject to and without waiving these objections, and while fact discovery is ongoing, HonorSociety responds as follows: HonorSociety and its counsel continue to identify, gather and evaluate information relevant to this inquiry. HonorSociety will provide the responsive information once it is identified and confirmed. HonorSociety reserves the right to reference responsive information in documents pursuant to Fed. R. Civ. P. 33(d).

**INTERROGATORY NO. 32:**

Identify those damages You contend You incurred as a result of lost merchandise sales due to PTK's alleged misconduct.

**RESPONSE:**

HonorSociety objects to this Interrogatory because it is overbroad, unduly burdensome, and seeks to impose a requirement on HonorSociety to marshal its evidence in the form of an interrogatory response. HonorSociety further objects to this Interrogatory to the extent it seeks information protected by the attorney-client privilege or work product doctrine. HonorSociety also objects to this interrogatory to the extent it seeks expert information, the production of which is governed by the Federal Rules of Civil Procedure.

Subject to and without waiving these objections, and while fact discovery is ongoing, HonorSociety responds as follows: HonorSociety and its counsel continue to identify, gather and evaluate information relevant to this inquiry. HonorSociety will provide the responsive information once it is identified and confirmed. HonorSociety reserves the right to reference responsive information in documents pursuant to Fed. R. Civ. P. 33(d).

**INTERROGATORY NO. 33:**

Identify the Document(s) that You contend describe the overall mix of two-year program students, community college students, junior college students and technical schools students in Your membership, by year, from 2016 to present.

**RESPONSE:**

HonorSociety objects to this Interrogatory because it is overbroad, unduly burdensome, and seeks to impose a requirement on HonorSociety to marshal its evidence in the form of an interrogatory response. HonorSociety also objects to this interrogatory to the extent it seeks expert information, the production of which is governed by the Federal Rules of Civil Procedure. HonorSociety objects to the phrase "describe the overall mix" because it is vague, ambiguous,

and seeks irrelevant information. HonorSociety will provide a response to this interrogatory to the best of its ability following further explanation from Tincher-Ladner as to what it means or what information is sought.

Dated: September 5, 2024

Newman llp

s/ Derek Linke
Derek A. Newman (pro hac vice)
Derek Linke (pro hac vice)
Keith P. Scully (pro hac vice)
Gregory M. Scialabba (pro hac vice)
100 Wilshire Blvd, Suite 700
Santa Monica, CA 90401
Tel: (310) 359-8200
dn@newmanlaw.com
linke@newmanlaw.com
keith@newmanlaw.com
gs@newmanlaw.com

Attorneys for Defendant, Counter-Claimant, and Third-Party Plaintiff HonorSociety.org, Inc.

**Verification**

I, Michael Moradian, am the Executive Director of HonorSociety.org Inc. In that capacity, I either have personal knowledge or have been provided the personal knowledge of others that is responsive to the interrogatories above (subject to the objections stated). For those facts set forth here, and based on that personal knowledge so described, they are true and correct to the best of my belief.

Executed this 5th day of September, 2024.



_____
Michael Moradian

**Certificate of Service**

I hereby certify that on September 5, 2024, a copy of the foregoing was served via email upon the following counsel.

Jonathan G. Polak (Pro Hac Vice)
William M. Etienne (Pro Hac Vice)          Rachel Smoot (Pro Hac Vice)
TAFT STETTINIUS & HOLLISTER LLP           TAFT STETTINIUS & HOLLISTER LLP
One Indiana Square, Suite 3500             41 S. High Street, Suite 1800
Indianapolis, IN 46204-2023                Columbus, OH 43215
(317) 713-3500 – phone                     (614) 221-2838 – phone
(317) 713-3699 – fax                       (614) 221-2007 – fax
jpolak@taftlaw.com                         rsmoot@taftlaw.com
metienne@taftlaw.com

Michael B. Wallace, MSB # 6904
Charles E. Cowan, MSB #104478
Beau M. Bettiga
WISE CARTER CHILD & CARAWAY
401 East Capitol Street, Suite 600
P. O. Box 651 (39205-0651)
Jackson, MS 39201
(601) 968-5500 - phone
mbw@wisecarter.com
cec@wisecarter.com
ksh@wisecarter.com
b2bettiga@gmail.com

Counsel for Plaintiff and Counter-Defendant Phi Theta Kappa Honor Society, and Third-Party Defendant Dr. Lynn Tincher-Ladner.

I hereby certify under the penalty of perjury that the foregoing is true and correct.

Executed on September 5, 2024 at Mercer Island, Washington.


                                        s/ Derek Linke
                                        Derek Linke

# EXHIBIT 2

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF MISSISSIPPI**
**NORTHERN DIVISION**

| | |
|---|---|
| PHI THETA KAPPA HONOR SOCIETY, | Civil Action No. 3:22-cv-00208-CWR-RPM |
| Plaintiff/Counter-Defendant, | |
| v. | |
| HONORSOCIETY.ORG INC., | |
| Defendant/Counter-Plaintiff | |
| HONOR SOCIETY FOUNDATION, INC., | |
| Defendant. | |
| HONORSOCIETY.ORG INC., | |
| Defendant/Counter-Plaintiff/Third-Party Plaintiff | |
| v. | |
| LYNN TINCHER-LADNER, | |
| Third-Party Defendant. | |

**HONORSOCIETY.ORG INC.'S RESPONSES TO PLAINTIFF PHI THETA KAPPA**
**HONOR SOCIETY'S SECOND SET OF INTERROGATORIES**

HonorSociety.org Inc. responds to Phi Theta Kappa Honor Society's Second Set of Interrogatories as follows:

**Preliminary Statement**

1.      These objections and responses are made solely for the purpose of this action, and are made without waiving: (a) the right to object (on the grounds of competency, admissibility, privilege, proprietary information, relevancy, materiality, or any other proper grounds) to the use of these responses for any purpose, in whole or in part, in any subsequent step or proceeding in this action; (b) the right to object on any and all grounds, at any time, to interrogatories, other

requests for production, or other discovery involving or relating to the subject matter of the Interrogatories; and (c) the right at any time to revise, correct, add to, or clarify any of the responses provided herein. To the extent that any of PTK's Interrogatories are vague and ambiguous, HonorSociety will not engage in fact-finding or draw conclusions beyond what is required by the Federal Rule of Civil Procedure or applicable local rules or court orders.

2.     PTK's First Set of Interrogatories to HonorSociety contained Interrogatory Nos. 1-24. PTK's Second Set of Interrogatories to HonorSociety begin on Interrogatory "19." Therefore, even ignoring the numerous compound interrogatories in PTK's First Set of Interrogatories, Interrogatories "19," "20," and "21" in PTK's Second Set are the 25th, 26th, and 27th interrogatories PTK has served on HonorSociety. The Court's Case Management Order limited interrogatories to "25 succinct questions." (Dkt. No. 59). PTK's Second Set of Interrogatories to HonorSociety exceeds this number.

3.     PTK's Second Set of Interrogatories also requests that HonorSociety "produce the documents requested herein" "[p]ursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure," and contains sets of instructions for both production of documents and answers to interrogatories. HonorSociety will ignore the instructions concerning production of documents in responding to the below interrogatories.

4.     HonorSociety has not completed its discovery in this action and has not fully completed its preparation for trial. The answers contained in these responses are based only on the information and documents which are presently available and specifically known to HonorSociety and disclose only those contentions which presently are apparent to HonorSociety. Additionally, further discovery, independent investigation, legal research, and analysis may supply additional facts, add meaning to known facts, and establish entirely new factual conclusions and legal contentions, all of which may lead to substantial additions to, and changes in variations from the contentions set forth herein. These responses are given without prejudice HonorSociety's right to produce evidence of subsequently discovered facts, of which HonorSociety may later recall. HonorSociety accordingly reserves the right to change any and all

answers herein as additional facts and additional analysis are made, legal research is completed, and contentions are made. These answers and/or documents supplied in this set of responses are provided in a good faith effort to supply as much factual information and as much specification of legal contentions as is presently known, but should in no way prejudice HonorSociety in relation to further discovery, research and analysis and producing additional information at time of trial. These introductory comments shall apply to every answer given herein, and shall be incorporated by reference as though fully set forth in each and every response appearing in the following pages.

## Objections to Definitions

HonorSociety objects to the definition of "Communication(s)" because it seeks information related to oral communications that may not have been reduced to writing, and production of such things is outside the scope of Rule 34.

HonorSociety objects to the definition of "Describe" to the extent that its inclusion in an interrogatory would require that, in responding that interrogatory, a party identify numerous documents, communications, persons, and locations, thereby turning the interrogatory with the term into a compound interrogatory.

## Objections to Instructions

**Instruction No. 7:** Honor Society objects to this instruction because it requires the production of documents in response to interrogatories, which is outside the scope of Fed. R. Civ. P. 33. HonorSociety will interpret this instruction as allowing it the option to produce business records in responding to an interrogatory consistent with Fed. R. Civ. P. 33(d).

**Instruction No. 8:** HonorSociety objects to this instruction because it appears incomplete in failing to provide a list of what details PTK requests for information withheld due to privilege. HonorSociety will provide details of any information it withholds on the basis of privilege consistent with the Federal Rules of Civil Procedure.

**Responses to PTK's Second Set of Interrogatories**

**INTERROGATORY NO. 19 [25]:**

Identify all organizations You believe are in the "relevant market" defined in Your Second Amended Counterclaim as "general honors societies for community-college students in the United States, which are membership clubs that provide a package of services consisting of general resources, scholarships, membership recognition, academic recognition, and networking resources and opportunities." (Second Amended Counterclaim ¶ 160).

**RESPONSE:**

HonorSociety objects to the term "organizations" as vague and ambiguous. HonorSociety further objects to this interrogatory to the extent it seeks expert information, the production of which is governed by the Federal Rules of Civil Procedure. HonorSociety also objects to this interrogatory to the extent it seeks information protected by the attorney-client privilege or work product doctrine.

Subject to and without waiving these objections, and while fact discovery is ongoing, HonorSociety responds as follows:

The market for general honors societies for community-college students in the United States includes:

- HonorSociety;
- Phi Theta Kappa Honor Society;
- National Society of Leadership and Success;
- National Society for Collegiate Scholars;
- Golden Key National Honor Society.

Additionally, there are other honor societies which may be in the relevant market to a minor degree, such as Alpha Beta Kappa Honor Society, Phi Sigma Pi, and the Society for Collegiate Leadership & Achievement.

**INTERROGATORY NO. 20 [26]:**

Identify the principal and/or material facts which support Your claim of Attempted Monopolization as stated in Count I of Your Second Amended Counterclaim. Please be sure to include the following information: (a) those acts or omissions of PTK You contend support Your claim; (b) the Documents You contend support Your claim; (c) the witnesses with knowledge of that claim and the principal or material facts known to them.

**RESPONSE:**

HonorSociety objects to this interrogatory to the extent it seeks expert information, the production of which is governed by the Federal Rules of Civil Procedure. HonorSociety also objects to this interrogatory to the extent it seeks information protected by the attorney-client privilege or work product doctrine. HonorSociety further objects because this interrogatory is compound and constitutes more than one interrogatory.

Subject to and without waiving these objections, and while fact discovery is ongoing, HonorSociety responds as follows:

PTK has attempted to monopolize the relevant market including in the following ways:

PTK maintains a close relationship with The American Association of Community Colleges ("AACC") by, among other things, joint conventions and having individuals employed and/or serving on the board of directors for both PTK and AACC. PTK uses this close relationship with AACC to maintain AACC's recognition of PTK as the sole "official" honor society for community college students.  Moreover, PTK uses its relationship with AACC through PTK's Presidential Advisory Board to help maintain PTK's dominant position, and assist with its attempted monopolization, of the relevant market.

PTK and community college officials have engaged in coordinated behavior to maintain PTK's dominant position and exclude competitors. This coordinated behavior includes community college officials warning PTK when other honor societies attempt to open chapters on their campuses. PTK has also encouraged community college leaders to not approve honor societies other than PTK.

PTK advised or encouraged community colleges to have their IT department block HonorSociety emails from reaching students. In numerous instances, PTK informed community colleges that HonorSociety was a "scam" and otherwise disparaged HonorSociety to convince colleges to block HonorSociety's emails to students or to otherwise interfere with HonorSociety's ability to compete.

**INTERROGATORY NO. 21 [27]:**

Describe those source(s) of the product market relevant to your claim of Attempted Monopolization as stated in Count I of your Second Amended Counterclaim.

**RESPONSE:**

HonorSociety objects to the phrase "source[s] of the product market" as vague and ambiguous. HonorSociety further objects to this interrogatory to the extent it seeks expert information, the production of which is governed by the Federal Rules of Civil Procedure. HonorSociety also objects to this interrogatory to the extent it seeks information protected by the attorney-client privilege or work product doctrine. HonorSociety further objects to this interrogatory is compound and constitutes more than one interrogatory.

Dated: September 5, 2024

Newman llp

s/ Derek Linke
Derek A. Newman (pro hac vice)
Derek Linke (pro hac vice)
Keith P. Scully (pro hac vice)
Gregory M. Scialabba (pro hac vice)
100 Wilshire Blvd, Suite 700
Santa Monica, CA 90401
Tel: (310) 359-8200
dn@newmanlaw.com
linke@newmanlaw.com
keith@newmanlaw.com
gs@newmanlaw.com

Attorneys for Defendant, Counter-Claimant,
and Third-Party Plaintiff HonorSociety.org, Inc.

**Verification**

I, Michael Moradian, am the Executive Director of HonorSociety.org Inc. In that capacity, I either have personal knowledge or have been provided the personal knowledge of others that is responsive to the interrogatories above (subject to the objections stated). For those facts set forth here, and based on that personal knowledge so described, they are true and correct to the best of my belief.

Executed this 5th day of September, 2024.

DocuSigned by:

_Mike Moradian_

2879F22B88B441E...

Michael Moradian

- 8 -

**Certificate of Service**

I hereby certify that on September 5, 2024, a copy of the foregoing was served via email upon the following counsel.

Jonathan G. Polak (Pro Hac Vice)
William M. Etienne (Pro Hac Vice)
TAFT STETTINIUS & HOLLISTER LLP
One Indiana Square, Suite 3500
Indianapolis, IN 46204-2023
(317) 713-3500 – phone
(317) 713-3699 – fax
jpolak@taftlaw.com
metienne@taftlaw.com

Rachel Smoot (Pro Hac Vice)
TAFT STETTINIUS & HOLLISTER LLP
41 S. High Street, Suite 1800
Columbus, OH 43215
(614) 221-2838 – phone
(614) 221-2007 – fax
rsmoot@taftlaw.com

Michael B. Wallace, MSB # 6904
Charles E. Cowan, MSB #104478
Beau M. Bettiga
WISE CARTER CHILD & CARAWAY
401 East Capitol Street, Suite 600
P. O. Box 651 (39205-0651)
Jackson, MS 39201
(601) 968-5500 - phone
mbw@wisecarter.com
cec@wisecarter.com
ksh@wisecarter.com
b2bettiga@gmail.com

Counsel for Plaintiff and Counter-Defendant Phi Theta Kappa Honor Society, and Third-Party Defendant Dr. Lynn Tincher-Ladner.

I hereby certify under the penalty of perjury that the foregoing is true and correct.

Executed on September 5, 2024 at Mercer Island, Washington.

s/ Derek Linke
Derek Linke

# EXHIBIT 3

## Cassady, DeeAnn

| | |
|---|---|
| **From:** | Derek Linke <Linke@newmanlaw.com> |
| **Sent:** | Tuesday, September 10, 2024 7:35 AM |
| **To:** | Polak, Jonathan |
| **Cc:** | Etienne, Mike; Mike Wallace; Charles Cowan; b2bettiga@gmail.com; ksh@wisecarter.com; Smoot, Rachel A.; Derek A. Newman; Gregory M. Scialabba; Devonnie Wharton; Whit Rayner; Dakota Stephens; Warren, Hugh |
| **Subject:** | Re: [EXTERNAL]RE: Phi Theta Kappa Honor Society v https://url.us.m.mimecastprotect.com/s/DYl1C0R2oguB9XoWtwfYC9WoRi?domain=honorsociety.org Inc. |

Jonathan,

We are reviewing this and will be able to respond to your points by this Friday, September 13.

Thank you.

Derek Linke
Newman LLP
direct (206) 274-2827
mobile (206) 669-3638


On Sep 9, 2024, at 11:33 AM, Polak, Jonathan <JPolak@taftlaw.com> wrote:

Derek,

I have not received a response to this communication by the noon time identified below.  Am I to understand then that you will be remedying these defects by Wednesday, September 11th?  Or was there some other reason why you did not respond?

**Taft/**

**Jonathan G. Polak**
Partner
JPolak@taftlaw.com
Dir: 317.713.3532
Tel: 317.713.3500  |  Fax: 317.713.3699
One Indiana Square, Suite 3500
Indianapolis, Indiana 46204-2023

**taftlaw.com**

This message may contain information that is attorney-client privileged, attorney work product or otherwise confidential. If you are not an intended recipient, use and disclosure of this message are prohibited. If you received this transmission in error, please notify the sender by reply e-mail and delete the message and any attachments.

**From:** Polak, Jonathan
**Sent:** Friday, September 6, 2024 2:00 PM
**To:** Derek Linke <Linke@newmanlaw.com>; Etienne, Mike <MEtienne@taftlaw.com>; Mike Wallace <mbw@wisecarter.com>; Charles Cowan <cec@wisecarter.com>; b2bettiga@gmail.com; ksh@wisecarter.com; Smoot, Rachel A. <RSmoot@taftlaw.com>
**Cc:** Derek A. Newman <dn@newmanlaw.com>; Gregory M. Scialabba <gs@newmanlaw.com>; Devonnie Wharton <devonnie@newmanlaw.com>; Whit Rayner <wrayner@joneswalker.com>; Dakota Stephens <dstephens@joneswalker.com>; Warren, Hugh <hwarren@joneswalker.com>
**Subject:** RE: Phi Theta Kappa Honor Society v http://HonorSociety.org Inc.

Derek,

I have reviewed these responses and they are woefully defective. It is clear to us that absolutely no effort at all was made to provide PTK and Dr. Tincher-Ladner with substantive responses, and instead these documents only serve to further delay this matter and my clients' efforts at obtaining information from you about your claims. These discovery requests are highly probative of issues for the experts, as well as for remaining fact witnesses. For those reasons, we need to move quickly to get these documents either supplemented or before Magistrate Judge Myers.

I will outline these defects here, **and require they be remedied by no later than Wednesday, September 11th**. If you do not intend to remedy them by September 11, please state so by Monday the 9th by noon so that we may schedule a meet and confer.

At the outset, your objections are nothing more than boilerplate. I'm surprised by that, since you went to great lengths to brief, and even move to compel, on objections asserted by PTK that were far more robust. Surely the double-standard/inconsistency in approach here is striking. For all the reasons you have told me in the past, they are untenable and likely waived. I would also note that we already obtained an order from Magistrate Judge Ball striking such objections, and it appears to me these may actually be in contempt of that prior order.

I also see no substantive basis for the assertion of the objections. None of these interrogatories create any burden, nor are they overbroad. Instead, they are asking for evidence that should be in your possession by now. I remind you that your production is alleged to have been "substantially complete" for months, and in some categories since November, 2023. For you to now take the position that "discovery is ongoing" and fail to provide any substantive response at all backing up the allegations made by your firm in the Second Amended Counterclaims, requires a logic I'm not capable of understanding – and I think the Court will find it similarly confounding and potentially sanctionable. At this point in the case, we should not be receiving objections that would indicate "I'm still looking for the documents and information."

With that background, please see my more specific concerns:

**PTK 2nd Set of Interrogatories**

*No. 20.* Honor Society's response is defective in three ways. First, it is unclear whether your list is a complete response to "(a)" of the interrogatory. We ask that you confirm that it is a complete list. Second, Honor Society identified no documents supporting the claim. If you have no documents to

2

support these allegations, say so. If you do, please identify those that you believe support these contentions. Third, Honor Society identifies no witnesses that are knowledgeable of the allegations you did list.  Please supplement your response with that information.

**LTL 2nd Set of Interrogatories**

*No. 19, 20*.  You provide no meaningful response here.  There is no basis to wait further in identifying any "false or misleading" statement(s) known to you as of this date after two and a half years of litigation, covering the production of hundreds of thousands of documents and multiple depositions.  Providing such information at this time, certainly now that expert reports have been provided, is not unreasonable, premature or inappropriate.  Note that you are also required to identify the documents containing the required information.

*No. 21*.  Again, you provide no meaningful response here.  It was Honor Society that made the allegation that PTK fraudulently applied for PPP loans.  Surely you had some basis on which to make that allegation.  You provide nothing here, and instead claim that you are waiting for information from PTK.  We are unaware of any outstanding discovery request from Honor Society that has not been responded to by PTK on this subject, or any complaint by you that any response from PTK is incomplete.  Regardless, we are entitled to know what information you know at this time.  Please provide it.  If you have no responsive information, say so.

*No. 22*.  Your objection that you do not know what "personal data" is, when it forms the basis of your allegations, is obstructionist and unfounded.  Part of Honor Society's counterclaims is that PTK has falsely and misleadingly concealed its alleged "sale" of students' personal information and data in violation of data privacy laws.  We have long argued this claim is baseless, and this interrogatory seeks to take Honor Society to task on the proof it has of this allegation.  Your response indicates to us that you have nothing, but your response, riddled with baseless objections, prevents any meaningful discernment on whether any evidence actually exists in your possession. We are entitled to an answer on whether this allegation has any evidentiary basis at all, including the identification of any federal, state or third-party regulations you allege have been violated by PTK.

*No. 23*.  This response is also a non-response.  Amazingly, a claim as specific as "880 requests" identified in your Second Amended Counterclaims cannot be substantiated? Now 5 months after the claim was made?  We find that surprising, and likely specious, and require that you immediately provide the information on which you based this allegation in your pleadings. If there is no responsive information, please say so.

*No. 24*. You provide no facts in response to this important interrogatory.  The question asked here is not whether you have evidence of registration.  It is specific instead as to how PTK "commercially used (as opposed to merely registered)" the allegedly infringing domain names.  Clearly, we *excluded* from the interrogatory information concerning registration.  Yet, your response only provides information concerning registration.  In other words, you provided no information at all responsive to this interrogatory.  Please provide it immediately.

*No. 25*.  This interrogatory seeks to get at any information you have to support your long-running (and false) narrative that PTK is somehow responsible for the actions of PTK Advisors hired by community colleges and other educational institutions.  You provide nothing. Your objections are baseless – unduly burdensome?  This is a legitimate interrogatory that requires a response.  Please provide one immediately.

*No. 26*. You provide nothing but argument in response to this interrogatory. The interrogatory seeks facts supporting your claim for punitive damages. You provide no facts, and identify no witnesses or documents. Please provide a complete response immediately.

*No. 27*. Your response is nothing but a short two sentence generality, with no identification of facts, witnesses or documents. A complete response requires facts. There is no basis to your objections that it is overly broad or unduly burdensome, or that "discovery is ongoing." You are the one that made this allegation in the Second Amended Counterclaims, and Michael Moradian has been complaining about this since his first deposition. We are entitled to a complete answer now.

*No. 28*. We are unaware of any emails from any PTK employee "encouraging [community colleges] to block Honor Society's [sic] emails to students." Of course, that is why we asked this question and required an identification of any documents or witnesses with knowledge of your allegation. You provide nothing. Please provide the responsive information. If documents have been marked AEO, then you as counsel can still identify them.

*No. 29*. You at least provided a response to this request, but you identified only a single "fact" – "HonorSociety [sic] members received emails form their community colleges warning those members that HonorSociety [sic] was a 'scam' or not a legitimate honor society after PTK conveyed those messages to the community college leadership." This response fails to provide any degree of specificity as to what communications you are referring to, either by Bates number or other description. We have no way of tracking down what it is you are referring to. Also, is this the only fact you are in possession of concerning any exposure by Honor Society members to allegedly defamatory statements? If there are others, we are entitled to know. Your response indicating that you continue to "identify, gather and evaluate" information suggests that you are in possession of such other information, and the time to provide that is now.

*No. 30*. You wholly failed to provide any information in response to this interrogatory. Are you saying that you have no evidence that any students actually believed the alleged defamatory statements? If you have evidence, provide it. Otherwise, we will understand you to have none.

*No. 31*. This document requests that you identify specifically the students that requested refunds from Honor Society due to PTK's alleged misconduct. You failed to provide any information at all. Please provide this information as it is critical to understanding your claims.

*No. 32*. You failed to provide any response to this request at all. Please provide the responsive information.

*No. 33*. This question seeks identification of the document(s) that demonstrate the mix of community college and other 2 year degree programs in Honor Society's membership. This interrogatory is specifically the interrogatory that you requested we send in your response to our motion to compel. Yet you know refuse to provide it, claiming that you want to first ask Dr. Tincher-Ladner what she meant by the request. That's nonsense. You know exactly what we are referring to because you are the one that asked us to send this interrogatory. We require an immediate response to this. I've now spent nearly four months trying to get an answer to the question of how many of Honor Society's members are in the community college and 2 year space. Your client has provided me five different answers to that question over time. I need an actual response to this question.

**From:** Derek Linke <Linke@newmanlaw.com>
**Sent:** Thursday, September 5, 2024 11:20 PM

**To:** Polak, Jonathan <JPolak@taftlaw.com>; Etienne, Mike <MEtienne@taftlaw.com>; Mike Wallace <mbw@wisecarter.com>; Charles Cowan <cec@wisecarter.com>; b2bettiga@gmail.com; ksh@wisecarter.com; Smoot, Rachel A. <RSmoot@taftlaw.com>
**Cc:** Derek A. Newman <dn@newmanlaw.com>; Gregory M. Scialabba <gs@newmanlaw.com>; Devonnie Wharton <devonnie@newmanlaw.com>; Whit Rayner <wrayner@joneswalker.com>; Dakota Stephens <dstephens@joneswalker.com>; Warren, Hugh <hwarren@joneswalker.com>
**Subject:** Phi Theta Kappa Honor Society v https://url.us.m.mimecastprotect.com/s/SVy4C31jrlFKq0DKsgfoCQQsQC?domain=honorsociety.org In c.


Counsel,

Please find attached HonorSociety's responses to PTK's second set of interrogatories and Dr. Tincher-Ladner's second set of interrogatories.

Thank you.

Derek Linke
Newman LLP
direct (206) 274-2827
mobile (206) 669-3638

# EXHIBIT 4

**Cassady, DeeAnn**

| | |
|---|---|
| **From:** | Polak, Jonathan |
| **Sent:** | Saturday, September 14, 2024 11:28 AM |
| **To:** | MSSDdb_Myers_Chambers |
| **Cc:** | Beau M. Bettiga; Charles Cowan; Stephens, Dakota; Warncke, Daniel R.; Derek Linke; Derek A. Newman; Gregory M. Scialabba; hwarren@joneswalker.com; jfh@wisecarter.com; Keith Scully; kcallahan@joneswalker.com; Mike Wallace; Smoot, Rachel A.; Rayner, Whit; Etienne, Mike |
| **Subject:** | PTK v. Honor Society, et al v. Dr. Lynn Tincher-Ladner - 3:23-cv-00208-CWR-RPM |
| **Attachments:** | HonorSociety Responses to PTKs 2nd Interrogs 2024-09-05.pdf; HonorSociety Responses to LTLs 2nd Interrogs 2024-09-05.pdf; RE: Phi Theta Kappa Honor Society v https://url.us.m.mimecastprotect.com/s/SVy4C31jrlFKq0DKsgfoCQQsQC?domain=honorsociety.org Inc.; 2024-09-04 Ltr to Polak re Demand for Supplementation (002).pdf |

Magistrate Judge Myers,

In anticipation of our conference with you scheduled for Tuesday the 18th, we write to identify those issues PTK intends to raise during the conference. Some of these issues remain unresolved despite being raised with you by our communication dated August 12, 2024.

We understand that the purpose of this conference, as specified in the case management order, is to determine whether the filing of a discovery motion is necessary and appropriate, not necessarily to resolve the dispute. We thought we should give you a significant level of detail in the hope that it might facilitate an agreement on some points. Absent an agreement, we simply seek authority to file a motion, so that the Court may rule on a complete record.

1. **Defendants' failure to respond to PTK and Dr. Tincher-Ladner's 2nd Set of Interrogatories**. Honor Society served, for the most part, nothing but boilerplate objections with no substantive responses on September 5. We wrote counsel on September 6 advising of the deficiencies and requesting complete responses. Counsel advised on September 10 that a "response" of some type would be delivered by September 13, which was confirmed during a meet and confer on September 12 (where it was also confirmed that the "response" would include substantive answers). We have received nothing. As you can see from the scope of the interrogatory requests, PTK is seeking critical facts on which Defendants are relying in making their counterclaims. The specific requests that are at issue are: PTK 2nd Set of INTs (No. 20); LTL 2nd Set of INTs (Nos. 19, 20, 21, 22, 23, 24, 25, 26, 27, 28, 29, 30, 31, 32, 33). I attach our communication of September 6th identifying the reasons why the responses are deficient.

2. **Failure to Produce all Records Requests and Responses, and Survey Responses.** We are surprised this remains an issue given your strong instruction to Defendants to produce these documents in April when we first discussed the issue. Although it appears Defendants complied by producing them within the seven days you gave them back then, the use of the records requests and the survey (although in a more limited form) has continued by Defendants. We requested this information on August 19th. We are no closer to getting this information now than when we wrote the letter. The last production of documents related to the records requests was June 24th. The last production of survey responses was well before then. Although this information should have been delivered months ago, Defendants' response is that before any production is made, PTK must first agree on what a reasonable go forward supplementation schedule is for all parties. To be clear, this is a deficiency situation, not a "go forward" situation (the Court already cleared that up by its email dated August 13 stating that 21 days would be seasonable). We are well past 21 days with regard to nearly all of

these documents, and as communicated to counsel for Defendants, a 21 day supplementation period is fine going forward on these records. But that should not mean that we need to wait another 21 days to get documents that were created nearly 60 to 90 days ago. PTK also notes that it has been supplementing its document production in 2024. PTK has no issue with the 21 day supplementation rule applying to it, although there has been no allegation by Honor Society that PTK has failed in seasonably supplementing its responses either (other than as described below, limited to only a couple of interrogatories or the pending motion to compel).

3. **Audio recordings of Honor Society calls with students regarding refund requests.** It has been confirmed that Honor Society, either through its own employees or through its outsourced customer service representatives, recorded a high volume of calls with students who were unhappy with Honor Society and were requesting refunds, or who otherwise were being solicited by Honor Society to resume payment for Honor Society's services (so-called "win-backs"). Such audio recordings were within the definition of "Documents," and apparently have been in existence at least since 2017, perhaps earlier. These communications likely contain evidence of consumer confusion (critical to our trademark claims), as well as evidence of students claiming they were misled by Honor Society's false advertising (also critical to our false advertising claims). We confirmed the existence of these documents during a deposition of Boldr, Inc., Honor Society's outsourced customer service vendor from 2017 to 2020, taken on August 27, 2024. On August 29, we requested that Honor Society search for and produce those records, and respond by September 3rd with confirmation that they would be produced and on what schedule. On September 6, having received no response at all, we wrote counsel again asking that a confirmation be given on whether the documents will be produced. Counsel this time responded, stating that they will respond by September 13th. We received nothing on the 13th.

4. **Deficiencies in Supplemental Responses to original interrogatories served on Honor Society in 2023.** This is an issue first raised with the Court on August 19th. We have requested that Honor Society supplement its interrogatory responses originally delivered in 2023. These requests relate to such things as identification of all misleading or false statements they will rely on at trial, or a description of damages, etc. We identified these deficiencies on August 6, 2024, and I attach our communication to counsel explaining the issues we needed addressed as well as a follow-up email dated August 12 when no response had yet been given to that communication. That exchange was what led to our communication to the Court on August 19th, where the Court instructed that if the issue was unresolved by September 3rd to advise the Court. The issues remain largely unresolved. Although supplementation was provided to a handful of the interrogatories at issue on September 6th, Honor Society refused to supplement other interrogatories for a variety of reasons. Remaining at issue are PTK INT Nos. 10, 14, 21, 22, 23 and LTL INT Nos. 5, 6 and 7. I attach for the Court's review Honor Society's response dated September 4th that outlines their position. We met and conferred on September 12th and the position taken by Honor Society in its correspondence was the same taken during the meet and confer, so no progress was made during that conference.

5. **Gerard Trinidad.** Mr. Trinidad is a person with knowledge identified by Honor Society in its interrogatory responses. He is and has been central to Honor Society's customer service efforts for years, he meets regularly with Honor Society's David Asari, and according to Asari is someone that can be contacted whenever Asari needs to meet with him. He is also a Philippine national. We have requested his deposition and counsel has not only refused to tender him, counsel has also refused to even "ask" Mr. Trinidad to be available. Counsel advised that he is under "no obligation" to make the request. We requested that if they are not going to make him available for deposition, then Defendants should agree to not call him to trial. Counsel refused that request as well, stating specifically that they reserved the right to call him to trial. Our view is that they cannot have it both ways – either present him for deposition or agree to not call him to trial. If they have the ability to get him here for trial, then there is no reason they should not also be able to get him presented (remotely) for a deposition.

6. **30(b)(6) Deposition of Honor Society**. As a part of Judge Reeves order on the second Preliminary Injunction against Defendants, the Court was particularly interested in understanding the who, what, where, when and why of edits to PTK's Wikipedia page. Part of our complaint during the injunction process was that substantial

edits had been made on PTK's Wikipedia page by Honor Society, and likely Mr. Moradian himself. Judge Reeves ordered that we take discovery to find out what happened. We served a 30(b)(6) notice on Defendant Honor Society as instructed by Judge Reeves, but Honor Society has taken the position that PTK can only take one 30(b)(6), and so it must accelerate its discovery on all other issues so that it can investigate this one issue now (discovery does not close until December, and it has been PTK's intention to not take the 30(b)(6) of Defendants until all experts have been deposed). That seems unfair, and we are unaware of any authority requiring in all circumstances only a single 30(b)(6). We issued this discovery because Judge Reeves wanted to know more -- and soon -- because he also asked that we make a fee petition in connection with Defendants' malicious activities and conduct towards PTK since March (including against counsel based on Judge Reeves's concerns about counsel's candor during prior court hearings). PTK requests an instruction to Honor Society to immediately tender a witness in response to the outstanding notice, with no prejudice to a future 30(b)(6) deposition of Defendants at some later date on all other issues.

During the meet and confer on Thursday last week, Defendants' counsel represented that certain other information (unrelated to those issues listed above) will be delivered before the hearing on Tuesday. PTK reserves the right to add those to this list should that be necessary. We hope it is not. This is already a long list.

Finally, we are unaware of any claims by Defendants that PTK's discovery responses are deficient, other than those issues currently before the Court on Honor Society's motion to compel. We appreciate that part of Honor Society's position is that, with respect to a couple of interrogatories at issue above in (4), Honor Society is refusing to supplement until and unless PTK also supplements select responses. We believe that is not a proper response to a claim of deficiency, but we point that out to the Court so it understands that there are no serious and identified discovery deficiencies by Defendants against PTK. Further, PTK intends to supplement those interrogatories so what remains is only Honor Society's deficiencies.

We look forward to discussing these issues with the Court.

# EXHIBIT 5

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

| | |
|---|---|
| PHI THETA KAPPA HONOR SOCIETY, | Civil Action No. 3:22-cv-00208-CWR-RPM |
| Plaintiff/Counter-Defendant, | |
| v. | |
| HONORSOCIETY.ORG INC., | |
| Defendant/Counter-Plaintiff | |
| HONOR SOCIETY FOUNDATION, INC., | |
| Defendant. | |
| HONORSOCIETY.ORG INC., | |
| Defendant/Counter-Plaintiff/Third-Party Plaintiff | |
| v. | |
| LYNN TINCHER-LADNER, | |
| Third-Party Defendant. | |

**HONORSOCIETY.ORG INC.'S SUPPLEMENTAL RESPONSES TO PLAINTIFF PHI THETA KAPPA HONOR SOCIETY'S FIRST SET OF INTERROGATORIES**

HonorSociety.org Inc. ("HonorSociety") hereby supplements its response to Interrogatory No. 20 from Phi Theta Kappa Honor Society's ("PTK") Second Set of Interrogatories. HonorSociety's previously served response to this interrogatory, dated September 5, 2024, are included for reference and incorporated herein.

**Preliminary Statement**

1.      These objections and responses are made solely for the purpose of this action, and are made without waiving: (a) the right to object (on the grounds of competency, admissibility, privilege, proprietary information, relevancy, materiality, or any other proper grounds) to the use

1

of these responses for any purpose, in whole or in part, in any subsequent step or proceeding in this action; (b) the right to object on any and all grounds, at any time, to interrogatories, other requests for production, or other discovery involving or relating to the subject matter of the Interrogatories; and (c) the right at any time to revise, correct, add to, or clarify any of the responses provided herein. To the extent that any of PTK's Interrogatories are vague and ambiguous, HonorSociety will not engage in fact-finding or draw conclusions beyond what is required by the Federal Rule of Civil Procedure or applicable local rules or court orders.

2.     PTK's First Set of Interrogatories to HonorSociety contained Interrogatory Nos. 1-24. PTK's Second Set of Interrogatories to HonorSociety begin on Interrogatory "19." Therefore, even ignoring the numerous compound interrogatories in PTK's First Set of Interrogatories, Interrogatories "19," "20," and "21" in PTK's Second Set are the 25th, 26th, and 27th interrogatories PTK has served on HonorSociety. The Court's Case Management Order limited interrogatories to "25 succinct questions." (Dkt. No. 59). PTK's Second Set of Interrogatories to HonorSociety exceeds this number.

3.     PTK's Second Set of Interrogatories also requests that HonorSociety "produce the documents requested herein" "[p]ursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure," and contains sets of instructions for both production of documents and answers to interrogatories. HonorSociety will ignore the instructions concerning production of documents in responding to the below interrogatories.

4.     HonorSociety has not completed its discovery in this action and has not fully completed its preparation for trial. The answers contained in these responses are based only on the information and documents which are presently available and specifically known to HonorSociety and disclose only those contentions which presently are apparent to HonorSociety. Additionally, further discovery, independent investigation, legal research, and analysis may supply additional facts, add meaning to known facts, and establish entirely new factual conclusions and legal contentions, all of which may lead to substantial additions to, and changes in variations from the contentions set forth herein. These responses are given without prejudice

2

HonorSociety's right to produce evidence of subsequently discovered facts, of which HonorSociety may later recall. HonorSociety accordingly reserves the right to change any and all answers herein as additional facts and additional analysis are made, legal research is completed, and contentions are made. These answers and/or documents supplied in this set of responses are provided in a good faith effort to supply as much factual information and as much specification of legal contentions as is presently known, but should in no way prejudice HonorSociety in relation to further discovery, research and analysis and producing additional information at time of trial. These introductory comments shall apply to every answer given herein, and shall be incorporated by reference as though fully set forth in each and every response appearing in the following pages.

### Objections to Definitions

HonorSociety objects to the definition of "Communication(s)" because it seeks information related to oral communications that may not have been reduced to writing, and production of such things is outside the scope of Rule 34.

HonorSociety objects to the definition of "Describe" to the extent that its inclusion in an interrogatory would require that, in responding that interrogatory, a party identify numerous documents, communications, persons, and locations, thereby turning the interrogatory with the term into a compound interrogatory.

### Objections to Instructions

**Instruction No. 7:** Honor Society objects to this instruction because it requires the production of documents in response to interrogatories, which is outside the scope of Fed. R. Civ. P. 33. HonorSociety will interpret this instruction as allowing it the option to produce business records in responding to an interrogatory consistent with Fed. R. Civ. P. 33(d).

**Instruction No. 8:** HonorSociety objects to this instruction because it appears incomplete in failing to provide a list of what details PTK requests for information withheld due to privilege. HonorSociety will provide details of any information it withholds on the basis of privilege consistent with the Federal Rules of Civil Procedure.

**Supplemental Responses to PTK's Second Set of Interrogatories**

**INTERROGATORY NO. 20:**

Identify the principal and/or material facts which support Your claim of Attempted Monopolization as stated in Count I of Your Second Amended Counterclaim. Please be sure to include the following information: (a) those acts or omissions of PTK You contend support Your claim; (b) the Documents You contend support Your claim; (c) the witnesses with knowledge of that claim and the principal or material facts known to them.

**ORIGINAL RESPONSE:**

HonorSociety objects to this interrogatory to the extent it seeks expert information, the production of which is governed by the Federal Rules of Civil Procedure. HonorSociety also objects to this interrogatory to the extent it seeks information protected by the attorney-client privilege or work product doctrine. HonorSociety further objects because this interrogatory is compound and constitutes more than one interrogatory.

Subject to and without waiving these objections, and while fact discovery is ongoing, HonorSociety responds as follows:

PTK has attempted to monopolize the relevant market including in the following ways:

PTK maintains a close relationship with The American Association of Community Colleges ("AACC") by, among other things, joint conventions and having individuals employed and/or serving on the board of directors for both PTK and AACC. PTK uses this close relationship with AACC to maintain AACC's recognition of PTK as the sole "official" honor society for community college students.  Moreover, PTK uses its relationship with AACC through PTK's Presidential Advisory Board to help maintain PTK's dominant position, and assist with its attempted monopolization, of the relevant market.

PTK and community college officials have engaged in coordinated behavior to maintain PTK's dominant position and exclude competitors. This coordinated behavior includes community college officials warning PTK when other honor societies attempt to open chapters

4

on their campuses. PTK has also encouraged community college leaders to not approve honor societies other than PTK.

PTK advised or encouraged community colleges to have their IT department block HonorSociety emails from reaching students. In numerous instances, PTK informed community colleges that HonorSociety was a "scam" and otherwise disparaged HonorSociety to convince colleges to block HonorSociety's emails to students or to otherwise interfere with HonorSociety's ability to compete.

**SUPPLEMENTAL RESPONSE:**

HonorSociety objects to the part of this Interrogatory demanding HonorSociety list "witnesses with knowledge" of its claim of PTK's Attempted Monopolization because the identity of all the witnesses with this knowledge cannot be known to HonorSociety; rather, the identify of most of these witnesses is in the exclusive custody and control of PTK, Dr. Lynn Tincher-Ladner, and third parties such as the American Association of Community Colleges ("AACC").

Subject to and without waiving this objection and the objections in HonorSociety's Original Response, HonorSociety responds that the witnesses with information about PTK's anticompetitive practices include:

1. Michael Moradian (HonorSociety);

2. Lynn Tincher-Ladner (PTK);

3. Daniel Phelan (PTK);

4. George Boggs (PTK);

5. Amanda Karpinski (PTK);

6. Michael Odu (PTK);

7. Lavada Burse (PTK);

8. Tala Al Ahmar (PTK);

9. Tracee Walker (PTK);

10. Fredrica Tyes (PTK);

11. Monica Marlowe (PTK);

12. Heather Boyte (PTK);

13. Brandon Robinson (PTK);

14. Paige Chandler (PTK);

15. Mary Linder (PTK);

16. Rod Risley (PTK);

17. Debbra Esparza (PTK);

18. Monika Byrd (PTK);

19. Susan Scaggs (PTK);

20. Christin Grissom (PTK);

21. Jennifer Stanford (PTK);

22. Heather Johnson (PTK);

23. Angela Saragusa (Brookdale Community College);

24. Julia Cohara (PTK);

25. Steven Mulhollen (PTK);

26. Melissa Meyer (PTK);

27. Rebecca Warren (PTK);

28. Nancy Rieves (PTK);

29. Blake Ellis (PTK);

30. Erica Bold (PTK);

31. Patricia Van Atter (PTK);

32. Heather Yush (PTK);

33. Paige Rakestraw (PTK);

34. Heather Schmidt (PTK);

35. Dawneen Banks (PTK);

36. Melissa Price (PTK);

37. Antigone Sharris (Triton College);

38. M. Carla Carr (Olive-Harvey College);

39. Tammy Anderson (Wayne County Community College);

40. Amy McPherson (Phoenix College);

41. Mary Graham (Mississippi Gulf Coast Community College);

42. Joe May (Dallas County Community College);

43. Josephine Fritts (Ozarks Technical Community College);

44. Hal Higdon (Ozarks Technical Community College);

45. Stephanie Church (St. Louis Community College);

46. Toni Marek (PTK)

47. Rebekah Robinette (National Park Community College);

48. Benjamin Drury (Morton College);

49. Erin Miller (Kaua'I Community College);

50. Bruno Rhodes (College of Southern Nevada);

51. Diana Fraley (Black River Technical College);

52. Nellie Schuckman (Johnson County Community College);

53. David Sigmund (Stark State College);

54. Beth Sammons (Mt. Hood Community College);

55. Trée George (Louisiana Tech);

56. PTK's Presidential Advisory Board Members;

57. AACC's Advisory Board Members;

Honor Society reserves the right to supplement this list as discovery and its investigation continues and it identifies more witnesses knowledgeable of PTK's anticompetitive practices.

Dated: September 16, 2024                    NEWMAN LLP

                                             s/ Derek Linke
                                             Derek A. Newman (pro hac vice)
                                             Derek Linke (pro hac vice)

Keith P. Scully (pro hac vice)
Gregory M. Scialabba (pro hac vice)
100 Wilshire Blvd, Suite 700
Santa Monica, CA 90401
Tel: (310) 359-8200
dn@newmanlaw.com
linke@newmanlaw.com
keith@newmanlaw.com
gs@newmanlaw.com

Attorneys for Defendant, Counter-Claimant,
and Third-Party Plaintiff HonorSociety.org, Inc.

## Verification

I, Michael Moradian, am the Executive Director of HonorSociety.org Inc. In that capacity, I either have personal knowledge or have been provided the personal knowledge of others that is responsive to the interrogatories above (subject to the objections stated). For those facts set forth here, and based on that personal knowledge so described, they are true and correct to the best of my belief.

Executed this 16th day of September, 2024.

DocuSigned by:

*Mike Moradian*

2879E22B88B441E...

Michael Moradian

**Certificate of Service**

I hereby certify that on September 16, 2024, a copy of the foregoing was served via email upon the following counsel.

| | |
|---|---|
| Jonathan G. Polak (Pro Hac Vice) | Michael B. Wallace, MSB # 6904 |
| William M. Etienne (Pro Hac Vice) | Charles E. Cowan, MSB #104478 |
| Daniel R. Warncke (Pro Hac Vice) | Beau M. Bettiga, MSB #105905 |
| TAFT STETTINIUS & HOLLISTER LLP | Jack F. Hall, MSB #106482 |
| One Indiana Square, Suite 3500 Indianapolis, IN 46204-2023 | WISE CARTER CHILD & CARAWAY |
| (317) 713-3500 – phone | 401 East Capitol Street, Suite 600 |
| (317) 713-3699 – fax | P. O. Box 651 (39205-0651) |
| jpolak@taftlaw.com | Jackson, MS 39201 |
| metienne@taftlaw.com | (601) 968-5500 - phone |
| warncke@taftlaw.com | mbw@wisecarter.com |
| | cec@wisecarter.com |
| | ksh@wisecarter.com |
| Rachel Smoot (Pro Hac Vice) | bmb@wisecarter.com |
| TAFT STETTINIUS & HOLLISTER LLP | jfh@wisecarter.com |
| 41 S. High Street, Suite 1800 | |
| Columbus, OH 43215 | |
| (614) 221-2838 – phone | |
| (614) 221-2007 – fax | |
| rsmoot@taftlaw.com | |

Counsel for Plaintiff and Counter-Defendant Phi Theta Kappa Honor Society, and Third-Party Defendant Dr. Lynn Tincher-Ladner.

I hereby certify under the penalty of perjury that the foregoing is true and correct.

Executed on September 16, 2024 at Mercer Island, Washington.


s/ Derek Linke
Derek Linke

# EXHIBIT 6

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF MISSISSIPPI**
**NORTHERN DIVISION**

| | |
|---|---|
| PHI THETA KAPPA HONOR SOCIETY, | Civil Action No. 3:22-cv-00208-CWR-RPM |
|     Plaintiff/Counter-Defendant, | |
| v. | |
| HONORSOCIETY.ORG INC., | |
|     Defendant/Counter-Plaintiff | |
| HONOR SOCIETY FOUNDATION, INC., | |
|     Defendant. | |
| HONORSOCIETY.ORG INC., | |
|     Defendant/Counter-Plaintiff/Third-Party Plaintiff | |
| v. | |
| LYNN TINCHER-LADNER, | |
|     Third-Party Defendant. | |

**HONORSOCIETY.ORG INC.'S RESPONSES TO THIRD-PARTY DEFENDANT**
**LYNN TINCHER-LADNER'S SECOND SET OF INTERROGATORIES**

    HonorSociety.org Inc. ("HonorSociety") supplements its responses to Interrogatory Nos. 22 and 30 from Lynn Tincher-Ladner's Second Set of Interrogatories. HonorSociety's previously served responses to these interrogatories, dated September 5, 2024, are included for reference and incorporated herein.

**Preliminary Statement**

    1.    These objections and responses are made solely for the purpose of this action, and are made without waiving: (a) the right to object (on the grounds of competency, admissibility, privilege, proprietary information, relevancy, materiality, or any other proper grounds) to the use

of these responses for any purpose, in whole or in part, in any subsequent step or proceeding in this action; (b) the right to object on any and all grounds, at any time, to interrogatories, other requests for production, or other discovery involving or relating to the subject matter of the Interrogatories; and (c) the right at any time to revise, correct, add to, or clarify any of the responses provided herein. To the extent that any of Tincher-Ladner's Interrogatories are vague and ambiguous, HonorSociety will not engage in fact-finding or draw conclusions beyond what is required by the Federal Rule of Civil Procedure or applicable local rules or court orders.

3.    Tincher-Ladner's Second Set of Interrogatories also requests that HonorSociety "produce the documents requested herein" "[p]ursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure," and contains sets of instructions for both production of documents and answers to interrogatories. HonorSociety will ignore the instructions concerning production of documents in responding to the below interrogatories.

4.    HonorSociety has not completed its discovery in this action and has not fully completed its preparation for trial. The answers contained in these responses are based only on the information and documents which are presently available and specifically known to HonorSociety and disclose only those contentions which presently are apparent to HonorSociety. Additionally, further discovery, independent investigation, legal research, and analysis may supply additional facts, add meaning to known facts, and establish entirely new factual conclusions and legal contentions, all of which may lead to substantial additions to, and changes in variations from the contentions set forth herein. These responses are given without prejudice HonorSociety's right to produce evidence of subsequently discovered facts, of which HonorSociety may later recall. HonorSociety accordingly reserves the right to change any and all answers herein as additional facts and additional analysis are made, legal research is completed, and contentions are made. These answers and/or documents supplied in this set of responses are provided in a good faith effort to supply as much factual information and as much specification of legal contentions as is presently known, but should in no way prejudice HonorSociety in relation to further discovery, research and analysis and producing additional information at time of trial.

These introductory comments shall apply to every answer given herein, and shall be incorporated by reference as though fully set forth in each and every response appearing in the following pages.

### Objections to Definitions

HonorSociety objects to the definition of "Communication(s)" because it seeks information related to oral communications that may not have been reduced to writing, and production of such things is outside the scope of Rule 34.

HonorSociety objects to the definition of "Describe" to the extent that its inclusion in an interrogatory would require that, in responding that interrogatory, a party identify numerous documents, communications, persons, and locations, thereby turning the interrogatory with the term into a compound interrogatory.

### Objections to Instructions

**Instruction No. 7:** Honor Society objects to this instruction because it requires the production of documents in response to interrogatories, which is outside the scope of Fed. R. Civ. P. 33. HonorSociety will interpret this instruction as allowing it the option to produce business records in responding to an interrogatory consistent with Fed. R. Civ. P. 33(d).

**Instruction No. 8:** HonorSociety objects to this instruction because it appears incomplete in failing to provide a list of what details Tincher-Ladner requests for information withheld due to privilege. HonorSociety will provide details of any information it withholds on the basis of privilege consistent with the Federal Rules of Civil Procedure.

### Supplemental Responses to Tincher-Ladner's Second Set of Interrogatories

**INTERROGATORY NO. 22:**

If You contend that PTK made false or misleading statements to anyone Concerning the use of personal data, Identify those principal and material facts on which You rely in making that contention. Please include in Your answer the Persons with knowledge of those facts and any Documents they relied in forming that knowledge, or that otherwise support Your contention.

Please also include any federal, state or third-party regulations that You contend demonstrate that PTK has made false or misleading statements Concerning the use of personal data.

**ORIGINAL RESPONSE:**

HonorSociety objects to the phrase "use of personal data" as vague and ambiguous. HonorSociety further objects to this Interrogatory as it is overbroad, unduly burdensome, and seeks to impose a requirement on HonorSociety to marshal its evidence in the form of an interrogatory response. HonorSociety further objects to this Interrogatory to the extent it seeks information protected by the attorney-client privilege or work product doctrine. HonorSociety also objects because this Interrogatory is compound and constitutes more than one interrogatory.

**SUPPLEMENTAL RESPONSE:**

HonorSociety further objects to this Interrogatory because PTK and Tincher-Ladner have refused to provide information or documents concerning PTK's disclosure and sale of its members personal information and data, thus hamstringing HonorSociety's ability to prove its case and fully respond to this Interrogatory.

Subject to and without waiving this objection and the objections in HonorSociety's Original Response, HonorSociety responds as follows:

At least one version of PTK's "Agreement Between User and Phi Theta Kappa Honor Society" ("Agreement") contains internal contradictions concerning the collection, use, and security of its members personal information and data. *See* PTK0143432. By definition, these internal contradictions indicate that some of the statements are false, or at the very least misleading.

For example, this Agreement states that "Phi Theta Kappa does sell, rent or lease its member lists to partners….," and members "can opt-in or opt-out of having [their] data shared with these Partners." *Id*. First, these statements are misleading in that they do not disclose whether members are by default "opted-in" or "opted-out" of having their data shared.

Second, just sentences later, PTK states that it "does not use or disclose sensitive personal information without [members'] explicit consent." This statement is misleading in that it

suggests PTK will ask for members' "explicit consent" each time they are to "use or disclose sensitive personal information," when in reality members are by default "opted-in" or "opted-out" of *all* sharing of their personal data.

The next sentence, PTK states that it "keeps track of the Web sites and pages our constituents visit," which "is used to deliver customized content within Phi Theta Kappa to customers whose behavior indicates that they are interested in a particular area." In connection with the "opt-out" language above, these statements are misleading because it is unclear whether "opting-out" of PTK's personal data sharing also "opts-out" members from PTK tracking the Web sites they visit. Further, the entire Agreement is misleading in that it refers to its members as "you"/"your", "constituents", "customers", etc. without defining these terms or indicating whether they mean the same thing. Accordingly, it is impossible to determine, for example, whether "opting-out" of having "your data" shared also opts you out of PTK tracking the web pages you visit.

**INTERROGATORY NO. 30:**

Identify all principal and material facts on which You contend that Honor Society members believed PTK's allegedly defamatory statements. If there is a Document or Documents that You contend evidence the statement, Identify the Document.

**ORIGINAL RESPONSE:**

HonorSociety objects to this Interrogatory because it is overbroad, unduly burdensome, and seeks to impose a requirement on HonorSociety to marshal its evidence in the form of an interrogatory response. HonorSociety further objects to this Interrogatory to the extent it seeks information protected by the attorney-client privilege or work product doctrine.

Subject to and without waiving these objections, and while fact discovery is ongoing, HonorSociety responds as follows: HonorSociety and its counsel continue to identify, gather and evaluate information relevant to this inquiry. HonorSociety will provide the responsive

information once it is identified and confirmed. HonorSociety reserves the right to reference responsive information in documents pursuant to Fed. R. Civ. P. 33(d).

**SUPPLEMENTAL RESPONSE:**

Subject to and without waiving the objections in HonorSociety's Original Response, HonorSociety responds as follows:

Many of the HonorSociety members who received emails from their community colleges warning that HonorSociety was a "scam" (after PTK had told the colleges to send those emails) cancelled their memberships, citing the "scam" warning emails.

Dated: September 16, 2024

Newman llp

s/ Derek Linke
Derek A. Newman (pro hac vice)
Derek Linke (pro hac vice)
Keith P. Scully (pro hac vice)
Gregory M. Scialabba (pro hac vice)
100 Wilshire Blvd, Suite 700
Santa Monica, CA 90401
Tel: (310) 359-8200
dn@newmanlaw.com
linke@newmanlaw.com
keith@newmanlaw.com
gs@newmanlaw.com

Attorneys for Defendant, Counter-Claimant, and Third-Party Plaintiff HonorSociety.org, Inc.

## Verification

I, Michael Moradian, am the Executive Director of HonorSociety.org Inc. In that capacity, I either have personal knowledge or have been provided the personal knowledge of others that is responsive to the interrogatories above (subject to the objections stated). For those facts set forth here, and based on that personal knowledge so described, they are true and correct to the best of my belief.

Executed this 16th day of September, 2024.

DocuSigned by:

*Mike Moradian*

2079F22D0BB444C...

Michael Moradian

## Certificate of Service

I hereby certify that on September 16, 2024, a copy of the foregoing was served via email upon the following counsel.

Jonathan G. Polak (Pro Hac Vice)
William M. Etienne (Pro Hac Vice)
Daniel R. Warncke (Pro Hac Vice)
TAFT STETTINIUS & HOLLISTER LLP
One Indiana Square, Suite 3500 Indianapolis, IN 46204-2023
(317) 713-3500 – phone
(317) 713-3699 – fax
jpolak@taftlaw.com
metienne@taftlaw.com
warncke@taftlaw.com

Rachel Smoot (Pro Hac Vice)
TAFT STETTINIUS & HOLLISTER LLP
41 S. High Street, Suite 1800
Columbus, OH 43215
(614) 221-2838 – phone
(614) 221-2007 – fax
rsmoot@taftlaw.com

Michael B. Wallace, MSB # 6904
Charles E. Cowan, MSB #104478
Beau M. Bettiga, MSB #105905
Jack F. Hall, MSB #106482
WISE CARTER CHILD & CARAWAY
401 East Capitol Street, Suite 600
P. O. Box 651 (39205-0651)
Jackson, MS 39201
(601) 968-5500 - phone
mbw@wisecarter.com
cec@wisecarter.com
ksh@wisecarter.com
bmb@wisecarter.com
jfh@wisecarter.com

Counsel for Plaintiff and Counter-Defendant Phi Theta Kappa Honor Society, and Third-Party Defendant Dr. Lynn Tincher-Ladner.

I hereby certify under the penalty of perjury that the foregoing is true and correct.

Executed on September 16, 2024 at Mercer Island, Washington.

s/ Derek Linke
Derek Linke

# EXHIBIT 7

**Cassady, DeeAnn**

| | |
|---|---|
| **From:** | Derek Linke <Linke@newmanlaw.com> |
| **Sent:** | Tuesday, September 17, 2024 8:44 AM |
| **To:** | MSSDdb_Myers_Chambers |
| **Cc:** | Polak, Jonathan; Beau M. Bettiga; Charles Cowan; Dakota Stephens; Warncke, Daniel R.; Derek A. Newman; Gregory M. Scialabba; hwarren@joneswalker.com; jfh@wisecarter.com; Keith Scully; kcallahan@joneswalker.com; Mike Wallace; Smoot, Rachel A.; Whit Rayner; Etienne, Mike |
| **Subject:** | Re: [EXTERNAL]RE: PTK v. Honor Society, et al v. Dr. Lynn Tincher-Ladner - 3:23-cv-00208-CWR-RPM |

Mr. Lott,

HonorSociety has contacted PTK's counsel about numerous issues with PTK's deficiencies with its interrogatory answers, document production, and failure to produce timely privilege logs. We will attempt to confer with their counsel in good faith to resolve those issues without needing to involve the Court.

We've also proposed a stipulation for counsel for all parties to agree to comply with deposition rules.

And, as requested, here are HonorSociety's responses to issues raised in PTK's email:

**1. HonorSociety's responses to PTK and Tincher-Ladner's 2nd Set of Interrogatories**

HonorSociety has served supplemental responses to PTK's Interrogatory No. 20, as well as Tincher-Ladner's Interrogatory Nos. 22 and 30. As for Tincher-Ladner's Interrogatory Nos. 19, 20, 21, 22, 23, 24, 25, 26, 27, 28, 29, 30, 31, and 32. HonorSociety has not supplemented its responses for a number of reasons. First, PTK has mass-designated many of its produced documents as "HIGHLY CONFIDENTIAL – ATTORNEYS EYES ONLY." This prevents HonorSociety from using these documents to provide sworn interrogatory responses. HonorSociety cannot fully respond to Tincher-Ladner Interrogatory Nos. 19, 20, and 28  without being able to cite to PTK's evidence. For other of HonorSociety's responses, such as to Tincher-Ladner Interrogatory No. 21 regarding PTK's false and misleading statements in connection with its PPP loans, PTK has refused to provide discovery on those topics. HonorSociety cannot provide full details on PTK's false and misleading statements concerning its PPP loans if PTK has categorically refused to provide information and documents on that topic. HonorSociety getting that information—and then providing it back to PTK—is dependent upon HonorSociety's motion to compel that is pending. Finally, for many of the interrogatories for which PTK alleges deficiencies, such as Tincher-Ladner Interrogatory Nos. 26 and 29, PTK demands that HonorSociety identify documents in addition to the substantive responses it has already provided. Fed. R. Civ. P. 33(d) states a party "may" cite to documents from which an answer can be derived. It does not require a party cite to documents after already providing a substantive response.

**2. HonorSociety's Records Requests and Survey Responses**

PTK sent letters to HonorSociety demanding that it supplement its document production with the results of recently served records requests and surveys. PTK's position is that because this Court once ordered HonorSociety to produce certain records-request results in seven days, that HonorSociety must produce the results of all future records requests and surveys on that same short timeline. HonorSociety responded to PTK's letters by pointing out PTK's own failures to supplement its document production, and suggesting the parties mutually agree to produce documents moving forward within 30 days after coming into the party's possession. In response, PTK refused to agree to that arrangement, and is now instead bringing the issue before the Court.

Additionally, PTK's claim that records-request related documents have not been produced since June 25 is not correct. HonorSociety's early August document productions included thousands of documents relating to FOIA requests and surveys.

### 3. Audio Recordings of HonorSociety's Customer Service Calls

HonorSociety has confirmed that ZenDesk does not have customer-service call recordings. That feature is provided under a service level that HonorSociety does not have.

### 4. HonorSociety's Supplemental Responses to PTK and Tincher-Ladner's 1st Set of Interrogatories

As detailed in HonorSociety's September 4th Letter to PTK, many of PTK's demands for "supplementation" were problematic for a variety of reasons. Similar to its responses to PTK and Tincher-Ladner's Second Sets of Interrogatories, many of the documents HonorSociety would cite in responding to Tincher-Ladner Interrogatory Nos. 3, 4, 5, and 6 have been mass designated as "HIGHLY CONFIDENTIAL – ATTORNEYS EYES ONLY," thus preventing HonorSociety from using that evidence in sworn interrogatory responses. Further, many of the interrogatories for which PTK demands supplementation are substantially similar to HonorSociety's requests which PTK has refused to respond to. (Compare PTK Interrogatory No. 23 (calling for "all facts" on which "each affirmative defense" is based) with HonorSociety Interrogatory No. 38 (calling for PTK to "identify and describe in detail the basis for" PTK's affirmative defenses, which PTK has refused to answer).) If the Court is going to order one party to provide a response to a certain discovery request, it should order all parties to provide the same response to identical requests from the other side. Finally, many of PTK's demands for supplementation actually demand information above and beyond that requested in the interrogatory. HonorSociety refers the Court to its September 4th Letter to PTK for the detailed reasons PTK's demands for supplementation are baseless.

### 5. Gerard Trinidad

Mr. Trinidad is a Phillipines-based contractor. He is not an employee of HonorSociety. HonorSociety disclosed him as a person likely to have discoverable information in its initial disclosures, but that does not mean that it has the ability or duty to cause him to appear for a noticed deposition as PTK demands.

### 6. 30(b)(6) Deposition of HonorSociety

Judge Reeves directed HonorSociety to subject itself to discovery on issues relating to edits to the Wikipedia page for PTK. That was the entirety of the order with respect to this issue. And HonorSociety does not object to the scope of discovery including that issue. But that order does not modify other existing discovery limits. Nor is there any reason to do so. PTK can include this topic among others when it seeks to take HonorSociety's Rule 30(b)(6) deposition, just as it can serve other discovery requests within existing limits to take discovery into this subject.

* * *

Thank you for your attention to this dispute. We look forward to today's conference.

Derek Linke
Newman LLP
direct (206) 274-2827
mobile (206) 669-3638


On Sep 16, 2024, at 9:07 AM, MSSDdb_Myers_Chambers <Myers_Chambers@mssd.uscourts.gov> wrote:

2

Thank you both for confirming your availability for tomorrow on such short notice.  We will go forward with setting the conference for tomorrow at 11:30 a.m.

Philip S. Lott
Term Law Clerk to
Honorable Robert P. Myers, Jr.
United States Magistrate Judge
Southern District of Mississippi

---

**From:** Derek Linke <Linke@newmanlaw.com>
**Sent:** Monday, September 16, 2024 10:28 AM
**To:** MSSDdb_Myers_Chambers <Myers_Chambers@mssd.uscourts.gov>; Polak, Jonathan <JPolak@taftlaw.com>
**Cc:** Beau M. Bettiga <bmb@wisecarter.com>; Charles Cowan <cec@wisecarter.com>; Dakota Stephens <dstephens@joneswalker.com>; Warncke, Daniel R. <warncke@taftlaw.com>; Derek A. Newman <dn@newmanlaw.com>; Gregory M. Scialabba <gs@newmanlaw.com>; hwarren@joneswalker.com;jfh@wisecarter.com; Keith Scully <keith@newmanlaw.com>; kcallahan@joneswalker.com; Mike Wallace <mbw@wisecarter.com>; Smoot, Rachel A. <RSmoot@taftlaw.com>; Whit Rayner <wrayner@joneswalker.com>; Etienne, Mike <MEtienne@taftlaw.com>
**Subject:** Re: [EXTERNAL]RE: PTK v. Honor Society, et al v. Dr. Lynn Tincher-Ladner - 3:23-cv-00208-CWR-RPM

**CAUTION - EXTERNAL:**

Messrs. Lott and Polak,

Yes. I received the email about this week's deposition being rescheduled shortly after sending my request below.

There is no longer a scheduling issue on our end for a hearing at that time tomorrow. My request is moot.

Thank you.

Derek Linke
Newman LLP
direct (206) 274-2827
mobile (206) 669-3638

> On Sep 16, 2024, at 8:24 AM, Polak, Jonathan <JPolak@taftlaw.com> wrote:
>
> Derek,
>
> Coincidentally, I sent you a few moments ago (and prior to seeing this email from the Court) a notice to you that we need to move that deposition to later in the month. I too

3

have a scheduling conflict now for the date we set that deposition. So, that should no longer be an issue.

---

**From:** Derek Linke <Linke@newmanlaw.com>
**Sent:** Monday, September 16, 2024 11:21 AM
**To:** MSSDdb_Myers_Chambers <Myers_Chambers@mssd.uscourts.gov>
**Cc:** Polak, Jonathan <JPolak@taftlaw.com>; Beau M. Bettiga <bmb@wisecarter.com>; Charles Cowan <cec@wisecarter.com>; Dakota Stephens <dstephens@joneswalker.com>; Warncke, Daniel R. <warncke@taftlaw.com>; Derek A. Newman <dn@newmanlaw.com>; Gregory M. Scialabba <gs@newmanlaw.com>; hwarren@joneswalker.com; jfh@wisecarter.com; Keith Scully <keith@newmanlaw.com>; kcallahan@joneswalker.com; Mike Wallace <mbw@wisecarter.com>; Smoot, Rachel A. <RSmoot@taftlaw.com>; Whit Rayner <wrayner@joneswalker.com>; Etienne, Mike <MEtienne@taftlaw.com>
**Subject:** Re: [EXTERNAL]RE: PTK v. Honor Society, et al v. Dr. Lynn Tincher-Ladner - 3:23-cv-00208-CWR-RPM

Mr. Lott,

Thank you for this information. HonorSociety will respond as requested and also provide information about other discovery issues that we believe may require the Court's assistance.

Separately, I am unavailable for a hearing tomorrow, Tuesday, September 17 at 11:30 a.m. because I will be on a plane traveling to a deposition for this case. For HonorSociety, I am the lawyer charged with overseeing all discovery. I have the most familiarity with the issues. Without my participation during the hearing, it is possible that issues could be missed or improperly addressed. We would be grateful if the Court would schedule the hearing for a time that I can participate. If that's not possible, my partner, Derek Newman, will appear. But he is nowhere near as familiar with the issues as I am.

Thank you for your consideration.

Derek Linke
Newman LLP
direct (206) 274-2827
mobile (206) 669-3638

> On Sep 16, 2024, at 7:47 AM, MSSDdb_Myers_Chambers <Myers_Chambers@mssd.uscourts.gov> wrote:
>
> Good morning counsel,
>
> Thank you for the email summarizing the issues for the Court. Judge Myers would ask that Honor Society email a response to these issues by tomorrow morning so that he has time to review Honor Society's position. The status conference was scheduled for Wednesday the 18th, at 8:45 a.m., but I believe we intend to move the conference to tomorrow, Tuesday the 17th at 11:30 a.m. given a conflict with the Court's schedule. The parties should see a notice of schedule change shortly.
>
> Philip S. Lott

Term Law Clerk to
Honorable Robert P. Myers, Jr.
United States Magistrate Judge
Southern District of Mississippi

---

**From:** Polak, Jonathan <JPolak@taftlaw.com>
**Sent:** Saturday, September 14, 2024 10:28 AM
**To:** MSSDdb_Myers_Chambers <Myers_Chambers@mssd.uscourts.gov>
**Cc:** Beau M. Bettiga <bmb@wisecarter.com>; Charles Cowan <cec@wisecarter.com>; Stephens, Dakota <dstephens@joneswalker.com>; Warncke, Daniel R. <warncke@taftlaw.com>; Derek Linke <Linke@newmanlaw.com>; Derek A. Newman <dn@newmanlaw.com>; Gregory M. Scialabba <gs@newmanlaw.com>; hwarren@joneswalker.com; jfh@wisecarter.com; Keith Scully <keith@newmanlaw.com>; kcallahan@joneswalker.com; Mike Wallace <mbw@wisecarter.com>; Smoot, Rachel A. <RSmoot@taftlaw.com>; Rayner, Whit <wrayner@joneswalker.com>; Etienne, Mike <MEtienne@taftlaw.com>
**Subject:** PTK v. Honor Society, et al v. Dr. Lynn Tincher-Ladner - 3:23-cv-00208-CWR-RPM

<mark>**CAUTION - EXTERNAL:**</mark>

Magistrate Judge Myers,

In anticipation of our conference with you scheduled for Tuesday the 18th, we write to identify those issues PTK intends to raise during the conference.  Some of these issues remain unresolved despite being raised with you by our communication dated August 12, 2024.

We understand that the purpose of this conference, as specified in the case management order, is to determine whether the filing of a discovery motion is necessary and appropriate, not necessarily to resolve the dispute.  We thought we should give you a significant level of detail in the hope that it might facilitate an agreement on some points.  Absent an agreement, we simply seek authority to file a motion, so that the Court may rule on a complete record.

1. **Defendants' failure to respond to PTK and Dr. Tincher-Ladner's 2nd Set of Interrogatories**.  Honor Society served, for the most part, nothing but boilerplate objections with no substantive responses on September 5.  We wrote counsel on September 6 advising of the deficiencies and requesting complete responses.  Counsel advised on September 10 that a "response" of some type would be delivered by September 13, which was confirmed during a meet and confer on September 12 (where it was also confirmed that the "response" would include

substantive answers). We have received nothing. As you can see from the scope of the interrogatory requests, PTK is seeking critical facts on which Defendants are relying in making their counterclaims. The specific requests that are at issue are: PTK 2nd Set of INTs (No. 20); LTL 2nd Set of INTs (Nos. 19, 20, 21, 22, 23, 24, 25, 26, 27, 28, 29, 30, 31, 32, 33). I attach our communication of September 6th identifying the reasons why the responses are deficient.

2. **Failure to Produce all Records Requests and Responses, and Survey Responses.** We are surprised this remains an issue given your strong instruction to Defendants to produce these documents in April when we first discussed the issue. Although it appears Defendants complied by producing them within the seven days you gave them back then, the use of the records requests and the survey (although in a more limited form) has continued by Defendants. We requested this information on August 19th. We are no closer to getting this information now than when we wrote the letter. The last production of documents related to the records requests was June 24th. The last production of survey responses was well before then. Although this information should have been delivered months ago, Defendants' response is that before any production is made, PTK must first agree on what a reasonable go forward supplementation schedule is for all parties. To be clear, this is a deficiency situation, not a "go forward" situation (the Court already cleared that up by its email dated August 13 stating that 21 days would be seasonable). We are well past 21 days with regard to nearly all of these documents, and as communicated to counsel for Defendants, a 21 day supplementation period is fine going forward on these records. But that should not mean that we need to wait another 21 days to get documents that were created nearly 60 to 90 days ago. PTK also notes that it has been supplementing its document production in 2024. PTK has no issue with the 21 day supplementation rule applying to it, although there has been no allegation by Honor Society that PTK has failed in seasonably supplementing its responses either (other than as described below, limited to only a couple of interrogatories or the pending motion to compel).

3. **Audio recordings of Honor Society calls with students regarding refund requests.** It has been confirmed that Honor Society, either through its own employees or through its outsourced customer service representatives, recorded a high volume of calls with students who were unhappy with Honor Society and were requesting refunds, or who otherwise were being solicited by Honor Society to resume payment for Honor Society's services (so-called "win-backs"). Such audio recordings were within the definition of "Documents", and apparently have been in existence at least since 2017, perhaps earlier. These communications likely contain evidence of

consumer confusion (critical to our trademark claims), as well as
evidence of students claiming they were misled by Honor
Society's false advertising (also critical to our false advertising
claims). We confirmed the existence of these documents during
a deposition of Boldr, Inc., Honor Society's outsourced customer
service vendor from 2017 to 2020, taken on August 27,
2024. On August 29, we requested that Honor Society search
for and produce those records, and respond by September
3rd with confirmation that they would be produced and on what
schedule. On September 6, having received no response at all,
we wrote counsel again asking that a confirmation be given on
whether the documents will be produced. Counsel this time
responded, stating that they will respond by September
13th. We received nothing on the 13th.

4. **Deficiencies in Supplemental Responses to original
   interrogatories served on Honor Society in 2023.** This is an
   issue first raised with the Court on August 19th. We have
   requested that Honor Society supplement its interrogatory
   responses originally delivered in 2023. These requests relate to
   such things as identification of all misleading or false statements
   they will rely on at trial, or a description of damages, etc. We
   identified these deficiencies on August 6, 2024, and I attach our
   communication to counsel explaining the issues we needed
   addressed as well as a follow-up email dated August 12 when
   no response had yet been given to that communication. That
   exchange was what led to our communication to the Court on
   August 19th, where the Court instructed that if the issue was
   unresolved by September 3rd to advise the Court. The issues
   remain largely unresolved. Although supplementation was
   provided to a handful of the interrogatories at issue on
   September 6th, Honor Society refused to supplement other
   interrogatories for a variety of reasons. Remaining at issue are
   PTK INT Nos. 10, 14, 21, 22, 23 and LTL INT Nos. 5, 6 and 7. I
   attach for the Court's review Honor Society's response dated
   September 4th that outlines their position. We met and
   conferred on September 12th and the position taken by Honor
   Society in its correspondence was the same taken during the
   meet and confer, so no progress was made during that
   conference.

5. **Gerard Trinidad.** Mr. Trinidad is a person with knowledge
   identified by Honor Society in its interrogatory responses. He is
   and has been central to Honor Society's customer service
   efforts for years, he meets regularly with Honor Society's David
   Asari, and according to Asari is someone that can be contacted
   whenever Asari needs to meet with him. He is also a Philippine
   national. We have requested his deposition and counsel has
   not only refused to tender him, counsel has also refused to even
   "ask" Mr. Trinidad to be available. Counsel advised that he is
   under "no obligation" to make the request. We requested that
   if they are not going to make him available for deposition, then

Defendants should agree to not call him to trial.  Counsel refused that request as well, stating specifically that they reserved the right to call him to trial.  Our view is that they cannot have it both ways – either present him for deposition or agree to not call him to trial.  If they have the ability to get him here for trial, then there is no reason they should not also be able to get him presented (remotely) for a deposition.

6. **30(b)(6) Deposition of Honor Society**.  As a part of Judge Reeves order on the second Preliminary Injunction against Defendants, the Court was particularly interested in understanding the who, what, where, when and why of edits to PTK's Wikipedia page.  Part of our complaint during the injunction process was that substantial edits had been made on PTK's Wikipedia page by Honor Society, and likely Mr. Moradian himself.  Judge Reeves ordered that we take discovery to find out what happened.  We served a 30(b)(6) notice on Defendant Honor Society as instructed by Judge Reeves, but Honor Society has taken the position that PTK can only take one 30(b)(6), and so it must accelerate its discovery on all other issues so that it can investigate this one issue now (discovery does not close until December, and it has been PTK's intention to not take the 30(b)(6) of Defendants until all experts have been deposed).  That seems unfair, and we are unaware of any authority requiring in all circumstances only a single 30(b)(6).  We issued this discovery because Judge Reeves wanted to know more -- and soon -- because he also asked that we make a fee petition in connection with Defendants' malicious activities and conduct towards PTK since March (including against counsel based on Judge Reeves's concerns about counsel's candor during prior court hearings).  PTK requests an instruction to Honor Society to immediately tender a witness in response to the outstanding notice, with no prejudice to a future 30(b)(6) deposition of Defendants at some later date on all other issues.

During the meet and confer on Thursday last week, Defendants' counsel represented that certain other information (unrelated to those issues listed above) will be delivered before the hearing on Tuesday.  PTK reserves the right to add those to this list should that be necessary.  We hope it is not.  This is already a long list.

Finally, we are unaware of any claims by Defendants that PTK's discovery responses are deficient, other than those issues currently before the Court on Honor Society's motion to compel.  We appreciate that part of Honor Society's position is that, with respect to a couple of interrogatories at issue above in (4), Honor Society is refusing to supplement until and unless PTK also supplements select responses.  We believe that is not a proper response to a claim of deficiency, but we point that out to the Court so it understands that there are no serious and identified discovery deficiencies by Defendants

against PTK.  Further, PTK intends to supplement those interrogatories so what remains is only Honor Society's deficiencies.

We look forward to discussing these issues with the Court.



**Jonathan G. Polak**
Partner
JPolak@taftlaw.com
Dir: 317.713.3532
Tel: 317.713.3500   |   Fax: 317.713.3699
One Indiana Square, Suite 3500
Indianapolis, Indiana 46204-2023

**taftlaw.com**

This message may contain information that is attorney-client privileged, attorney work product or otherwise confidential. If you are not an intended recipient, use and disclosure of this message are prohibited. If you received this transmission in error, please notify the sender by reply e-mail and delete the message and any attachments.

**CAUTION - EXTERNAL EMAIL:** This email originated outside the Judiciary. Exercise caution when attachments or clicking on links.

**CAUTION - EXTERNAL EMAIL:** This email originated outside the Judiciary. Exercise caution when opening attachments or clicking on links.

# EXHIBIT 8

**United States District Court**

**Southern District of Mississippi**

**Jackson Division**

| | |
|---|---|
| PHI THETA KAPPA HONOR SOCIETY, <br><br>        Plaintiff, <br><br>v. <br><br>HONORSOCIETY.ORG, INC., and MICHAEL MORADIAN, <br><br>        Defendants. | Civil Action No. 3:22-cv-208-CWR-FKB <br><br>**DEFENDANT HONORSOCIETY.ORG, INC.'S SECOND AMENDED RESPONSE TO PLAINTIFF'S FIRST SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS** |

**PROPOUNDING PARTY:**    **PHI THETA KAPPA HONOR SOCIETY**

**RESPONDING PARTY:**    **HONORSOCIETY.ORG, INC.**

**SET NO.:**    **ONE (1)**

Defendant HONORSOCIETY.ORG, INC. ("Honor Society" or "Responding Party") hereby provides its second amended response to Plaintiff PHI THETA KAPPA HONOR SOCIETY's ("Plaintiff" or "Propounding Party") First Set of Requests for Production of Documents ("Requests"), as follows:

**PRELIMINARY STATEMENT**

It should be noted that this Responding Party has not completed its discovery in this action and has not fully completed its preparation for trial. The answers contained in these responses are based only on the information and documents which are presently available and specifically known to this Responding Party and disclose only those contentions which presently are apparent

to this Responding Party.

Additionally, further discovery, independent investigation, legal research, and analysis may supply additional facts, add meaning to known facts, and establish entirely new factual conclusions and legal contentions, all of which may lead to substantial additions to, changes in variations from the contentions set forth herein.

According, these responses are given without prejudice to Responding Party's right to produce evidence of subsequently discovered facts, of which this Responding Party may later recall. Responding Party accordingly reserves the right to change any and all answers herein as additional facts and additional analysis are made, legal research is completed, and contentions are made.

These answers and/or documents supplied in this set of responses are provided in a good faith effort to supply as much factual information and as much specification of legal contentions as is presently known, but should in no way prejudice this Responding Party in relation to further discovery, research and analysis and producing additional information at time of trial.

These introductory comments shall apply to each and every answer given herein, and shall be incorporated by reference as though fully set forth in each and every response appearing in the following pages.

## GENERAL OBJECTIONS

Responding Party responds to each of the Requests subject to the following general objections (the "General Objections"). These objections form a part of and are specifically incorporated into each of the Responses and Objections to Propounding Party's Requests, even though they may not be specifically referred to in each and every response to each request. Failure to specifically refer to any of these General Objections in any specific response should not be construed as a waiver of same.

1.      Responding Party objects generally to the Requests to the extent they potentially seek information that is protected from compelled disclosure by the attorney/client privilege, the attorney work-product doctrine, or any other applicable right, privilege, or doctrine.

2.      Responding Party objects generally to the Requests to the extent that they seek trade secrets, confidential, proprietary, sensitive, or financial information that is protected from disclosure by any applicable state or federal Constitution, statute, and/or case law that establishes a right to privacy for either Responding Party or any third party.

3.      Responding Party objects generally to the Requests to the extent that the information requested is irrelevant, outside the scope of the issues raised in the operative pleadings, and/or not reasonably calculated to lead to the discovery of admissible evidence.

4.      Responding Party objects generally to the Requests to the extent that the information requested and the burden of supplying it is not proportional to the needs of the case, including without limitation because the Requests are unclear or overbroad in their potential scope, and/or susceptible to more than one meaning, and to the extent these Requests seek information that is not at issue in this action.

5.      Responding Party further objects to each Request to the extent it is not proportional to the needs of the case in light of the cost necessary to investigate as weighed against Propounding Party's need for the information. To the extent that responding to these Requests will be extraordinarily expensive for Responding Party, Responding Party will be specifically requesting that Propounding Party reimburse Responding Party for appropriate costs, as may be allowed under the Federal Rules of Civil Procedure and any other applicable statute or case law.

6.      Responding Party objects generally to the Requests to the extent that they seek expert information, the production of which is governed by the Federal

Rules of Civil Procedure. Responding Party will provide or identify such expert documents as required by the Federal Rules of Civil Procedure at the times at which the Court has directed or may direct.

7.     Responding Party objects generally to the Requests to the extent that they either singularly or collectively are unduly burdensome, oppressive, and/or harassing.

8.     Responding Party objects generally to the Requests to the extent that they do not state with reasonable particularity the information requested.

9.     Responding Party objects generally to the Requests to the extent that they seek information that is outside of Responding Party's possession, custody or control.

10.     Responding Party objects generally to the Requests to the extent that Propounding Party has equal and/or similar access to the requested information, and to the extent that such information is publicly available and/or already within Propounding Party's possession, custody or control, on the grounds that such Requests are unduly burdensome, oppressive and/or harassing.

11.     Responding Party objects generally to the Requests to the extent that they are repetitive, duplicative, redundant, and/or overlapping.

12.     Responding Party objects generally to the Requests to the extent that they are vague, ambiguous, compound, confusing, unintelligible, unclear, and/or amenable to different meanings, understandings, or interpretations. Responding Party will respond to each request as it interprets and understands it.

13.     Responding Party objects generally to the Requests to the extent that they seek to impose duties or obligations different from, additional to, or otherwise beyond those required by the Federal Rules of Civil Procedure.

14.     Responding Party objects generally to the Requests to the extent that they are not limited to a particular time period.

15.     Responding Party objects generally to the Requests to the extent they exceed the number of requests for production agreed upon by the parties and ordered by the Court in its Case Management Order, which "are limited to 100 succinct questions." (Dkt. 59.)

16.     All responses hereto are made on information and belief.

Without waiver of the foregoing, Responding Party responds as follows:

## RESPONSES TO REQUESTS FOR PRODUCTION OF DOCUMENTS

### REQUESTS FOR PRODUCTION NO. 1:

Documents and things sufficient to show Your process for responding to these Requests for Production, including where and how (i.e., keyword search terms) searches were run to find Documents responsive to these Requests.

### RESPONSE TO REQUEST FOR PRODUCTION NO. 1:

Responding Party objects to this request to the extent that it seeks documents that are protected from disclosure by the attorney-client privilege and/or work-product doctrine.

Subject to and without waiver of the foregoing objections, Responding Party responds as follows: Responding Party has already searched its records and produced non-privileged responsive documents within its possession, custody, or control. While Responding Party has asserted the foregoing specific objections as a reservation of rights, Responding Party is not currently withholding any information or documents on the basis of any asserted objections. Responding Party is also not currently aware of any responsive privileged communications, other than communications with its undersigned counsel of record, but if other privileged communications are discovered, Responding Party will provide a privilege log.

### REQUEST FOR PRODUCTION NO. 2 [2-3]:

Documents referred to or relied upon by You in preparing: (a) Your Rule

5

26(a)(1) disclosures; or (b) Your responses to Plaintiff's First Set of Interrogatories.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 2 [2-3]:

Responding Party objects to this request as compound as it seeks documents concerning two distinct topics, namely, the documents referred to or relied upon in preparing (a) Responding Party's Rule 26(a)(1) disclosures; and (b) Responding Party's responses to Plaintiff's First Set of Interrogatories. Responding Party responds to each discrete subpart of this Request as its own Request, as follows:

(a)   Documents referred to or relied upon by You in preparing Your Rule 26(a)(1) disclosures.

Responding Party objects to this request as overbroad and unduly burdensome, and to the extent this request seeks production of material that is not relevant to any party's claim or defense nor proportional to the needs of this case. Responding Party further objects to this request to the extent it seeks documents that contain Responding Party's confidential and/or proprietary business information, including sensitive financial information, marketing plans and/or trade secrets. Responding Party further objects to this request to the extent that it seeks documents that are protected from disclosure by the attorney-client privilege and/or work-product doctrine.

Subject to and without waiver of the foregoing objections, Responding Party responds as follows: Responding Party has already searched its records and produced non-privileged responsive documents within its possession, custody, or control. While Responding Party has asserted the foregoing specific objections as a reservation of rights, Responding Party is not currently withholding any information or documents on the basis of any asserted objections. Responding Party is also not currently aware of any responsive privileged communications, other than communications with its undersigned counsel of record, but if other

6

privileged communications are discovered, Responding Party will provide a privilege log.

(b)    Documents referred to or relied upon by You in preparing Your responses to Plaintiff's First Set of Interrogatories.

Responding Party objects to this request as overbroad and unduly burdensome, and to the extent this request seeks production of material that is not relevant to any party's claim or defense nor proportional to the needs of this case. Responding Party further objects to this request to the extent it seeks documents that contain Responding Party's confidential and/or proprietary business information, including sensitive financial information, marketing plans and/or trade secrets. Responding Party further objects to this request to the extent that it seeks documents that are protected from disclosure by the attorney-client privilege and/or work-product doctrine.

Subject to and without waiver of the foregoing objections, Responding Party responds as follows: Responding Party has already searched its records and produced non-privileged responsive documents within its possession, custody, or control. While Responding Party has asserted the foregoing specific objections as a reservation of rights, Responding Party is not currently withholding any information or documents on the basis of any asserted objections. Responding Party is also not currently aware of any responsive privileged communications, other than communications with its undersigned counsel of record, but if other privileged communications are discovered, Responding Party will provide a privilege log.

**REQUEST FOR PRODUCTION NO. 3 [4]:**

Any Documents withheld from production during jurisdictional discovery on the basis that it was only jurisdictional discovery and thus disproportional or unnecessary to be produced at that time.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 3 [4]:**

Responding Party objects to this request as compound, as the jurisdictional discovery requests contained 10 document requests, which contained multiple subparts. Responding Party further objects to this request as overbroad and unduly burdensome, and to the extent this request seeks production of material that is not relevant to any party's claim or defense nor proportional to the needs of this case. It is also overbroad, unduly burdensome as well as nonsensical in that it purports to require Responding Party to produce all documents in its possession, custody or control of whatever nature that were not produced during jurisdictional discovery. Responding Party further objects to this request to the extent it seeks documents that contain Responding Party's confidential and/or proprietary business information, including sensitive financial information, marketing plans and/or trade secrets. Responding Party further objects to this request to the extent that it seeks documents that are protected from disclosure by the attorney-client privilege and/or work-product doctrine. Responding Party further objects to this request on the grounds that it is not reasonably particularized as required by Federal Rule of Civil Procedure 34(b)(1)(A).

**REQUEST FOR PRODUCTION NO. 4 [5]:**

Documents sufficient to show Your corporate structure at all times since inception, including all senior executives, owners, affiliates, subsidiaries and parent organizations (i.e., one or more organizational charts).

**RESPONSE TO REQUEST FOR PRODUCTION NO. 4 [5]:**

Responding Party objects to this request as overbroad and unduly burdensome, and to the extent this request seeks production of material that is not relevant to any party's claim or defense nor proportional to the needs of this case. Responding Party further objects to this request to the extent it seeks documents that contain Responding Party's confidential and/or proprietary business

information, including sensitive financial information, marketing plans and/or trade secrets.

Subject to and without waiver of the foregoing objections, Responding Party responds as follows: Responding Party already produced these documents during jurisdictional discovery.

## REQUEST FOR PRODUCTION NO. 5 [6]:

If You merged, changed names, recapitalized, restructured or otherwise had a change of control since inception, those Documents related to any such activity (the transactional Documents only).

## RESPONSE TO REQUEST FOR PRODUCTION NO. 5 [6]:

Responding Party objects to this request as overbroad and unduly burdensome, and to the extent this request seeks production of material that is not relevant to any party's claim or defense nor proportional to the needs of this case. Responding Party further objects to this request to the extent it seeks documents that contain Responding Party's confidential and/or proprietary business information, including sensitive financial information, marketing plans and/or trade secrets. Responding Party further objects to this request on the grounds that it is not reasonably particularized as required by Federal Rule of Civil Procedure 34(b)(1)(A).

Subject to and without waiver of the foregoing objections, Responding Party responds as follows: Responding Party is unable to comply with this request because no such documents exist or have ever existed.

## REQUEST FOR PRODUCTION NO. 6 [7]:

If You had discussions with any third-party concerning a merger, change of name, recapitalization, restructure, change of control or debt or credit facility, and those discussions at all made reference (however minor) to Plaintiff, PTK's Trade Dress, the EDGE Mark, the CAREER EDGE Mark, or this Litigation, produce all

Documents relating to that activity as it related to Plaintiff, PTK's Trade Dress, the EDGE Mark, the CAREER EDGE Mark or the Litigation.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 6 [7]:**

Responding Party objects to this request as overbroad and unduly burdensome, and to the extent this request seeks production of material that is not relevant to any party's claim or defense nor proportional to the needs of this case. Responding Party further objects to this request to the extent it seeks documents that contain Responding Party's confidential and/or proprietary business information, including sensitive financial information, marketing plans and/or trade secrets. Responding Party further objects to this request to the extent that it seeks documents that are protected from disclosure by the attorney-client privilege and/or work-product doctrine.

Subject to and without waiver of the foregoing objections, Responding Party responds as follows: Responding Party is unable to comply with this request because no such documents exist or have ever existed.

**REQUEST FOR PRODUCTION NO. 7 [8-13]:**

Documents, including Communications, other than Communications with Your attorneys or Documents from Your attorneys, relating to or referencing Plaintiff, PTK, any employee, former or present, of PTK, Lynn Tincher-Ladner, PTK EDGE, CAREER EDGE and/or the above-captioned litigation, whether created before or after the date of filing this Lawsuit.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 7 [8-13]:**

Responding Party objects to this request as compound as it seeks documents concerning seven distinct topics, namely, documents relating to or referencing (a) Plaintiff; (b) PTK; (c) any employee, former or present, of PTK; (d) Lynn Tincher-Ladner; (e) PTF EDGE; (f) CAREER EDGE; and (g) the above-captioned

litigation. Responding Party responds to each discrete subpart of this Request as its own Request, as follows:

(a)    Documents relating to or referencing Plaintiff and/or PTK.

Responding Party objects to the term "Documents, including Communications, . . . relating to" as vague and ambiguous, as it is unclear what exactly is being sought, and likewise, whether all such documents are relevant to any party's claim or reasonably proportional to the needs of this case. Responding Party further objects to this request to the extent it seeks documents that contain Responding Party's confidential and/or proprietary business information, including sensitive financial information, marketing plans and/or trade secrets.

Subject to and without waiver of the foregoing objections, Responding Party responds as follows: Responding Party already produced these documents during jurisdictional discovery.

(b)    Documents relating to or referencing any employee, former or present, of PTK.

Responding Party objects to the term "Documents, including Communications, . . . relating to" as vague and ambiguous, as it is unclear what exactly is being sought, and likewise, whether all such documents are relevant to any party's claim or reasonably proportional to the needs of this case. Responding Party further objects to this request to the extent it seeks documents that contain Responding Party's confidential and/or proprietary business information, including sensitive financial information, marketing plans and/or trade secrets.  Responding Party also objects on the basis that it does not know the identity of all PTK employees, past and present,

Subject to and without waiver of the foregoing objections, Responding Party responds as follows: Responding Party has already searched its records and produced non-privileged responsive documents within its possession, custody, or

control. While Responding Party has asserted the foregoing specific objections as a reservation of rights, Responding Party is not currently withholding any information or documents on the basis of any asserted objections. Responding Party is also not currently aware of any responsive privileged communications, other than communications with its undersigned counsel of record, but if other privileged communications are discovered, Responding Party will provide a privilege log.

      (c)    <u>Documents relating to or referencing Lynn Tincher-Ladner.</u>

Responding Party objects to the term "Documents, including Communications, . . . relating to" as vague and ambiguous, as it is unclear what exactly is being sought, and likewise, whether all such documents are relevant to any party's claim or reasonably proportional to the needs of this case. Responding Party further objects to this request to the extent it seeks documents that contain Responding Party's confidential and/or proprietary business information, including sensitive financial information, marketing plans and/or trade secrets.

Subject to and without waiver of the foregoing objections, Responding Party responds as follows: Responding Party has already searched its records and produced non-privileged responsive documents within its possession, custody, or control. While Responding Party has asserted the foregoing specific objections as a reservation of rights, Responding Party is not currently withholding any information or documents on the basis of any asserted objections. Responding Party is also not currently aware of any responsive privileged communications, other than communications with its undersigned counsel of record, but if other privileged communications are discovered, Responding Party will provide a privilege log.

    (d)    <u>Documents relating to or referencing PTK EDGE.</u>

Responding Party objects to the term "Documents, including Communications, . . . relating to" as vague and ambiguous, as it is unclear what exactly is being sought, and likewise, whether all such documents are relevant to any party's claim or reasonably proportional to the needs of this case. Responding Party further objects to this request to the extent it seeks documents that contain Responding Party's confidential and/or proprietary business information, including sensitive financial information, marketing plans and/or trade secrets.

Subject to and without waiver of the foregoing objections, Responding Party responds as follows: Responding Party has already searched its records and produced non-privileged responsive documents within its possession, custody, or control. While Responding Party has asserted the foregoing specific objections as a reservation of rights, Responding Party is not currently withholding any information or documents on the basis of any asserted objections. Responding Party is also not currently aware of any responsive privileged communications, other than communications with its undersigned counsel of record, but if other privileged communications are discovered, Responding Party will provide a privilege log.

    (e)    <u>Documents relating to or referencing CAREER EDGE.</u>

Responding Party objects to the term "Documents, including Communications, . . . relating to" as vague and ambiguous, as it is unclear what exactly is being sought, and likewise, whether all such documents are relevant to any party's claim or reasonably proportional to the needs of this case. Responding Party further objects to this request to the extent it seeks documents that contain Responding Party's confidential and/or proprietary business information, including sensitive financial information, marketing plans and/or trade secrets.

Subject to and without waiver of the foregoing objections, Responding Party responds as follows: Responding Party has already searched its records and produced non-privileged responsive documents within its possession, custody, or control. While Responding Party has asserted the foregoing specific objections as a reservation of rights, Responding Party is not currently withholding any information or documents on the basis of any asserted objections. Responding Party is also not currently aware of any responsive privileged communications, other than communications with its undersigned counsel of record, but if other privileged communications are discovered, Responding Party will provide a privilege log.

(f)     Documents relating to or referencing the above-captioned litigation.

Responding Party objects to the term "Documents, including Communications, . . . relating to" as vague and ambiguous, as it is unclear what exactly is being sought, and likewise, whether all such documents are reasonably proportional to the needs of this case. Responding Party further objects to this request to the extent it seeks documents that contain Responding Party's confidential and/or proprietary business information, including sensitive financial information, marketing plans and/or trade secrets.

Subject to and without waiver of the foregoing objections, Responding Party responds as follows: Responding Party has already searched its records and produced non-privileged responsive documents within its possession, custody, or control. While Responding Party has asserted the foregoing specific objections as a reservation of rights, Responding Party is not currently withholding any information or documents on the basis of any asserted objections. Responding Party is also not currently aware of any responsive privileged communications, other than communications with its undersigned counsel of record, but if other

privileged communications are discovered, Responding Party will provide a privilege log.

**REQUEST FOR PRODUCTION NO. 8 [14-17]:**

Documents, including Communications, including without limitation internal presentations, agendas, minutes, or other recorded notes for any internal meetings, formal or informal, concerning any of the following subject matters:

    a.   the use of blue and gold in connection with Your business;

    b.   the use or intended use of CAREER EDGE;

    c.   Your goods or services were discussed as either competitive or comparative against the goods or services of PTK, or any other competitor in Your market; and/or

    d.   The marketing, advertising and/or promotion of Your goods/services to prospective student members, existing student members and/or college administrators.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 8 [14-17]:**

Responding Party objects to this request as compound as it seeks documents concerning four distinct topics, namely: (a) the use of blue and gold in connection with Responding Party's business; (b) the use or intended use of CAREER EDGE; (c) Responding Party's goods or services discussed as either competitive or comparative against the goods or services of PTK, or any other competitor in Responding Party's market; and (d) the marketing, advertising and/or promotion of Responding Party's goods/services to prospective student members, existing student members and/or college administrators. Responding Party responds to each discrete subpart of this Request as its own Request, as follows:

    (a)    The use of blue and gold in connection with Your business.

Responding Party objects to the term "Documents, including Communications, . . . concerning any of the following subject matters" as vague,

ambiguous, overbroad, and unduly burdensome, as it is unclear what exactly is being sought, and likewise, whether all such documents are relevant to any party's claim or defense, or reasonably proportional to the needs of this case. Responding Party further objects to this request to the extent it seeks documents that contain Responding Party's confidential and/or proprietary business information, including sensitive financial information, marketing plans and/or trade secrets. Responding Party further objects to this request to the extent that it seeks documents that are protected from disclosure by the attorney-client privilege and/or work-product doctrine.

Subject to and without waiver of the foregoing objections, Responding Party responds as follows: Responding Party has already searched its records and produced non-privileged responsive documents within its possession, custody, or control. While Responding Party has asserted the foregoing specific objections as a reservation of rights, Responding Party is not currently withholding any information or documents on the basis of any asserted objections. Responding Party is also not currently aware of any responsive privileged communications, other than communications with its undersigned counsel of record, but if other privileged communications are discovered, Responding Party will provide a privilege log.

(b)    The use or intended use of CAREER EDGE.

Responding Party objects to the term "Documents, including Communications, . . . concerning any of the following subject matters" as vague, ambiguous, overbroad, and unduly burdensome, as it is unclear what exactly is being sought, and likewise, whether all such documents are relevant to any party's claim or defense, or reasonably proportional to the needs of this case. Responding Party further objects to this request to the extent it seeks documents that contain Responding Party's confidential and/or proprietary business information, including

sensitive financial information, marketing plans and/or trade secrets. Responding Party further objects to this request to the extent that it seeks documents that are protected from disclosure by the attorney-client privilege and/or work-product doctrine.

Subject to and without waiver of the foregoing objections, Responding Party responds as follows: Responding Party has already searched its records and produced non-privileged responsive documents within its possession, custody, or control. While Responding Party has asserted the foregoing specific objections as a reservation of rights, Responding Party is not currently withholding any information or documents on the basis of any asserted objections. Responding Party is also not currently aware of any responsive privileged communications, other than communications with its undersigned counsel of record, but if other privileged communications are discovered, Responding Party will provide a privilege log.

(c)    Your goods or services were discussed as either competitive or comparative against the goods or services of PTK, or any other competitor in Your market.

Responding Party objects to the term "Documents, including Communications, . . . concerning any of the following subject matters" as vague, ambiguous, overbroad, and unduly burdensome, as it is unclear what exactly is being sought, and likewise, whether all such documents are relevant to any party's claim or defense, or reasonably proportional to the needs of this case. Responding Party further objects to this request to the extent it seeks documents that contain Responding Party's confidential and/or proprietary business information, including sensitive financial information, marketing plans and/or trade secrets. Responding Party further objects to this request to the extent that it seeks documents that are

protected from disclosure by the attorney-client privilege and/or work-product doctrine.

Subject to and without waiver of the foregoing objections, Responding Party responds as follows: Responding Party has already searched its records and produced non-privileged responsive documents within its possession, custody, or control. While Responding Party has asserted the foregoing specific objections as a reservation of rights, Responding Party is not currently withholding any information or documents on the basis of any asserted objections. Responding Party is also not currently aware of any responsive privileged communications, other than communications with its undersigned counsel of record, but if other privileged communications are discovered, Responding Party will provide a privilege log.

(d)     The marketing, advertising and/or promotion of Your goods/services to prospective student members, existing student members and/or college administrators.

Responding Party objects to the term "Documents, including Communications, . . . concerning any of the following subject matters" as vague, ambiguous, overbroad, and unduly burdensome, as it is unclear what exactly is being sought, and likewise, whether all such documents are relevant to any party's claim or defense, or reasonably proportional to the needs of this case. Responding Party further objects to this request to the extent it seeks documents that contain Responding Party's confidential and/or proprietary business information, including sensitive financial information, marketing plans and/or trade secrets. Responding Party further objects to this request to the extent that it seeks documents that are protected from disclosure by the attorney-client privilege and/or work-product doctrine.

Subject to and without waiver of the foregoing objections, Responding Party responds as follows: Responding Party has already searched its records and produced non-privileged responsive documents within its possession, custody, or control. While Responding Party has asserted the foregoing specific objections as a reservation of rights, Responding Party is not currently withholding any information or documents on the basis of any asserted objections. Responding Party is also not currently aware of any responsive privileged communications, other than communications with its undersigned counsel of record, but if other privileged communications are discovered, Responding Party will provide a privilege log.

**REQUEST FOR PRODUCTION NO. 9 [18-20]:**

In connection with Your decision to use either "HonorSociety" [SIC] or "HonorSociety.org" as Your corporate name:

    a. Documents, including Communications, sufficient to identify any person(s) involved with that decision and related process;

    b. Documents, including Communications, relating to that decision and related process; and/or

    c. Documents, including Communications, relating to any subsequent discussion and/or decision to modify Your name, whether formally with a government authority or otherwise in Your branding, marketing or promotion.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 9 [18-20]:**

Responding Party objects to this request as compound as it seeks documents concerning three distinct topics concerning the decision to use either "HonorSociety" [SIC] or "HonorSociety.org" as a corporate name, namely: (a) the identity of any person(s) involved with that decision and related process; (b) that decision and related process; and (c) any subsequent discussion and/or decision to

modify Responding Party's name, whether formally with a government authority or otherwise in Responding Party's branding, marketing or promotion. Responding Party responds to each discrete subpart of this Request as its own Request, as follows:

(a) Documents, including Communications, sufficient to identify any person(s) involved with that decision and related process.

Responding Party objects to the term "related process" as vague and ambiguous, as it is unclear what exactly is being sought. Responding Party objects to this request as overbroad and unduly burdensome, and to the extent this request seeks production of material that is not relevant to any party's claim or defense nor proportional to the needs of this case. Responding Party further objects to this request to the extent it seeks documents that contain Responding Party's confidential and/or proprietary business information, including sensitive financial information, marketing plans and/or trade secrets. Responding Party further objects to this request to the extent that it seeks documents that are protected from disclosure by the attorney-client privilege and/or work-product doctrine.

Subject to and without waiver of the foregoing objections, Responding Party responds as follows: Responding Party is producing concurrently herewith non-privileged responsive documents within its possession, custody, or control. Responding Party is also producing concurrently herewith a privilege log itemizing certain privileged responsive documents that are being withheld from production based upon the attorney-client privilege.

(b) Documents, including Communications, relating to that decision and related process.

Responding Party objects to the term "related process" as vague and ambiguous, as it is unclear what exactly is being sought. Responding Party objects to this request as overbroad and unduly burdensome, and to the extent this request

seeks production of material that is not relevant to any party's claim or defense nor proportional to the needs of this case. Responding Party further objects to this request to the extent it seeks documents that contain Responding Party's confidential and/or proprietary business information, including sensitive financial information, marketing plans and/or trade secrets. Responding Party further objects to this request to the extent that it seeks documents that are protected from disclosure by the attorney-client privilege and/or work-product doctrine.

Subject to and without waiver of the foregoing objections, Responding Party responds as follows: Responding Party is producing concurrently herewith non-privileged responsive documents within its possession, custody, or control. Responding Party is also producing concurrently herewith a privilege log itemizing certain privileged responsive documents that are being withheld from production based upon the attorney-client privilege.

(c)     Documents, including Communications, relating to any subsequent discussion and/or decision to modify Your name, whether formally with a government authority or otherwise in Your branding, marketing or promotion.

Responding Party objects to this request as overbroad and unduly burdensome, and to the extent this request seeks production of material that is not relevant to any party's claim or defense nor proportional to the needs of this case. Responding Party further objects to this request to the extent it seeks documents that contain Responding Party's confidential and/or proprietary business information, including sensitive financial information, marketing plans and/or trade secrets. Responding Party further objects to this request to the extent that it seeks documents that are protected from disclosure by the attorney-client privilege and/or work-product doctrine.

Subject to and without waiver of the foregoing objections, Responding Party responds as follows: Responding Party is producing concurrently herewith non-privileged responsive documents within its possession, custody, or control. Responding Party is also producing concurrently herewith a privilege log itemizing certain privileged responsive documents that are being withheld from production based upon the attorney-client privilege.

## REQUEST FOR PRODUCTION NO. 10 [21-23]:

Any trademark clearance opinions or related Documents regarding Your use of "HonorSociety" [SIC], "HonorSociety.org" or the CAREER EDGE Mark.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 10 [21-22]:

Responding Party objects to this request as compound as it seeks documents concerning three distinct topics, namely, any trademark clearance opinions or related documents relating to Responding Party's use of (a) "HonorSociety" [SIC]; (b) "HonorSociety.org"; or (c) the CAREER EDGE Mark. Responding Party responds to each discrete subpart of this Request as its own Request, as follows:

(a)     Any trademark clearance opinions or related documents relating to Responding Party's use of "HonorSociety" [SIC] and/or "HonorSociety.org".

Responding Party objects to the term "or related Documents" as vague, ambiguous, overbroad, and unduly burdensome, as it is unclear what exactly is being sought, and likewise, whether all such documents are relevant to any party's claim or defense, or reasonably proportional to the needs of this case. Responding Party further objects to this request to the extent it seeks documents that contain Responding Party's confidential and/or proprietary business information, including sensitive financial information, marketing plans and/or trade secrets. Responding Party further objects to this request to the extent that it seeks documents that are

protected from disclosure by the attorney-client privilege and/or work-product doctrine.

Subject to and without waiver of the foregoing objections, Responding Party responds as follows: Responding Party is unable to comply with this request because no such documents exist or have ever existed.

(b)    Any trademark clearance opinions or related documents relating to Responding Party's use of the CAREER EDGE Mark.

Responding Party objects to the term "or related Documents" as vague, ambiguous, overbroad, and unduly burdensome, as it is unclear what exactly is being sought, and likewise, whether all such documents are relevant to any party's claim or defense, or reasonably proportional to the needs of this case. Responding Party further objects to this request to the extent it seeks documents that contain Responding Party's confidential and/or proprietary business information, including sensitive financial information, marketing plans and/or trade secrets. Responding Party further objects to this request to the extent that it seeks documents that are protected from disclosure by the attorney-client privilege and/or work-product doctrine.

Subject to and without waiver of the foregoing objections, Responding Party responds as follows: Responding Party is unable to comply with this request because no such documents exist or have ever existed.

**REQUEST FOR PRODUCTION NO. 11 [23]:**

Any Documents or Communications with the United States Patent & Trademark Office that are not otherwise available at www.uspto.gov concerning any applications or registrations for intellectual property owned or claimed by You.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 11 [23]:**

Responding Party objects to this request as overbroad and unduly burdensome, and to the extent this request seeks production of material that is not relevant to any party's claim or defense nor proportional to the needs of this case. Responding Party further objects to this request to the extent it seeks documents that contain Responding Party's confidential and/or proprietary business information, including sensitive financial information, marketing plans and/or trade secrets.

**REQUEST FOR PRODUCTION NO. 12 [24-27]:**

In connection with Your use of blue and gold, whether among other colors or not, in connection with Your business:

    a. Documents, including Communications, regarding any incorporation of those colors into any advertising, marketing or promotion of Your business;

    b. Documents sufficient to show any use by Your of those colors on or in connection with any advertising, marketing or promotion of Your business;

    c. Documents sufficient to show any use by You of those colors in connection with any webstore offered or promoted by You, including any goods offered on such a webstore; and/or

    d. Documents, including Communications, related to any instructions, guidance, direction or training related to proper usage of colors, in particular blue and/or gold, whether alone, together or in combination with other colors, in connection with Your business (for example, brand standards).

**RESPONSE TO REQUEST FOR PRODUCTION NO. 12 [24-27]:**

Responding Party objects to this request as compound as it seeks documents concerning four distinct topics relating to Responding Party's use of blue and gold in its business, namely, (a) any incorporation of those colors into any advertising, marketing or promotion of Responding Party's business; (b) any use by Responding Party of those colors on or in connection with any advertising, marketing or promotion of Responding Party's business; (c) documents sufficient to show any use by Responding Party of those colors in connection with any webstore offered or promoted by Responding Party's, including any goods offered on such a webstore; and (d) any instructions, guidance, direction or training related to proper usage of colors, in particular blue and/or gold, whether alone, together or in combination with other colors, in connection with Responding Party's business (for example, brand standards). Responding Party responds to each discrete subpart of this Request as its own Request, as follows:

> (a)     Documents, including Communications, regarding any incorporation of the colors blue and gold into any advertising, marketing or promotion of Your business.

Responding Party objects to this request as overbroad and unduly burdensome, and to the extent this request seeks production of material that is not relevant to any party's claim or defense nor proportional to the needs of this case. Responding Party further objects to this request to the extent it seeks documents that contain Responding Party's confidential and/or proprietary business information, including sensitive financial information, marketing plans and/or trade secrets. Responding Party further objects to this request to the extent that it seeks documents that are protected from disclosure by the attorney-client privilege and/or work-product doctrine.

Subject to and without waiver of the foregoing objections, Responding Party

responds as follows: Responding Party has already searched its records and produced non-privileged responsive documents within its possession, custody, or control. While Responding Party has asserted the foregoing specific objections as a reservation of rights, Responding Party is not currently withholding any information or documents on the basis of any asserted objections. Responding Party is also not currently aware of any responsive privileged communications, other than communications with its undersigned counsel of record, but if other privileged communications are discovered, Responding Party will provide a privilege log.

(b)     Documents sufficient to show any use by Your of the colors blue and gold on or in connection with any advertising, marketing or promotion of Your business.

Responding Party objects to this request as overbroad and unduly burdensome, and to the extent this request seeks production of material that is not relevant to any party's claim or defense nor proportional to the needs of this case. Responding Party further objects to this request to the extent it seeks documents that contain Responding Party's confidential and/or proprietary business information, including sensitive financial information, marketing plans and/or trade secrets. Responding Party further objects to this request to the extent that it seeks documents that are protected from disclosure by the attorney-client privilege and/or work-product doctrine.

Subject to and without waiver of the foregoing objections, Responding Party responds as follows: Responding Party has already searched its records and produced non-privileged responsive documents within its possession, custody, or control. While Responding Party has asserted the foregoing specific objections as a reservation of rights, Responding Party is not currently withholding any information or documents on the basis of any asserted objections. Responding

Party is also not currently aware of any responsive privileged communications, other than communications with its undersigned counsel of record, but if other privileged communications are discovered, Responding Party will provide a privilege log.

    (c)    <u>Documents sufficient to show any use by You of the colors blue and gold in connection with any webstore offered or promoted by You, including any goods offered on such a webstore.</u>

Responding Party objects to this request as overbroad and unduly burdensome, and to the extent this request seeks production of material that is not relevant to any party's claim or defense nor proportional to the needs of this case. Responding Party further objects to this request to the extent it seeks documents that contain Responding Party's confidential and/or proprietary business information, including sensitive financial information, marketing plans and/or trade secrets. Responding Party further objects to this request to the extent that it seeks documents that are protected from disclosure by the attorney-client privilege and/or work-product doctrine.

Subject to and without waiver of the foregoing objections, Responding Party responds as follows: Responding Party has already searched its records and produced non-privileged responsive documents within its possession, custody, or control. While Responding Party has asserted the foregoing specific objections as a reservation of rights, Responding Party is not currently withholding any information or documents on the basis of any asserted objections. Responding Party is also not currently aware of any responsive privileged communications, other than communications with its undersigned counsel of record, but if other privileged communications are discovered, Responding Party will provide a privilege log.

    (d)    <u>Documents, including Communications, related to any instructions,</u>

<u>guidance, direction or training related to proper usage of colors, in particular blue and/or gold, whether alone, together or in combination with other colors, in connection with Your business (for example, brand standards).</u>

Responding Party objects to this request as overbroad and unduly burdensome, and to the extent this request seeks production of material that is not relevant to any party's claim or defense nor proportional to the needs of this case. Responding Party further objects to this request to the extent it seeks documents that contain Responding Party's confidential and/or proprietary business information, including sensitive financial information, marketing plans and/or trade secrets. Responding Party further objects to this request to the extent that it seeks documents that are protected from disclosure by the attorney-client privilege and/or work-product doctrine.

Subject to and without waiver of the foregoing objections, Responding Party responds as follows: Responding Party has already searched its records and produced non-privileged responsive documents within its possession, custody, or control.  While Responding Party has asserted the foregoing specific objections as a reservation of rights, Responding Party is not currently withholding any information or documents on the basis of any asserted objections.  Responding Party is also not currently aware of any responsive privileged communications, other than communications with its undersigned counsel of record, but if other privileged communications are discovered, Responding Party will provide a privilege log.

## REQUEST FOR PRODUCTION NO. 13 [28]:

Documents, including Communications, related to any instructions, guidance, direction or training Your organization where such Documents and/or Communications are related to proper usage of Your trademarks and/or any third-

28

party trademarks.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 13 [28]:

Responding Party objects to the term "Documents, including Communications, related to" as vague, ambiguous, overbroad, and unduly burdensome, as it is unclear what exactly is being sought, and likewise, whether all such documents are relevant to any party's claim or defense, or reasonably proportional to the needs of this case. Responding Party further objects to this request to the extent it seeks documents that contain Responding Party's confidential and/or proprietary business information, including sensitive financial information, marketing plans and/or trade secrets. Responding Party further objects to this request to the extent that it seeks documents that are protected from disclosure by the attorney-client privilege and/or work-product doctrine.

Subject to and without waiver of the foregoing objections, Responding Party responds as follows: Responding Party has already searched its records and produced non-privileged responsive documents within its possession, custody, or control. While Responding Party has asserted the foregoing specific objections as a reservation of rights, Responding Party is not currently withholding any information or documents on the basis of any asserted objections. Responding Party is also not currently aware of any responsive privileged communications, other than communications with its undersigned counsel of record, but if other privileged communications are discovered, Responding Party will provide a privilege log.

## REQUEST FOR PRODUCTION NO. 14 [29]:

Documents, including Communications, related to any consideration, review or discussion of PTK's marketing materials, promotional materials, advertising materials or website in connection with Your own advertising, branding and promotion strategy or efforts.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 14 [29]:**

Responding Party objects to the term "Documents, including Communications, related to" as vague, ambiguous, overbroad, and unduly burdensome, as it is unclear what exactly is being sought, and likewise, whether all such documents are relevant to any party's claim or defense, or reasonably proportional to the needs of this case. Responding Party further objects to this request to the extent it seeks documents that contain Responding Party's confidential and/or proprietary business information, including sensitive financial information, marketing plans and/or trade secrets. Responding Party further objects to this request to the extent that it seeks documents that are protected from disclosure by the attorney-client privilege and/or work-product doctrine.

Subject to and without waiver of the foregoing objections, Responding Party responds as follows: Responding Party already produced these documents during jurisdictional discovery.

**REQUEST FOR PRODUCTION NO. 15 [30-35]:**

In connection with Your use of CAREER EDGE:

a. Documents, including Communications, sufficient to identify the person(s) involved in deciding to use CAREER EDGE in connection with Your business;

b. Documents sufficient to show all uses by You of CAREER EDGE in commerce since inception;

c. Documents, including Communications, concerning Your selection of CAREER EDGE as a mark, including any Documents, including Communications, showing consideration of alternative marks;

d. Documents, including Communications, concerning strategies, plans, initiatives, campaigns or similar types of information;

e. Documents, including Communications, relating to the promotion,

branding, marketing and/or promotion of the CAREER EDGE Mark; and/or

f.  Documents, including Communications, related to any instructions, guidance, direction or training Your organization where such Documents are related to proper usage of CAREER EDGE in connection with HonorSociety [SIC].

## RESPONSE TO REQUEST FOR PRODUCTION NO. 15 [30-35]:

Responding Party objects to this request as compound as it seeks documents concerning six distinct topics relating to Responding Party's use of CAREER EDGE, namely, (a) the identity of the person(s) involved in deciding to use CAREER EDGE in connection with Responding Party's business; (b) all uses by Responding Party of CAREER EDGE in commerce since inception; (c) Responding Party's selection of CAREER EDGE as a mark; (d) strategies, plans, initiatives, campaigns or similar types of information; (e) the promotion, branding, marketing and/or promotion of the CAREER EDGE Mark; and (f) any instructions, guidance, direction or training Responding Party's organization where such Documents are related to proper usage of CAREER EDGE in connection with Honor Society. Responding Party responds to each discrete subpart of this Request as its own Request, as follows:

(a)  Documents, including Communications, sufficient to identify the person(s) involved in deciding to use CAREER EDGE in connection with Your business.

Responding Party objects to this request as overbroad and unduly burdensome, and to the extent this request seeks production of material that is not relevant to any party's claim or defense nor proportional to the needs of this case. Responding Party further objects to this request to the extent it seeks documents that contain Responding Party's confidential and/or proprietary business

information, including sensitive financial information, marketing plans and/or trade secrets. Responding Party further objects to this request to the extent that it seeks documents that are protected from disclosure by the attorney-client privilege and/or work-product doctrine.

Subject to and without waiver of the foregoing objections, Responding Party responds as follows: Responding Party has already searched its records and produced non-privileged responsive documents within its possession, custody, or control. While Responding Party has asserted the foregoing specific objections as a reservation of rights, Responding Party is not currently withholding any information or documents on the basis of any asserted objections. Responding Party is also not currently aware of any responsive privileged communications, other than communications with its undersigned counsel of record, but if other privileged communications are discovered, Responding Party will provide a privilege log.

(b)    Documents sufficient to show all uses by You of CAREER EDGE in commerce since inception.

Responding Party objects to this request as overbroad and unduly burdensome, and to the extent this request seeks production of material that is not relevant to any party's claim or defense nor proportional to the needs of this case. Responding Party further objects to this request to the extent it seeks documents that contain Responding Party's confidential and/or proprietary business information, including sensitive financial information, marketing plans and/or trade secrets. Responding Party further objects to this request to the extent that it seeks documents that are protected from disclosure by the attorney-client privilege and/or work-product doctrine.

Subject to and without waiver of the foregoing objections, Responding Party responds as follows: Responding Party has already searched its records and

produced non-privileged responsive documents within its possession, custody, or control.  While Responding Party has asserted the foregoing specific objections as a reservation of rights, Responding Party is not currently withholding any information or documents on the basis of any asserted objections.  Responding Party is also not currently aware of any responsive privileged communications, other than communications with its undersigned counsel of record, but if other privileged communications are discovered, Responding Party will provide a privilege log.

(c)    Documents, including Communications, concerning Your selection of CAREER EDGE as a mark, including any Documents, including Communications, showing consideration of alternative marks.

Responding Party objects to this request as overbroad and unduly burdensome, and to the extent this request seeks production of material that is not relevant to any party's claim or defense nor proportional to the needs of this case. Responding Party further objects to this request to the extent it seeks documents that contain Responding Party's confidential and/or proprietary business information, including sensitive financial information, marketing plans and/or trade secrets. Responding Party further objects to this request to the extent that it seeks documents that are protected from disclosure by the attorney-client privilege and/or work-product doctrine.

Subject to and without waiver of the foregoing objections, Responding Party responds as follows: Responding Party has already searched its records and produced non-privileged responsive documents within its possession, custody, or control.  While Responding Party has asserted the foregoing specific objections as a reservation of rights, Responding Party is not currently withholding any information or documents on the basis of any asserted objections.  Responding Party is also not currently aware of any responsive privileged communications,

33

other than communications with its undersigned counsel of record, but if other privileged communications are discovered, Responding Party will provide a privilege log.

(d)    <u>Documents, including Communications, concerning strategies, plans, initiatives, campaigns, or similar types of information.</u>

Responding Party objects to this request as overbroad and unduly burdensome, and to the extent this request seeks production of material that is not relevant to any party's claim or defense nor proportional to the needs of this case. Responding Party further objects to this request to the extent it seeks documents that contain Responding Party's confidential and/or proprietary business information, including sensitive financial information, marketing plans and/or trade secrets. Responding Party further objects to this request to the extent that it seeks documents that are protected from disclosure by the attorney-client privilege and/or work-product doctrine.

Subject to and without waiver of the foregoing objections, Responding Party responds as follows: Responding Party has already searched its records and produced non-privileged responsive documents within its possession, custody, or control.  While Responding Party has asserted the foregoing specific objections as a reservation of rights, Responding Party is not currently withholding any information or documents on the basis of any asserted objections.  Responding Party is also not currently aware of any responsive privileged communications, other than communications with its undersigned counsel of record, but if other privileged communications are discovered, Responding Party will provide a privilege log.

(e)    <u>Documents, including Communications, relating to the promotion, branding, marketing and/or promotion of the CAREER EDGE Mark.</u>

Responding Party objects to this request as overbroad and unduly burdensome, and to the extent this request seeks production of material that is not relevant to any party's claim or defense nor proportional to the needs of this case. Responding Party further objects to this request to the extent it seeks documents that contain Responding Party's confidential and/or proprietary business information, including sensitive financial information, marketing plans and/or trade secrets. Responding Party further objects to this request to the extent that it seeks documents that are protected from disclosure by the attorney-client privilege and/or work-product doctrine.

Subject to and without waiver of the foregoing objections, Responding Party responds as follows: Responding Party has already searched its records and produced non-privileged responsive documents within its possession, custody, or control. While Responding Party has asserted the foregoing specific objections as a reservation of rights, Responding Party is not currently withholding any information or documents on the basis of any asserted objections. Responding Party is also not currently aware of any responsive privileged communications, other than communications with its undersigned counsel of record, but if other privileged communications are discovered, Responding Party will provide a privilege log.

(f)    <u>Documents, including Communications, related to any instructions, guidance, direction or training Your organization where such Documents are related to proper usage of CAREER EDGE in connection with Honor Society.</u>

Responding Party objects to this request as overbroad and unduly burdensome, and to the extent this request seeks production of material that is not

relevant to any party's claim or defense nor proportional to the needs of this case. Responding Party further objects to this request to the extent it seeks documents that contain Responding Party's confidential and/or proprietary business information, including sensitive financial information, marketing plans and/or trade secrets. Responding Party further objects to this request to the extent that it seeks documents that are protected from disclosure by the attorney-client privilege and/or work-product doctrine.

Subject to and without waiver of the foregoing objections, Responding Party responds as follows: Responding Party has already searched its records and produced non-privileged responsive documents within its possession, custody, or control. While Responding Party has asserted the foregoing specific objections as a reservation of rights, Responding Party is not currently withholding any information or documents on the basis of any asserted objections. Responding Party is also not currently aware of any responsive privileged communications, other than communications with its undersigned counsel of record, but if other privileged communications are discovered, Responding Party will provide a privilege log.

## REQUEST FOR PRODUCTION NO. 16 [36]:

Documents, including Communications, relating to any confusion by anyone between the CAREER EDGE Mark and the EDGE Mark.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 16 [36]:

Responding Party objects to the term "Documents, including Communications, related to" as vague, ambiguous, overbroad, and unduly burdensome, as it is unclear what exactly is being sought, and likewise, whether all such documents are relevant to any party's claim or defense, or reasonably proportional to the needs of this case. Responding Party further objects to this

request to the extent that it seeks documents that are protected from disclosure by the attorney-client privilege and/or work-product doctrine.

Subject to and without waiver of the foregoing objections, Responding Party responds as follows: Responding Party has already searched its records and produced non-privileged responsive documents within its possession, custody, or control. While Responding Party has asserted the foregoing specific objections as a reservation of rights, Responding Party is not currently withholding any information or documents on the basis of any asserted objections. Responding Party is also not currently aware of any responsive privileged communications, other than communications with its undersigned counsel of record, but if other privileged communications are discovered, Responding Party will provide a privilege log.

## REQUEST FOR PRODUCTION NO. 17 [37-43]:

For all websites owned or operated by You since inception of Your business:

a. Documents sufficient to identify all internet domain addressed [sic] used by You in our [sic] business since inception;

b. Copies of all website content since inception;

c. Documents sufficient to identify any person(s) involved with Your website(s), including the creation of any content found on any website;

d. Documents, including Communications, related to any discussion, consideration or approval of content for any website, including text, photographs, digital images, etc.;

e. Documents sufficient to demonstrate the number of visitors to any such website since January 1, 2016, by month;

f. Representative samples of all efforts by You to advertise, market or promote any website through any means, including email, direct mail or other Communication; and/or

      g. Documents sufficient to show the changes You have made or caused to be made.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 17 [37-43]:

Responding Party objects to this request as compound as it seeks documents concerning seven distinct topics concerning websites owned or operated by Responding Party since the inception of its business, namely, (a) documents sufficient to identify all internet domain addresses used by Responding Party in since inception; (b) copies of all website content since inception; (c) documents sufficient to identify any person(s) involved with Responding Party's website(s), including the creation of any content found on any website; (d) documents, including Communications, related to any discussion, consideration or approval of content for any website, including text, photographs, digital images, etc.; (e) documents sufficient to demonstrate the number of visitors to any such website since January 1, 2016, by month; (f) representative samples of all efforts by Responding Party to advertise, market or promote any website through any means, including email, direct mail or other Communication; and (g) documents sufficient to show the changes Responding Party made or caused to be made. Responding Party responds to each discrete subpart of this Request as its own Request, as follows:

      (a)    <u>Documents sufficient to identify all internet domain addressed [sic] used by You in our [sic] business since inception.</u>

Responding Party objects to this request as overbroad and unduly burdensome to the extent it seeks production of material that is not relevant to any party's claim or defense, nor proportional to the needs of this case. Responding Party further objects to this request to the extent it seeks documents that contain Responding Party's confidential and/or proprietary business information, including sensitive financial information, marketing plans and/or trade secrets. Responding

Party further objects to this request to the extent that it seeks documents that are protected from disclosure by the attorney-client privilege and/or work-product doctrine. Responding Party further objects to this request to the extent it seeks information on domains that are not at issue in this case.

(b)    Copies of all website content since inception.

Responding Party objects to this request as overbroad and unduly burdensome to the extent it seeks production of material that is not relevant to any party's claim or defense, nor proportional to the needs of this case. Responding Party further objects to this request to the extent it seeks documents that contain Responding Party's confidential and/or proprietary business information, including sensitive financial information, marketing plans and/or trade secrets. Responding Party further objects to this request to the extent that it seeks documents that are protected from disclosure by the attorney-client privilege and/or work-product doctrine. Responding Party further objects to this request to the extent it seeks information on domains that are not at issue in this case.

Subject to and without waiver of the foregoing objections, Responding Party responds as follows: Responding Party has already searched its records and produced non-privileged responsive documents within its possession, custody, or control. While Responding Party has asserted the foregoing specific objections as a reservation of rights, Responding Party is not currently withholding any information or documents on the basis of any asserted objections. Responding Party is also not currently aware of any responsive privileged communications, other than communications with its undersigned counsel of record, but if other privileged communications are discovered, Responding Party will provide a privilege log.

(c)    <u>Documents sufficient to identify any person(s) involved with Your website(s), including the creation of any content found on any website.</u>

Responding Party objects to this request as overbroad and unduly burdensome to the extent it seeks production of material that is not relevant to any party's claim or defense, nor proportional to the needs of this case. Responding Party further objects to this request to the extent it seeks documents that contain Responding Party's confidential and/or proprietary business information, including sensitive financial information, marketing plans and/or trade secrets. Responding Party further objects to this request to the extent that it seeks documents that are protected from disclosure by the attorney-client privilege and/or work-product doctrine.  Responding Party further objects to this request to the extent it seeks information on domains that are not at issue in this case.

Subject to and without waiver of the foregoing objections, Responding Party responds as follows: Responding Party has already searched its records and produced non-privileged responsive documents within its possession, custody, or control.  While Responding Party has asserted the foregoing specific objections as a reservation of rights, Responding Party is not currently withholding any information or documents on the basis of any asserted objections.  Responding Party is also not currently aware of any responsive privileged communications, other than communications with its undersigned counsel of record, but if other privileged communications are discovered, Responding Party will provide a privilege log.

(d)    <u>Documents, including Communications, related to any discussion, consideration or approval of content for any website, including text, photographs, digital images, etc.</u>

Responding Party objects to this request as overbroad and unduly burdensome to the extent it seeks production of material that is not relevant to any party's claim or defense, nor proportional to the needs of this case. Responding Party further objects to this request to the extent it seeks documents that contain Responding Party's confidential and/or proprietary business information, including sensitive financial information, marketing plans and/or trade secrets. Responding Party further objects to this request to the extent that it seeks documents that are protected from disclosure by the attorney-client privilege and/or work-product doctrine. Responding Party further objects to this request to the extent it seeks information on domains that are not at issue in this case.

Subject to and without waiver of the foregoing objections, Responding Party responds as follows: Responding Party has already searched its records and produced non-privileged responsive documents within its possession, custody, or control. While Responding Party has asserted the foregoing specific objections as a reservation of rights, Responding Party is not currently withholding any information or documents on the basis of any asserted objections. Responding Party is also not currently aware of any responsive privileged communications, other than communications with its undersigned counsel of record, but if other privileged communications are discovered, Responding Party will provide a privilege log.

(e)    <u>Documents sufficient to demonstrate the number of visitors to any such website since January 1, 2016, by month.</u>

Responding Party objects to this request as overbroad and unduly burdensome to the extent it seeks production of material that is not relevant to any

party's claim or defense, nor proportional to the needs of this case. Responding Party further objects to this request to the extent it seeks documents that contain Responding Party's confidential and/or proprietary business information, including sensitive financial information, marketing plans and/or trade secrets. Responding Party further objects to this request to the extent that it seeks documents that are protected from disclosure by the attorney-client privilege and/or work-product doctrine. Responding Party further objects to this request to the extent it seeks information on domains that are not at issue in this case.

Subject to and without waiver of the foregoing objections, Responding Party responds as follows: Responding Party has already searched its records and produced non-privileged responsive documents within its possession, custody, or control. While Responding Party has asserted the foregoing specific objections as a reservation of rights, Responding Party is not currently withholding any information or documents on the basis of any asserted objections. Responding Party is also not currently aware of any responsive privileged communications, other than communications with its undersigned counsel of record, but if other privileged communications are discovered, Responding Party will provide a privilege log.

    (f)    <u>Representative samples of all efforts by You to advertise, market or promote any website through any means, including email, direct mail or other Communication.</u>

Responding Party objects to this request as overbroad and unduly burdensome to the extent it seeks production of material that is not relevant to any party's claim or defense, nor proportional to the needs of this case. Responding Party further objects to this request to the extent it seeks documents that contain Responding Party's confidential and/or proprietary business information, including sensitive financial information, marketing plans and/or trade secrets. Responding

Party further objects to this request to the extent that it seeks documents that are protected from disclosure by the attorney-client privilege and/or work-product doctrine. Responding Party further objects to this request to the extent it seeks information on domains that are not at issue in this case.

Subject to and without waiver of the foregoing objections, Responding Party responds as follows: Responding Party has already searched its records and produced non-privileged responsive documents within its possession, custody, or control. While Responding Party has asserted the foregoing specific objections as a reservation of rights, Responding Party is not currently withholding any information or documents on the basis of any asserted objections. Responding Party is also not currently aware of any responsive privileged communications, other than communications with its undersigned counsel of record, but if other privileged communications are discovered, Responding Party will provide a privilege log.

    (g)    <u>Documents sufficient to show the changes You have made or caused to be made.</u>

Responding Party objects to this request as overbroad and unduly burdensome to the extent it seeks production of material that is not relevant to any party's claim or defense, nor proportional to the needs of this case. Responding Party further objects to this request to the extent it seeks documents that contain Responding Party's confidential and/or proprietary business information, including sensitive financial information, marketing plans and/or trade secrets. Responding Party further objects to this request to the extent that it seeks documents that are protected from disclosure by the attorney-client privilege and/or work-product doctrine. Responding Party further objects to this request to the extent it seeks information on domains that are not at issue in this case.

Subject to and without waiver of the foregoing objections, Responding Party responds as follows: Responding Party has already searched its records and produced non-privileged responsive documents within its possession, custody, or control. While Responding Party has asserted the foregoing specific objections as a reservation of rights, Responding Party is not currently withholding any information or documents on the basis of any asserted objections. Responding Party is also not currently aware of any responsive privileged communications, other than communications with its undersigned counsel of record, but if other privileged communications are discovered, Responding Party will provide a privilege log.

**REQUEST FOR PRODUCTION NO. 18 [44-48]:**

For any e-commerce store owned or operated by You since inception of Your business:

a. Documents sufficient to identify all person(s) involved with the creation and/or approval of any goods or services offered;

b. Documents sufficient to identify any products offered on any such e-commerce store(s);

c. Documents sufficient to identify the revenues and profit earned from the sale of any goods offered on any such e-commerce store, by SKU or individual item, since January 1, 2016;

d. Representative samples of all efforts by You to advertise, market or promote any such e-commerce store through any means, including email, direct mail or other Communication; and/or

e. Documents, including Communications, relating to the use of the colors blue and/or gold, on any product offered in connection with any e-commerce store.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 18 [44-48]:

Responding Party objects to this request as compound as it seeks documents concerning five distinct topics relating to any e-commerce store owned or operated by Responding Party since its inception, namely, (a) the identity of all person(s) involved with the creation and/or approval of any goods or services offered; (b) any products offered on any such e-commerce store(s); (c) the revenues and profit earned from the sale of any goods offered on any such e-commerce store, by SKU or individual item, since January 1, 2016; (d) representative samples of all efforts by Responding Party to advertise, market or promote any such e-commerce store through any means, including email, direct mail or other Communication; and (e) the use of the colors blue and/or gold, on any product offered in connection with any e-commerce store. Responding Party responds to each discrete subpart of this Request as its own Request, as follows:

(a)    Documents sufficient to identify all person(s) involved with the creation and/or approval of any goods or services offered.

Responding Party objects to this request as overbroad and unduly burdensome, and to the extent this request seeks production of material that is not relevant to any party's claim or defense nor proportional to the needs of this case. Responding Party further objects to this request to the extent it seeks documents that contain Responding Party's confidential and/or proprietary business information, including sensitive financial information, marketing plans and/or trade secrets. Responding Party further objects to this request to the extent that it seeks documents that are protected from disclosure by the attorney-client privilege and/or work-product doctrine.

Subject to and without waiver of the foregoing objections, Responding Party responds as follows: Responding Party has already searched its records and produced non-privileged responsive documents within its possession, custody, or

control.  While Responding Party has asserted the foregoing specific objections as a reservation of rights, Responding Party is not currently withholding any information or documents on the basis of any asserted objections.  Responding Party is also not currently aware of any responsive privileged communications, other than communications with its undersigned counsel of record, but if other privileged communications are discovered, Responding Party will provide a privilege log.

     (b)    <u>Documents sufficient to identify any products offered on any such e-commerce store(s).</u>

Responding Party objects to this request as overbroad and unduly burdensome, and to the extent this request seeks production of material that is not relevant to any party's claim or defense nor proportional to the needs of this case. Responding Party further objects to this request to the extent it seeks documents that contain Responding Party's confidential and/or proprietary business information, including sensitive financial information, marketing plans and/or trade secrets. Responding Party further objects to this request to the extent that it seeks documents that are protected from disclosure by the attorney-client privilege and/or work-product doctrine.

Subject to and without waiver of the foregoing objections, Responding Party responds as follows: Responding Party has already searched its records and produced non-privileged responsive documents within its possession, custody, or control.  While Responding Party has asserted the foregoing specific objections as a reservation of rights, Responding Party is not currently withholding any information or documents on the basis of any asserted objections.  Responding Party is also not currently aware of any responsive privileged communications, other than communications with its undersigned counsel of record, but if other

privileged communications are discovered, Responding Party will provide a privilege log.

      (c)    <u>Documents sufficient to identify the revenues and profit earned from the sale of any goods offered on any such e-commerce store, by SKU or individual item, since January 1, 2016.</u>

Responding Party objects to this request as overbroad and unduly burdensome, and to the extent this request seeks production of material that is not relevant to any party's claim or defense nor proportional to the needs of this case. Responding Party further objects to this request to the extent it seeks documents that contain Responding Party's confidential and/or proprietary business information, including sensitive financial information, marketing plans and/or trade secrets. Responding Party further objects to this request to the extent that it seeks documents that are protected from disclosure by the attorney-client privilege and/or work-product doctrine.

Subject to and without waiver of the foregoing objections, Responding Party responds as follows: Responding Party has already searched its records and produced non-privileged responsive documents within its possession, custody, or control. While Responding Party has asserted the foregoing specific objections as a reservation of rights, Responding Party is not currently withholding any information or documents on the basis of any asserted objections. Responding Party is also not currently aware of any responsive privileged communications, other than communications with its undersigned counsel of record, but if other privileged communications are discovered, Responding Party will provide a privilege log.

(d) <u>Representative samples of all efforts by You to advertise, market or promote any such e-commerce store through any means, including email, direct mail or other Communication.</u>

Responding Party objects to this request as overbroad and unduly burdensome, and to the extent this request seeks production of material that is not relevant to any party's claim or defense nor proportional to the needs of this case. Responding Party further objects to this request to the extent it seeks documents that contain Responding Party's confidential and/or proprietary business information, including sensitive financial information, marketing plans and/or trade secrets. Responding Party further objects to this request to the extent that it seeks documents that are protected from disclosure by the attorney-client privilege and/or work-product doctrine.

Subject to and without waiver of the foregoing objections, Responding Party responds as follows: Responding Party has already searched its records and produced non-privileged responsive documents within its possession, custody, or control. While Responding Party has asserted the foregoing specific objections as a reservation of rights, Responding Party is not currently withholding any information or documents on the basis of any asserted objections. Responding Party is also not currently aware of any responsive privileged communications, other than communications with its undersigned counsel of record, but if other privileged communications are discovered, Responding Party will provide a privilege log.

(e) <u>Documents, including Communications, relating to the use of the colors blue and/or gold, on any product offered in connection with any e-commerce store.</u>

Responding Party objects to this request as overbroad and unduly burdensome, and to the extent this request seeks production of material that is not

48

relevant to any party's claim or defense nor proportional to the needs of this case. Responding Party further objects to this request to the extent it seeks documents that contain Responding Party's confidential and/or proprietary business information, including sensitive financial information, marketing plans and/or trade secrets. Responding Party further objects to this request to the extent that it seeks documents that are protected from disclosure by the attorney-client privilege and/or work-product doctrine.

Subject to and without waiver of the foregoing objections, Responding Party responds as follows: Responding Party has already searched its records and produced non-privileged responsive documents within its possession, custody, or control. While Responding Party has asserted the foregoing specific objections as a reservation of rights, Responding Party is not currently withholding any information or documents on the basis of any asserted objections. Responding Party is also not currently aware of any responsive privileged communications, other than communications with its undersigned counsel of record, but if other privileged communications are discovered, Responding Party will provide a privilege log.

## REQUEST FOR PRODUCTION NO. 19 [49-56]:

In connection with any social media account in connection with Your business since January 1, 2016:

    a. Documents sufficient to identify any social media account used by You in advertising, marketing or promoting Your business;

    b. If not otherwise publicly available, the content of any social media account used by You in advertising, marketing or promoting Your business;

    c. Documents, including Communications, related to Your use of blue and gold in any social media account content or marketing, advertising or

promotion of that social media account;

    d. Documents, including Communications, related to use of the CAREER EDGE Mark in social media;

    e. Documents sufficient to identify was any person(s) involved in creating or posting content on HonorSociety's [SIC] social media pages, including but not limited to Reddit, Facebook, Twitter, Instagram, LinkedIn, and YouTube;

    f. Documents related to Your efforts to review, respond to, revise, delete or otherwise modify any comment left on any social media account for any reason;

    g. All Documents sufficient to identify HonorSociety's [SIC] "Insights" by month for any social media; and/or

    h. A complete copy of HonorSociety's [SIC] Meta Business Suite Facebook page.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 19 [49-56]:

Responding Party objects to this request as compound as it seeks documents concerning eight distinct topics relating to any social media account for Responding Party's business since January 1, 2016, namely, (a) the identity of any social media account used by Responding Party in advertising, marketing or promoting Responding Party's business; (b) the content of any social media account used by Responding Party in advertising, marketing or promoting Responding Party's business; (c) Responding Party's use of blue and gold in any social media account content or marketing, advertising or promotion of that social media account; (d) use of the CAREER EDGE Mark in social media; (e) the identity of any person(s) involved in creating or posting content on Honor Society's social media pages, including but not limited to Reddit, Facebook, Twitter, Instagram, LinkedIn, and YouTube; (f) Responding Party's efforts to

review, respond to, revise, delete or otherwise modify any comment left on any social media account for any reason; (g) Honor Society's "Insights" by month for any social media; and (h) a complete copy of Honor Society's Meta Business Suite Facebook page. Responding Party responds to each discrete subpart of this Request as its own Request, as follows:

(a)    Documents sufficient to identify any social media account used by You in advertising, marketing or promoting Your business.

Responding Party objects to this request as overbroad and unduly burdensome, and to the extent this request seeks production of material that is not relevant to any party's claim or defense nor proportional to the needs of this case. Responding Party further objects to this request to the extent it seeks documents that contain Responding Party's confidential and/or proprietary business information, including sensitive financial information, marketing plans and/or trade secrets. Responding Party further objects to this request to the extent that it seeks documents that are protected from disclosure by the attorney-client privilege and/or work-product doctrine. Responding Party further objects to this request on the grounds that the information sought is publicly available and is therefore equally available to Propounding Party.

Subject to and without waiver of the foregoing objections, Responding Party responds as follows: Responding Party has already searched its records and produced non-privileged responsive documents within its possession, custody, or control. While Responding Party has asserted the foregoing specific objections as a reservation of rights, Responding Party is not currently withholding any information or documents on the basis of any asserted objections. Responding Party is also not currently aware of any responsive privileged communications, other than communications with its undersigned counsel of record, but if other

privileged communications are discovered, Responding Party will provide a privilege log.

(b)    <u>If not otherwise publicly available, the content of any social media account used by You in advertising, marketing or promoting Your business.</u>

Responding Party objects to this request as overbroad and unduly burdensome, and to the extent this request seeks production of material that is not relevant to any party's claim or defense nor proportional to the needs of this case. Responding Party further objects to this request to the extent it seeks documents that contain Responding Party's confidential and/or proprietary business information, including sensitive financial information, marketing plans and/or trade secrets. Responding Party further objects to this request to the extent that it seeks documents that are protected from disclosure by the attorney-client privilege and/or work-product doctrine. Responding Party further objects to this request on the grounds that the information sought is publicly available and is therefore equally available to Propounding Party.

Subject to and without waiver of the foregoing objections, Responding Party responds as follows: Not applicable as Responding Party's social media content is publicly available.

(c)    <u>Documents, including Communications, related to Your use of blue and gold in any social media account content or marketing, advertising or promotion of that social media account.</u>

Responding Party objects to this request as overbroad and unduly burdensome, and to the extent this request seeks production of material that is not relevant to any party's claim or defense nor proportional to the needs of this case. Responding Party further objects to this request to the extent it seeks documents that contain Responding Party's confidential and/or proprietary business

information, including sensitive financial information, marketing plans and/or trade secrets. Responding Party further objects to this request to the extent that it seeks documents that are protected from disclosure by the attorney-client privilege and/or work-product doctrine. Responding Party further objects to this request on the grounds that the information sought is publicly available and is therefore equally available to Propounding Party.

Subject to and without waiver of the foregoing objections, Responding Party responds as follows: Responding Party has already searched its records and produced non-privileged responsive documents within its possession, custody, or control. While Responding Party has asserted the foregoing specific objections as a reservation of rights, Responding Party is not currently withholding any information or documents on the basis of any asserted objections. Responding Party is also not currently aware of any responsive privileged communications, other than communications with its undersigned counsel of record, but if other privileged communications are discovered, Responding Party will provide a privilege log.

    (d)   Documents, including Communications, related to use of the CAREER EDGE Mark in social media.

Responding Party objects to this request as overbroad and unduly burdensome, and to the extent this request seeks production of material that is not relevant to any party's claim or defense nor proportional to the needs of this case. Responding Party further objects to this request to the extent it seeks documents that contain Responding Party's confidential and/or proprietary business information, including sensitive financial information, marketing plans and/or trade secrets. Responding Party further objects to this request to the extent that it seeks documents that are protected from disclosure by the attorney-client privilege and/or work-product doctrine. Responding Party further objects to this request on

the grounds that the information sought is publicly available and is therefore equally available to Propounding Party.

Subject to and without waiver of the foregoing objections, Responding Party responds as follows: Responding Party has already searched its records and produced non-privileged responsive documents within its possession, custody, or control. While Responding Party has asserted the foregoing specific objections as a reservation of rights, Responding Party is not currently withholding any information or documents on the basis of any asserted objections. Responding Party is also not currently aware of any responsive privileged communications, other than communications with its undersigned counsel of record, but if other privileged communications are discovered, Responding Party will provide a privilege log.

(e)    Documents sufficient to identify any person(s) involved in creating or posting content on Honor Society's social media pages, including but not limited to Reddit, Facebook, Twitter, Instagram, LinkedIn, and YouTube.

Responding Party objects to this request as overbroad and unduly burdensome, and to the extent this request seeks production of material that is not relevant to any party's claim or defense nor proportional to the needs of this case. Responding Party further objects to this request to the extent it seeks documents that contain Responding Party's confidential and/or proprietary business information, including sensitive financial information, marketing plans and/or trade secrets. Responding Party further objects to this request to the extent that it seeks documents that are protected from disclosure by the attorney-client privilege and/or work-product doctrine. Responding Party further objects to this request to the extent the information sought is publicly available and is therefore equally available to Propounding Party.

Subject to and without waiver of the foregoing objections, Responding Party responds as follows: Responding Party has already searched its records and produced non-privileged responsive documents within its possession, custody, or control. While Responding Party has asserted the foregoing specific objections as a reservation of rights, Responding Party is not currently withholding any information or documents on the basis of any asserted objections. Responding Party is also not currently aware of any responsive privileged communications, other than communications with its undersigned counsel of record, but if other privileged communications are discovered, Responding Party will provide a privilege log.

    (f)    <u>Documents related to Your efforts to review, respond to, revise, delete or otherwise modify any comment left on any social media account for any reason.</u>

Responding Party objects to this request as overbroad and unduly burdensome, and to the extent this request seeks production of material that is not relevant to any party's claim or defense nor proportional to the needs of this case. Responding Party further objects to this request to the extent it seeks documents that contain Responding Party's confidential and/or proprietary business information, including sensitive financial information, marketing plans and/or trade secrets. Responding Party further objects to this request to the extent that it seeks documents that are protected from disclosure by the attorney-client privilege and/or work-product doctrine.

Subject to and without waiver of the foregoing objections, Responding Party responds as follows: Responding Party has already searched its records and produced non-privileged responsive documents within its possession, custody, or control. While Responding Party has asserted the foregoing specific objections as a reservation of rights, Responding Party is not currently withholding any

information or documents on the basis of any asserted objections. Responding Party is also not currently aware of any responsive privileged communications, other than communications with its undersigned counsel of record, but if other privileged communications are discovered, Responding Party will provide a privilege log.

    (g)    <u>All Documents sufficient to identify Honor Society's "Insights" by month for any social media.</u>

Responding Party objects to this request as overbroad and unduly burdensome, and to the extent this request seeks production of material that is not relevant to any party's claim or defense nor proportional to the needs of this case. Responding Party further objects to this request to the extent it seeks documents that contain Responding Party's confidential and/or proprietary business information, including sensitive financial information, marketing plans and/or trade secrets. Responding Party further objects to this request to the extent that it seeks documents that are protected from disclosure by the attorney-client privilege and/or work-product doctrine. Responding Party further objects to this request as vague and ambiguous with respect to the term "Insights." Responding Party further objects to this request on the grounds that it is not reasonably particularized as required by Federal Rule of Civil Procedure 34(b)(1)(A).

    (h)    <u>A complete copy of Honor Society's Meta Business Suite Facebook page.</u>

Responding Party objects to this request as overbroad and unduly burdensome, and to the extent this request seeks production of material that is not relevant to any party's claim or defense nor proportional to the needs of this case. Responding Party further objects to this request to the extent it seeks documents that contain Responding Party's confidential and/or proprietary business information, including sensitive financial information, marketing plans and/or

trade secrets. Responding Party further objects to this request to the extent that it seeks documents that are protected from disclosure by the attorney-client privilege and/or work-product doctrine.  Responding Party further objects to this request on the grounds that the information sought is publicly available and is therefore equally available to Propounding Party.

Subject to and without waiver of the foregoing objections, Responding Party responds as follows: Responding Party has already searched its records and produced non-privileged responsive documents within its possession, custody, or control.  While Responding Party has asserted the foregoing specific objections as a reservation of rights, Responding Party is not currently withholding any information or documents on the basis of any asserted objections.  Responding Party is also not currently aware of any responsive privileged communications, other than communications with its undersigned counsel of record, but if other privileged communications are discovered, Responding Party will provide a privilege log.

## REQUEST FOR PRODUCTION NO. 20 [57-67]:

Documents, including Communications, concerning any business strategies, forecasts, business plans, or similar strategic Documents since inception of Your business concerning or relating to any of membership sales; email marketing; direct mail; new member recruitment; chapter recruitment; existing member retention; reputation management; competition with other honor societies; merchandise [sic] offerings and sales, whether e commerce or not; and new product/service development and offerings; and/or use of the CAREER EDGE Mark in commerce.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 20 [57-67]:

Responding Party objects to this request as compound as it seeks documents concerning eleven distinct topics, namely, business strategies, forecasts, business

plans, or similar strategic Documents concerning or relating to (a) membership sales; (b) email marketing; (c) direct mail; (d) new member recruitment; (e) chapter recruitment; (f) existing member retention; (g) reputation management; (h) competition with other honor societies; (i) merchandise offerings and sales, whether e commerce or not; (j) new product/service development and offerings; and (k) use of the CAREER EDGE Mark in commerce. Responding Party responds to each discrete subpart of this Request as its own Request, as follows:

(a)    Documents concerning business strategies, forecasts, business plans, or similar strategic Documents concerning or relating to membership sales.

Responding Party objects to the term "Documents, including Communications, concerning any business strategies, forecasts, business plans, or similar strategic Documents" as vague, ambiguous, overbroad, and unduly burdensome, as it is unclear what exactly is being sought, and likewise, whether all such documents are relevant to any party's claim or defense, or reasonably proportional to the needs of this case. Responding Party further objects to this request to the extent it seeks documents that contain Responding Party's confidential and/or proprietary business information, including sensitive financial information, marketing plans and/or trade secrets. Responding Party further objects to this request to the extent that it seeks documents that are protected from disclosure by the attorney-client privilege and/or work-product doctrine.

(b)    Documents concerning business strategies, forecasts, business plans, or similar strategic Documents concerning or relating to email marketing.

Responding Party objects to the term "Documents, including Communications, concerning any business strategies, forecasts, business plans, or similar strategic Documents" as vague, ambiguous, overbroad, and unduly

burdensome, as it is unclear what exactly is being sought, and likewise, whether all such documents are relevant to any party's claim or defense, or reasonably proportional to the needs of this case. Responding Party further objects to this request to the extent it seeks documents that contain Responding Party's confidential and/or proprietary business information, including sensitive financial information, marketing plans and/or trade secrets. Responding Party further objects to this request to the extent that it seeks documents that are protected from disclosure by the attorney-client privilege and/or work-product doctrine.

Subject to and without waiver of the foregoing objections, Responding Party responds as follows: Responding Party already produced documents concerning its email marketing efforts during jurisdictional discovery.

(c)    <u>Documents concerning business strategies, forecasts, business plans, or similar strategic Documents concerning or relating to direct mail.</u>

Responding Party objects to the term "Documents, including Communications, concerning any business strategies, forecasts, business plans, or similar strategic Documents" as vague, ambiguous, overbroad, and unduly burdensome, as it is unclear what exactly is being sought, and likewise, whether all such documents are relevant to any party's claim or defense, or reasonably proportional to the needs of this case. Responding Party further objects to this request to the extent it seeks documents that contain Responding Party's confidential and/or proprietary business information, including sensitive financial information, marketing plans and/or trade secrets. Responding Party further objects to this request to the extent that it seeks documents that are protected from disclosure by the attorney-client privilege and/or work-product doctrine.

Subject to and without waiver of the foregoing objections, Responding Party responds as follows: Responding Party already produced documents concerning its direct mailings during jurisdictional discovery.

(d)     Documents concerning business strategies, forecasts, business plans, or similar strategic Documents concerning or relating to new member recruitment.

Responding Party objects to the term "Documents, including Communications, concerning any business strategies, forecasts, business plans, or similar strategic Documents" as vague, ambiguous, overbroad, and unduly burdensome, as it is unclear what exactly is being sought, and likewise, whether all such documents are relevant to any party's claim or defense, or reasonably proportional to the needs of this case. Responding Party further objects to this request to the extent it seeks documents that contain Responding Party's confidential and/or proprietary business information, including sensitive financial information, marketing plans and/or trade secrets. Responding Party further objects to this request to the extent that it seeks documents that are protected from disclosure by the attorney-client privilege and/or work-product doctrine.

Subject to and without waiver of the foregoing objections, Responding Party responds as follows: Responding Party already produced documents concerning its member recruitment efforts during jurisdictional discovery.

(e)     Documents concerning business strategies, forecasts, business plans, or similar strategic Documents concerning or relating to chapter recruitment.

Responding Party objects to the term "Documents, including Communications, concerning any business strategies, forecasts, business plans, or similar strategic Documents" as vague, ambiguous, overbroad, and unduly burdensome, as it is unclear what exactly is being sought, and likewise, whether all such documents are relevant to any party's claim or defense, or reasonably proportional to the needs of this case. Responding Party further objects to this request to the extent it seeks documents that contain Responding Party's

60

confidential and/or proprietary business information, including sensitive financial information, marketing plans and/or trade secrets. Responding Party further objects to this request to the extent that it seeks documents that are protected from disclosure by the attorney-client privilege and/or work-product doctrine.

Subject to and without waiver of the foregoing objections, Responding Party responds as follows: Responding Party already produced documents concerning its chapter recruitment efforts during jurisdictional discovery.

(f)    Documents concerning business strategies, forecasts, business plans, or similar strategic Documents concerning or relating to existing member retention.

Responding Party objects to the term "Documents, including Communications, concerning any business strategies, forecasts, business plans, or similar strategic Documents" as vague, ambiguous, overbroad, and unduly burdensome, as it is unclear what exactly is being sought, and likewise, whether all such documents are relevant to any party's claim or defense, or reasonably proportional to the needs of this case. Responding Party further objects to this request to the extent it seeks documents that contain Responding Party's confidential and/or proprietary business information, including sensitive financial information, marketing plans and/or trade secrets. Responding Party further objects to this request to the extent that it seeks documents that are protected from disclosure by the attorney-client privilege and/or work-product doctrine.

(g)    Documents concerning business strategies, forecasts, business plans, or similar strategic Documents concerning or relating to reputation management.

Responding Party objects to the term "Documents, including Communications, concerning any business strategies, forecasts, business plans, or similar strategic Documents" as vague, ambiguous, overbroad, and unduly

burdensome, as it is unclear what exactly is being sought, and likewise, whether all such documents are relevant to any party's claim or defense, or reasonably proportional to the needs of this case. Responding Party further objects to this request to the extent it seeks documents that contain Responding Party's confidential and/or proprietary business information, including sensitive financial information, marketing plans and/or trade secrets. Responding Party further objects to this request to the extent that it seeks documents that are protected from disclosure by the attorney-client privilege and/or work-product doctrine.

Subject to and without waiver of the foregoing objections, Responding Party responds as follows: Responding Party already produced documents concerning its reputation management efforts during jurisdictional discovery.

(h)   <u>Documents concerning business strategies, forecasts, business plans, or similar strategic Documents concerning or relating to competition with other honor societies.</u>

Responding Party objects to the term "Documents, including Communications, concerning any business strategies, forecasts, business plans, or similar strategic Documents" as vague, ambiguous, overbroad, and unduly burdensome, as it is unclear what exactly is being sought, and likewise, whether all such documents are relevant to any party's claim or defense, or reasonably proportional to the needs of this case. Responding Party further objects to this request to the extent it seeks documents that contain Responding Party's confidential and/or proprietary business information, including sensitive financial information, marketing plans and/or trade secrets. Responding Party further objects to this request to the extent that it seeks documents that are protected from disclosure by the attorney-client privilege and/or work-product doctrine.

Subject to and without waiver of the foregoing objections, Responding Party responds as follows: Responding Party has already searched its records and

produced non-privileged responsive documents within its possession, custody, or control.  While Responding Party has asserted the foregoing specific objections as a reservation of rights, Responding Party is not currently withholding any information or documents on the basis of any asserted objections.  Responding Party is also not currently aware of any responsive privileged communications, other than communications with its undersigned counsel of record, but if other privileged communications are discovered, Responding Party will provide a privilege log.

(i)    <u>Documents concerning business strategies, forecasts, business plans, or similar strategic Documents concerning or relating to merchandise offerings and sales, whether e commerce or not.</u>

Responding Party objects to the term "Documents, including Communications, concerning any business strategies, forecasts, business plans, or similar strategic Documents" as vague, ambiguous, overbroad, and unduly burdensome, as it is unclear what exactly is being sought, and likewise, whether all such documents are relevant to any party's claim or defense, or reasonably proportional to the needs of this case. Responding Party further objects to this request to the extent it seeks documents that contain Responding Party's confidential and/or proprietary business information, including sensitive financial information, marketing plans and/or trade secrets. Responding Party further objects to this request to the extent that it seeks documents that are protected from disclosure by the attorney-client privilege and/or work-product doctrine.

Subject to and without waiver of the foregoing objections, Responding Party responds as follows: Responding Party already produced these documents during jurisdictional discovery.

(j)    Documents concerning business strategies, forecasts, business plans, or similar strategic Documents concerning or relating to new product/service development and offerings.

Responding Party objects to the term "Documents, including Communications, concerning any business strategies, forecasts, business plans, or similar strategic Documents" as vague, ambiguous, overbroad, and unduly burdensome, as it is unclear what exactly is being sought, and likewise, whether all such documents are relevant to any party's claim or defense, or reasonably proportional to the needs of this case. Responding Party further objects to this request to the extent it seeks documents that contain Responding Party's confidential and/or proprietary business information, including sensitive financial information, marketing plans and/or trade secrets. Responding Party further objects to this request to the extent that it seeks documents that are protected from disclosure by the attorney-client privilege and/or work-product doctrine.

Subject to and without waiver of the foregoing objections, Responding Party responds as follows: Responding Party already produced these documents during jurisdictional discovery.

(j)    Documents concerning business strategies, forecasts, business plans, or similar strategic Documents concerning or relating to use of the CAREER EDGE Mark in commerce.

Responding Party objects to the term "Documents, including Communications, concerning any business strategies, forecasts, business plans, or similar strategic Documents" as vague, ambiguous, overbroad, and unduly burdensome, as it is unclear what exactly is being sought, and likewise, whether all such documents are relevant to any party's claim or defense, or reasonably proportional to the needs of this case. Responding Party further objects to this request to the extent it seeks documents that contain Responding Party's

confidential and/or proprietary business information, including sensitive financial information, marketing plans and/or trade secrets. Responding Party further objects to this request to the extent that it seeks documents that are protected from disclosure by the attorney-client privilege and/or work-product doctrine.

Subject to and without waiver of the foregoing objections, Responding Party responds as follows: Responding Party has already searched its records and produced non-privileged responsive documents within its possession, custody, or control. While Responding Party has asserted the foregoing specific objections as a reservation of rights, Responding Party is not currently withholding any information or documents on the basis of any asserted objections. Responding Party is also not currently aware of any responsive privileged communications, other than communications with its undersigned counsel of record, but if other privileged communications are discovered, Responding Party will provide a privilege log.

**REQUEST FOR PRODUCTION NO. 21 [68]:**

Documents sufficient to show the connection, if any, between HonorSociety [SIC] and HonorSociety [SIC] Foundation.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 21 [68]:**

Responding Party objects to this request as overbroad and unduly burdensome, and to the extent this request seeks production of material that is not relevant to any party's claim or defense nor proportional to the needs of this case. Responding Party further objects to this request to the extent it seeks documents that contain Responding Party's confidential and/or proprietary business information, including sensitive financial information, marketing plans and/or trade secrets. Responding Party further objects to this request to the extent that it seeks documents that are protected from disclosure by the attorney-client privilege and/or work-product doctrine.

65

Subject to and without waiver of the foregoing objections, Responding Party responds as follows: Responding Party is producing concurrently herewith non-privileged responsive documents within its possession, custody, or control.

**REQUEST FOR PRODUCTION NO. 22 [69]:**

Communications between You and HonorSociety [SIC] Foundation, concerning scholarships and/or any promotional activities of HonorSociety [SIC] that are related to the HonorSociety [SIC] Foundation.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 22 [69]:**

Responding Party objects to the term "promotional activities" as vague and ambiguous, as it is unclear what exactly is being sought. Responding Party objects to this request as overbroad and unduly burdensome, and to the extent this request seeks production of material that is not relevant to any party's claim or defense nor proportional to the needs of this case. Responding Party further objects to this request to the extent it seeks documents that contain Responding Party's confidential and/or proprietary business information, including sensitive financial information, marketing plans and/or trade secrets. Responding Party further objects to this request to the extent that it seeks documents that are protected from disclosure by the attorney-client privilege and/or work-product doctrine.

Subject to and without waiver of the foregoing objections, Responding Party responds as follows: Responding Party is producing concurrently herewith non-privileged responsive documents within its possession, custody, or control.

**REQUEST FOR PRODUCTION NO. 23 [70]:**

Documents, including Communications, relating to any money transfers to or from the HonorSociety [SIC] Foundation.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 23 [70]:**

Responding Party objects to the term "Documents, including Communications, relating to" as vague, ambiguous, overbroad, and unduly

burdensome, as it is unclear what exactly is being sought, and likewise, whether all such documents are relevant to any party's claim or defense, or reasonably proportional to the needs of this case. Responding Party further objects to this request to the extent it seeks documents that contain Responding Party's confidential and/or proprietary business information, including sensitive financial information, marketing plans and/or trade secrets. Responding Party further objects to this request to the extent that it seeks documents that are protected from disclosure by the attorney-client privilege and/or work-product doctrine.

Subject to and without waiver of the foregoing objections, Responding Party responds as follows: Responding Party is producing concurrently herewith non-privileged responsive documents within its possession, custody, or control.

**REQUEST FOR PRODUCTION NO. 24 [71]:**

Documents sufficient to show the connection, if any, between HonorSociety [SIC] and HonorSociety [SIC] Museum.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 24 [71]:**

Responding Party objects to this request as overbroad and unduly burdensome, and to the extent this request seeks production of material that is not relevant to any party's claim or defense nor proportional to the needs of this case. Responding Party further objects to this request to the extent it seeks documents that contain Responding Party's confidential and/or proprietary business information, including sensitive financial information, marketing plans and/or trade secrets. Responding Party further objects to this request to the extent that it seeks documents that are protected from disclosure by the attorney-client privilege and/or work-product doctrine.

Subject to and without waiver of the foregoing objections, Responding Party responds as follows: Responding Party has already searched its records and produced non-privileged responsive documents within its possession, custody, or

control.  While Responding Party has asserted the foregoing specific objections as a reservation of rights, Responding Party is not currently withholding any information or documents on the basis of any asserted objections.  Responding Party is also not currently aware of any responsive privileged communications, other than communications with its undersigned counsel of record, but if other privileged communications are discovered, Responding Party will provide a privilege log.

**REQUEST FOR PRODUCTION NO. 25 [72]:**

Documents, including Communications, concerning the creation and rationale for the Honor Society Museum.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 25 [72]:**

Responding Party objects to the terms "Documents, including Communications, concerning" and "rationale" as vague, ambiguous, overbroad, and unduly burdensome, as it is unclear what exactly is being sought, and likewise, whether all such documents are relevant to any party's claim or defense, or reasonably proportional to the needs of this case. Responding Party further objects to this request to the extent it seeks documents that contain Responding Party's confidential and/or proprietary business information, including sensitive financial information, marketing plans and/or trade secrets. Responding Party further objects to this request to the extent that it seeks documents that are protected from disclosure by the attorney-client privilege and/or work-product doctrine.

Subject to and without waiver of the foregoing objections, Responding Party responds as follows: Responding Party has already searched its records and produced non-privileged responsive documents within its possession, custody, or control.  While Responding Party has asserted the foregoing specific objections as a reservation of rights, Responding Party is not currently withholding any information or documents on the basis of any asserted objections.  Responding

Party is also not currently aware of any responsive privileged communications, other than communications with its undersigned counsel of record, but if other privileged communications are discovered, Responding Party will provide a privilege log.

**REQUEST FOR PRODUCTION NO. 26 [73]:**

Documents, including Communications, concerning the advertising, promotion and marketing of the HonorSociety [SIC] Museum, and the strategy around doing so.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 26 [73]:**

Responding Party objects to the term "Documents, including Communications, concerning" as vague, ambiguous, overbroad, and unduly burdensome, as it is unclear what exactly is being sought, and likewise, whether all such documents are relevant to any party's claim or defense, or reasonably proportional to the needs of this case. Responding Party further objects to this request to the extent it seeks documents that contain Responding Party's confidential and/or proprietary business information, including sensitive financial information, marketing plans and/or trade secrets. Responding Party further objects to this request to the extent that it seeks documents that are protected from disclosure by the attorney-client privilege and/or work-product doctrine.

**REQUEST FOR PRODUCTION NO. 27 [74]:**

Documents, including Communications, concerning any complaints to You concerning the content of the HonorSociety [SIC] Museum, including any website concerning the HonorSociety [SIC] Museum.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 27 [74]:**

Responding Party objects to the term "Documents, including Communications, concerning" as vague, ambiguous, overbroad, and unduly burdensome, as it is unclear what exactly is being sought, and likewise, whether all

such documents are relevant to any party's claim or defense, or reasonably proportional to the needs of this case. Responding Party further objects to this request to the extent that it seeks documents that are protected from disclosure by the attorney-client privilege and/or work-product doctrine.

Subject to and without waiver of the foregoing objections, Responding Party responds as follows: Responding Party has already searched its records and produced non-privileged responsive documents within its possession, custody, or control. While Responding Party has asserted the foregoing specific objections as a reservation of rights, Responding Party is not currently withholding any information or documents on the basis of any asserted objections. Responding Party is also not currently aware of any responsive privileged communications, other than communications with its undersigned counsel of record, but if other privileged communications are discovered, Responding Party will provide a privilege log.

**REQUEST FOR PRODUCTION NO. 28 [75]:**

Documents sufficient to show the person(s) involved in the creation and/or approval of any content included in the HonorSociety [SIC] Museum website.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 28 [75]:**

Responding Party objects to this request as overbroad and unduly burdensome, and to the extent this request seeks production of material that is not relevant to any party's claim or defense nor proportional to the needs of this case. Responding Party further objects to this request to the extent it seeks documents that contain Responding Party's confidential and/or proprietary business information, including sensitive financial information, marketing plans and/or trade secrets. Responding Party further objects to this request to the extent that it seeks documents that are protected from disclosure by the attorney-client privilege and/or work-product doctrine.

Subject to and without waiver of the foregoing objections, Responding Party responds as follows: Responding Party has already searched its records and produced non-privileged responsive documents within its possession, custody, or control. While Responding Party has asserted the foregoing specific objections as a reservation of rights, Responding Party is not currently withholding any information or documents on the basis of any asserted objections. Responding Party is also not currently aware of any responsive privileged communications, other than communications with its undersigned counsel of record, but if other privileged communications are discovered, Responding Party will provide a privilege log.

## REQUEST FOR PRODUCTION NO. 29 [76]:

Documents, including Communications, concerning the use of blue and gold on HonorSociety's [SIC] merchandise, including but not limited to identification of the person(s) involved in making the decision to use blue and gold on or in connection with merchandise.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 29 [76]:

Responding Party objects to the term "Documents, including Communications, concerning" as vague, ambiguous, overbroad, and unduly burdensome, as it is unclear what exactly is being sought, and likewise, whether all such documents are relevant to any party's claim or defense, or reasonably proportional to the needs of this case. Responding Party further objects to this request to the extent it seeks documents that contain Responding Party's confidential and/or proprietary business information, including sensitive financial information, marketing plans and/or trade secrets. Responding Party further objects to this request to the extent that it seeks documents that are protected from disclosure by the attorney-client privilege and/or work-product doctrine.

Subject to and without waiver of the foregoing objections, Responding Party responds as follows: Responding Party has already searched its records and produced non-privileged responsive documents within its possession, custody, or control.  While Responding Party has asserted the foregoing specific objections as a reservation of rights, Responding Party is not currently withholding any information or documents on the basis of any asserted objections.  Responding Party is also not currently aware of any responsive privileged communications, other than communications with its undersigned counsel of record, but if other privileged communications are discovered, Responding Party will provide a privilege log.

**REQUEST FOR PRODUCTION NO. 30 [77]:**

Communications with any supplier or potential supplier of merchandise, including but not limited to stoles and regalia, concerning either color scheme or design.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 30 [77]:**

Responding Party objects to this request as overbroad and unduly burdensome, and to the extent this request seeks production of material that is not relevant to any party's claim or defense nor proportional to the needs of this case. Responding Party further objects to this request to the extent it seeks documents that contain Responding Party's confidential and/or proprietary business information, including sensitive financial information, marketing plans and/or trade secrets.

Subject to and without waiver of the foregoing objections, Responding Party responds as follows: Responding Party has already searched its records and produced non-privileged responsive documents within its possession, custody, or control.  While Responding Party has asserted the foregoing specific objections as a reservation of rights, Responding Party is not currently withholding any

information or documents on the basis of any asserted objections.  Responding Party is also not currently aware of any responsive privileged communications, other than communications with its undersigned counsel of record, but if other privileged communications are discovered, Responding Party will provide a privilege log.

## REQUEST FOR PRODUCTION NO. 31 [79]:

Documents, including Communications, relating to design, marketing, promotion or advertising of the stoles, regalia or any other merchandise.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 31 [79]:

Responding Party objects to the term "Documents, including Communications, relating to" as vague, ambiguous, overbroad, and unduly burdensome, as it is unclear what exactly is being sought, and likewise, whether all such documents are relevant to any party's claim or defense, or reasonably proportional to the needs of this case. Responding Party further objects to this request to the extent it seeks documents that contain Responding Party's confidential and/or proprietary business information, including sensitive financial information, marketing plans and/or trade secrets. Responding Party further objects to this request to the extent that it seeks documents that are protected from disclosure by the attorney-client privilege and/or work-product doctrine.

Subject to and without waiver of the foregoing objections, Responding Party responds as follows: Responding Party has already searched its records and produced non-privileged responsive documents within its possession, custody, or control.  While Responding Party has asserted the foregoing specific objections as a reservation of rights, Responding Party is not currently withholding any information or documents on the basis of any asserted objections.  Responding Party is also not currently aware of any responsive privileged communications, other than communications with its undersigned counsel of record, but if other

privileged communications are discovered, Responding Party will provide a privilege log.

## REQUEST FOR PRODUCTION NO. 32 [80]:

Documents sufficient to identify all products offered on HonorSociety's [SIC] webstore since inception to the present.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 32 [80]:

Responding Party objects to this request as overbroad and unduly burdensome, and to the extent this request seeks production of material that is not relevant to any party's claim or defense nor proportional to the needs of this case. Responding Party further objects to this request to the extent that it seeks documents that are protected from disclosure by the attorney-client privilege and/or work-product doctrine.

Subject to and without waiver of the foregoing objections, Responding Party responds as follows: Responding Party has already searched its records and produced non-privileged responsive documents within its possession, custody, or control. While Responding Party has asserted the foregoing specific objections as a reservation of rights, Responding Party is not currently withholding any information or documents on the basis of any asserted objections. Responding Party is also not currently aware of any responsive privileged communications, other than communications with its undersigned counsel of record, but if other privileged communications are discovered, Responding Party will provide a privilege log.

## REQUEST FOR PRODUCTION NO. 33 [81]:

Documents sufficient to identify the person(s) involved in approving HonorSociety's [SIC] merchandise for sale at any time since inception of Your business.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 33 [81]:**

Responding Party objects to this request as overbroad and unduly burdensome, and to the extent this request seeks production of material that is not relevant to any party's claim or defense nor proportional to the needs of this case. Responding Party further objects to this request to the extent it seeks documents that contain Responding Party's confidential and/or proprietary business information, including sensitive financial information, marketing plans and/or trade secrets. Responding Party further objects to this request to the extent that it seeks documents that are protected from disclosure by the attorney-client privilege and/or work-product doctrine.

Subject to and without waiver of the foregoing objections, Responding Party responds as follows: Responding Party has already searched its records and produced non-privileged responsive documents within its possession, custody, or control. While Responding Party has asserted the foregoing specific objections as a reservation of rights, Responding Party is not currently withholding any information or documents on the basis of any asserted objections. Responding Party is also not currently aware of any responsive privileged communications, other than communications with its undersigned counsel of record, but if other privileged communications are discovered, Responding Party will provide a privilege log.

**REQUEST FOR PRODUCTION NO. 34 [82]:**

Documents, including Communications, relating to complaints made to HonorSociety [SIC] or to any third-party about HonorSociety [SIC] or any of its employees, including but not limited to complaints made by consumers, colleges, academic organizations, and any other third parties.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 34 [82]:**

Responding Party objects to the term "Documents, including Communications, relating to" as vague, ambiguous, overbroad, and unduly burdensome, as it is unclear what exactly is being sought, and likewise, whether all such documents are relevant to any party's claim or defense, or reasonably proportional to the needs of this case. Responding Party further objects to this request to the extent that it seeks documents that are protected from disclosure by the attorney-client privilege and/or work-product doctrine.

Subject to and without waiver of the foregoing objections, Responding Party responds as follows: Responding Party has already searched its records and produced non-privileged responsive documents within its possession, custody, or control.  While Responding Party has asserted the foregoing specific objections as a reservation of rights, Responding Party is not currently withholding any information or documents on the basis of any asserted objections.  Responding Party is also not currently aware of any responsive privileged communications, other than communications with its undersigned counsel of record, but if other privileged communications are discovered, Responding Party will provide a privilege log.

**REQUEST FOR PRODUCTION NO. 35 [83]:**

Documents, including Communications, relating to complaints made by consumers, colleges, academic organizations, and any other third parties concerning HonorSociety [SIC] or any of its employees.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 35 [83]:**

Responding Party objects to the term "Documents, including Communications, relating to" as vague, ambiguous, overbroad, and unduly burdensome, as it is unclear what exactly is being sought, and likewise, whether all such documents are relevant to any party's claim or defense, or reasonably

proportional to the needs of this case. Responding Party further objects to this request to the extent that it seeks documents that are protected from disclosure by the attorney-client privilege and/or work-product doctrine.

Subject to and without waiver of the foregoing objections, Responding Party responds as follows: Responding Party has already searched its records and produced non-privileged responsive documents within its possession, custody, or control. While Responding Party has asserted the foregoing specific objections as a reservation of rights, Responding Party is not currently withholding any information or documents on the basis of any asserted objections. Responding Party is also not currently aware of any responsive privileged communications, other than communications with its undersigned counsel of record, but if other privileged communications are discovered, Responding Party will provide a privilege log.

**REQUEST FOR PRODUCTION NO. 36 [84]:**

Documents, including Communications, related to any efforts by You to manage, control, repair, remediate, resolve or mitigate negative information or opinions concerning the reputation of HonorSociety [SIC], or any of its employees.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 36 [84]:**

Responding Party objects to the term "Documents, including Communications, related to" as vague, ambiguous, overbroad, and unduly burdensome, as it is unclear what exactly is being sought, and likewise, whether all such documents are relevant to any party's claim or defense, or reasonably proportional to the needs of this case. Responding Party further objects to this request to the extent it seeks documents that contain Responding Party's confidential and/or proprietary business information, including sensitive financial information, marketing plans and/or trade secrets. Responding Party further objects

to this request to the extent that it seeks documents that are protected from disclosure by the attorney-client privilege and/or work-product doctrine.

Subject to and without waiver of the foregoing objections, Responding Party responds as follows: Responding Party has already searched its records and produced non-privileged responsive documents within its possession, custody, or control.  While Responding Party has asserted the foregoing specific objections as a reservation of rights, Responding Party is not currently withholding any information or documents on the basis of any asserted objections.  Responding Party is also not currently aware of any responsive privileged communications, other than communications with its undersigned counsel of record, but if other privileged communications are discovered, Responding Party will provide a privilege log.

**REQUEST FOR PRODUCTION NO. 37 [85]:**

Documents sufficient to identify any complaints made about HonorSociety [SIC] or any of its employees that You had removed from public view.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 37 [85]:**

Responding Party objects to this request as overbroad and unduly burdensome, and to the extent this request seeks production of material that is not relevant to any party's claim or defense nor proportional to the needs of this case. Responding Party further objects to this request to the extent it seeks documents that contain Responding Party's confidential and/or proprietary business information, including sensitive financial information, marketing plans and/or trade secrets. Responding Party further objects to this request to the extent that it seeks documents that are protected from disclosure by the attorney-client privilege and/or work-product doctrine.

Subject to and without waiver of the foregoing objections, Responding Party responds as follows: Responding Party has already searched its records and

78

produced non-privileged responsive documents within its possession, custody, or control. While Responding Party has asserted the foregoing specific objections as a reservation of rights, Responding Party is not currently withholding any information or documents on the basis of any asserted objections. Responding Party is also not currently aware of any responsive privileged communications, other than communications with its undersigned counsel of record, but if other privileged communications are discovered, Responding Party will provide a privilege log.

**REQUEST FOR PRODUCTION NO. 38 [86]:**

Documents, including Communications, with any third-parties with whom You either engaged or considering [sic] engaging to manage, control, repair, remediate or mitigate negative information or opinions concerning the reputation of HonorSociety [SIC], or any of its employees.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 38 [86]:**

Responding Party objects to this request as overbroad and unduly burdensome, and to the extent this request seeks production of material that is not relevant to any party's claim or defense nor proportional to the needs of this case. Responding Party further objects to this request to the extent it seeks documents that contain Responding Party's confidential and/or proprietary business information, including sensitive financial information, marketing plans and/or trade secrets. Responding Party further objects to this request to the extent that it seeks documents that are protected from disclosure by the attorney-client privilege and/or work-product doctrine.

Subject to and without waiver of the foregoing objections, Responding Party responds as follows: Responding Party already produced responsive documents during jurisdictional discovery.

**REQUEST FOR PRODUCTION NO. 39 [87]:**

Documents, including Communications, concerning or relating to the Better Business Bureau.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 39 [87]:**

Responding Party objects to the term "Documents, including Communications, concerning or relating to" as vague, ambiguous, overbroad, and unduly burdensome, as it is unclear what exactly is being sought, and likewise, whether all such documents are relevant to any party's claim or defense, or reasonably proportional to the needs of this case. Responding Party further objects to this request to the extent that it seeks documents that are protected from disclosure by the attorney-client privilege and/or work-product doctrine.

Subject to and without waiver of the foregoing objections, Responding Party responds as follows: Responding Party has already searched its records and produced non-privileged responsive documents within its possession, custody, or control.  While Responding Party has asserted the foregoing specific objections as a reservation of rights, Responding Party is not currently withholding any information or documents on the basis of any asserted objections.  Responding Party is also not currently aware of any responsive privileged communications, other than communications with its undersigned counsel of record, but if other privileged communications are discovered, Responding Party will provide a privilege log.

**REQUEST FOR PRODUCTION NO. 40 [88-89]:**

Documents sufficient to identify any accounting firms or consultants hired by You since January 1, 2016.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 40 [88-89]:**

Responding Party objects to this request as compound as it seeks documents concerning two distinct topics, namely, documents sufficient to identify any (a)

accounting firms or (b) consultants hired by Responding Party since January 1, 2016. Responding Party responds to each discrete subpart of this Request as its own Request, as follows:

(a)    Documents sufficient to identify any accounting firms . . . hired by You since January 1, 2016.

Responding Party objects to this request as overbroad and unduly burdensome, and to the extent this request seeks production of material that is not relevant to any party's claim or defense nor proportional to the needs of this case. Responding Party further objects to this request to the extent it seeks documents that contain Responding Party's confidential and/or proprietary business information, including sensitive financial information, marketing plans and/or trade secrets. Responding Party further objects to this request to the extent that it seeks documents that are protected from disclosure by the attorney-client privilege and/or work-product doctrine.

Subject to and without waiver of the foregoing objections, Responding Party responds as follows: Responding Party has already searched its records and produced non-privileged responsive documents within its possession, custody, or control.  While Responding Party has asserted the foregoing specific objections as a reservation of rights, Responding Party is not currently withholding any information or documents on the basis of any asserted objections.  Responding Party is also not currently aware of any responsive privileged communications, other than communications with its undersigned counsel of record, but if other privileged communications are discovered, Responding Party will provide a privilege log.

(b)    <u>Documents sufficient to identify any . . . consultants hired by You since January 1, 2016.</u>

Responding Party objects to this request, and specifically to the term "consultants," as vague, ambiguous, overbroad, and unduly burdensome, as it is unclear what exactly is being sought, and likewise, whether all such documents are relevant to any party's claim or defense, or reasonably proportional to the needs of this case.  Responding Party further objects to this request to the extent it seeks documents that contain Responding Party's confidential and/or proprietary business information, including sensitive financial information, marketing plans and/or trade secrets. Responding Party further objects to this request to the extent that it seeks documents that are protected from disclosure by the attorney-client privilege and/or work-product doctrine.

Subject to and without waiver of the foregoing objections, and limiting the term "consultants" to financial consultants, Responding Party responds as follows: Responding Party has already searched its records and produced non-privileged responsive documents within its possession, custody, or control.    While Responding Party has asserted the foregoing specific objections as a reservation of rights, Responding Party is not currently withholding any information or documents on the basis of any asserted objections.  Responding Party is also not currently aware of any responsive privileged communications, other than communications with its undersigned counsel of record, but if other privileged communications are discovered, Responding Party will provide a privilege log.

**<u>REQUEST FOR PRODUCTION NO. 41 [90]:</u>**

Documents, including Communications, relating to any sourcing or purchase of leads or contact lists for prospective members.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 41 [90]:**

Responding Party objects to the term "Documents, including Communications, relating to" as vague, ambiguous, overbroad, and unduly burdensome, as it is unclear what exactly is being sought, and likewise, whether all such documents are relevant to any party's claim or defense, or reasonably proportional to the needs of this case. Responding Party further objects to this request to the extent it seeks documents that contain Responding Party's confidential and/or proprietary business information, including sensitive financial information, marketing plans and/or trade secrets. Responding Party further objects to this request to the extent that it seeks documents that are protected from disclosure by the attorney-client privilege and/or work-product doctrine.

Subject to and without waiver of the foregoing objections, Responding Party responds as follows: Responding Party has already searched its records and produced non-privileged responsive documents within its possession, custody, or control. While Responding Party has asserted the foregoing specific objections as a reservation of rights, Responding Party is not currently withholding any information or documents on the basis of any asserted objections. Responding Party is also not currently aware of any responsive privileged communications, other than communications with its undersigned counsel of record, but if other privileged communications are discovered, Responding Party will provide a privilege log.

**REQUEST FOR PRODUCTION NO. 42 [91]:**

Your audited (or unaudited if audited are not available) financial statements (including, without limitation, profit and loss statements, balance sheets and cash flow statements) and all attachments from January 1, 2016 to the present.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 42 [91]:**

Responding Party objects to this request as overbroad and unduly burdensome, and to the extent this request seeks production of material that is not relevant to any party's claim or defense nor proportional to the needs of this case. Responding Party further objects to this request to the extent it seeks documents that contain Responding Party's confidential and/or proprietary business information, including sensitive financial information, marketing plans and/or trade secrets.

Subject to and without waiver of the foregoing objections, Responding Party responds as follows: Responding Party has already searched its records and produced non-privileged responsive documents within its possession, custody, or control. While Responding Party has asserted the foregoing specific objections as a reservation of rights, Responding Party is not currently withholding any information or documents on the basis of any asserted objections. Responding Party is also not currently aware of any responsive privileged communications, other than communications with its undersigned counsel of record, but if other privileged communications are discovered, Responding Party will provide a privilege log.

**REQUEST FOR PRODUCTION NO. 43 [92]:**

Your federal and state tax returns, including K-1s, for tax years 2016 through present.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 43 [92]:**

Responding Party objects to this request as overbroad and unduly burdensome, and to the extent this request seeks production of material that is not relevant to any party's claim or defense nor proportional to the needs of this case. Responding Party further objects to this request to the extent it seeks documents that contain Responding Party's confidential and/or proprietary business

information, including sensitive financial information, marketing plans and/or trade secrets.

**REQUEST FOR PRODUCTION NO. 44 [93]:**

Documents, including Communications, relating to any Communications with the Internal Revenue Service or any other taxing authority.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 44 [93]:**

Responding Party objects to the term "Documents, including Communications, relating to" as vague, ambiguous, overbroad, and unduly burdensome, as it is unclear what exactly is being sought, and likewise, whether all such documents are relevant to any party's claim or defense, or reasonably proportional to the needs of this case. Responding Party further objects to this request to the extent it seeks documents that contain Responding Party's confidential and/or proprietary business information, including sensitive financial information, marketing plans and/or trade secrets. Responding Party further objects to this request to the extent that it seeks documents that are protected from disclosure by the attorney-client privilege and/or work-product doctrine. Responding Party further objects to this request on the grounds that it is not reasonably particularized as required by Federal Rule of Civil Procedure 34(b)(1)(A).

**REQUEST FOR PRODUCTION NO. 45 [94]:**

Detailed income statements and/or detailed profit and loss statements for HonorSociety [SIC] by month from January 1, 2016 to present. Statements should provide sufficient detail to identify specific line items or categories of operating expenses.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 45 [94]:**

Responding Party objects to this request as overbroad and unduly burdensome, and to the extent this request seeks production of material that is not

relevant to any party's claim or defense nor proportional to the needs of this case. Responding Party further objects to this request to the extent it seeks documents that contain Responding Party's confidential and/or proprietary business information, including sensitive financial information, marketing plans and/or trade secrets.

Subject to and without waiver of the foregoing objections, Responding Party responds as follows: Responding Party has already searched its records and produced non-privileged responsive documents within its possession, custody, or control. While Responding Party has asserted the foregoing specific objections as a reservation of rights, Responding Party is not currently withholding any information or documents on the basis of any asserted objections. Responding Party is also not currently aware of any responsive privileged communications, other than communications with its undersigned counsel of record, but if other privileged communications are discovered, Responding Party will provide a privilege log.

## REQUEST FOR PRODUCTION NO. 46 [95]:

Detailed income statements and/or detailed profit and loss statements at the lowest reporting level that includes Your membership sales, by month from January 1, 2016 to present. Statements should provide sufficient detail to identify specific line items or categories of operating expenses.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 46 [95]:

Responding Party objects to this request as overbroad and unduly burdensome, and to the extent this request seeks production of material that is not relevant to any party's claim or defense nor proportional to the needs of this case. Responding Party further objects to this request to the extent it seeks documents that contain Responding Party's confidential and/or proprietary business

information, including sensitive financial information, marketing plans and/or trade secrets.

Subject to and without waiver of the foregoing objections, Responding Party responds as follows: Responding Party has already searched its records and produced non-privileged responsive documents within its possession, custody, or control.  While Responding Party has asserted the foregoing specific objections as a reservation of rights, Responding Party is not currently withholding any information or documents on the basis of any asserted objections.  Responding Party is also not currently aware of any responsive privileged communications, other than communications with its undersigned counsel of record, but if other privileged communications are discovered, Responding Party will provide a privilege log.

## REQUEST FOR PRODUCTION NO. 47 [96]:

Detailed income statements and/or detailed profit and loss statements at the lowest reporting level that includes Your merchandise and regalia sales, by month from January 1, 2016 to present. Statements should provide sufficient detail to identify specific line items or categories of operating expenses.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 47 [96]:

Responding Party objects to this request as overbroad and unduly burdensome, and to the extent this request seeks production of material that is not relevant to any party's claim or defense nor proportional to the needs of this case. Responding Party further objects to this request to the extent it seeks documents that contain Responding Party's confidential and/or proprietary business information, including sensitive financial information, marketing plans and/or trade secrets.

Subject to and without waiver of the foregoing objections, Responding Party responds as follows: Responding Party has already searched its records and

produced non-privileged responsive documents within its possession, custody, or control. While Responding Party has asserted the foregoing specific objections as a reservation of rights, Responding Party is not currently withholding any information or documents on the basis of any asserted objections. Responding Party is also not currently aware of any responsive privileged communications, other than communications with its undersigned counsel of record, but if other privileged communications are discovered, Responding Party will provide a privilege log.

## REQUEST FOR PRODUCTION NO. 48 [97]:

Documents sufficient to show Your expenses to advertise, promote or market HonorSociety [SIC], by year, since January 1, 2016.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 48 [97]:

Responding Party objects to this request as overbroad and unduly burdensome, and to the extent this request seeks production of material that is not relevant to any party's claim or defense nor proportional to the needs of this case. Responding Party further objects to this request to the extent it seeks documents that contain Responding Party's confidential and/or proprietary business information, including sensitive financial information, marketing plans and/or trade secrets. Responding Party further objects to this request to the extent that it seeks documents that are protected from disclosure by the attorney-client privilege and/or work-product doctrine.

Subject to and without waiver of the foregoing objections, Responding Party responds as follows: Responding Party has already searched its records and produced non-privileged responsive documents within its possession, custody, or control. While Responding Party has asserted the foregoing specific objections as a reservation of rights, Responding Party is not currently withholding any information or documents on the basis of any asserted objections. Responding

Party is also not currently aware of any responsive privileged communications, other than communications with its undersigned counsel of record, but if other privileged communications are discovered, Responding Party will provide a privilege log.

## REQUEST FOR PRODUCTION NO. 49 [98]:

Documents that describe the transactions captured in each revenue or expense line item or category reflected on HonorSociety's [SIC] income statements and profit and loss statements.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 49 [98]:

Responding Party objects to this request as overbroad and unduly burdensome, and to the extent this request seeks production of material that is not relevant to any party's claim or defense nor proportional to the needs of this case. Responding Party further objects to this request to the extent it seeks documents that contain Responding Party's confidential and/or proprietary business information, including sensitive financial information, marketing plans and/or trade secrets.

Subject to and without waiver of the foregoing objections, Responding Party responds as follows: Responding Party has already searched its records and produced non-privileged responsive documents within its possession, custody, or control. While Responding Party has asserted the foregoing specific objections as a reservation of rights, Responding Party is not currently withholding any information or documents on the basis of any asserted objections. Responding Party is also not currently aware of any responsive privileged communications, other than communications with its undersigned counsel of record, but if other privileged communications are discovered, Responding Party will provide a privilege log.

**REQUEST FOR PRODUCTION NO. 50 [99]:**

Documents that identify particular HonorSociety [SIC] expense line items as fixed, variable, incremental, and/or marginal.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 50 [99]:**

Responding Party objects to this request as overbroad and unduly burdensome, and to the extent this request seeks production of material that is not relevant to any party's claim or defense nor proportional to the needs of this case. Responding Party further objects to this request to the extent it seeks documents that contain Responding Party's confidential and/or proprietary business information, including sensitive financial information, marketing plans and/or trade secrets.

**REQUEST FOR PRODUCTION NO. 51 [100]:**

Documents sufficient to show Your advertising budget and expenditures, in whole or in part, organized by year, since January 1, 2016.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 51 [100]:**

Responding Party objects to this request as overbroad and unduly burdensome, and to the extent this request seeks production of material that is not relevant to any party's claim or defense nor proportional to the needs of this case. Responding Party further objects to this request to the extent it seeks documents that contain Responding Party's confidential and/or proprietary business information, including sensitive financial information, marketing plans and/or trade secrets.

Subject to and without waiver of the foregoing objections, Responding Party responds as follows: Responding Party has already searched its records and produced non-privileged responsive documents within its possession, custody, or control. While Responding Party has asserted the foregoing specific objections as a reservation of rights, Responding Party is not currently withholding any

information or documents on the basis of any asserted objections.  Responding Party is also not currently aware of any responsive privileged communications, other than communications with its undersigned counsel of record, but if other privileged communications are discovered, Responding Party will provide a privilege log.

**REQUEST FOR PRODUCTION NO. 52 [101]:**

If You intend to present evidence of expenses to offset revenues for a profit calculation, provide those Documents evidencing those expenses.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 52 [101]:**

Responding Party objects to this request on the grounds that it exceeds the number of requests for production agreed upon by the parties and ordered by the Court in its Case Management Order, which "are limited to 100 succinct questions."  (Dkt. 59.)  Responding Party further objects to this request as overbroad and unduly burdensome, and to the extent this request seeks production of material that is not relevant to any party's claim or defense nor proportional to the needs of this case. Responding Party further objects to this request to the extent it seeks documents that contain Responding Party's confidential and/or proprietary business information, including sensitive financial information, marketing plans and/or trade secrets. Responding Party further objects to this request to the extent that it seeks documents that are protected from disclosure by the attorney-client privilege and/or work-product doctrine.

Subject to and without waiver of the foregoing objections, Responding Party responds as follows: Responding Party has already searched its records and produced non-privileged responsive documents within its possession, custody, or control.  While Responding Party has asserted the foregoing specific objections as a reservation of rights, Responding Party is not currently withholding any information or documents on the basis of any asserted objections.  Responding

Party is also not currently aware of any responsive privileged communications, other than communications with its undersigned counsel of record, but if other privileged communications are discovered, Responding Party will provide a privilege log.

## REQUEST FOR PRODUCTION NO. 53 [102-105]:

Documents sufficient to show the total invitations to new prospective new members, total accepted invitations by new members, total members declining renewal or otherwise asking for termination of membership and total members terminating their membership, by year, since January 1, 2016.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 53 [102-105]:

Responding Party objects to this request on the grounds that it exceeds the number of requests for production agreed upon by the parties and ordered by the Court in its Case Management Order, which "are limited to 100 succinct questions." (Dkt. 59.) Responding Party further objects to this request as compound as it seeks documents concerning four distinct topics, namely, (a) the total invitations to new prospective new members; (b) total accepted invitations by new members; (c) total members declining renewal or otherwise asking for termination of membership; and (d) total members terminating their membership. Responding Party responds to each discrete subpart of this Request as its own Request, as follows:

(a)     Documents showing the total invitations to new prospective new members.

Responding Party objects to this request on the grounds that it exceeds the number of requests for production agreed upon by the parties and ordered by the Court in its Case Management Order, which "are limited to 100 succinct questions." (Dkt. 59.) Responding Party further objects to this request as overbroad and unduly burdensome, and to the extent this request seeks production

of material that is not relevant to any party's claim or defense nor proportional to the needs of this case. Responding Party further objects to this request to the extent it seeks documents that contain Responding Party's confidential and/or proprietary business information, including sensitive financial information, marketing plans and/or trade secrets. Responding Party further objects to this request to the extent that it seeks documents that are protected from disclosure by the attorney-client privilege and/or work-product doctrine.

Subject to and without waiver of the foregoing objections, Responding Party responds as follows: Responding Party has already searched its records and produced non-privileged responsive documents within its possession, custody, or control. While Responding Party has asserted the foregoing specific objections as a reservation of rights, Responding Party is not currently withholding any information or documents on the basis of any asserted objections. Responding Party is also not currently aware of any responsive privileged communications, other than communications with its undersigned counsel of record, but if other privileged communications are discovered, Responding Party will provide a privilege log.

(b)    Documents showing the total accepted invitations by new members.

Responding Party objects to this request on the grounds that it exceeds the number of requests for production agreed upon by the parties and ordered by the Court in its Case Management Order, which "are limited to 100 succinct questions." (Dkt. 59.) Responding Party further objects to this request as overbroad and unduly burdensome, and to the extent this request seeks production of material that is not relevant to any party's claim or defense nor proportional to the needs of this case. Responding Party further objects to this request to the extent it seeks documents that contain Responding Party's confidential and/or proprietary business information, including sensitive financial information, marketing plans

and/or trade secrets. Responding Party further objects to this request to the extent that it seeks documents that are protected from disclosure by the attorney-client privilege and/or work-product doctrine.

Subject to and without waiver of the foregoing objections, Responding Party responds as follows: Responding Party has already searched its records and produced non-privileged responsive documents within its possession, custody, or control. While Responding Party has asserted the foregoing specific objections as a reservation of rights, Responding Party is not currently withholding any information or documents on the basis of any asserted objections. Responding Party is also not currently aware of any responsive privileged communications, other than communications with its undersigned counsel of record, but if other privileged communications are discovered, Responding Party will provide a privilege log.

(c)    Documents showing total members declining renewal or otherwise asking for termination of membership.

Responding Party objects to this request on the grounds that it exceeds the number of requests for production agreed upon by the parties and ordered by the Court in its Case Management Order, which "are limited to 100 succinct questions." (Dkt. 59.) Responding Party further objects to this request as overbroad and unduly burdensome, and to the extent this request seeks production of material that is not relevant to any party's claim or defense nor proportional to the needs of this case. Responding Party further objects to this request to the extent it seeks documents that contain Responding Party's confidential and/or proprietary business information, including sensitive financial information, marketing plans and/or trade secrets. Responding Party further objects to this request to the extent that it seeks documents that are protected from disclosure by the attorney-client privilege and/or work-product doctrine.

Subject to and without waiver of the foregoing objections, Responding Party responds as follows: Responding Party has already searched its records and produced non-privileged responsive documents within its possession, custody, or control.  While Responding Party has asserted the foregoing specific objections as a reservation of rights, Responding Party is not currently withholding any information or documents on the basis of any asserted objections.  Responding Party is also not currently aware of any responsive privileged communications, other than communications with its undersigned counsel of record, but if other privileged communications are discovered, Responding Party will provide a privilege log.

(d)    Documents showing total members terminating their membership.

Responding Party objects to this request on the grounds that it exceeds the number of requests for production agreed upon by the parties and ordered by the Court in its Case Management Order, which "are limited to 100 succinct questions."  (Dkt. 59.)   Responding Party further objects to this request as overbroad and unduly burdensome, and to the extent this request seeks production of material that is not relevant to any party's claim or defense nor proportional to the needs of this case. Responding Party further objects to this request to the extent it seeks documents that contain Responding Party's confidential and/or proprietary business information, including sensitive financial information, marketing plans and/or trade secrets. Responding Party further objects to this request to the extent that it seeks documents that are protected from disclosure by the attorney-client privilege and/or work-product doctrine.

Subject to and without waiver of the foregoing objections, Responding Party responds as follows: Responding Party has already searched its records and produced non-privileged responsive documents within its possession, custody, or control.  While Responding Party has asserted the foregoing specific objections as

a reservation of rights, Responding Party is not currently withholding any information or documents on the basis of any asserted objections. Responding Party is also not currently aware of any responsive privileged communications, other than communications with its undersigned counsel of record, but if other privileged communications are discovered, Responding Party will provide a privilege log.

**REQUEST FOR PRODUCTION NO. 54 [106]:**

Documents sufficient to show the number of HonorSociety [SIC] memberships sold each year from January 1, 2016 through the present, by year.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 54 [106]:**

Responding Party objects to this request on the grounds that it exceeds the number of requests for production agreed upon by the parties and ordered by the Court in its Case Management Order, which "are limited to 100 succinct questions." (Dkt. 59.) Responding Party further objects to this request as overbroad and unduly burdensome, and to the extent this request seeks production of material that is not relevant to any party's claim or defense nor proportional to the needs of this case. Responding Party further objects to this request to the extent it seeks documents that contain Responding Party's confidential and/or proprietary business information, including sensitive financial information, marketing plans and/or trade secrets. Responding Party further objects to this request to the extent that it seeks documents that are protected from disclosure by the attorney-client privilege and/or work-product doctrine.

Subject to and without waiver of the foregoing objections, Responding Party responds as follows: Responding Party has already searched its records and produced non-privileged responsive documents within its possession, custody, or control. While Responding Party has asserted the foregoing specific objections as a reservation of rights, Responding Party is not currently withholding any

information or documents on the basis of any asserted objections. Responding Party is also not currently aware of any responsive privileged communications, other than communications with its undersigned counsel of record, but if other privileged communications are discovered, Responding Party will provide a privilege log.

**REQUEST FOR PRODUCTION NO. 55 [107]:**

Documents sufficient to show the number of HonorSociety [SIC] memberships cancelled each year from January 1, 2016 through the present, by year.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 55 [107]:**

Responding Party objects to this request on the grounds that it exceeds the number of requests for production agreed upon by the parties and ordered by the Court in its Case Management Order, which "are limited to 100 succinct questions." (Dkt. 59.) Responding Party further objects to this request as overbroad and unduly burdensome, and to the extent this request seeks production of material that is not relevant to any party's claim or defense nor proportional to the needs of this case. Responding Party further objects to this request to the extent it seeks documents that contain Responding Party's confidential and/or proprietary business information, including sensitive financial information, marketing plans and/or trade secrets. Responding Party further objects to this request to the extent that it seeks documents that are protected from disclosure by the attorney-client privilege and/or work-product doctrine.

Subject to and without waiver of the foregoing objections, Responding Party responds as follows: Responding Party has already searched its records and produced non-privileged responsive documents within its possession, custody, or control. While Responding Party has asserted the foregoing specific objections as a reservation of rights, Responding Party is not currently withholding any

information or documents on the basis of any asserted objections. Responding Party is also not currently aware of any responsive privileged communications, other than communications with its undersigned counsel of record, but if other privileged communications are discovered, Responding Party will provide a privilege log.

## REQUEST FOR PRODUCTION NO. 56 [108]:

Documents sufficient to identify any customer refunds (see, e.g., HS_007465).

## RESPONSE TO REQUEST FOR PRODUCTION NO. 56 [108]:

Responding Party objects to this request on the grounds that it exceeds the number of requests for production agreed upon by the parties and ordered by the Court in its Case Management Order, which "are limited to 100 succinct questions." (Dkt. 59.) Responding Party further objects to the term "customer refunds" as vague, ambiguous, overbroad, and unduly burdensome, as it is unclear what "customers" or "refunds" refers to, or what exactly is being sought, and likewise, whether all such documents are relevant to any party's claim or defense, or reasonably proportional to the needs of this case. Responding Party objects to this request as overbroad and unduly burdensome, and to the extent this request seeks production of material that is not relevant to any party's claim or defense nor proportional to the needs of this case. Responding Party further objects to this request to the extent it seeks documents that contain Responding Party's confidential and/or proprietary business information, including sensitive financial information, marketing plans and/or trade secrets. Responding Party further objects to this request to the extent that it seeks documents that are protected from disclosure by the attorney-client privilege and/or work-product doctrine.

Subject to and without waiver of the foregoing objections, Responding Party responds as follows: Responding Party has already searched its records and

produced non-privileged responsive documents within its possession, custody, or control. While Responding Party has asserted the foregoing specific objections as a reservation of rights, Responding Party is not currently withholding any information or documents on the basis of any asserted objections. Responding Party is also not currently aware of any responsive privileged communications, other than communications with its undersigned counsel of record, but if other privileged communications are discovered, Responding Party will provide a privilege log.

## REQUEST FOR PRODUCTION NO. 57 [109]:

Documents, including Communications, containing any reference by anyone employed by You, anyone within Your organization, or any third-party, that the colors blue and gold are or are not associated with PTK.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 57 [109]:

Responding Party objects to this request on the grounds that it exceeds the number of requests for production agreed upon by the parties and ordered by the Court in its Case Management Order, which "are limited to 100 succinct questions." (Dkt. 59.) Responding Party further objects to this request to the extent that it seeks documents that are protected from disclosure by the attorney-client privilege and/or work-product doctrine.

Subject to and without waiver of the foregoing objections, Responding Party responds as follows: Responding Party has already searched its records and produced non-privileged responsive documents within its possession, custody, or control. While Responding Party has asserted the foregoing specific objections as a reservation of rights, Responding Party is not currently withholding any information or documents on the basis of any asserted objections. Responding Party is also not currently aware of any responsive privileged communications, other than communications with its undersigned counsel of record, but if other

privileged communications are discovered, Responding Party will provide a privilege log.

## REQUEST FOR PRODUCTION NO. 58 [110]:

Documents, including Communications, relating to confusion, or lack thereof, between PTK and HonorSociety [SIC], by any third-party.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 58 [110]:

Responding Party objects to this request on the grounds that it exceeds the number of requests for production agreed upon by the parties and ordered by the Court in its Case Management Order, which "are limited to 100 succinct questions." (Dkt. 59.) Responding Party further objects to the term "Documents, including Communications, relating to" as vague, ambiguous, overbroad, and unduly burdensome, as it is unclear what exactly is being sought, and likewise, whether all such documents are relevant to any party's claim or defense, or reasonably proportional to the needs of this case. Responding Party further objects to this request to the extent that it seeks documents that are protected from disclosure by the attorney-client privilege and/or work-product doctrine. Responding Party further objects to this request to the extent the records sought are already within the possession, custody or control of Propounding Party.

Subject to and without waiver of the foregoing objections, Responding Party responds as follows: Responding Party has already searched its records and produced non-privileged responsive documents within its possession, custody, or control. While Responding Party has asserted the foregoing specific objections as a reservation of rights, Responding Party is not currently withholding any information or documents on the basis of any asserted objections. Responding Party is also not currently aware of any responsive privileged communications, other than communications with its undersigned counsel of record, but if other

privileged communications are discovered, Responding Party will provide a privilege log.

## REQUEST FOR PRODUCTION NO. 59 [111]:

Documents, including Communications, sufficient to show the identity of every person that has stated they joined Your organization thinking they were joining PTK.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 59 [111]:

Responding Party objects to this request on the grounds that it exceeds the number of requests for production agreed upon by the parties and ordered by the Court in its Case Management Order, which "are limited to 100 succinct questions." (Dkt. 59.) Responding Party further objects to this request to the extent that it seeks documents that are protected from disclosure by the attorney-client privilege and/or work-product doctrine. Responding Party further objects to this request to the extent the information sought is already within the possession, custody or control of Propounding Party.

Subject to and without waiver of the foregoing objections, Responding Party responds as follows: Responding Party has already searched its records and produced non-privileged responsive documents within its possession, custody, or control. While Responding Party has asserted the foregoing specific objections as a reservation of rights, Responding Party is not currently withholding any information or documents on the basis of any asserted objections. Responding Party is also not currently aware of any responsive privileged communications, other than communications with its undersigned counsel of record, but if other privileged communications are discovered, Responding Party will provide a privilege log.

## REQUEST FOR PRODUCTION NO. 60 [112]:

Documents, including Communications, relating to any college or university

administrator that has indicated confusion on the part of their students between PTK and HonorSociety [SIC].

**RESPONSE TO REQUEST FOR PRODUCTION NO. 60 [112]:**

Responding Party objects to this request on the grounds that it exceeds the number of requests for production agreed upon by the parties and ordered by the Court in its Case Management Order, which "are limited to 100 succinct questions." (Dkt. 59.) Responding Party further objects to the term "Documents, including Communications, relating to" as vague, ambiguous, overbroad, and unduly burdensome, as it is unclear what exactly is being sought, and likewise, whether all such documents are relevant to any party's claim or defense, or reasonably proportional to the needs of this case. Responding Party further objects to this request to the extent that it seeks documents that are protected from disclosure by the attorney-client privilege and/or work-product doctrine. Responding Party further objects to this request to the extent the records sought are already within the possession, custody or control of Propounding Party.

Subject to and without waiver of the foregoing objections, Responding Party responds as follows: Responding Party has already searched its records and produced non-privileged responsive documents within its possession, custody, or control. While Responding Party has asserted the foregoing specific objections as a reservation of rights, Responding Party is not currently withholding any information or documents on the basis of any asserted objections. Responding Party is also not currently aware of any responsive privileged communications, other than communications with its undersigned counsel of record, but if other privileged communications are discovered, Responding Party will provide a privilege log.

**REQUEST FOR PRODUCTION NO. 61 [113]:**

Documents, including Communications, relating to Your defenses and

affirmative defenses asserted in this matter.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 61 [113]:**

Responding Party objects to this request on the grounds that it exceeds the number of requests for production agreed upon by the parties and ordered by the Court in its Case Management Order, which "are limited to 100 succinct questions." (Dkt. 59.) Responding Party further objects to the term "Documents, including Communications, relating to" as vague, ambiguous, overbroad, and unduly burdensome, as it is unclear what exactly is being sought, and likewise, whether all such documents are relevant to any party's claim or defense, or reasonably proportional to the needs of this case. Responding Party further objects to this request to the extent it seeks documents that contain Responding Party's confidential and/or proprietary business information, including sensitive financial information, marketing plans and/or trade secrets. Responding Party further objects to this request to the extent that it seeks documents that are protected from disclosure by the attorney-client privilege and/or work-product doctrine. Responding Party further objects to this request on the grounds that it is not reasonably particularized as required by Federal Rule of Civil Procedure 34(b)(1)(A).

Subject to and without waiver of the foregoing objections, Responding Party responds as follows: Responding Party has already searched its records and produced non-privileged responsive documents within its possession, custody, or control. While Responding Party has asserted the foregoing specific objections as a reservation of rights, Responding Party is not currently withholding any information or documents on the basis of any asserted objections. Responding Party is also not currently aware of any responsive privileged communications, other than communications with its undersigned counsel of record, but if other

privileged communications are discovered, Responding Party will provide a privilege log.

## REQUEST FOR PRODUCTION NO. 62 [114]:

Documents relating to Your counterclaims in this Litigation.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 62 [114]:

Responding Party objects to this request on the grounds that it exceeds the number of requests for production agreed upon by the parties and ordered by the Court in its Case Management Order, which "are limited to 100 succinct questions." (Dkt. 59.) Responding Party further objects to the term "Documents relating to" as vague, ambiguous, overbroad, and unduly burdensome, as it is unclear what exactly is being sought, and likewise, whether all such documents are relevant to any party's claim or defense, or reasonably proportional to the needs of this case. Responding Party further objects to this request to the extent it seeks documents that contain Responding Party's confidential and/or proprietary business information, including sensitive financial information, marketing plans and/or trade secrets. Responding Party further objects to this request to the extent that it seeks documents that are protected from disclosure by the attorney-client privilege and/or work-product doctrine. Responding Party further objects to this request on the grounds that it is not reasonably particularized as required by Federal Rule of Civil Procedure 34(b)(1)(A).

Subject to and without waiver of the foregoing objections, Responding Party responds as follows: Responding Party has already searched its records and produced non-privileged responsive documents within its possession, custody, or control. While Responding Party has asserted the foregoing specific objections as a reservation of rights, Responding Party is not currently withholding any information or documents on the basis of any asserted objections. Responding Party is also not currently aware of any responsive privileged communications,

other than communications with its undersigned counsel of record, but if other privileged communications are discovered, Responding Party will provide a privilege log.

**REQUEST FOR PRODUCTION NO. 63 [115-117]:**

Documents, including Communications, relating to any market studies in Your possession related to any of: (a) Your business; (b) PTK; or (c) any other honor society.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 63 [115-117]:**

Responding Party objects to this request on the grounds that it exceeds the number of requests for production agreed upon by the parties and ordered by the Court in its Case Management Order, which "are limited to 100 succinct questions." (Dkt. 59.) Responding Party further objects to this request as compound as it seeks documents concerning three distinct topics, namely, market studies in Responding Party's possession related to (a) Responding Party's business; (b) PTK, or (c) any other honor society. Responding Party responds to each discrete subpart of this Request as its own Request, as follows:

(a)    Market studies in Responding Party's possession related to Responding Party's business.

Responding Party objects to this request on the grounds that it exceeds the number of requests for production agreed upon by the parties and ordered by the Court in its Case Management Order, which "are limited to 100 succinct questions." (Dkt. 59.) Responding Party further objects to the term "Documents, including Communications, relating to" as vague, ambiguous, overbroad, and unduly burdensome, as it is unclear what exactly is being sought, and likewise, whether all such documents are relevant to any party's claim or defense, or reasonably proportional to the needs of this case. Responding Party further objects to this request to the extent it seeks documents that contain Responding Party's

confidential and/or proprietary business information, including sensitive financial information, marketing plans and/or trade secrets. Responding Party further objects to this request to the extent that it seeks documents that are protected from disclosure by the attorney-client privilege and/or work-product doctrine. Responding Party further objects to the term "market studies" as vague and ambiguous.

Subject to and without waiver of the foregoing objections, Responding Party responds as follows: Responding Party is unable to comply with this request because no such documents exist or have ever existed.

(b)    Market studies in Responding Party's possession related to PTK.

Responding Party objects to this request on the grounds that it exceeds the number of requests for production agreed upon by the parties and ordered by the Court in its Case Management Order, which "are limited to 100 succinct questions." (Dkt. 59.)  Responding Party further objects to the term "Documents, including Communications, relating to" as vague, ambiguous, overbroad, and unduly burdensome, as it is unclear what exactly is being sought, and likewise, whether all such documents are relevant to any party's claim or defense, or reasonably proportional to the needs of this case. Responding Party further objects to this request to the extent it seeks documents that contain Responding Party's confidential and/or proprietary business information, including sensitive financial information, marketing plans and/or trade secrets. Responding Party further objects to this request to the extent that it seeks documents that are protected from disclosure by the attorney-client privilege and/or work-product doctrine. Responding Party further objects to the term "market studies" as vague and ambiguous.

106

Subject to and without waiver of the foregoing objections, Responding Party responds as follows: Responding Party is unable to comply with this request because no such documents exist or have ever existed.

      (c)    <u>Market studies in Responding Party's possession related to any other honor society.</u>

Responding Party objects to this request on the grounds that it exceeds the number of requests for production agreed upon by the parties and ordered by the Court in its Case Management Order, which "are limited to 100 succinct questions." (Dkt. 59.) Responding Party further objects to the term "Documents, including Communications, relating to" as vague, ambiguous, overbroad, and unduly burdensome, as it is unclear what exactly is being sought, and likewise, whether all such documents are relevant to any party's claim or defense, or reasonably proportional to the needs of this case. Responding Party further objects to this request to the extent it seeks documents that contain Responding Party's confidential and/or proprietary business information, including sensitive financial information, marketing plans and/or trade secrets. Responding Party further objects to this request to the extent that it seeks documents that are protected from disclosure by the attorney-client privilege and/or work-product doctrine. Responding Party further objects to the term "market studies" as vague and ambiguous.

Subject to and without waiver of the foregoing objections, Responding Party responds as follows: Responding Party is unable to comply with this request because no such documents exist or have ever existed.

## REQUEST FOR PRODUCTION NO. 64 [118]:

Each Document provided to, generated by, considered by, reviewed by, or received by any person You intend to call as an expert to testify at a trial of this matter, including but not limited to (a) any and all curricular vitae and/or resumes

for the expert, (b) reports prepared by the expert in connection with the instant litigation, (c) correspondence between You and the expert, (d) and each and every published treatise, article, periodical, journal, pamphlet, research study, or other Document or publication considered or reviewed by the expert in connection with his or her forming an opinion as to the issues presented in the instant litigation.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 64 [118]:

Responding Party objects to this request on the grounds that it exceeds the number of requests for production agreed upon by the parties and ordered by the Court in its Case Management Order, which "are limited to 100 succinct questions." (Dkt. 59.) Responding Party further objects to this request as overbroad and unduly burdensome, and to the extent this request seeks production of material that is not relevant to any party's claim or defense nor proportional to the needs of this case. Responding Party further objects to this request to the extent it seeks documents that contain Responding Party's confidential and/or proprietary business information, including sensitive financial information, marketing plans and/or trade secrets. Responding Party further objects to this request to the extent that it seeks documents that are protected from disclosure by the attorney-client privilege and/or work-product doctrine. Furthermore, Responding Party objects to this Request on the grounds that it is premature in that it seeks information that is the subject of expert opinion as provided by Fed. R. Civ. Proc. 26(a)(2)(D) and this Court's case management order.

## REQUEST FOR PRODUCTION NO. 65 [119]:

Documents, including Communications, relating to any expert opinion, report, or study related to the use of the colors blue and gold in connection with academic organizations.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 65 [119]:**

Responding Party objects to this request on the grounds that it exceeds the number of requests for production agreed upon by the parties and ordered by the Court in its Case Management Order, which "are limited to 100 succinct questions." (Dkt. 59.) Responding Party further objects to the term "Documents, including Communications, relating to" as vague, ambiguous, overbroad, and unduly burdensome, as it is unclear what exactly is being sought, and likewise, whether all such documents are relevant to any party's claim or defense, or reasonably proportional to the needs of this case. Responding Party further objects to this request to the extent it seeks documents that contain Responding Party's confidential and/or proprietary business information, including sensitive financial information, marketing plans and/or trade secrets. Responding Party further objects to this request to the extent that it seeks documents that are protected from disclosure by the attorney-client privilege and/or work-product doctrine. Furthermore, Responding Party objects to this Request on the grounds that it is premature in that it seeks information that is the subject of expert opinion as provided by Fed. R. Civ. Proc. 26(a)(2)(D) and this Court's case management order.

**REQUEST FOR PRODUCTION NO. 66 [120]:**

Documents You intend to rely on at any hearing, deposition or trial in this matter.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 66 [120]:**

Responding Party objects to this request on the grounds that it exceeds the number of requests for production agreed upon by the parties and ordered by the Court in its Case Management Order, which "are limited to 100 succinct questions." (Dkt. 59.) Responding Party further objects to this request to the extent it seeks documents that contain Responding Party's confidential and/or

proprietary business information, including sensitive financial information, marketing plans and/or trade secrets. Responding Party further objects to this request to the extent that it seeks documents that are protected from disclosure by the attorney-client privilege and/or work-product doctrine. Furthermore, Responding Party objects to this Request as premature to the extent it seeks information that is the subject of expert opinion as provided by Fed. R. Civ. Proc. 26(a)(2)(D) and this Court's case management order.

Subject to and without waiver of the foregoing objections, Responding Party responds as follows: Responding Party has already searched its records and produced non-privileged responsive documents within its possession, custody, or control. While Responding Party has asserted the foregoing specific objections as a reservation of rights, Responding Party is not currently withholding any information or documents on the basis of any asserted objections. Responding Party is also not currently aware of any responsive privileged communications, other than communications with its undersigned counsel of record, but if other privileged communications are discovered, Responding Party will provide a privilege log.

Respectfully submitted,

Dated: November 20, 2023

*/s/ Michael A. Bernet*

Daniel A. Rozansky – PHV
Michael A. Bernet – PHV
STUBBS ALDERTON & MARKILES, LLP
15260 Ventura Blvd., 20th Floor
Sherman Oaks, California 91403
Tel: (818) 444-4500
E-mail: drozansky@stubbsalderton.com
E-mail: mbernet@stubbsalderton.com

## <u>Certificate of Service</u>

I hereby certify that on November 20, 2023, a copy of the foregoing was served via email upon the following counsel:

Jonathan G. Polak (Pro Hac Vice)
J. Mitchell Tanner, (Pro Hac Vice)
TAFT STETTINIUS & HOLLISTER LLP
One Indiana Square, Suite 3500 Indianapolis, IN 46204-2023
(317) 713-3500 – phone
(317) 713-3699 – fax
jpolak@taftlaw.com
mtanner@taftlaw.com

Rachel Smoot (Pro Hac Vice)
TAFT STETTINIUS & HOLLISTER LLP
41 S. High Street, Suite 1800
Columbus, OH 43215
(614) 221-2838 – phone
(614) 221-2007 – fax
rsmoot@taftlaw.com

Michael B. Wallace, MSB # 6904
WISE CARTER CHILD & CARAWAY,
P.A. Post Office Box 651
Jackson, Mississippi 39205
Phone 601-968-5500

*Counsel for Plaintiff*

*/s/ Michael A. Bernet*
_____
Michael Bernet

# EXHIBIT 9

## United States District Court

## Southern District of Mississippi

## Jackson Division

| | |
|---|---|
| PHI THETA KAPPA HONOR SOCIETY, <br><br> Plaintiff, <br><br> v. <br><br> HONORSOCIETY.ORG, INC., and MICHAEL MORADIAN, <br><br> Defendants. | Civil Action No. 3:22-cv-208-CWR-FKB <br><br> **DEFENDANT HONORSOCIETY.ORG, INC.'S SECOND AMENDED RESPONSE TO THIRD-PARTY DEFENDANT'S FIRST SET OF REQUESTS FOR PRODUCTION** |

**PROPOUNDING PARTY:**   **LYNN TINCHER-LADNER**

**RESPONDING PARTY:**   **HONORSOCIETY.ORG, INC.**

**SET NO.:**   **ONE (1)**

Defendant HONORSOCIETY.ORG, INC. ("Honor Society" or "Responding Party") hereby provides its Second Amended Response to Third-Party Defendant LYNN TINCHER-LADNER'S ("Tincher-Ladner" or "Propounding Party") First Set of Requests for Production of Documents ("Requests"), as follows:

### PRELIMINARY STATEMENT

It should be noted that this Responding Party has not completed its discovery in this action and has not fully completed its preparation for trial. The answers contained in these responses are based only on the information and documents which are presently available and specifically known to this Responding Party and disclose only those contentions which presently are apparent to this Responding Party.

1

Additionally, further discovery, independent investigation, legal research, and analysis may supply additional facts, add meaning to known facts, and establish entirely new factual conclusions and legal contentions, all of which may lead to substantial additions to, changes in variations from the contentions set forth herein.

According, these responses are given without prejudice to Responding Party's right to produce evidence of subsequently discovered facts, of which this Responding Party may later recall. Responding Party accordingly reserves the right to change any and all answers herein as additional facts and additional analysis are made, legal research is completed, and contentions are made.

These answers and/or documents supplied in this set of responses are provided in a good faith effort to supply as much factual information and as much specification of legal contentions as is presently known, but should in no way prejudice this Responding Party in relation to further discovery, research and analysis and producing additional information at time of trial.

These introductory comments shall apply to each and every answer given herein, and shall be incorporated by reference as though fully set forth in each and every response appearing in the following pages.

## GENERAL OBJECTIONS

Responding Party responds to each of the Requests subject to the following general objections (the "General Objections"). These objections form a part of and are specifically incorporated into each of the Responses and Objections to Propounding Party's Requests, even though they may not be specifically referred to in each and every response to each request. Failure to specifically refer to any of these General Objections in any specific response should not be construed as a waiver of same.

1.    Responding Party objects generally to the Requests to the extent they potentially seek information that is protected from compelled disclosure by the

attorney/client privilege, the attorney work-product doctrine, or any other applicable right, privilege, or doctrine.

2.     Responding Party objects generally to the Requests to the extent that they seek trade secrets, confidential, proprietary, sensitive, or financial information that is protected from disclosure by any applicable state or federal Constitution, statute, and/or case law that establishes a right to privacy for either Responding Party or any third party.

3.     Responding Party objects generally to the Requests to the extent that the information requested is irrelevant, outside the scope of the issues raised in the operative pleadings, and/or not reasonably calculated to lead to the discovery of admissible evidence.

4.     Responding Party objects generally to the Requests to the extent that the information requested and the burden of supplying it is not proportional to the needs of the case, including without limitation because the Requests are unclear or overbroad in their potential scope, and/or susceptible to more than one meaning, and to the extent these Requests seek information that is not at issue in this action.

5.     Responding Party further objects to each Request to the extent it is not proportional to the needs of the case in light of the cost necessary to investigate as weighed against Propounding Party's need for the information. To the extent that responding to these Requests will be extraordinarily expensive for Responding Party, Responding Party will be specifically requesting that Propounding Party reimburse Responding Party for appropriate costs, as may be allowed under the Federal Rules of Civil Procedure and any other applicable statute or case law.

6.     Responding Party objects generally to the Requests to the extent that they seek expert information, the production of which is governed by the Federal Rules of Civil Procedure. Responding Party will provide or identify such expert documents as required by the Federal Rules of Civil Procedure at the times at which

3

the Court has directed or may direct.

7.      Responding Party objects generally to the Requests to the extent that they either singularly or collectively are unduly burdensome, oppressive, and/or harassing.

8.      Responding Party objects generally to the Requests to the extent that they do not state with reasonable particularity the information requested.

9.      Responding Party objects generally to the Requests to the extent that they seek information that is outside of Responding Party's possession, custody or control.

10.     Responding Party objects generally to the Requests to the extent that Propounding Party has equal and/or similar access to the requested information, and to the extent that such information is publicly available and/or already within Propounding Party's possession, custody or control, on the grounds that such Requests are unduly burdensome, oppressive and/or harassing.

11.     Responding Party objects generally to the Requests to the extent that they are repetitive, duplicative, redundant, and/or overlapping.

12.     Responding Party objects generally to the Requests to the extent that they are vague, ambiguous, compound, confusing, unintelligible, unclear, and/or amenable to different meanings, understandings, or interpretations. Responding Party will respond to each request as it interprets and understands it.

13.     Responding Party objects generally to the Requests to the extent that they seek to impose duties or obligations different from, additional to, or otherwise beyond those required by the Federal Rules of Civil Procedure.

14.     Responding Party objects generally to the Requests to the extent that they are not limited to a particular time period.

15.     Responding Party objects generally to the  Requests to the extent they exceed the number of requests for production agreed upon by the parties and ordered

by the Court in its Case Management Order, which "are limited to 100 succinct questions." (Dkt. 59.)

16.    All responses hereto are made on information and belief.

Without waiver of the foregoing, Responding Party responds as follows:

## RESPONSES TO REQUESTS FOR PRODUCTION OF DOCUMENTS

## REQUEST FOR PRODUCTION NO. 1:

All Documents, including Communications, relevant to Your claims against Tincher-Ladner and/or PTK.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 1:

Responding Party objects to the term "All Documents, including Communications, relevant to" as vague, ambiguous, overbroad, and unduly burdensome, as it is unclear what exactly is being sought, and likewise, whether all such documents are relevant to any party's claim or defense, or proportional to the needs of this case. Responding Party further objects to this request to the extent that it seeks documents that are protected from disclosure by the attorney-client privilege and/or work-product doctrine. Responding Party further objects to this request to the extent it seeks documents that contain Responding Party's confidential and/or proprietary business information, including sensitive financial information, marketing plans and/or trade secrets. Furthermore, Responding Party objects to this Request as premature to the extent it seeks information that is the subject of expert opinion as provided by Fed. R. Civ. Proc. 26(a)(2)(D) and this Court's case management order. Responding Party further objects to this request on the grounds that it is not reasonably particularized as required by Federal Rule of Civil Procedure 34(b)(1)(A).

Subject to and without waiver of the foregoing objections, Responding Party responds as follows: Responding Party has already searched its records and produced non-privileged responsive documents within its possession, custody, or

control.  While Responding Party has asserted the foregoing specific objections as a reservation of rights, Responding Party is not currently withholding any information or documents on the basis of any asserted objections.  Responding Party is also not currently aware of any responsive privileged communications, other than communications with its undersigned counsel of record, but if other privileged communications are discovered, Responding Party will provide a privilege log.

## REQUEST FOR PRODUCTION NO. 2 [2-4]:

All Documents, including Communications, evidencing any alleged defamatory, tortious or false statement attributed to Tincher-Ladner or PTK.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 2 [2-4]:

Responding Party objects to this request as compound as it seeks documents concerning three distinct topics, namely, (a) defamatory; (b) tortious; and (c) false statement attributed to Tincher-Ladner or PTK. Responding Party responds to each discrete subpart of this Request as its own Request, as follows:

(a)  Documents evidencing any alleged defamatory statement attributed to Tincher-Ladner or PTK.

Responding Party objects to the term "All Documents, including Communications, evidencing" as vague, ambiguous, overbroad, and unduly burdensome, as it is unclear what exactly is being sought, and likewise, whether all such documents are relevant to any party's claim or defense, or reasonably proportional to the needs of this case. Responding Party further objects to this request to the extent that it seeks documents that are protected from disclosure by the attorney-client privilege and/or work-product doctrine. Responding Party further objects to this request to the extent the records sought are already within the possession, custody or control of Propounding Party.  Responding Party further objects to this request on the grounds that it is not reasonably particularized as required by Federal Rule of Civil Procedure 34(b)(1)(A).

6

Subject to and without waiver of the foregoing objections, Responding Party responds as follows: Responding Party has already searched its records and produced non-privileged responsive documents within its possession, custody, or control.  While Responding Party has asserted the foregoing specific objections as a reservation of rights, Responding Party is not currently withholding any information or documents on the basis of any asserted objections.  Responding Party is also not currently aware of any responsive privileged communications, other than communications with its undersigned counsel of record, but if other privileged communications are discovered, Responding Party will provide a privilege log.

(b)    Documents evidencing any alleged tortious statement attributed to Tincher-Ladner or PTK,

Responding Party objects to the term "All Documents, including Communications, evidencing" as vague, ambiguous, overbroad, and unduly burdensome, as it is unclear what exactly is being sought, and likewise, whether all such documents are relevant to any party's claim or defense, or reasonably proportional to the needs of this case. Responding Party further objects to this request to the extent that it seeks documents that are protected from disclosure by the attorney-client privilege and/or work-product doctrine. Responding Party further objects to this request to the extent the records sought are already within the possession, custody or control of Propounding Party.  Responding Party further objects to this request on the grounds that it is not reasonably particularized as required by Federal Rule of Civil Procedure 34(b)(1)(A).

Subject to and without waiver of the foregoing objections, Responding Party responds as follows: Responding Party has already searched its records and produced non-privileged responsive documents within its possession, custody, or control.  While Responding Party has asserted the foregoing specific objections as a reservation of rights, Responding Party is not currently withholding any information

or documents on the basis of any asserted objections. Responding Party is also not currently aware of any responsive privileged communications, other than communications with its undersigned counsel of record, but if other privileged communications are discovered, Responding Party will provide a privilege log.

(c)    Documents evidencing any alleged false statement attributed to Tincher-Ladner or PTK.

Responding Party objects to the term "All Documents, including Communications, evidencing" as vague, ambiguous, overbroad, and unduly burdensome, as it is unclear what exactly is being sought, and likewise, whether all such documents are relevant to any party's claim or defense, or reasonably proportional to the needs of this case. Responding Party further objects to this request to the extent that it seeks documents that are protected from disclosure by the attorney-client privilege and/or work-product doctrine. Responding Party further objects to this request to the extent the records sought are already within the possession, custody or control of Propounding Party. Responding Party further objects to this request on the grounds that it is not reasonably particularized as required by Federal Rule of Civil Procedure 34(b)(1)(A).

Subject to and without waiver of the foregoing objections, Responding Party responds as follows: Responding Party has already searched its records and produced non-privileged responsive documents within its possession, custody, or control. While Responding Party has asserted the foregoing specific objections as a reservation of rights, Responding Party is not currently withholding any information or documents on the basis of any asserted objections. Responding Party is also not currently aware of any responsive privileged communications, other than communications with its undersigned counsel of record, but if other privileged communications are discovered, Responding Party will provide a privilege log.

**REQUEST FOR PRODUCTION NO. 3 [5]:**

All Documents relevant to Your claims for damage.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 3 [5]:**

Responding Party objects to the term "All Documents relevant to" as vague, ambiguous, overbroad, and unduly burdensome, as it is unclear what exactly is being sought, and likewise, whether all such documents are relevant to any party's claim or defense, or reasonably proportional to the needs of this case. Responding Party further objects to this request to the extent it seeks documents that contain Responding Party's confidential and/or proprietary business information, including sensitive financial information, marketing plans and/or trade secrets. Responding Party further objects to this request to the extent that it seeks documents that are protected from disclosure by the attorney-client privilege and/or work-product doctrine. Furthermore, Responding Party objects to this Request as premature to the extent it seeks information that is the subject of expert opinion as provided by Fed. R. Civ. Proc. 26(a)(2)(D) and this Court's case management order.  Responding Party further objects to this request on the grounds that it is not reasonably particularized as required by Federal Rule of Civil Procedure 34(b)(1)(A).

Subject to and without waiver of the foregoing objections, Responding Party responds as follows: Responding Party has already searched its records and produced non-privileged responsive documents within its possession, custody, or control.  While Responding Party has asserted the foregoing specific objections as a reservation of rights, Responding Party is not currently withholding any information or documents on the basis of any asserted objections.  Responding Party is also not currently aware of any responsive privileged communications, other than communications with its undersigned counsel of record, but if other privileged communications are discovered, Responding Party will provide a privilege log.

**REQUEST FOR PRODUCTION NO. 4 [6]:**

Any Documents You intend to rely on at any hearing, deposition or trial in this matter.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 4 [6]:**

Responding Party further objects to this request to the extent it seeks documents that contain Responding Party's confidential and/or proprietary business information, including sensitive financial information, marketing plans and/or trade secrets. Responding Party further objects to this request to the extent that it seeks documents that are protected from disclosure by the attorney-client privilege and/or work-product doctrine. Furthermore, Responding Party objects to this Request as premature to the extent it seeks information that is the subject of expert opinion as provided by Fed. R. Civ. Proc. 26(a)(2)(D) and this Court's case management order. Responding Party further objects to this request on the grounds that it is not reasonably particularized as required by Federal Rule of Civil Procedure 34(b)(1)(A).

Subject to and without waiver of the foregoing objections, Responding Party responds as follows: Responding Party has already searched its records and produced non-privileged responsive documents within its possession, custody, or control. While Responding Party has asserted the foregoing specific objections as a reservation of rights, Responding Party is not currently withholding any information or documents on the basis of any asserted objections. Responding Party is also not currently aware of any responsive privileged communications, other than communications with its undersigned counsel of record, but if other privileged communications are discovered, Responding Party will provide a privilege log.

**REQUEST FOR PRODUCTION NO. 5 [7]:**

Each Document provided to, generated by, considered by, reviewed by, or received by any person You intend to call as an expert to testify at a trial of this

matter, including but not limited to (a) any and all curricular vitae and/or resumes for the expert, (b) reports prepared by the expert in connection with the instant litigation, (c) correspondence between You and the expert, (d) and each and every published treatise, article, periodical, journal, pamphlet, research study, or other Document or publication considered or reviewed by the expert in connection with his or her forming an opinion as to the issues presented in the instant litigation.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 5 [7]:

Responding Party objects to this Request as overbroad and unduly burdensome to the extent it seeks production of material that is not relevant to any party's claim or defense nor proportional to the needs of this case. Responding Party further objects to this request to the extent it seeks documents that contain Responding Party's confidential and/or proprietary business information, including sensitive financial information, marketing plans and/or trade secrets. Responding Party further objects to this request to the extent that it seeks documents that are protected from disclosure by the attorney-client privilege and/or work-product doctrine. Furthermore, Responding Party objects to this Request on the grounds that it is premature in that it seeks information that is the subject of expert opinion as provided by Fed. R. Civ. Proc. 26(a)(2)(D) and this Court's case management order.

Subject to and without waiver of the foregoing objections, Responding Party responds as follows: Responding Party has already searched its records and produced non-privileged responsive documents within its possession, custody, or control. While Responding Party has asserted the foregoing specific objections as a reservation of rights, Responding Party is not currently withholding any information or documents on the basis of any asserted objections. Responding Party is also not currently aware of any responsive privileged communications, other than communications with its undersigned counsel of record, but if other privileged communications are discovered, Responding Party will provide a privilege log.

**REQUEST FOR PRODUCTION NO. 6 [8]:**

Any Documents relating to any expert opinion, report or study related to Your claims against Tincher-Ladner and/or PTK.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 6 [8]:**

Responding Party objects to the term "All Documents relating to" as vague, ambiguous, overbroad, and unduly burdensome, as it is unclear what exactly is being sought, and likewise, whether all such documents are relevant to any party's claim or defense, or reasonably proportional to the needs of this case. Responding Party further objects to this request to the extent it seeks documents that contain Responding Party's confidential and/or proprietary business information, including sensitive financial information, marketing plans and/or trade secrets. Responding Party further objects to this request to the extent that it seeks documents that are protected from disclosure by the attorney-client privilege and/or work-product doctrine. Furthermore, Responding Party objects to this Request on the grounds that it is premature in that it seeks information that is the subject of expert opinion as provided by Fed. R. Civ. Proc. 26(a)(2)(D) and this Court's case management order.

Subject to and without waiver of the foregoing objections, Responding Party responds as follows: Responding Party is unable to comply with this request because no such documents currently exist.

**REQUEST FOR PRODUCTION NO. 7 [9]:**

Documents evidencing Your claim that You have a membership base of approximately 1.5M individuals, comprised of professionals, alumni, as well as active students.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 7 [9]:**

Responding Party further objects to this request to the extent it seeks documents that contain Responding Party's confidential and/or proprietary business information, including sensitive financial information, marketing plans and/or trade

secrets. Responding Party further objects to this request to the extent that it seeks documents that are protected from disclosure by the attorney-client privilege and/or work-product doctrine.

Subject to and without waiver of the foregoing objections, Responding Party responds as follows: Responding Party has already searched its records and produced non-privileged responsive documents within its possession, custody, or control. While Responding Party has asserted the foregoing specific objections as a reservation of rights, Responding Party is not currently withholding any information or documents on the basis of any asserted objections. Responding Party is also not currently aware of any responsive privileged communications, other than communications with its undersigned counsel of record, but if other privileged communications are discovered, Responding Party will provide a privilege log.

## REQUEST FOR PRODUCTION NO. 8 [10]:

Documents evidencing Your claim that You have members in all 50 states and from dozens of countries worldwide.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 8 [10]:

Responding Party further objects to this request to the extent it seeks documents that contain Responding Party's confidential and/or proprietary business information, including sensitive financial information, marketing plans and/or trade secrets. Responding Party further objects to this request to the extent that it seeks documents that are protected from disclosure by the attorney-client privilege and/or work-product doctrine.

Subject to and without waiver of the foregoing objections, Responding Party responds as follows: Responding Party has already searched its records and produced non-privileged responsive documents within its possession, custody, or control. While Responding Party has asserted the foregoing specific objections as a reservation of rights, Responding Party is not currently withholding any information

or documents on the basis of any asserted objections.  Responding Party is also not currently aware of any responsive privileged communications, other than communications with its undersigned counsel of record, but if other privileged communications are discovered, Responding Party will provide a privilege log.

## REQUEST FOR PRODUCTION NO. 9 [11]:

Documents sufficient to show the "resources" You claim to provide Your Members, including but not limited to scholarships, networking opportunities, exclusive scholarship listings, dining discounts, discount dental, vision and hearing health plans and regalia.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 9 [11]:

Responding Party objects to the term "resources" as vague, ambiguous, overbroad, and unduly burdensome, as it is unclear what exactly is being sought, and likewise, whether all such documents are relevant to any party's claim or claim or defense, or reasonably proportional to the needs of this case. Responding Party further objects to this request to the extent that it seeks documents that are protected from disclosure by the attorney-client privilege and/or work-product doctrine.

Subject to and without waiver of the foregoing objections, Responding Party responds as follows: Responding Party has already searched its records and produced non-privileged responsive documents within its possession, custody, or control.  While Responding Party has asserted the foregoing specific objections as a reservation of rights, Responding Party is not currently withholding any information or documents on the basis of any asserted objections.  Responding Party is also not currently aware of any responsive privileged communications, other than communications with its undersigned counsel of record, but if other privileged communications are discovered, Responding Party will provide a privilege log.

## REQUEST FOR PRODUCTION NO. 10 [12-15]:

Documents on which You will rely that demonstrate that there is no similarity

between the visual identity, marketing materials, regalia and online content between PTK and You.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 10 [12-15]:**

Responding Party objects to this request as compound as it seeks documents concerning four distinct topics, namely, the similarity between the (a) visual identity; (b) marketing materials; (c) regalia; and (d) online content of PTK and Responding Party. Responding Party responds to each discrete subpart of this Request as its own Request, as follows:

(a)    <u>Documents on which You will rely that demonstrate that there is no similarity between the visual identity of PTK and You.</u>

Responding Party objects to this request to the extent it seeks documents that contain Responding Party's confidential and/or proprietary business information, including sensitive financial information, marketing plans and/or trade secrets. Responding Party further objects to this request to the extent that it seeks documents that are protected from disclosure by the attorney-client privilege and/or work-product doctrine.

Subject to and without waiver of the foregoing objections, Responding Party responds as follows: Responding Party has already searched its records and produced non-privileged responsive documents within its possession, custody, or control.  While Responding Party has asserted the foregoing specific objections as a reservation of rights, Responding Party is not currently withholding any information or documents on the basis of any asserted objections.  Responding Party is also not currently aware of any responsive privileged communications, other than communications with its undersigned counsel of record, but if other privileged communications are discovered, Responding Party will provide a privilege log.

(b)    <u>Documents on which You will rely that demonstrate that there is no similarity between the marketing materials of PTK and You.</u>

Responding Party objects to this request to the extent it seeks documents that contain Responding Party's confidential and/or proprietary business information, including sensitive financial information, marketing plans and/or trade secrets. Responding Party further objects to this request to the extent that it seeks documents that are protected from disclosure by the attorney-client privilege and/or work-product doctrine.

Subject to and without waiver of the foregoing objections, Responding Party responds as follows: Responding Party has already searched its records and produced non-privileged responsive documents within its possession, custody, or control. While Responding Party has asserted the foregoing specific objections as a reservation of rights, Responding Party is not currently withholding any information or documents on the basis of any asserted objections. Responding Party is also not currently aware of any responsive privileged communications, other than communications with its undersigned counsel of record, but if other privileged communications are discovered, Responding Party will provide a privilege log.

(c)    <u>Documents on which You will rely that demonstrate that there is no similarity between the regalia of PTK and You.</u>

Responding Party objects to this request to the extent it seeks documents that contain Responding Party's confidential and/or proprietary business information, including sensitive financial information, marketing plans and/or trade secrets. Responding Party further objects to this request to the extent that it seeks documents that are protected from disclosure by the attorney-client privilege and/or work-product doctrine.

Subject to and without waiver of the foregoing objections, Responding Party responds as follows: Responding Party has already searched its records and

produced non-privileged responsive documents within its possession, custody, or control. While Responding Party has asserted the foregoing specific objections as a reservation of rights, Responding Party is not currently withholding any information or documents on the basis of any asserted objections. Responding Party is also not currently aware of any responsive privileged communications, other than communications with its undersigned counsel of record, but if other privileged communications are discovered, Responding Party will provide a privilege log.

    (d)   <u>Documents on which You will rely that demonstrate that there is no similarity between the online content of PTK and You.</u>

Responding Party objects to this request to the extent it seeks documents that contain Responding Party's confidential and/or proprietary business information, including sensitive financial information, marketing plans and/or trade secrets. Responding Party further objects to this request to the extent that it seeks documents that are protected from disclosure by the attorney-client privilege and/or work-product doctrine.

Subject to and without waiver of the foregoing objections, Responding Party responds as follows: Responding Party has already searched its records and produced non-privileged responsive documents within its possession, custody, or control. While Responding Party has asserted the foregoing specific objections as a reservation of rights, Responding Party is not currently withholding any information or documents on the basis of any asserted objections. Responding Party is also not currently aware of any responsive privileged communications, other than communications with its undersigned counsel of record, but if other privileged communications are discovered, Responding Party will provide a privilege log.

**REQUEST FOR PRODUCTION NO. 11 [16]:**

Documents, including Communications, in which any person(s) has(have) stated they joined Your organization thinking it was PTK.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 11 [16]:**

Responding Party objects to the term "Documents, including Communications" as vague, ambiguous, overbroad, and unduly burdensome, as it is unclear what exactly is being sought, and likewise, whether all such documents are relevant to any party's claim or claim or defense, or reasonably proportional to the needs of this case. Responding Party further objects to this request to the extent the information sought is already within the possession, custody or control of Propounding Party.

Subject to and without waiver of the foregoing objections, Responding Party responds as follows: Responding Party has already searched its records and produced non-privileged responsive documents within its possession, custody, or control. While Responding Party has asserted the foregoing specific objections as a reservation of rights, Responding Party is not currently withholding any information or documents on the basis of any asserted objections. Responding Party is also not currently aware of any responsive privileged communications, other than communications with its undersigned counsel of record, but if other privileged communications are discovered, Responding Party will provide a privilege log.

**REQUEST FOR PRODUCTION NO. 12 [17]:**

Documents, including Communications, relating to any alleged efforts by Tincher- Ladner and/or PTK to delegitimize You to third-parties, including in school newspapers and through social media posts.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 12 [17]:**

Responding Party objects to the term "Documents, including Communications, relating to" as vague, ambiguous, overbroad, and unduly burdensome, as it is unclear what exactly is being sought, and likewise, whether all such documents are relevant to any party's claim or claim or defense, or reasonably proportional to the needs of this case. Responding Party further objects to this

18

request to the extent that it seeks documents that are protected from disclosure by the attorney-client privilege and/or work-product doctrine. Responding Party further objects to this request to the extent the records sought are already within the possession, custody or control of Propounding Party.

Subject to and without waiver of the foregoing objections, Responding Party responds as follows: Responding Party has already searched its records and produced non-privileged responsive documents within its possession, custody, or control.  While Responding Party has asserted the foregoing specific objections as a reservation of rights, Responding Party is not currently withholding any information or documents on the basis of any asserted objections.  Responding Party is also not currently aware of any responsive privileged communications, other than communications with its undersigned counsel of record, but if other privileged communications are discovered, Responding Party will provide a privilege log.

**REQUEST FOR PRODUCTION NO. 13 [18]:**

Documents, including Communications, evidencing any statement attributed to either PTK or Tincher-Ladner that refers to HonorSociety [SIC] as a "scam."

**RESPONSE TO REQUEST FOR PRODUCTION NO. 13 [18]:**

Responding Party further objects to this request to the extent that it seeks documents that are protected from disclosure by the attorney-client privilege and/or work-product doctrine. Responding Party further objects to this request to the extent the records sought are already within the possession, custody or control of Propounding Party.

Subject to and without waiver of the foregoing objections, Responding Party responds as follows: Responding Party has already searched its records and produced non-privileged responsive documents within its possession, custody, or control.  While Responding Party has asserted the foregoing specific objections as a reservation of rights, Responding Party is not currently withholding any information

or documents on the basis of any asserted objections.  Responding Party is also not currently aware of any responsive privileged communications, other than communications with its undersigned counsel of record, but if other privileged communications are discovered, Responding Party will provide a privilege log.

**REQUEST FOR PRODUCTION NO. 14 [19]:**

Documents, including Communications, where any person other than PTK or Tincher-Ladner, has referred to HonorSociety [SIC] as a "scam", "fraud" or similar description.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 14 [19]:**

Responding Party objects to the term "similar description" as vague, ambiguous, overbroad, and unduly burdensome, as it is unclear what exactly is being sought, and likewise, whether all such documents are relevant to any party's claim or claim or defense, or reasonably proportional to the needs of this case.

Subject to and without waiver of the foregoing objections, Responding Party responds as follows: Responding Party has already searched its records and produced non-privileged responsive documents within its possession, custody, or control.  While Responding Party has asserted the foregoing specific objections as a reservation of rights, Responding Party is not currently withholding any information or documents on the basis of any asserted objections.  Responding Party is also not currently aware of any responsive privileged communications, other than communications with its undersigned counsel of record, but if other privileged communications are discovered, Responding Party will provide a privilege log.

**REQUEST FOR PRODUCTION NO. 15 [20]:**

Documents, including Communications, evidencing any effort attributed to PTK or Tincher-Ladner, to contact the State Attorneys' General to complain about HonorSociety [SIC].

**RESPONSE TO REQUEST FOR PRODUCTION NO. 15 [20]:**

Responding Party further objects to this request to the extent that it seeks documents that are protected from disclosure by the attorney-client privilege and/or work-product doctrine. Responding Party further objects to this request to the extent the records sought are already within the possession, custody or control of Propounding Party.

Subject to and without waiver of the foregoing objections, Responding Party responds as follows: Responding Party has already searched its records and produced non-privileged responsive documents within its possession, custody, or control. While Responding Party has asserted the foregoing specific objections as a reservation of rights, Responding Party is not currently withholding any information or documents on the basis of any asserted objections. Responding Party is also not currently aware of any responsive privileged communications, other than communications with its undersigned counsel of record, but if other privileged communications are discovered, Responding Party will provide a privilege log.

**REQUEST FOR PRODUCTION NO. 16 [21]:**

Documents, including Communications, evidencing any effort attributed to PTK or Tincher-Ladner to contact the Better Business Bureau to complain about HonorSociety [SIC].

**RESPONSE TO REQUEST FOR PRODUCTION NO. 16 [21]:**

Responding Party further objects to this request to the extent that it seeks documents that are protected from disclosure by the attorney-client privilege and/or work-product doctrine. Responding Party further objects to this request to the extent the records sought are already within the possession, custody or control of Propounding Party.

Subject to and without waiver of the foregoing objections, Responding Party responds as follows: Responding Party has already searched its records and

produced non-privileged responsive documents within its possession, custody, or control.  While Responding Party has asserted the foregoing specific objections as a reservation of rights, Responding Party is not currently withholding any information or documents on the basis of any asserted objections.  Responding Party is also not currently aware of any responsive privileged communications, other than communications with its undersigned counsel of record, but if other privileged communications are discovered, Responding Party will provide a privilege log.

**REQUEST FOR PRODUCTION NO. 17 [22]:**

Documents, including Communications, that would show any student or prospective member that has been deterred from joining HonorSociety [SIC].

**RESPONSE TO REQUEST FOR PRODUCTION NO. 17 [22]:**

Responding Party objects to the term "Documents, including Communications, that would show any student or prospective member that has been deterred from joining HonorSociety [SIC]" as vague, ambiguous, overbroad, and unduly burdensome, as it is unclear what exactly is being sought, and likewise, whether all such documents are relevant to any party's claim or defense, or reasonably proportional to the needs of this case. Responding Party further objects to this request to the extent that it seeks documents that are protected from disclosure by the attorney-client privilege and/or work-product doctrine. Responding Party further objects to this request to the extent the records sought are already within the possession, custody or control of Propounding Party.

Subject to and without waiver of the foregoing objections, Responding Party responds as follows: Responding Party has already searched its records and produced non-privileged responsive documents within its possession, custody, or control.  While Responding Party has asserted the foregoing specific objections as a reservation of rights, Responding Party is not currently withholding any information or documents on the basis of any asserted objections.  Responding Party is also not

currently aware of any responsive privileged communications, other than communications with its undersigned counsel of record, but if other privileged communications are discovered, Responding Party will provide a privilege log.

**REQUEST FOR PRODUCTION NO. 18 [23]:**

Documents, including Communications, that would show any student or prospective member that has been deterred from joining HonorSociety [SIC] and that instead joined PTK.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 18 [23]:**

Responding Party objects to the term "Documents, including Communications, that would show any student or prospective member that has been deterred from joining HonorSociety [SIC]" as vague, ambiguous, overbroad, and unduly burdensome, as it is unclear what exactly is being sought, and likewise, whether all such documents are relevant to any party's claim or defense, or reasonably proportional to the needs of this case. Responding Party further objects to this request to the extent that it seeks documents that are protected from disclosure by the attorney-client privilege and/or work-product doctrine. Responding Party further objects to this request to the extent the records sought are already within the possession, custody or control of Propounding Party. Responding Party objects generally to this Request repetitive of Request No. 17.

Subject to and without waiver of the foregoing objections, Responding Party responds as follows: Responding Party has already searched its records and produced non-privileged responsive documents within its possession, custody, or control. While Responding Party has asserted the foregoing specific objections as a reservation of rights, Responding Party is not currently withholding any information or documents on the basis of any asserted objections. Responding Party is also not currently aware of any responsive privileged communications, other than

communications with its undersigned counsel of record, but if other privileged communications are discovered, Responding Party will provide a privilege log.

**REQUEST FOR PRODUCTION NO. 19 [24]:**

Since the first date You claim either PTK or Tincher-Ladner defamed You, provide Documents sufficient to identify the total membership applications to You, by month and by year.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 19 [24]:**

Responding Party objects to this Request as overbroad and unduly burdensome to the extent it seeks production of material that is not relevant to any party's claim or defense nor proportional to the needs of this case. Responding Party further objects to this request to the extent it seeks documents that contain Responding Party's confidential and/or proprietary business information, including sensitive financial information, marketing plans and/or trade secrets. Responding Party further objects to this request to the extent that it seeks documents that are protected from disclosure by the attorney-client privilege and/or work-product doctrine.

Subject to and without waiver of the foregoing objections, Responding Party responds as follows: Responding Party has already searched its records and produced non-privileged responsive documents within its possession, custody, or control. While Responding Party has asserted the foregoing specific objections as a reservation of rights, Responding Party is not currently withholding any information or documents on the basis of any asserted objections. Responding Party is also not currently aware of any responsive privileged communications, other than communications with its undersigned counsel of record, but if other privileged communications are discovered, Responding Party will provide a privilege log.

**REQUEST FOR PRODUCTION NO. 20 [25]:**

Since the first date You claim either PTK or Tincher-Ladner defamed You,

provide Documents sufficient to identify the total approved member applications by You, by month and by year.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 20 [25]:**

Responding Party objects to this Request as overbroad and unduly burdensome to the extent it seeks production of material that is not relevant to any party's claim or defense nor proportional to the needs of this case. Responding Party further objects to this request to the extent it seeks documents that contain Responding Party's confidential and/or proprietary business information, including sensitive financial information, marketing plans and/or trade secrets. Responding Party further objects to this request to the extent that it seeks documents that are protected from disclosure by the attorney-client privilege and/or work-product doctrine.

Subject to and without waiver of the foregoing objections, Responding Party responds as follows: Responding Party has already searched its records and produced non-privileged responsive documents within its possession, custody, or control. While Responding Party has asserted the foregoing specific objections as a reservation of rights, Responding Party is not currently withholding any information or documents on the basis of any asserted objections. Responding Party is also not currently aware of any responsive privileged communications, other than communications with its undersigned counsel of record, but if other privileged communications are discovered, Responding Party will provide a privilege log.

**REQUEST FOR PRODUCTION NO. 21 [26]:**

Documents, including Communications, sufficient to identify all third-parties to which Tincher-Ladner and/or PTK have made allegedly defamatory statements.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 21 [26]:**

Responding Party further objects to this request to the extent that it seeks documents that are protected from disclosure by the attorney-client privilege and/or

work-product doctrine. Responding Party further objects to this request to the extent the records sought are already within the possession, custody or control of Propounding Party.

Subject to and without waiver of the foregoing objections, Responding Party responds as follows: Responding Party has already searched its records and produced non-privileged responsive documents within its possession, custody, or control. While Responding Party has asserted the foregoing specific objections as a reservation of rights, Responding Party is not currently withholding any information or documents on the basis of any asserted objections. Responding Party is also not currently aware of any responsive privileged communications, other than communications with its undersigned counsel of record, but if other privileged communications are discovered, Responding Party will provide a privilege log.

**REQUEST FOR PRODUCTION NO. 22 [27]:**

Documents, including Communications, related to any publications by Ivy Tech Community College containing any statements of PTK or Tincher-Ladner You claim are defamatory or that otherwise relates to Your claims.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 22 [27]:**

Responding Party objects to the term "Documents, including Communications, related to" as vague, ambiguous, overbroad, and unduly burdensome, as it is unclear what exactly is being sought, and likewise, whether all such documents are relevant to any party's claim or defense, or reasonably proportional to the needs of this case. Responding Party further objects to this request to the extent that it seeks documents that are protected from disclosure by the attorney-client privilege and/or work-product doctrine.

Subject to and without waiver of the foregoing objections, Responding Party responds as follows: Responding Party has already searched its records and produced non-privileged responsive documents within its possession, custody, or

control.  While Responding Party has asserted the foregoing specific objections as a reservation of rights, Responding Party is not currently withholding any information or documents on the basis of any asserted objections.  Responding Party is also not currently aware of any responsive privileged communications, other than communications with its undersigned counsel of record, but if other privileged communications are discovered, Responding Party will provide a privilege log.

## REQUEST FOR PRODUCTION NO. 23 [28]:

Documents, including Communications, related to any publications by Motlow College containing any statements of PTK or Tincher-Ladner You claim are defamatory or that otherwise relates to Your claims.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 23 [28]:

Responding Party objects to the term "Documents, including Communications, related to" as vague, ambiguous, overbroad, and unduly burdensome, as it is unclear what exactly is being sought, and likewise, whether all such documents are relevant to any party's claim or defense, or reasonably proportional to the needs of this case. Responding Party further objects to this request to the extent that it seeks documents that are protected from disclosure by the attorney-client privilege and/or work-product doctrine.

Subject to and without waiver of the foregoing objections, Responding Party responds as follows: Responding Party has already searched its records and produced non-privileged responsive documents within its possession, custody, or control.  While Responding Party has asserted the foregoing specific objections as a reservation of rights, Responding Party is not currently withholding any information or documents on the basis of any asserted objections.  Responding Party is also not currently aware of any responsive privileged communications, other than communications with its undersigned counsel of record, but if other privileged communications are discovered, Responding Party will provide a privilege log.

**REQUEST FOR PRODUCTION NO. 24 [29]:**

Documents, including Communications, related to any publications by The College of Dupage containing any statements of PTK or Tincher-Ladner You claim are defamatory or that otherwise relates to Your claims.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 24 [29]:**

Responding Party objects to the term "Documents, including Communications, related to" as vague, ambiguous, overbroad, and unduly burdensome, as it is unclear what exactly is being sought, and likewise, whether all such documents are relevant to any party's claim or defense, or reasonably proportional to the needs of this case. Responding Party further objects to this request to the extent that it seeks documents that are protected from disclosure by the attorney-client privilege and/or work-product doctrine.

Subject to and without waiver of the foregoing objections, Responding Party responds as follows: Responding Party has already searched its records and produced non-privileged responsive documents within its possession, custody, or control. While Responding Party has asserted the foregoing specific objections as a reservation of rights, Responding Party is not currently withholding any information or documents on the basis of any asserted objections. Responding Party is also not currently aware of any responsive privileged communications, other than communications with its undersigned counsel of record, but if other privileged communications are discovered, Responding Party will provide a privilege log.

**REQUEST FOR PRODUCTION NO. 25 [30]:**

Documents related to any effort by You to mitigate, lessen, resolve or correct the allegedly defamatory statements that form the basis of Your claim for defamation against either Tincher-Ladner or PTK.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 25 [30]:**

Responding Party objects to this Request as overbroad and unduly burdensome to the extent it seeks production of material that is not relevant to any party's claim or defense nor proportional to the needs of this case. Responding Party further objects to this request to the extent it seeks documents that contain Responding Party's confidential and/or proprietary business information, including sensitive financial information, marketing plans and/or trade secrets. Responding Party further objects to this request to the extent that it seeks documents that are protected from disclosure by the attorney-client privilege and/or work-product doctrine.

Subject to and without waiver of the foregoing objections, Responding Party responds as follows: Responding Party has already searched its records and produced non-privileged responsive documents within its possession, custody, or control. While Responding Party has asserted the foregoing specific objections as a reservation of rights, Responding Party is not currently withholding any information or documents on the basis of any asserted objections. Responding Party is also not currently aware of any responsive privileged communications, other than communications with its undersigned counsel of record, but if other privileged communications are discovered, Responding Party will provide a privilege log.

**REQUEST FOR PRODUCTION NO. 26 [31]:**

Documents, including Communications, related to Your claim that Tincher-Lander and/or PTK have stated publicly that PTK is the "only" and/or is the "official" honor society for two-year colleges.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 26 [31]:**

Responding Party objects to the term "Documents, including Communications, related to" as vague, ambiguous, overbroad, and unduly burdensome, as it is unclear what exactly is being sought, and likewise, whether all

29

such documents are relevant to any party's claim or defense, or reasonably proportional to the needs of this case. Responding Party further objects to this request to the extent that it seeks documents that are protected from disclosure by the attorney-client privilege and/or work-product doctrine. Responding Party further objects to this request to the extent the records sought are already within the possession, custody or control of Propounding Party.

Subject to and without waiver of the foregoing objections, Responding Party responds as follows: Responding Party has already searched its records and produced non-privileged responsive documents within its possession, custody, or control. While Responding Party has asserted the foregoing specific objections as a reservation of rights, Responding Party is not currently withholding any information or documents on the basis of any asserted objections. Responding Party is also not currently aware of any responsive privileged communications, other than communications with its undersigned counsel of record, but if other privileged communications are discovered, Responding Party will provide a privilege log.

**REQUEST FOR PRODUCTION NO. 27 [32]:**

Documents, including Communications, related to Your claim of tortious interference with business relations.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 27 [32]:**

Responding Party objects to the term "Documents, including Communications, related to" as vague, ambiguous, overbroad, and unduly burdensome, as it is unclear what exactly is being sought, and likewise, whether all such documents are relevant to any party's claim or defense, or reasonably proportional to the needs of this case. Responding Party further objects to this request to the extent it seeks documents that contain Responding Party's confidential and/or proprietary business information, including sensitive financial information, marketing plans and/or trade secrets. Responding Party further objects to this request

to the extent that it seeks documents that are protected from disclosure by the attorney-client privilege and/or work-product doctrine.

Subject to and without waiver of the foregoing objections, Responding Party responds as follows: Responding Party has already searched its records and produced non-privileged responsive documents within its possession, custody, or control. While Responding Party has asserted the foregoing specific objections as a reservation of rights, Responding Party is not currently withholding any information or documents on the basis of any asserted objections. Responding Party is also not currently aware of any responsive privileged communications, other than communications with its undersigned counsel of record, but if other privileged communications are discovered, Responding Party will provide a privilege log.

**REQUEST FOR PRODUCTION NO. 28 [33]:**

Documents sufficient to identify every contract or prospective contract that You claim was interfered with by Tincher-Ladner and/or PTK.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 28 [33]:**

Responding Party further objects to this request to the extent that it seeks documents that are protected from disclosure by the attorney-client privilege and/or work-product doctrine.

Subject to and without waiver of the foregoing objections, Responding Party responds as follows: Responding Party has already searched its records and produced non-privileged responsive documents within its possession, custody, or control. While Responding Party has asserted the foregoing specific objections as a reservation of rights, Responding Party is not currently withholding any information or documents on the basis of any asserted objections. Responding Party is also not currently aware of any responsive privileged communications, other than communications with its undersigned counsel of record, but if other privileged communications are discovered, Responding Party will provide a privilege log.

**REQUEST FOR PRODUCTION NO. 29 [34]:**

Documents, including Communications, related to COVID-19, the pandemic and related issues and the impact on Your business.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 29 [34]:**

Responding Party objects to this Request as overbroad and unduly burdensome to the extent it seeks production of material that is not relevant to any party's claim or defense nor proportional to the needs of this case. Responding Party further objects to this request to the extent it seeks documents that contain Responding Party's confidential and/or proprietary business information, including sensitive financial information, marketing plans and/or trade secrets. Responding Party further objects to this request to the extent that it seeks documents that are protected from disclosure by the attorney-client privilege and/or work-product doctrine. Responding Party further objects to this request on the grounds that it is not reasonably particularized as required by Federal Rule of Civil Procedure 34(b)(1)(A).

Subject to and without waiver of the foregoing objections, Responding Party responds as follows: Responding Party has already searched its records and produced non-privileged responsive documents within its possession, custody, or control. While Responding Party has asserted the foregoing specific objections as a reservation of rights, Responding Party is not currently withholding any information or documents on the basis of any asserted objections. Responding Party is also not currently aware of any responsive privileged communications, other than communications with its undersigned counsel of record, but if other privileged communications are discovered, Responding Party will provide a privilege log.

**REQUEST FOR PRODUCTION NO. 30 [35-39]:**

Documents, including Communications, related to any business disruption, interruption, delay or any other event negatively impacting or affecting Your

operations, revenues, or advertising, marketing or promotion of Your business, since January 1, 2016.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 30 [35-39]:**

Responding Party objects to this request as compound as it seeks documents concerning five distinct topics, namely, any business disruption, interruption, delay or any other event negatively impacting or affecting Responding Party's (a) operations; (b) revenues; (c) advertising; (d) marketing; and (e) promotion of Responding Party's business. Responding Party responds to each discrete subpart of this Request as its own Request, as follows:

(a)  Documents related to any business disruption, interruption, delay or any other event negatively impacting or affecting Responding Party's operations of Responding Party's Business.

Responding Party objects to the term "Documents, including Communications, related to any business disruption, interruption, delay or any other event" as vague, ambiguous, overbroad, and unduly burdensome, as it is unclear what exactly is being sought, and likewise, whether all such documents are relevant to any party's claim or defense, or reasonably proportional to the needs of this case. Responding Party further objects to this request to the extent it seeks documents that contain Responding Party's confidential and/or proprietary business information, including sensitive financial information, marketing plans and/or trade secrets. Responding Party further objects to this request to the extent that it seeks documents that are protected from disclosure by the attorney-client privilege and/or work-product doctrine.

Subject to and without waiver of the foregoing objections, Responding Party responds as follows: Responding Party has already searched its records and produced non-privileged responsive documents within its possession, custody, or control.  While Responding Party has asserted the foregoing specific objections as a

reservation of rights, Responding Party is not currently withholding any information or documents on the basis of any asserted objections. Responding Party is also not currently aware of any responsive privileged communications, other than communications with its undersigned counsel of record, but if other privileged communications are discovered, Responding Party will provide a privilege log.

      (b)   <u>Documents related to any business disruption, interruption, delay or any other event negatively impacting or affecting Responding Party's revenues of Responding Party's business.</u>

Responding Party objects to the term "Documents, including Communications, related to any business disruption, interruption, delay or any other event" as vague, ambiguous, overbroad, and unduly burdensome, as it is unclear what exactly is being sought, and likewise, whether all such documents are relevant to any party's claim or defense, or reasonably proportional to the needs of this case. Responding Party further objects to this request to the extent it seeks documents that contain Responding Party's confidential and/or proprietary business information, including sensitive financial information, marketing plans and/or trade secrets. Responding Party further objects to this request to the extent that it seeks documents that are protected from disclosure by the attorney-client privilege and/or work-product doctrine.

Subject to and without waiver of the foregoing objections, Responding Party responds as follows: Responding Party has already searched its records and produced non-privileged responsive documents within its possession, custody, or control. While Responding Party has asserted the foregoing specific objections as a reservation of rights, Responding Party is not currently withholding any information or documents on the basis of any asserted objections. Responding Party is also not currently aware of any responsive privileged communications, other than

communications with its undersigned counsel of record, but if other privileged communications are discovered, Responding Party will provide a privilege log.

(c) Documents related to any business disruption, interruption, delay or any other event negatively impacting or affecting Responding Party's advertising of Responding Party's business.

Responding Party objects to the term "Documents, including Communications, related to any business disruption, interruption, delay or any other event" as vague, ambiguous, overbroad, and unduly burdensome, as it is unclear what exactly is being sought, and likewise, whether all such documents are relevant to any party's claim or defense, or reasonably proportional to the needs of this case. Responding Party further objects to this request to the extent it seeks documents that contain Responding Party's confidential and/or proprietary business information, including sensitive financial information, marketing plans and/or trade secrets. Responding Party further objects to this request to the extent that it seeks documents that are protected from disclosure by the attorney-client privilege and/or work-product doctrine.

Subject to and without waiver of the foregoing objections, Responding Party responds as follows: Responding Party has already searched its records and produced non-privileged responsive documents within its possession, custody, or control. While Responding Party has asserted the foregoing specific objections as a reservation of rights, Responding Party is not currently withholding any information or documents on the basis of any asserted objections. Responding Party is also not currently aware of any responsive privileged communications, other than communications with its undersigned counsel of record, but if other privileged communications are discovered, Responding Party will provide a privilege log.

(d)    <u>Documents related to any business disruption, interruption, delay or any other event negatively impacting or affecting Responding Party's marketing of Responding Party's business.</u>

Responding Party objects to the term "Documents, including Communications, related to any business disruption, interruption, delay or any other event" as vague, ambiguous, overbroad, and unduly burdensome, as it is unclear what exactly is being sought, and likewise, whether all such documents are relevant to any party's claim or defense, or reasonably proportional to the needs of this case. Responding Party further objects to this request to the extent it seeks documents that contain Responding Party's confidential and/or proprietary business information, including sensitive financial information, marketing plans and/or trade secrets. Responding Party further objects to this request to the extent that it seeks documents that are protected from disclosure by the attorney-client privilege and/or work-product doctrine.

Subject to and without waiver of the foregoing objections, Responding Party responds as follows: Responding Party has already searched its records and produced non-privileged responsive documents within its possession, custody, or control. While Responding Party has asserted the foregoing specific objections as a reservation of rights, Responding Party is not currently withholding any information or documents on the basis of any asserted objections. Responding Party is also not currently aware of any responsive privileged communications, other than communications with its undersigned counsel of record, but if other privileged communications are discovered, Responding Party will provide a privilege log.

(e)  <u>Documents related to any business disruption, interruption, delay or any other event negatively impacting or affecting Responding Party's promotion of Responding Party's business.</u>

Responding Party objects to the term "Documents, including Communications, related to any business disruption, interruption, delay or any other event" as vague, ambiguous, overbroad, and unduly burdensome, as it is unclear what exactly is being sought, and likewise, whether all such documents are relevant to any party's claim or defense, or reasonably proportional to the needs of this case. Responding Party further objects to this request to the extent it seeks documents that contain Responding Party's confidential and/or proprietary business information, including sensitive financial information, marketing plans and/or trade secrets. Responding Party further objects to this request to the extent that it seeks documents that are protected from disclosure by the attorney-client privilege and/or work-product doctrine.

Subject to and without waiver of the foregoing objections, Responding Party responds as follows: Responding Party has already searched its records and produced non-privileged responsive documents within its possession, custody, or control. While Responding Party has asserted the foregoing specific objections as a reservation of rights, Responding Party is not currently withholding any information or documents on the basis of any asserted objections. Responding Party is also not currently aware of any responsive privileged communications, other than communications with its undersigned counsel of record, but if other privileged communications are discovered, Responding Party will provide a privilege log.

**<u>REQUEST FOR PRODUCTION NO. 31 [40]:</u>**

Documents, including Communications, related to any application and/or receipt for PPP or similar pandemic-related relief.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 31 [40]:**

Responding Party objects to the terms "Documents, including Communications, relating to" as vague, ambiguous, overbroad, and unduly burdensome, as it is unclear what exactly is being sought, and likewise, whether all such documents are relevant or reasonably proportional to the needs of this case. Responding Party further objects to this request to the extent it seeks documents that contain Responding Party's confidential and/or proprietary business information, including sensitive financial information, marketing plans and/or trade secrets. Responding Party further objects to this request to the extent that it seeks documents that are protected from disclosure by the attorney-client privilege and/or work-product doctrine.

Subject to and without waiver of the foregoing objections, Responding Party responds as follows: Responding Party has already searched its records and produced non-privileged responsive documents within its possession, custody, or control. While Responding Party has asserted the foregoing specific objections as a reservation of rights, Responding Party is not currently withholding any information or documents on the basis of any asserted objections. Responding Party is also not currently aware of any responsive privileged communications, other than communications with its undersigned counsel of record, but if other privileged communications are discovered, Responding Party will provide a privilege log.

**REQUEST FOR PRODUCTION NO. 32 [41]:**

Documents, including Communications, with any academic institution that has questioned Your business practices.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 32 [41]:**

Responding Party objects to the term "business practices" as vague and ambiguous. Responding Party objects to this Request to the extent it seeks production of material that is not relevant to any party's claim or defense nor

proportional to the needs of this case. Responding Party further objects to this request to the extent that it seeks documents that are protected from disclosure by the attorney-client privilege and/or work-product doctrine.

Subject to and without waiver of the foregoing objections, Responding Party responds as follows: Responding Party has already searched its records and produced non-privileged responsive documents within its possession, custody, or control. While Responding Party has asserted the foregoing specific objections as a reservation of rights, Responding Party is not currently withholding any information or documents on the basis of any asserted objections. Responding Party is also not currently aware of any responsive privileged communications, other than communications with its undersigned counsel of record, but if other privileged communications are discovered, Responding Party will provide a privilege log.

## REQUEST FOR PRODUCTION NO. 33 [42]:

Documents, including Communications, relating to any complaints made against You with any governmental or industry authority.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 33 [42]:

Responding Party objects to the terms "Documents, including Communications, relating to" and "industry authority" as vague, ambiguous, overbroad, and unduly burdensome, as it is unclear what exactly is being sought, and likewise, whether all such documents are relevant to any party's claim or defense, or reasonably proportional to the needs of this case. Responding Party further objects to this request to the extent that it seeks documents that are protected from disclosure by the attorney-client privilege and/or work-product doctrine.

Subject to and without waiver of the foregoing objections, Responding Party responds as follows: Responding Party has already searched its records and produced non-privileged responsive documents within its possession, custody, or control. While Responding Party has asserted the foregoing specific objections as a

reservation of rights, Responding Party is not currently withholding any information or documents on the basis of any asserted objections.  Responding Party is also not currently aware of any responsive privileged communications, other than communications with its undersigned counsel of record, but if other privileged communications are discovered, Responding Party will provide a privilege log.

**REQUEST FOR PRODUCTION NO. 34 [43]:**

Documents, including Communications, relating to any complaints made against You by any member or prospective member.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 34 [43]:**

Responding Party objects to the term "member or prospective member" as vague and ambiguous. Responding Party objects to this Request to the extent it seeks production of material that is not relevant to any party's claim or defense nor proportional to the needs of this case. Responding Party further objects to this request to the extent that it seeks documents that are protected from disclosure by the attorney-client privilege and/or work-product doctrine.

Subject to and without waiver of the foregoing objections, and assuming "member or prospective member" refers to Responding Party's members or prospective members, Responding Party responds as follows: Responding Party has already searched its records and produced non-privileged responsive documents within its possession, custody, or control.  While Responding Party has asserted the foregoing specific objections as a reservation of rights, Responding Party is not currently withholding any information or documents on the basis of any asserted objections.  Responding Party is also not currently aware of any responsive privileged communications, other than communications with its undersigned counsel of record, but if other privileged communications are discovered, Responding Party will provide a privilege log.

**REQUEST FOR PRODUCTION NO. 35 [44]:**

Documents, including Communications, relating to any negative comment of any sort concerning You on any website, social media account or other similar publication.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 35 [44]:**

Responding Party objects to this Request as overbroad and unduly burdensome to the extent it seeks production of material that is not relevant to any party's claim or defense nor proportional to the needs of this case. Responding Party further objects to this request to the extent that it seeks documents that are protected from disclosure by the attorney-client privilege and/or work-product doctrine. Responding Party further objects to this request to the extent the information sought is publicly available and is therefore equally available to Propounding Party.

Subject to and without waiver of the foregoing objections, Responding Party responds as follows: Responding Party has already searched its records and produced non-privileged responsive documents within its possession, custody, or control. While Responding Party has asserted the foregoing specific objections as a reservation of rights, Responding Party is not currently withholding any information or documents on the basis of any asserted objections. Responding Party is also not currently aware of any responsive privileged communications, other than communications with its undersigned counsel of record, but if other privileged communications are discovered, Responding Party will provide a privilege log.

**REQUEST FOR PRODUCTION NO. 36 [45]:**

Documents, including Communications, relating to any complaints or negative public comments made concerning Michael Moradian.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 36 [45]:**

Responding Party objects to this request as vague, ambiguous, overbroad, and unduly burdensome. Responding Party further objects to this request on the grounds

41

that the information sought is not relevant to any party's claim or defense, or reasonably proportional to the needs of this case. Responding Party further objects to this request to the extent that it seeks documents that are protected from disclosure by the attorney-client privilege and/or work-product doctrine. Responding Party further objects to this request to the extent the information sought is publicly available and is therefore equally available to Propounding Party.

Subject to and without waiver of the foregoing objections, Responding Party responds as follows: Responding Party has already searched its records and produced non-privileged responsive documents within its possession, custody, or control. While Responding Party has asserted the foregoing specific objections as a reservation of rights, Responding Party is not currently withholding any information or documents on the basis of any asserted objections. Responding Party is also not currently aware of any responsive privileged communications, other than communications with its undersigned counsel of record, but if other privileged communications are discovered, Responding Party will provide a privilege log.

**REQUEST FOR PRODUCTION NO. 37 [46]:**

Documents sufficient to show the standards for membership in Your organization. If they have changed over time, provide Documents, including Communications, sufficient to show that evolution.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 37 [46]:**

Responding Party objects to this request to the extent it seeks production of material that is not relevant to any party's claim or defense nor proportional to the needs of this case. Responding Party further objects to this request to the extent it seeks documents that contain Responding Party's confidential and/or proprietary business information, including sensitive financial information, marketing plans and/or trade secrets. Responding Party further objects to this request to the extent

that it seeks documents that are protected from disclosure by the attorney-client privilege and/or work-product doctrine.

Subject to and without waiver of the foregoing objections, Responding Party responds as follows: Responding Party has already searched its records and produced non-privileged responsive documents within its possession, custody, or control. While Responding Party has asserted the foregoing specific objections as a reservation of rights, Responding Party is not currently withholding any information or documents on the basis of any asserted objections. Responding Party is also not currently aware of any responsive privileged communications, other than communications with its undersigned counsel of record, but if other privileged communications are discovered, Responding Party will provide a privilege log.

## REQUEST FOR PRODUCTION NO. 38 [47]:

Documents sufficient to show the number and amount of all scholarships awarded to Your members, for each year, since inception.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 38 [47]:

Responding Party objects to this Request as overbroad and unduly burdensome to the extent it seeks production of material that is not relevant to any party's claim or defense nor proportional to the needs of this case. Responding Party further objects to this request to the extent it seeks documents that contain Responding Party's confidential and/or proprietary business information, including sensitive financial information, marketing plans and/or trade secrets. Responding Party further objects to this request to the extent that it seeks documents that are protected from disclosure by the attorney-client privilege and/or work-product doctrine.

Subject to and without waiver of the foregoing objections, Responding Party responds as follows: Responding Party is producing concurrently herewith non-privileged responsive documents within its possession, custody, or control.

**REQUEST FOR PRODUCTION NO. 39 [48]:**

Documents sufficient to identify the recipients of all scholarships awarded to Your members, for each year, since inception.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 39 [48]:**

Responding Party objects to this Request as overbroad and unduly burdensome to the extent it seeks production of material that is not relevant to any party's claim or defense nor proportional to the needs of this case. Responding Party further objects to this request to the extent it seeks documents that contain Responding Party's confidential and/or proprietary business information, including sensitive financial information, marketing plans and/or trade secrets. Responding Party further objects to this request to the extent that it seeks documents that are protected from disclosure by the attorney-client privilege and/or work-product doctrine.  Responding Party further objects to this request on the grounds it seeks to invade the privacy interests of natural persons who are not parties to this litigation.

Subject to and without waiver of the foregoing objections, Responding Party responds as follows: Responding Party is producing concurrently herewith non-privileged responsive documents within its possession, custody, or control.

**REQUEST FOR PRODUCTION NO. 40 [49]:**

Documents, including Communications, addressing or discussing the financial performance of HonorSociety [SIC] since January 1, 2016.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 40 [49]:**

Responding Party objects to the term "Documents, including Communications, addressing or discussing the financial performance of HonorSociety [SIC]" as vague, ambiguous, overbroad, and unduly burdensome, as it is unclear what exactly is being sought, and likewise, whether all such documents are relevant to any party's claim or defense, or reasonably proportional to the needs of this case. Responding Party further objects to this request to the extent it seeks

44

documents that contain Responding Party's confidential and/or proprietary business information, including sensitive financial information, marketing plans and/or trade secrets. Responding Party further objects to this request to the extent that it seeks documents that are protected from disclosure by the attorney-client privilege and/or work-product doctrine.

Subject to and without waiver of the foregoing objections, and limiting Responding Party's response to "high-level" financial statements only as agreed with Propounding Party's counsel, Responding Party responds as follows: Responding Party has already searched its records and produced non-privileged responsive documents within its possession, custody, or control. While Responding Party has asserted the foregoing specific objections as a reservation of rights, Responding Party is not currently withholding any information or documents on the basis of any asserted objections. Responding Party is also not currently aware of any responsive privileged communications, other than communications with its undersigned counsel of record, but if other privileged communications are discovered, Responding Party will provide a privilege log.

**REQUEST FOR PRODUCTION NO. 41 [50-51]:**

Documents, including Communications, discussing, addressing or relating to the effect, if any, of allegedly defamatory, false or misleading communications by PTK and/or Tincher-Ladner on the financial performance of HonorSociety [SIC].

**RESPONSE TO REQUEST FOR PRODUCTION NO. 41 [50-51]:**

Responding Party objects to this request as compound as it seeks documents concerning two distinct topics, namely, the effect of allegedly (a) defamatory and (b) false or misleading statements by PTK and/or Tincher-Ladner on the financial performance of Honor Society. Responding Party responds to each discrete subpart of this Request as its own Request, as follows:

(a)    <u>Documents, discussing, addressing or relating to the effect, if any, of allegedly defamatory statements by PTK and/or Tincher-Ladner on the financial performance of Honor Society.</u>

Responding Party objects to the term "Documents, including Communications, discussing, addressing or relating to" as vague, ambiguous, overbroad, and unduly burdensome, as it is unclear what exactly is being sought, and likewise, whether all such documents are relevant to any party's claim or defense, or reasonably proportional to the needs of this case. Responding Party further objects to this request to the extent it seeks documents that contain Responding Party's confidential and/or proprietary business information, including sensitive financial information, marketing plans and/or trade secrets. Responding Party further objects to this request to the extent that it seeks documents that are protected from disclosure by the attorney-client privilege and/or work-product doctrine.

Subject to and without waiver of the foregoing objections, Responding Party responds as follows: Responding Party has already searched its records and produced non-privileged responsive documents within its possession, custody, or control. While Responding Party has asserted the foregoing specific objections as a reservation of rights, Responding Party is not currently withholding any information or documents on the basis of any asserted objections. Responding Party is also not currently aware of any responsive privileged communications, other than communications with its undersigned counsel of record, but if other privileged communications are discovered, Responding Party will provide a privilege log.

(b)    <u>Documents, discussing, addressing or relating to the effect, if any, of allegedly false or misleading communications by PTK and/or Tincher-Ladner on the financial performance of Honor Society.</u>

Responding Party objects to the term "Documents, including Communications, discussing, addressing or relating to" as vague, ambiguous,

overbroad, and unduly burdensome, as it is unclear what exactly is being sought, and likewise, whether all such documents are relevant to any party's claim or defense, or reasonably proportional to the needs of this case. Responding Party further objects to this request to the extent it seeks documents that contain Responding Party's confidential and/or proprietary business information, including sensitive financial information, marketing plans and/or trade secrets. Responding Party further objects to this request to the extent that it seeks documents that are protected from disclosure by the attorney-client privilege and/or work-product doctrine.

Subject to and without waiver of the foregoing objections, Responding Party responds as follows: Responding Party has already searched its records and produced non-privileged responsive documents within its possession, custody, or control. While Responding Party has asserted the foregoing specific objections as a reservation of rights, Responding Party is not currently withholding any information or documents on the basis of any asserted objections. Responding Party is also not currently aware of any responsive privileged communications, other than communications with its undersigned counsel of record, but if other privileged communications are discovered, Responding Party will provide a privilege log.

## REQUEST FOR PRODUCTION NO. 42 [52-53]:

Documents, including Communications, discussing, addressing or relating to any lost members, lost opportunities, lost relationships or otherwise, arising from or relating to any allegedly defamatory, false or misleading communications by PTK and/or Tincher-Ladner.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 42 [52-53]:

Responding Party objects to this request as compound as it seeks documents concerning two distinct topics, namely, lost members, lost opportunities, lost relationships or otherwise, arising from or relating to any allegedly (a) defamatory and (b) false or misleading statements by PTK and/or Tincher-Ladner on the

financial performance of Honor Society. Responding Party responds to each discrete subpart of this Request as its own Request, as follows:

(a)  <u>Documents discussing, addressing or relating to any lost members, lost opportunities, lost relationships or otherwise, arising from or relating to any allegedly defamatory communications by PTK and/or Tincher-Ladner.</u>

Responding Party objects to the terms "Documents, including Communications, discussing, addressing or relating to" and "lost members, lost opportunities, lost relationships or otherwise" as vague, ambiguous, overbroad, and unduly burdensome, as it is unclear what exactly is being sought, and likewise, whether all such documents are relevant or reasonably proportional to the needs of this case. Responding Party further objects to this request to the extent it seeks documents that contain Responding Party's confidential and/or proprietary business information, including sensitive financial information, marketing plans and/or trade secrets. Responding Party further objects to this request to the extent that it seeks documents that are protected from disclosure by the attorney-client privilege and/or work-product doctrine.

Subject to and without waiver of the foregoing objections, Responding Party responds as follows: Responding Party has already searched its records and produced non-privileged responsive documents within its possession, custody, or control.  While Responding Party has asserted the foregoing specific objections as a reservation of rights, Responding Party is not currently withholding any information or documents on the basis of any asserted objections.  Responding Party is also not currently aware of any responsive privileged communications, other than communications with its undersigned counsel of record, but if other privileged communications are discovered, Responding Party will provide a privilege log.

(b)    <u>Documents discussing, addressing or relating to any lost members, lost opportunities, lost relationships or otherwise, arising from or relating to any allegedly false or misleading communications by PTK and/or Tincher-Ladner.</u>

Responding Party objects to the terms "Documents, including Communications, discussing, addressing or relating to" and "lost members, lost opportunities, lost relationships or otherwise" as vague, ambiguous, overbroad, and unduly burdensome, as it is unclear what exactly is being sought, and likewise, whether all such documents are relevant or reasonably proportional to the needs of this case. Responding Party further objects to this request to the extent it seeks documents that contain Responding Party's confidential and/or proprietary business information, including sensitive financial information, marketing plans and/or trade secrets. Responding Party further objects to this request to the extent that it seeks documents that are protected from disclosure by the attorney-client privilege and/or work-product doctrine.

Subject to and without waiver of the foregoing objections, Responding Party responds as follows: Responding Party has already searched its records and produced non-privileged responsive documents within its possession, custody, or control.  While Responding Party has asserted the foregoing specific objections as a reservation of rights, Responding Party is not currently withholding any information or documents on the basis of any asserted objections.  Responding Party is also not currently aware of any responsive privileged communications, other than communications with its undersigned counsel of record, but if other privileged communications are discovered, Responding Party will provide a privilege log.

**<u>REQUEST FOR PRODUCTION NO. 43 [54]:</u>**

Documents, including Communications, discussing, addressing or relating to the effect, if any, of any negative statements by third-parties (i.e., not PTK or

Tincher-Ladner) about HonorSociety [SIC], on the financial performance of HonorSociety [SIC].

## RESPONSE TO REQUEST FOR PRODUCTION NO. 43 [54]:

Responding Party objects to the term "Documents, including Communications, discussing, addressing or relating to" as vague, ambiguous, overbroad, and unduly burdensome, as it is unclear what exactly is being sought, and likewise, whether all such documents are relevant to any party's claim or defense, or reasonably proportional to the needs of this case. Responding Party further objects to this request to the extent it seeks documents that contain Responding Party's confidential and/or proprietary business information, including sensitive financial information, marketing plans and/or trade secrets. Responding Party further objects to this request to the extent that it seeks documents that are protected from disclosure by the attorney-client privilege and/or work-product doctrine.

Subject to and without waiver of the foregoing objections, Responding Party responds as follows: Responding Party has already searched its records and produced non-privileged responsive documents within its possession, custody, or control. While Responding Party has asserted the foregoing specific objections as a reservation of rights, Responding Party is not currently withholding any information or documents on the basis of any asserted objections. Responding Party is also not currently aware of any responsive privileged communications, other than communications with its undersigned counsel of record, but if other privileged communications are discovered, Responding Party will provide a privilege log.

## REQUEST FOR PRODUCTION NO. 44 [55]:

Documents, including Communications, discussing, addressing or relating to any lost members, lost opportunities, lost relationships or otherwise, arising from or relating to any negative comments about HonorSociety [SIC].

## RESPONSE TO REQUEST FOR PRODUCTION NO. 44 [55]:

Responding Party objects to the terms "Documents, including Communications, discussing, addressing or relating to" and "lost members, lost opportunities, lost relationships or otherwise" as vague, ambiguous, overbroad, and unduly burdensome, as it is unclear what exactly is being sought, and likewise, whether all such documents are relevant or reasonably proportional to the needs of this case. Responding Party further objects to this request to the extent it seeks documents that contain Responding Party's confidential and/or proprietary business information, including sensitive financial information, marketing plans and/or trade secrets. Responding Party further objects to this request to the extent that it seeks documents that are protected from disclosure by the attorney-client privilege and/or work-product doctrine.

Subject to and without waiver of the foregoing objections, Responding Party responds as follows: Responding Party has already searched its records and produced non-privileged responsive documents within its possession, custody, or control. While Responding Party has asserted the foregoing specific objections as a reservation of rights, Responding Party is not currently withholding any information or documents on the basis of any asserted objections. Responding Party is also not currently aware of any responsive privileged communications, other than communications with its undersigned counsel of record, but if other privileged communications are discovered, Responding Party will provide a privilege log.

## REQUEST FOR PRODUCTION NO. 45 [56-58]:

Documents evidencing any salary, bonus, distributions or other compensation paid by You to any of Moradian, Mikal Calvert and Nader Moradian since January 1, 2016.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 45 [56-58]:**

Responding Party objects to this request as compound as it seeks documents concerning three distinct topics, namely, any salary, bonus, distributions or other compensation paid by Responding Party to (a) Moradian, (b) Mikal Calvert, and (c) Nader Moradian. Responding Party responds to each discrete subpart of this Request as its own Request, as follows:

(a)    Documents evidencing any salary, bonus, distributions or other compensation paid by You to Moradian.

Responding Party objects to this Request as overbroad and unduly burdensome to the extent it seeks production of material that is not relevant to any party's claim or defense nor proportional to the needs of this case. Responding Party further objects to this request to the extent it seeks documents that contain Responding Party's confidential and/or proprietary business information, including sensitive financial information, marketing plans and/or trade secrets. Responding Party further objects to this request to the extent that it seeks documents that are protected from disclosure by the attorney-client privilege and/or work-product doctrine. Responding Party further objects to this request on the grounds it seeks to invade the privacy interests of natural persons who are not parties to this litigation.

Subject to and without waiver of the foregoing objections, Responding Party responds as follows: Responding Party is producing concurrently herewith non-privileged responsive documents within its possession, custody, or control.

(b)    Documents evidencing any salary, bonus, distributions or other compensation paid by You to Mikal Calvert.

Responding Party objects to this Request as overbroad and unduly burdensome to the extent it seeks production of material that is not relevant to any party's claim or defense nor proportional to the needs of this case. Responding Party further objects to this request to the extent it seeks documents that contain

52

Responding Party's confidential and/or proprietary business information, including sensitive financial information, marketing plans and/or trade secrets. Responding Party further objects to this request to the extent that it seeks documents that are protected from disclosure by the attorney-client privilege and/or work-product doctrine. Responding Party further objects to this request on the grounds it seeks to invade the privacy interests of natural persons who are not parties to this litigation.

Subject to and without waiver of the foregoing objections, Responding Party responds as follows: Responding Party is producing concurrently herewith non-privileged responsive documents within its possession, custody, or control.

(c)    Documents evidencing any salary, bonus, distributions or other compensation paid by You to Nader Moradian.

Responding Party objects to this Request as overbroad and unduly burdensome to the extent it seeks production of material that is not relevant to any party's claim or defense nor proportional to the needs of this case. Responding Party further objects to this request to the extent it seeks documents that contain Responding Party's confidential and/or proprietary business information, including sensitive financial information, marketing plans and/or trade secrets. Responding Party further objects to this request to the extent that it seeks documents that are protected from disclosure by the attorney-client privilege and/or work-product doctrine. Responding Party further objects to this request on the grounds it seeks to invade the privacy interests of natural persons who are not parties to this litigation.

Subject to and without waiver of the foregoing objections, Responding Party responds as follows: Responding Party is unable to produce any responsive documents, as no such documents exist or have ever existed.

**REQUEST FOR PRODUCTION NO. 46 [59]:**

All K-1s issued by HonorSociety [SIC] since January 1, 2016.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 46 [59]:**

Responding Party objects to this Request as overbroad and unduly burdensome to the extent it seeks production of material that is not relevant to any party's claim or defense nor proportional to the needs of this case. Responding Party further objects to this request to the extent it seeks documents that contain Responding Party's confidential and/or proprietary business information, including sensitive financial information, marketing plans and/or trade secrets.

**REQUEST FOR PRODUCTION NO. 47 [60]:**

Documents, including Communications, from any prospective member providing any explanation as to why they chose not to join HonorSociety [SIC].

**RESPONSE TO REQUEST FOR PRODUCTION NO. 47 [60]:**

Responding Party objects to the term "Document, including Communications, from any prospective member" as vague, ambiguous, overbroad, and unduly burdensome, as it is unclear what exactly is being sought or what "member" refers to, and likewise, whether all such documents are relevant to any party's claim or defense, or reasonably proportional to the needs of this case. Responding Party further objects to this request to the extent that it seeks documents that are protected from disclosure by the attorney-client privilege and/or work-product doctrine.

Subject to and without waiver of the foregoing objections, Responding Party responds as follows: Responding Party has already searched its records and produced non-privileged responsive documents within its possession, custody, or control. While Responding Party has asserted the foregoing specific objections as a reservation of rights, Responding Party is not currently withholding any information or documents on the basis of any asserted objections. Responding Party is also not currently aware of any responsive privileged communications, other than communications with its undersigned counsel of record, but if other privileged communications are discovered, Responding Party will provide a privilege log.

**REQUEST FOR PRODUCTION NO. 48 [61]:**

Documents, including Communications, from any existing member, providing any explanation as to why they chose to terminate their relationship with HonorSociety [SIC].

**RESPONSE TO REQUEST FOR PRODUCTION NO. 48 [61]:**

Responding Party objects to the term "Document, including Communications, from any existing member" as vague, ambiguous, overbroad, and unduly burdensome, as it is unclear what exactly is being sought or what "member" refers to, and likewise, whether all such documents are relevant to any party's claim or defense, or reasonably proportional to the needs of this case. Responding Party further objects to this Request as unintelligible as is confusingly asks for records from existing members about why they terminated their relationship with Honor Society (i.e., why they are no longer existing members). Responding Party further objects to this request to the extent that it seeks documents that are protected from disclosure by the attorney-client privilege and/or work-product doctrine.

Subject to and without waiver of the foregoing objections, Responding Party responds as follows: Responding Party has already searched its records and produced non-privileged responsive documents within its possession, custody, or control. While Responding Party has asserted the foregoing specific objections as a reservation of rights, Responding Party is not currently withholding any information or documents on the basis of any asserted objections. Responding Party is also not currently aware of any responsive privileged communications, other than communications with its undersigned counsel of record, but if other privileged communications are discovered, Responding Party will provide a privilege log.

**REQUEST FOR PRODUCTION NO. 49 [62]:**

Documents demonstrating your requirements for Membership over time since inception, and if applicable, how they differ from the requirements for Membership

with PTK during that same period. If they have evolved over time, produce Documents demonstrating that evolution.

## **RESPONSE TO REQUEST FOR PRODUCTION NO. 49 [62]:**

Responding Party objects to this Request as overbroad and unduly burdensome to the extent it seeks production of material that is not relevant to any party's claim or defense nor proportional to the needs of this case. Responding Party further objects to this request to the extent it seeks documents that contain Responding Party's confidential and/or proprietary business information, including sensitive financial information, marketing plans and/or trade secrets. Responding Party further objects to this request to the extent the records sought are already within the possession, custody or control of Propounding Party.

Subject to and without waiver of the foregoing objections, Responding Party responds as follows: Responding Party has already searched its records and produced non-privileged responsive documents within its possession, custody, or control.  While Responding Party has asserted the foregoing specific objections as a reservation of rights, Responding Party is not currently withholding any information or documents on the basis of any asserted objections.  Responding Party is also not currently aware of any responsive privileged communications, other than communications with its undersigned counsel of record, but if other privileged communications are discovered, Responding Party will provide a privilege log.

Respectfully submitted,

Dated: November 20, 2023

*/s/ Michael A. Bernet*

Daniel A. Rozansky – PHV
Michael A. Bernet – PHV
STUBBS ALDERTON & MARKILES, LLP
15260 Ventura Blvd., 20th Floor
Sherman Oaks, California 91403
Tel: (818) 444-4500
E-mail: drozansky@stubbsalderton.com
E-mail: mbernet@stubbsalderton.com

## <u>Certificate of Service</u>

I hereby certify that on November 20, 2023, a copy of the foregoing was served via email upon the following counsel:

Jonathan G. Polak (Pro Hac Vice)
J. Mitchell Tanner, (Pro Hac Vice)
TAFT STETTINIUS & HOLLISTER LLP
One Indiana Square, Suite 3500 Indianapolis, IN 46204-2023
(317) 713-3500 – phone
(317) 713-3699 – fax
jpolak@taftlaw.com
mtanner@taftlaw.com

Rachel Smoot (Pro Hac Vice)
TAFT STETTINIUS & HOLLISTER LLP
41 S. High Street, Suite 1800
Columbus, OH 43215
(614) 221-2838 – phone
(614) 221-2007 – fax
rsmoot@taftlaw.com

Michael B. Wallace, MSB # 6904
WISE CARTER CHILD & CARAWAY,
P.A. Post Office Box 651
Jackson, Mississippi 39205
Phone 601-968-5500

*Counsel for Plaintiff*

*/s/ Michael A. Bernet*

_____
Michael Bernet

# EXHIBIT 10

Page 1

1                    UNITED STATES DISTRICT COURT

2          SOUTHERN DISTRICT OF MISSISSIPPI, NORTHERN DIVISION

3

4       _____
                                         )
5       Phi Theta Kappa Honor Society,   )
                                         ) Civil Action No.:
6            Plaintiff/Counter-Defendant ) 3:22-cv-00208-CWR-RPM
                                         )
7       v.                               ) Volume I
                                         )
8       HonorSociety.org, Inc.,          )
                                         )
9            Defendant/Counter-Plaintiff )
             /Third-Party-Plaintiff      )
10                                       )
        Honor Society Foundation, Inc.,  )
11                                       )
             Defendant                   )
12      _____ )
                                         )
13      HonorSociety.org, Inc.           )
                                         )
14           Defendant/Counter Plaintiff )
             /Third-Party-Plaintiff      )
15                                       )
        v.                               )
16                                       )
        Dr. Lynn Tichner-Ladner,         )
17                                       )
             Third-Party Defendant       )
18      _____ )

19

20              VIDEOTAPED DEPOSITION OF DAVID SUDOLSKY

21                       Irvine, California

22                   Tuesday, August 27, 2024

23

        Reported by:
24      JOSEPHINE C. NOKES, CSR No. 9098
        Job No. 6877840
25      PAGES 1-183

Page 2

```
 1                   UNITED STATES DISTRICT COURT
 2          SOUTHERN DISTRICT OF MISSISSIPPI, NORTHERN DIVISION
 3
 4      _____
                                               )
 5      Phi Theta Kappa Honor Society,         )
                                               ) Civil Action No.:
 6           Plaintiff/Counter-Defendant       ) 3:22-cv-00208-CWR-RPM
                                               )
 7      v.                                     ) Volume I
                                               )
 8      HonorSociety.org, Inc.,                )
                                               )
 9           Defendant/Counter-Plaintiff       )
             /Third-Party-Plaintiff            )
10                                             )
        Honor Society Foundation, Inc.,        )
11                                             )
             Defendant                         )
12      _____)
                                               )
13      HonorSociety.org, Inc.                 )
                                               )
14           Defendant/Counter Plaintiff       )
             /Third-Party-Plaintiff            )
15                                             )
        v.                                     )
16                                             )
        Dr. Lynn Tichner-Ladner,               )
17                                             )
             Third-Party Defendant             )
18      _____)
19
20            Videotaped Deposition of DAVID SUDOLSKY,
21      Volume I, taken on behalf of Plaintiff/Counter-Defendant,
22      at Payne & Fears, 4 Park Plaza, Suite 1100, Irvine,
23      California, beginning at 9:08 a.m. and ending at 1:08 p.m.
24      on Tuesday, August 27, 2024, before JOSEPHINE C. NOKES,
25      Certified Shorthand Reporter No. 9098.
```

Page 39

1      A    Yes.

2      Q    And then it goes on and it talks about core

3   values of Honor Society.  It talks about benefits and

4   membership refund proposal, policy.  But you go onto the

5   next page and it says, "What is our Role?"  Do you see

6   that?

7      A    Yes.

8      Q    And in that, this document states, quote, As a

9   part of the support team, we assist the members of Honor

10  Society through chat, textline, call, and email support in

11  processing customer transactions.  This includes general

12  inquiries, account navigation, login concerns, and

13  membership cancellations.

14          Does that describe in a nutshell what the

15  original goal of this relationship with Honor Society was

16  supposed to achieve?

17     A    Yes.

18     Q    So when we're talking about textline, what does

19  that mean?

20     A    This would be SMS phone text.

21     Q    So was your organization actually responding to

22  text messages sent to Honor Society?

23     A    I can't guarantee that.  I believe so, and if it

24  was, it would be done through Zendesk which is the tool

25  that manages all of the different support channels and text

Page 40

1    is a support channel.

2         Q    Okay, and Zendesk is a software platform that was

3    maintained by Honor Society, not your organization?

4         A    That is correct.

5         Q    But Honor Society gave you credentials so that

6    you could access it?

7         A    They provisioned access, yes.

8         Q    Call, going back to, "What is our role?"  What

9    was the call function that your team was supposed to do?

10        A    We would handle inbound phone calls, inbound

11   customer support phone calls.

12        Q    Was there an 800 number or something like that

13   that Honor Society maintained?

14        A    I believe so.

15        Q    And those calls would come in and would they get

16   immediately directed to your team?

17        A    Through Zendesk or the phone system, yes.

18        Q    And was that in realtime or would the call come

19   in and then you had to call them back?

20        A    I don't know.  I would assume it would be

21   realtime.

22        Q    What about email support?  What types of

23   activities would that relate to?

24        A    Typically when customers, our clients' customers

25   leave, like submit a ticket on our website, that gets

Page 41

1    drafted into an email queue, an email support queue through

2    Zendesk, and so our team would be responsible for

3    responding to those in an email format.

4        Q    Was it your practice back in 2017 to 2020 to

5    record inbound call communications between customer service

6    and the customer?  The customer meaning the student, not

7    Honor Society.

8        A    We would leverage the systems and tools of our

9    clients and Zendesk and other phone systems have a way to

10   record those phone calls in order to manage quality

11   assurance, so yes.

12       Q    Do you know whether every call was recorded or

13   only some?

14       A    I don't know.

15       Q    So the rest of this document, if you want to

16   thumb through, does it give basically a roadmap to the team

17   for navigating these various different software platforms

18   to do the work that you were hired to do?

19       A    Yes.

20       Q    And so it goes through Zendesk.  It goes through

21   Drupal, D-R-U-P-A-L?

22       A    Yes.

23       Q    What is Drupal?

24       A    Honestly, I'm not too sure.

25       Q    Okay.

Page 178

1

2          I, DAVID SUDOLSKY, do hereby declare under

3     penalty of perjury that I have read the foregoing

4     transcript; that I have made any corrections as appear

5     noted, in ink, initialed by me, or attached hereto; that my

6     testimony as contained herein, as corrected, is true and

7     correct.

8          Executed this _____ day of _____,

9     2024, at _____, _____.

10                    (City)                        (State)

11

12

13          _____

14               DAVID SUDOLSKY

15               Volume I

16

17

18

19

20

21

22

23

24

25

Page 179

1                    REPORTER'S CERTIFICATE

2

3          I, the undersigned, a Certified Shorthand

4    Reporter of the State of California, do hereby certify:

5          That the foregoing proceedings were taken before

6    me at the time and place herein set forth; that any

7    witnesses in the foregoing proceedings, prior to

8    testifying, were placed under oath; that a verbatim record

9    of the proceedings was made by me using machine shorthand

10   which was thereafter transcribed under my direction;

11   further, that the foregoing is an accurate transcription

12   thereof.

13          I further certify that I am neither financially

14   interested in the action nor a relative or employee of any

15   attorney or any of the parties.

16          IN WITNESS WHEREOF, I have this date subscribed

17   my name.

18

19   Dated:    09/07/2024

20

21                    *Josephine C. Nokes*

22                    JOSEPHINE C. NOKES

23                    CSR No. 9098

24

25

# EXHIBIT 11

**Walsh, Christine**

| | |
|---|---|
| **From:** | Derek Linke <Linke@newmanlaw.com> |
| **Sent:** | Tuesday, September 10, 2024 7:39 AM |
| **To:** | Polak, Jonathan |
| **Cc:** | Cassady, DeeAnn; Derek A. Newman; Whit Rayner; Dakota Stephens; kcallahan@joneswalker.com; hwarren@joneswalker.com; Smoot, Rachel A.; Michael B. Wallace - Wise Carter (mbw@wisecarter.com); Etienne, Mike; Charles Cowan; b2bettiga@gmail.com; Devonnie Wharton |
| **Subject:** | Re: [EXTERNAL]RE: Phi Theta Kappa Honor Society, et al. v. HonorSociety, Org., et al. |
| **Attachments:** | Newman and Jones Walker Counsel Discovery Letter 8-28-24.pdf |

Jonathan,

Can you please let us know where in the transcript you believe Mr. Sudolsky testified that HonorSociety made such recordings? We are investigating this and will respond by this Friday, September 13.

Thank you.

Derek Linke
Newman LLP
direct (206) 274-2827
mobile (206) 669-3638

On Sep 6, 2024, at 12:00 PM, Polak, Jonathan <JPolak@taftlaw.com> wrote:

Counsel,

We requested the courtesy of a response by September 3rd (Tuesday) to this communication, including whether the responsive documents will be produced by September 13th (a week from today). Please respond today to whether you will be providing these documents by the 13th, or otherwise providing the information as to whether they exist or were destroyed (and when). If not, we will add this to the growing list of issues to present to Magistrate Judge Myers.

**Taft/**

**Jonathan G. Polak**
Partner
JPolak@taftlaw.com
Dir: 317.713.3532
Tel: 317.713.3500  |  Fax: 317.713.3699
One Indiana Square, Suite 3500
Indianapolis, Indiana 46204-2023

**taftlaw.com**

This message may contain information that is attorney-client privileged, attorney work product or otherwise confidential. If you are not an intended recipient, use and disclosure of this message are prohibited. If you received this transmission in error, please notify the sender by reply e-mail and delete the message and any attachments.

**From:** Cassady, DeeAnn <DCassady@taftlaw.com>
**Sent:** Thursday, August 29, 2024 12:26 PM
**To:** linke@newmanlaw.com; dn@newmanlaw.com; wrayner@joneswalker.com; dstephens@joneswalker.com; kcallahan@joneswalker.com; hwarren@joneswalker.com
**Cc:** Smoot, Rachel A. <RSmoot@taftlaw.com>; Michael B. Wallace - Wise Carter (mbw@wisecarter.com) <mbw@wisecarter.com>; Etienne, Mike <METienne@taftlaw.com>; Charles Cowan <cec@wisecarter.com>; b2bettiga@gmail.com
**Subject:** Phi Theta Kappa Honor Society, et al. v. HonorSociety, Org., et al.

Counsel,

Please see the attached correspondence, sent on behalf of Jonathan Polak.

Let me know if you have any issues accessing the PDF.
Regards,
DeeAnn


*DeeAnn Cassady*
*Legal Assistant to Jonathan Polak*



One Indiana Square, Suite 3500 / Indianapolis, IN 46204-4609
Tel: 317.713.3500 / Fax: 317.713.3699
www.taftlaw.com

JONATHAN G. POLAK
317.713.3532
JPolak@taftlaw.com

August 29, 2024

**VIA EMAIL**

Derek Newman
Newman LLP
100 Wilshire Blvd., Ste. 700
Santa Monica, CA  90401
dn@newmanlaw.com

     Re:  *Phi Theta Kappa Honor Society, et al. v. HonorSociety.Org., et al.*

Derek:

     I'm in receipt of your letter of yesterday's date concerning my August 19th letter to you about the supplementation of the records requests.

     My letter has nothing to do with any larger agreement concerning supplementation.  And I am unaware of any prior correspondence from you complaining of PTK or Dr. Tincher-Ladner's supplementation schedule.  Instead, the only communications have been from our office to yours on the subject, and the multiple instances of deficiencies.  So, your attempt to create a false narrative here is rejected.  Let us keep the discussion focused on the matter at hand.

     The issue of the records requests are unique and different from other issues related to supplementation.  You will recall that part of our concern is and has been the ability of PTK to engage with the recipients of the records requests so to mitigate the effect on PTK's relationships with those schools.  In that context, clearly the need for a faster disclosure pace is self-evident. It also forms the basis for my suggestion that you produce them within seven days of the communication. Certainly 30 days is too long for those circumstances, again for reasons I think are obvious.  We could accept ten (10) calendar days if that is more acceptable, but thirty is not going to be acceptable for our purposes.  At minimum, you are far outside what anyone could consider reasonable under these circumstances for documents *created in June of this year* and that there is no dispute over which they exist.

134573243v1

Derek Newman
August 29, 2024
Page 2


      Please confirm that you will be producing the records request-related documents by Friday next week.  I would note that we have an outstanding request for the survey results as well, and we have received no response from you to that letter.

                          Sincerely yours,

                          Jonathan G. Polak

JGP/dac

cc:     Daniel Linke (via email)
        Whit Rayner (via email)
        Dakota Stephens (via email)
        Kristine Callahan (via email)
        Hugh Warren (via email)
        Rachel Smoot (via email)
        Mike Etienne (via email)
        Mike Wallace (via email)
        Beau Bettiga (via email)
        Charles Cowan (via email)

# EXHIBIT 12



**Derek Linke**
Direct  +1.206.274.2827
Main    +1.310.359.8200
linke@newmanlaw.com

100 Wilshire Blvd, Suite 700
Santa Monica, CA  90401

**SENT BY EMAIL**

September 19, 2024

Jonathan G. Polak
Taft, Stettinius & Hollister, LLP
One Indiana Square, Suite 3500
Indianapolis, IN 46204
*jpolak@taftlaw.com*

Rachel A. Smoot
Taft Stettinius & Hollister, LLP
41 S. High Street, Suite 1800
Columbus, OH 43215
*rsmoot@taftlaw.com*

> **Re:** *Phi Theta Kappa v. HonorSociety.Org., Inc., No. 22-cv-00208-CWR-RPM*
> **HonorSociety Zendesk Customer Service Call Recordings**

Counsel:

Your August 29, 2024 letter expressed concern that HonorSociety's production may be deficient by failing to include customer service call recordings maintained by Zendesk. In response, HonorSociety contacted Zendesk to determine whether any HonorSociety customer service calls had been recorded. HonorSociety was assured by multiple Zendesk representatives that, because HonorSociety's "plan does not have a call recording feature," "there [are] no call recordings." Zendesk further confirmed that should HonorSociety upgrade its existing plan, that would enable the call recording feature "only for upcoming calls once the plan is upgraded." Attached to this letter is correspondence in which Zendesk repeatedly confirmed there were no call recordings.

Since the hearing with Judge Myers on September 17, 2024, HonorSociety has come across some evidence of call recordings despite Zendesk insisting there are none. HonorSociety is investigating the existence and scope of the recordings, whether they can be accessed and/or downloaded, and the burden for doing so.

Thank you,

NEWMAN LLP

Derek Linke

Encl.







HS_612536



HS_612537



HS_612538



HS_612539

# EXHIBIT 13

# United States District Court

## Southern District of Mississippi

## Jackson Division

| | |
|---|---|
| PHI THETA KAPPA HONOR SOCIETY, | Civil Action No. 3:22-cv-208-CWR-FKB |
| Plaintiff, | **DEFENDANT HONORSOCIETY.ORG, INC.'S SECOND AMENDED RESPONSE TO PLAINTIFF'S FIRST SET OF INTERROGATORIES** |
| v. | |
| HONORSOCIETY.ORG, INC., and MICHAEL MORADIAN, | |
| Defendants. | |

**PROPOUNDING PARTY:    PHI THETA KAPPA HONOR SOCIETY**

**RESPONDING PARTY:        HONORSOCIETY.ORG, INC.**

**SET NO.:                            One (1)**

    Defendant HONORSOCIETY.ORG, INC. ("Defendant," "Responding Party," or "Honor Society") hereby provides its second amended response to Plaintiff PHI THETA KAPPA HONOR SOCIETY's ("Plaintiff" or "Propounding Party") First Set of Interrogatories ("Interrogatories"), as follows:

## <u>PRELIMINARY STATEMENT</u>

    It should be noted that this Responding Party has not completed its discovery in this action and has not fully completed its preparation for trial. The answers contained in these responses are based only on the information and documents which are presently available and specifically known to this Responding Party and disclose only those contentions which presently are apparent to this Responding Party.

1

Additionally, further discovery, independent investigation, legal research, and analysis may supply additional facts, add meaning to known facts, and establish entirely new factual conclusions and legal contentions, all of which may lead to substantial additions to, changes in variations from the contentions set forth herein.

According, these responses are given without prejudice to Responding Party's right to produce evidence of subsequently discovered facts, of which this Responding Party may later recall. Responding Party accordingly reserves the right to change any and all answers herein as additional facts and additional analysis are made, legal research is completed, and contentions are made.

These answers and/or documents supplied in this set of responses are provided in a good faith effort to supply as much factual information and as much specification of legal contentions as is presently known, but should in no way prejudice this Responding Party in relation to further discovery, research and analysis and producing additional information at time of trial.

These introductory comments shall apply to each and every answer given herein, and shall be incorporated by reference as though fully set forth in each and every response appearing in the following pages.

## **GENERAL OBJECTIONS**

Responding Party responds to each of the Interrogatories subject to the following general objections (the "General Objections"). These objections form a part of and are specifically incorporated into each of the Responses and Objections to Propounding Party's Interrogatories, even though they may not be specifically referred to in each and every response to each request. Failure to specifically refer to any of these General Objections in any specific response should not be construed as a waiver of same.

1.    Responding Party objects generally to the Interrogatories to the extent they potentially seek information that is protected from compelled disclosure by the

2

attorney/client privilege, the attorney work-product doctrine, or any other applicable right, privilege, or doctrine.

2.    Responding Party objects generally to the Interrogatories to the extent that they seek trade secrets, confidential, proprietary, sensitive, or financial information that is protected from disclosure by any applicable state or federal Constitution, statute, and/or case law that establishes a right to privacy for either Responding Party or any third party.

3.    Responding Party objects generally to the Interrogatories to the extent that the information requested is irrelevant, outside the scope of the issues raised in the operative pleadings, and/or not reasonably calculated to lead to the discovery of admissible evidence.

4.    Responding Party objects generally to the Interrogatories to the extent that the information requested and the burden of supplying it is not proportional to the needs of the case, including without limitation because the Interrogatories are unclear or overbroad in their potential scope, and/or susceptible to more than one meaning, and to the extent these Interrogatories seek information that is not at issue in this action.

5.    Responding Party further objects to each Interrogatory to the extent it is not proportional to the needs of the case in light of the cost necessary to investigate as weighed against Propounding Party's need for the information.  To the extent that responding to these Interrogatories will be extraordinarily expensive for Responding Party, Responding Party will be specifically requesting that Propounding Party reimburse Responding Party for appropriate costs, as may be allowed under the Federal Rules of Civil Procedure and any other applicable statute or case law.

6.    Responding Party objects generally to the Interrogatories to the extent that they seek expert information, the production of which is governed by the Federal Rules of Civil Procedure.  Responding Party will provide or identify such expert

3

documents as required by the Federal Rules of Civil Procedure at the times at which the Court has directed or may direct.

7.     Responding Party objects generally to the Interrogatories to the extent that they either singularly or collectively are unduly burdensome, oppressive, and/or harassing.

8.     Responding Party objects generally to the Interrogatories to the extent that they do not state with reasonable particularity the information requested.

9.     Responding Party objects generally to the Interrogatories to the extent that they seek information that is outside of Responding Party's possession, custody or control.

10.    Responding Party objects generally to the Interrogatories to the extent that Propounding Party has equal and/or similar access to the requested information, and to the extent that such information is publicly available and/or already within Propounding Party's possession, custody or control, on the grounds that such Interrogatories are unduly burdensome, oppressive and/or harassing.

11.    Responding Party objects generally to the Interrogatories to the extent that they are repetitive, duplicative, redundant, and/or overlapping.

12.    Responding Party objects generally to the Interrogatories to the extent that they are vague, ambiguous, compound, confusing, unintelligible, unclear, and/or amenable to different meanings, understandings, or interpretations.  Responding Party will respond to each request as it interprets and understands it.

13.    Responding Party objects generally to the Interrogatories to the extent that they seek to impose duties or obligations different from, additional to, or otherwise beyond those required by the Federal Rules of Civil Procedure.

14.    Responding Party objects generally to the Interrogatories to the extent that they are not limited to a particular time period.

15.    All responses hereto are made on information and belief.

16.     Responding Party objects generally to the Interrogatories to the extent they exceed the number of interrogatories agreed upon by the parties and ordered by the Court in its Case Management Order, which "are limited to 25 succinct questions." (Dkt. 59.)

Without waiver of the foregoing, Responding Party responds as follows:

## RESPONSES TO INTERROGATORIES (SET ONE)

## INTERROGATORY NO. 1 [1]:

Identify all persons who provided information relied upon by HonorSociety [SIC] in preparing responses to these interrogatories and requests for the production of documents, served concurrently with these interrogatories.  If multiple people, identify which information was supplied by which person.

## RESPONSE TO INTERROGATORY NO. 1 [1]:

Responding Party responds to each discrete subpart of this Interrogatory as its own Interrogatory, as follows:

(a)     Identify all persons who provided information relied upon by Honor Society in preparing responses to these interrogatories.  If multiple people, identify which information was supplied by which person.

Responding Party objects to this Interrogatory as overbroad and unduly burdensome to the extent it seeks information that is not relevant to any party's claim or defense nor proportional to the needs of this case.  Responding Party further objects to this interrogatory to the extent it seeks disclosure of information protected by the attorney client privilege.

Subject to and without waiver of the foregoing objections, Responding Party responds as follows: Michael Moradian, President, Treasurer, and Director of Honor Society, c/o Stubbs Alderton & Markiles, LLP, 15260 Ventura Blvd., 20th Floor, Sherman Oaks, California 91403; Telephone number (818) 444-4500.

(b)    <u>Identify all persons who provided information relied upon by Honor Society in preparing responses to the requests for production of documents.  If multiple people, identify which information was supplied by which person.</u>

Responding Party objects to this Interrogatory as overbroad and unduly burdensome to the extent it seeks information that is not relevant to any party's claim or defense nor proportional to the needs of this case.  Responding Party further objects to this interrogatory to the extent it seeks disclosure of information protected by the attorney client privilege.

Subject to and without waiver of the foregoing objections, Responding Party responds as follows: Michael Moradian, President, Treasurer, and Director of Honor Society, c/o Stubbs Alderton & Markiles, LLP, 15260 Ventura Blvd., 20th Floor, Sherman Oaks, California 91403; Telephone number (818) 444-4500.

**INTERROGATORY NO. 2 [2]:**

Identify all employees of HonorSociety [SIC] since inception, along with their titles and dates of employment.  For any former employees, please provide their last known contact information.

**RESPONSE TO INTERROGATORY NO. 2 [2]:**

Responding Party objects to this Interrogatory as overbroad and unduly burdensome to the extent it seeks information that is not relevant to any party's claim or defense nor proportional to the needs of this case.  Responding Party further objects to this Interrogatory to the extent it seeks Responding Party's confidential information.

Subject to and without waiver of the foregoing objections, Responding Party responds as follows:

(1)    Susan K. Acheff, 9 Canoa Hills Drive, Henderson, NV 89052; Email: <u>susan.acheff@honorsociety.org</u>; Telephone number: (858) 204-1444.

Susan was employed by Honor Society from June 2016 to January 2018.

(2)    Mariah F. Allen, 3875 Cambridge Street, #401, Las Vegas, NV 89119; Email: allen.mariah016@gmail.com; Telephone number: (210) 867-3411. Mariah was employed by Honor Society from February 2019 to December 2019.

(3)    Alessandra E. Bifulco, Former Employee, Chapter Development and Services for Honor Society, 3055 Errol Flynn Street, #103, Las Vegas, NV 89122; Email: alessandra.bifulco@honorsociety.org; Telephone number: (805) 732-7486. Alessandra was employed by Honor Society from April 2016 to June 2017.

(4)    Mikal F. Calvert, Operations Manager and Director of Marketing for Honor Society, c/o Stubbs Alderton & Markiles, LLP, 15260 Ventura Blvd., 20th Floor, Sherman Oaks, California 91403; Telephone number (818) 444-4500. Mikal has been employed by Honor Society from July 2018 to the present.

(5)    Ashleigh S. Finch, 8822 Imperial Forest Street, Las Vegas, NV 89139; Email: afinch@knoah.com; Telephone number: (702) 561-2201. Ashleigh was employed by Honor Society from November 2016 to March 2022.

(6)    Tina Murtaugh, Publicity and Social Media for Honor Society, c/o Stubbs Alderton & Markiles, LLP, 15260 Ventura Blvd., 20th Floor, Sherman Oaks, California 91403; Telephone number (818) 444-4500. Tina has been employed by Honor Society from November 2015 to the present.

(7)     Shaday Pankey, 6748 Arctic Breeze Street, Las Vegas, NV 89084; Email: mj4ever93@ymail.com; Telephone number: (702) 472-1609. Shaday was employed by Honor Society from April 2019 to July 2021.

(8)     Burjiss Pavri, Former Employee, Programmer for Honor Society, 4333 SW Willow Street, Seattle, WA 98136; burjiss@gmail.com; Telephone number: (213) 400-2438. Burjiss was employed by Honor Society from December 2021 to April 2023.

(9)     Kara A. Roessner, 1606 Lefty Garica, Henderson, NV 89002; Email: kara.roessner@honorsociety.org; Telephone number: (702) 485-8037. Kara was employed by Honor Society from December 2015 to June 2016.

(10)    Monica S. Woodhams, Former Employee, Chapter Development and Services for Honor Society, 1240 W 57th Terr, Kansas City, MO 64113; Email: monica.woodhams@gmail.com; Telephone number: (913) 375-5784. Monica was employed by Honor Society from November 2015 to April 2019.

**INTERROGATORY NO. 3 [3]:**

Identify all past and present executive officers, directors, partners, shareholders, or owners of Honor Society. Include in Your answer dates of titles, dates of service and/or ownership, and if no longer associated with Honor Society, last known contact information.

**RESPONSE TO INTERROGATORY NO. 3 [3]:**

Responding Party objects to this Interrogatory as overbroad and unduly burdensome to the extent it seeks information that is not relevant to any party's claim or defense nor proportional to the needs of this case. Responding Party further objects to this Interrogatory to the extent it seeks Responding Party's confidential and/or proprietary business information. Responding Party further objects to the

extent this Interrogatory seeks private information of natural persons who are not parties to this litigation.

Subject to and without waiver of the foregoing objections, Responding Party responds as follows: Michael Moradian, President, Treasurer, and Director of Honor Society, c/o Stubbs Alderton & Markiles, LLP, 15260 Ventura Blvd., 20th Floor, Sherman Oaks, California 91403; Telephone number (818) 444-4500. Michael has served as the President, Treasurer, and Director of Honor Society since it was founded in January 2014.

**INTERROGATORY NO. 4 [4]:**

Identify all persons that contributed to the decision by You to select blue and gold as colors for use by You in your business, including marketing efforts, and include in your answer a description of their contribution.

**RESPONSE TO INTERROGATORY NO. 4 [4]:**

Responding Party objects to the phrase "contributed to the decision" as vague and ambiguous. Responding Party further objects to this Interrogatory as overbroad and unduly burdensome to the extent it seeks information that is not relevant to any party's claim or defense nor proportional to the needs of this case. Responding Party further objects to this Interrogatory to the extent it seeks Responding Party's confidential and/or proprietary business information, including sensitive financial information, marketing plans and/or trade secrets.

Subject to and without waiver of the foregoing objections, Responding Party responds as follows:

(1)    David Asari, 9049 Elevado St., West Hollywood, CA 90063; (805) 368-3312; david@campusbuddy.com. David helped select the final blue and gold colors and design to be used for Honor Society's logo.

9

(2)     Carolyn P. Asuncion, 788 Harrison Street, #635, San Francisco, CA 94017. Carolyn helped organize a competition for freelancer designers to submit their best designs to be used as Honor Society's logo.

(3)     Mari Ettlinger, marilisa67@gmail.com. Mari is a UX Designer who made design changes to Honor Society's website.

(4)     Michael Moradian, President, Treasurer, and Director of Honor Society, c/o Stubbs Alderton & Markiles, LLP, 15260 Ventura Blvd., 20th Floor, Sherman Oaks, California 91403; Telephone number (818) 444-4500. Michael also wrote up the initial specifications for Honor Society's logo. Michael also helped select the final blue and gold design to be used as Honor Society's logo via the freelancer submission competition that Carolyn helped organize.

(5)     Nader Moradian, Administration, Human Resources and Accounting for Honor Society, c/o Stubbs Alderton & Markiles, LLP, 15260 Ventura Blvd., 20th Floor, Sherman Oaks, California 91403; Telephone number (818) 444-4500. Nader voted on the final five design options for Honor Society's logo.

(6)     Burjiss Pavri, Former Employee, Programmer for Honor Society, 4333 SW Willow Street, Seattle, WA 98136; burjiss@gmail.com; Telephone number: (213) 400-2438. Burjiss voted on the final five design options for Honor Society's logo.

(7)     Nima Samadi, (805) 427-4315, nima.samadi@gmail.com. Nima helped select the blue and gold colors and final five design options to be used for Honor Society's logo.

## INTERROGATORY NO. 5 [5-6]:

Identify all persons that were involved in the creation of HonorSociety.org, Inc., including the selection of the name and consideration of alternative names, and

include in your answer a description of their involvement.

**RESPONSE TO INTERROGATORY NO. 5 [5-6]:**

Responding Party objects to this Interrogatory as compound as it seeks information concerning at least two distinct topics, namely, the identity of persons involved in (a) the creation of HonorSociety.org and (b) the selection of the name HonorSociety.org and consideration of alternative names. Responding Party responds to each discrete subpart of this Interrogatory as its own Interrogatory, as follows:

(a)    <u>Identify all persons that were involved in the creation of HonorSociety.org, Inc.</u>

Responding Party objects to this Interrogatory as overbroad and unduly burdensome to the extent it seeks information that is not relevant to any party's claim or defense nor proportional to the needs of this case.

Subject to and without waiver of the foregoing objections, Responding Party responds as follows:

(1)    David Asari, 9049 Elevado St., West Hollywood, CA 90063; (805) 368-3312; david@campusbuddy.com. David provided input in the creation of Honor Society.

(2)    Carolyn P. Asuncion, 788 Harrison Street, #635, San Francisco, CA 94017. Carolyn helped come up with the idea of Honor Society, and helped design Honor Society's logo.

(3)    Michael Moradian, President, Treasurer, and Director of Honor Society, c/o Stubbs Alderton & Markiles, LLP, 15260 Ventura Blvd., 20th Floor, Sherman Oaks, California 91403; Telephone number (818) 444-4500. Michael founded Honor Society, helped fund it, and provided administrative assistance to Honor Society when it was formed.

(4)    Nader Moradian, Administration, Human Resources and Accounting for Honor Society, c/o Stubbs Alderton & Markiles, LLP, 15260 Ventura Blvd., 20th Floor, Sherman Oaks, California 91403; Telephone number (818) 444-4500. Nader provided administrative assistance to Honor Society when it was formed.

(5)    Burjiss Pavri, Former Employee, Programmer for Honor Society, 4333 SW Willow Street, Seattle, WA 98136; burjiss@gmail.com; Telephone number: (213) 400-2438. Burjiss was the lead programmer for the creation of Honor Society's website.

(6)    Nima Samadi, (805) 427-4315, nima.samadi@gmail.com. Nima provided input in the creation of Honor Society.

(b)    <u>Identify all persons that were involved in the selection of the name HonorSociety.org, Inc. and consideration of alternative names.</u>

Responding Party objects to this Interrogatory as overbroad and unduly burdensome because it seeks information that is not relevant to any party's claim or defense, and is proportional to the needs of this case.

Subject to and without waiver of the foregoing objections, Responding Party responds as follows:

(1)    David Asari, 9049 Elevado St., West Hollywood, CA 90063; (805) 368-3312; david@campusbuddy.com. David provided input in the creation of Honor Society and helped select its name.

(2)    Carolyn P. Asuncion, 788 Harrison Street, #635, San Francisco, CA 94017. Carolyn helped come up with the idea of Honor Society.

(3)    Michael Moradian, President, Treasurer, and Director of Honor Society, c/o Stubbs Alderton & Markiles, LLP, 15260 Ventura Blvd., 20th Floor, Sherman Oaks, California 91403; Telephone number (818)

444-4500. Michael founded Honor Society, helped fund it, and provided administrative assistance to Honor Society when it was formed.

(4)    Nima Samadi, (805) 427-4315, nima.samadi@gmail.com. Nima provided input in the creation of Honor Society.

## INTERROGATORY NO. 6 [7]:

Identify all persons who have had responsibility for the marketing and/or promotion of HonorSociety [SIC] since inception. Include in your answer a general description of their responsibilities.

## RESPONSE TO INTERROGATORY NO. 6 [7]:

Responding Party objects to this Interrogatory as overbroad and unduly burdensome to the extent it seeks information that is not relevant to any party's claim or defense nor proportional to the needs of this case. Responding Party further objects to this Interrogatory to the extent it seeks Responding Party's confidential and/or proprietary business information.

Subject to and without waiver of the foregoing objections, Responding Party responds as follows:

(1)    Troop Social. Troop Social assisted with creating and posting social media posts.

(2)    Next Net Media, LLC d/b/a The HOTH. The HOTH helped create and post articles and blog posts.

(3)    Social Boost. Social Boost Assisted with social media engagement and growth.

(4)    Tweepi Limited. Tweepi assisted with Twitter audience engagement.

(5)    AdRoll (now called NextRoll, Inc.). AdRoll assisted with social media and display advertising.

13

(6)     Mark Anten, markanten@yahoo.com, (310) 704-7966.  Mark assisted with creating images, including image "memes", for use in social media.

(7)     Mariah F. Allen, 3875 Cambridge Street, #401, Las Vegas, NV 89119; Email: allen.mariah016@gmail.com; Telephone number: (210) 867-3411. Mariah helped coordinate chapters, including posting images and descriptions of chapter events.

(8)     Alessandra E. Bifulco, Former Employee, Chapter Development and Services for Honor Society, 3055 Errol Flynn Street, #103, Las Vegas, NV 89122; Email: alessandra.bifulco@honorsociety.org; Telephone number: (805) 732-7486. Alessandra helped manage Honor Society's social media accounts, including accounts on Facebook, Twitter, Instagram, and YouTube.

(9)     Mikal F. Calvert, Operations Manager and Director of Marketing for Honor Society, c/o Stubbs Alderton & Markiles, LLP, 15260 Ventura Blvd., 20th Floor, Sherman Oaks, California 91403; Telephone number (818) 444-4500. Mikal helped oversee Honor Society's social media and marketing efforts.

(10)    Michael Moradian, President, Treasurer, and Director of Honor Society, c/o Stubbs Alderton & Markiles, LLP, 15260 Ventura Blvd., 20th Floor, Sherman Oaks, California 91403; Telephone number (818) 444-4500. Michael provided feedback on the efforts of Honor Society's marketing team.

(11)    Tina Murtaugh, Publicity and Social Media for Honor Society, c/o Stubbs Alderton & Markiles, LLP, 15260 Ventura Blvd., 20th Floor, Sherman Oaks, California 91403; Telephone number (818) 444-4500.

14

Tina helped manage Honor Society's social media accounts, including accounts with Facebook, Twitter, Instagram, YouTube.

(12)    Kara A. Roessner, 1606 Lefty Garica, Henderson, NV 89002; Email: kara.roessner@honorsociety.org; Telephone number: (702) 485-8037. Kara helped manage Honor Society's social media accounts, including accounts with Facebook, Twitter, Instagram, YouTube.

(13)    Monica S. Woodhams, Former Employee, Chapter Development and Services for Honor Society, 1240 W 57th Terr, Kansas City, MO 64113; Email: monica.woodhams@gmail.com; Telephone number: (913) 375-5784. Monica helped design designed Honor Society's social media templates and posting calendar.

## INTERROGATORY NO. 7 [8]:

Identify all third-parties providing assistance in any form for email or direct mail marketing services for HonorSociety [SIC] since inception.

## RESPONSE TO INTERROGATORY NO. 7 [8]:

Responding Party objects to the term "providing assistance in any form" as vague, ambiguous, overbroad, and unduly burdensome, as it is unclear what exactly is being sought, and likewise, whether all such documents are relevant to any party's claim or defense, or reasonably proportional to the needs of this case. Responding Party further objects to this Interrogatory to the extent it seeks Responding Party's confidential and/or proprietary business information.

Subject to and without waiver of the foregoing objections, Responding Party responds as follows: Goldner Associates, Inc. has provided assistance to Responding Party for direct mail marketing services.

## INTERROGATORY NO. 8 [9]:

Identify all third-parties from which You purchased, sourced or obtained merchandise later offered to HonorSociety [SIC] members or prospective members,

15

either online or otherwise since inception.

**RESPONSE TO INTERROGATORY NO. 8 [9]:**

Responding Party objects to this Interrogatory as overbroad and unduly burdensome to the extent it seeks information that is not relevant to any party's claim or defense nor proportional to the needs of this case. Responding Party further objects to this Interrogatory to the extent it seeks Responding Party's confidential and/or proprietary business information.

Subject to and without waiver of the foregoing objections, Responding Party responds as follows:

     (1)     Alibaba Group Holding Limited

     (2)     Corporate Pride, LLC

     (3)     Church Hill Classics, Ltd.

     (4)     Goldner Associates, Inc.

     (5)     Hofmann & Leavy, dba Tassel Depot.

**INTERROGATORY NO. 9 [10-11]:**

Explain the relationship between You and the HonorSociety [SIC] Foundation. Include in your answer the identification of any common officers, directors, employees and/or known contractors, vendors or suppliers.

**RESPONSE TO INTERROGATORY NO. 9 [10-11]:**

Responding Party objects to this Interrogatory as compound as it seeks information concerning at least two distinct topics, namely, (a) the relationship between Responding Party and Honor Society Foundation and (b) the identity of any common officers, directors, employees and/or known contractors, vendors or suppliers. Responding Party responds to each discrete subpart of this Interrogatory as its own Interrogatory, as follows:

     (a)     <u>Explain the relationship between You and the Honor Society Foundation.</u>

16

Responding Party objects to this Interrogatory as overbroad and unduly burdensome because it seeks information that is not relevant to any party's claim or defense nor proportional to the needs of this case. Responding Party further objects to this Interrogatory to the extent it seeks Responding Party's confidential and/or proprietary business information, including sensitive financial information, marketing plans and/or trade secrets.

Subject to and without waiver of the foregoing objections, Responding Party responds as follows: Honor Society Foundation is a non-profit corporation that was created in order to help provide scholarships to high achievers, build educational content, and preserve honor society history. Honor Society Foundation was funded by donations from Honor Society members, which were matched by Honor Society, as well as from a third-party philanthropist who is not an Honor Society member. Scholarships advertised through the Honor Society website are provided by Honor Society Foundation.

    (b)   <u>Identify any common officers, directors, employees and/or known contractors, vendors or suppliers between You and the Honor Society Foundation.</u>

Responding Party objects to this Interrogatory as overbroad and unduly burdensome because it seeks information that is not relevant to any party's claim or defense nor proportional to the needs of this case. Responding Party further objects to this Interrogatory to the extent it seeks Responding Party's confidential and/or proprietary business information, including sensitive financial information, marketing plans and/or trade secrets.

Subject to and without waiver of the foregoing objections, Responding Party responds as follows: Michael Moradian and Mikal Calvert are the only common officers, directors, employees and/or contractors. There are no common vendors or suppliers.

## INTERROGATORY NO. 10 [12]:

Identify all ways in which you market Your company and/or its goods/services to potential or existing customers, since inception.  If it has changed at all over time, describe those changes.  If applicable, include in your answer the identification of any internet websites, social media accounts, etc. that are responsive to this interrogatory.

## RESPONSE TO INTERROGATORY NO. 10 [12]:

Responding Party objects to this Interrogatory as overbroad and unduly burdensome to the extent it seeks information that is not relevant to any party's claim or defense nor proportional to the needs of this case.  Responding Party further objects to this Interrogatory as vague, ambiguous, overbroad and unduly burdensome with respect to the term "all ways."  Responding Party further objects to this Interrogatory to the extent it seeks Responding Party's confidential and/or proprietary business information, including sensitive financial information, marketing plans and/or trade secrets.

Subject to and without waiver of the foregoing objections, Responding Party responds as follows: Since its inception in January 2014, Responding Party has used Email, Display Marketing, and Search Engine Marketing (SEM) for marketing purposes.  Responding Party sends e-mail invitations to potential members and places Google Ads inviting the general public to interact with Responding Party's organization.  Since 2016, Responding Party has used Direct Mail to send invitations to potential members.  Since 2022, Responding Party has communicated to potential members and invited them to join via Short Message Service (SMS) if they have opted-in to such communications.  Responding Party has also engaged in marketing efforts through the activities of its school chapters, as well as in-person marketing.  In particular, Honor Society has hosted events with its school chapters, member

18

events at NBA and NHL games, member banquets, and member trips to locations such as Washington D.C. and Los Angeles.

## INTERROGATORY NO. 11 [13-14]:

Identify all persons with control (i.e., the ability to post as HonorSociety [SIC] or directly remove any posts of third parties) over any social media account of HonorSociety [SIC] or Moradian since inception, and the duration of that control.

## RESPONSE TO INTERROGATORY NO. 11 [13-14]:

Responding Party objects to this Interrogatory as compound as it seeks information concerning at least two distinct topics, namely, the identity of all persons with control over any social media account of (a) Honor Society or (b) Moradian. Responding Party responds to each discrete subpart of this Interrogatory as its own Interrogatory, as follows:

(a) Identify all persons with control (i.e., the ability to post as Honor Society or directly remove any posts of third parties) over any social media account of Honor Society since inception, and the duration of that control.

Responding Party objects to this Interrogatory as overbroad and unduly burdensome to the extent it seeks information that is not relevant to any party's claim or defense nor proportional to the needs of this case.

Subject to and without waiver of the foregoing objections, Responding Party responds as follows:

(1) Troop Social. Troop Social has had control over various social media accounts for Responding Party from 2017 to the present.

(2) Next Net Media, LLC d/b/a The HOTH. The HOTH has had control over various social media accounts for Responding Party from 2017 to the present.

(3)    Social Boost. Social Boost has had control over various social media accounts for Responding Party from 2020 to the present.

(4)    Tweepi Limited. Tweepi has had control over various social media accounts for Responding Party from 2017 to the present.

(5)    AdRoll (now called NextRoll, Inc.). AdRoll has had control over various social media accounts for Responding Party from 2017 to the present.

(6)    Mark Anten, markanten@yahoo.com, (310) 704-7966. Mark has had control over various social media accounts for Responding Party from 2019 to 2021.

(7)    Mariah F. Allen, 3875 Cambridge Street, #401, Las Vegas, NV 89119; Email: allen.mariah016@gmail.com; Telephone number: (210) 867-3411. Mariah had control over various social media accounts for Responding Party when employed by Responding Party from February 2019 to December 2019.

(8)    David Asari, 9049 Elevado St., West Hollywood, CA 90063; (805) 368-3312; david@campusbuddy.com. David has had control over various social media accounts for Responding Party from 2015 to the present.

(9)    Alessandra E. Bifulco, Former Employee, Chapter Development and Services for Honor Society, 3055 Errol Flynn Street, #103, Las Vegas, NV 89122; Email: alessandra.bifulco@honorsociety.org; Telephone number: (805) 732-7486. Alessandra had control over various social media accounts for Responding Party while employed by Responding Party from April 2016 to June 2017.

(10)    Mikal F. Calvert, Operations Manager and Director of Marketing for Honor Society, c/o Stubbs Alderton & Markiles, LLP, 15260 Ventura

Blvd., 20th Floor, Sherman Oaks, California 91403; Telephone number (818) 444-4500. Mikal has had control over various social media accounts for Responding Party since he was employed by Responding Party in 2018.

(11)   Kara A. Roessner, 1606 Lefty Garica, Henderson, NV 89002; Email: kara.roessner@honorsociety.org; Telephone number: (702) 485-8037. Kara had control over various social media accounts for Responding Party when she was employed by Responding Party from December 2015 to June 2016.

(12)   Mike Moradian, President, Treasurer, and Director of Honor Society, c/o Stubbs Alderton & Markiles, LLP, 15260 Ventura Blvd., 20th Floor, Sherman Oaks, California 91403; Telephone number (818) 444-4500. Mikal has had control over Responding Party's social media accounts since its it was founded in January 2014.

(13)   Tina Murtaugh, Publicity and Social Media for Honor Society, c/o Stubbs Alderton & Markiles, LLP, 15260 Ventura Blvd., 20th Floor, Sherman Oaks, California 91403; Telephone number (818) 444-4500. Tina has had control over various social media accounts for Responding Party since being employed by Responding Party on November 2015.

(14)   Burjiss Pavri, Former Employee, Programmer for Honor Society, 4333 SW Willow Street, Seattle, WA 98136; burjiss@gmail.com; Telephone number: (213) 400-2438. Burjiss had control over various social media accounts for Responding Party while employed by Responding Party from December 2015 to June 2016.

(15)   Monica S. Woodhams, Former Employee, Chapter Development and Services for Honor Society, 1240 W 57th Terr, Kansas City, MO 64113; Email: monica.woodhams@gmail.com; Telephone number:

(913) 375-5784. Monica had control over various social media accounts for Responding Party while employed by Responding Party from November 2015 to April 2019.

(b) Identify all persons with control (i.e., the ability to post as Honor Society or directly remove any posts of third parties) over any social media account of Moradian since inception, and the duration of that control.

Responding Party objects to this Interrogatory as overbroad and unduly burdensome because it seeks information that is not relevant to any party's claim or defense nor proportional to the needs of this case.

Subject to and without waiver of the foregoing objections, Responding Party responds as follows:

(1) Troop Social. Troop Social has had control over various social media accounts for Moradian from 2017 to the present.

(2) Social Boost. Social Boost has had control over various social media accounts for Moradian from 2020 to the present.

(3) Tweepi Limited. Tweepi has had control over various social media accounts for Moradian from 2017 to the present.

(4) Mark Anten, markanten@yahoo.com, (310) 704-7966. Mark has had control over various social media accounts for Moradian from 2019 to 2021.

(5) Mariah F. Allen, 3875 Cambridge Street, #401, Las Vegas, NV 89119; Email: allen.mariah016@gmail.com; Telephone number: (210) 867-3411. Mariah had control over various social media accounts for Moradian when employed by Responding Party from February 2019 to December 2019.

(6)     David Asari, 9049 Elevado St., West Hollywood, CA 90063; (805) 368-3312; david@campusbuddy.com. David has had control over various social media accounts for Moradian from 2015 to the present.

(7)     Mike Moradian, President, Treasurer, and Director of Honor Society, c/o Stubbs Alderton & Markiles, LLP, 15260 Ventura Blvd., 20th Floor, Sherman Oaks, California 91403; Telephone number (818) 444-4500. Mike has always had control over his own social media accounts.

(8)     Tina Murtaugh, Publicity and Social Media for Honor Society, c/o Stubbs Alderton & Markiles, LLP, 15260 Ventura Blvd., 20th Floor, Sherman Oaks, California 91403; Telephone number (818) 444-4500. Tina has had control over various social media accounts for Moradian since being employed by Responding Party on November 2015.

(9)     Burjiss Pavri, Former Employee, Programmer for Honor Society, 4333 SW Willow Street, Seattle, WA 98136; burjiss@gmail.com; Telephone number: (213) 400-2438. Burjiss had control over various social media accounts for Moradian while employed by Responding Party from December 2015 to June 2016.

(10)    Carolyn P. Asuncion, 788 Harrison Street, #635, San Francisco, CA 94017. Carolyn had control over various social media accounts for Moradian from 2010 to 2016.

## INTERROGATORY NO. 12 [15]:

If you use Google Analytics, identify the person(s) most knowledgeable about your account and your use of that software since inception.

## RESPONSE TO INTERROGATORY NO. 12 [15]:

Responding Party objects to this Interrogatory as overbroad and unduly burdensome because it seeks information that is not relevant to any party's claim or defense nor proportional to the needs of this case. Responding Party further objects

to this Interrogatory to the extent it seeks Responding Party's confidential and/or proprietary business information, including sensitive financial information, marketing plans and/or trade secrets.

Subject to and without waiver of the foregoing objections, Responding Party responds as follows: Michael Moradian, President, Treasurer, and Director of Honor Society, c/o Stubbs Alderton & Markiles, LLP, 15260 Ventura Blvd., 20th Floor, Sherman Oaks, California 91403; Telephone number (818) 444-4500.

## INTERROGATORY NO. 13 [16]:

Identify all search engine adword marketing programs You have participated in or used since inception. Include in Your answer the dates that any such marketing programs were in use, the people involved and the adwords that were used in the campaign.

## RESPONSE TO INTERROGATORY NO. 13 [16]:

Responding Party objects to this Interrogatory as overbroad and unduly burdensome because it seeks information that is not relevant to any party's claim or defense nor proportional to the needs of this case. Responding Party further objects to this Interrogatory to the extent it seeks Responding Party's confidential and/or proprietary business information, including sensitive financial information, marketing plans and/or trade secrets.

Subject to and without waiver of the foregoing objections, and limiting this response to the use of the terms "CAREER EDGE" and PTK" as adwords pursuant to the parties' agreement, Responding Party responds as follows: Responding Party has never used the terms "CAREER EDGE" or "PTK" as adwords in any search engine adword marking program.

## INTERROGATORY NO. 14 [17]:

Identify all references to PTK that have ever existed in connection with any marketing of HonorSociety [SIC], including without limitation to any email, direct

mail, website content, and social media content.

## RESPONSE TO INTERROGATORY NO. 14 [17]:

To the best of Responding Party's current knowledge, none.

## INTERROGATORY NO. 15 [18]:

For anyone who has ever confused HonorSociety [SIC] with PTK (or PTK with HonorSociety [SIC]) for any reason, identify the person(s), the nature of the confusion and the date of the confusion.

## RESPONSE TO INTERROGATORY NO. 15 [18]:

Responding Party objects to this Interrogatory as overbroad and unduly burdensome to the extent it seeks information that is not relevant to any party's claim or defense nor proportional to the needs of this case.

Subject to and without waiver of the foregoing objections, Responding Party responds as follows: An answer to this interrogatory may be determined by examining, auditing, compiling, abstracting, or summarizing Responding Party's business records, and the burden of deriving or ascertaining the answer would be substantially the same for Propounding Party as Responding Party. Accordingly, pursuant to Federal Rule of Civil Procedure 33(d), Responding Party refers to the following documents by bates number, which Responding Party has produced in discovery, and which are reasonably responsive to this Interrogatory: HS_129728, HS_130015, HS_130040, HS_130041, HS_130043-HS_130044, HS_130045-HS_130046, HS_130086-HS_130088, HS_130089-HS_130092, HS_130093-HS_130096, HS_130099-HS_130102, HS_130103-HS_130106, HS_130107-HS_130110, HS_130111-HS_130115, HS_133535-HS_133536, HS_138963-HS_138965, HS_139114, HS_140202, HS_142991, HS_170433, HS_170493, HS_170852-HS_170853, HS_170854-HS_170855, and HS_171567. Responding

Party is otherwise unaware of any oral communications in which a person expressed confused Honor Society as PT, or PTK as Honor Society.

## INTERROGATORY NO. 16 [19]:

Identify all uses of the CAREER EDGE Mark in commerce since inception. Include in your answer the manner of use, dates of use, and the person(s) most knowledgeable of that use.

## RESPONSE TO INTERROGATORY NO. 16 [19]:

Responding Party objects to this Interrogatory as vague, ambiguous, overbroad and unduly burdensome with respect to the terms "all uses" and "manner of use." Responding Party further objects to this Interrogatory to the extent it seeks Responding Party's confidential and/or proprietary business information, including sensitive financial information, marketing plans and/or trade secrets.

Subject to and without waiver of the foregoing objections, Responding Party responds as follows: Since 2016, Responding Party has used the CAREER EDGE Mark on the footer and header of its website (https://www.honorsociety.org) to promote Responding Party's services, including career insider tools available through vault.com. The person most knowledgeable of Responding Party's use of the CAREER EDGE Mark is Michael Moradian, President, Treasurer, and Director of Honor Society, c/o Stubbs Alderton & Markiles, LLP, 15260 Ventura Blvd., 20th Floor, Sherman Oaks, California 91403; Telephone number (818) 444-4500.

## INTERROGATORY NO. 17 [20]:

Identify the person(s) with the most knowledge of HonorSociety's [SIC] revenues, expenses and profit earned from January 1, 2016 to present.

**RESPONSE TO INTERROGATORY NO. 17 [20]:**

Responding Party objects to this Interrogatory as overbroad and unduly burdensome to the extent it seeks information that is not relevant to any party's claim or defense nor proportional to the needs of this case.

Subject to and without waiver of the foregoing objections, Responding Party responds as follows: Michael Moradian, President, Treasurer, and Director of Honor Society, c/o Stubbs Alderton & Markiles, LLP, 15260 Ventura Blvd., 20th Floor, Sherman Oaks, California 91403; Telephone number (818) 444-4500.

**INTERROGATORY NO. 18 [21-24]:**

Identify Your (a) gross revenues, (b) expenses, (c) advertising, marketing and promotion expenses, and (d) profit by year, since January 1, 2016.

**RESPONSE TO INTERROGATORY NO. 18 [21-24]:**

Responding Party objects to this Interrogatory as compound as it seeks information concerning at least four distinct topics, namely, Responding Party's (a) gross revenues, (b) expenses, (c) advertising marketing and promotion expenses, and (d) profit by year, since January 1, 2016.  Responding Party responds to each discrete subpart of this Interrogatory as its own Interrogatory, as follows:

(a)    Identify Your gross revenues by year, since January 1, 2016.

Responding Party objects to this Interrogatory as overbroad and unduly burdensome to the extent it seeks information that is not relevant to any party's claim or defense nor proportional to the needs of this case.  Responding Party further objects to this Interrogatory to the extent it seeks Responding Party's confidential and/or proprietary business information, including sensitive financial information, marketing plans and/or trade secrets.

Subject to and without waiver of the foregoing objections, Responding Party responds as follows: An answer to this interrogatory may be determined by examining, auditing, compiling, abstracting, or summarizing Responding Party's

business records, and the burden of deriving or ascertaining the answer would be substantially the same for Propounding Party as Responding Party. Accordingly, pursuant to Federal Rule of Civil Procedure 33(d), Responding Party will search its records and produce non-privileged documents and communications within its possession, custody or control, that are reasonably responsive to this Interrogatory.

    (b)   <u>Identify Your expenses by year, since January 1, 2016.</u>

Responding Party objects to this Interrogatory as overbroad and unduly burdensome to the extent it seeks information that is not relevant to any party's claim or defense nor proportional to the needs of this case. Responding Party further objects to this Interrogatory to the extent it seeks Responding Party's confidential and/or proprietary business information, including sensitive financial information, marketing plans and/or trade secrets.

Subject to and without waiver of the foregoing objections, Responding Party responds as follows: An answer to this interrogatory may be determined by examining, auditing, compiling, abstracting, or summarizing Responding Party's business records, and the burden of deriving or ascertaining the answer would be substantially the same for Propounding Party as Responding Party. Accordingly, pursuant to Federal Rule of Civil Procedure 33(d), Responding Party will search its records and produce non-privileged documents and communications within its possession, custody or control, that are reasonably responsive to this Interrogatory.

    (c)   <u>Identify Your advertising, marketing and promotion expenses by year, since January 1, 2016.</u>

Responding Party objects to this Interrogatory as overbroad and unduly burdensome to the extent it seeks information that is not relevant to any party's claim or defense nor proportional to the needs of this case. Responding Party further objects to this Interrogatory to the extent it seeks Responding Party's confidential

and/or proprietary business information, including sensitive financial information, marketing plans and/or trade secrets.

Subject to and without waiver of the foregoing objections, Responding Party responds as follows: An answer to this interrogatory may be determined by examining, auditing, compiling, abstracting, or summarizing Responding Party's business records, and the burden of deriving or ascertaining the answer would be substantially the same for Propounding Party as Responding Party. Accordingly, pursuant to Federal Rule of Civil Procedure 33(d), Responding Party will search its records and produce non-privileged documents and communications within its possession, custody or control, that are reasonably responsive to this Interrogatory.

(d)    Identify Your profit by year, since January 1, 2016.

Responding Party objects to this Interrogatory as overbroad and unduly burdensome to the extent it seeks information that is not relevant to any party's claim or defense nor proportional to the needs of this case. Responding Party further objects to this Interrogatory to the extent it seeks Responding Party's confidential and/or proprietary business information, including sensitive financial information, marketing plans and/or trade secrets.

Subject to and without waiver of the foregoing objections, Responding Party responds as follows: An answer to this interrogatory may be determined by examining, auditing, compiling, abstracting, or summarizing Responding Party's business records, and the burden of deriving or ascertaining the answer would be substantially the same for Propounding Party as Responding Party. Accordingly, pursuant to Federal Rule of Civil Procedure 33(d), Responding Party will search its records and produce non-privileged documents and communications within its possession, custody or control, that are reasonably responsive to this Interrogatory.

**INTERROGATORY NO. 19 [25]:**

Identify the person(s) with the most knowledge of consumer complaints made

29

to HonorSociety [SIC] since January 1, 2016.

**RESPONSE TO INTERROGATORY NO. 19 [25]:**

Responding Party objects to this Interrogatory as overbroad and unduly burdensome to the extent it seeks information that is not relevant to any party's claim or defense nor proportional to the needs of this case.

Subject to and without waiver of the foregoing objections, Responding Party responds as follows: Michael Moradian, President, Treasurer, and Director of Honor Society, c/o Stubbs Alderton & Markiles, LLP, 15260 Ventura Blvd., 20th Floor, Sherman Oaks, California 91403; Telephone number (818) 444-4500.

**INTERROGATORY NO. 20 [26-27]:**

If You contend that any intellectual property at issue in this Litigation is invalid, identify: (a) all facts on which You base that contention; (b) all witnesses with knowledge of those facts; and (c) any documents supporting that contention.

**RESPONSE TO INTERROGATORY NO. 20 [26-27]:**

Responding Party objects to this Interrogatory as compound as it seeks information concerning at least two distinct forms of intellectual property at issue in this Litigation, namely, (a) the EDGE Mark and (b) Plaintiff's claimed trade dress. Responding Party responds to each discrete subpart of this Interrogatory as its own Interrogatory, as follows:

(a)     If You contend that the EDGE Mark is invalid, identify: (a) all facts on which You base that contention; (b) all witnesses with knowledge of those facts; and (c) any documents supporting that contention.

Responding Party objects to this Interrogatory on the grounds that it exceeds the number of interrogatories agreed upon by the parties and ordered by the Court in its Case Management Order, which "are limited to 25 succinct questions." (Dkt. 59.) Responding Party further objects to this Interrogatory as vague, ambiguous, overbroad and unduly burdensome with respect to the term "all facts." Responding

Party further objects to this Interrogatory to the extent it seeks Responding Party's confidential and/or proprietary business information, including sensitive financial information, marketing plans and/or trade secrets. Responding Party further objects to this Interrogatory to the extent it seeks information that is protected from disclosure by the attorney client privilege and/or attorney work product doctrine.

Subject to and without waiver of the foregoing objections, Responding Party responds as follows: Upon information and belief, the unregistered PTK EDGE Mark is invalid for all the reasons explained in Honor Society's memorandum filed in support of its motion to dismiss. (Dkt. 23.) Additionally, upon information and belief, the PTK EDGE Mark is not inherently distinctive, and has not acquired secondary meaning. Additionally, upon information and belief, Honor Society may have priority over PTK with respect to its CAREER EDGE mark. Responding Party is currently unaware of any witnesses or documents supporting its contentions of inherent distinctiveness and acquired distinctiveness, but discovery is continuing, including expert discovery. Mike Moradian is Responding Party's witness with respect to when Responding Party first began using its CAREER EDGE Mark. Responding Party has already produced documents pursuant to FRCP 33(d)(1) concerning Responding Party's usage, and first usage, of the CAREER EDGE mark, namely, the following documents referred to by bates number: HS_013828, HS_013830, HS_129480, HS_129505-HS_129509, HS_129512, HS_129513, HS_129514, HS_129515, HS_129516, HS_134965, HS_134971.

(b) <u>If You contend that Plaintiff's claimed trade dress is invalid, identify: (a) all facts on which You base that contention; (b) all witnesses with knowledge of those facts; and (c) any documents supporting that contention.</u>

Responding Party objects to this Interrogatory on the grounds that it exceeds the number of interrogatories agreed upon by the parties and ordered by the Court in

its Case Management Order, which "are limited to 25 succinct questions." (Dkt. 59.) Responding Party further objects to this Interrogatory as vague, ambiguous, overbroad and unduly burdensome with respect to the term "all facts." Responding Party further objects to this Interrogatory to the extent it seeks Responding Party's confidential and/or proprietary business information, including sensitive financial information, marketing plans and/or trade secrets. Responding Party further objects to this Interrogatory to the extent it seeks information that is protected from disclosure by the attorney client privilege and/or attorney work product doctrine.

Subject to and without waiver of the foregoing objections, Responding Party responds as follows: Upon information and belief, the unregistered PTK Trade Dress is invalid for all the reasons explained in Honor Society's memorandum filed in support of its motion to dismiss. (Dkt. 23.) Additionally, upon information and belief, the unregistered PTK Trade Dress is not inherently distinctive, and has not acquired secondary meaning. Responding Party is currently unaware of any witnesses or documents supporting our contentions of inherent distinctiveness and acquired distinctiveness, but discovery is continuing, including expert discovery.

## INTERROGATORY NO. 21 [28]:

If You contend there is no likelihood of confusion between HonorSociety's [SIC] use of CAREER EDGE and PTK's use of the EDGE Mark, identify: (a) all facts on which You base that contention; (b) all witnesses with knowledge of those facts; and (c) any documents supporting that contention.

## RESPONSE TO INTERROGATORY NO. 21 [28]:

Responding Party objects to this Interrogatory on the grounds that it exceeds the number of interrogatories agreed upon by the parties and ordered by the Court in its Case Management Order, which "are limited to 25 succinct questions." (Dkt. 59.) Responding Party further objects to this Interrogatory as vague, ambiguous, overbroad and unduly burdensome with respect to the term "all facts." Responding

Party further objects to this Interrogatory to the extent it seeks Responding Party's confidential and/or proprietary business information, including sensitive financial information, marketing plans and/or trade secrets. Responding Party further objects to this Interrogatory to the extent it seeks information that is protected from disclosure by the attorney client privilege and/or attorney work product doctrine.

### INTERROGATORY NO. 22 [29]:

If You contend that there is no likelihood of confusion between HonorSociety's [SIC] use of the blue and gold color scheme, and any other elements claimed in PTK's Trade Dress, identify: (a) all facts on which you base that contention; (b) all witnesses with knowledge of those facts; and (c) any documents supporting that contention.

### RESPONSE TO INTERROGATORY NO. 22 [29]:

Responding Party objects to this Interrogatory on the grounds that it exceeds the number of interrogatories agreed upon by the parties and ordered by the Court in its Case Management Order, which "are limited to 25 succinct questions." (Dkt. 59.) Responding Party further objects to this Interrogatory as vague, ambiguous, overbroad and unduly burdensome with respect to the term "all facts." Responding Party further objects to this Interrogatory to the extent it seeks Responding Party's confidential and/or proprietary business information, including sensitive financial information, marketing plans and/or trade secrets. Responding Party further objects to this Interrogatory to the extent it seeks information that is protected from disclosure by the attorney client privilege and/or attorney work product doctrine.

### INTERROGATORY NO. 23 [30]:

For each affirmative defense you have alleged in this matter, identify: (a) all facts on which you base that affirmative defense; (b) all witnesses with knowledge of those facts; and (c) any documents supporting that affirmative defense.

**RESPONSE TO INTERROGATORY NO. 23 [30]:**

Responding Party objects to this Interrogatory on the grounds that it exceeds the number of interrogatories agreed upon by the parties and ordered by the Court in its Case Management Order, which "are limited to 25 succinct questions." (Dkt. 59.) Responding Party further objects to this Interrogatory as vague, ambiguous, overbroad and unduly burdensome with respect to the term "all facts." Responding Party further objects to this Interrogatory as overbroad and unduly burdensome to the extent it seeks information that is not proportional to the needs of this case. Responding Party further objects to this Interrogatory to the extent it seeks Responding Party's confidential and/or proprietary business information, including sensitive financial information, marketing plans and/or trade secrets. Responding Party further objects to this Interrogatory to the extent it seeks information that is protected from disclosure by the attorney client privilege and/or attorney work product doctrine.

**INTERROGATORY NO. 24 [31]:**

For each and person You intend to call to testify as an expert or consulting expert on which a testifying expert relies at a trial of this matter, please state:

(a) name and address;

(b) subject matter to which the expert will testify;

(c) the facts upon which the expert bases his or her opinion;

(d) the identification of all documents considered by the expert in forming his or her opinion;

(e) any and all conclusions reached by the expert;

(f) whether any expert has made a written report;

(g) the date any such written report was submitted;

(h) the name or other identification of the person to whom this report was submitted, if any;

34

(i) the name and address of any person who has custody of any written report made by any expert;

(j) the name of all articles or publications authored by the expert within the past ten (10) years; and

(k) the amount of compensation to be paid to the expert;

(l) the name of any cases in which the expert has testified within the last four (4) years.

## RESPONSE TO INTERROGATORY NO. 24 [31]:

Responding Party objects to this Interrogatory on the grounds that it exceeds the number of interrogatories agreed upon by the parties and ordered by the Court in its Case Management Order, which "are limited to 25 succinct questions." (Dkt. 59.) Responding Party further objects to this Interrogatory as overbroad and unduly burdensome to the extent it seeks information that is not relevant to any party's claim or defense nor proportional to the needs of this case. Responding Party further objects to this Interrogatory to the extent it seeks information that is protected from disclosure by the attorney client privilege and/or attorney work product doctrine. Responding Party further objects to this Interrogatory to the extent it seeks Responding Party's confidential and/or proprietary business information, including sensitive financial information, marketing plans and/or trade secrets. Furthermore, Responding Party objects to this Interrogatory on the grounds that it is premature in that it seeks information that is the subject of expert opinion as provided by Fed. R. Civ. Proc. 26(a)(2)(D) and this Court's case management order.

Respectfully submitted,

Dated: November 20, 2023

/s/ Michael A. Bernet
_____

Daniel A. Rozansky – PHV
Michael A. Bernet – PHV
STUBBS ALDERTON & MARKILES,
LLP
15260 Ventura Blvd., 20th Floor
Sherman Oaks, California 91403
Tel: (818) 444-4500
E-mail: drozansky@stubbsalderton.com
E-mail: mbernet@stubbsalderton.com

1

**VERIFICATION**

2

STATE OF MISSISSIPPI, COUNTY OF JACKSON.

3

4

I have read the foregoing **DEFENDANT HONORSOCIETY.ORG, INC.'S SECOND AMENDED RESPONSE TO PLAINTIFF'S FIRST SET OF INTERROGATORIES** and know its contents.

5

6

☐    I am a party to this action.  The matters stated in the foregoing document are true of my own knowledge except as to those matters which are stated on information and belief, and to those matters I believe them to be true.

7

8

☒    I am President, Treasurer, and Director of HonorSociety.org, Inc., a party to this action, and am authorized to make this verification for and on its behalf, and I make this verification for that reason.

9

10

☒    I am informed and believe and on that ground allege that the matters stated in the foregoing document are true.

11

☐    The matters stated in the foregoing document are true of my own knowledge except as to those matters which are stated on information and belief, and as to those matters I believe them to be true.

12

13

14

☐    I am one of the attorneys for Party Name, a party to this action.  Such party is absent from the county of aforesaid where such attorneys have their offices, and I make this verification for and on behalf of that party for that reason.  I am informed and believe and on that ground allege that the matters stated in the foregoing document are true.

15

Executed on November   16  , 2023, at Las Vegas, Nevada.

16

    I declare under penalty of perjury that the foregoing is true and correct.

17

18

_____
                    Michael Moradian

19

20

21

22

23

24

25

26

27

28

## <u>Certificate of Service</u>

I hereby certify that on November 20, 2023, a copy of the foregoing was served via email upon the following counsel:

Jonathan G. Polak (Pro Hac Vice)
J. Mitchell Tanner, (Pro Hac Vice)
TAFT STETTINIUS & HOLLISTER LLP
One Indiana Square, Suite 3500 Indianapolis, IN 46204-2023
(317) 713-3500 – phone
(317) 713-3699 – fax
jpolak@taftlaw.com
mtanner@taftlaw.com

Rachel Smoot (Pro Hac Vice)
TAFT STETTINIUS & HOLLISTER LLP
41 S. High Street, Suite 1800
Columbus, OH 43215
(614) 221-2838 – phone
(614) 221-2007 – fax
rsmoot@taftlaw.com

Michael B. Wallace, MSB # 6904
WISE CARTER CHILD & CARAWAY,
P.A. Post Office Box 651
Jackson, Mississippi 39205
Phone 601-968-5500

*Counsel for Plaintiff*

*/s/ Michael A. Bernet*
_____
Michael A. Bernet

# EXHIBIT 14

**United States District Court**

**Southern District of Mississippi**

**Jackson Division**

| | |
|---|---|
| PHI THETA KAPPA HONOR SOCIETY, | Civil Action No. 3:22-cv-208-CWR-FKB |
| Plaintiff, | **DEFENDANT HONORSOCIETY.ORG, INC.'S FIRST AMENDED RESPONSE TO THIRD-PARTY DEFENDANT'S FIRST SET OF INTERROGATORIES** |
| v. | |
| HONORSOCIETY.ORG, INC., and MICHAEL MORADIAN, | |
| Defendants. | |

**PROPOUNDING PARTY:** **LYNN TINCHER-LADNER**

**RESPONDING PARTY:** **HONORSOCIETY.ORG, INC.**

**SET NO.:** **ONE (1)**

Defendant HONORSOCIETY.ORG, INC. ("Honor Society" or "Responding Party") hereby provides its First Amended Response to Third-Party Defendant LYNN TINCHER-LADNER'S ("Tincher-Ladner" or "Propounding Party") First Set of Interrogatories ("Interrogatories"), as follows:

<u>**PRELIMINARY STATEMENT**</u>

It should be noted that this Responding Party has not completed its discovery in this action and has not fully completed its preparation for trial. The answers contained in these responses are based only on the information and documents which are presently available and specifically known to this Responding Party and disclose only those contentions which presently are apparent to this Responding Party.

Additionally, further discovery, independent investigation, legal research, and analysis may supply additional facts, add meaning to known facts, and establish entirely new factual conclusions and legal contentions, all of which may lead to substantial additions to, changes in variations from the contentions set forth herein.

According, these responses are given without prejudice to Responding Party's right to produce evidence of subsequently discovered facts, of which this Responding Party may later recall. Responding Party accordingly reserves the right to change any and all answers herein as additional facts and additional analysis are made, legal research is completed, and contentions are made.

These answers and/or documents supplied in this set of responses are provided in a good faith effort to supply as much factual information and as much specification of legal contentions as is presently known, but should in no way prejudice this Responding Party in relation to further discovery, research and analysis and producing additional information at time of trial.

These introductory comments shall apply to each and every answer given herein, and shall be incorporated by reference as though fully set forth in each and every response appearing in the following pages.

## GENERAL OBJECTIONS

Responding Party responds to each of the Interrogatories subject to the following general objections (the "General Objections"). These objections form a part of and are specifically incorporated into each of the Responses and Objections to Propounding Party's Interrogatories, even though they may not be specifically referred to in each and every response to each request. Failure to specifically refer to any of these General Objections in any specific response should not be construed as a waiver of same.

1.      Responding Party objects generally to the Interrogatories to the extent they potentially seek information that is protected from compelled disclosure by the

attorney/client privilege, the attorney work-product doctrine, or any other applicable right, privilege, or doctrine.

2.    Responding Party objects generally to the Interrogatories to the extent that they seek trade secrets, confidential, proprietary, sensitive, or financial information that is protected from disclosure by any applicable state or federal Constitution, statute, and/or case law that establishes a right to privacy for either Responding Party or any third party.

3.    Responding Party objects generally to the Interrogatories to the extent that the information requested is irrelevant, outside the scope of the issues raised in the operative pleadings, and/or not reasonably calculated to lead to the discovery of admissible evidence.

4.    Responding Party objects generally to the Interrogatories to the extent that the information requested and the burden of supplying it is not proportional to the needs of the case, including without limitation because the Interrogatories are unclear or overbroad in their potential scope, and/or susceptible to more than one meaning, and to the extent these Interrogatories seek information that is not at issue in this action.

5.    Responding Party further objects to each Interrogatory to the extent it is not proportional to the needs of the case in light of the cost necessary to investigate as weighed against Propounding Party's need for the information.  To the extent that responding to these Interrogatories will be extraordinarily expensive for Responding Party, Responding Party will be specifically requesting that Propounding Party reimburse Responding Party for appropriate costs, as may be allowed under the Federal Rules of Civil Procedure and any other applicable statute or case law.

6.    Responding Party objects generally to the Interrogatories to the extent that they seek expert information, the production of which is governed by the Federal Rules of Civil Procedure.  Responding Party will provide or identify such expert

documents as required by the Federal Rules of Civil Procedure at the times at which the Court has directed or may direct.

7.      Responding Party objects generally to the Interrogatories to the extent that they either singularly or collectively are unduly burdensome, oppressive, and/or harassing.

8.      Responding Party objects generally to the Interrogatories to the extent that they do not state with reasonable particularity the information requested.

9.      Responding Party objects generally to the Interrogatories to the extent that they seek information that is outside of Responding Party's possession, custody or control.

10.      Responding Party objects generally to the Interrogatories to the extent that Propounding Party has equal and/or similar access to the requested information, and to the extent that such information is publicly available and/or already within Propounding Party's possession, custody or control, on the grounds that such Interrogatories are unduly burdensome, oppressive and/or harassing.

11.      Responding Party objects generally to the Interrogatories to the extent that they are repetitive, duplicative, redundant, and/or overlapping.

12.      Responding Party objects generally to the Interrogatories to the extent that they are vague, ambiguous, compound, confusing, unintelligible, unclear, and/or amenable to different meanings, understandings, or interpretations.  Responding Party will respond to each request as it interprets and understands it.

13.      Responding Party objects generally to the Interrogatories to the extent that they seek to impose duties or obligations different from, additional to, or otherwise beyond those required by the Federal Rules of Civil Procedure.

14.      Responding Party objects generally to the Interrogatories to the extent that they are not limited to a particular time period.

15.      All responses hereto are made on information and belief.

16.     Responding Party objects generally to the Interrogatories to the extent they exceed the number of interrogatories agreed upon by the parties and ordered by the Court in its Case Management Order, which "are limited to 25 succinct questions." (Dkt. 59.)

Without waiver of the foregoing, Responding Party responds as follows:

## RESPONSES TO INTERROGATORIES (SET ONE)

## INTERROGATORY NO. 1 [1]:

Identify all persons who provided information relied upon by HonorSociety [SIC] in preparing responses to these interrogatories and requests for the production of documents, served concurrently with these interrogatories.  If multiple people, identify which information was supplied by which person.

## RESPONSE TO INTERROGATORY NO. 1 [1]:

Responding Party responds to each discrete subpart of this Interrogatory as its own Interrogatory, as follows:

(a)     Identify all persons who provided information relied upon by Honor Society in preparing responses to these interrogatories.  If multiple people, identify which information was supplied by which person.

Responding Party objects to this Interrogatory as overbroad and unduly burdensome to the extent it seeks information that is not relevant to any party's claim or defense nor proportional to the needs of this case.  Responding Party further objects to this interrogatory to the extent it seeks disclosure of information protected by the attorney client privilege.

Subject to and without waiver of the foregoing objections, Responding Party responds as follows: Michael Moradian, President, Treasurer, and Director of Honor Society, c/o Stubbs Alderton & Markiles, LLP, 15260 Ventura Blvd., 20th Floor, Sherman Oaks, California 91403; Telephone number (818) 444-4500.

(b)    Identify all persons who provided information relied upon by Honor Society in preparing responses to the requests for production of documents. If multiple people, identify which information was supplied by which person.

Responding Party objects to this Interrogatory as overbroad and unduly burdensome to the extent it seeks information that is not relevant to any party's claim or defense nor proportional to the needs of this case. Responding Party further objects to this interrogatory to the extent it seeks disclosure of information protected by the attorney client privilege.

Subject to and without waiver of the foregoing objections, Responding Party responds as follows: Michael Moradian, President, Treasurer, and Director of Honor Society, c/o Stubbs Alderton & Markiles, LLP, 15260 Ventura Blvd., 20th Floor, Sherman Oaks, California 91403; Telephone number (818) 444-4500.

**INTERROGATORY NO. 2 [2]:**

Identify all persons with knowledge of your claims in this case made against Tincher-Ladner and/or PTK.

**RESPONSE TO INTERROGATORY NO. 2 [2]:**

Responding Party objects to this Interrogatory as overbroad and unduly burdensome to the extent it seeks information that is not proportional to the needs of this case.

Subject to and without waiver of the foregoing objections, Responding Party responds as follows:

(1)    Michael Moradian, President, Treasurer, and Director of Honor Society, c/o Stubbs Alderton & Markiles, LLP, 15260 Ventura Blvd., 20th Floor, Sherman Oaks, California 91403; Telephone number (818) 444-4500.

(2)     Nader Moradian, Administration, Human Resources and Accounting for Honor Society, c/o Stubbs Alderton & Markiles, LLP, 15260 Ventura Blvd., 20th Floor, Sherman Oaks, California 91403; telephone number (818) 444-4500.

(3)     Tina Murtaugh, Publicity and Social Media for Honor Society, c/o Stubbs Alderton & Markiles, LLP, 15260 Ventura Blvd., 20th Floor, Sherman Oaks, California 91403; telephone number (818) 444-4500.

(4)     Burjiss Pavri; Former Employee, Programmer for Honor Society, 4333 SW Willow Street, Seattle, WA 98136; burjiss@gmail.com.

(5)     Gerard Trinidad, Independent Contractor, Member Services for Honor Society, 16 St. Ignatius Street, Villa Priscilla Subdivision, Brgy. Cut-Cot, Pulilan Bulcan, 3005, Manila.

(6)     Maria Alcance, Independent Contractor, Member Services for Honor Society, 161 Purok 6 Paligue, Candaba, Pampanga, 2013, Manila.

## INTERROGATORY NO. 3 [3]:

Identify each and every alleged defamatory statement made by Tincher-Ladner and/or PTK relevant to your claim for defamation.  Please include date, time, place, speaker and known recipients.

## RESPONSE TO INTERROGATORY NO. 3 [3]:

Responding Party objects to this Interrogatory on the grounds that it seeks information that is equally and/or more readily available to Propounding Party.

Subject to and without waiver of the foregoing objections, Responding Party responds as follows: Other than the press release attached as Exhibit A to the Amended Counterclaims (Dkt. 61), Responding Party is not currently aware of any defamatory statements made directly by Tincher-Ladner and/or PTK.  However, discovery is continuing.  Moreover, as alleged in the Amended Counterclaims, Responding Party alleges that various third parties have made defamatory statements

about Responding Party, namely, that it is a "scam," which Responding Party believes are likely attributable to statements made by Tincher-Ladner and/or PTK. Responding Party has already produced copies of those statements. An answer to this interrogatory may be determined by examining, auditing, compiling, abstracting, or summarizing these statements, and the burden of deriving or ascertaining the answer would be substantially the same for Propounding Party as Responding Party. Accordingly, pursuant to Federal Rule of Civil Procedure 33(d), Responding Party refers to the following documents by bates number, which Responding Party has produced in discovery, and which are reasonably responsive to this Interrogatory: HS_044445-HS_044446, HS_044471-HS_044472, HS_044724, HS_044996-HS_044997, HS_045029-HS_045030, HS_129531, HS_129540, HS_129694-HS_129696, HS_129723-HS_129724, HS_129725-HS_129726, HS_129727, HS_129733, HS_129736, HS_129739, HS_129757-HS_129765, HS_129766-HS_129778, HS_129782-HS_129787, HS_129788-HS_129792, HS_129793-HS_129799, HS_129800-HS_129805, HS_129806-HS_129810, HS_129815, HS_129816, HS_129817, HS_129818, HS_129819, HS_129820, HS_129821, HS_129822, HS_129899-HS_129900, HS_129910-HS_129911, HS_134302-HS_134310, HS_135803, HS_169888-HS_169891, HS_170370, HS_170381-HS_170384, HS_170385-HS_170387, HS_170419, HS_170420, HS_170422, HS_170423, HS_170424, HS_170429, HS_170430, HS_170432, HS_170433, HS_170434, HS_170437, HS_170439, HS_170441, HS_170493, HS_170496, HS_170526, HS_170598, HS_170599-HS_170600, HS_170601, HS_170602, HS_170611, HS_170614, HS_170615, HS_170616, HS_170617, HS_170618, HS_170620, HS_170621, HS_170622, HS_170623, HS_170626, HS_170852-HS_170853, HS_170854-HS_170855, HS_171567, HS_171646, HS_171748, HS_170627, HS_171000-HS_171002, HS_171003-HS_171006, HS_171031-HS_171032, HS_171037, HS_171038, HS_171039-

HS_171040, HS_171041, HS_171059, HS_171064, HS_171075-HS_171076, HS_171564, HS_171606, HS_171665, HS_171668, HS_173423, HS_173430, HS_173443, HS_173444, HS_173485, HS_173507, HS_173525-HS_173526, HS_173527-HS_173528, HS_173529-HS_173530, HS_173531-HS_173532, HS_173533-HS_173534, HS_173535-HS_173536, HS_173788, HS_173789-HS_173790, HS_173791, HS_173792, HS_173794-HS_173795, HS_173799, HS_173810, HS_173817-HS_173818, HS_176710, HS_176713, HS_176714, HS_176715-HS_176716, HS_176717-HS_176718, HS_176735, HS_176746, and HS_176754-HS_176755.

## INTERROGATORY NO. 4 [4]:

Identify each and every alleged false statement made by Tincher-Ladner and/or PTK relevant to your claim for false or misleading representations of fact. Please include date, time, place, speaker and known recipients.

## RESPONSE TO INTERROGATORY NO. 4 [4]:

Responding Party objects to this Interrogatory on the grounds that it seeks information that is equally and/or more readily available to Propounding Party.

Subject to and without waiver of the foregoing objections, Responding Party responds as follows: An answer to this interrogatory may be determined by examining, auditing, compiling, abstracting, or summarizing Responding Party's business records, and the burden of deriving or ascertaining the answer would be substantially the same for Propounding Party as Responding Party. Accordingly, pursuant to Federal Rule of Civil Procedure 33(d), Responding Party refers to the following documents by bates number, which Responding Party has produced in discovery, and which are reasonably responsive to this Interrogatory: HS_129500, HS_129519, HS_129520, HS_129522, HS_129523, HS_129524, HS_129525, HS_129526, HS_129527, HS_129528, HS_129529, HS_129530, HS_129532, HS_129533, HS_129536, HS_129542, HS_129547, HS_129548, HS_129554,

HS_129558, HS_129559, HS_129560, HS_129561, HS_129568, HS_129569, HS_129572, HS_129573, HS_129585, HS_129587, HS_129589, HS_129593, HS_129594, HS_129595, HS_129597, HS_129600, HS_129601, HS_129604, HS_129605, HS_129606, HS_129611, HS_129623, HS_129632, HS_129633, HS_129647, HS_129650, HS_129653, HS_129654, HS_129657, HS_129658, HS_129668, HS_129670, HS_129671, HS_129672, HS_129673, HS_129674, HS_129675, HS_129677, HS_129678, HS_129679, HS_129681, HS_129683, HS_129688, HS_129690, HS_129693, HS_129723-HS_129724, and HS_129727.

**INTERROGATORY NO. 5 [5]:**

Identify each and every act of interference with business relations made by Tincher-Ladner and/or PTK relevant to your claim for tortious interference with business relations.

**RESPONSE TO INTERROGATORY NO. 5 [5]:**

Responding Party objects to this Interrogatory on the grounds that it seeks information that is equally and/or more readily available to Propounding Party. Responding Party further objects to this Interrogatory to the extent it seeks Responding Party's confidential and/or proprietary business information, including sensitive financial information, marketing plans and/or trade secrets.

Subject to and without waiver of the foregoing objections, Responding Party responds as follows: Other than the press release attached as Exhibit A to the Amended Counterclaims (Dkt. 61), Responding Party is not currently aware of any defamatory statements made directly by Tincher-Ladner and/or PTK. However, discovery is continuing. Moreover, as alleged in the Amended Counterclaims, Responding Party alleges that various third parties have made defamatory statements about Responding Party, namely, that it is a "scam," which Responding Party believes are likely attributable to statements made by Tincher-Ladner and/or PTK. Responding Party has already produced copies of those statements. An answer to

this interrogatory may be determined by examining, auditing, compiling, abstracting, or summarizing these statements, and the burden of deriving or ascertaining the answer would be substantially the same for Propounding Party as Responding Party. Accordingly, pursuant to Federal Rule of Civil Procedure 33(d), Responding Party refers to these statements by bates number: HS_044445-HS_044446, HS_044471-HS_044472, HS_044724, HS_044996-HS_044997, HS_045029-HS_045030, HS_129531, HS_129540, HS_129694-HS_129696, HS_129723-HS_129724, HS_129725-HS_129726, HS_129727, HS_129733, HS_129736, HS_129739, HS_129757-HS_129765, HS_129766-HS_129778, HS_129782-HS_129787, HS_129788-HS_129792, HS_129793-HS_129799, HS_129800-HS_129805, HS_129806-HS_129810, HS_129815, HS_129816, HS_129817, HS_129818, HS_129819, HS_129820, HS_129821, HS_129822, HS_129899-HS_129900, HS_129910-HS_129911, HS_134302-HS_134310, HS_135803, HS_136621, HS_169888-HS_169891, HS_170370, HS_170381-HS_170384, HS_170385-HS_170387, HS_170419, HS_170420, HS_170422, HS_170423, HS_170424, HS_170429, HS_170430, HS_170432, HS_170433, HS_170434, HS_170437, HS_170439, HS_170441, HS_170493, HS_170496, HS_170526, HS_170598, HS_170599-HS_170600, HS_170601, HS_170602, HS_170611, HS_170614, HS_170615, HS_170616, HS_170617, HS_170618, HS_170620, HS_170621, HS_170622, HS_170623, HS_170626, HS_170852-HS_170853, HS_170854-HS_170855, HS_171567, HS_171646, HS_171748, HS_170627, HS_171000-HS_171002, HS_171003-HS_171006, HS_171031-HS_171032, HS_171037, HS_171038, HS_171039-HS_171040, HS_171041, HS_171059, HS_171064, HS_171075-HS_171076, HS_171564, HS_171606, HS_171665, HS_171668, HS_173423, HS_173430, HS_173443, HS_173444, HS_173485, HS_173507, HS_173525-HS_173526, HS_173527-HS_173528, HS_173529-HS_173530, HS_173531-HS_173532, HS_173533-HS_173534,

HS_173535-HS_173536,  HS_173788,  HS_173789-HS_173790,  HS_173791, HS_173792,  HS_173794-HS_173795,  HS_173799,  HS_173810,  HS_173817-HS_173818,  HS_176710,  HS_176713,  HS_176714,  HS_176715-HS_176716, HS_176717-HS_176718, HS_176735, HS_176746, and HS_176754-HS_176755.

**INTERROGATORY NO. 6 [6]:**

Identify every each and every contract or business relation that you claim were interfered with by Tincher-Ladner and/or PTK.  Please include the name and contact information for each such contracting or potentially contracting party.

**RESPONSE TO INTERROGATORY NO. 6 [6]:**

Responding Party objects to this Interrogatory on the grounds that it seeks information that is equally and/or more readily available to Propounding Party. Responding Party further objects to this Interrogatory to the extent it seeks Responding Party's confidential and/or proprietary business information, including sensitive financial information, marketing plans and/or trade secrets.

Subject to and without waiver of the foregoing objections, Responding Party responds as follows: An answer to this interrogatory may be determined by examining, auditing, compiling, abstracting, or summarizing Responding Party's business records, and the burden of deriving or ascertaining the answer would be substantially the same for Propounding Party as Responding Party.  Accordingly, pursuant to Federal Rule of Civil Procedure 33(d), Responding Party refers to the following documents by bates number, which Responding Party has produced in discovery, and which are reasonably responsive to this Interrogatory: HS_007465-HS_007631,  HS_129727,  HS_129733,  HS_129757-HS_129765,  HS_129766-HS_129778,  HS_129782-HS_129787,  HS_129788-HS_129792,  HS_129793-HS_129799,  HS_129800-HS_129805,  HS_129899-HS_129900,  HS_129910-HS_129911, HS_135803, HS_136621, HS_170370, HS_170598, HS_170599-HS_170600,  HS_170601,  HS_170622,  HS_170852-HS_170853,  HS_170854-

HS_170855, HS171031-HS_171032, HS_173789-HS_173790, HS_176715-HS_176716.

## INTERROGATORY NO. 7 [7]:

Identify with specificity all damages you claim in connection with your claims against Tincher-Ladner and/or PTK. Be specific as to each claim you have asserted, if your damages for any claim are different than any other. And, be specific as to each Defendant if the damages sought are different as to each in any way.

## RESPONSE TO INTERROGATORY NO. 7 [7]:

Responding Party objects to this Interrogatory to the extent it seeks Responding Party's confidential and/or proprietary business information, including sensitive financial information, marketing plans and/or trade secrets. Furthermore, Responding Party objects to this Interrogatory as premature to the extent it seeks information that is the subject of expert opinion as provided by Fed. R. Civ. Proc. 26(a)(2)(D) and this Court's case management order.

Subject to and without waiver of the foregoing objections, Responding Party responds as follows: As a result of defamatory statements made by Tincher-Ladner and PTK about Honor Society in April 2022, Honor Society suffered substantial losses in the form of a significant drop-off in membership sales and an increase in membership refunds, disputes and chargebacks. In the first six months after Tincher-Ladner and PTK's defamatory comments were made in the Press Release, Honor Society's membership sales dropped by $1,303,998 dollars in recurring revenue, and Honor Society incurred $52,800 in membership cancellations. Furthermore, Honor Society memberships constitute recurring revenue, which renews at a rate of 90% every six months, which further magnifies the damages that have and will be incurred by Honor Society as a result of Tincher-Ladner and PTK's defamatory statements. At this rate, in 5 years, the lost memberships will result in $9,310,083 in lost revenue to Honor Society, and over a ten-year horizon, the total lost revenue

damages will be $12,083,259.

In addition to these losses, Honor Society has suffered harm to its brand and reputation, as well as its relationships with individuals and entities that Honor Society was partnered or sought to partner with, including academic institutions, student populations, other honor societies, and donors to the Honor Society Foundation. Honor Society's reputation has been further harmed by Tincher-Ladner and PTK's defamatory comments because they have caused people to file reports with the BBB and state attorney generals. Additionally, through prior misleading and defamatory statements by PTK to schools such as Ivy Tech, Bergen, and Motlow College, Honor Society has suffered damages in the form of membership cancellations and chargebacks.

In connection with Responding Party's first cause of action, for defamation, Responding Party is seeking from both Tincher-Ladner and PTK its actual damages, which it believes to be in excess of $1 million (as set forth above), punitive damages and injunctive relief.  In connection with Responding Party's second cause of action, for tortious interference with business relations, Responding Party is seeking from both Tincher-Ladner and PTK its actual damages, which it believes to be in excess of $1 million (as set forth above), punitive damages and injunctive relief.   In connection with Responding Party's third cause of action, for false advertising, Responding Party is seeking from both Tincher-Ladner and PTK its actual damages and disgorgement of Tincher-Ladner and PTK's profits, which it believes to be in excess of $1 million (as set forth above), treble damages, attorneys' fees, and injunctive relief.  On all causes of action, Responding Party is also seeking costs and attorneys' fees to the extent permitted by law, and such other and further relief as the Court deems just and proper.

## INTERROGATORY NO. 8 [8-11]:

You have claimed that you have lost membership as a result of the alleged

defamatory, false, misleading and/or tortiously interfering conduct of Tincher-Ladner and/or PTK. For the last five years, by year, identify, by year, the following information:

| Year | Total Invitations to Membership | Total New Members for Year | Total Members Declining Renewal/Asking for Termination of Membership | Total Members Allowed to Terminate Membership |
|------|------|------|------|------|
| 2023 | | | | |
| 2022 | | | | |
| 2021 | | | | |
| 2020 | | | | |
| 2019 | | | | |
| 2018 | | | | |

**RESPONSE TO INTERROGATORY NO. 8 [8-11]:**

Responding Party objects to this Interrogatory as compound as it seeks information concerning at least four distinct topics, namely, (a) total invitations to membership, (b) total new members by year, (c) total members declining renewal/asking for termination of membership, and (d) total members allowed to terminated membership. Responding Party responds to each discrete subpart of this Interrogatory as its own Interrogatory, as follows:

(a)    Identify, by year, total invitations to membership from 2018 to 2023.

Responding Party objects to this Interrogatory as overbroad and unduly burdensome to the extent it seeks information that is not relevant to any party's claim or defense nor proportional to the needs of this case. Responding Party further

15

objects to this Interrogatory to the extent it seeks Responding Party's confidential and/or proprietary business information.

Subject to and without waiver of the foregoing objections, Responding Party responds as follows: Responding Party is unable to provide this number as it does not track its number of invitations.

(b)    Identify, by year, total new members from 2018 to 2023.

Responding Party objects to this Interrogatory as overbroad and unduly burdensome to the extent it seeks information that is not relevant to any party's claim or defense nor proportional to the needs of this case.  Responding Party further objects to this Interrogatory to the extent it seeks Responding Party's confidential and/or proprietary business information.

Subject to and without waiver of the foregoing objections, Responding Party responds as follows: Responding Party is unable to provide a fully accurate breakdown of this number because it uses three separate systems to process memberships and refunds. Additionally, refunds are processed retroactivity such that the exact number of new members and terminated memberships cannot be determined year over year. Notwithstanding the foregoing, Responding Party provides the following estimates:

| Year | Approximate Total New Members for Year |
|---|---|
| 2023 (through June 30, 2023) | 18,100 |
| 2022 | 36,800 |
| 2021 | 45,200 |
| 2020 | 56,700 |
| 2019 | 53,850 |
| 2018 | 65,540 |

(c)    Identify, by year, total members declining renewal/asking for termination of membership from 2018 to 2023.

Responding Party objects to this Interrogatory as overbroad and unduly burdensome to the extent it seeks information that is not relevant to any party's claim or defense nor proportional to the needs of this case.  Responding Party further objects to this Interrogatory to the extent it seeks Responding Party's confidential and/or proprietary business information.

Subject to and without waiver of the foregoing objections, Responding Party responds as follows: Responding Party is unable to provide a fully accurate breakdown of this number because it uses three separate systems to process memberships and refunds. Additionally, refunds are processed retroactivity such that the exact number of new members and terminated memberships cannot be determined year over year. Notwithstanding the foregoing, Responding Party provides the following estimates:

| Year | Approximate Total Members Declining Renewal/Asking for Termination of Membership |
|---|---|
| 2023 (through June 30, 2023) | 3,250 |
| 2022 | 9,000 |
| 2021 | 9,650 |
| 2020 | 6,900 |
| 2019 | 6,800 |
| 2018 | 8,850 |

    (d)    <u>Identify, by year, total members allowed to terminate membership from 2018 to 2023.</u>

Responding Party objects to this Interrogatory as overbroad and unduly burdensome to the extent it seeks information that is not relevant to any party's claim or defense nor proportional to the needs of this case. Responding Party further objects to this Interrogatory to the extent it seeks Responding Party's confidential and/or proprietary business information.

Subject to and without waiver of the foregoing objections, Responding Party responds as follows: Responding Party is unable to provide an accurate breakdown of this number because it uses three separate systems to process memberships and refunds. Additionally, refunds are processed retroactivity such that the exact number of new members and terminated memberships cannot be determined year over year. Notwithstanding the foregoing, Responding Party provides the following estimates:

| Year | Approximate Total Members Allowed to Terminate Membership |
|---|---:|
| 2023 (through June 30, 2023) | 3,250 |
| 2022 | 9,000 |
| 2021 | 9,650 |
| 2020 | 6,900 |
| 2019 | 6,800 |
| 2018 | 8,850 |

## INTERROGATORY NO. 9 [12-15]:

Identify, by year, the total revenues earned by HonorSociety [SIC] in the years as described below:

| Year | Total Membership Sales (in $$) | Total Merchandise Sales (in $$) | Total Other Revenue (in $$) | Total Revenue for Year (in $$) |
|------|---------------------------------|----------------------------------|------------------------------|---------------------------------|
| 2023 | | | | |
| 2022 | | | | |
| 2021 | | | | |
| 2020 | | | | |
| 2019 | | | | |
| 2018 | | | | |

## RESPONSE TO INTERROGATORY NO. 9 [12-15]:

Responding Party objects to this Interrogatory as compound as it seeks information concerning at least four distinct topics, namely, Responding Party's (a) total membership sales, (b) total merchandise sales, (c) total other revenue, and (d) total revenue by year from 2018 to 2023. Responding Party responds to each discrete subpart of this Interrogatory as its own Interrogatory, as follows:

(a)    Identify, by year, total membership sales from 2018 to 2023.

Responding Party objects to this Interrogatory as overbroad and unduly burdensome to the extent it seeks information that is not relevant to any party's claim or defense nor proportional to the needs of this case. Responding Party further objects to this Interrogatory to the extent it seeks Responding Party's confidential and/or proprietary business information, including sensitive financial information.

Subject to and without waiver of the foregoing objections, Responding Party responds as follows:

| Year | Total Membership Sales (in $$) |
|---|---|
| 2023 (through June 30, 2023) | $4,231,519.00 |
| 2022 | $9,551,997.00 |
| 2021 | $10,644,899.00 |
| 2020 | $10,228,251.00 |
| 2019 | $9,341,019.00 |
| 2018 | $9,940,279.00 |

(b)    Identify, by year, total merchandise sales from 2018 to 2023.

Responding Party objects to this Interrogatory as overbroad and unduly burdensome to the extent it seeks information that is not relevant to any party's claim or defense nor proportional to the needs of this case.  Responding Party further objects to this Interrogatory to the extent it seeks Responding Party's confidential and/or proprietary business information, including sensitive financial information.

Subject to and without waiver of the foregoing objections, Responding Party responds as follows:

| Year | Total Merchandize Sales (in $$) |
|---|---|
| 2023 (through June 30, 2023) | $432,714.00 |
| 2022 | $587,738.00 |
| 2021 | $749,967.00 |
| 2020 | $576,385.00 |
| 2019 | $73,892.00 |
| 2018 | $22,496.30. |

(c)    <u>Identify, by year, total other revenue from 2018 to 2023.</u>

Responding Party objects to this Interrogatory as overbroad and unduly burdensome to the extent it seeks information that is not relevant to any party's claim or defense nor proportional to the needs of this case. Responding Party further objects to this Interrogatory to the extent it seeks Responding Party's confidential and/or proprietary business information, including sensitive financial information.

Subject to and without waiver of the foregoing objections, Responding Party responds as follows:

| Year | Total Other Revenue (in $$) |
|---|---:|
| 2023 (through June 30, 2023) | $530.00 |
| 2022 | $3,818.00 |
| 2021 | $15,969.00 |
| 2020 | $8,445.00 |
| 2019 | $36,618.00 |
| 2018 | $45,377.70 |

(d)    <u>Identify, by year, total revenue from 2018 to 2023.</u>

Responding Party objects to this Interrogatory as overbroad and unduly burdensome to the extent it seeks information that is not relevant to any party's claim or defense nor proportional to the needs of this case. Responding Party further objects to this Interrogatory to the extent it seeks Responding Party's confidential and/or proprietary business information, including sensitive financial information.

Subject to and without waiver of the foregoing objections, Responding Party responds as follows:

| Year | Total Revenue for Year (in $$) |
|---|---|
| 2023 (through June 30, 2023) | $4,763,558.00 |
| 2022 | $10,143,553.00 |
| 2021 | $11,410,835.00 |
| 2020 | $10,813,081.00 |
| 2019 | $9,451,529.00 |
| 2018 | $10,008,153.00 |

## INTERROGATORY NO. 10 [16]:

Did you receive any pandemic-related relief funds, such as PPP. If so, how did you use those funds?

## RESPONSE TO INTERROGATORY NO. 10 [16]:

Responding Party objects to this Interrogatory as overbroad and unduly burdensome to the extent it seeks information that is not relevant to any party's claim or defense nor proportional to the needs of this case. Responding Party further objects to this Interrogatory to the extent it seeks Responding Party's confidential and/or proprietary business information, including sensitive financial information.

Subject to and without waiver of the foregoing objections, Responding Party responds as follows: No.

## INTERROGATORY NO. 11 [17]:

Other than Defendants, identify all persons known to you to have called or accused You of being a "scam", "fraud" or similar description. Include date, time, place, speaker and last known contact information for same.

**RESPONSE TO INTERROGATORY NO. 11 [17]:**

Responding Party objects to this Interrogatory on the grounds that it seeks information that is equally and/or more readily available to Propounding Party. Responding Party further objects to this Interrogatory as overbroad and unduly burdensome to the extent it seeks information that is not relevant to any party's claim or defense nor proportional to the needs of this case.

Subject to and without waiver of the foregoing objections, Responding Party responds as follows: An answer to this interrogatory may be determined by examining, auditing, compiling, abstracting, or summarizing Responding Party's business records, and the burden of deriving or ascertaining the answer would be substantially the same for Propounding Party as Responding Party. Accordingly, pursuant to Federal Rule of Civil Procedure 33(d), Responding Party refers to the following documents by bates number, which Responding Party has produced in discovery, and which are reasonably responsive to this Interrogatory: HS_044445-HS_044446, HS_044471-HS_044472, HS_044724, HS_044996-HS_044997, HS_045029-HS_045030, HS_129531, HS_129540, HS_129694-HS_129696, HS_129723-HS_129724, HS_129725-HS_129726, HS_129727, HS_129733, HS_129736, HS_129739, HS_129757-HS_129765, HS_129766-HS_129778, HS_129782-HS_129787, HS_129788-HS_129792, HS_129793-HS_129799, HS_129800-HS_129805, HS_129806-HS_129810, HS_129815, HS_129816, HS_129817, HS_129818, HS_129819, HS_129820, HS_129821, HS_129822, HS_129899-HS_129900, HS_129910-HS_129911, HS_134302-HS_134310, HS_135803, HS_169888-HS_169891, HS_170370, HS_170381-HS_170384, HS_170385-HS_170387, HS_170419, HS_170420, HS_170422, HS_170423, HS_170424, HS_170429, HS_170430, HS_170432, HS_170433, HS_170434, HS_170437, HS_170439, HS_170441, HS_170493, HS_170496, HS_170526, HS_170598, HS_170599-HS_170600, HS_170601, HS_170602, HS_170611,

HS_170614, HS_170615, HS_170616, HS_170617, HS_170618, HS_170620, HS_170621, HS_170622, HS_170623, HS_170626, HS_170852-HS_170853, HS_170854-HS_170855, HS_171567, HS_171646, HS_171748, HS_170627, HS_171000-HS_171002,    HS_171003-HS_171006,    HS_171031-HS_171032, HS_171037, HS_171038, HS_171039-HS_171040, HS_171041, HS_171059, HS_171064, HS_171075-HS_171076, HS_171564, HS_171606, HS_171665, HS_171668, HS_173423, HS_173430, HS_173443, HS_173444, HS_173485, HS_173507, HS_173525-HS_173526, HS_173527-HS_173528, HS_173529-HS_173530, HS_173531-HS_173532, HS_173533-HS_173534, HS_173535-HS_173536, HS_173788, HS_173789-HS_173790, HS_173791, HS_173792, HS_173794-HS_173795, HS_173799, HS_173810, HS_173817-HS_173818, HS_176710, HS_176713, HS_176714, HS_176715-HS_176716, HS_176717-HS_176718, HS_176735, HS_176746, and HS_176754-HS_176755.  Responding Party is otherwise unaware of any oral communication in which a person called or accused Honor Society of being a "scam," "fraud," or similar description.

## INTERROGATORY NO. 12 [18]:

Identify all efforts at reputation management, including resolving critical reviews of Your organization.

## RESPONSE TO INTERROGATORY NO. 12 [18]:

Responding Party objects to the terms "identify all efforts," "reputation management," and "resolving critical reviews" as vague, ambiguous, overbroad, and unduly burdensome, as it is unclear what exactly is being sought, and likewise, whether such information is relevant to any party's claim or defense, or reasonably proportional to the needs of this case.  Responding Party further objects to this Interrogatory to the extent it seeks Responding Party's confidential and/or proprietary business information, including trade secrets.  Responding Party further

objects to this Interrogatory to the extent it seeks information that is protected from disclosure by the attorney client privilege and/or attorney work product doctrine.

Subject to and without waiver of the foregoing objections, Responding Party responds as follows: In cases in which Responding Party received a critical review, Responding Party typically reached out to the reviewer or poster to seek additional information from them and try to resolve their issues or concerns. Responding Party may have also connected them to Member Services if the issue was a support issue, or provided additional context or perspective for the poster to consider..

## INTERROGATORY NO. 13 [19-21]:

Identify by name each and every person alleged to have not joined Your organization because of the alleged defamatory, false or tortuously interfering statements made by either Tincher-Ladner and/or PTK.  If any of those persons also joined PTK as a result of those statements, please indicate that as well.

## RESPONSE TO INTERROGATORY NO. 13 [19-21]:

Responding Party objects to this Interrogatory as compound as it seeks information concerning at least three distinct topics, namely, the identity of each and every person alleged to have not joined Responding Party's organization because of the allegedly (a) defamatory, (b) false, or (c) tortuously interfering statements made by either Tincher-Ladner and/or PTK.  Responding Party responds to each discrete subpart of this Interrogatory as its own Interrogatory, as follows:

(a)     Identify by name each and every person alleged to have not joined Your organization because of the allegedly defamatory statements made by either Tincher-Ladner and/or PTK.

(1)     Angel Cota, acota69009@student.napavalley.edu.

(2)     Sofia Rivero Torres, sofia.rivero001@mymdc.net.

(3)     Lisa Shipman, lshipman7077@student.egcc.edu.

(4)    Michaelann Allen, mikeya63@aol.com.

(5)    Andrea Sanders, andsandboo@att.net.

Responding Party does not know whether any of the foregoing individuals joined PTK, and Responding Party is otherwise unable to identify any specific persons that did not join its organization as a result of the defamatory statements made by Tincher-Ladner and/or PTK because Responding Party does not track non-members.

(b)    <u>Identify by name each and every person alleged to have not joined Your organization because of the allegedly false statements made by either Tincher-Ladner and/or PTK.</u>

(1)    Angel Cota, acota69009@student.napavalley.edu.

(2)    Sofia Rivero Torres, sofia.rivero001@mymdc.net.

(3)    Lisa Shipman, lshipman7077@student.egcc.edu.

(4)    Michaelann Allen, mikeya63@aol.com.

(5)    Andrea Sanders, andsandboo@att.net.

Responding Party does not know whether any of the foregoing individuals joined PTK, and Responding Party is otherwise unable to identify any specific persons that did not join its organization as a result of the defamatory statements made by Tincher-Ladner and/or PTK because Responding Party does not track non-members.

(c)    <u>Identify by name each and every person alleged to have not joined Your organization because of the allegedly tortiously interfering statements made by either Tincher-Ladner and/or PTK.</u>

(1)    Angel Cota, acota69009@student.napavalley.edu.

(2)    Sofia Rivero Torres, sofia.rivero001@mymdc.net.

(3)    Lisa Shipman, lshipman7077@student.egcc.edu.

(4)    Michaelann Allen, mikeya63@aol.com.

(5)    Andrea Sanders, andsandboo@att.net.

Responding Party does not know whether any of the foregoing individuals joined PTK, and Responding Party is otherwise unable to identify any specific persons that did not join its organization as a result of the defamatory statements made by Tincher-Ladner and/or PTK because Responding Party does not track non-members.

## INTERROGATORY NO. 14 [22-24]:

Identify by name each and every person that has corroborated the existence of the allegedly defamatory, false, misleading and/or tortuously interfering statements made by either Tincher-Ladner and/or PTK.  For each, identify specifically the alleged statement.

## RESPONSE TO INTERROGATORY NO. 14 [22-24]:

Responding Party objects to this Interrogatory as compound as it seeks information concerning at least three distinct topics, namely, the identity of each and every person that has corroborated the existence of the allegedly (a) defamatory, (b) false or misleading, or (c) tortuously interfering statements made by either Tincher-Ladner and/or PTK.  Responding Party responds to each discrete subpart of this Interrogatory as its own Interrogatory, as follows:

(a)    Identify by name each and every person that has corroborated the existence of the allegedly defamatory statements made by either Tincher-Ladner and/or PTK.

Responding Party objects to the term "corroborated" as vague, ambiguous, overbroad, and unduly burdensome, as it is unclear what exactly is being sought, and likewise, whether such information is relevant to any party's claim or defense, or reasonably proportional to the needs of this case.

Subject to and without waiver of the foregoing objections, Responding Party responds as follows:

(1)    Michael Moradian, President, Treasurer, and Director of Honor Society, c/o Stubbs Alderton & Markiles, LLP, 15260 Ventura Blvd., 20th Floor, Sherman Oaks, California 91403; Telephone number (818) 444-4500. Michael reviewed and evaluated statements made by Tincher-Ladner and/or PTK in his role as President of Honor Society.

(2)    Nader Moradian, Administration, Human Resources and Accounting for Honor Society, c/o Stubbs Alderton & Markiles, LLP, 15260 Ventura Blvd., 20th Floor, Sherman Oaks, California 91403; telephone number (818) 444-4500. Nader reviewed and evaluated statements made by Tincher-Ladner and/or PTK in his role as an administrator for Honor Society.

(3)    Tina Murtaugh, Publicity and Social Media for Honor Society, c/o Stubbs Alderton & Markiles, LLP, 15260 Ventura Blvd., 20th Floor, Sherman Oaks, California 91403; telephone number (818) 444-4500. Tina has knowledge concerning social media inquiries directed to Honor Society, including inquiries concerning PTK.

(4)    Burjiss Pavri, Former Employee, Programmer for Honor Society, 4333 SW Willow Street, Seattle, WA 98136; burjiss@gmail.com. Burjiss has knowledge regarding how refunds have been issued as a result of statements made by Tincher-Ladner and/or PTK.

(5)    Gerard Trinidad, Independent Contractor, Member Services for Honor Society, 16 St. Ignatius Street, Villa Priscilla Subdivision, Brgy. Cut-Cot, Pulilan Bulcan, 3005, Manila. Gergard has knowledge regarding how Honor Society has responded to statements made by Tincher-Ladner and/or PTK.

(6)     Maria Alcance, Independent Contractor, Member Services for Honor Society, 161 Purok 6 Paligue, Candaba, Pampanga, 2013, Manila. Maria has knowledge regarding how Honor Society has responded to statements made by Tincher-Ladner and/or PTK.

(b)     Identify by name each and every person that has corroborated the existence of the allegedly false or misleading statements made by either Tincher-Ladner and/or PTK.

Responding Party objects to the term "corroborated" as vague, ambiguous, overbroad, and unduly burdensome, as it is unclear what exactly is being sought, and likewise, whether such information is relevant to any party's claim or defense, or reasonably proportional to the needs of this case.

Subject to and without waiver of the foregoing objections, Responding Party responds as follows:

(1)     Michael Moradian, President, Treasurer, and Director of Honor Society, c/o Stubbs Alderton & Markiles, LLP, 15260 Ventura Blvd., 20th Floor, Sherman Oaks, California 91403; Telephone number (818) 444-4500. Michael reviewed and evaluated statements made by Tincher-Ladner and/or PTK in his role as President of Honor Society.

(2)     Nader Moradian, Administration, Human Resources and Accounting for Honor Society, c/o Stubbs Alderton & Markiles, LLP, 15260 Ventura Blvd., 20th Floor, Sherman Oaks, California 91403; telephone number (818) 444-4500. Nader reviewed and evaluated statements made by Tincher-Ladner and/or PTK in his role as an administrator for Honor Society.

(3)     Tina Murtaugh, Publicity and Social Media for Honor Society, c/o Stubbs Alderton & Markiles, LLP, 15260 Ventura Blvd., 20th Floor,

Sherman Oaks, California 91403; telephone number (818) 444-4500. Tina has knowledge concerning social media inquiries directed to Honor Society, including inquiries concerning PTK.

(4)    Burjiss Pavri, Former Employee, Programmer for Honor Society, 4333 SW Willow Street, Seattle, WA 98136; burjiss@gmail.com. Burjiss has knowledge regarding how refunds have been issued as a result of statement made by Tincher-Ladner and/or PTK.

(5)    Gerard Trinidad, Independent Contractor, Member Services for Honor Society, 16 St. Ignatius Street, Villa Priscilla Subdivision, Brgy. Cut-Cot, Pulilan Bulcan, 3005, Manila. Gergard has knowledge regarding how Honor Society has responded to statements made by Tincher-Ladner and/or PTK.

(6)    Maria Alcance, Independent Contractor, Member Services for Honor Society, 161 Purok 6 Paligue, Candaba, Pampanga, 2013, Manila. Maria has knowledge regarding how Honor Society has responded to statements made by Tincher-Ladner and/or PTK.

(c)    <u>Identify by name each and every person that has corroborated the existence of the allegedly tortuously interfering statements made by either Tincher-Ladner and/or PTK.</u>

Responding Party objects to the term "corroborated" as vague, ambiguous, overbroad, and unduly burdensome, as it is unclear what exactly is being sought, and likewise, whether such information is relevant to any party's claim or defense, or reasonably proportional to the needs of this case.

Subject to and without waiver of the foregoing objections, Responding Party responds as follows:

(1)     Michael Moradian, President, Treasurer, and Director of Honor Society, c/o Stubbs Alderton & Markiles, LLP, 15260 Ventura Blvd., 20th Floor, Sherman Oaks, California 91403; Telephone number (818) 444-4500. Michael reviewed and evaluated statements made by Tincher-Ladner and/or PTK in his role as President of Honor Society.

(2)     Nader Moradian, Administration, Human Resources and Accounting for Honor Society, c/o Stubbs Alderton & Markiles, LLP, 15260 Ventura Blvd., 20th Floor, Sherman Oaks, California 91403; telephone number (818) 444-4500. Nader reviewed and evaluated statements made by Tincher-Ladner and/or PTK in his role as an administrator for Honor Society.

(3)     Tina Murtaugh, Publicity and Social Media for Honor Society, c/o Stubbs Alderton & Markiles, LLP, 15260 Ventura Blvd., 20th Floor, Sherman Oaks, California 91403; telephone number (818) 444-4500. Tina has knowledge concerning social media inquiries directed to Honor Society, including inquiries concerning PTK.

(4)     Burjiss Pavri, Former Employee, Programmer for Honor Society, 4333 SW Willow Street, Seattle, WA 98136; burjiss@gmail.com. Burjiss has knowledge regarding how refunds have been issued as a result of statement made by Tincher-Ladner and/or PTK.

(5)     Gerard Trinidad, Independent Contractor, Member Services for Honor Society, 16 St. Ignatius Street, Villa Priscilla Subdivision, Brgy. Cut-Cot, Pulilan Bulcan, 3005, Manila. Gergard has knowledge regarding how Honor Society has responded to statements made by Tincher-Ladner and/or PTK.

(6)     Maria Alcance, Independent Contractor, Member Services for Honor Society, 161 Purok 6 Paligue, Candaba, Pampanga, 2013, Manila. Maria has knowledge regarding how Honor Society has responded to statements made by Tincher-Ladner and/or PTK.

## INTERROGATORY NO. 15 [25]:

For each and person You intend to call to testify as an expert or consulting expert on which a testifying expert relies at a trial of this matter, please state:

(a)  name and address;

(b)  subject matter to which the expert will testify;

(c)  the facts upon which the expert bases his or her opinion;

(d)  the identification of all documents considered by the expert in forming his or her opinion;

(e)  any and all conclusions reached by the expert;

(f)  whether any expert has made a written report;

(g)  the date any such written report was submitted;

(h)  the name or other identification of the person to whom this report was submitted, if any;

(i)  the name and address of any person who has custody of any written report made by any expert;

(j)  the name of all articles or publications authored by the expert within the past ten (10) years; and

(k)  the amount of compensation to be paid to the expert;

(l)  the name of any cases in which the expert has testified within the last four (4) years.

## RESPONSE TO INTERROGATORY NO. 15 [25]:

Responding Party objects to this Interrogatory to the extent it seeks information that is protected from disclosure by the attorney client privilege and/or

attorney work product doctrine. Responding Party further objects to this Interrogatory to the extent it seeks Responding Party's confidential and/or proprietary business information, including sensitive financial information, marketing plans and/or trade secrets. Responding Party further objects to this Interrogatory on the grounds that it is premature in that it seeks information that is the subject of expert opinion as provided by Fed. R. Civ. Proc. 26(a)(2)(D) and this Court's case management order.

### INTERROGATORY NO. 16 [26]:

Identify/explain your requirements for membership. If they have evolved over time, describe how they have evolved. And if they are known to You to differ from the requirements for membership in PTK, identify those differences (and how those differences may have evolved over time).

### RESPONSE TO INTERROGATORY NO. 16 [26]:

Responding Party objects to this Interrogatory on the grounds that it exceeds the number of interrogatories agreed upon by the parties and ordered by the Court in its Case Management Order, which "are limited to 25 succinct questions." (Dkt. 59.) Responding Party further objects to this Interrogatory as overbroad and unduly burdensome because it seeks information that is not relevant to any party's claim or defense nor proportional to the needs of this case. Responding Party further objects to this Interrogatory to the extent it seeks Responding Party's confidential and/or proprietary business information, including marketing plans and/or trade secrets. Responding Party further objects to this Interrogatory on the grounds that the information sought is publicly available and is therefore equally available to Propounding Party.

Subject to and without waiver of the foregoing objections, Responding Party responds as follows: There is no minimum academic requirement to become a member of Responding Party, as this would perpetuate systemic bias against

marginalized and underprivileged groups. This harkens to the purest form of honor societies which are meant to enrich the academic community. Honor societies from 1776 until the 1920's shared this lack of Grade Point Average restriction on membership. Responding Party does, however, provide recognition tiers for members to achieve, which are set forth on its website at: https://www.honorsociety.org/requirements. To summarize these recognition tiers, a "Highest Honors Member" must have above a grade point average between 3.8 and 4.0; a "High Honors Member" must have above a grade point average between 3.5 and 3.79; and an "Honors Member" must have above a grade point average between 3.2 and 3.49.

**INTERROGATORY NO. 17 [27]:**

Identify how many active chapters You had in 2016. Identify how many active chapters You currently have.

**RESPONSE TO INTERROGATORY NO. 17 [27]:**

Responding Party objects to this Interrogatory on the grounds that it exceeds the number of interrogatories agreed upon by the parties and ordered by the Court in its Case Management Order, which "are limited to 25 succinct questions." (Dkt. 59.) Responding Party further objects to this Interrogatory as overbroad and unduly burdensome to the extent it seeks information that is not relevant to any party's claim or defense nor proportional to the needs of this case. Responding Party further objects to this Interrogatory to the extent it seeks Responding Party's confidential and/or proprietary business information, including marketing plans and/or trade secrets.

Subject to and without waiver of the foregoing objections, Responding Party responds as follows: Responding Party had 18 active chapters in 2016. Responding Party no longer has any active chapters because it has moved away from the chapters model as a result of the Covid-19 pandemic and accessibility concerns.

**INTERROGATORY NO. 18 [28]:**

Identify all salary, bonus, distributions or other compensation paid by You, by year, since January 1, 2016, to Moradian, Mikal Calvert and Nader Moradian since January 1, 2016.

**RESPONSE TO INTERROGATORY NO. 18 [28]:**

Responding Party objects to this Interrogatory on the grounds that it exceeds the number of interrogatories agreed upon by the parties and ordered by the Court in its Case Management Order, which "are limited to 25 succinct questions." (Dkt. 59.) Responding Party further objects to this Interrogatory as overbroad and unduly burdensome to the extent it seeks information that is not relevant to any party's claim or defense nor proportional to the needs of this case. Responding Party further objects to this Interrogatory to the extent it seeks Responding Party's confidential and/or proprietary business information, including sensitive financial information, marketing plans and/or trade secrets. Responding Party further objects to this Interrogatory on the grounds that it attempts to violate the privacy interests of natural persons who are not parties to this action.

Dated: August 17, 2023

*/s/ Michael A. Bernet*

Daniel A. Rozansky – PHV
Michael A. Bernet – PHV
STUBBS ALDERTON & MARKILES, LLP
15260 Ventura Blvd., 20th Floor
Sherman Oaks, California 91403
Tel: (818) 444-4500
E-mail: drozansky@stubbsalderton.com
E-mail: mbernet@stubbsalderton.com

DocuSign Envelope ID: 816BA02B-9C49-45B3-845E-AEA34385559E

1

**VERIFICATION**

2

STATE OF MISSISSIPPI, COUNTY OF JACKSON.

3

4

I have read the foregoing **DEFENDANT HONORSOCIETY.ORG, INC.'S AMENDED RESPONSE TO THIRD-PARTY DEFENDANT'S FIRST SET OF INTERROGATORIES** and know its contents.

5

6

☐    I am a party to this action.  The matters stated in the foregoing document are true of my own knowledge except as to those matters which are stated on information and belief, and to those matters I believe them to be true.

7

8

☒    I am President, Treasurer, and Director of HonorSociety.org, Inc., a party to this action, and am authorized to make this verification for and on its behalf, and I make this verification for that reason.

9

10

☒    I am informed and believe and on that ground allege that the matters stated in the foregoing document are true.

11

☐    The matters stated in the foregoing document are true of my own knowledge except as to those matters which are stated on information and belief, and as to those matters I believe them to be true.

12

13

14

☐    I am one of the attorneys for Party Name, a party to this action.  Such party is absent from the county of aforesaid where such attorneys have their offices, and I make this verification for and on behalf of that party for that reason.  I am informed and believe and on that ground allege that the matters stated in the foregoing document are true.

15

Executed on August 17, 2023, at Las Vegas, Nevada.

16

    I declare under penalty of perjury that the foregoing is true and correct.

17

DocuSigned by:

*Mike Moradian*

18

2879F22B88B441E...

                        Michael Moradian

19

20

21

22

23

24

25

26

27

28

VERIFICATION

## Certificate of Service

I hereby certify that on August 17, 2023, a copy of the foregoing was served via email upon the following counsel:

Jonathan G. Polak (Pro Hac Vice)
J. Mitchell Tanner, (Pro Hac Vice)
TAFT STETTINIUS & HOLLISTER LLP
One Indiana Square, Suite 3500 Indianapolis, IN 46204-2023
(317) 713-3500 – phone
(317) 713-3699 – fax
jpolak@taftlaw.com
mtanner@taftlaw.com

Rachel Smoot (Pro Hac Vice)
TAFT STETTINIUS & HOLLISTER LLP
41 S. High Street, Suite 1800
Columbus, OH 43215
(614) 221-2838 – phone
(614) 221-2007 – fax
rsmoot@taftlaw.com

Michael B. Wallace, MSB # 6904
WISE CARTER CHILD & CARAWAY,
P.A. Post Office Box 651
Jackson, Mississippi 39205
Phone 601-968-5500

*Counsel for Plaintiff*

/s/ Michael A. Bernet

_____
Michael A. Bernet

# EXHIBIT 15

## Walsh, Christine

| | |
|---|---|
| **From:** | Polak, Jonathan |
| **Sent:** | Tuesday, August 6, 2024 10:48 PM |
| **To:** | Derek Linke; Derek A. Newman; Dan Rozansky; Michael Bernet; Rayner, Whit; Stephens, Dakota; kcallahan@joneswalker.com |
| **Cc:** | Smoot, Rachel A.; Etienne, Mike; Mike Wallace; Charles Cowan; Beau M. Bettiga |
| **Subject:** | PTK/HS.org - Rule 37 demand for supplementation and additional information |

Counsel,

We write concerning the need for supplementation of your client, HonorSociety.org., Inc.'s discovery responses.

First, and most immediately, Honor Society had agreed to provide us its mid-year, year-to-date, financials as of June 30th at or around the mid-year. While we did not expect them to be produced on July 1st, we do believe that sufficient time has passed since that date for the information to have been prepared and delivered. If you prefer to provide us the monthly statements for January through June, 2024, that will suffice. However, if you have a mid-year statement prepared, we would ask that be produced as well. Related to that, we also require production of Mr. Moradian's personal W-2 and other similar financial information showing his personal income in 2023. He produced that information for the years prior, and it should be supplemented. Because of the imminency of the expert deadline, **we ask that these documents be produced to us by Friday**. Since they are documents prepared in the ordinary course of business, we see no reason why they cannot be immediately identified, collected and produced. Further to that point, this agreement to provide this information has been long-standing.

Second, we require the supplementation of certain interrogatories served on HonorSociety.org, Inc. by PTK and Dr. Tincher-Ladner. I identify them as follows:

**PTK INT No. 7**. This interrogatory seeks the identification of all third-parties "providing assistance in any form for email or direct mail marketing services for Honor Society since inception. Honor Society's Second Amended Response only identified "Goldner Associates, Inc.". We know that other organizations like MailChimp and OnGage have provided these services, and it may be that others have as well. Please provide a complete, sworn answer.

**PTK INT. No. 10**. In Honor Society's response, it says that where students have "opted in", Honor Society will communicate with those students via "Short Message Service (SMS)", but we have seen no documents produced by Honor Society evidencing any such communications. If you have produced them, and we missed them, please identify them by Bates number. If you have not produced them, please have them identified, collected and produced by August 15, 2024.

**PTK INT No. 14**. This interrogatory seeks disclosure of all references to PTK in any marketing by Honor Society, including any emails, direct mailings, website content and social media content. As of the Second Amended Response, Honor Society responded "none." That is obviously no longer true. Please provide a complete response, including not only the recent websites and other social media content created by Honor Society about PTK, but also any other public statements made by Honor Society about PTK that has not been identified in any court proceeding.

**PTK INT No. 15**. This interrogatory seeks the identification of any persons confused between PTK and Honor Society. Although Honor Society identified by Bates number a list of documents on November 20, 2023, it has never supplemented that list despite multiple productions made since that date. Please supplement this interrogatory response with a complete listing of all documents evidencing that confusion.

**PTK INT No. 18**.  This interrogatory asks that Honor Society identify its gross revenues, expenses, advertising, marketing and promotion expenses and profit, by year, since January 1, 2016.  Honor Society relied on Rule 33(d), but has never properly identified the documents as that rule requires.  Please comply with Rule 33(d)'s requirements of specific identification of the records that provide this information.

**PTK INT No. 21**.  This interrogatory seeks facts supporting Honor Society's contention that there is no likelihood of confusion between Honor Society's CAREER EDGE mark, and PTK's EDGE mark. It also seeks the identification of witnesses with knowledge and any documents supporting that contention.   To date, you have provided no substantive response. PTK requires that one be provided.

**PTK INT No. 22**.  This interrogatory seeks facts supporting Honor Society's contention that there is no likelihood of confusion between Honor Society's use of blue and gold, and any other elements of PTK's claimed trade dress.  It also seeks the identification of witnesses with knowledge and any documents supporting that contention.  To date, Honor Society has provided no substantive response, and PTK requires that one be provided.

**PTK INT No. 23**.  This interrogatory seeks facts supporting Honor Society's affirmative defenses.  It also seeks the identification of witnesses with knowledge and any documents supporting that contention.  To date, Honor Society has provided no substantive response, and PTK requires that one be provided.

**LTL INT No. 3**.  This interrogatory seeks the identification of all alleged defamatory statements made by Dr. Tincher-Ladner and/or PTK.  This interrogatory also sought information specific to the "date, time, place, speaker and known recipients." In Honor Society's First Amended Responses served on August 17, 2023, Honor Society identified a number of documents by Bates number.  That interrogatory has not been supplemented since that date.  Regardless, we will need more than just the Bates number, as we also require to know what statement(s) in each document you claim are defamatory.

**LTL INT No. 4**.  This interrogatory is similar to INT No. 3, except it asks for Honor Society to identify every alleged false statement made by either Dr. Tincher-Ladner or PTK.  Again, Honor Society supplemented with bates numbers, but we require now the same level of detail as requested above, as well as a supplemental list of those statements.

**LTL INT No. 5**.  This interrogatory is also similar to INT Nos. 3 and 4, except here it seeks the identification of all acts of interference with business relations.  For the same reasons, we require a supplementation as well as a list.

**LTL INT No. 6**. This interrogatory is also similar to INT Nos. 3, 4 and 5, except here it seeks the identification of every contract or business relation that Honor Society claims was interfered with.  For the same reasons, we require a supplementation as well as a list.

**LTL INT No. 7**. This interrogatory requires the identification of those damages sought by Honor Society as to each claim against either Dr. Tincher-Ladner or PTK.  As indicated, a complete response must be "specific as to each claim you have asserted, if your damages for any claim are different from any other."  This interrogatory contains no information as to Honor Society's antitrust claim, nor does it provide updated information as to damages in light of this Court's dismissal of many of Honor Society's original counterclaims.  Please provide a complete response.

**LTL INT Nos. 8 & 9**.  These interrogatories seek certain financial information in the form of tabular responses.  Honor Society never provided complete information for 2023. Please provide a supplemental response with that information.

**LTL INT No. 11**.  This interrogatory seeks identification of all persons known to Honor Society to have called or accused it as a "scam", "fraud" or "similar description."  Although Honor Society provided in August, 2023 a list of documents by bates number, it has never supplemented that answer despite multiple productions of documents since then, and otherwise has never provided a complete answer.  Please provide both a supplemental identification of relevant documents as well as a list of those persons.

As to these interrogatory specific issues, we request that you confirm by Friday, August 9, 2024, that the above-referenced information will be provided by no later than August 23rd.  If you cannot agree to do so, we request a meet and confer at any of the following dates and times (all times central):  Friday, August 9, 9-4, Monday, 9-4.

# EXHIBIT 16

**Walsh, Christine**

| | |
|---|---|
| **From:** | MSSDdb_Myers_Chambers <Myers_Chambers@mssd.uscourts.gov> |
| **Sent:** | Tuesday, August 13, 2024 11:52 AM |
| **To:** | MSSDdb_Myers_Chambers; Polak, Jonathan; Derek Linke |
| **Cc:** | Dakota Stephens; Derek A. Newman; Michael Bernet; Mike Wallace; Daniel A. Rozansky; Charles Cowan; Smoot, Rachel A.; Beau M. Bettiga; Whit Rayner; kcallahan@joneswalker.com; Etienne, Mike |
| **Subject:** | RE: [EXTERNAL]RE: 3:22-cv-00208-CWR-RPM  Phi Theta Kappa et. al. v. Honor Society et. al. |

Good morning counsel,

I have discussed these issues with Judge Myers.  It is the Court's understanding of the discovery rules that parties are permitted to supplement discovery responses in a seasonable or timely manner.  Fed. R. Civ. P. 26(e)(1).  The Court suggests that a supplementation within 21 days would be seasonable.  The Court hopes that this guidance along with the Order just entered extending the expert designation deadlines will resolve some of these issues in this discovery dispute.  However, if any of these issues remain after September 3rd, then the parties may contact the Court again about potentially conducting a telephonic discovery conference.

Philip S. Lott

Term Law Clerk to

Honorable Robert P. Myers, Jr.

United States Magistrate Judge

Southern District of Mississippi

---

**From:** MSSDdb_Myers_Chambers <Myers_Chambers@mssd.uscourts.gov>
**Sent:** Tuesday, August 13, 2024 8:14 AM
**To:** Polak, Jonathan <JPolak@taftlaw.com>; Derek Linke <Linke@newmanlaw.com>; MSSDdb_Myers_Chambers <Myers_Chambers@mssd.uscourts.gov>
**Cc:** Dakota Stephens <dstephens@joneswalker.com>; Derek A. Newman <dn@newmanlaw.com>; Michael Bernet <mbernet@stubbsalderton.com>; Mike Wallace <mbw@wisecarter.com>; Daniel A. Rozansky <drozansky@stubbsalderton.com>; Charles Cowan <cec@wisecarter.com>; Smoot, Rachel A. <RSmoot@taftlaw.com>; Beau M. Bettiga <bmb@wisecarter.com>; Whit Rayner <wrayner@joneswalker.com>; kcallahan@joneswalker.com; Etienne, Mike <MEtienne@taftlaw.com>
**Subject:** RE: [EXTERNAL]RE: 3:22-cv-00208-CWR-RPM Phi Theta Kappa et. al. v. Honor Society et. al.

Thank you both for your prompt responses.  I will speak with Judge Myers this morning and provide the parties with an update sometime today.


Philip S. Lott

Term Law Clerk to

Honorable Robert P. Myers, Jr.

United States Magistrate Judge

Southern District of Mississippi

---

**From:** Polak, Jonathan <JPolak@taftlaw.com>
**Sent:** Monday, August 12, 2024 9:28 PM
**To:** Derek Linke <Linke@newmanlaw.com>; MSSDdb_Myers_Chambers <Myers_Chambers@mssd.uscourts.gov>
**Cc:** Dakota Stephens <dstephens@joneswalker.com>; Derek A. Newman <dn@newmanlaw.com>; Michael Bernet <mbernet@stubbsalderton.com>; Mike Wallace <mbw@wisecarter.com>; Daniel A. Rozansky <drozansky@stubbsalderton.com>; Charles Cowan <cec@wisecarter.com>; Smoot, Rachel A. <RSmoot@taftlaw.com>; Beau M. Bettiga <bmb@wisecarter.com>; Whit Rayner <wrayner@joneswalker.com>; kcallahan@joneswalker.com; Etienne, Mike <MEtienne@taftlaw.com>
**Subject:** RE: [EXTERNAL]RE: 3:22-cv-00208-CWR-RPM Phi Theta Kappa et. al. v. Honor Society et. al.


<mark>**CAUTION - EXTERNAL:**</mark>


This is obviously more information than we received previously.  I attach the operative communications for the Court's consideration and comparison.


PTK still believes that a conference is appropriate.

---

**From:** Derek Linke <Linke@newmanlaw.com>
**Sent:** Monday, August 12, 2024 9:34 PM
**To:** MSSDdb_Myers_Chambers <Myers_Chambers@mssd.uscourts.gov>
**Cc:** Polak, Jonathan <JPolak@taftlaw.com>; Dakota Stephens <dstephens@joneswalker.com>; Derek A. Newman <dn@newmanlaw.com>; Michael Bernet <mbernet@stubbsalderton.com>; Mike Wallace <mbw@wisecarter.com>; Daniel A. Rozansky <drozansky@stubbsalderton.com>; Charles Cowan <cec@wisecarter.com>; Smoot, Rachel A. <RSmoot@taftlaw.com>; Beau M. Bettiga <bmb@wisecarter.com>; Whit Rayner <wrayner@joneswalker.com>; kcallahan@joneswalker.com; Etienne, Mike <MEtienne@taftlaw.com>
**Subject:** Re: [EXTERNAL]RE: 3:22-cv-00208-CWR-RPM Phi Theta Kappa et. al. v. Honor Society et. al.

Mr. Lott,

Thank you for your and Judge Myers' attention to this case.

HonorSociety neither refused to provide the requested materials nor to meet about these issues. But we cannot comply with the request to do so immediately. HonorSociety is currently under extraordinary pressure given the upcoming expert-disclosure deadline later this week, along with other ongoing discovery issues.

PTK raised these issues last week and demanded that HonorSociety address them all to its satisfaction on an essentially immediate basis. None of these issues just arose. Had they been urgent, PTK could have escalated them weeks ago. But now, we are just days away from the opening expert-disclosure deadline. HonorSociety's resources are fully focused on attempting to meet that deadline.

The issues PTK raises will require a serious amount of time, effort, and detail to properly evaluate and, if appropriate, to address. In particular:

1. HonorSociety would have to prepare financials specifically for PTK—outside the normal course of its business—to produce them via supplemental production. It is a very small company and cannot do so on an immediate timeframe.

2. PTK demands that HonorSociety's counsel prepare and produce, on an immediate basis, replacement ESI-related metadata files for all of HonorSociety's more than 50 document productions going back to the beginning of discovery in this case. The parties discussed this issue last week while meeting and conferring about other issues that PTK also demanded required HonorSociety's immediate attention. HonorSociety has since responded in writing that we are unable to prepare this within the immediate window by which PTK demands it. But we will prepare and provide it within the next few weeks.

3. PTK demands that HonorSociety prepare and produce, on an immediate basis, extensive supplemental responses to 16 interrogatories served by it and Dr. Tincher-Ladner. Under the circumstances, we cannot do so immediately as PTK demands.

Finally, PTK has requested documents created after November 2023. In its response to HonorSociety's motion to compel, PTK argued that it shouldn't have to search for documents created after that date. HonorSociety believes all parties should provide documents through the current date. But if the Court agrees with PTK, then HonorSociety believes neither party should have to search for documents after November 2023. For that reason, we believe the Court's ruling on HonorSociety's pending motion to compel will provide guidance to all parties and may resolve some of these issues.

HonorSociety has always considered and, in almost every case, sought to comply with PTK's never-ending discovery demands. But under these circumstances, given PTK's timing and the upcoming expert-disclosure deadline, we are unable to engage with them this week.

We are available to meet with PTK next week after the opening expert-disclosure deadline has passed and believe that we can address the issues without the Court's assistance. HonorSociety respectfully requests that the Court not require any briefing or schedule any conferences about these issues until after the expert-disclosure deadline.

Respectfully,

Derek Linke
Newman LLP
direct (206) 274-2827
mobile (206) 669-3638

On Aug 12, 2024, at 2:59 PM, MSSDdb_Myers_Chambers <Myers_Chambers@mssd.uscourts.gov> wrote:

Good evening counsel,

I will discuss this with Judge Myers tomorrow.  In the meantime, he would like Honor Society to provide a brief response stating its position as to the issues set forth below.

Philip S. Lott

Term Law Clerk to

Honorable Robert P. Myers, Jr.

United States Magistrate Judge

Southern District of Mississippi

---

**From:** Polak, Jonathan <JPolak@taftlaw.com>
**Sent:** Monday, August 12, 2024 4:31 PM
**To:** MSSDdb_Myers_Chambers <Myers_Chambers@mssd.uscourts.gov>
**Cc:** Dakota Stephens <dstephens@joneswalker.com>; Derek A. Newman <dn@newmanlaw.com>; Derek Linke <Linke@newmanlaw.com>; Michael Bernet <mbernet@stubbsalderton.com>; Mike Wallace <mbw@wisecarter.com>; Daniel A. Rozansky <drozansky@stubbsalderton.com>; Charles Cowan <cec@wisecarter.com>; Smoot, Rachel A. <RSmoot@taftlaw.com>; Beau M. Bettiga <bmb@wisecarter.com>; Rayner, Whit <wrayner@joneswalker.com>; kcallahan@joneswalker.com; Etienne, Mike <MEtienne@taftlaw.com>
**Subject:** RE: 3:22-cv-00208-CWR-RPM Phi Theta Kappa et. al. v. Honor Society et. al.

**CAUTION - EXTERNAL:**

Magistrate Judge Myers,

Regrettably, we have yet another dispute concerning Honor Society's discovery responses and/or positions that requires your attention. Although we have attempted to meet and confer with counsel on these issues, they have refused our request to do so. This is not a situation where we have met and conferred, and the parties reached an impasse. Instead, here Honor Society has instead simply refused to talk to us. These issues were identified by email on Tuesday, August 5, with a request for a meet and confer early this week. Today we received by email a rejection of our request to meet and confer until you rule on the pending motions to compel. The subject matter of those motions has nothing to do with the subject of our August 5 email (as plainly clear from the topics identified below).

The issues we have to address relate to the following topics:

1. Whether Honor Society should honor its commitment made in 2023 by former lead counsel to supplement its financials every six months (that information is necessary for PTK's damages expert);

5

2.  Whether Honor Society should comply with the ESI Protocol ordered by this Court as it relates to proper digital identification of all documents marked either "CONFIDENTIAL" or "ATTORNEYS' EYES ONLY" (As it stands, there is no way to sort for these documents, and due to the volume of production by Honor Society it has compromised our ability to provide access to these documents with our client); and

3.  Whether Honor Society must supplement its interrogatory responses to provide information relevant to its Second Amended Counterclaims, or otherwise based on facts learned since the responses were provided in mid-2023.

As it stands, Honor Society refuses to discuss, much less provide, any of this requested information/documents.  Accordingly, we seek a conference with you so that we may discuss obtaining your guidance on this issue, and whether a motion to compel is appropriate under the current circumstances.



**Jonathan G. Polak**
Partner
JPolak@taftlaw.com
Dir: 317.713.3532
Tel: 317.713.3500  |  Fax: 317.713.3699
One Indiana Square, Suite 3500
Indianapolis, Indiana 46204-2023

**taftlaw.com**

This message may contain information that is attorney-client privileged, attorney work product or otherwise confidential. If you are not an intended recipient, use and disclosure of this message are prohibited. If you received this transmission in error, please notify the sender by reply e-mail and delete the message and any attachments.

**CAUTION - EXTERNAL EMAIL:** This email originated outside the Judiciary. Exercise caution when opening attachments or clicking on links.

**CAUTION - EXTERNAL EMAIL:** This email originated outside the Judiciary. Exercise caution when opening attachments or clicking on links.

# EXHIBIT 17



**Derek Linke**
Direct  +1.206.274.2827
Main   +1.310.359.8200
linke@newmanlaw.com

100 Wilshire Blvd, Suite 700
Santa Monica, CA  90401

**SENT BY EMAIL**

September 4, 2024

Jonathan G. Polak
Taft, Stettinius & Hollister, LLP
One Indiana Square, Suite 3500
Indianapolis, IN 46204
*jpolak@taftlaw.com*

    **Re:**   *Phi Theta Kappa v. HonorSociety.Org., Inc., No. 22-cv-00208-CWR-RPM*
          **PTK and Tincher-Ladner's Demand for Supplemental/Additional Interrogatory Answers**

Jonathan:

This responds to PTK and Dr. Tincher-Ladner's demand that HonorSociety supplement its answers to certain interrogatories. As an initial point, HonorSociety disagrees that most of those demands are for supplements as that term is used in the Rules. But we have reviewed and considered them each in good faith. HonorSociety is in various stages of preparing or obtaining client review and approval for verification of supplemental and/or additional responses to the following interrogatories for service no later than this Friday, September 6, 2024: PTK Interrogatory Nos. 7, 15, and 18; and Tincher-Ladner Interrogatory Nos. 8, 9, and 11.

However, there are issues with other interrogatories for which PTK and Dr. Tincher-Ladner demand supplementation or additional information:

**A.    PTK Interrogatory No. 10**

This interrogatory requested HonorSociety identify "all ways in which you market Your company." PTK now demands that HonorSociety provide additional information outside the scope of the interrogatory; namely, that it identify by Bates number, or produce documents evidencing, its communications with students. This interrogatory does not request that HonorSociety identify or produce its direct communications with students; information identifying all such communications is not responsive. If PTK disagrees, please provide a written explanation as to your position so we may consider it.

**B.    PTK Interrogatory No. 14**

As summarized in your email, this interrogatory "seeks disclosure of all references to PTK in any marketing" by HonorSociety. Your email states that HonorSociety's response of "none" is "obviously no longer true" due to "the recent websites and other social media content created by HonorSociety about PTK." But the referenced "websites and other social media content" are not

marketing by HonorSociety and therefore not responsive to this interrogatory. If PTK disagrees, please provide a written explanation as to your position so we may consider it.

**C.    PTK Interrogatory Nos. 21 and 22**

These interrogatories request HonorSociety provide supporting facts, witnesses, and documents if it contends "there is no likelihood of confusion between HonorSociety's" (a) "use of CAREER EDGE and PTK's use of the EDGE Mark," and (b) "use of the blue and gold color scheme, and any other elements claimed in PTK's Trade Dress." Your email demands a substantive response from HonorSociety proving that something does not exist. However, it is PTK's burden to prove that there is a likelihood of confusion. The non-existence of a likelihood of confusion is not provable.

**D.    PTK Interrogatory No. 23**

This interrogatory requests, for each of HonorSociety's affirmative defenses, that it state "(a) all facts on which you base that affirmative defense;" (b) "all witnesses with knowledge of those facts;" and (c) "any documents supporting that affirmative defense." Your email states PTK requires a substantive response. However, PTK has refused to provide a substantive response to HonorSociety's Request for Production No. 120 seeking documents concerning PTK's affirmative defenses, claiming such request is "invasive of the attorney-client and attorney work product privileges." PTK also refused to provide a substantive response to HonorSociety's Interrogatory No. 38 seeking the basis for PTK's affirmative defenses, instead objecting that such interrogatory "seeks to impose a requirement on PTK to marshal its evidence in the form of an interrogatory response." Accordingly, HonorSociety will not supplement its response to this interrogatory unless PTK agrees to fully respond to HonorSociety's corresponding requests.

**E.    Tincher-Ladner Interrogatory Nos. 3 and 4**

These interrogatories seek "each and every" defamatory and false statement made by Tincher-Ladner and/or PTK relevant to HonorSociety's claims for defamation and false or misleading representations of fact. HonorSociety's responses cited over 150 documents containing those defamatory and/or false or misleading statements of fact. Your email demands HonorSociety supplement these responses. HonorSociety no longer has a claim for defamation against Dr. Tincher-Ladner, so her demand for the supplementation is obviously moot, unduly burdensome, and not required under the proportionality standard. HonorSociety does not intend to provide such a supplementation.

Moreover, many of the documents HonorSociety may cite in supplementing its responses to Tincher-Ladner Interrogatory Nos. 3 and 4 with respect to PTK have been designated by PTK as "Highly Confidential – Attorneys' Eyes Only," thus preventing HonorSociety from having access to them for the purpose of preparing verified interrogatory responses.[1] PTK must re-designate all communications referencing HonorSociety between it and any non-PTK employees as "Confidential" for HonorSociety to be able to provide a sworn supplemental response to Tincher-Ladner

---

[1] *See, e.g.*, PTK0123549, PTK0123724, PTK0124125, PTK0132455.

*Phi Theta Kappa v. HonorSociety.Org, Inc.*
*September 4, 2024*
*Page 3 of 3*

Interrogatory Nos. 3 and 4. Please let us know as soon as possible whether PTK agrees to this proposed re-designation and by when so we can work out a reasonable schedule for HonorSociety's client representative to review such materials for the purpose of providing a complete response to these interrogatories.

**F.    Tincher-Ladner Interrogatory Nos. 5 and 6**

Similar to Tincher-Ladner Interrogatory Nos. 3 and 4, these interrogatories seek every act of interference with business relations and every contract/business relation interfered with by Tincher-Ladner and PTK. HonorSociety no longer has a claim for tortious interference against Dr. Tincher-Ladner, so her demand for the supplementation is obviously moot, unduly burdensome, and not required under the proportionality standard. HonorSociety does not intend to provide such a supplementation.

And as with Tincher-Ladner Interrogatory Nos. 3 and 4, the documents HonorSociety would likely cite in supplementing its responses to Tincher-Ladner Interrogatory Nos. 5 and 6 with respect to PTK—namely PTK communications to third parties containing defamatory and/or false or misleading statements—have been designated by PTK as "Highly Confidential – Attorneys' Eyes Only," thus preventing HonorSociety from having access to them for the purpose of preparing verified interrogatory responses.[2] PTK must re-designate all communications referencing HonorSociety between it and any non-PTK employees as "Confidential" for HonorSociety to be able to provide a sworn supplemental response to Tincher-Ladner Interrogatory Nos. 5 and 6. Please let us know as soon as possible whether PTK agrees to this proposed re-designation and by when so we can work out a reasonable schedule for HonorSociety's client representative to review such materials for the purpose of providing a complete response to these interrogatories.

**G.    Tincher-Ladner Interrogatory No. 7**

This interrogatory requests HonorSociety identify all damages in connection with its claims. HonorSociety previously provided a substantive response to this interrogatory. Yet PTK refused to provide any substantive response to HonorSociety's comparable Interrogatory Nos. 32 and 33, instead objecting that they "seek[] to impose a requirement on PTK to marshal its evidence in the form of an interrogatory response." Accordingly, HonorSociety will not supplement its response to this Interrogatory unless PTK agrees to fully respond to HonorSociety's corresponding requests.

Thank you.

Newman llp

Derek Linke

---

[2] *See, e.g.*, PTK0060312, PTK0060313, PTK0132455.