# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
# NORTHERN DIVISION

**PHI THETA KAPPA HONOR SOCIETY,**

*Plaintiff / Counter-Defendant*,

v.

**HONORSOCIETY.ORG, INC., ET AL.,**

*Defendants/ Counter-Plaintiffs*,

v.

**DR. LYNN TINCHER-LADNER,**

*Third-Party Defendant.*

CAUSE NO. 3:22-CV-208-CWR-RPM

## ORDER

Before the Court is Phi Theta Kappa Honor Society ("PTK") and Dr. Lynn Tincher-Ladner's *Motion for Contempt and Sanctions* against Defendants HonorSociety.Org, Inc. and Honor Society Foundation, Inc. (together "Honor Society"). Docket No. 242.[1] Also before the Court is PTK's *Motion for Sanctions/Attorney's Fees* against Honor Society. Docket No. 274. Upon review, the *Motion for Contempt and Sanctions* will be granted in part and the *Motion for Sanctions/Attorney's Fees* will be denied without prejudice.

**I.   FACTUAL AND PROCEDURAL HISTORY**

On March 28, 2024, after a full day's hearing, this Court issued a narrow Preliminary Injunction after finding that Honor Society was engaging with PTK's members and collegiate

---

[1] After the Court drafted most of this Order, PTK and Dr. Tincher-Ladner filed a 137-page supplement to the pending *Motion for Sanctions and Contempt*. Docket No. 328. The Court declines to consider the supplement, as it wishes to forgo the inevitable motion to strike or for sur-rebuttal.

partners in misleading ways. Docket No. 130. This injunction enjoined Honor Society from sending six specific survey questions to PTK's members and from submitting the public records requests at issue to PTK's collegiate partners.

Just a few months later, after two days of testimony, on August 22, this Court was once again forced to intervene. Finding that "Honor Society ha[d] turned much of the content of the six previously-enjoined survey questions into thousands of webpages," Docket No. 275 at 2, it issued a second Preliminary Injunction requiring Honor Society and its affiliates to:

1) Immediately cease edits to PTK's Wikipedia page, and subject itself to discovery on Wikipedia edits it may have made or caused during this litigation.

2) Remove all images of the cartoon East Asian woman vendor from its webpages and social media posts.

3) Remove all false subject matter from its webpages and social media posts regarding the Itawamba Community College chapter advisor's arrest.

4) Limit its reporting on the sexual harassment allegations against Risley to existing media articles only, rather than articles of its own creation.

5) Add the actual contact information for every PTK chapter into the "Directory," or delete the "Directory."

6) "Add the following disclaimer, in 12 point or larger size font, to the top of all remaining webpages and social media posts that concern or reference this litigation:

> Disclaimer: The author of this article is not a neutral party in the referenced litigation. HonorSociety.org Inc., Honor Society Foundation Inc., and its president Michael Moradian were sued in

2

>federal court by PTK on April 20, 2022 for False Designation of Origin, Trade Dress Infringement, and Unfair Competition. Honor Society and Michael Moradian countersued and are presently defendants/counter-plaintiffs in this litigation. Litigation is still ongoing and all claims made regarding this case are just allegations against the parties.

*Id.* at 26.

One week after the Court's second Preliminary Injunction, PTK and Tincher-Ladner filed the present *Motion for Contempt and Sanctions*, arguing that Honor Society failed to abide by the Court's Order in several respects. They ask the Court to hold Honor Society in civil contempt, award PTK its attorney's fees expended in connection with this Motion, impose a $1,000 per day fine on Honor Society, and any "such other relief to which the Court finds them entitled." Docket No. 243 at 3–4.

About two months later, after the *Motion for Contempt and Sanctions* had been fully briefed, PTK filed a *Motion for Sanctions/Attorney's Fees*, this time asking the Court to award its attorney's fees expended in connection with Honor Society's bad faith misrepresentations and conduct. Docket No. 274. Specifically, PTK posits that Honor Society acted in bad faith when it made misrepresentations to the Court regarding its use of the survey questions and records requests, and in its conduct leading to the Preliminary Injunctions.[2] PTK claims that but for Honor Society's misleading and malicious conduct, it would not have prepared and filed both motions for injunctive relief and the present *Motion for Sanctions/Attorney Fees*.

---

[2] The "conduct leading to the first Preliminary Injunction" refers to Honor Society's survey questions and public records requests. The "conduct leading to the second Preliminary Injunction" refers to Honor Society's embezzlement allegations, representations of itself as the plaintiff, chapter directory and webpages, image of Dr. Tincher-Ladner, sexual harassment allegations, and Wikipedia edits.

3

Honor Society opposes both motions. It claims it should not be held in contempt because it did not violate the second Preliminary Injunction. Honor Society also contends that attorney's fees are not warranted because it did not act in bad faith—but even if it did—the Court lacks authority to sanction its conduct leading to the Preliminary Injunctions.

The Court will take up the motions in reverse order.

## II. MOTION FOR SANCTIONS/ATTORNEY'S FEES

PTK argues that attorney's fees are warranted under the Court's inherent power because Honor Society's bad faith misrepresentations and conduct required it to prepare and file both motions for injunctive relief. Docket No. 275 at 1–3. Honor Society disagrees. It says attorney's fees are not justified because: (1) it did not act in bad faith, and because the conduct leading to the preliminary injunctions (2) "did not occur during court proceedings" and (3) was not "directed at the Court." Docket No. 288 at 6–13.

### A. *Legal Standard*

It is well-established that federal courts have an "inherent power" to impose sanctions "for conduct which abuses the judicial process." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 45–46 (1991). This power may be used to award attorney's fees for bad faith conduct, just as it may be used for violations of court orders. *Id.; see also infra* Section III.C. An award of attorney's fees for bad faith conduct "is limited to the fees the innocent party incurred solely because of the misconduct—or put another way, to the fees that party would not have incurred but for the bad faith." *Goodyear Tire & Rubber Co. v. Haeger*, 581 U.S. 101, 104 (2017).

### B. *Representations to the Court*

PTK claims Honor Society acted in bad faith when it told the Court it was no longer using the survey, but then continued to use it "without the six enjoined questions." Docket

4

No. 275 at 17. PTK also argues that although Honor Society told the Court it "was not using the records requests for discovery in this case, . . . just a few months later, Honor Society submitted over a dozen *responses* to its records requests in support of its own false advertising claims . . . ." *Id.* at 19 (emphasis in original). Honor Society responds by arguing that its statements regarding the survey and public records requests "were truthful and accurate" at the time they were made. Docket No. 288 at 6–8.

The Court agrees with Honor Society. First, PTK "only [sought] to enjoin [the] limited set of . . . survey questions that were intended to interfere with PTK's contracts and business relations"—not the entire survey. Docket No. 130 at 4. Honor Society was enjoined from using the six questions and has not used them since then. Docket No. 288 at 7. Thus, Honor Society did not make a misrepresentation about its use of the survey.

Second, as Honor Society explains, the records did not become relevant to the case until PTK added its tortious interference claims almost two weeks later. *Id.* at 8. Because "[t]he later inclusion . . . of new claims that made previously obtained public-records responses relevant and the subject of discovery does not retroactively make false a statement that was truthful at the time it was made," *id.* at 8–9, the Court finds that Honor Society did not make a misrepresentation about its use of the requests.

### C. Conduct Leading to the Injunctive Relief

PTK next argues that it is entitled to attorney's fees because Honor Society's bad faith conduct required it to prepare and file its motions for injunctive relief. Docket No. 275 at 1–3. It avers that "the Court acknowledged Honor Society's bad faith" when it found that the conduct leading to the Preliminary Injunctions was "misleading" and "malicious." *Id.* at 5–15.

5

The Court's findings on Honor Society's conduct were made in the context of PTK's motions for injunctive relief. As the Order explained, PTK has a *substantial likelihood* of succeeding on its tortious interference claims based on Honor Society's misleading and malicious conduct. *See* Docket Nos. 130 at 5; 230 at 17. But this is not a finding of ultimate success on the merits. *See Morgan v. Fletcher*, 518 F.2d 236, 239 (5th Cir. 1975) (explaining that the purpose of a preliminary injunction "is merely to preserve the status quo until the merits of a case can be adjudicated."). The question of success on the merits is reserved for the jury. Perhaps it would be better to await that success, if any, before further going down the bad faith inquiry.

To prevail on the merits of its tortious interference with contractual relations claim, for example, PTK must show:

> (1) that the acts were intentional and willful; (2) that they were calculated to cause damage to the plaintiffs in their lawful business; (3) that they were done with the unlawful purpose of causing damage and loss, without right or justifiable cause on the part of the defendant (which constitutes malice); and (4) that actual damage and loss resulted.

*Neider v. Franklin*, 844 So. 2d 433, 437 (Miss. 2003).

These elements would inform if not adjudicate conclusively bad faith.

By leaving the question of bad faith to the jury, the Court also avoids the possibility of PTK recovering twice for the same misconduct. Attorney's fees for bad faith conduct may only be awarded under the Court's inherent power if no other statute or rule applies. *See Chambers,* 501 U.S. at 41–42. If some provision of Mississippi law permits PTK to incorporate its fees into its tortious interference damages, then it should seek that remedy first. *See Par Indus., Inc. v. Target Container Co.*, 708 So. 2d 44, 50 (Miss. 1998) (discussing damages for tortious interference claims). Fees could also be due if PTK prevails on its claims under the

6

Lanham Act.[3] *See Procter & Gamble Co. v. Amway Corp.*, 280 F.3d 519, 527 (5th Cir. 2002) (explaining that "prevailing plaintiffs [may] recover attorneys' fees under [the Lanham Act] if the defendant . . . [acts in] bad faith.").

All that said, the Court declines to adjudicate whether or how PTK may recover its fees for Honor Society's misconduct. It will, however, address Honor Society's arguments regarding the scope of its inherent power.

### D. The Court's Inherent Power

Honor Society presses that even if it acted in bad faith, sanctions are not warranted for its conduct leading to the Preliminary Injunctions because its behavior "did not occur during court proceedings" and was not "directed at the Court." Docket No. 288 at 6–13.

"The purpose of the inherent power" is to allow a court to "control the *litigation before*" it. *F.D.I.C. v. Maxxam, Inc.*, 523 F.3d 566, 591 (5th Cir. 2008) (emphasis in original). Therefore, a court may sanction bad faith "conduct beyond that occurring in trial" only if such conduct is "in direct defiance *of the sanctioning court*." *Id.* (emphasis in original). Stated, another way, "inherent sanctioning power is 'based on the need to control court proceeding[s] and [the] necessity of protecting the exercise of judicial authority in connection with those proceedings.'" *McClenny v. Moseley & Assoc., P.L.L.C.*, 2024 WL 2874371, at *3 (5th Cir. 2024) (citing *In re Case*, 937 F. 2d 1014, 1023 (5th Cir. 1991).

Given this law, Honor Society's first argument has no merit. It claims that sanctions are not available "[b]ecause none of the conduct that led to a preliminary injunction was in the course of litigation." Docket No. 288 at 10. This is simply not true. Litigation in this case

---

[3] PTK's claims under the Lanham Act also depend upon a finding of bad faith. *See* Docket No. 136 at 32–33.

7

began the moment PTK filed its complaint. *See* Fed. R. Civ. P. 3. If there was any doubt that litigation began with the filing of the Complaint, the battle lines were certainly drawn when Honor Society filed its first motion to dismiss, *see* Docket No. 22 and surely when it filed its counterclaims. Docket No. 49. The conduct culminating in the Preliminary Injunctions—*e.g.*, Honor Society's surveys, public records requests, online articles, and Wikipedia edits—all took place after the complaint was filed. It all occurred in the course of litigation.

Honor Society's second argument fares no better. Citing *Positive Software Sols., Inc. v. New Century Mortg. Corp.*, 619 F.3d 458 (5th Cir. 2010), it says its online articles and Wikipedia edits were not "directed at the Court. So they do not threaten the Court's 'authority or its ability to function,' and thus do not qualify for sanctions." Docket No. 288 at 12 (quoting *Positive Software*, 619 F.3d at 462).

Honor Society misstates the law. Nowhere in *Positive Software* does the Fifth Circuit say anything about conduct being "directed at the court." Rather, *Positive Software* explains that sanctions are appropriate for bad faith conduct that occurs "before the district court" or "in direct defiance of [the court's] orders." 619 F.3d at 461.[4] The Fifth Circuit reasoned that "the district court lacked inherent authority to sanction [the partner] for her conduct during arbitration" because "arbitration is not an annex to litigation, but an *alternative* method for dispute resolution." *Id.* at 461–63 (emphasis in original); *see also Maxxam*, 523 F.3d at 593 (explaining that a court's "inherent power to police *itself*" does not grant it "power to police [other] courts . . . when those courts do not threaten the court's own judicial authority or

---

[4] Honor Society actually notes the correct legal standard in its brief just a few pages before this discussion. It explains that bad faith "sanctions are only available in two narrow circumstances: when the offending party's conduct was (1) before the court, or (2) 'in direct defiance of its orders.'" Docket No. 288 at 5 (citing *Positive Software*, 619 F.3d at 462). It is unclear why Honor Society would argue that sanctionable conduct must be "directed at the court."

8

proceedings."). In other words, the Court has authority to sanction Honor Society for its conduct in the course of this litigation or as a part of *these* proceedings, notwithstanding the fact that its misbehavior occurred outside the court's physical presence. Misbehavior usually occurs outside the physical presence of federal judges, and courts sanction parties for that conduct. *See Carroll v. Jaques Admiralty Law Firm, P.C.*, 110 F.3d 290, 293 (5th Cir. 1997) (affirming district court resorting to its inherent power to sanction party for abusive conduct at deposition).

### E. Motion Conclusion

For the reasons stated above, PTK has not demonstrated that Honor Society acted in bad faith, and the Court will not decide to make such a finding today. If the jury finds that Honor Society acted in bad faith, however, PTK may be able to recover the fees it expended in connection to its motions for injunctive relief.

### III.   MOTION FOR CONTEMPT AND SANCTIONS

In the other motion, PTK and Dr. Tincher-Ladner argue that Honor Society failed to abide by the Court's second Preliminary Injunction in several respects. They ask the Court to hold Honor Society in civil contempt, award PTK its attorney's fees expended in connection with this Motion, impose a $1,000 per day fine on Honor Society, and any "such other relief to which the Court finds them entitled." Docket No. 243 at 3–4.

### A. Legal Standard

"[C]ourts have inherent power to enforce compliance with their lawful orders through civil contempt." *Shillitani v. United States*, 384 U.S. 364, 370 (1966). To hold a respondent in civil contempt, the moving party must prove by clear and convincing evidence: "(1) that a court order was in effect; (2) that the order required certain conduct by the respondent; and

(3) that the respondent failed to comply with the court's order." *Petroleos Mexicanos v. Crawford Enters.*, 826 F.2d 392, 401 (5th Cir. 1987). "The [respondent's] actions need not be willful so long as the [respondent] actually failed to comply with the court's order." *Am. Airlines, Inc. v. Allied Pilots Ass'n*, 228 F.3d 574, 581 (5th Cir. 2000). Hence, good or bad faith intentions are irrelevant to a finding of contempt. These factors may, however, be considered to "help [] determine [the] appropriate sanction." *Taggart v. Lorenzen*, 587 U.S. 554, 562-63 (2019).

Here, it is undisputed that the Court's second Preliminary Injunction was in effect and required Honor Society to comply with six instructions. Docket No. 230 at 26. The parties disagree about whether Honor Society complied with them.

### B. Substantial Compliance

Honor Society argues that it should not be held in contempt because it substantially complied with the Order. Relying on a Texas bankruptcy court decision , Honor Society says that "a party may avoid a contempt finding by showing that it substantially complied or acted with diligence in an effort to comply with the order at issue." Docket No. 260 at 8 (citing *In re Brown*, 511 B.R. 843, 849 (Bankr. S.D. Tex. 2014)).[5]

There are legal and factual problems with Honor Society's argument. The Court first addresses the legal concern. The discussion begins with the *Brown* case Honor Society advances.

*Brown* seemed inconsistent with Supreme Court and Fifth Circuit precedent, so this Court took a closer look into the law. It found *M. D. v. Abbott*, a new Fifth Circuit decision

---

[5] Honor Society cites two other cases for support; both rely on *Brown*.

10

explaining the factors courts consider in determining whether a party has substantially complied with a court order. 119 F.4th 373 (5th Cir. 2024). In particular, the *Abbott* panel wrote that courts adjudicating civil contempt arguments "consider[] good faith, or lack thereof" of the respondent, and proceeded to explain that "[w]hether compliance was done in good faith or bad faith is relevant to whether it was substantial." *Id.* at 384.

The mandate in *Abbott* has not issued, so it is subject to revision. At the moment, though, it is not clear that it is consistent with the currently-applicable legal standard. First, the supporting case that the *Abbott* court relies on indicates that substantial compliance is a factor courts consider in determining whether to *impose sanctions* for civil contempt—not an element used to *render a finding* of contempt. *See United States v. Barnett*, 346 F.2d 99, 101 (holding that "[t]he civil contempt judgments [would] stand but no sanctions [would] be imposed."). That is the usual view of civil contempt. *Cf. Int'l Union, United Mine Workers of Am. v. Bagwell*, 512 U.S. 821, 827 (1994) (explaining that a party may avoid civil contempt "sanctions" by complying with a court's orders).

Second—and perhaps more importantly—the idea that a party's "good faith" informs its "substantial compliance" with court orders expressly conflicts with Supreme Court precedent. The Justices have explained that such a standard "is inconsistent with traditional civil contempt principles, under which parties cannot be insulated from a finding of civil contempt based on their subjective good faith." *Taggart v. Lorenzen*, 587 U.S. 554, 563 (2019); *see also Merrimack River Sav. Bank v. City of Clay Ctr.*, 219 U.S. 527, 536–37 (1911) (holding that a party's mistaken and honest belief of the conduct required in a court order "does not acquit them of a technical contempt"). The standard also conflicts with Fifth Circuit precedent. *See NLRB v. Lawley*, 182 F.2d 798, 799 (5th Cir. 1950) (holding respondents in civil contempt

11

despite their claims of "good faith compli[ance] with the court's decree."); *United States v. Woodberry*, 405 F. App'x 840, 843 (5th Cir. 2010) ("good faith is not a defense to a finding of civil contempt.").

Since the mandate in *Abbott* has been held,[6] and the parties have not pointed to a Supreme Court case using substantial compliance to determine a civil contempt *finding*, the Court will proceed down the path of least resistance and follow the weight of the authorities. That law is clear: "Good faith is not a defense to civil contempt; the question is whether the alleged [party] complied with the court's order." *Chao v. Transocean Offshore, Inc.*, 276 F.3d 725, 728 (5th Cir. 2002). "[W]illful" conduct is irrelevant—what matters is whether the alleged party "actually failed to comply with the court's order." *Am. Airlines*, 228 F.3d at 581; *see also McComb v. Jacksonville Paper Co.*, 336 U.S. 187, 191 (1949) ("The absence of willfulness does not relieve from civil contempt . . . . An act does not cease to be a violation of a law and of a decree merely because it may have been done innocently."). A party's substantial compliance with an Order may then mitigate the sanctions that then issue, if any, after a finding of civil contempt is made. *See Barnett*, 346 F.2d at 101.

All that said, this discussion may very well be irrelevant because of the factual problems with Honor Society's argument. Even if a party's substantial compliance could theoretically bar a finding of civil contempt, Honor Society has not met its burden to show that it substantially complied with this Court's orders regarding the disclaimer, embezzlement arrest, and sexual harassment allegations. The Court turns to those continuing problems now.

---

[6] *See M.D. v. Abbott*, No. 24-40248, Docket No. 179 at 2 (5th Cir. Nov. 7, 2024).

12

### C. *Finding of Contempt*

PTK argues that Honor Society "failed to include the Court-ordered disclaimer on numerous webpages," and notes that where the disclaimer has been included, it "is defective because it is not 'in 12 point or larger size font' as required by the Court." Docket No. 243 at 5 (citation omitted). On August 26, 2024, for example, PTK informed Honor Society that "each webpage fail[ed] to include a disclaimer of sufficient size." *Id.* at 6 (quotation marks omitted). PTK explains that Honor Society used a "12 pixel" font on its websites, which was "25% too small," and avers that "16 pixel font, not 12 pixel font, is equivalent to 12 point font." *Id.* at 7.

Honor Society responds that it initially added the disclaimers to all webpages and was unaware of the font size discrepancy until PTK pointed it out. Docket No. 260 at 5. It claims it should not be held in contempt because it has now corrected the font size on the webpages identified by PTK. Docket No. 260 at 9.

This is not true. Honor Society has still not corrected the font size issue. To make matters worse, Honor Society has increased the size of the surrounding text to minimize the appearance of the disclaimer.[7] That point in undisputed. The first screenshot below shows that the disclaimer on Honor Society's webpage is in 12 pixel font. The second screenshot, which is taken from PTK's *Motion for Contempt and Sanctions*, shows the difference in the text size surrounding the disclaimer.

---

[7] To borrow a term from federal debt collection cases, Honor Society has engaged in a kind of overshadowing. *See Peter v. GC Servs. L.P.*, 310 F.3d 344, 349 n.2 (5th Cir. 2002) (explaining that "overshadowing" occurs when "contradictory language is in 'screaming headlines,' or the notice language is in fine print, faint print, or confusing typeface" (citation omitted)).



*Webpage as of December 9, 2024.*



*Left: Prior Version of Webpage, Right: New Version of Webpage. See Docket No. 243 at 8.*

PTK also argues that several of Honor Society's articles violate the Court's Order by including false or misleading information about the embezzlement arrest and sexual harassment allegations. Docket No. 261 at 17–20. The Court agrees. The articles titled "Phi Theta Kappa Sexual Harassment: Stunning Allegations Revisited" and "Phi Theta Kappa

14

Embezzlement: A Deep Dive into the Allegations," are misleading and therefore violate the Order. The images of Dr. Tincher-Ladner and Risley that Honor Society elected to use in at least six of its articles are further violations of the Order. Docket No. 243 at 20. These images, which were initially used in Honor Society's "unrelated (and misleading) sexual harassment allegations," made it appear as if Dr. Tincher-Ladner and Risley were "in close proximity to one another." *Id.* Thus, "Honor Society's continued use of these images, which appear in more articles than before," demonstrates that Honor Society has not complied with the second Preliminary Injunction. *Id.* Again, Honor Society does not dispute this.

In short, PTK has proven by clear and convincing evidence that Honor Society has not complied with the Court's Orders. As that was the only contested element, Honor Society is therefore in civil contempt.

### D. Sanctions

"Judicial sanctions in civil contempt proceedings, may in a proper case, be employed for either or both of two purposes: to coerce the defendant into compliance with the court's order, and to compensate the complainant for losses sustained." *Am. Airlines*, 228 F.3d at 585 (quotation marks omitted).

In shaping coercive sanctions, courts must consider (1) "the character and magnitude of the harm threatened by the continued contumacy"; (2) "the probable effectiveness of [the] suggested sanction in bringing about the result desired"; and (3) "the amount of [the party in contempt's] financial resources and the consequent seriousness of the burden to that particular defendant." *United States v. United Mine Workers*, 330 U.S. 258, 304 (1947). In 1990, the Fifth Circuit added an additional factor, "(4) the willfulness of the contemnor in disregarding the court's order." *Lamar Fin. Corp. v. Adams*, 918 F.2d 564, 567 (5th Cir. 1990).

In shaping compensatory sanctions, courts consider the "losses flowing from noncompliance and expenses [the injured party] reasonably and necessarily incurred in the attempt to enforce compliance." *Norman Bridge Drug Co. v. Banner*, 529 F.2d 822, 827 (5th Cir. 1976).

PTK seeks a $1,000 per day fine against Honor Society, and the attorneys' fees it expended in coercing Honor Society into compliance. Docket No. 243 at 3–4. Both are appropriate.

After considering the above factors, the Court will impose the $1,000 per diem fine. As the undersigned has repeatedly explained, PTK will continue to suffer substantial harm unless Honor Society is enjoined from misrepresenting the truth. *See* Docket Nos. 230 and 286. Despite plain instructions from the Court, and repeated warnings from PTK, Honor Society has willfully failed to comply with the Order. Honor Society does not dispute that it adjusted the text surrounding the disclaimer to minimize its effect on readers, and does not dispute that it deliberately selected the images of Dr. Tincher-Lander and Risley to portray them in close proximity to one another to suggest illicit conduct.

The Court will also award PTK its attorney's fees expended in connection to the *Motion for Contempt and Sanctions*. These fees, however, will be reduced by 10%.[8] This reduction is appropriate because (1) no fees will be awarded in connection to PTK's discovery claim,[9] *see* Docket No. 243 at 21, and (2) PTK has withdrawn its arguments concerning the

---

[8] PTK requests $67,978.50 in attorney's fees for the work done in connection with its *Motion for Contempt and Sanctions* ($63,810 for its Taft attorneys and $4,168.50 for its attorneys from Wise Carter). *See* Docket Nos. 274-1 Ex. A-8; 274-2 Ex. B-3. A 10% reduction means that the maximum amount PTK may recover for its Motion is $61,180.65.

[9] PTK claims that Honor Society "refused to make itself available for discovery on [the] Wikipedia edits." Docket No. 243 at 21. This is a stretch. Scheduling conflicts are an inevitable part of litigation. This is not to say that all scheduling conflicts are excusable, however, here, Honor Society expressly informed PTK that

16

Medium articles, PR Newswire publications, and Google Cache, *see* Docket No. 261 at 8. Since PTK's "right to [it's] compensatory contempt fine [is] contingent upon the outcome of the main cause," the Court will defer on its Lodestar calculation of attorney's fees until after trial. *Norman Bridge Drug Co. v. Banner*, 529 F.2d 822, 828 (5th Cir. 1976); *see also supra* Section II.C.

## IV.     CONCLUSION

For the reasons stated above, the *Motion for Contempt and Sanctions* is GRANTED in part and the *Motion for Sanctions/Attorney's Fees* is DENIED without prejudice.

Effective December 24, 2024, Honor Society shall pay a $1,000 fine for each day it remains non-compliant with the second Preliminary Injunction.

Honor Society shall pay PTK the attorney's fees and costs PTK incurred in connection with the *Motion for Contempt and Sanctions*, subject to a 10% reduction. These fees shall be paid after trial when the Court issues its Lodestar calculation.

A final word. This Court is not a forum for petty disputes.

This Court rarely has seen the level of acrimony between the parties and their counsel. Litigation can be taxing, no doubt. These parties have found little on which they agree resulting in the magistrate judge being repeatedly called to referee their disputes—big, small, and petty. But just because you can choose to disagree with every single detail doesn't mean you always should. These parties have spent enough time and resources filing this parade of motions to little productive end. The Court encourages all involved to cut the nonsense and focus on the heart of the underlying dispute.

---

it "had no objection to the subject matter of the discovery itself." Docket No. 260 at 8. Honor Society explained that given the "unreasonably short notice," it could not "prepare the witness in time." *Id.* "[N]either it nor its counsel were available. . . on the date PTK demanded" as "[o]ne of the attorney's "needed to prepare and defend [the] issues had preexisting travel at that time, and the other was unavailable because of Covid." *Id.* at 7–8.

17

**SO ORDERED**, this the 23rd day of December, 2024.

                                               s/ Carlton W. Reeves  
                                               UNITED STATES DISTRICT JUDGE