# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
# NORTHERN DIVISION

**PHI THETA KAPPA HONOR SOCIETY,**

*Plaintiff / Counter-Defendant,*

v.                                          CAUSE NO. 3:22-CV-208-CWR-RPM

**HONORSOCIETY.ORG, INC., ET AL.,**

*Defendants/ Counter-Plaintiffs,*

v.

**DR. LYNN TINCHER-LADNER,**

*Third-Party Defendant.*

## ORDER

Before the Court is Plaintiff Phi Theta Kappa Honor Society's ("PTK") motion to dismiss Count I of Defendant HonorSociety.org, Inc. and Honor Society Foundation's (together, "Honor Society") Second-Amended Counterclaims and Second-Amended Third-Party Complaint ("Counterclaim"). Docket No. 149. After reviewing the facts, arguments, and applicable law, the Court finds that the motion is due to be granted.

**I.      Factual and Procedural History**

PTK and Honor Society offer "competing membership-based academic and professional" services to community college students in the United States. Docket No. 138 at 2.

Their dispute began when PTK filed suit against Honor Society for false designation of origin, federal trade dress infringement and false advertising, common law trade dress

infringement, unfair competition, and tortious interference. Docket No. 136. Honor Society responded with counterclaims accusing PTK of attempted monopolization in violation of the Sherman Antitrust Act, 15 U.S.C. § 2; false advertising; cybersquatting; defamation; and tortious interference. Docket No. 138.

PTK filed the present motion seeking to dismiss Honor Society's attempted monopolization claim. Docket No. 150. It argues, *inter alia*, that Honor Society lacks standing to bring its claim because it fails to sufficiently plead antitrust injury. PTK mainly contends that Honor Society is not a genuine honor society, and therefore is not a member of the proposed relevant market. It also claims that Honor Society's proposed market is too narrow.[1]

Honor Society disagrees. Its arguments are discussed below.

## II.     Legal Standard

Federal Rule of Civil Procedure 12(b)(6) provides that a defendant may assert a defense for a plaintiff's "failure to state a claim upon which relief can be granted."

Under Rule 12(b)(6), the Court accepts the plaintiff's factual allegations as true and makes reasonable inferences in the plaintiff's favor. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A satisfactory complaint contains a "short and plain statement of the claim showing that the pleader is entitled to relief." *Id.* at 677–78. The complaint need not have "detailed factual allegations," but requires "more than an unadorned, the defendant-unlawfully-harmed-me accusation." *Id.* at 678 (citation omitted). The plaintiff's claims must also be plausible on their

---

[1] PTK also claims that Honor Society's proposed market is too broad. The Court finds this argument unpersuasive, though it need not address it to rule on the motion to dismiss.

face, which means there is "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

### III. Discussion

#### A. Law

"Standing to pursue an antitrust suit exists only if a plaintiff shows: 1) injury-in-fact, an injury to the plaintiff proximately caused by the defendants' conduct; 2) antitrust injury; and 3) proper plaintiff status, which assures that other parties are not better situated to bring suit." *Sanger Ins. Agency v. HUB Int'l, Ltd.*, 802 F.3d 732, 737 (5th Cir. 2015) (quotation marks omitted).

An antitrust injury "should reflect the anticompetitive effect either of the violation or of anticompetitive acts made possible by the violation." *Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477, 489 (1977). As prerequisite to establishing a claim under Section 2 of the Sherman Act, a plaintiff must establish the relevant market. *Shah v. VHS San Antonio Partners, L.L.C.*, 985 F.3d 450, 454 (5th Cir. 2021); *see also Hughes v. Tobacco Inst., Inc.*, 278 F.3d 417, 423 (5th Cir. 2001) (explaining that "[p]arties whose injuries . . . are experienced in another market do not suffer antitrust injury."). "Without a definition of the market there is no way to measure the defendant's" anticompetitive conduct. *Shah*, 985 F.3d at 454.

#### B. Analysis

The Court begins by addressing the parties' definitions of "honor society." Honor Society claims that such groups "are membership clubs that provide a package of services consisting of general resources, scholarships, membership recognition, academic recognition, and networking resources and opportunities." Docket No. 138 at 6–7. PTK does not appear to dispute this but adds that honor societies have "objective standards and selective

3

invitations." Docket No. 150 at 6. It claims that Honor Society is not a "genuine" honor society because it does not consider "criteria such as GPA." *Id.*

To find that an honor society is defined by "objective standards and selective invitations," however, would require the Court to view the allegations in the light most favorable to PTK. This it cannot do.

On a motion to dismiss, courts must make all reasonable inferences in Honor Society's favor, *see Iqbal*, 556 U.S. at 678, and "assume that [Honor Society] can prove the facts alleged in its" Counterclaim, *Assoc. Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983). Accepting Honor Society's factual allegations as true, it is a genuine honor society. The question is whether its proposed relevant market is sufficiently pleaded.

Honor Society first argues that the Court cannot determine whether it has suffered an antitrust injury "at the pleadings stage." Docket No. 165 at 8. Citing cases from the Second, Third, and Ninth Circuits, it contends that defining the relevant market "is a deeply fact-intensive matter, generally inappropriate to decide on a motion to dismiss." *Id.* at 16.

This Court is, however, "governed by the precedent of [this] circuit." *Universal Comput. Sys., Inc. v. Volvo Cars of N. Am., Inc.*, 207 F.3d 658, at *2 (5th Cir. 2000). And in the Fifth Circuit, courts *may* grant a motion to dismiss when a "plaintiff fails to define its proposed relevant market with reference to the rule of reasonable interchangeability and cross-elasticity of demand, or alleges a proposed relevant market that clearly does not encompass all interchangeable substitute[s]." *Apani Sw., Inc. v. Coca-Cola Enterprises, Inc.*, 300 F.3d 620, 628 (5th Cir. 2002); *see also New Orleans Ass'n of Cemetery Tour Guides & Cos. v. New Orleans Archdiocesan Cemeteries*, 56 F.4th 1026, 1039 (5th Cir. 2023) (affirming the grant of a motion to dismiss).

"The two components of the relevant market are (1) the product market and (2) the geographic market." *New Orleans Ass'n of Cemetery Tour Guides,* 56 F.4th at 1036–37. Here, the geographic market is undisputed, so the Court will focus its analysis on the relevant product market.

"A legally cognizable product market must include all commodities reasonably interchangeable by consumers for the same purposes, and consider interchangeability and cross-elasticity of demand." *Id.* at 1037 (quotation marks omitted). A commodity may be a service or a good. *See id.* (discussing services); *United States v. E. I. du Pont de Nemours & Co.*, 351 U.S. 377, 395 (1956) (discussing goods).

Honor Society's proposed relevant market is "general honor societies for community college students." Docket No. 138 at 6. It alleges that the participants in this market are PTK, Honor Society, National Society of Leadership & Success, National Society of Collegiate Scholars, Phi Sigma Pi, and Alpha Beta Kappa, as these organizations are "honor societies that accept students regardless of their chosen fields of study or personal demographics." *Id.* at 8. Honor Society's proposed market excludes honor societies that are limited to specific fields of study because they "do not provide . . . general networking and resources . . . but instead provide resources limited to their niche field-of-study focuses." *Id.* at 9.[2] The Court will refer to these groups as the "specialized honor societies."

---

[2] The excluded honor societies named in the Counterclaim are Alpha Beta Gamma (business), Psi Beta (psychology), Sigma Chi Eta (communications), Sigma Kappa Delta (English), and Delta Alpha Pi (high-achieving students with disabilities).

PTK responds that the "proposed market is too narrow [because] it excises other honor societies that are reasonably interchangeable for many students who are potential members of an honors society." Docket No. 168 at 2.

The Court agrees with PTK, but for a slightly different reason. A brief discussion of *United States v. Grinnell Corp.*, 384 U.S. 563 (1968) explains why.

In *Grinnell*, the Supreme Court considered the services offered by three companies: American District Telegraph Co. ("ADT"), Holmes Electric Protective Co. ("Holmes"), and Automatic Fire Alarm Co. of Delaware ("AFA"). *Id.* at 566. ADT provided both burglary and fire protection services, Holmes provided only burglary services, and AFA provided only fire protection services. Though they differed in kind, "each [company] offer[ed] a central station service under which hazard-detecting devices installed on the protected premises automatically transmit an electric signal to a central station." *Id.* at 566–67. The defendants argued that the services were "so diverse that they [could not] . . . be lumped together to make up the relevant market. For example, burglar alarm services are not interchangeable with fire alarm services." *Id.* at 571–72.

The Supreme Court disagreed. It explained that the commodity at issue had "a single use, i.e., the protection of property through use of a central service station." *Id.* "It is that service," the Court added, "that is unique and that competes with all the other forms of property protection." *Id.*

Here, Honor Society's proposed market suffers from the same fatal defect that the Court identified in *Grinnell.* The specialized honor societies may provide "niche" services,

but this alone does not justify their exclusion from the proposed relevant market.[3] At a certain level of granularity, every competitor in a marketplace provides niche services. *Cf. New Orleans Ass'n of Cemetery Tour Guides,* 56 F.4th at 1038 (explaining that "a product market limited to cemetery tours alone does not rise to the level of plausibility required to survive a motion to dismiss" when reasonably interchangeable substitutes such as "historical site tours" exist).

As the *Grinnell* Court explained, "it would be unrealistic. . . to break down the market into the various kinds of central station protective services that are available." 384 U.S. at 572. That same logic applies here. *See Ohio v. Am. Express Co.*, 585 U.S. 529, 544 (2018) (explaining that "courts should 'combin[e]' different products or services into 'a single market' when 'that combination reflects commercial realities." (quoting *Grinnell*, 384 U.S. at 572)).

Since Honor Society "alleges a proposed relevant market that clearly does not encompass all interchangeable substitutes," its "market definition [is] legally insufficient as a matter of law." *Apani,* 300 F.3d at 628. And without a sufficiently pleaded proposed relevant market, Honor Society lacks standing to bring its attempted monopolization claim.

## IV. Conclusion

The motion to dismiss is granted. As Honor Society has already twice amended its counterclaims, the dismissal is with prejudice. *See New Orleans Ass'n of Cemetery Tour*

---

[3] For example, Honor Society claims that "most students are not English students, and so they do not qualify for membership" in Sigma Kappa Delta, the English honor society. Docket No. 138 at 9. A student who does not qualify for membership in SKD, like a business student, for example, could seek membership in a general honor society. But an English student in SKD could also seek membership in a general honor society. This suggests that SKD and Honor Society can be reasonably interchangeable substitutes.

7

*Guides*, 56 F.4th at 1032. The Court notes that any arguments not addressed in this Order would not have made a difference in the outcome.

**SO ORDERED**, this the 13th day of January, 2025.

s/ Carlton W. Reeves<br>UNITED STATES DISTRICT JUDGE