

**Exhibit A**

### UNITED STATES DISTRICT COURT
### SOUTHERN DISTRICT OF MISSISSIPPI
### NORTHERN DIVISION

| | | |
|---|---|---|
| PHI THETA KAPPA HONOR SOCIETY, | ) | Civil Action No. 3:22-cv-00208-CWR-RPM |
| | ) | |
| Plaintiff/Counter-Defendant | ) | |
| v. | ) | |
| | ) | |
| HONORSOCIETY.ORG, INC., | ) | |
| | ) | |
| Defendant/Counter-Plaintiff /Third-Party-Plaintiff | ) | |
| | ) | |
| HONOR SOCIETY FOUNDATION, INC., | ) | |
| | ) | |
| Defendant | ) | |
| | ) | |
| ---------------------------------------------------- | ) | |
| | ) | |
| HONORSOCIETY.ORG, INC., | ) | |
| | ) | |
| Defendant/Counter-Plaintiff /Third-Party-Plaintiff | ) | |
| v. | ) | |
| | ) | |
| DR. LYNN TINCHER-LADNER, | ) | |
| | ) | |
| Third-Party Defendant | ) | |

## DECLARATION OF RACHEL SMOOT

I, Rachel Smoot, upon my personal knowledge, hereby submit this declaration pursuant to 28 U.S.C. § 1746 and declare as follows:

1.      I am one of the attorneys for Plaintiff, Phi Theta Kappa Honor Society ("PTK") and Dr. Lynn Tincher-Ladner in this action. I tender this Declaration in support of PTK's Notice of Supplemental Exhibits.

2.      At 10:36pm ET on January 15, 2025, I received Marek's Reply in Support of her Motion to Quash. *See* Exhibit 1. Her Reply raises new arguments for the first time that were available to her at the time she filed her Motion. She makes multiple requests for a Protective Order, seeks a transfer to another jurisdiction, and requests this Court apply Texas anti-SLAPP statutes in granting her Motion. *Id.* Marek also argues that her "prior interactions with Honor society are unrelated to the specific allegations of unfair competition and trademark infringement central to this litigation." (*Id.* at 8.)

3.      On January 16, 2025, Marek sent a letter to PTK's Board of Directors. *See* Exhibit 2. In her letter, Marek re-alleges a few of the same false advertising claims Honor Society asserts in this litigation. *Id.* Marek also attached documents she claims are responses to public records requests HonorSociety.org, Inc. ("Honor Society") has already proffered as evidence in this case. *Id.*

4.      While preparing PTK's Notice of Supplemental Exhibits, PTK's counsel learned that Marek had issued at least one email to a PTK chapter president on January 20, 2025, urging the recipient to sign a "PTK Petition for Change." *See* Exhibit 3.

5.      The URL in Marek's January 20, 2025 email redirects to a petition on change.org titled "Stand Up for Students! Stop Misleading Students & Toxic Bullying by Phi Theta Kappa HQ." *See* Exhibit 4. According to this petition, Marek started it on January 9, 2025. *Id.*

6.      Based on the language in Marek's "open letter," emails to chapter presidents, and petition, PTK believes that Marek continues to act at the direction or guidance of Michael Moradian, Honor Society's Executive Director.

7.      This evidence was created by Marek contemporaneously with the submission of her Reply and contradicts her argument that she has no relevant information and no interest in

involving herself in this lawsuit. She continues to perpetuate and actively support Honor Society's prosecution of its counterclaim of false advertising. More importantly, her testimony is important and relevant to PTK's claims of tortious interference against Honor Society, since it is likely she is acting at the direction of Moradian and Honor Society – so any damages she is creating by her own conduct are attributable to Honor Society in this action.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on this 23rd day of January, 2025.

*/s/ Rachel Smoot*
Rachel Smoot
Attorney
Taft Stettinius & Hollister LLP

# EXHIBIT A-1

**Smoot, Rachel A.**

| | |
|---|---|
| **From:** | Toni Marek <tonimarek@gmail.com> |
| **Sent:** | Wednesday, January 15, 2025 10:36 PM |
| **To:** | Toni Marek |
| **Subject:** | Reply in Support of Motion to Quash Subpoena Filed by Non-Party Toni Marek (Case No. 3:22-cv-00208-CWR-RPM) |
| **Attachments:** | Email_to_Counsel_Re_Reply_in_Support_of_Motion_to_Quash_Toni_Marek_3-22-cv-00208_CWR-RPM_2024-12-19.pdf; Reply_in_Support_of_Motion_to_Quash_Toni_Marek_3-22-cv-00208-CWR-RPM.pdf |

**This message needs your attention**
- This is a personal email address.
- This is their first email to you.

Report or Mark Safe                              Taft - Powered by Mimecast

Dear Counsel,

Please see attached. Note that all recipients have been included in the BCC field to maintain privacy.

Kind Regards,

Toni Marek (Pro Se)

p. 361-212-1219
e. tonimarek@gmail.com

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF MISSISSIPPI

NORTHERN DIVISION

PHI THETA KAPPA HONOR SOCIETY,

Plaintiff,

v.                                          Civil Action No. 3:22-cv-00208-CWR-RPM

HONORSOCIETY.ORG, INC. AND

HONOR SOCIETY FOUNDATION, INC.,

Defendants.

## REPLY IN SUPPORT OF MOTION TO QUASH SUBPOENA BY NON-PARTY TONI MAREK

## I. INTRODUCTION

I, Toni Marek, appearing pro se, respectfully submit this Reply in Support of my Motion to Quash the subpoena issued by Plaintiff Phi Theta Kappa Honor Society ("PTK"). As a non-party to this litigation, I assert that the subpoena does not meet the procedural requirements of Rule 45 of the Federal Rules of Civil Procedure, imposes an undue burden, and violates my right to privacy. The subpoena's improper service, overly broad demands, and potential to cause harm to my family justify this Court's intervention. I respectfully request that the Court quash the subpoena, transfer jurisdiction to the United

States District Court for the Southern District of Texas where compliance is required, and issue a protective order to prevent further undue burden and privacy violations.

**Section II: Improper Service**

The subpoena issued by Plaintiff Phi Theta Kappa Honor Society ("PTK") was not properly served in compliance with Rule 45(b)(1) of the Federal Rules of Civil Procedure, which requires personal delivery to the named individual. Instead, on or about December 19, 2024, the subpoena was taped to my front door without any direct delivery or prior notice. Such methods fail to meet the clear personal service requirements of Rule 45(b)(1) and render the subpoena invalid. See *Hall v. Sullivan*, 229 F.R.D. 501, 503 (D. Md. 2005) (finding that leaving a subpoena at a residence does not constitute proper service under Rule 45); *Harrison v. Prather*, 404 F.2d 267, 273 (5th Cir. 1968) (holding valid service requires personal delivery, not mere leaving of documents).

Plaintiff alleges that I evaded service, citing speculative and unverified claims about my behavior. However, the procedural deficiencies of their service attempts speak for themselves. There is no evidence to substantiate their accusations of intentional evasion. Plaintiff's reliance on vague process server reports fails to demonstrate compliance with the strict requirements of Rule 45(b)(1).

Further, Plaintiff's own filings detail intrusive and improper behavior by their process server, including looking through windows and observing my minor child inside the home. Such actions exceed the scope of lawful process serving and constitute an invasion of privacy. Courts have emphasized that process serving must be conducted respectfully and within legal bounds. See

*OceanFirst Bank v. Hartford Fire Ins. Co.*, 794 F. Supp. 2d 752, 754 (E.D. Mich. 2011) (quashing a subpoena due to improper service and intrusive conduct by the process server).

The failure to comply with Rule 45(b)(1) and the process server's intrusive conduct further underscore the impropriety of the subpoena. I respectfully request this Court quash the subpoena on the grounds of improper service and safeguard my due process rights as a non-party.

## Section III: Public Disclosure of Personal Information and Privacy Violations

The subpoena issued by Plaintiff Phi Theta Kappa Honor Society ("PTK") has resulted in serious privacy violations that necessitate both the quashing of the subpoena and the issuance of a protective order. Plaintiff's counsel publicly disclosed my personal information, including sensitive identifying details such as my license plate number and those of my minor child, in violation of Federal Rule of Civil Procedure 5.2(a). This disclosure creates significant safety concerns and exceeds what is necessary for any legitimate litigation purpose.

### A. Failure to Redact Personal Information

Rule 5.2(a) of the Federal Rules of Civil Procedure requires that certain personal identifiers be redacted from court filings, including names of minors, full dates of birth, and other sensitive information. Plaintiff's filings disregard this rule by including unredacted identifying details. Courts consistently recognize that failure to comply with these privacy protections warrants judicial intervention to mitigate harm. See *Doe v. Stegall*, 653 F.2d 180, 185 (5th Cir. 1981) (emphasizing the need to protect minors' identities in legal proceedings).

The disclosure of my license plate number and my minor child's license plate number exposes my family to unnecessary risks, including potential harassment. There is no legitimate reason for

this information to have been included in public filings, and its inclusion highlights Plaintiff's disregard for my family's safety and privacy.

**B. Intrusive Conduct by the Process Server**

In addition to privacy violations, the behavior of Plaintiff's process server raises serious concerns. As detailed in Plaintiff's own filings, the process server engaged in conduct that was not only intrusive but alarming. This included looking through windows into my home and observing my minor child. Such actions go beyond the scope of lawful process serving and constitute a significant invasion of privacy. Courts have quashed subpoenas where process servers' conduct created undue intrusion or fear. See *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 34 (1984) (noting the need for protective orders to prevent undue dissemination of sensitive information).

**C. Need for a Protective Order**

The cumulative effect of these actions—public disclosure of private information and intrusive service tactics—has caused significant emotional distress and concern for my family's safety. A protective order is necessary to:

1. Require the immediate redaction of sensitive information from all court filings in compliance with Rule 5.2(a);

2. Prevent Plaintiff from further public disclosures of private information;

3. Safeguard my minor child from potential harm caused by these violations.

Federal Rule of Civil Procedure 26(c) provides courts with broad discretion to issue protective orders to prevent "annoyance, embarrassment, oppression, or undue burden." Given the

circumstances of this case, such an order is warranted to address the ongoing harm caused by Plaintiff's actions and to ensure compliance with applicable privacy protections.

**Relief Requested**

I respectfully request that this Court issue a protective order to:

1. Require Plaintiff to redact my personal information and that of my minor child from all filings;

2. Prohibit further dissemination of my personal information; and

3. Protect me and my family from further undue intrusion or harm.

**Section IV: Request for Transfer of Jurisdiction**

The subpoena issued by Plaintiff Phi Theta Kappa Honor Society ("PTK") directs compliance at my residence in Victoria, Texas. Rule 45(d)(3) of the Federal Rules of Civil Procedure requires that any motion to quash or modify a subpoena must be filed in the court for the district where compliance is required. As such, jurisdiction to address this motion lies exclusively with the United States District Court for the Southern District of Texas.

**A. Rule 45(d)(3) and the Location of Compliance**

Rule 45(d)(3) explicitly states that a motion to quash or modify a subpoena must be decided by the court where compliance is required. In this case, compliance is directed to my residence in Victoria, Texas, which falls within the jurisdiction of the Southern District of Texas. Consequently, this Court does not have jurisdiction to adjudicate my Motion to Quash or enforce the subpoena. See *Parker v. Four Seasons Hotels, Ltd.*, 291 F.R.D. 181, 186 (N.D. Ill. 2013)

(quashing a subpoena issued outside the district of compliance); *In re Sealed Case*, 141 F.3d 337, 341 (D.C. Cir. 1998) (noting exclusive jurisdiction of the district where compliance is required).

## B. Rule 45(f) and the Absence of Exceptional Circumstances

While Rule 45(f) permits the transfer of subpoena-related motions to the issuing court under exceptional circumstances, no such circumstances exist here. Factors such as convenience for the non-party and jurisdictional appropriateness strongly favor addressing this matter in the Southern District of Texas. Requiring me, a non-party, to litigate this matter in Mississippi imposes an undue burden and contravenes the intent of Rule 45 to protect individuals from unnecessary hardship. See *Wultz v. Bank of China Ltd.*, 304 F.R.D. 38, 45 (D.D.C. 2014) (noting that non-party convenience is a critical consideration in determining venue for subpoena disputes).

## C. Non-Parties Deserve Special Protections from Burdensome Litigation

Courts consistently recognize that non-parties should not be subjected to burdensome or intrusive litigation. See *Cusumano v. Microsoft Corp.*, 162 F.3d 708, 717 (1st Cir. 1998) (noting that non-parties are "strangers to the litigation" and should be afforded greater protections against discovery demands). Transferring jurisdiction to the proper venue ensures compliance with procedural rules and prevents additional burdens on me as a non-party.

## Relief Requested

I respectfully request that this Court:

1. Transfer jurisdiction over my Motion to Quash to the United States District Court for the Southern District of Texas, where compliance is required under Rule 45(d)(3); and

    2.  Decline to rule on the Motion to Quash due to lack of jurisdiction.

## Section V: Refutation of Plaintiff's Cited Case Law

In their response, Plaintiff Phi Theta Kappa Honor Society ("PTK") relies on case law that is factually and legally distinguishable from the circumstances of this case. The cited authorities fail to support their arguments for enforcing the subpoena against me as a non-party, particularly given the improper service, privacy violations, and undue burden I have demonstrated.

### A. Plaintiff's Arguments Regarding Voluntary Involvement Are Misapplied

PTK contends that my limited prior involvement in unrelated matters justifies their subpoena. They rely on cases where individuals actively participated in the litigation or possessed unique, critical information. However, my limited correspondence with Honor Society and my historical concerns regarding PTK are peripheral at best to this case. Unlike the circumstances in *McMann v. SEC*, 87 F.3d 1369 (D.C. Cir. 1996), where the subpoenaed individual was a key witness, my involvement is tangential and does not meet the threshold for relevance under Rule 26(b)(1).

### B. Plaintiff's Cases on Improper Service Are Inapplicable

PTK argues that alternative service methods satisfy Rule 45(b)(1). However, the cases they cite involve extraordinary circumstances where courts explicitly authorized alternative service methods. In *United States v. Carter*, 202 F.R.D. 478 (S.D.N.Y. 2001), the court permitted alternative service because the recipient actively evaded service after extensive attempts. Here, PTK has not sought court approval for alternative service, nor have they demonstrated that my actions constitute intentional evasion. The service methods they employed—taping the subpoena to my door—fail to satisfy the clear personal service requirements of Rule 45(b)(1). See *Hall v.*

*Sullivan*, 229 F.R.D. 501, 503 (D. Md. 2005) (holding that leaving a subpoena at a residence is insufficient for proper service).

**C. Plaintiff Fails to Address Privacy and Harassment Concerns**

PTK's opposition neglects to adequately address the significant privacy concerns raised in my Motion to Quash. Courts have emphasized the need to protect individuals from invasive discovery tactics that expose sensitive information. See *Doe v. Stegall*, 653 F.2d 180, 185 (5th Cir. 1981). Plaintiff's disclosure of my minor child's license plate number and the process server's intrusive conduct—detailed in their own filings—underscore the need for judicial intervention to safeguard privacy and prevent further harm.

**D. Relevance of the Subpoenaed Information Remains Unsubstantiated**

PTK argues that the information sought is relevant to their claims. However, courts require more than speculative assertions to justify the burden of non-party discovery. See *Sines v. Kessler*, 325 F.R.D. 563, 565 (E.D. La. 2018). PTK fails to explain how my personal records or testimony will yield evidence that is proportional to the needs of this case. My prior interactions with Honor Society are unrelated to the specific allegations of unfair competition and trademark infringement central to this litigation.

**E. Summary of Refutation**

The authorities cited by PTK do not support the enforcement of their subpoena against me as a non-party. Their arguments fail to address the procedural deficiencies of their service, the irrelevance of the requested information, and the undue burden and privacy violations caused by their actions.

**Relief Requested**

For these reasons, I respectfully request that this Court:

1. Reject PTK's arguments and cited case law as inapplicable to the present circumstances;

2. Grant my Motion to Quash; and

3. Issue a protective order to safeguard my privacy and prevent further undue burden.

**Section VI: Texas Anti-SLAPP Protections**

The actions taken by Plaintiff Phi Theta Kappa Honor Society ("PTK") in issuing an improperly served subpoena, engaging in intrusive service tactics, and publicly disclosing sensitive personal information constitute conduct that is prohibited under the Texas Citizens Participation Act ("TCPA"). The TCPA, codified at Tex. Civ. Prac. & Rem. Code § 27.001 et seq., is designed to protect individuals from legal actions aimed at silencing free speech, discouraging public participation, and retaliating against criticism.

**A. The TCPA Protects Against Retaliatory Legal Tactics**

The TCPA applies broadly to protect individuals from legal actions intended to chill free speech, association, or the right to petition. In this case, PTK's actions—targeting me with a burdensome subpoena, publicly disclosing my private information, and engaging in aggressive process serving—appear retaliatory in nature and directly undermine my constitutional rights.

Texas courts have repeatedly emphasized the importance of the TCPA in preserving individuals' ability to participate in public discourse without fear of reprisal. See *Youngkin v. Hines*, 546 S.W.3d 675, 679 (Tex. 2018) (noting that the TCPA is intended to prevent powerful entities from

using litigation as a tool for intimidation). PTK's conduct reflects the very tactics the TCPA was designed to prohibit.

**B. Retaliatory Conduct Creates a Chilling Effect**

PTK's public disclosure of my personal information, including my minor child's identifying details, coupled with their unfounded accusations of evasion, has caused significant emotional distress and placed my family at risk. Courts recognize that retaliatory tactics of this nature have a chilling effect on individuals' willingness to speak out or participate in public discourse. See *Doe v. Stegall*, 653 F.2d 180, 185 (5th Cir. 1981).

The TCPA explicitly prohibits legal actions that deter individuals from exercising their rights. PTK's efforts to subpoena me, despite my limited and irrelevant involvement in this case, constitute a clear attempt to intimidate and silence me.

**C. PTK's Actions Meet the Criteria for Anti-SLAPP Protections**

The TCPA protects individuals from legal actions that are:

1. Based on or in response to the exercise of the right to free speech, association, or petition;
2. Designed to impose an undue burden or deter participation in public discourse.

PTK's subpoena and related actions fall squarely within this framework. By improperly serving me, exposing sensitive personal information, and accusing me of evasion without evidence, PTK has engaged in conduct that is inconsistent with the principles of justice and fairness.

**D. Relief Under the TCPA**

The TCPA provides for the dismissal of legal actions that are retaliatory in nature and allows for recovery of attorneys' fees and other relief to mitigate the harm caused by such actions. While I am proceeding pro se, I respectfully request that the Court consider the TCPA's protections in evaluating PTK's conduct and my request for relief.

**Relief Requested**

I respectfully request that this Court:

1. Recognize PTK's actions as retaliatory and chilling under the TCPA;

2. Grant my Motion to Quash the subpoena to prevent further harassment; and

3. Issue a protective order to safeguard my privacy and ensure that PTK complies with procedural rules in the future.

**Section VII: Request for Protective Order**

Given the privacy violations, intrusive service tactics, and retaliatory conduct by Plaintiff Phi Theta Kappa Honor Society ("PTK"), I respectfully request this Court issue a protective order to prevent further harm to my family and me. Federal Rule of Civil Procedure 26(c) provides broad discretion to courts to issue protective orders to shield individuals from "annoyance, embarrassment, oppression, or undue burden." The facts of this case justify such relief.

**A. Privacy Violations Require Court Intervention**

PTK has publicly disclosed sensitive personal information, including my license plate number and my minor child's identifying details, in violation of Rule 5.2(a). These disclosures, made in public court filings, pose significant safety risks to my family. Courts have consistently

emphasized the importance of protecting minors and individuals from unnecessary public exposure. See *Globe Newspaper Co. v. Superior Court*, 457 U.S. 596, 607 (1982) (noting the state's interest in protecting minors from the lasting harm of public exposure).

The inclusion of this information in court records was unnecessary for PTK's litigation and has caused undue harm. A protective order is essential to mitigate these risks and to ensure compliance with the privacy protections mandated by the Federal Rules.

## B. Intrusive Service Tactics Warrant Protection

As detailed in Plaintiff's own filings, PTK's process server engaged in intrusive and alarming behavior, including looking through windows and observing my minor child. Such actions exceed the bounds of acceptable service and raise serious safety and privacy concerns. Courts have recognized that process serving must be conducted in a manner that respects privacy and avoids unnecessary intrusion. See *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 34 (1984) (upholding the use of protective orders to limit the dissemination of sensitive information).

The process server's actions have caused significant emotional distress for my family and me. Without court intervention, there is a risk of continued harassment and intimidation.

## C. Protecting Non-Parties from Harassment and Burden

Non-parties to litigation are entitled to heightened protections against undue burden and harassment. See *Cusumano v. Microsoft Corp.*, 162 F.3d 708, 717 (1st Cir. 1998) (noting that non-parties are "strangers to the litigation" and should not be subject to intrusive discovery requests). As a non-party, I have been subjected to improper service, invasive conduct, and

public exposure of private information. A protective order is necessary to ensure that such actions are not repeated.

**Relief Requested**

I respectfully request that this Court issue a protective order to:

1. Require PTK to redact all identifying personal information from court filings, including my license plate number and that of my minor child, in compliance with Rule 5.2(a);

2. Prohibit PTK from publicly disclosing my personal information in future filings;

3. Prevent further intrusive conduct during any attempts at service or discovery; and

4. Shield me from any additional undue burden, harassment, or privacy violations as a non-party to this litigation.

**Section VII: Request for Protective Order**

Given the privacy violations, intrusive service tactics, and retaliatory conduct by Plaintiff Phi Theta Kappa Honor Society ("PTK"), I respectfully request this Court issue a protective order to prevent further harm to my family and me. Federal Rule of Civil Procedure 26(c) provides broad discretion to courts to issue protective orders to shield individuals from "annoyance, embarrassment, oppression, or undue burden." The facts of this case justify such relief.

**A. Privacy Violations Require Court Intervention**

PTK has publicly disclosed sensitive personal information, including my license plate number and my minor child's identifying details, in violation of Rule 5.2(a). These disclosures, made in public court filings, pose significant safety risks to my family. Courts have consistently

emphasized the importance of protecting minors and individuals from unnecessary public exposure. See *Globe Newspaper Co. v. Superior Court*, 457 U.S. 596, 607 (1982) (noting the state's interest in protecting minors from the lasting harm of public exposure).

The inclusion of this information in court records was unnecessary for PTK's litigation and has caused undue harm. A protective order is essential to mitigate these risks and to ensure compliance with the privacy protections mandated by the Federal Rules.

**B. Intrusive Service Tactics Warrant Protection**

As detailed in Plaintiff's own filings, PTK's process server engaged in intrusive and alarming behavior, including looking through windows and observing my minor child. Such actions exceed the bounds of acceptable service and raise serious safety and privacy concerns. Courts have recognized that process serving must be conducted in a manner that respects privacy and avoids unnecessary intrusion. See *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 34 (1984) (upholding the use of protective orders to limit the dissemination of sensitive information).

The process server's actions have caused significant emotional distress for my family and me. Without court intervention, there is a risk of continued harassment and intimidation.

**C. Protecting Non-Parties from Harassment and Burden**

Non-parties to litigation are entitled to heightened protections against undue burden and harassment. See *Cusumano v. Microsoft Corp.*, 162 F.3d 708, 717 (1st Cir. 1998) (noting that non-parties are "strangers to the litigation" and should not be subject to intrusive discovery requests). As a non-party, I have been subjected to improper service, invasive conduct, and

public exposure of private information. A protective order is necessary to ensure that such actions are not repeated.

**Relief Requested**

I respectfully request that this Court issue a protective order to:

1. Require PTK to redact all identifying personal information from court filings, including my license plate number and that of my minor child, in compliance with Rule 5.2(a);

2. Prohibit PTK from publicly disclosing my personal information in future filings;

3. Prevent further intrusive conduct during any attempts at service or discovery; and

4. Shield me from any additional undue burden, harassment, or privacy violations as a non-party to this litigation.

**Section VIII: PTK's Failure to Rebut Key Arguments**

In their opposition to my Motion to Quash, Plaintiff Phi Theta Kappa Honor Society ("PTK") fails to address several critical arguments that I presented. Under well-established legal principles, a party's failure to rebut specific arguments raised in a motion can be interpreted as implied consent or agreement with those arguments. See *Hopkins v. Women's Div., Gen. Bd. of Glob. Ministries*, 284 F. Supp. 2d 15, 25 (D.D.C. 2003) ("[W]hen a plaintiff files an opposition to a motion and addresses only certain arguments raised by the defendant, a court may treat those arguments that the plaintiff failed to address as conceded.").

**A. Improper Service**

PTK's opposition does not adequately refute my argument that the subpoena was not served in compliance with Rule 45(b)(1) of the Federal Rules of Civil Procedure. Instead, PTK relies on speculative and unsupported claims of evasion to justify their failure to meet the strict requirements of personal service. Courts have consistently held that improper service invalidates a subpoena. See *Omni Capital Int'l v. Rudolf Wolff & Co.*, 484 U.S. 97, 104 (1987) (emphasizing the necessity of proper service to establish jurisdiction).

By failing to directly address the procedural deficiencies of their service, PTK effectively concedes this argument.

## B. Privacy Violations

PTK's opposition fails to substantively respond to my claim that their public disclosure of my personal information, including my minor child's license plate number, violates Rule 5.2(a). Courts recognize the importance of protecting sensitive information, particularly when minors are involved. See *Doe v. Stegall*, 653 F.2d 180, 185 (5th Cir. 1981). PTK's failure to address the privacy implications of their actions demonstrates a lack of regard for these established protections.

## C. Undue Burden

PTK has not provided sufficient evidence to refute my argument that compliance with the subpoena would impose an undue burden. Instead, they dismiss my concerns as speculative without addressing the financial and personal hardships that compliance would entail. Courts require a showing of proportionality in discovery requests, especially when directed at

non-parties. See *Cusumano v. Microsoft Corp.*, 162 F.3d 708, 717 (1st Cir. 1998). PTK's failure to address the undue burden argument further supports granting my Motion to Quash.

**D. Relevance**

While PTK asserts that the subpoenaed information is relevant, they fail to provide concrete evidence demonstrating how the requested documents and testimony are proportional to the needs of the case. Courts have held that conclusory assertions of relevance are insufficient to justify non-party discovery. See *Sines v. Kessler*, 325 F.R.D. 563, 565 (E.D. La. 2018). PTK's failure to substantiate their relevance claims undermines their position.

**E. Absence of Exceptional Circumstances**

PTK's opposition does not establish any exceptional circumstances that would justify retaining jurisdiction in this Court rather than transferring the matter to the Southern District of Texas, where compliance is required under Rule 45(d)(3). The convenience of the non-party is a critical factor in determining jurisdiction, and PTK's failure to address this issue further supports transferring the motion to the proper venue.

**Relief Requested**

For the reasons outlined above, I respectfully request that this Court:

1. Recognize PTK's failure to rebut key arguments as an implied concession of those points;

2. Grant my Motion to Quash;

3. Transfer jurisdiction to the United States District Court for the Southern District of Texas, where compliance is required; and

4. Issue a protective order to prevent further harassment, privacy violations, and undue burden.

## Section IX: Conclusion

This case highlights critical issues regarding the misuse of subpoenas, the protection of non-parties, and the importance of adhering to procedural and privacy safeguards under the Federal Rules of Civil Procedure. As a non-party, I have been subjected to improper service, invasive conduct, and the public disclosure of sensitive personal information, all of which have caused undue burden and significant distress to my family and me.

PTK has failed to address key arguments presented in my Motion to Quash, including improper service, privacy violations, and the undue burden imposed by their subpoena. Furthermore, PTK's actions lack the exceptional circumstances necessary to retain jurisdiction in this Court and fail to justify the broad and intrusive discovery sought against a non-party.

Non-parties are entitled to heightened protections against burdensome and invasive litigation tactics. See *Cusumano v. Microsoft Corp.*, 162 F.3d 708, 717 (1st Cir. 1998). My limited prior involvement with PTK and Honor Society is irrelevant to the core issues of this case, and the subpoenaed information is neither proportional to the needs of the case nor compliant with the Federal Rules of Civil Procedure.

For these reasons, I respectfully request that this Court:

1. Grant my Motion to Quash the subpoena in its entirety;

2. Transfer jurisdiction over this matter to the United States District Court for the Southern District of Texas, where compliance is required under Rule 45(d)(3);

3. Issue a protective order to safeguard my privacy and prevent further undue burden and harassment; and

4. Order Plaintiff to redact all sensitive personal information from existing filings in compliance with Rule 5.2(a).

I trust the Court to uphold the principles of fairness and justice by protecting me, a non-party, from improper and invasive legal tactics.

Respectfully submitted,

*Toni Marek*

**Toni Marek (Pro Se)**

Victoria, Texas

Email: tonimarek@gmail.com

Phone: 361-212-1219

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on January 10, 2025, I served a true and correct copy of the Reply in Support of Motion to Quash Subpoena by Non-Party Toni Marek, including any supporting exhibits, upon all parties of record via email as follows:

Counsel for Plaintiff Phi Theta Kappa Honor Society

- Jonathan G. Polak

  Taft Stettinius & Hollister LLP

  One Indiana Square, Suite 3500

  Indianapolis, IN 46204-2023

  Email: jpolak@taftlaw.com

- Michael B. Wallace

  Wise Carter Child & Caraway, P.A.

  401 E. Capitol Street, Suite 600

  Jackson, MS 39201

  Email: mbw@wisecarter.com

- J. Mitchell Tanner

  Taft Stettinius & Hollister LLP

  One Indiana Square, Suite 3500

  Indianapolis, IN 46204-2023

  Email: jpolak@taftlaw.com (Duplicate: Confirm if correct)

- W. Whitaker Rayner

  Jones Walker LLP

190 E. Capitol Street, Suite 800

Jackson, MS 39201

Email: wrayner@joneswalker.com

Counsel for Defendants HonorSociety.Org, Inc. and Honor Society Foundation, Inc.

- Michael A. Bernet

  Stubbs Alderton & Markiles, LLP

  15260 Ventura Boulevard, 20th Floor

  Sherman Oaks, CA 91403

  Email: mbernet@stubbsalderton.com

- Daniel A. Rozansky

  Stubbs Alderton & Markiles, LLP

  15260 Ventura Boulevard, 20th Floor

  Sherman Oaks, CA 91403

  Email: drozansky@stubbsalderton.com

- Derek A. Linke

  Newman Du Wors LLP

  2101 Fourth Avenue, Suite 1500

  Seattle, WA 98121

  Email: linke@newmanlaw.com

- Derek Newman

  Newman Du Wors LLP

  2101 Fourth Avenue, Suite 1500

Seattle, WA 98121

Email: dn@newmanlaw.com

I further certify that a copy of this document will be sent via email to the Clerk of Court for filing and entered into the Court's docket via the ECF system.

Respectfully submitted,

*Toni Marek*

Toni Marek (Pro Se)

Victoria, Texas

Email: tonimarek@gmail.com

Phone: 361-212-1219



# TONI MAREK

## Reply in Support of Motion to Quash Subpoena – Case No. 3:22-cv-00208-CWR-RPM

Dear Counsel,

Attached is my Reply in Support of Motion to Quash Subpoena regarding the above referenced matter.

This reply has been emailed to all parties of record listed on PACER.

Additionally, a copy of the reply will be mailed to the Clerk of Court for the Southern District of Mississippi, Northern Division, via certified mail with a return receipt requested.

If you have any questions, please feel free to contact me via email or phone at 361.212.1219.

Please note that by contacting me via telephone, you consent to the call being recorded at my discretion.

Sincerely,

*Toni Marek*

**Toni Marek**
*Pro Se*

 Victoria, Texas

 361-212-1219

 tonimarek@gmail.com

# EXHIBIT A-2



Begin forwarded message:

**From:** Toni Marek <<u>tonimarek@gmail.com</u>>
**Subject: Urgent: PTK Board of Directors Open Letter and Evidence Regarding PTK
Leadership and Governance**
**Date:** January 16, 2025 at 9:55:17 AM PST

**To:** gboggs@palomar.edu, dphelan@jccmi.edu, linderm@grayson.edu, modu@sdccd.edu, alahmartala@gmail.com

You don't often get email from tonimarek@gmail.com. Learn why this is important

Dear Phi Theta Kappa Board of Directors,

I am reaching out to you with a heavy heart and a clear conscience. Attached is an open letter that outlines significant concerns about Phi Theta Kappa under the leadership of CEO Lynn Tincher-Ladner, along with evidence supporting these claims.

The issues outlined—false advertising, financial mismanagement, nepotism, toxic workplace culture, and governance failures—are not isolated incidents. Together, they paint a troubling picture of systemic problems that threaten PTK's mission and reputation. As Board members, you have a fiduciary duty to address these issues with urgency to protect PTK's legacy and ensure it operates transparently and ethically for the benefit of its members and the public.

*What's Included in This Open Letter Packet:*

1. **Public Records Evidence:** Documentation from Palomar and Grayson Colleges showing the misleading nature of PTK's "Top 10%" marketing claims.
2. **Examples of False Advertising:** PTK's promotional materials and email campaigns promising unsubstantiated benefits, such as "$246 million in exclusive scholarships."
3. **Social Media Posts:** Real life examples of members who trusted PTK's claims and were misled.
4. **Glassdoor Reviews:** Detailed accounts from former employees describing a toxic workplace culture and systemic issues within PTK's leadership.

*Why This Matters:*

These problems have real-world consequences for the students, advisors, and colleges that trust PTK. The revolving door of executives, the departure of talented employees, and the documented culture of intimidation and secrecy highlight the urgent need for reform. The Board must investigate why these issues persist and take immediate action to protect PTK's mission of honoring academic excellence.

*What I Ask of You:*

Please review the attached letter and evidence in full. Reach out to the employees, former staff, and stakeholders who can provide firsthand insights into these issues. PTK has the potential to inspire and uplift students, but it cannot fulfill that promise without meaningful changes to its leadership and governance.

If you have any questions or would like further clarification, I am available to discuss this at your earliest convenience.

Sincerely,
Toni Marek
Founder, *And Then She Spoke Up*
PTK Lifetime Member and Former International Officer
tonimarek@gmail.com

**Urgent Open Letter to the Board of Phi Theta Kappa**

A Call for Accountability and Reform

January 16, 2025

Dear Members of the Phi Theta Kappa Board of Directors,

I write to you as a former international officer, a lifetime member, and someone who has spent over a decade advocating for Phi Theta Kappa to live up to its mission of honoring academic excellence. My concerns are not attacks but stem from a deep desire to see PTK thrive and fulfill its promise to students and the community college community.

Under the leadership of CEO Lynn Tincher-Ladner, however, PTK has strayed far from its mission. The organization has become mired in serious issues that threaten its credibility and future. I urge you to read this letter thoroughly and act decisively. The students, advisors, and institutions that rely on PTK deserve accountability, transparency, and reform.

---

## Five Critical Issues Facing PTK

### 1. False Advertising: The "Top 10%" Lie

PTK's claim to recognize the "Top 10%" of community college students is one of its most prominent marketing tools. However, this claim has no credible basis:

- Public records from Board Members George Boggs's (Palomar College) and Mary Linder's (Grayson College) institutions reveal that up to **23% and 39% of students** were invited under this false distinction.
- Students and families trust PTK to honor academic achievement, but this claim exploits that trust, pressuring over **100,000 students annually** to pay membership fees totaling **millions of dollars** based on a misleading distinction.

This deception also undermines the credibility of the colleges involved and the employers who trust PTK's recommendations that PTK members are Top 10% students. This misleading letters of recommendation are personally signed by Lynn Tincher-Lader. **How can this be allowed to persist in an organization operating as a nonprofit for the public benefit?**

---

**2. Misleading Scholarship Claims**

PTK advertises access to "$246 million in member-only scholarships" and states "the average member gets $2,500 a year." These claims are deeply misleading:

- Many counted scholarships are publicly available to all transfer students, not exclusive to PTK members.
- In reality, the true average PTK member receives no scholarship at all, creating a highly misleading impression to potential members.

Students and families, often financially strained, join PTK believing they are securing life-changing opportunities. Instead, they are left disappointed and misled by what amounts to a bait-and-switch.

---

**3. Financial Mismanagement**

Under Tincher-Ladner's leadership, PTK's financial health has drastically declined:

- PTK's net income dropped from a **$4.7 million surplus in 2021 to a $900,000 deficit in 2023**, a staggering $5.6 million decline in two years.
- During this same period, Tincher-Ladner's salary increased by **49%**, rising from $259,674 to $386,564.

**Why did the CEO receive such a significant raise while PTK's finances were collapsing?** No other key personnel received comparable raises, further highlighting the issue at the highest levels.

Additionally, look into the 2024 year-end results of Phi Theta Kappa to see the extent of the likely growing losses over the past year. The 2024 financials are undoubtedly available to the full-time CFO of PTK, and should be requested and analyzed now.

---

**4. Nepotism and Governance Failures**

Tincher-Ladner employs her spouse, Courtney Lange, in a senior role at PTK Foundation. However, public IRS 990 records show that Lange's salary came directly from PTK, despite claims that Lange works for the PTK Foundation, which does not employ staff. This creates

a perception of conflicts of interest and raises genuine questions about resource allocation, governance and private inurement.

To facilitate this arrangement, the leadership revised nepotism policies—a move that prioritizes personal interests over ethical governance.

---

**5. Toxic Workplace Culture and High Turnover**

Glassdoor reviews and firsthand accounts from former employees reveal a toxic workplace under Tincher-Ladner's leadership. Complaints include intimidation, bullying, and retaliation against those who raised concerns.

The evidence speaks for itself. Numerous executives and key employees have left PTK in the past year. This is symbolically evidenced by the rotating faces displayed on the public PTK executive council page over the course of the past year.

These departures are not isolated incidents. They reflect a deeper cultural problem. Employees are not leaving because they want to—they are leaving because they feel threatened, undervalued, and constructively fired.

**I urge the Board to independently investigate why these talented individuals left.**

---

## Attached Evidence

In the attached packet, you will find:

- **Evidence** from public records requests directly from Palomar and Grayson community colleges.
- **Examples of PTK's false advertising** in its marketing materials.
- **Social media posts** from members misled by PTK's claims, highlighting the real-world impact of these deceptions.
- **Glassdoor reviews** revealing the toxic culture within PTK's workplace.

This evidence underscores the systemic problems at PTK and demands immediate attention from the Board.

---

## Your Fiduciary Duty

As the governing body of PTK, you have a legal and moral obligation to ensure the organization operates transparently, ethically, and for the public benefit. Allowing these issues to persist not only violates your fiduciary responsibilities but also risks irreparable harm to PTK's reputation and mission.

**The time to act is now.**

---

## What Must Be Done

To restore trust and accountability, I urge the Board to:

1. **Investigate Leadership Failures**: Scrutinize PTK's leadership, finances, and marketing practices.
2. **Replace Leadership**: Appoint leaders who understand PTK's mission, have firsthand experience as actual Phi Theta members, and are committed to real transparency and ethical governance.
3. **Reform Governance Practices**: Restore term limits for board members, revise nepotism policies, and prioritize accountability.
4. **Commit to Transparency**: Ensure PTK's marketing, operations, and finances are truthful and clear to members and the public.

---

I write this all to you with a heavy heart but a clear conscience. Over the past several months, I have been the target of efforts by PTK leadership and its lawyers to discredit me and smear my character. They have gone so far as to invade the privacy of my family and children, attempting to portray me as an adversary.

Let me be absolutely clear: I am **not** part of any lawsuit against PTK. My concerns with the organization span over a decade and stem from my experiences as a lifetime member, a former international officer, and someone who has always held deep admiration for what PTK represents.

George Boggs and Lynn Tincher-Ladner know this history, and they know my intention is not to harm PTK but to **help save it.** I have spent years voicing concerns in hopes that the organization can fulfill its mission with integrity, transparency, and a true commitment to its members. I hope that you, as board members, can see through the personal attacks

against me and understand that my actions come from a place of care for PTK and its future.

PTK has the potential to inspire and uplift countless students. However, it cannot fulfill that promise without meaningful reform. I urge you to take this letter and its evidence seriously and act decisively to restore the integrity of Phi Theta Kappa.

Sincerely,
**Toni Marek**
Founder, *And Then She Spoke Up*
PTK Lifetime Member and Former International Officer
tonimarek@gmail.com

 Gmail

**Toni Marek <andthenshespokeup@gmail.com>**

## Re: FOIA Request Regarding PTK Eligibility Standards at this Campus

**Anna Hicks** <hicksa@grayson.edu>                                                   Tue, Jan 7, 2025 at 2:11 PM
To: andthenshespokeup@gmail.com

Good afternoon! My email sent before I was ready. I'm sure it was an error on my part! I am sorry. Below is the completed questionnaire for Grayson College:

## Questionnaire

<u>Please use all data for the past 4 years (2020-2024 academic years).</u>
*Request past 4 years was used for data.*

**Name of the school represented:**

*Answer:* ==Grayson College==

**What GPA corresponds to the Top 10% of students at this campus?**

*Answer: 3.91*

**Phi Theta Kappa (PTK) Eligibility GPA at this school:**

*Answer:* until mid spring of 2023, GPA was 3.5, in spring semester 2023, members voted to lower the GPA to 3.25 where it still stands today

==**Percentage of students meeting the PTK GPA threshold at this campus:**==

==*Answer:  39%*==

**Percentage of students meeting a 3.0+ GPA PTK Bylaws  threshold:**

*Answer: 61%*

**Explanation of numerator and denominator used for the percentages above:**

*Answer:*  Total students - 12651, PTK student count - 4962

**Name, title, and contact email of the person who compiled this information:**

*Answer:*

*Received request:*

*Anna Hicks*
*Marketing Director*
*hicksa@grayon.edu*

*Data pulled by:*
*Anderson Zhu*
*Statistician*
*zhua@graysonn.edu*

## Anna M. Hicks

Director of Marketing & Communications

6101 Grayson Drive | Denison, TX 75020

903.463.8628

On Tue, Jan 7, 2025 at 4:08 PM Anna Hicks <hicksa@grayson.edu> wrote:

## Questionnaire

Please use all data for the past 4 years (2020-2024 academic years).
*Request past 4 years was used for data.*

**Name of the school represented:**

*Answer: Grayson College*

**What GPA corresponds to the Top 10% of students at this campus?**

*Answer: 3.91*

**Phi Theta Kappa (PTK) Eligibility GPA at this school:**

*Answer:* until mid spring of 2023, GPA was 3.5, in spring semester 2023, members voted to lower the GPA to 3.25

where it still stands today

**Percentage of students meeting the PTK GPA threshold at this campus:**

*Answer:*

**Percentage of students meeting a 3.0+ GPA PTK Bylaws threshold:**

*Answer:*

**Explanation of numerator and denominator used for the percentages above:**

*Answer:*

Total students – 12651PTK student count – 4962

**Name, title, and contact email of the person who compiled this information:**

*Answer:*

% of students meeting the PTK GPA threshold – 39%
% of students meeting 3.0 GPA – 61%

## Anna M. Hicks

Director of Marketing & Communications

6101 Grayson Drive | Denison, TX 75020

903.463.8628

On Tue, Dec 3, 2024 at 3:53 PM Toni Marek <andthenshespokeup@gmail.com> wrote:

I am reaching out with a Freedom of Information Act (FOIA) request regarding Phi Theta Kappa (PTK) eligibility standards at your campus. I deeply appreciate your time and assistance in helping us obtain this information, as it is essential for our research on transparency and equity in student opportunities. I kindly ask for your help in completing this brief questionnaire:

---

## Questionnaire

Please use all data for the past 4 years (2020-2024 academic years).

**Name of the school represented:**

*Answer:*

**What GPA corresponds to the Top 10% of students at this campus?**

*Answer:*

**Phi Theta Kappa (PTK) Eligibility GPA at this school:**

*Answer:*

**Percentage of students meeting the PTK  GPA threshold at this campus:**

*Answer:*


**Percentage of students meeting a 3.0+ GPA PTK Bylaws  threshold:**

*Answer:*


**Explanation of numerator and denominator used for the percentages above:**

*Answer:*


**Name, title, and contact email of the person who compiled this information:**

*Answer:*


If you represent more than one campus, please copy-paste and fill out the questionnaire for each campus.

I am also seeking the following information:

1. **Eligibility Documentation:**

   ○ Any lists, student counts, or documentation regarding PTK-eligible members generated and provided to PTK or PTK chapter advisors at this campus.

2. **Communications and Records:**

   ○ All records from 12/31/2012 to the present regarding PTK at this campus, including:

      ▪ Communications (emails or otherwise) to/from PTK or PTK.org, including chapter advisors.

      ▪ Files and student lists provided by the school to PTK.

   ○ All communications between anyone at this college and either Lynn Tincher-Ladner (lynn.tincher-ladner@ptk.org) or Rod Risley (rod.risley@ptk.org).

I am sincerely grateful for your cooperation and time in addressing this request. If any portion of this information is not available, please provide the remaining data to the extent possible. Should you require any clarification or additional details to fulfill this request, do not hesitate to contact me, and I will be more than happy to assist.

Thank you again for your efforts. This request is made by *And Then She Spoke Up* as part of an

initiative to promote transparency and equity in educational opportunities. We are not affiliated with PTK

and are committed to fostering a supportive community for students and institutions alike.

Warm regards,

Toni Marek

Founder, *And Then She Spoke Up*



**Number and Percentage of Palomar Students Eligible to Participate in the International Chapter of Phi Theta Kappa**

### Fall 2019 - Fall 2023 3.5+ Cumulative GPA for Students with 12+ Units Earned #

| Definition | Row Labels | Fall 2019 | Spring 2020 | Fall 2020 | Spring 2021 | Fall 2021 | Spring 2022 | Fall 2022 | Spring 2023 | Fall 2023 |
|---|---|---|---|---|---|---|---|---|---|---|
| # Of students who have earned a cumulative 12 or more units and have a Cumulative GPA of 3.5 or higher. | Eligible | 3,906 | 4,251 | 4,294 | 4,540 | 4,034 | 4,068 | 3,806 | 4,016 | 4,072 |
| # of credit and non credit students who have not earned a cumulative 12 or more units and/or have do not have a cumulative GPA of 3.5 or higher | Ineligible | 21,369 | 19,531 | 17,364 | 15,450 | 14,901 | 13,462 | 14,721 | 14,497 | 15,672 |
| Total student headcount excluding apprentices by term | Grand Total | 25,275 | 23,782 | 21,658 | 19,990 | 18,935 | 17,530 | 18,527 | 18,513 | 19,744 |

### Fall 2019 - Fall 2023 3.5+ Cumulative GPA for Students with 12+ Units Earned %

| Definition | Row Labels | Fall 2019 | Spring 2020 | Fall 2020 | Spring 2021 | Fall 2021 | Spring 2022 | Fall 2022 | Spring 2023 | Fall 2023 |
|---|---|---|---|---|---|---|---|---|---|---|
| % Of students who have earned a cumulative 12 or more units and have a Cumulative GPA of 3.5 or higher. | Eligible | 15.45% | 17.87% | 19.83% | 22.71% | 21.30% | 23.21% | 20.54% | 21.69% | 20.62% |
| % of credit and non credit students who have not earned a cumulative 12 or more units and/or have do not have a cumulative GPA of 3.5 or higher | Ineligible | 84.55% | 82.13% | 80.17% | 77.29% | 78.70% | 76.79% | 79.46% | 78.31% | 79.38% |
| | Grand Total | 100.00% | 100.00% | 100.00% | 100.00% | 100.00% | 100.00% | 100.00% | 100.00% | 100.00% |

Source: Peoplesoft
12/6/2024

**From:**     Phi Theta Kappa Honor Society <member.services@ptk.org>
**Sent:**     Tuesday, February 27, 2024 12:00 PM
**To:**     ███████████
**Subject:**     Invitation from Phi Theta Kappa®



██████████, **you did it!**

## You've earned an invitation to become a member of Phi Theta Kappa Honor Society.

You're doing great work at Cuyamaca College — so great, that ==you're in the top 10% of students on your campus.== We'd like to officially invite you to become a member of the Alpha Pi Omicron Chapter of Phi Theta Kappa Honor Society.

Since our founding in 1918, we've connected standout students like you with scholarships, mentors, and the resources they need to build the futures they want. We've inducted more than 3.8 million members and have nearly 1,300 chapters in 11 nations.

## The Benefits of Membership are Unmatched

You'll have access to ==$246 million in member-only transfer scholarships== and over $1.5 million in PTK-funded scholarships to help you complete your degree or cover career-related certification fees. ==The average member gets $2,500 a year.==

For career-technical students, we have scholarships that can be used to cover tuition, books, certification exams and prep fees, and more.

There are also opportunities to grow your leadership skills and develop marketable job skills, preparing you to complete college and setting you up for a more successful future.

## Worth the Price of Admission

As a Phi Theta Kappa member, you'll be three times more likely to complete a college credential than your non-member peers. Membership matters — the one-time, lifetime $105 membership fee is an investment in your future.

Accept membership online using your personal passcode ▮▮▮▮▮▮▮ at join.ptk.org before the May 31, 2024 deadline, and you'll receive a free tassel in your welcome packet.

**Join Now**

Questions? Follow @phithetakappa on your favorite social media channel. You can also contact your local chapter advisor Alyssa Krauss at alyssa.krauss@gcccd.edu or email member.services@ptk.org for additional information.

Phi Theta Kappa Honor Society
The mission of Phi Theta Kappa is to recognize academic achievement of college students and to provide opportunities for them to grow as scholars and leaders.

   

Contact us - member.services@ptk.org  |  Terms of Membership

© 2024 Phi Theta Kappa, Inc.

View email in browser
Phi Theta Kappa International Honor Society · 1625 Eastover Dr · Jackson, MS 39211-6431 · USA
update your preferences or unsubscribe



PHI THETA KAPPA
HONOR SOCIETY



## Let's Chat:
## Resume 101

with PTK President and CEO

Dr. Lynn Tincher-Ladner

## September 26
## 3PM CDT

██████, high achieving students like you are at the heart of Phi Theta Kappa Honor Society (PTK). As one of the top 10% of students at Black Hawk College, you have earned your place in our community of student scholars and leaders. Our team creates these info sessions to give you the skills you need to navigate college and successfully enter the workforce.

Join our President and CEO Dr. Lynn Tincher-Ladner to learn helpful writing tips you can use to amp up your resume. Academic and career guidance is just one of the benefits of being a PTK member. You'll also have access to scholarships, networking, and recognition. With PTK, you can create the future you want.

Register



**PHI THETA KAPPA**
HONOR SOCIETY

5/23/2023

**Literally false and highly misleading.**

To Whom it May Concern:

I am pleased to recommend to you Yesika Carrasquillo, a member of Phi Theta Kappa Honor Society, the largest and most prestigious honor society serving colleges around the world. Yesika was inducted into the Upsilon Epsilon Chapter of Phi Theta Kappa while attending Herkimer County Community College.

To be invited to membership in Phi Theta Kappa, Yesika earned high academic standing with a class rank in the top 10 percent. Phi Theta Kappa requires members to maintain high academic standing for the duration of enrollment at the college.

Established in 1918, Phi Theta Kappa Honor Society recognizes and encourages the academic achievement of college students and provides opportunities for individual growth and development through honors, leadership, and service programming. Membership in the Society reflects discipline, determination, and an innate desire to succeed. Active involvement demonstrates servant leadership, communication skills, and emerging leadership talent.

Since its founding, Phi Theta Kappa has inducted more than 3.5 million members and chartered nearly 1,300 chapters in 11 nations. Membership is a great honor, and members like Yesika are among the best of the best at their institutions.

Sincerely,

Lynn Tincher-Ladner, Ph.D.
President and CEO

**Signed and endorsed by PTK CEO**



**PHI THETA KAPPA HONOR SOCIETY**
1625 Eastover Drive, Jackson, MS 39211

ptk.org
p: 601.984.3504



## PHI THETA KAPPA
HONOR SOCIETY

**To Whom It May Concern:**

I am pleased to recommend to you Andrew Elsasser, a member of Phi Theta Kappa Honor Society, the premier honor society recognizing the academic achievement of college students and helping them grow as scholars and leaders. Since its founding in 1918, Phi Theta Kappa has inducted more than 3.8 million members and chartered 1,300 chapters located in 11 nations.

Andrew was inducted into the Beta Gamma Epsilon Chapter of Phi Theta Kappa while attending Stark State College and demonstrated leadership abilities by:

Serving as valued member of his chapter.

To be invited to membership in Phi Theta Kappa, Andrew's invitation to join Phi Theta Kappa was a testament to his unwavering commitment to achieving and maintaining academic excellence at his college where he stood among the top 10% of his class.

Membership in the Society reflects discipline, determination, and an innate desire to succeed. Active involvement demonstrates a commitment to servant leadership, scholarship, and fellowship.

Community college students, like Andrew, are fearless learners, endlessly adaptable, and remarkably determined. They are the dreamers and the doers. As a member of Phi Theta Kappa, Andrew exemplifies the best of what community colleges have to offer.

We applaud Andrew's academic achievements and look forward to witnessing his accomplishments in the future.

Sincerely,

Lynn Tincher-Ladner, Ph.D.
President & CEO
Phi Theta Kappa Honor Society

**PHI THETA KAPPA HONOR SOCIETY**
1625 Eastover Drive, Jackson, MS 39211

p: 601.000.0000   inquires@ptk.org   www.ptk.org

---

*Annotations (handwritten/boxed):*

Letter represents Phi Theta Kappa membership equates to "Top 10%" which is provably false. Deceptive to all regarding exclusivity of membership.

Personally signed and endorsed by PTK CEO, Lynn Tincher-Ladner

Phi Theta Kappa social media examples of perpetuating their "Top 10%" falsity.

Case 3:22-cv-00208-CWR-RPM    Document 398-1    Filed 01/23/25    Page 48 of 73



**Phi Theta Kappa Honor Society** @PHITHETAKAPPA · Nov 10, 2023 ···

Induction season >>> any other season 😎🤩

PTK social media specifically calls out that membership means "Top 10%" at your college, which is false.

Congratulations to all new members for being at the **top 10**% of your college, and we can't wait to see in what ways you'll take advantage of your PTK membership.

When did you join PTK? Comment below and let us know! #PTKProud



○          ⟲ 2          ♡ 20          ılı 710          🔖  ⬆️

**Phi Theta Kappa Honor Society** @PHITHETAKAPPA · Aug 9, 2022 ···

Replying to @Kookue_Cachoo

It means your college said you're at the **top 10**% of students because of your academic achievements. We call that student success. 😎

○ 1          ⟲          ♡ 2          ılı          🔖  ⬆️

**Phi Theta Kappa Honor Society** @PHITHETAKAPPA · Feb 2, 2022 ···

Replying to @ShyGirlGrayson

It means your college told us you're at the **top 10**% of students at your college, so yes, definitely something to be proud of! 🙌

○          ⟲ 1          ♡ 3          ılı          🔖  ⬆️

**Phi Theta Kappa Honor Society** @PHITHETAKAPPA · Oct 5, 2022    ···
You definitely did, Daniel! **Top 10**% of students at your college is a big deal. Congratulations! 🎉🎉🎉 t.co/VOEltFzpzk

This post is unavailable.

◯            ⟲            ♡ 6            ᵢₗᵢ            🔖  ⤒

**Phi Theta Kappa Honor Society** @PHITHETAKAPPA · Oct 28, 2021    ···
Yes, we do. 😌 Your college says you are **top 10**% of your class and we agree!

◯            ⟲            ♡ 1            ᵢₗᵢ            🔖  ⤒

**Phi Theta Kappa Honor Society** @PHITHETAKAPPA · Jun 22, 2022    ···
Replying to @omghollydee
We don't know what you are going through but we're definitely proud that your hard work got you here. **Top 10**% is a big deal and you should be proud too. ❤️

◯ 1            ⟲            ♡ 3            ᵢₗᵢ            🔖  ⤒

.. · 5/14/23 ···

Graduation pictures 🧡 💕 Graduated in the **top 10**% of my class for my associates degree & three certificates. Got recognized for being in the **top 10**% & for being a @PHITHETAKAPPA member. UH Mānoa here I come 🤙



6    ♻ 1    ♡ 20    ᶟᶥ 875    🔖    ⬆



8/5/22    ...

Graduated Cum Laude while **top 10% on campus**

I most definitely have to celebrate for this one

Thanks to @StrayerU for all the help and support during this journey.

Black Honor student, can't believe I did it.

ΦΘΚ 📚 @PHITHETAKAPPA



💬    🔁 1    ♡ 6    ⌕    🔖    ⬆



All   Posts   People   Reels   Groups   Pages   Vid

_____ is with _____ and **8**   •••
**others.**
Mar 28 · 🌐

Congratulations to _____ _____ for being inducted into Phi Theta Kappa Honor Society- Beta Theta Omega Chapter! What an honor to be in the top 10% in Academics at St Pete College. So proud of you! 🙏 💜 🙌





💗👍 104         84 comments

👍 Like     ◯ Comment     ↪ Share



3rd+     **+ Follow**    • • •

Skilled Trades Professional/Engineer
in Electricity & HVAC • Φ Θ K •
2mo • 🌐

Today I reached a monumental point in my educational journey.
I have been inducted into the Phi Theta Kappa Honor Society
International while attending Illinois Central College. This
accomplishment means that I am within the top 10% of
student GPA here at ICC. I can not wait to see where this new
road leads me and what new connections I make along the
way! I am proud to be an ICC Cougar and I am proud to be Phi
Theta Kappa!



 · 6/6/22

Hair Boss just came in from my morning jog and look what's delivered?

It's official @PHITHETAKAPPA

I'm **top 10%** on campus, had no clue

That's how I work

Yeah my businesses being profitable is a blessing

But this knowledge will be forever ΦΘΚ 

Black nerds let's go!





· 3rd+
Fashion Business Management student at FIT
3mo · 🌐

+ Follow    ⋯

Thrilled and honored to be recognized by the Phi Theta Kappa Society International as one of the top 10% students at the Fashion Institute of Technology.

This makes me grateful and more inspired to look towards the future of my career and work harder!



Signed by PTK CEO, Lynn Tincher-Ladner.

👍 7

Employee negative reviews of Phi Theta Kappa & Lynn Tincher-Ladner, highlighting organizational issues.

Case 3:23-cv-00109-CWR-RPM    Document 398-1    Filed 01/23/25    Page 56 of 73



"Unethical Practices" 2015



"Unethical"
"Lynn is just as bad"
2017



1.0 ★☆☆☆☆ ∨                                                     Apr 5, 2017 •••

**Evil Place**

👤 Anonymous Employee
    Former Employee, more than 1 year    ⊙ Jackson, MS

✘ Recommend    ○ CEO Approval    ✘ Business Outlook

**Pros**
The vacation/sick – accruing time; the use of travel days. Some travel opportunity.

**Cons**
Just a terrible, terrible, place to work. Evil is the best way to describe it. So many good people get eaten by the folks at the top, who are under pressure to make sure their 6 figure salaries keep coming in. When I was there, I got the sense that the mission of the organization had previously been held in high regard, but now the organization exists to make the people at the top wealthy, all of which could care less about CC students. Very sad.

**Advice to Management**
The board should clean house and start over. There's way too many self-seeking individuals at the top with no moral compass whatsoever. I would be very surprised if this organization makes it another 5 years. If the public knew the truth, it would not.

🦊 9

👍 Helpful    ➦ Share

"Terrible place to work"
"Evil"
"No Moral Compass"
2017



1.0 ★☆☆☆☆ ∨                                                     May 13, 2024 •••

**toxic workplace**

👤 Administrative Assistant
    Former Employee, more than 8 years

✘ Recommend    ✘ CEO Approval    ✘ Business Outlook

**Pros**
Good benefits and decent wages.

**Cons**
Toxic upper leadership, unethical practices.

👍 Helpful    ➦ Share

"Toxic upper leadership"
"Unethical practices"
2024

# EXHIBIT A-3



**From:** Pattie Van Atter <pattie.vanatter@ptk.org>
**Date:** January 20, 2025 at 7:41:23 PM CST
**To:** Lynn Tincher-Ladner <lynn.tincher-ladner@ptk.org>
**Subject: Fw: Petition being sent to school emails**


Lynn- FYI


**Pattie Van Atter (she/her)**
**Senior Director of Engagement, Division I**
Phi Theta Kappa Honor Society
International Headquarters
<u>1625 Eastover Drive</u>

<u>Jackson, MS 39211</u>
P <u>(601) 987-5631</u>
<u>www.ptk.org</u>

---

**From:** Alyssa DeFlorentis <alyssa.deflorentis@ptk.org>
**Sent:** Monday, January 20, 2025 8:16 PM
**To:** Jennifer Stanford <jennifer.stanford@ptk.org>
**Cc:** Dr. Samantha Levy <samantha.levy@ptk.org>; Pattie Van Atter <pattie.vanatter@ptk.org>
**Subject:** Petition being sent to school emails

Hello,

Just received the attached screenshots from Kaylee Felix, Chapter President of the Alpha Delta Chi chapter at River Valley Community College in New Hampshire. It was sent directly to her school email.

Looks like a former IO is organizing it? Wasn't sure who to send this to exactly but figured you could help.

Best,
*Alyssa*

<u>Powering Up April 3 in Kansas City, MO</u>
**Alyssa DeFlorentis (she/her)**
Division I International Vice President
Phi Theta Kappa Honor Society
<u>ptk.org</u>



hi, quick question about community college

AT    **And Then She Spoke Up HQ**
      andthenshespokeuphq@gmail.com

To: **And Then She Spoke Up HQ**
    andthenshespokeuphq@gmail.com
    Monday, January 20, 8:06 PM

[External Message]

Hi,

Quick question—would you take a moment to sign my petition to reform PTK? Here's the link: https://chng.it/NZLmWYF5pm

I'm Toni, a PTK member and former



I'm Toni, a PTK member and former international officer. I'm working to address serious issues like PTK's false claims like sometimes telling over half of the campus they're in the "Top 10%" at their campus and misleading scholarships that aren't actually PTK member exclusive, which mislead students into paying membership fees under false pretenses.

It only takes a moment, and your support could help make a real difference. Please share with friends and your social network to get the word out.
Let me know if you have any questions—I'd be happy to chat!

Once again, here's the PTK Petition for Change: https://chng.it/NZLmWYF5pm

Thanks a ton!
Toni



students into paying membership fees under false pretenses.

It only takes a moment, and your support could help make a real difference. Please share with friends and your social network to get the word out.
Let me know if you have any questions—I'd be happy to chat!

Once again, here's the PTK Petition for Change: https://chng.it/NZLmWYF5pm

Thanks a ton!
Toni

--
Toni Marek
andthenshespokeup.com
PS: Just to be clear—I don't work for PTK. I'm looking to reform the glaring issues.

# EXHIBIT A-4



| | |
|---|---|
| Document title: | Petition · Stand Up for Students! Stop Misleading Students & Toxic Bullying by Phi Theta Kappa HQ - United States · Change.org |
| Capture URL: | https://www.change.org/p/stand-up-for-students-stop-misleading-students-toxic-bullying-by-phi-theta-kappa-hq?recruiter=1362756187&recruited_by_id=0b2fd650-d37a-11ef-ab28-4391e3a54f36&utm_source=share_petition&utm_campaign=psf_combo_share_message&utm_term=take_next_step&utm_medium=email |
| Page loaded at (UTC): | Tue, 21 Jan 2025 14:11:20 GMT |
| Capture timestamp (UTC): | Tue, 21 Jan 2025 14:11:48 GMT |
| Capture tool: | 10.55.0 |
| Collection server IP: | 54.145.42.72 |
| Browser engine: | Mozilla/5.0 (X11; Linux x86_64) AppleWebKit/537.36 (KHTML, like Gecko) Chrome/126.0.6478.234 Safari/537.36 |
| Operating system: | Linux (Node 20.17.0) |
| PDF length: | 9 |
| Capture ID: | quMWfD5v8pjrNbosFTfvRA |
| Display Name: | RSmoot |

# Stand Up for Students! Stop Misleading Students & Toxic Bullying by Phi Theta Kappa HQ



**Recent signers**

Irene Jimenez • 7 hours ago    Ana Chaiser • 11 hours ago    ALGE GALE R. SILORIO • 1 day ago    jela toquero

## The Issue

*I am a victim of Phi Theta Kappa.* So are ex-PTK employees Wendy, Jesse and Rebekah who have added their personal stories of Phi Theta Kappa in the comments section of this page. So are the others who are afraid to put their name in public for fear of retaliation. And so are approximately one million students a year who receive misleading solicitations about scholarships and being in the "Top 10%" at their school. During our time with PTK, we have experienced a toxic blend of misleading practices and relentless bullying. This petition aims to bring these detrimental actions to light, in hopes of preventing further victimization of others.

We need to hold PTK leadership accountable for their actions to prevent more students and employees from experiencing what we have had to endure. By signing this petition, you support the stance that it's time to say no more to misleading practices and bullying in PTK and stand up for the rights of all students. Please, sign this petition.

🚨 Stop PTK's Misleading Promises NOW 🚨

Phi Theta Kappa (PTK) markets itself as offering life-changing opportunities, but its promises don't always hold up. Were you told you're in the "Top 10%" or that "the average member gets $2,500 a year"? Many students and families are finding these claims to be questionable at best.

Students, especially those from vulnerable backgrounds, are often drawn into PTK, believing they've earned elite recognition or access to exclusive scholarships. The reality? These claims seem exaggerated or unfounded, leaving students and families paying membership fees based on misleading information.

Don't let, in my opinion, deceptive practices go unchallenged. Demand accountability, transparency, and integrity from PTK. It's time to protect students, restore trust, and fight for what's right.

---

### Sign this petition

**205** ✔
Verified signatures ⌄

**First name**

**Last name**

**Email**

**City**

**Country**
United States ▾

**State**
▾

**Zip code**

☑ Display my name and comment on this petition

🖊 **Sign petition**

By signing, you accept Change.org's **Terms of Service** and **Privacy Policy**, and agree to receive occasional emails about campaigns on Change.org. You can unsubscribe at any time.

Students, especially those from vulnerable backgrounds, are often drawn into PTK, believing they've earned elite recognition or access to exclusive scholarships. The reality? These claims seem exaggerated or unfounded, leaving students and families paying membership fees based on misleading information.

Don't let, in my opinion, deceptive practices go unchallenged. Demand accountability, transparency, and integrity from PTK. It's time to protect students, restore trust, and fight for what's right.

🚨 Here's why you should care and demand accountability:

**1️⃣ The "Top 10%" Lie Concerns**

- PTK claims to recognize the "Top 10%" of students, but public records suggest this isn't true —often over 30%, sometimes as high as 60+% of students on campus are invited. These misleading claims encourage students to pay for a distinction that doesn't exist, costing students and their families millions annually.

**2️⃣ Misleading Scholarship Claims**

- PTK promises "$246 million in member-only scholarships" and that "the average member gets $2,500 a year." Many of these scholarships are publicly available to all students, and the true "average member" median exclusive PTK scholarship benefit is perhaps closer to zero, leaving students and families disappointed and misled.

**3️⃣ Gross Financial Mismanagement**

- PTK's net income plummeted by $5.6 million from 2021 to 2023, dropping from a $4.7 million surplus to a $900,000 deficit. 2024 was likely much worse.

**4️⃣ Ballooning CEO Salary and Nepotism Concerns**

- During this financial decline, ***CEO Lynn Tincher-Ladner's salary skyrocketed by 49% over two years***, from $259,674 in 2021 to $386,564 in 2023. No other key employee received a substantial raise during this period. Today, in 2025, Tincher-Ladner's salary is likely still larger.
- Tincher-Ladner's spouse holds a senior position within PTK Foundation (though paid by PTK), creating a perception of conflicts of interest and raising genuine questions about resource allocation, governance and private inurement.

**5️⃣ Toxic Workplace and Flawed Governance**

- Former employees report intimidation, bullying, and a lack of accountability under current leadership (as corroborated in the comments section below).

🌟 *Demand Change Now!*
PTK was founded to celebrate academic excellence, but these issues and this leadership have tarnished PTK's legacy. Vulnerable students, many from financially challenged backgrounds, are being let down by unclear and misleading practices.

**What You Can Do:**
✌️ *Sign the Petition:* Demand reform, accountability, and transparency at PTK headquarters.
✌️ *Spread the Word:* Share this petition on social media and with friends!
✌️ *Share Your Thoughts:* Post comments and videos to this petition when signing. Email
**andthenshespokeup@gmail.com** if you've been affected by PTK's practices.

*See the Issue for Yourself*

In our view, videos like the one below illustrate the emotional manipulation caused by this false narrative. Watch below to see firsthand how PTK's misleading claims may exploit emotions and break trust:



T  Emotionally Manipulative Phi Theta Kappa TikTok Top 10% False Advertising & Gir...            Share

In our view, videos like the one below illustrate the emotional manipulation caused by this false narrative. Watch below to see firsthand how PTK's misleading claims may exploit emotions and break trust:

Case 3:22-cv-00208-CWR-RPM    Document 398-1    Filed 01/23/25    Page 68 of 73



**Public Records Expose the Truth**

Below is clear evidence showing the extent of Phi Theta Kappa's misleading practices. Public records from Grayson College, where *PTK Board Member Mary Linder* works, reveal that ***39% of students*** at the campus were deemed eligible for PTK membership under the claim that they were in the "Top 10%."

Mary Linder and the rest of the Phi Theta Kappa Board of Directors have a fiduciary duty to serve and protect the students at their campus and nationwide--not to be complicit of, in my opinion, failing to address concerns that may be harming students.

This data, provided in response to a Freedom of Information Act (FOIA) request, makes it clear: PTK's "Top 10%" distinction is misleading. If nearly 40% of students are invited under the guise of "Top 10%" exclusivity, the claim becomes mathematically impossible, or otherwise what I would describe as **false advertising!**

---

**Re: FOIA Request Regarding PTK Eligibility Standards at this Campus**

Anna Hicks <hicksa@grayson.edu>                                    Tue, Jan 7, 2025 at 2:11 PM
To: andthenshespokeup@gmail.com

Good afternoon! My email sent before I was ready. I'm sure it was an error on my part! I am sorry. Below is the

completed questionnaire for Grayson College:

**Questionnaire**
Please use all data for the past 4 years (2020-2024 academic years).
*Request past 4 years was used for data.*

**Name of the school represented:**
*Answer:* Grayson College

**What GPA corresponds to the Top 10% of students at this campus?**
*Answer:* 3.91

**Phi Theta Kappa (PTK) Eligibility GPA at this school:**

---

Document title: Petition · Stand Up for Students! Stop Misleading Students &amp; Toxic Bullying by Phi Theta Kappa HQ - United States · Change.org
Capture URL: https://www.change.org/p/stand-up-for-students-stop-misleading-students-toxic-bullying-by-phi-theta-kappa-hq?…
Capture timestamp (UTC): Tue, 21 Jan 2025 14:11:48 GMT

Case 3:22-cv-00208-CWR-RPM Document 398-1 Filed 01/23/25 Page 69 of 73

Answer: *Grayson* Case.

**What GPA corresponds to the Top 10% of students at this campus?**

*Answer: 3.91*

**Phi Theta Kappa (PTK) Eligibility GPA at this school:**

*Answer:* until mid spring of 2023, GPA was 3.5, in spring semester 2023, members voted to lower the GPA to 3.25 where it still stands today

**Percentage of students meeting the PTK GPA threshold at this campus:**

*Answer: 39%*

**Percentage of students meeting a 3.0+ GPA PTK Bylaws threshold:**

*Answer: 61%*

This is just one example of how Phi Theta Kappa HQ has led astray the trust of its members, students, and institutions for years. Recent statements and explanations from PTK fail to adequately address longstanding concerns about the 'Top 10%' issue and scholarship claims. Their recently published glossy PDF explanations are, in my opinion, attempts to sweep their questionable advertising practices under the rug, rather than providing meaningful accountability or transparency after being exposed in recent months. It's time for PTK to face the facts, address concerns about transparency and acknowledge longstanding issues and restore integrity to its mission. ***Sign the petition to demand accountability and comprehensive leadership reform at PTK.***

*Emails of Misleading Invitations to Join*



| | |
|---|---|
| **From:** | Phi Theta Kappa Honor Society <member.services@ptk.org> |
| **Sent:** | Friday, March 22, 2024 1:13 PM |
| **To:** | |
| **Subject:** | Build the Future You Want with Phi Theta Kappa |

| | |
|---|---|
| **From:** | Phi Theta Kappa Honor Society <member.services@ptk.org> |
| **Sent:** | Tuesday, February 27, 2024 12:00 PM |
| **To:** | |
| **Subject:** | Invitation from Phi Theta Kappa® |

Document title: Petition · Stand Up for Students! Stop Misleading Students &amp; Toxic Bullying by Phi Theta Kappa HQ - United States · Change.org
Capture URL: https://www.change.org/p/stand-up-for-students-stop-misleading-students-toxic-bullying-by-phi-theta-kappa-hq?…
Capture timestamp (UTC): Tue, 21 Jan 2025 14:11:48 GMT
Page 4 of 8

<table>
<tr><td>From:</td><td></td></tr>
<tr><td>Sent:</td><td>Tuesday, February 27, 2024 12:00 PM</td></tr>
<tr><td>To:</td><td></td></tr>
<tr><td>Subject:</td><td>Invitation from Phi Theta Kappa®</td></tr>
</table>



## PHI THETA KAPPA
### HONOR SOCIETY

████, you did it!

### You've earned an invitation to become a member of Phi Theta Kappa Honor Society.

You're doing great work at Cuyamaca College — so great, that ==you're in the top 10% of students on your campus.== We'd like to officially invite you to become a member of the Alpha Pi Omicron Chapter of Phi Theta Kappa Honor Society.

Since our founding in 1918, we've connected standout students like you with scholarships, mentors, and the resources they need to build the futures they want. We've inducted more than 3.8 million members and have nearly 1,300 chapters in 11 nations.

### The Benefits of Membership are Unmatched

You'll have access to ==$246 million in member-only transfer scholarships== and over $1.5 million in PTK-funded scholarships to help you complete your degree or cover career-related certification fees. ==The average member gets $2,500 a year.==

- **"You're in the top 10% of students on your campus,"**
- **"$246 million in member-only transfer scholarships,"**
- and **"The average member gets $2,500 a year"**

Misleading claims like those in the email campaign above cause significant harm to students, families, and the broader educational system.

*Need for Accountability*
**Current leadership must be held accountable for misleading millions of students over the past few years.** Claims about membership benefits and eligibility must be accurate, clearly explained, and supported by evidence. Misleading communications harm trust in PTK's practices and its ability to support students effectively. It is crucial for Phi Theta Kappa to be truthful and uphold the highest standards of transparency and ethics to truly support the students they serve. Demand accountability now by signing this petition!

Disclaimer: *This petition reflects the good faith opinions of the petitioner and contributors, and is not endorsed by Phi Theta Kappa headquarters. The views and experiences shared are those of the petitioner and contributors, aimed at fostering transparency, accountability, and reform.*

 Report a policy violation

Decision Makers: Dan Phelan +5

 **Toni Marek**
Petition Starter



**Toni Marek**
Petition Starter

| **Media inquiries** |
|:---:|

## The Decision Makers



**Dan Phelan**
PTK Board Member, Jackson College President

☹ No response



**Mary Linder**
PTK Board Member, Grayson College

☹ No response



**Michael Odu**
PTK Board Member, San Diego Miramar College

☹ No response

| **View 3 more** |
|:---:|

## The Supporters

### Featured Comments



**Jessie**, Florence
6 days ago

*"As a former member and employee of PTK, I've seen first hand how the leadership and management of this organization has taken from students. I was promised a scholarship that was taken from me, without any explanation or confirmation. I simply waited for a scholarship I never received. When I emailed the person who promised the scholarship (along with their department & Lynn Tincher-Ladner herself), I never received a response. 2 weeks later, I got a call and was told the person who promised the scholarship was conveniently no longer employed and I would not be receiving my scholarship, despite needing that money*

**Show full text**

♡ 6 likes   ·   ⚑ Report



**Wendy**, Ocala
7 days ago

*"As a former Phi Theta Kappa employee for over 25 years, I support this movement to save PTK from itself because the organization I once cared deeply about has been overshadowed by serious leadership issues.*



**Wendy**, Ocala
7 days ago

*"As a former Phi Theta Kappa employee for over 25 years, I support this movement to save PTK from itself because the organization I once cared deeply about has been overshadowed by serious leadership issues. During my time at PTK I witnessed a toxic workplace environment. In my opinion, the organization's toxic leadership has fostered a culture of bullying and unprofessional behavior. Employees were cursed at, publicly humiliated and retaliated against, leaving many, including myself with PTSD years later. I walked away without notice because I could no longer endure the abusive environment. The current leadership's*

**Show full text**

♡ 6 likes · ⚐ Report

---



**Rebekah**, Pearl
4 days ago

*"As a former employee, I can say without hesitation that Lynn Tincher-Ladner is a problem at Phi Theta Kappa. Her leadership has turned what could be an incredible organization into a frustrating, broken system that prioritizes her own interests over PTK's mission of academic excellence. I first encountered PTK as a member at a local Community College, where I was told I was in the "Top 10%" of my class. At the time, I was proud of that distinction, but looking back, I realize I likely wasn't in the Top 10% at all. It feels incredibly deceiving to have been misled like that, especially when I thought I was being genuinely*

**Show full text**

♡ 4 likes · ⚐ Report

**View all comments**

---

Support Change — **Become a Member Today**

Not beholden to politics or power brokers, Change.org is free for people everywhere to make change. Every day there are real victories for issues you care about, only possible because we are 100% funded by everyday people like you.

**Will you stand with us to protect the power of everyday people to make a difference?**

| $4 | $6 | $11 |

| $21 | Other |

**Support Change.org**

Pay with credit card or 

---

## Petition updates

---

## Share this petition



Share this petition in person or use the QR code for your own material.

**Download QR Code**

🟦 **Share on Facebook**

🟢 **Send via WhatsApp**

🐦 **Tweet to followers**

---

Support Change — **Become a Member Today**

Not beholden to politics or power brokers, Change.org is free for people everywhere to make change. Every day there are real victories for issues you care about, only possible because we are 100% funded by everyday people like you.

**Will you stand with us to protect the power of everyday people to make a difference?**

| $4 | $6 | $11 |

| $21 | Other |

**Support Change.org**

Pay with credit card or **P**ay**Pal**

## Petition updates

| 100 supporters | 5 days ago |
| Toni Marek started this petition | 2 weeks ago |

## Share this petition

Share this petition in person or use the QR code for your own material.

**Download QR Code**

**f** Share on Facebook

**🟢** Send via WhatsApp

**🐦** Tweet to followers

**🔗** Copy link

**✉** Send via email

Petition created on January 9, 2025

Change.org  ›  fraud  ›

**Stand Up for Students! Stop Misleading Students & Toxic Bullying by Phi Theta Kappa HQ**

## Trending petitions

## Victorious Petitions

## Newly created petitions