IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

| | |
|---|---|
| **PHI THETA KAPPA HONOR SOCIETY,** | |
| *Plaintiff / Counter-Defendant*, | |
| v. | CAUSE NO. 3:22-CV-208-CWR-RPM |
| **HONORSOCIETY.ORG, INC., ET AL.,** | |
| *Defendants/ Counter-Plaintiffs*, | |
| v. | |
| **DR. LYNN TINCHER-LADNER,** | |
| *Third-Party Defendant.* | |

**ORDER**

Before the Court is Phi Theta Kappa Honor Society ("PTK") and Dr. Lynn Tincher-Ladner's motion to dismiss. Docket No. 375. Also before the Court is HonorSociety.Org, Inc. and Honor Society Foundation's (together "Honor Society") motion to continue the trial. Docket No. 481. Upon review, the motion to dismiss will be granted in part and the motion to continue will be denied.

**I.    Factual and Procedural History**

For over a year now, PTK and its CEO, Dr. Lynn Tincher-Lander, have accused Honor Society and its CEO, Michael Moradian, of engaging in a smear campaign designed to harm PTK's business. Honor Society and Moradian have steadfastly denied the allegations–maintaining innocence and shifting blame in attempt to justify their actions.

In March 2024, the Court issued a narrow Preliminary Injunction after finding that Honor Society was engaging with PTK's members and collegiate partners in misleading ways. Docket No. 130. Because PTK was substantially likely to prevail on its tortious interference with contractual relations claim, the Court enjoined Honor Society from sending six specific survey questions to PTK's members and from submitting the public records at issue to PTK's collegiate partners.

Less than four months later, in July 2024, the Court held a two-day evidentiary hearing to discuss Honor Society's ensuing conduct. Honor Society had turned much of the misleading content of the six previously-enjoined survey questions into thousands of webpages. Instead of sending them to PTK members and partners, it changed the questions into statements and published them on the Internet for all to see. Finding that Honor Society's online behavior revealed a deliberate attempt to deceive the public, the Court issued a second Preliminary Injunction to enjoin it from making false representations about PTK. Docket No. 230.

Within two months, the Court was asked to intervene once again. Honor Society had failed to abide by the second Preliminary Injunction in several respects, so the Court held Honor Society in civil contempt, imposed a per diem sanction for each day it remained in non-compliance, and awarded PTK its attorney's fees expended in bringing the issue to the Court's attention. Docket No. 366.

Yet again, PTK and Dr. Tincher-Lander have called "foul" and asked the Court to referee. This time, they accuse Moradian of contumacious conduct, including perjury and intentional concealment of evidence. They say that "the ultimate sanction is warranted," and

ask the Court to dismiss Honor Society's counterclaims and third-party claims with prejudice and find Honor Society in default of PTK's claims. Docket No. 405-3 at 3.

Honor Society has denied the allegations. Its arguments are addressed below.

## II.     Motion to Dismiss

### A.     Legal Standard

"[A] district court may invoke its inherent power to dismiss claims with prejudice in order to protect the integrity of the judicial process." *Ben E. Keith Co. v. Dining All., Inc.*, 80 F.4th 695, 702 (5th Cir. 2023) (quotation marks omitted). This "extreme sanction" is appropriate "only if: (1) there is a clear record of delay or contumacious conduct . . . and (2) lesser sanctions would not serve the best interests of justice." *Brown v. Oil States Skagit Smatco*, 664 F.3d 71, 77 (5th Cir. 2011) (quotation marks omitted).

"[I]t is not a party's negligence—regardless of how careless, inconsiderate, or understandably exasperating—that makes conduct contumacious; instead, it is the stubborn resistance to authority which justifies a dismissal with prejudice." *McNeal v. Papasan*, 842 F.2d 787, 792 (5th Cir. 1988) (quotation marks omitted).

### B.     Discussion

Among other things, PTK is suing Honor Society for tortious interference with contractual relations. Malice is an essential element of that claim. *See Neider v. Franklin*, 844 So. 2d 433, 437 (Miss. 2003). So when Moradian created thousands of webpages containing false information about PTK and edited PTK's Wikipedia page with misleading details, it was expected that PTK would question his underlying motive and intent.

Moradian repeatedly denied that he acted with malice and claimed he had no bias against PTK and Dr. Tincher-Ladner. At the July hearing, when explicitly asked if he

3

"want[ed] Dr. Tincher-Lander fired," Moradian claimed that he didn't. Docket No. 229 at 64. "That is not my intention. It's never been my intention," he said. *Id.* At his deposition in October, he said: "I'm trying my best here to open to doors to Dr. Lynn-Tincher-Ladner to help her and to help all of us move forward." Docket No. 375-1 at 263. In other words, Moradian claimed that he had no ill will. He made these statements under oath.

But in June, when "Mr. Smiley," a former PTK employee, texted Moradian: "I hope your team is able to get Lynn out of her position," Moradian responded: "*We can and must together*! For the sake of students and PTK itself. Our story alone is not enough. *Everyone has to tell their story so it's clear it's a pattern of abuse by her.*" Docket No. 404-1 at 10 (emphasis added). This wasn't a careless slip of the tongue—it was an endorsement of his intention to remove Dr. Tincher-Lander from her position.[1] It indicates that Moradian was not truthful. He perjured himself in July 2024 and then again in October 2024.

Honor Society concealed the messages between Moradian and Mr. Smiley. PTK did not learn about their conversation until after Paige Rakestraw, a former PTK employee, contacted Dr. Tincher-Ladner about a text message she received from Wendy Flores, another former PTK employee. Docket 405-3 at 3. In her message, Flores said: "This CEO, Mike, is out to destroy Lynn and remove her from her position." Docket 405-2 at 3. This prompted PTK's investigation. After getting the Magistrate Judge to intervene in December 2024, PTK learned that Moradian had "contacted as many as 24 former and current PTK employees since May 2024." Docket No. 405-3 at 7. These communications took the form of text messages, LinkedIn

---

[1] PTK also claims that at the time, "Mr. Smiley" was a current PTK employee "actively working with Moradian" to provide him with "private student communications" and other "PTK-documents that were not produced based on PTK's prior objections to written discovery requests." Docket No. 405-3 at n.5, n.13; *see* Docket No. 409 at 9. Honor Society appears to concede this point by not addressing it in its response.

4

conversations, and emails to or from Moradian's personal email and PTKLawsuit@gmail.com. *Id.* at 12. The problem is that these communications were responsive to a discovery request PTK had sent in April 2023. Honor Society had not produced them.

This is not the first time Honor Society has tried to hide relevant information.[2] PTK contends that the newly-discovered evidence proves that Moradian's sworn statements were all lies. It maintains that these secret communications reveal that "Honor Society has been following a mission apart from this case with a single goal in mind: using this lawsuit to destroy Dr. Tincher-Ladner and PTK." *Id.* at 2.

In its defense, Honor Society contends that "[r]ead in context and in full, all of the statements PTK identifies as 'lies' are instead truthful statements that Mr. Moradian is engaged in litigation, wants to win, but has nothing personal against Dr. Tincher-Ladner." Docket No. 404-1 at 10. It claims that Moradian's statements are "at worst, unwisely-chosen words." *Id.* at 11. But there is nothing "unwisely-chosen" about Moradian's response to Mr. Smiley. Certainly, concealing these post-May 2024 communications was a deliberate attempt to hide the truth.

Most of the communications at issue "range from May-November 2024, with the bulk occurring in May, June, and July." Docket No. 409 at 8 (emphasis removed). Honor Society did not supplement its discovery responses with them and did not provide them to PTK until the Magistrate Judge ordered it to do so.

---

[2] In ruling on Honor Society's request to compel the Zendesk records, the Magistrate Judge noted that "PTK only sought to compel . . . [the] Zendesk records after it discovered those records existed, despite Honor Society's representation [that] the records did not exist." Docket No. 390 at 10.

5

Moradian assured the people he spoke with that their conversations would be kept secret. In one conversation he said: "Calls are best because they're not documented in any way. . . . [I]f we speak it's just me and you and no one can ever know what we say. I will vigorously defend all communications to the max . . . ." Docket No. 405-1 at 22. And in another, he said: "These are all off the record convos . . . I won't be quoting you *or sharing the things you said*." *Id.* at 25; Docket No. 405-3 at 13 (emphasis added). That at least was his intent.

The Court finds that Moradian's concealment of relevant evidence "amounts to a pattern of calculated evasion." *Univ. of Mississippi Med. Ctr. v. Sullivan*, No. 3:19-CV-459-CWR-LGI, 2021 WL 4713242, at *4 (S.D. Miss. Oct. 8, 2021). "The record cannot support any explanation for [Honor Society's] misrepresentations other than a desire to conceal the truth." *Taylor v. Consol. Pipe & Supply Co.*, No. 3:15-CV-585-CWR-FKB, 2017 WL 3090317, at *2 (S.D. Miss. July 20, 2017).

Perjury, alone, is enough to warrant dismissing a party's claims with prejudice. *See Brown*, 664 F.3d at 78. Here, Moradian not only perjured himself, but he concealed relevant evidence again, which on this record, alone warrants dismissal. Combined, there is no other option for the Court.

Honor Society and its CEO have "willfully abused the judicial process based on the *totality* of its litigation misconduct." *Ben E. Keith*, 80 F.4th at 702 (emphasis in original). The conduct that led to the First Preliminary Injunction, Second Preliminary Injunction, and finding of civil contempt "already demonstrated a disregard for honesty and transparency, [which] makes the current allegations of [perjury] and concealment appear far more

6

credible." *Snider v. L-3 Commc'ns Vertex Aerospace, LLC*, No. 3:09-CV-704-HTW-LRA, 2016 WL 3648281, at *14 (S.D. Miss. Mar. 15, 2016).

The Court has considered a range of sanctions, from additional warnings to fines and attorney's fees. It concludes that the appropriate sanction for the pattern of misconduct here is the dismissal of Honor Society's counterclaims and third-party claims with prejudice. At this stage, "less onerous sanctions would not [adequately] address [the repeated and] offensive conduct." *Ben E. Keith*, 80 F.4th at 703. This is the kind of "stubborn resistance to authority which justifies a dismissal with prejudice." *McNeal*, 842 F.2d at 792 (quotation marks omitted). At the same time, the Court believes that granting PTK a default judgment on its own affirmative claims would go too far. It must seek to establish them through evidence and argument at trial. A jury will decide whether PTK has brought meritorious claims.

Accordingly, PTK's motion to dismiss is granted in part and denied in part.

### III.     Motion to Continue

Honor Society has asked the Court to continue the trial. PTK and Dr. Tincher-Ladner oppose the request.

####     A.     Legal Standard

A scheduling order "may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). "To show good cause, the party seeking to modify the scheduling order has the burden of showing that the deadlines cannot reasonably be met despite the diligence of the party needing the extension." *Squyres v. Heico Companies*, 782 F.3d 224, 237 (5th Cir. 2015) (quotation marks omitted). Courts consider: "(1) the explanation for the failure to timely [comply with the scheduling order]; (2) the importance of the

7

[modification]; (3) potential prejudice in allowing the [modification]; and (4) the availability of a continuance to cure such prejudice." *Id.* (quotation marks omitted).

### B. Discussion

This matter was originally filed on April 20, 2022, nearly three years ago. "Since then, the case schedule has been amended [four] times." Docket No. 164 at 1. The current Scheduling Order has been in place since May 7, 2024, and despite the parties' many skirmishes, the Order has not been modified. Seeing no good cause, the Court will deny the motion to continue. *See Cindy IDOM v. Natchez-Adams Sch. Dist.*, No. 5:14-CV-38-DCB-MTP, 2015 WL 11017954, at *2 (S.D. Miss. Aug. 13, 2015).

The Court reminds the parties what it said nearly a year ago: "As I tell all parties in every case, criminal or civil, every step of the process is another opportunity for the parties to seek resolution. Every step of the process is another opportunity." Docket No. 135 at 152 (cleaned up).

This is another opportunity.

## IV. Conclusion

The motion to dismiss is granted in part and the motion to continue is denied. Any arguments not addressed in this Order would not have impacted the Court's decision. The motions at Docket Nos. 406, 407, 425, 428, and 430 are denied as moot. The pretrial conference and trial will proceed as scheduled—on May 2 and June 2, 2025, respectively.

**SO ORDERED**, this the 25th day of March, 2025.

                                              s/ Carlton W. Reeves
                                              UNITED STATES DISTRICT JUDGE