## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF MISSISSIPPI
## NORTHERN DIVISION

| | |
|---|---|
| PHI THETA KAPPA HONOR SOCIETY, | Civil Action No. 3:22-cv-00208-CWR-RPM |
|     Plaintiff/Counter-Defendant, | |
| v. | |
| HONORSOCIETY.ORG INC., | |
|     Defendant/Counter-Plaintiff | |
| HONOR SOCIETY FOUNDATION, INC., | |
|     Defendant. | |
| HONORSOCIETY.ORG INC., | |
|     Defendant/Counter-Plaintiff/Third-Party Plaintiff | |
| v. | |
| LYNN TINCHER-LADNER, | |
|     Third-Party Defendant. | |

**HONORSOCIETY.ORG INC. AND HONOR SOCIETY FOUNDATION, INC.'S MEMORANDUM IN SUPPORT OF MOTION FOR RECONSIDERATION OF ORDER GRANTING MOTION TO DISMISS (DKT. NO. 514)**

## Table of Contents

Introduction................................................................................................................ 1

Facts ......................................................................................................................... 1

    A.   The Court issued two preliminary-injunction orders.......................................1

    B.   The Court found HonorSociety violated the Second Preliminary Injunction based on font size of the disclaimer, the titles of two articles remaining on its website, and the appearance of an authentic image of Risley and Tincher-Ladner together............................................................................................ 4

    C.   The Contempt Order imposed compensatory sanctions in the form of an attorney fee award to PTK and coercive sanctions in the form of a $1,000 per day fine for violations starting the day after the order was entered. ...........................5

    D.   Moradian testified that it is not his intention to have Tincher-Ladner fired and that a text message he sent did not negate this intention................................5

    E.   HonorSociety violated no Court orders in producing communications with former PTK employees in December 2024. ...................................................6

Argument ................................................................................................................. 6

    A.   Moradian's testimony and text message to Mr. Smiley, if anything, creates a credibility issue. ...........................................................................................7

    B.   The record does not support a finding that HonorSociety concealed evidence. ........10

    C.   The conduct leading to the Court's injunctions and contempt finding was not contumacious—and cannot serve as the basis for imposing sanctions now that the Second Preliminary Injunction has been vacated as unconstitutional—and did not demonstrate a disregard for honesty and transparency. ...............................12

    D.   The Court failed to adequately consider or employ lesser sanctions..........................13

Conclusion................................................................................................................14

# Table of Authorities

**Cases**

*Austin v. Kroger Tex. L.P.*,
     864 F.3d 326 (5th Cir. 2017) ........................................................................... 6

*Ben E. Keith Co. v. Dining All., Inc.*,
     80 F.4th 695 (5th Cir. 2023) ..........................................................................15

*Brown v. Oil States Skagit Smatco*,
     664 F.3d 71 (5th Cir. 2011) ....................................................... 1, 8, 9, 12

*Deliefde v. Nixon*,
     No. 19-CV-226-DPJ-FKB, 2021 U.S. Dist. LEXIS 172982 (S.D. Miss. Sep. 13, 2021) .......... 9

*ITT Cmty. Dev. Corp. v. Barton*,
     569 F.2d 1351 (5th Cir. 1978) ....................................................................5, 13

*James v. Antarctic Mech. Servs., Inc.*,
     No. 18-CV-678-CWR-FKB, 2020 U.S. Dist. LEXIS 274169 (S.D. Miss. Dec. 3, 2020) ......... 7

*Johnson v. Jones*,
     794 F. App'x 400 (5th Cir. 2019)............................................... 7, 12, 13, 14

*Koch v. Puckett*,
     907 F.2d 524 (5th Cir. 1990) .......................................................................... 8

*Kutzner v. Johnson*,
     242 F.3d 605 (5th Cir. 2001)........................................................................... 8

*Lavespere v. Niagara Mach. & Tool Works, Inc.*,
     910 F.2d 167 (5th Cir. 1990) ........................................................................... 7

*Lucero v. Wheels India, Ltd.*,
     No. 23-10494, 2023 U.S. App. LEXIS 32968 (5th Cir. Dec. 13, 2023) .................... 7

*Mayes v. Fedex Freight Inc.*,
     584 F. App'x 278 (5th Cir. 2014).................................................................13

*Nottingham v. Warden, Bill Clements Unit*,
     837 F.3d 438 (5th Cir. 2016) ..................................................................7, 14

*Phi Theta Kappa Honor Soc'y v. Honorsociety.Org., Inc.*,
     No. 24-60452, 2025 U.S. App. LEXIS 8090 (5th Cir. Apr. 7, 2025)........................ 5

*Rogers v. Medline Indus.*,
     No. 17cv118-HSO-JCG, 2018 U.S. Dist. LEXIS 213493 (S.D. Miss. Dec. 19, 2018).............. 9

*United States v. United Mine Workers*,
  330 U.S. 258 (1947) ................................................................................ 13, 14

*Webb v. Morella*,
  457 F. App'x 448 (5th Cir. 2012) .................................................................. 7

**Constitutional Provisions**

U.S. Const. amend. I ....................................................................................... 5

**Other Authorities**

Fed. R. Civ P. 41(b) ........................................................................... 1, 7, 14, 15

Fed. R. Civ P. 54(b) ........................................................................................ 6

## Introduction

In its March 25, 2025 Order, Docket No. 514, the Court dismissed HonorSociety's counterclaims with prejudice as a sanction under Rule 41(b). To impose the "extreme sanction" of dismissal with prejudice under the Court's inherent power, there must be a "clear record of delay or contumacious conduct." *Brown v. Oil States Skagit Smatco*, 664 F.3d 71, 77 (5th Cir. 2011). In its Motion to Dismiss, Docket No. 375, PTK threw a kitchen sink of allegations it claimed demonstrated HonorSociety's contumacious conduct. The Court agreed with two: (1) that Moradian perjured himself, and (2) that HonorSociety concealed evidence of this perjury. The Court found these two allegations "far more credible" because of HonorSociety's "conduct that led to the First Preliminary Injunction, Second Preliminary Injunction, and finding of civil contempt." Dkt. No. 514 at 6.

Justice requires the Court reconsider its Order for four reasons. First, the Court committed an error of law in finding Moradian perjured himself. Second, the record demonstrates that the alleged concealment of evidence was rather a garden-variety discovery dispute. Third, the conduct leading to the Court's injunctions and contempt finding was not contumacious—particularly given that the Second Preliminary Injunction has since been invalidated by the Fifth Circuit as unconstitutional—and does not otherwise support a finding of perjury or concealment. And fourth, the Court did not adequately consider lesser sanctions that would best serve the interests of justice.

## Facts

### A.    The Court issued two preliminary-injunction orders.

On March 28, 2024, the Court enjoined HonorSociety from sending six specific survey questions. Dkt. No. 130. HonorSociety complied with this injunction, as the Court later acknowledged: HonorSociety "was enjoined from using the six questions and has not used them since then." Dkt. No. 366 at 5. This Order also required HonorSociety to "[p]rovide PTK with reasonable advance notice should Honor Society desire to use similar but reworded questions in

future surveys" and make any "future PTK-related public records requests clear" they are coming from HonorSociety. Dkt. No. 130 at 6. This last point referred to HonorSociety sending the public-records requests from a personal email address and the alleged confusion from some colleges that the requests were coming from PTK. *Id.* at 4–5. While the Court noted this conduct might support PTK's tortious-interference claim, it did not find that HonorSociety's conduct "demonstrated a disregard for honesty and transparency" or "resistance to authority." *See* Dkt. No. 514 at 6–7.

On August 22, 2024, the Court issued a Second Preliminary Injunction enjoining five categories of HonorSociety's speech. Dkt. No. 230 at 26. One enjoined category required HonorSociety to remove "all false subject matter" from AI-generated articles regarding a PTK advisor's arrest without specifying what content was false. *Id.* at 26. The closest the Court came to identifying falsity was saying the article (1) made the advisor "appear as a PTK employee, when in fact PTK campus advisors are employees of community colleges," (2) states a news organization reported the stolen funds were meant for scholarships and educational services, when the news article cited in support "says no such thing," and (3) "attributes [the advisor's] conduct to PTK's leadership" when the funds she stole were "taxpayer funds, not PTK membership dues." *Id.* at 12–13. The Court made no finding that the title of this article was misleading and did not require HonorSociety to remove any allegedly "misleading" information from this article or its title. *See generally id.*

Another category enjoined in the Second Preliminary Injunction required HonorSociety to "[l]imit its reporting on the sexual harassment allegations against [PTK's former CEO Rod Risley] to existing media articles only, rather than articles of its own creation." *Id.* at 26. The Second Preliminary Injunction did not mention "images of Dr. Tincher-Ladner and Risley," find such images were misleading, or require HonorSociety to remove these images. *See generally id.* In fact, the Second Preliminary Injunction did not find that anything in the Risley articles was false

or misleading; it merely mentioned in passing that the article claims Risley "was allowed to take a 'golden parachute' retirement payment." *Id.* at 3.

The Second Preliminary Injunction also required HonorSociety put a disclaimer "in 12 point or larger size font" at the top of remaining articles and posts concerning or referencing this litigation. *Id.* at 26. It said nothing about the font size of the articles' other content.

HonorSociety immediately complied with the Second Preliminary Injunction. A day after it issued, HonorSociety applied the disclaimer to the articles it could, and removed those articles it could not immediately update until it could apply the disclaimer. Dkt. No. 260 at 2–3. For this disclaimer, HonorSociety selected "Font Size" 12 in its website design software. *Id.* at 3. HonorSociety also removed the articles concerning the PTK advisor and Risley but unbeknownst to it, the title of some of these articles still appeared on its website. *Id.* at 6–7. When PTK made HonorSociety aware of these remaining titles, it deleted the pages of those articles entirely so that there were no longer any articles or titles referencing the advisor or Risley. HonorSociety also took a host of steps to comply with the other requirements of the Second Preliminary Injunction. *Id.* at 2–4. HonorSociety estimates it spent around 20 hours complying with the Second Preliminary Injunction, the bulk of which took place in the days immediately following the injunction's issuance. *Id.* at 4.

Like the First Preliminary Injunction, the Order did not find that HonorSociety's conduct "demonstrated a disregard for … transparency" or "resistance to authority." *See* Dkt. No. 514 at 6–7. While the Court found "instances where Honor Society takes liberties with the truth" in its posts and articles, it did so in analyzing PTK's likelihood of success on the merits of its tortious interference with contractual relations claim. Dkt. No. 230 at 4–6, 11–17. The Court now characterizes the Second Preliminary Injunction as "[f]inding that Honor Society's online behavior revealed a deliberate attempt to deceive the public." Dkt. No. 514 at 2. But nothing in the Second Preliminary Injunction suggested HonorSociety was dishonest with the Court, would lie under oath, or was otherwise resistant to the Court's authority. Rather, the Court notes that

PTK did not even argue the conduct violated the First Preliminary Injunction's "narrow order." And while the Court described HonorSociety's conduct as turning "the content of the six previously-enjoined survey questions into thousands of webpages," this conduct only "approache[d] a violation of the First Preliminary Injunction." Dkt. No. 230 at 2–3.

**B.    The Court found HonorSociety violated the Second Preliminary Injunction based on font size of the disclaimer, the titles of two articles remaining on its website, and the appearance of an authentic image of Risley and Tincher-Ladner together.**

Seven days after the Second Preliminary Injunction issued, PTK filed a motion for contempt. Dkt. No. 242. On December 12, the Court granted that motion in part, finding HonorSociety failed to comply with the Second Preliminary Injunction in three ways. Dkt. No. 366. First, the Court found that HonorSociety's disclaimer was not compliant because it was "12 pixel font" rather than "12 point font," and that the other text in the article was larger. *Id.* at 13. Second, the titles of two articles—one concerning the sexual-harassment allegations against Risley titled "Phi Theta Kappa Sexual Harassment: Stunning Allegations Revisited" and the other concerning the PTK advisor's embezzlement arrest titled "Phi Theta Kappa Embezzlement: A Deep Dive into the Allegations"—were "misleading" and remained visible on HonorSociety's website. *Id.* at 14–15. Third, an authentic image of Tincher-Ladner and Risley taken from a publicly available video of an event they attended together that appeared in six articles was misleading. *Id.* at 15.

HonorSociety timely appealed the Second Preliminary Injunction. Dkt. No. 237. It also moved to stay it pending appeal to the Fifth Circuit, Dkt. No. 240, including on the grounds that the (1) Second Preliminary Injunction was an overbroad prior restraint that prohibited protected speech and was therefore unconstitutional, *see* Dkt. No. 241 at 16–23, and (2) that the required disclaimer was unconstitutional compelled speech, *see id.* at 23–27. The Court denied HonorSociety's motion to stay the Second Preliminary Injunction. Dkt. No. 286.

**C.    The Contempt Order imposed compensatory sanctions in the form of an attorney fee award to PTK and coercive sanctions in the form of a $1,000 per day fine for violations starting the day after the order was entered.**

The Contempt Order imposed both coercive and compensatory sanctions. First, the Contempt Order provided for a $1,000 daily fine for each day HonorSociety "remains non-compliant" with the Injunction, starting the day after the Contempt Order was entered, to coerce HonorSociety into compliance with the Injunction. Dkt. No. 366 at 16–17. Second, the Contempt Order provided sanctions compensating PTK for the "attorneys' fees it expended in connection" with bringing its contempt motion, subject to a 10% reduction, to be calculated by the Court and paid after trial. *Id.*

On April 7, 2025, the Fifth Circuit issued an order vacating the Injunction as unconstitutional. *Phi Theta Kappa Honor Soc'y v. Honorsociety.Org., Inc.*, No. 24-60452, 2025 U.S. App. LEXIS 8090 (5th Cir. Apr. 7, 2025). The Fifth Circuit held that the Injunction violated HonorSociety's First Amendment rights by imposing an overbroad prior restraint without justification and by impermissibly compelling HonorSociety's speech. *Id.* at 6–8. In doing so, the Fifth Circuit specifically rejected the provisions of the Injunction that the Court held HonorSociety in contempt for violating. HonorSociety has moved to vacate the Court's Contempt Order because it is "a well established principle that an order of civil contempt cannot stand if the underlying order on which it is based is invalid." *ITT Cmty. Dev. Corp. v. Barton*, 569 F.2d 1351, 1356 (5th Cir. 1978); *see* Dkt. No. 525.

**D.    Moradian testified that it is not his intention to have Tincher-Ladner fired and that a text message he sent did not negate this intention.**

During the July 2024 preliminary injunction hearing, Moradian was asked whether he wanted Tincher-Ladner fired. Dkt. No. 514 at 3–4. Moradian answered "That is not my intention. It's never been my intention." *Id.* At his October 2024 deposition, Moradian testified "I'm trying my best here to open to doors to Dr. Lynn-Tincher-Ladner to help her and to help all of us move forward." Dkt. No. 375-1, Ex. A-1 at 263:6–10.

- 5 -

In June 2024, Moradian had a text message exchange with a former PTK employee. After the employee detailed the "less than great things" Tincher-Ladner has done such as creating a toxic work environment, the employee shared his hope that Moradian's "team is able to get Lynn out of her position." *Id.*, Ex. A-22. Moradian responded "[w]e can and must together" for "the sake of students and PTK itself." *Id.*

During his January 27, 2025 deposition, Moradian clarified that this text message in which he "acquiesced … to her sentiments" was not representative of his beliefs but rather was akin to him "nodding [his] head" and "going along with [the employee's] dialogue." Declaration of Derek Linke in Support of Motion for Reconsideration ("Linke Decl.") ¶ 3, Ex. A (Moradian Tr. Jan. 27, 2025, 138:2–24).

**E.    HonorSociety violated no Court orders in producing communications with former PTK employees in December 2024.**

On November 26, PTK accused HonorSociety of "improperly contacting witnesses and/or former employees of PTK" and demanded these communications be produced by December 2— a mere six days later coinciding with Thanksgiving. Dkt. No. 375-1 at 64. The following day, HonorSociety's counsel confirmed "[w]e will confer with the client about responsive documents and produce them in due course." *Id.* at 60. HonorSociety requested PTK provide which requests for production it believed the messages were responsive to, but PTK would not. *Id.* at 58–59. Instead, PTK continued to demand production by unreasonable deadlines, and contacted Magistrate Judge Myers, who directed the parties to meet and confer. *Id.*, Smoot Decl. ¶ 7. Following this meet and confer, HonorSociety produced the communications on December 10. *Id.* Judge Myers did not order HonorSociety to produce the communications.

## Argument

Rule 54(b) provides that an order or decision adjudicating fewer than all claims or fewer than all parties' rights and liabilities may be revised by the court at any time before the entry of a final judgment. Fed. R. Civ P. 54(b). This allows a court to revisit its rulings as the case develops and reconsider an interlocutory order when justice requires. *Austin v. Kroger Tex. L.P.*, 864 F.3d

326, 337 (5th Cir. 2017); *see also James v. Antarctic Mech. Servs., Inc.*, No. 18-CV-678-CWR-FKB, 2020 U.S. Dist. LEXIS 274169, at *2 (S.D. Miss. Dec. 3, 2020). Courts are free to reconsider and reverse interlocutory orders "for any reason it deems sufficient, even in the absence of new evidence or an intervening change in or clarification of the substantive law." *Lavespere v. Niagara Mach. & Tool Works, Inc.*, 910 F.2d 167, 185 (5th Cir. 1990).

Dismissal with prejudice under Rule 41(b) is appropriate "only where there is a showing of (a) a clear record of delay or contumacious conduct by the plaintiff, and (b) where lesser sanctions would not serve the best interests of justice." *Johnson v. Jones*, 794 F. App'x 400, 402–03 (5th Cir. 2019). "Because dismissal is the effective death knell of [the] case, the conduct upon which the district court dismisse[s] the case must be contumacious, meaning, essentially, there is no reasonable justification for the plaintiffs' conduct." *Lucero v. Wheels India, Ltd.*, No. 23-10494, 2023 U.S. App. LEXIS 32968, at *5 (5th Cir. Dec. 13, 2023). The Fifth Circuit has cautioned that even "conduct that is careless, inconsiderate, and understandably exasperating to a conscientious trial judge is not necessarily contumacious." *Webb v. Morella*, 457 F. App'x 448, 453 (5th Cir. 2012). And a failure to comply with several court orders generally does not constitute contumacious conduct unless the party "completely flout[s]" those orders. *See Johnson*, 794 F. App'x at 403; *Nottingham v. Warden, Bill Clements Unit*, 837 F.3d 438, 442 (5th Cir. 2016).

Here, justice requires the Court to reconsider or revise its order dismissing HonorSociety's counterclaims with prejudice for four reasons. First, the Court committed an error of law in finding Moradian perjured himself. Second, the record does not support the finding that HonorSociety concealed evidence. Third, the conduct leading to the Court's injunctions and contempt finding was not contumacious. And fourth, the Court failed to adequately consider lesser sanctions.

## A.    Moradian's testimony and text message to Mr. Smiley, if anything, creates a credibility issue.

The Court found Moradian perjured himself based on a single text message it interprets as inconsistent with two of Moradian's statements made under oath. But "[c]onflicting or

inconsistent testimony is insufficient to establish perjury." *Kutzner v. Johnson*, 242 F.3d 605, 609 (5th Cir. 2001). Rather, contradictory statements, even those made under oath, "merely establish[] a credibility question for the jury." *Koch v. Puckett*, 907 F.2d 524, 531 (5th Cir. 1990).

Here, the Court concluded Moradian "perjured himself in July 2024 and then again in October 2024" by comparing his sworn testimony to a text message he sent responding to a former PTK employee. Dkt. No. 514 at 4. In July 2024, Moradian testified under oath that "[i]t's never been [his] intention" to "want Dr. Tincher-Ladner fired." *Id.* at 3–4. In October 2024, Moradian testified under oath that he was "trying [his] best here to open to doors to Dr. Lynn Tincher-Ladner to help her and to help all of us move forward." Dkt. No. 375, Ex. A-1 at 263:6–10. In a June 2024 text message exchange, a former PTK employee described to Moradian the toxic work environment Tincher-Ladner created and shared his hope that Moradian's "team is able to get Lynn out of her position." *Id.*, Ex. A-22. Moradian responded "[w]e can and must together" for "the sake of students and PTK itself." *Id.*

According to the Court, this single text message demonstrates Moradian's June and October 2024 statements under oath were "not truthful" and that Moradian "perjured himself." Order at 4. But finding that Moradian perjured himself was an error of law. Any inconsistencies between Moradian's statements made under oath and his text message "merely establishes a credibility question for the jury." *See Koch*, 907 F.2d at 531.

While the Fifth Circuit in *Brown v. Oil States Skagit Smatco* upheld a dismissal under Rule 41(b) based on a finding of perjury, it was based on two "explicitly contradictory" statements both made under oath. 664 F.3d at 78. The plaintiff in *Brown* testified in his Title VII action that he quit his job "*solely* because of racial harassment," while in a separate personal injury lawsuit testified he quit "*solely* because of his back pain related to an accident." *Id.* (emphasis in original). These mutually exclusive *sworn* statements "lead[] only to the … conclusion [that] Brown was caught lying under oath," and that he did so to bolster his claims in the separate actions. *Id.*

This Court has refused to apply *Brown's* reasoning to find perjury in cases where there is not "definitively conflicting testimony under oath." *See Rogers v. Medline Indus.*, No. 17cv118-HSO-JCG, 2018 U.S. Dist. LEXIS 213493, *7 (S.D. Miss. Dec. 19, 2018) (declining to find perjury or contumacious conduct because, "[u]nlike the plaintiff in *Brown*, there is no evidence Gallarelli testified elsewhere under oath that the 2015 incident did in fact occur …."). And for good reason, as this Court also recognizes that "one would normally expect statements made under threat of perjury" to differ from out-of-court statements. *Deliefde v. Nixon*, No. 19-CV-226-DPJ-FKB, 2021 U.S. Dist. LEXIS 172982, at *2 (S.D. Miss. Sep. 13, 2021) (plaintiff's sworn testimony that he worked as a student technician "not entirely inconsistent" with statement to psychiatrist that he worked for a trucking company).

Here, Moradian's out-of-court text message did not "explicitly contradict" his sworn testimony that it wasn't his intention to want Tincher-Ladner fired. "We can and we must" is not the same as "I intend to." This is unlike the plaintiff in *Brown*, whose testimony posed a logical impossibility of leaving a job *solely* for discrimination and *solely* because of injuries. Moreover, since PTK filed its Motion to Dismiss, Moradian testified during a deposition that this text message was not representative of his beliefs but rather was akin to him "nodding [his] head" and "going along with [the employee's] dialogue." Linke Decl., Ex. A at 138:2–24. Language akin to nodding one's head in conversation is a far cry from endorsing the statements, let alone making those statements under oath.

And even if Moradian's text message did "explicitly contradict" his sworn testimony, because it was not made under oath, it does not follow that Moradian necessarily perjured himself. In *Brown*, either the plaintiff's sworn testimony in his Title VII action or his sworn testimony in his personal injury action was false. In either scenario, the plaintiff perjured himself. That is not the case here. "For all the Court knows, the sworn statements were true, and the out-of-court comments were inaccurate." *Deliefde*, 2021 U.S. Dist. LEXIS 172982, at *12.

- 9 -

The Court found that Moradian's text message "was not a careless slip of the tongue" but rather "an endorsement of his intention to remove Dr. Tincher-Ladner from her position." Dkt. No. 514 at 4. The Court did not have the benefit of Moradian's January 27 testimony, which clarified this text message was not representative of his beliefs. Regardless, the Court committed an error of law in finding Moradian perjured himself based on an out-of-court statement. Even if the statements were inconsistent, there's no evidence the out-of-court statement was true and sworn statements false. To the contrary, Moradian's clarifying testimony supports the opposite conclusion. The Court's finding of perjury was an error of law.

**B.    The record does not support a finding that HonorSociety concealed evidence.**

The Court found that Moradian concealed communications with former PTK employees, including the message it found inconsistent with his testimony. Dkt. No. 514 at 6. But this finding is not supported by the record. In truth, this was a run of the mill discovery dispute in which HonorSociety agreed to produce the communications after PTK demanded them, and without any court order requiring it to do so.

First, the Court incorrectly found that HonorSociety did not produce the communications "until the Magistrate Judge ordered it to do so." PTK's declaration and exhibits filed in support of its Motion to Dismiss confirm that HonorSociety agreed to produce the communications when PTK asked for them. *See* Dkt. No. 375-1 at 60 (Nov. 27, 2024 email from HonorSociety's counsel in response to demand confirming that, "We will confer with the client about responsive documents and produce them in due course.") The only issue was the timing, but even that wasn't the subject of an order.

Second, that HonorSociety did not produce the documents before PTK asked for them is not indicative that HonorSociety intended to never produce them. Both parties have raised concerns with the other regarding supplementation of productions in this matter. And PTK admitted that despite its belief the communications were responsive to unspecified requests for production, "ordinarily [it] would not necessarily require their production." Dkt. No. 375-1 at 64.

PTK only wanted the communications produced, and produced quickly, because it incorrectly assumed the communications had "implications for the protective order." *Id.*

Third, Moradian's statements to the former employees that he would keep their conversations confidential does not demonstrate an intention to defy his discovery obligations. Statements like "I will vigorously defend all communications to the max" does not mean he will violate civil procedure rules in their defense. And even if Moradian's other statements show a mistaken belief that he could keep the communications confidential, it does not follow that he would withhold them after learning they are responsive to PTK's requests and court rules require their production. That HonorSociety produced the communications belies interpreting Moradian's statements as an intent to conceal.

Fourth, the Court's claim that this "is not the first time Honor Society has tried to hide relevant evidence," citing the Zendesk dispute, is inapposite. HonorSociety was repeatedly told by Zendesk that the records PTK was requesting—call recordings—did not exist. HonorSociety conveyed Zendesk's statements, including screenshots of the communications in which it confirmed the recordings did not exist, to PTK. Linke Decl. ¶ 5, Ex. B. Zendesk was mistaken that the recordings did not exist. HonorSociety's reliance on Zendesk's representations is not it "tr[ying] to hide relevant information." *See* Dkt. No. 514 at 5.

PTK created a post-hoc narrative that HonorSociety concealed evidence to describe an ordinary discovery dispute. PTK found out during the course of litigation that certain documents existed, asked they be produced, and HonorSociety produced them. HonorSociety producing communications later than PTK demanded does not "threaten the integrity of the judicial process." *Id.* The Court's finding that HonorSociety concealed evidence is not supported by the record.

**C.    The conduct leading to the Court's injunctions and contempt finding was not contumacious—and cannot serve as the basis for imposing sanctions now that the Second Preliminary Injunction has been vacated as unconstitutional—and did not demonstrate a disregard for honesty and transparency.**

The Court justified dismissing HonorSociety's counterclaims with prejudice based on the alleged perjury and concealment of evidence. Dkt. No. 514 at 6. The Court claims that HonorSociety's "conduct that led to the First Preliminary Injunction, Second Preliminary Injunction, and finding of civil contempt … demonstrated a disregard for honesty and transparency, which makes the current allegations of perjury and concealment appear far more credible." *Id.* at 6. But the conduct the Court cites was not itself contumacious, and otherwise provided no indication HonorSociety would commit perjury or conceal evidence.

Out of all the "conduct that led" to the injunctions and finding of contempt, HonorSociety was only found to have violated one Court order—the Second Preliminary Injunction. And HonorSociety "did not completely flout that order." *Johnson*, 794 F. App'x at 403. It spent a substantial amount of time to bring its more than 5,000 webpages into compliance. The violation of the "12 point font" requirement was an honest mistake based on the interface for controlling its website design. Dkt. No. 260 at 3. HonorSociety removed the articles discussing Risley and the PTK advisor as required by the order. But the Court found the titles of those articles that inadvertently remained visible were misleading and thus violated the order, despite the order not having this finding. Similarly, the Court found that images of Risley and Tincher-Ladner were misleading and violated the order despite there being no mention of them in the order itself, and even though the images were authentic and unedited. These violations do not show the "stubborn resistance to authority" required to be considered contumacious conduct. *Brown*, 664 F.3d at 77. Rather, they are the result of a good-faith attempt to comply based on an honest reading of the order.

In addition to not being contumacious itself, this conduct does nothing to make it more likely that HonorSociety would commit perjury or conceal evidence. So, the Court using this conduct as justification for believing PTK's allegations of perjury and concealment is misplaced.

- 12 -

While the Court found the advertisements at issue in the Second Preliminary Injunction sometimes took "liberties with the truth," it does not follow that Moradian is more likely to lie under oath. And none of the conduct leading to the injunctions or contempt order demonstrated a disregard for transparency or tendency to conceal evidence.

Additionally, because the Second Preliminary Injunction has been vacated by the Fifth Circuit, the previously issued Contempt Order "cannot stand." *See ITT Cmty. Dev. Corp. v. Barton*, 569 F.2d 1351, 1356 (5th Cir. 1978) ("a well established principle that an order of civil contempt cannot stand if the underlying order on which it is based is invalid."). Accordingly, the compensatory and coercive sanctions awarded under the Contempt Order cannot be enforced. *See United States v. United Mine Workers*, 330 U.S. 258, 361, n.26 (1947) (civil contempt "falls with the order if it turns out to have been erroneously or wrongfully entered.")

The Court more readily believed PTK's allegations of perjury and concealment, because of HonorSociety's conduct leading to the injunctions and Contempt Order. But none of this conduct made perjury or concealment by HonorSociety more likely, so using it as justification for a finding perjury and concealment is misplaced. Further, the conduct itself was not contumacious. HonorSociety was found to have partially not complied with one order.

**D.    The Court failed to adequately consider or employ lesser sanctions.**

The Court only mentions in passing that it "considered a range of sanctions, from additional warnings to fines and attorney's fees" before concluding dismissal is "the appropriate sanction." Dkt. No. 514 at 7. Where a court concludes lesser sanctions would not serve the best interests of justice "it should explain why lesser sanctions would be inadequate." *Mayes v. Fedex Freight Inc.*, 584 F. App'x 278 (5th Cir. 2014) (vacating Rule 41(b) dismissal order and remanding for further proceedings). "The court's findings that lesser sanctions would be inadequate … must be spread upon the record for such findings of fact are essential" for determining whether dismissal was an abuse of discretion. *Id*. In *Johnson v. Jones*, the Fifth Circuit found the district court abused its discretion in dismissing claims without "first try[ing] a lesser sanction or

warn[ing] Johnson that dismissal would follow any further violations." 794 Fed. App'x at 403. Instead, the lower court merely stated that "lesser sanctions had been employed … to no avail," referring to an order compelling discovery, which is not a Rule 41(b) sanction. *Johnson*, 794 F. App'x at 403 (quoting *Nottingham*, 837 F.3d at 442).

Similarly, here, the Court made no findings supporting its contention that lesser sanctions would be inadequate, has never warned HonorSociety that dismissal would follow any further violations, and has not tried any lesser Rule 41(b) sanctions. Sanctions under 41(b) "include fines, costs, or damage assessed against the plaintiff, explicit warnings, conditional dismissal, and dismissal without prejudice." *Johnson*, 794 F. App'x at 403 (citing *Nottingham*, 837 F.3d at 442). The only "lesser sanctions" the Court arguably tried were compensatory and coercive sanctions awarded under the Contempt Order. But because such sanctions were based on an unconstitutional order that was overturned, those sanctions cannot be enforced. *See Mine Workers*, 330 U.S. at 361, n.26. And all the conduct the Court used as justification for dismissing HonorSociety's counterclaims occurred *before* the Court entered its Contempt Order on December 23, 2024. *See* Dkt. No. 366. HonorSociety did not engage in any alleged contumacious conduct after or in the face of a Rule 41(b) sanction. So even if the invalid Contempt Order is considered a "lesser" Rule 41(b) sanction, the lack of alleged contumacious conduct after its entry shows that this lesser sanction worked, and dismissal was unnecessary—and unjustified. Thus, justice requires the Court reconsider its order.

## Conclusion

While the Court may find HonorSociety's conduct in this litigation to be "careless, inconsiderate, [or] exasperating," its conduct has not been contumacious. An out-of-court statement being inconsistent with HonorSociety's sworn testimony does not make that testimony perjurious. Failing to supplement productions with communications HonorSociety said it would "defend to the max" does not amount to concealment of evidence, particularly where there was never a court order compelling their production. Violating a single court order despite good-faith

efforts to comply is not a "stubborn resistance to [the Court's] authority." Now that the injunction has been vacated as unconstitutional, sanctions based on violations of it "cannot stand". *See ITT Cmty. Dev. Corp.*, 569 F.2d at 1356. And HonorSociety putting out webpages that "take liberties with the truth" does not make it more likely that PTK's allegations of perjury and concealment are true.

The Court cites *Ben E. Keith Co. v. Dining All., Inc.*, 80 F.4th 695 (5th Cir. 2023), to suggest that the totality of HonorSociety's conduct justifies dismissal. In *Ben E. Keith*, the court found the defendant "willfully abused the judicial process based on the totality of its litigation misconduct, which culminated in its refusal to obey the court's orders." *Id.* at 702–03. That misconduct involved the defendants' repeated, knowing misrepresentation of its "company's name, corporate form, and citizenship" despite multiple opportunities to correct it, and failing to comply with a court order to disclose it. *Id.* There is no parallel "totality" of misconduct here. HonorSociety has not willfully violated or flouted any orders. None of HonorSociety's conduct was contumacious and combining it does not make it so.

Without contumacious conduct, dismissal with prejudice under Rule 41(b) is inappropriate. The Court's refusal to try lesser Rule 41(b) sanctions or even explain why they'd be inadequate further makes dismissal inappropriate.

The Court should reconsider its Order and reinstate HonorSociety's counterclaims.

Dated: April 15, 2025                          Respectfully Submitted,

                                               s/ Robert L. Gibbs
                                               _____
                                               Robert L. Gibbs, MSB No. 4816
                                               Jamie D. Travis, MSB No. 99692
                                               GIBBS TRAVIS PLLC
                                               210 East Capital Street, Suite 1801
                                               Jackson, Mississippi 39201
                                               Telephone: 601-487-2631
                                               Facsimile: 601-366-4295
                                               rgibbs@gibbstravis.com
                                               jtravis@gibbstravis.com

s/ Derek Linke
Derek A. Newman (pro hac vice)
Derek Linke (pro hac vice)
Keith P. Scully (pro hac vice)
Gregory M. Scialabba (pro hac vice)
Newman LLP
100 Wilshire Blvd, Suite 700
Santa Monica, CA 90401
Telephone: 310-359-8200
dn@newmanlaw.com
linke@newmanlaw.com
keith@newmanlaw.com
gs@newmanlaw.com

Attorneys for Defendant, Counter-Claimant,
and Third-Party Plaintiff HonorSociety.org Inc.
and Defendant Honor Society Foundation, Inc.

**Certificate of Service**

I hereby certify that on April 15, 2025, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system. Participants in the case are registered CM/ECF users and service will be accomplished by the CM/ECF system.

Executed the 15th day of April 2025        s/ Derek Linke
                                                                Derek Linke

- 1 -