# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
# NORTHERN DIVISION

**PHI THETA KAPPA HONOR SOCIETY,**

*Plaintiff / Counter-Defendant*,

v.

**HONORSOCIETY.ORG, INC., ET AL.,**

*Defendants/ Counter-Plaintiffs*,

v.

**DR. LYNN TINCHER-LADNER,**

*Third-Party Defendant.*

CAUSE NO. 3:22-CV-208-CWR-RPM

## ORDER

Before the Court is HonorSociety.org, Inc. and Honor Society Foundation's (together, "Honor Society") motion for summary judgment against Phi Theta Kappa Honor Society ("PTK") and Dr. Lynn Tincher-Ladner. Docket No. 442. Upon review, the motion will be granted in part and denied in part.

**I.     Factual and Procedural History**

PTK and Honor Society offer "competing membership-based academic and professional" services to community college students in the United States. Docket No. 138 at 2. Their legal dispute began in 2022 when PTK sued Honor Society for false designation of origin (Count I), federal trade dress infringement and false advertising (Count II), common law trade dress infringement (Count III), and common law unfair competition (Count IV). PTK filed a second amended complaint in 2024 to include claims for tortious interference

with contract (Count V) and tortious interference with prospective business relations (Count VI). Docket No. 136. Honor Society responded with counterclaims, which have now been dismissed. Docket No. 393.

Honor Society now moves for summary judgment. Its arguments and PTK's responses are addressed below.

## II.    Legal Standard

The legal standard is well-established. Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is "genuine" if the evidence could lead a "reasonable jury [to] return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Id.*

"Once a summary judgment motion is made and properly supported, the nonmovant must go beyond the pleadings and designate specific facts in the record showing that there is a genuine issue for trial. Neither conclusory allegations nor unsubstantiated assertions will satisfy the nonmovant's burden." *Wallace v. Tex. Tech Univ.*, 80 F.3d 1042, 1047 (5th Cir. 1996) (quotation marks and citations omitted).

The Court views the evidence and draws all reasonable inferences "in the light most favorable to the nonmoving party." *Ryder v. Union Pac. R.R. Co.*, 945 F.3d 194 (5th Cir. 2019).

## III.    Discussion

### A.    Count I: False Designation of Origin: The Edge Mark

Honor Society first argues that PTK's false designation claim fails because Honor Society began using "Career Edge" three years before PTK began using "PTK Edge." Docket

No. 443 at 1. PTK disagrees. It says it has priority in the "Edge" mark and maintains that Honor Society's "superficial use" of Career Edge infringes on its use of PTK Edge. Docket No. 497 at 2. At the same time, however, PTK also claims that Honor Society cannot establish priority in the Edge mark because "[t]here is little evidence" that Honor Society used Career Edge "in commerce." Docket No. 497 at 2. A false designation claim is premised on trademark infringement that occurs "in commerce." If Honor Society did not use Career Edge in commerce, then it could not have infringed on PTK's use of the mark. *See* 15 U.S.C. § 1125(a).

To establish a false designation of origin claim, the plaintiff must first show that the defendant used the mark at issue in commerce. *Id.* A service mark is used in commerce when it is (1) "used or displayed in the sale or advertising of services and the services are rendered in commerce" or (2) "the services are rendered in more than one State or in the United States and a foreign country" by a person "engaged in commerce in connection with the services." *Id.* § 1127.

A party renders its service in commerce when it makes "an open and notorious rendering, or offering, of [its] service to the public." *Aycock Eng'g, Inc. v. Airflite, Inc.*, 560 F.3d 1350, 1360 (Fed. Cir. 2009). Mere advertising of the mark is insufficient to prove that the service was rendered in commerce. *Action Ink, Inc. v. New York Jets, LLC*, No. CV 12-46, 2013 WL 12106878, at *6 (E.D. La. June 20, 2013). "[A]ctual use of the mark in commerce [is] required; mere preparations to use that mark sometime in the future will not do." *Aycock Eng'g*, 560 F.3d at 1360.

Here, neither party has provided the Court with evidence showing that Honor Society rendered its services in commerce. Indeed, Honor Society appears to concede that it did not. *See* Docket No. 510 at 2; *see also Action Ink, Inc. v. New York Jets, L.L.C.*, 576 F. App'x 321, 323

(5th Cir. 2014) ("Unlike Action Ink, the *Allard* defendant rendered services to at least one client, arranging for that client to interview a job applicant. . . . In contrast, Action Ink has nothing to show for its years of soliciting clients."). Since there is no evidence in the record establishing that Honor Society rendered Career Edge in commerce, PTK's false designation of origin claim must fail. Accordingly, Honor Society is entitled to summary judgment on this claim.

>       **B.     Counts II, III, and IV: Federal Trade Dress Infringement and False Advertising, Common Law Trade Dress Infringement, and Common Law Unfair Competition**

Honor Society presents two arguments against Counts II, III, and IV. It says these claims fail because (1) they are barred by the equitable defense of laches and by Mississippi's statute of limitations, and (2) because PTK's trade dress does not qualify for protection. The Court will address each argument in turn.

<u>Laches and Mississippi Statute of Limitations</u>

Honor Society contends that PTK's claims are time-barred because "PTK delayed asserting its rights for over five years." Docket No. 443 at 14. In its view, PTK should have brought its claims by 2020 because it "knew or should have known of HonorSociety's alleged false advertising and trade-dress infringement" as early as 2016 or 2017. *Id.*

"The Lanham Act does not contain a statute of limitations[,] . . . [so] federal courts refer to analogous state statutes of limitations to aid in determining what length of delay is excusable." *Louis Vuitton Malletier, S.A.S. v. Keep it Gypsy, Inc.*, No. 3:23-CV-2569-L, 2024 WL 3927819, at *3 (N.D. Tex. Aug. 8, 2024) (quotation marks omitted). In Mississippi, the analogous statute of limitations is three years. *See* Miss. Code Ann. § 15-1-49; *McGee v. Jackson State Univ.,* 282 So. 3d 678, 681 (Miss. Ct. App. 2019).

4

"Laches is an inexcusable delay that results in prejudice to the defendant. It comprises three elements: (1) delay in asserting one's trademark rights, (2) lack of excuse for the delay, and (3) undue prejudice to the alleged infringer caused by the delay." *Bd. of Supervisors for Louisiana State Univ. Agric. & Mech. Coll. v. Smack Apparel Co.*, 550 F.3d 465, 489–90 (5th Cir. 2008) (quotation marks omitted).

Here, the Court finds that PTK delayed asserting its trademark rights because it and Dr. Tincher-Ladner had "actual or constructive knowledge of the" alleged infringement.[1] *Exxon Corp. v. Oxxford Clothes, Inc.*, 109 F.3d 1070, 1082 (5th Cir. 1997); *see also Armco, Inc. v. Armco Burglar Alarm Co.*, 693 F.2d 1155, 1161 (5th Cir. 1982) (explaining that the laches period begins when the plaintiff "knew or should have known" about the alleged infringement). Its analysis will therefore focus on the second element of laches—whether PTK lacked a valid excuse for the delay in filing suit.[2]

Honor Society argues that PTK has no excuse for its delay because "[b]y 2017, Tincher-Ladner and PTK employees communicated amongst themselves, as well as with PTK advisors, that HonorSociety's colors, website, and regalia were mimicking or very similar to those of PTK." Docket No. 443 at 15. It explains that "[a]t that time, PTK was actively tracking student and advisor reports of confusion between PTK and HonorSociety." *Id.* at 14.

---

[1] Because PTK delayed filing suit until 2022, its common law claims for trade dress infringement and unfair competition are barred by the statute of limitations. *See Bailey v. Est. of Kemp*, 955 So. 2d 777, 783–84 (Miss. 2007).

[2] PTK argues that Honor Society cannot assert the defense of laches because "[e]vidence of Honor Society's unclean hands is replete in the record, ranging from intentional infringement to its litigation conduct in this matter." Docket No. 497 at 16. Honor Society responds by claiming that PTK has not provided evidence that it "was passing off its goods and services with subjective and knowing intent to confuse consumers." Docket No. 510 at 10. This is not so. But since, there is a genuine dispute as to whether Honor Society had unclean hands, the Court will proceed with its analysis on laches.

"Mere neglect to challenge action," however, "is not sufficient to establish laches in any case." *Env't Def. Fund, Inc. v. Alexander*, 614 F.2d 474, 479 (5th Cir. 1980). Dr. Tincher-Ladner testified that she was not aware of Honor Society's impact or "the level of student confusion" it was causing until "2020 when people began questioning whether PTK was a scam." Docket No. 497 at 16–17. Dr. Tincher-Ladner explained that because she "had never heard [these complaints] before," she "undertook an effort to collect and review[] the mounting instances of confusion, and in making that review she determined that the infringements had reached an intolerable level." *Id.*

The Fifth Circuit recognizes that *de minimis* infringement may excuse a delay in asserting trademark rights. *See Abraham v. Alpha Chi Omega*, 708 F.3d 614, 623 (5th Cir. 2013). Since there is a genuine dispute as to whether PTK's delay is excusable, summary judgment is not warranted on Honor Society's defense of laches. *See id.*

Trade Dress Protection

Honor Society's main argument is that "PTK's purported trade dress is unprotectable because it is generic." Docket No. 443 at 9. PTK disagrees, arguing that "the greater weight of the evidence supports a finding of acquired distinctiveness in PTK's trade dress." Docket No. 497 at 9. The Court agrees with PTK.

Generic trademarks are "invalid" and cannot be protected. *Appliance Liquidation Outlet, L.L.C. v. Axis Supply Corp.*, 105 F.4th 362, 375 (5th Cir. 2024). If a mark is descriptive, however, "it may or may not be valid." *Id.* "[T]he court must determine whether it has acquired secondary meaning in the minds of consumers. If so, it has acquired distinctiveness and is valid; if not, it is invalid." *Id.*

6

"Whether a mark has acquired secondary meaning is a question of fact." *Id.* at 376–77 (quotation marks omitted).

> To determine whether a mark has acquired secondary meaning, courts consider the following seven factors: (1) length and manner of use of the mark or trade dress, (2) volume of sales, (3) amount and manner of advertising, (4) nature of use of the mark or trade dress in newspapers and magazines, (5) consumer-survey evidence, (6) direct consumer testimony, and (7) the defendant's intent in copying the mark.

*Id.* (quotation marks omitted).

"[T]he primary element of secondary meaning is a mental association in the buyers' minds between the alleged mark and a single source of the product." *Beatriz Ball, L.L.C. v. Barbagallo Co.*, 40 F.4th 308, 317 (5th Cir. 2022).

Here, PTK's use of its trade dress dates back to 1929. "[B]etween 2015 and June 30, 2024, PTK spent over $61M on advertising and promoting [its organization] through use of its trade dress, including membership regalia, email campaigns, managing and updating its website, goods for the PTK website, and its regional and national convention programming." Docket No. 497 at 10. PTK has presented evidence of press association with its trade dress and has identified at least three "students who mistakenly joined Honor Society . . . because of its use of PTK's blue and gold coloring." *Id.* at 11–12. PTK has also presented consumer survey evidence supporting its claim for secondary meaning.

This is enough evidence to create a genuine dispute on whether PTK's trade dress acquired secondary meaning. Accordingly, summary judgment will be denied on PTK's federal trade dress infringement claim.[3]

---

[3] The Court will also deny summary judgment on PTK's federal false advertising claim because it finds a genuine dispute as to whether the statements at issue are true and actionable.

C. **Count V: Tortious Interference with Contract**

To prevail on its interference with contract claim, PTK must prove that Honor Society "maliciously interfere[d] with a valid and enforceable contract." *Gulf Coast Hospice LLC v. LHC Grp. Inc.*, 273 So. 3d 721, 745 (Miss. 2019) (quotation marks omitted).

Honor Society says summary judgment is appropriate because PTK has "no evidence of a lost contract or sale." Docket No. 443 at 1. In response, PTK claims that it "specifically identified contracts that were either canceled or declined to renew because of Honor Society's misconduct." Docket No. 497 at 39 (citing PTK's response to interrogatory 39); *see* Docket No. 496-1 at Ex. A-22-7. Rather than direct the Court to the where it "specifically identified [the] contracts," PTK cites to an interrogatory response. But this citation does not support PTK's position. If anything, it suggests that no such contracts exist at all.[4]

It is not the Court's "[d]uty to sift through the record in search of evidence to support a party's opposition to summary judgment." *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998). PTK has not shown "that an enforceable obligation existed between" it "and another party." *Par Indus., Inc. v. Target Container Co.*, 708 So. 2d 44, 48 (Miss. 1998). It therefore cannot prove that any such contracts "would have been performed but for [Honor Society's] alleged interference." *Id.*; *see also Alfonso v. Gulf Publ. Co.*, 87 So. 3d 1055, 1060 (Miss. 2012). Since there is no evidence of a "breach of contract," there is "no tortious breach of contract." *JLS Farm P'ship v. '27 Break Hunting Club, Inc.*, No. 2023-CA-434-COA, 2025 WL 312500, at *6 (Miss. Ct. App. Jan. 28, 2025).

---

[4] In its interrogatory, Honor Society's requested that PTK "[i]dentify every contract which PTK claim[s] a third party did not perform because of HonorSociety's actions." Docket No. 496-1 at Ex. A-22-7. PTK did not produce the contracts. Instead, it claimed that it "has never argued or alleged that any third-parties failed to 'perform.' Third parties have instead cancelled existing agreements, contracts, declined to renew contracts, or declined to enter contracts with PTK." *Id.*

Accordingly, Honor Society is entitled to summary judgment on this claim.

## D.     Count VII: Tortious Interference with Prospective Business Advantage

Tortious interference with business relations, also known as tortious interference with prospective advantage, "occurs when [a defendant] unlawfully diverts prospective customers away from [the plaintiff's] business." *MBF Corp. v. Century Bus. Commc'ns, Inc.*, 663 So. 2d 595, 598 (Miss. 1995). To prevail on this tort, the plaintiff must prove that the defendant's acts were (1) "intentional and willful," (2) "calculated to cause damage" to the plaintiff's lawful business, (3) committed "with the unlawful purpose of causing damage and loss, without right or justifiable cause on the part of the defendant (which constitutes malice)," and (4) that "actual damage and loss resulted." *McBride Consulting Serv., LLC v. Waste Mgmt. of Miss., Inc.*, 949 So. 2d 52, 55–56 (Miss. Ct. App. 2006).

"[T]o establish a prima facie case for damages, the plaintiff must prove (1) that [its] business experienced a loss, and (2) that the defendant was the [proximate] cause of that loss." *McBride Consulting Serv.*, 949 So. 2d at 56; *Scruggs, Millette, Bozeman & Dent, P.A. v. Merkel & Cocke, P.A.*, 910 So. 2d 1093, 1099 (Miss. 2005) (explaining that proximate cause is an "additional element . . . imply[citly] required by Mississippi courts.").[5]

Here, Honor Society does not dispute the "malicious intent" element. *Gulf Coast Hospice*, 273 So. 3d at 747. Instead, it argues that PTK cannot establish that Honor Society's actions are the proximate cause of PTK's alleged harm. The Court disagrees.[6]

---

[5] The fact that *Scruggs* involved interference with a contract, rather than interfere with business relations, does not affect the analysis. *See Hegman v. Adcock*, 377 So. 3d 1020, 1026–27 (Miss. Ct. App. 2024) (explaining that "the same" elements are required to prove tortious interference with business relations and tortious interference with contract).

[6] Honor Society also argues that PTK cannot prove actual damages. The Court disagrees for the same reasons provided in its proximate cause analysis. *See Silver Dollar Sales, Inc. v. Battah*, 391 So. 3d 845, 852 (Miss. Ct. App. 2024) (explaining that "an exact dollar amount" is not required to prove actual damages).

9

When viewed in the light most favorable to PTK, the record shows that in March 2024, Honor Society distributed surveys to community college students, PTK's target audience and members, "containing questions that were designed to bias survey takers against PTK." Docket No. 497 at 38. A few months later, Honor Society published thousands of webpages containing disparaging statements about PTK and its CEO. *Id.* These webpages "contained language urging prospective members [not to] join PTK." *Id.* They also urged "existing PTK members to terminate their memberships" and encouraged "colleges to [stop] doing business with [the organization]." *Id.*

Around the time Honor Society published the surveys and statements, PTK "received an[] unprecedented number of requests for membership cancellations from both current members and alumni." Docket No. 221-48 at 30. These members requested cancellations even though they had lifetime memberships. *Id.* PTK "also experienced an unprecedented number of college and corporate partners declining to renew their [membership] with PTK Connect." *Id.* at 32. At least 15% of PTK's partners declined to renew their memberships. *Id.* It lost about $81,595 in membership revenue and $100,000 in sales between March 2024 and June 2024. *Id.* PTK identified 20 students who cancelled their membership and 35 institutions that stopped doing business with it during this period. Docket No. 497 at 39–40. PTK also identified prospective members that declined its membership invitations after they completed Honor Society's survey.[7] *Id.* at 40.

---

[7] PTK also claims that Honor Society, through its CEO, recruited Toni Marek, a former PTK member "to push the same deceptive and misleading statements concerning PTK and its leadership." Docket No. 497 at 39. It contends that Marek "contacted PTK's largest grantor, in an attempt to interfere with PTK student assistance programs and payroll." *Id.* at 40. PTK has "disclosed Marek as a witness" and "has been attempting to serve and depose her since September 2024." *Id.* at 39 n.37. This issue is pending before the Magistrate Judge. *See Marek v. Phi Theta Kappa Honor Soc'y,* 3:25-MC-209-CWR-RPM (S.D. Miss. Feb. 26, 2025).

10

This evidence is more than enough to raise a genuine dispute of material fact on proximate cause. While other factors may have contributed to PTK's loss, the record contains sufficient evidence to allow a jury to consider whether Honor Society is liable for the alleged harm. "The question as to the exact cause and the extent of damage is for the finder of fact to determine after a trial on the merits." *Gasparrini v. Bredemeier*, 802 So. 2d 1062, 1068 (Miss. Ct. App. 2001); *see also Alfonso*, 87 So. 3d at 1062. Accordingly, the Court denies summary judgment on this claim.

### IV.    Conclusion

The motion is granted in part and denied in part. Counts I, III, IV, and V are dismissed. Any arguments not addressed in this Order would not have impacted the Court's decision.

**SO ORDERED**, this the 26th day of April, 2025.

s/ Carlton W. Reeves  
UNITED STATES DISTRICT JUDGE