# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit
**FILED**
April 7, 2025
Lyle W. Cayce
Clerk

No. 24-60452

PHI THETA KAPPA HONOR SOCIETY,

        *Plaintiff—Appellee,*

LYNN TINCHER-LADNER,

        *Defendant/Third Party Defendant—Appellee,*

*versus*

HONORSOCIETY.ORG., INCORPORATED; HONOR SOCIETY FOUNDATION, INCORPORATED,

        *Defendants—Appellants.*

---

Appeal from the United States District Court
for the Southern District of Mississippi
USDC No. 3:22-CV-208

---

Before ELROD, *Chief Judge*, and DAVIS and RAMIREZ, *Circuit Judges*.
PER CURIAM:[*]

HonorSociety.org and its corporate affiliate, Honor Society Foundation, (collectively, "HonorSociety") appeal the entry of a

---

[*] This opinion is not designated for publication. *See* 5TH CIR. R. 47.5.

preliminary injunction that prohibits them from engaging in several forms of online speech and compels them to include a "disclaimer" in its future online posts that reference this litigation. Because we agree with HonorSociety that the injunction is overbroad and compels speech in violation of the First Amendment, we VACATE the injunction and REMAND to the district court.

I

This case involves two honor societies that compete in the community-college honor-society market. Phi Theta Kappa Honor Society ("PTK"), founded in 1918, provides academic- and professional-focused membership services to community college students across the county. HonorSociety, founded in 2014 by Michael Moradian, has a similar mission, and has become PTK's largest competitor.

In 2022, PTK sued HonorSociety asserting claims under the Lanham Act for trademark and trade-dress infringement and Mississippi state-law claims for unfair competition and trade-dress infringement. It later added several claims, including Mississippi state-law claims for tortious interference with contract and with prospective business advantage. HonorSociety asserted several counterclaims against PTK and third-party claims against Dr. Lynn Tincher-Ladner, PTK's chief executive officer.[1]

In March 2024, PTK obtained a preliminary injunction that enjoined HonorSociety from circulating six survey questions that contained "misleading" information to PTK members and from soliciting information on PTK from college campuses.

---

[1] Because Dr. Tincher-Ladner joined PTK's request for the preliminary injunction that is at issue here, any reference to PTK in this opinion refers to both PTK and Dr. Tincher-Ladner.

No. 24-60452

A few months later, PTK again requested a preliminary injunction, this time on the basis that HonorSociety had continued to disseminate misleading claims against PTK, albeit in new ways. PTK claimed that HonorSociety had used generative artificial intelligence to create approximately 5,000 websites and articles to "mislead readers about the lawsuit"; spread misinformation about a former PTK chapter advisor and the organization's former executive director, Rod Risley; created a "Directory" of PTK chapters that actually redirected users to HonorSociety's websites; edited PTK's Wikipedia page; and circulated a cartoon image of an "East Asian woman," which, according to the district court's findings, depicted Dr. Tincher-Ladner. The district court later held an evidentiary hearing on the motion in June 2024 and granted the motion two months later, finding that PTK was likely to succeed on its Mississippi state law claim for tortious interference.

The district court's injunction was sweeping. It prohibited HonorSociety from engaging in several forms of online speech targeted at PTK and ordered it to include a disclaimer on any website or social media post that referenced the pending litigation. The injunction states:

1) Immediately cease edits to PTK's Wikipedia page, and subject itself to discovery on Wikipedia edits it may have made or caused during this litigation.
2) Remove all images of the cartoon East Asian woman vendor from its webpages and social media posts.
3) Remove all false subject matter from its webpages and social media posts regarding the Itawamba Community College chapter advisor's arrest.
4) Limit its reporting on the sexual harassment allegations against Risley to existing media articles only, rather than articles of its own creation.
5) Add the actual contact information for every PTK chapter into the "Directory," or delete the "Directory."

3

6) Add the following disclaimer, in 12 point or larger size font, to the top of all remaining webpages and social media posts that concern or reference this litigation:

> Disclaimer: The author of this article is not a neutral party in the referenced litigation. HonorSociety.org Inc., Honor Society Foundation Inc., and its president Michael Moradian were sued in federal court by PTK on April 20, 2022 for False Designation of Origin, Trade Dress Infringement, and Unfair Competition. Honor Society and Michael Moradian countersued and are presently defendants/counter-plaintiffs in this litigation. Litigation is still ongoing and all claims made regarding this case are just allegations against the parties.

HonorSociety then timely appealed the second injunction. On appeal, it argues that: (1) the district court erred in concluding that PTK was substantially likely to succeed on the merits of its claims for tortious interference, (2) the injunction is an overbroad and vague prior restraint, and (3) the injunction compels speech in violation of the First Amendment. Because we conclude that this injunction is both overbroad and impermissibly compels speech, we pretermit discussion of HonorSociety's likelihood of success on the merits.

II

Court orders that forbid speech activities are "classic examples of prior restraints." *Alexander v. United States*, 509 U.S. 544, 550 (1993). Prior restraints "face a well-established presumption against their constitutionality." *United States v. Brown*, 218 F.3d 415, 424–25 (5th Cir. 2000)). "The first step in assessing the constitutionality of a prior restraint requires considering whether the harm the court seeks to prevent justifies the restraint on speech." *Marceaux v. Lafayette City-Par. Consol. Gov't*, 731 F.3d 488, 493 (5th Cir. 2013). Further, the restriction "must be narrowly tailored

No. 24-60452

and employ the least restrictive means of preventing the prejudice." *Id.* at 492.

Neither party disputes that this injunction constitutes a prior restraint. PTK asserts, however, that the prior restraint is justified because the district court concluded that HonorSociety's speech constitutes false commercial speech, which does not enjoy the First Amendment's full protections.

True, the First Amendment "accords a lesser protection to commercial speech than to other constitutionally guaranteed expression." *Central Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of N.Y.*, 447 U.S. 557, 563 (1980). But at its core, commercial speech is speech that "does no more than propose a commercial transaction." *Bolger v. Youngs Drug Prods. Corp.*, 463 U.S. 60, 66 (1983) (citation and internal quotation marks omitted).[2]

Edits to PTK's Wikipedia page cannot, in any sense, be viewed as "propos[ing] a commercial transaction." *Id.* Nor can the cartoon image in question, which is protected under the First Amendment. *See Bailey v. Iles*, 87 F.4th 275, 283 (5th Cir. 2023) ("The First Amendment's protections

---

[2] Our commercial-speech analysis is guided by the *Bolger* factors: "(i) whether the communication is an advertisement, (ii) whether the communication refers to a specific product or service, and (iii) whether the speaker has an economic motivation for the speech." *Procter & Gamble Co. v. Amway Corp.*, 242 F.3d 539, 552 (5th Cir. 2001) (citing *Bolger*, 463 U.S. at 67 (internal quotation marks omitted)). We note that the distinction between commercial and noncommercial speech is a "matter of degree," *City of Cincinnati v. Discovery Network, Inc.*, 507 U.S. 410, 423 (1993), which is ill-suited to a generalized, one-size-fits-all approach. The record is replete with discrete instances of speech, including social media posts on LinkedIn and X (formerly Twitter), AI-generated websites and articles on myriad topics, Wikipedia edits, cartoons, the PTK chapter "Directory," and more. Here, the district court concluded that HonorSociety's "online postings" collectively constituted commercial speech. On remand, we urge the district court to analyze commercial speech with an increased level of granularity.

apply to jokes, parodies, satire, and the like, whether clever or in poor taste.").

Assuming *arguendo* that some of the enjoined speech constitutes commercial speech, the injunction's sweeping prohibitions are overbroad because the injunction also prohibits non-commercial speech and instances of speech not found to be prejudicial to PTK. For example, the district court enjoined HonorSociety from making any future edits to PTK's Wikipedia page—whether true or untrue, prejudicial or innocuous. It also did not identify any harmful or untrue reporting in HonorSociety's reporting on Risley. An injunction must be "'narrowly tailored' to excis[e]" only those examples of speech with a sufficient potential for prejudice. *Marceaux*, 731 F.3d at 494 (vacating injunction that ordered the "takedown" of a website where only some of the website's contents caused prejudice). Because this injunction prohibits speech irrespective of its potential for prejudice, it is overbroad.

Finally, we conclude that the disclaimer constitutes impermissible compelled speech. Generally, the government may not compel a person to speak the government's preferred message. *303 Creative LLC v. Elenis*, 600 U.S. 570, 586 (2023). In the context of commercial speech, the government may compel speech if the disclosure is: (1) purely factual, (2) uncontroversial, (3) justified by a legitimate state interest, and (4) not unduly burdensome. *R J Reynolds Tobacco Co. v. FDA*, 96 F.4th 863, 877 (5th Cir. 2024) (citing *Zauderer v. Off. of Disciplinary Counsel of Sup. Ct. of Ohio*, 471 U.S. 626, 651 (1985)). The district court did not analyze whether this disclaimer was uncontroversial, justified by a state interest, or posed undue burdens on HonorSociety. Further, while PTK asserts that there is a state interest in ensuring an unbiased jury pool, the district court specifically disclaimed any concerns over tainting the jury pool.

No. 24-60452

\* \* \*

In conclusion, the district court's injunction is an overbroad prior restraint and impermissibly compels speech. Accordingly, we VACATE the injunction and REMAND to the district court.

7