**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF MISSISSIPPI**
**NORTHERN DIVISION**

| | |
|---|---|
| PHI THETA KAPPA HONOR SOCIETY, ) | |
| ) | |
| Plaintiff ) | Civil Action No. 3:22-cv-00208-CWR-RPM |
| ) | |
| v. ) | |
| ) | **URGENT AND NECESSITOUS** |
| HONORSOCIETY.ORG, INC. & ) | |
| HONOR SOCIETY FOUNDATION, INC. ) | |
| ) | |
| Defendants. ) | |

### PHI THETA KAPPA'S REPLY BRIEF IN SUPPORT OF ITS MOTION TO ENFORCE SETTLEMENT AGREEMENT

This dispute was caused solely by Michael Moradian's secret intent to deprive PTK of the benefit of its heavily negotiated bargain. A Mississippi court is not obliged to enforce such a secret intent "which no man in his right mind would have agreed to." *Tupelo Redevelopment Agency v. Abernathy*, 913 So.2d 278, 284 (Miss. 2005). An examination of ordinary business practices, together with the silence of the Settlement Agreement ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.

Michael Moradian entirely manufactured this avoidable dispute. There is simply no reasonable explanation or justification for ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. It is truly astounding that PTK has to even hire lawyers to make this argument,

---

[1] To be clear, PTK requests that Honor Society ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.

at great expense. Of all the terms in the Settlement Agreement that should be the easiest to perform, ▮▮▮▮▮ Yet even that simple task has now been made a point of litigation by Mr. Moradian. This is precisely why ▮▮▮▮▮

▮▮▮▮▮

## ARGUMENT

**I.   AN OBJECTIVE READING OF THE TEXT OF THE SETTLEMENT AGREEMENT SHOWS THAT** ▮▮▮▮▮

▮▮▮▮▮

Honor Society correctly acknowledges that the meaning of the Settlement Agreement must be determined "from an objective reading of the words employed." [ECF No. 571] at 4, citing *Royer Homes of Miss., Inc. v. Chandeleur Homes, Inc.*, 857 So.2d 748, 751 (Miss. 2003). That case makes clear that a party may not rely on "some secret thought of one not communicated to the other." 857 So.2d at 752, quoting *Turner v. Terry*, 799 So.2d 25, 32 (Miss. 2001). Accordingly, in determining the application of the word ▮▮▮▮▮

▮▮▮▮▮

▮▮▮▮▮ [ECF No. 571-1] ¶ 5, a secret that he does not pretend to have disclosed to PTK. Moradian's declaration is carefully phrased, as befits an adjudicated perjurer, so he does not explicitly say that, when he executed the Settlement Agreement, he was ▮▮▮▮▮ *Id.* at ¶ 4. Such knowledge, however, is a necessary implication, ▮▮▮▮▮

▮▮▮▮▮

▮▮▮▮▮

It makes sense to begin an objective analysis of the Settlement Agreement with a dictionary. ▮▮▮▮▮

2



[ECF No. 571-1] ¶ 9. Not only did Moradian know this in general terms, ▌▌▌▌▌ [ECF No. 567-2] ¶ 3, ▌▌▌▌▌ [ECF No. 571-1] ¶ 6.[3]

▌▌▌▌▌ does not necessarily create an ambiguity. A Mississippi court must give careful consideration to context before determining whether a contract provision is ambiguous:

> An "ambiguous" word or phrase is one capable of more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement and who is cognizant of the customs, practices, usages and terminology as generally understood in the particular trade or business.

*Dalton v. Cellular South, Inc.,* 27 So.3d 1227, 1232 (Miss. 2009), quoting *Eskimo Pie Corp. v. Whitelawn Dairies, Inc.*, 284 F.Supp. 987, 994 (S.D.N.Y. 1968). *Accord Epperson v. SOUTHBank*, 93 So.3d 10, 19 (Miss. 2012). Engaging in this analysis, a Mississippi court "can

---

[2] [ECF No. 571] at 4 

[3] ▌▌▌▌▌ [ECF No. 567-2]. ▌▌▌▌▌

3

look at additional evidence of 'the customs, practices, usages and terminology as generally understood in the particular trade or business for the purposes of determining if an ambiguity exists." *M & R Builders, LLC v. Williams Equipment & Supply Co.*, 281 So.3d 320, 336 (Miss. App. 2018), citing *Dalton*. In so doing, "the entire contract must be interpreted as a whole." *Epperson,* 93 So.3d at 18, citing *Pursue Energy Corp. v. Perkins*, 558 So.2d 349, 352 (Miss. 1990). Here, the question is whether, ▮

The meaning of a term may be resolved by giving "[s]ome consideration . . . to the purposes and reasonable expectation, of an ordinary business man." *National Fire Ins. Co. v. Slayden*, 227 Miss. 285, 85 So.2d 916, 917 (1956).[4] For that reason, the Court must consider the evidence of business practices in determining ▮ Honor Society wants this Court ▮ *See* [ECF No. 571-1] ¶ 9 ▮

---

[4] Honor Society in its brief spends several pages distinguishing *National Fire* and other cases cited by PTK on their facts. This is hardly surprising, as the facts of this case appear to be unparalleled in Mississippi reported decisions. ▮ *Id.*

[5] ▮ American Express produced three and a half years' worth of credit card statements, none of which had a monthly balance of over $62,000. Ex. A, Smoot Decl. ¶¶ 4-6. ▮ *Id.* ¶ 7. ▮

4



██████████████ *See* Ex. B, Tincher-Ladner Decl. ¶ 4. ██████████████

██████████████ [ECF No. 567-2] ¶¶ 9-10.  Under these circumstances, there is no ambiguity, because ██████████████

To the extent there arguably may be any ambiguity ██████████████ As Honor Society's counsel acknowledged in his email to this Court on June 23, 2025, "[The Settlement Agreement] ██████████████ *See* Ex. A-1.  It does not follow that the Settlement Agreement's silence ██████████████ [ECF No. 571] at 5.

Silence may be regarded as creating an ambiguity requiring further analysis:

> Ambiguity may also arise when contract terms are silent as to certain issues arising between contracting parties. *See Arledge v. Gulf Oil Corp.,* 571 F.2d 1388, 1391 (5th Cir. 1978) (citing Mississippi cases for the proposition that the fact-finder may turn to extrinsic evidence to determine the parties' intent "[w]here a written Settlement Agreement is silent or ambiguous") … .

*Ennis Family Realty I LLC v. Schneider Nat'l Carriers, Inc.*, 916 F.Supp.2d 702, 709 (S.D. Miss. 2013).

Black letter principles of contract law impose on Honor Society the consequences of its own silence.  Moradian does not deny that at the time he executed the Settlement Agreement, █ ██████████████

███████████████████████████████ Moradian's subterfuge will not be enforced by a court:

> (2) Where the parties have attached different meanings to a promise or Settlement Agreement or a term thereof, it is interpreted in accordance with the meaning attached by one of them if at the time the Settlement Agreement was made.
> 
> …
> 
> (b) that party had no reason to know of any different meaning attached by the other, and the other had reason to know the meaning attached by the first party.

Restatement (2d) Contracts § 201 (1981). Applying § 201 of the Restatement, the Fifth Circuit has explained that one party's "secretly harbored intent to later deduct the difference between the old and new price could not bind" the other party. *Mid-South Packers, Inc. v. Shoney's, Inc.*, 761 F.2d 1117, 1122 (5th Cir. 1985), citing *Hotchkiss v. National City Bank*, 200 Fed. 287, 293 (S.D.N.Y. 1911) (Hand, J.), *aff'd* 231 U.S. 50 (1913) (only manifested assent is binding.) ████████████████████████████████████████████████████████████

███

On this record, ████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████[6]

---

[6] Should this Court be unable to resolve this issue based on the language of the Settlement Agreement in light of the practices of knowledgeable businesses, the next step would be to apply canons of construction or to examine extrinsic evidence. *Royer*, 857 So.2d at 753. Of course, the avoidance of absurdity, mentioned above, is one of those canons. *Frazier v. Northeast Miss. Shopping Ctr.*, 458 So.2d 1051, 1054

## II.     HONOR SOCIETY DOES NOT EXPLAIN WHY ███████████████████████████████████████ IS CONSISTENT WITH THE COVENANT OF GOOD FAITH OR FAIR DEALING.

If this Court agrees that ████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████ and Honor Society has breached its terms. Even if this Court agrees with Honor Society that ███████████████████████████████████████████████████████████████ that choice must be exercised consistently with the implied duty of good faith and fair dealing. "Logically, if the covenant of good faith and fair dealing required *only* technical compliance with the contract's express terms then 'the implied covenant would be a mere redundancy.'" *Jones v. Mississippi Institutes of Higher Learning*, 264 So.3d 9, 21 (Miss. App. 2018) (emphasis in original), quoting *Doe v. Brandeis Univ.*, 177 F.Supp.3d 561, 612 (D. Mass. 2016). Nothing in Honor Society's brief discussion of the implied duty addresses *Jones* or any of the other Mississippi cases upon which PTK relies.

Instead, Honor Society cites two Mississippi cases in support of its assertion that "taking actions authorized by the contract" cannot breach the implied duty. [ECF No. 571] at 7, citing *Martindale v. Hortland Harlow Bassi Robinson & McDaniel PLLC*, 119 So.3d 338 (Miss. App. 2012); *Rasdon v. Thrash*, 225 So.3d 557 (Miss. App. 2017). In both cases, the authorization was found in express terms in the contract language. In *Martindale*, the law firm's "operating agreement specifically provided a formula to determine an expelled member's interest." 119 So.3d at 345. And in *Rasdon,* the written racing rules to which the parties agreed authorized the party

---

(Miss. 1984). No party has offered any extrinsic evidence concerning discussions of this matter during the lengthy settlement conference with this Court. ████████████████████████████████████████
████████████

7

conducting the race "to take the tire samples from Rasdon's car and submit those samples for testing." 225 So.3d at 560. The written agreement in each case expressly spelled out exactly what was to be done; and the courts properly rejected any suggestion that the implied duty required more.

Here, the Settlement Agreement ███████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████ *Jones* carefully explains why silence on a particular issue may necessitate consideration of the duty:

> Because it is rarely possible or practicable for contracting parties to anticipate and address every conceivable issue that may arise in the future performance of the contract, the doctrine substitutes a general duty of good faith and fair dealing for details of the performance that the contract does not address expressly.

264 So.3d at 21. Although the Settlement ████████████████████████████████

████████████ "such conduct violated the implied duty of good faith and fair dealing, based on the plaintiffs' justified expectations." *Id.*, citing *Cenac v. Murry*, 609 So.2d 1257, 1272 (Miss. 1992).

Honor Society's brief does not suggest that its ███████████████████████

██████████████████████████████████ Its attempt to do so breached the implied duty of good faith and fair dealing, which protects PTK's reasonably justified expectations. This Court should ██████████████████████████████████████████████████
██

### III. PTK DID NOT INTENTIONALLY OR OTHERWISE RELINQUISH ██████ ████████████████████████████

Honor Society cites only part of a single sentence to ████████████████████
███████████████████████████████████████████████████████████████

8

███████████████████████████████████████████████████████████████ [ECF No. 571] at 8, quoting *Brent Towing Co. v. Scott Petroleum Corp.*, 735 So.2d 355, 359 (Miss. 1999).[7] Moradian produced two sheets of paper generated ████████████████, [ECF No. 571-1] at Exs. 1 & 2, ████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████

    *Brent Towing* itself demonstrates the necessity of actual intent in finding a waiver. "Waiver usually results when there is an intentional relinquishment of a known right." 735 So.2d at 359, quoting *Mariana v. Hennington*, 229 Miss. 212, 90 So.2d 356, 362 (1956). The Supreme Court has further expounded on that intentionality requirement:

> Waiver presupposes full knowledge of a right existing, and an intentional surrender or relinquishment of that right. It contemplates something done designedly or knowingly, which modifies or changes existing rights or varies or changes the terms and conditions of a contract. It is the voluntary surrender of a right. To establish a waiver, there must be shown an act or omission on the part of the one charged with the waiver fairly evidencing an intention permanently to surrender the right alleged to have been waived. *Ewing v. Adams*, 373 So.2d 1364, 1369 (Miss. 1990).

*Titan Indem. Co. v. Hood*, 895 So.2d 138, 150-51 (Miss. 2004). *Accord Taranto Amusement Co. v. Mitchell Assocs., Inc.*, 827 So.2d 726, 729-30 (Miss. 2002).

    ████████████████████████████████████████████ "fairly evidenc[e] an intention permanently to surrender the right alleged to have been waived." Indeed, those papers do not even mention PTK's right to obtain proper performance under the Settlement Agreement.

---

[7] The only other case cited by Honor Society, *Matheney v. McClain*, 161 So.2d 516 (1964), is to the contrary. There, the employees accepted reduced wage payments in violation of the contract, but they did so under protest. The Supreme Court found that the receipt and retention of money did not constitute waiver. *Id.* at 520.

██████████████████████████████████████████████ [ECF No. 567-1] at Ex. 2. As Dr. Tincher-Ladner explains, ███████████████████████████████████ ██████████████████████████████████████████████████ [ECF No. 567-2] ¶¶ 3-4, 6, Fig. 2. ████████████████████████

████████████████████████████ Lest there be any doubt, Dr. Tincher-Ladner confirms that ████████████████████████████████████████████████ Ex. B, Tincher-Ladner Decl. ¶¶ 4-5. Honor Society has offered no evidence to the contrary.

It is worth noting that Moradian does not pretend ████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████ As in *Matheny,* ████████████████ ████████ This sequence of events displays PTK's intention just about as clearly as it possibly could.

The doctrine of waiver is not a booby trap for the unwary. It holds litigants to positions consciously taken and communicated. PTK's position is and always has been ██████████ ████████████████████████████████████████.

## CONCLUSION

For the reasons stated herein and in PTK's original memorandum, this Court should order Honor Society and Moradian to ████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████

10



Dated this 17th day of July 2025.

        Respectfully submitted,

        */s/ Jonathan G. Polak*
        Jonathan G. Polak (Pro Hac Vice)
        Michael Etienne (Pro Hac Vice)
        TAFT STETTINIUS & HOLLISTER LLP
        One Indiana Square, Suite 3500
        Indianapolis, IN 46204-2023
        (317) 713-3500 – phone
        (317) 713-3699 – fax
        jpolak@taftlaw.com
        metienne@taftlaw.com

        Rachel Smoot (Pro Hac Vice)
        TAFT STETTINIUS & HOLLISTER LLP
        41 S. High Street, Suite 1800
        Columbus, OH 43215
        (614) 221-2838 – phone
        (614) 221-2007 – fax
        rsmoot@taftlaw.com

        Philip R. Bautista (Pro Hac Vice)
        TAFT STETTINIUS & HOLLISTER LLP
        200 Public Square, Suite 3500

        Cleveland, OH 44114-2302
        (216) 706-3686 — phone
        pbautista@taftlaw.com

        Daniel R. Warncke (Pro Hac Vice)
        TAFT STETTINIUS & HOLLISTER LLP
        425 Walnut Street, Suite 1800
        Cincinnati, OH 45202
        (513) 357-9397 – phone
        dwarncke@taftlaw.com

        */s/ Michael B. Wallace*
        Michael B. Wallace, MSB # 6904
        Charles E. Cowan, MSB #104478
        Beau M. Bettiga, MSB #105905
        Jack F. Hall, MSB #106842
        WISE CARTER CHILD & CARAWAY, P.A.
        Post Office Box 651
        Jackson, Mississippi 39205
        Phone 601-968-5500

        *Counsel for Phi Theta Kappa Honor Society*

**CERTIFICATE OF SERVICE**

  I, Jonathan Polak, do hereby certify that I have this day electronically filed the foregoing pleading or other paper with the Clerk of the Court using the ECF system, which sent notification to all counsel of record.

  Dated July 17, 2025

                     */s/ Jonathan G. Polak*
                     Jonathan G. Polak