## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF MISSISSIPPI
## NORTHERN DIVISION

| | |
|---|---|
| PHI THETA KAPPA HONOR SOCIETY, | Civil Action No. 3:22-cv-00208-CWR-RPM |
| Plaintiff/Counter-Defendant, | |
| v. | |
| HONORSOCIETY.ORG INC., | |
| Defendant/Counter-Plaintiff | |
| HONOR SOCIETY FOUNDATION, INC., | |
| Defendant. | |
| HONORSOCIETY.ORG INC., | |
| Defendant/Counter-Plaintiff/Third-Party Plaintiff | |
| v. | |
| LYNN TINCHER-LADNER, | |
| Third-Party Defendant. | |

## HONORSOCIETY.ORG INC. AND HONOR SOCIETY FOUNDATION, INC.'S MEMORANDUM IN RESPONSE TO PTK'S SECOND MOTION TO ENFORCE SETTLEMENT AGREEMENT

## Table of Contents

**Introduction** .................................................................................................................1

**Facts** .......................................................................................................... 2

    A.   The Parties agreed that, ████████████████████████████
          ███████████████ ................................................................ 2

    B.   Honor Society timely implemented ███████████████████
          ████████████████████████████.........................................3

    C.   HonorSociety immediately took action to investigate and address PTK's notice of alleged breaches, all of which were materially cured.................................3

    D.   PTK's other purported examples of violations are not violations of the Agreement. ...........................................................................................7

    E.   The Agreement does not require HonorSociety to include ███████████
          ████████████████████████████████████
          which HonorSociety has done. .................................... 8

    F.   The Agreement does not require HonorSociety to only send solicitations to students that have opted in to receive them. ............................................10

    G.   HonorSociety made the ████████████ on time consistent with the Agreement but PTK reversed the █████████ because it incurred vendor charges and decided it wanted HonorSociety to ███ using a different method not required under the Agreement...................................................................... 11

    H.   PTK's motion demonstrates that it is PTK—not HonorSociety—that has violated multiple terms of the Agreement.................................................. 11

**Argument** .......................................................................................................... 12

    A.   HonorSociety complied with its obligations under the Agreement in good faith and when PTK provided notices of alleged breaches, it timely cured them consistent with the Agreement. .................................................................12

    B.   PTK cannot rewrite the Agreement to add new terms that were not negotiated and to which the parties did not agree. .......................................................14

    C.   The Agreement must be construed against PTK, as the party that drafted it. ...........15

    D.   Honor Society is entitled to fees for opposing this motion. .......................................15

**Conclusion** .................................................................................................16

# Table of Authorities

**Cases**

*Gulf S. Cap. Corp. v. Brown,*
  183 So. 2d 802 (Miss. 1966) ...................................................................................13

*U.S. Fid. & Guar. Co. of Miss. v. Martin,*
  998 So.2d 956 (Miss. 2008) ....................................................................................15

*Watkins Dev., LLC v. Jackson Redevelopment Auth.,*
  283 So. 3d 170 (Miss. 2019) ...................................................................................13

## Introduction

PTK's second enforcement motion misreads the Agreement's ███████████████████ ███████████████████████████████████████████████. PTK claims that HonorSociety breached the Agreement by ███████████████████████████████████ ███████████████████████████████. But by the Agreement's deadline, HonorSociety had ███████████████████████████████. PTK notified HonorSociety of a ███████████████████████████████. Within the period provided under the Agreement ███████████████████████████ ███████████████████████████████████████████ ████████████████████████████████████████.

PTK's motion ignores HonorSociety's successful cure efforts entirely. Instead, PTK seizes on a handful of examples, most of which do not reflect a violation of the Agreement because they ███████████████████████████████████████ █████████████████. And contrary to PTK's heated rhetoric, its handful of examples do not demonstrate a material breach. They are trivial when compared to █████████████ ███████████████████████████████████████████ ██████████████ And the small number of purported violations is underscored by ████████ ██████████████████████████████████████████ ████████████████████.

Yet, despite HonorSociety's timely and effective cure of the narrow apparent gap in its initial ██████████████████ and the evidently miniscule number of even theoretical "violations," PTK asks the Court to enjoin HonorSociety from ████████████████████ for weeks. This would effectively bring HonorSociety's entire business—which has always been primarily focused on non-community college students and professional members—to a crashing halt. Neither the parties' Agreement nor Mississippi law require absolute certain perfect performance under an agreement, and there is no basis for the Court to require such

extraordinary performance here, much less to order HonorSociety's business to stop for weeks. The motion should be denied.

## Facts

**A.    The Parties agreed that,** ███████████████████████████████
███████████████████████████.

The parties' settlement agreement ("Agreement") provides that, ███████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
███████████████████ Declaration of Michael Moradian ("Moradian Decl.")
¶ 4, Ex. 1 §§ 2(a),(g). Exhibit A to the Agreement is ██████████████████
███████████████, which was prepared by PTK. *Id.* ¶ 5.

The parties agreed that HonorSociety could optionally comply with this obligation by
████████████████████████████████████████████████████████
██████████████. Exhibit B to the Agreement is █████████████████
████████████████████████████████████████████
████████████████. Agreement § 2. The Agreement further provides that ████████
████████████████████████████████████████████████:

████████████████████████████████
████████████████████████████
███████████████████████



*Id.* § 5

The parties also agreed to ██████████████████████████████████
████████████████████████████████████████████████████████
███████████████████████████████████████████
███████████████████ Agreement § 12.

The Agreement was principally drafted by PTK and its counsel. Moradian Decl. ¶ 6. This
includes, in particular, the language relating to ████████████████████████████



*Id.* ¶ 6. PTK and its counsel also drafted the

. *Id.* ¶ 7.

**B. Honor Society timely implemented**

Prior to

. *Id.* ¶ 8.

. *Id.* ¶ 8.

Also prior to

. *Id.* ¶ 9. Thus, the only

. *Id.* ¶ 10.

. *Id.* ¶ 10.

**C. HonorSociety immediately took action to investigate and address PTK's notice of alleged breaches, all of which were materially cured.**

On August 12 and 21, 2025, PTK's counsel sent a letter purporting to identify a breach of the Agreement. Declaration of Derek Linke ¶ 4, Ex. A. Specifically, the August 12 letter noted that ,

███ . *Id.* PTK stated that it had learned of ████████████████████████

████████████████████████████████████ . *Id.* Based on this single

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

██████ . *Id.*

Then on August 21, PTK sent another letter, this time identifying and enclosing a

████████████████████████████████████████████

██████████████ . *Id.* ¶ 5, Ex. B. As with the ████████████████████

████████████████████████████████████████████

██████████████████████████████████ . Moradian

Decl. ¶ 11. Thus, ████████████████████████████████

████████████████ . *Id.* ¶ 11.

However, the two examples PTK provided do not have ████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████ . Moradian Decl. ¶ 12.

When HonorSociety received PTK's letters, it immediately confirmed that ██████████

████████████████████████████████████████████

████████████████ . *Id.* ¶ 13. But when it contacted Ongage as part

of its investigation, HonorSociety learned for the first time that Ongage does not provide for

████████████████████████████████████████████

██████████████ . *Id.* ¶ 14, Ex. 2. In other words, it learned then that ████████████

████████████████████████████████████████████

████████████████████ *Id.* ¶ 15.

HonorSociety investigated whether it could use ████████████████████ ████████████████████████████████████████████████████████. *Id.* ¶ 16. This approach would ████████████████████████████████████████████████ ████████████████████████████████████████. ████████████████████████████████████████████████ ████████████████████████████████████. *Id.* ¶ 16.

To HonorSociety's frustration, it determined that Ongage's ████████████████ ████████████████████████████████████████████████ ████████████████████████. *Id.* ¶ 17, Ex. 3. Once this limitation was brought to HonorSociety's attention, it immediately began to evaluate implementing workarounds. *Id.* ¶ 18. And during the 14-day period following PTK's initial August 12 letter, HonorSociety successfully identified and manually added ████████████████████████ ████████████████████████. *Id.* ¶ 18.

████████████████████████████████████ ████████████████████████████████████████ ████████████████████████████████████████ ████████████ *Id.* ¶ 19. HonorSociety demanded that Ongage ████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████. *Id.* ¶ 20.

████████████████████████████████████ ████████████████████████████████████ ████████████████████████████. *Id.* ¶ 21. ████████████████████████████, *id.* ¶ 22, Ex. 4, ████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████. *Id.* ¶ 22. ██████████████████████████

████████████████████ *Id.* ¶ 23.

On August 26, HonorSociety provided a response to PTK's August 12 and August 21 notices. Linke Decl. ¶ 6, Ex. C. That response explained in detail what HonorSociety had discovered about Ongage and its efforts to quickly implement an alternative manual solution. *Id.* It explained that, although HonorSociety had ███████████████████████████████

██████████████████████████████████████████

███████████████████████████. *Id.* HonorSociety's response ██████████████████

███████████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████. *Id.*

HonorSociety has no interest in ██████████████████████████████████████

██████████████████████████████████████████████████. Moradian Decl.

¶ 24. So despite immediately ████████████████████████████████████████████████

██████████████████████████████████████████████

████████████████████████████████████████████████████. See

Linke Decl. ¶ 6, Ex. C. To that end, HonorSociety's August 26 response proposed that ████

███████████████████████████████████████████████████

████████████████████████████████. *Id.*

Additionally, at HonorSociety's continued insistence, Ongage has been ██████████████

███████████████████████████████████████████████████.

Moradian Decl. ¶ 25, Ex. 5. Although the final public version of this new s███████████████████

██████████████████████████████████████████

███████████████████████████████████████████████

███████████████████. *Id.* ¶ 26. HonorSociety has used this new ability

since Ongage made it available and will continue to do so until and unless a final public

███████████████████████ which has the same effective result. *Id.* ¶ 26.

HonorSociety's communications throughout have been detailed and transparent including

in its subsequent letters responding to PTK on September 25 and 29 in which it continued to

respond to each of PTK's demands for information, provide PTK with updates about Ongage's

progress, and provide PTK with details about HonorSociety's ██████████████. *See*

Linke Decl. ¶ 7, Ex. D; *id.* ¶ 8, Ex. E. PTK's characterization of HonorSociety as "non-

responsive," *see* Dkt. No. 576 at 19, simply reflects its dissatisfaction with factual answers that

don't fit its narrative.

**D.    PTK's other purported examples of violations are not violations of the Agreement.**

PTK's motion identifies other examples that it claims show that HonorSociety "has not

purged its records of community-college students." Dkt. No. 576 at 11. None of these are

violations. Notably, nothing in the Agreement ████████████████████████

███████████████████████████████████████ Agreement

§ 2(a). And had HonorSociety ██████████████████████████

███████████████████████████████████████████

█████████████████████████████████████

██████████████████████. Moradian Decl. ¶ 27.

But even with respect to the ████████ provisions, PTK's examples do not show any

violations. PTK supports this accusation based on ██████████████████████

███████████████████████████████████████████ Dkt.

No. 576 at 14. Over 80% of these are ██████████████████████

███████████████████████████████████████████

████████ in Section 2 of the Agreement. *See* Moradian Decl. ¶ 28, Ex. 6.

Similarly, PTK claims that on September 29, 2025, after HonorSociety represented it had

█████████████████████████████████████████████████████████████████████

███" Dkt. No. 576 at 11. But once again, ██████████████████████████████████

██████. Moradian Decl. ¶ 29, Ex. 3. And HonorSociety's records show that this recipient—

█████████████████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████████████████

████████████████████████████. *Id.* And as soon as HonorSociety received

PTK's motion—thus ████████████████████████████████████████████

█████████████████████████████████████████████████████████████████████

████████. *Id.*

PTK's motion also references ████████████████████████████████

█████████████████████████████████████████████████████████

█████████████████████████ Dkt. No. 576 at 16. But none of the ██████ listed in Exhibit

A, which PTK prepared, *see id.* at 9, are identified as ████████████████████. There are

█████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████

████████████████. None of the ████████████████████████████████████

████████████. And PTK doesn't even claim that any ████████████████████████

██████████████████████████████████████████████

███████████████████████████████████████████████████████.

HonorSociety followed the Agreement precisely and this additional effort was neither bargained

for by PTK nor agreed to by the parties.

**E.** **The Agreement does not require HonorSociety to include** ████████████████

██████████████████████████████████████████████████████, **which**

**HonorSociety has done.**

PTK accuses HonorSociety of breaching the Agreement by not ██████████████████

██████████████████. Dkt. No. 576 at 3. The Agreement requires nothing of the sort.

The Agreement never required any disclaimers in email text. Rather, the agreed ████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████ Agreement § 2(a).

Nonetheless, once HonorSociety became aware of Ongage's missing wildcard functionality that theoretically would ████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████ . Moradian Decl. ¶ 30. This change became effective on September 24, 2025 for ████████████████ . *Id.* ¶ 30. It did not, however, apply to ██████████████████████████████████████████ ██████████████████████████

PTK claims that HonorSociety did not actually implement that change. But the support it provides for that assertion is false. For example, PTK refers to a ████████████████ ████████████████████████████████████████████ Dkt. No. 576 at 6. PTK states that, ████████████████████████████████████████████████████████ *Id.* (citing Tincher-Ladner Decl. ¶ 9). Tincher-Ladner's cited declaration testimony does not say that ████████████████████████████████████████████████████ ████████████████████████████████████████████ Dkt. No. 575-2 ¶ 9. Therefore, according to PTK, the Agreement was violated because the ████████████████████████ Dkt. No. 576 at 6.

But in fact, HonorSociety's records show that ████████████████████████████ ████████████████ . Moradian Decl. ¶ 31, Ex. 4. ████████████████████████ ██████████████████████████████████████ , long before the Agreement was

entered, agreed to HonorSociety's terms, and was issued a unique member ID in HonorSociety's system. *Id.*

The email PTK complains about . *Id.* ¶ 32. And as an (Dkt. No. 576 at 6) because those under Section 5 of the Agreement.

PTK claims that HonorSociety has "created a perfect end-around [*sic*] the [Agreement] by soliciting personal email addresses and allowing sign-up pages for unpaid members." Dkt. No. 576 at 8. There is no basis for this accusation. Section 2(a) of the Agreement provides Nonetheless, effective September 24, HonorSociety added the . Moradian Decl. ¶ 33. The resulting configuration—which is more than HonorSociety is required to do under the Agreement— . *Id.* ¶ 33.

## F.    The Agreement does not require HonorSociety to only send solicitations to students that have opted in to receive them.

PTK's motion repeatedly insinuates that HonorSociety must obtain affirmative consent from students prior to sending them solicitations. For example, PTK states that it "has not

learned of *any* community college students receiving Honor Society solicitations who have opted in for those communications." Dkt. No. 576 at 6. But the parties never agreed to that obligation and the Agreement provides no such restriction, whether for community-college students or more broadly to all recipients. Instead, the parties negotiated and agreed to ███████████



███████████████████████ There is no basis for PTK to now demand that HonorSociety take these additional steps, much less to "enforce" provisions which are not in the parties' Agreement.

**G.    HonorSociety made the ███████████████ on time consistent with the Agreement but PTK reversed ███████████ because it incurred vendor charges and decided it wanted HonorSociety to ███████████.**

PTK accuses HonorSociety of not making the ███████████ under the



settlement agreement. As detailed in HonorSociety's response to PTK's previous, still-pending motion (Dkt. No. 567) to enforce the Agreement's █████ terms, this is false. HonorSociety timely made the ███████████ using PTK's standard online donation form as of the date of the Agreement. Dkt. No. 572. PTK received the █████ but decided it wanted to force HonorSociety to make the █████ subject to additional requirements that are not provided in the Agreement so it reversed it, thus returning the █████ to HonorSociety. *Id.* As HonorSociety noted in its opposition to PTK's earlier motion, it still stands ready and willing to make that full █████ consistent with the requirements of the Agreement. Moradian Decl. ¶ 34.

**H.    PTK's motion demonstrates that it is PTK—not HonorSociety—that has violated multiple terms of the Agreement.**

PTK claims that it has fulfilled its side of the parties' bargain and accuses HonorSociety of not doing so. This is backwards. HonorSociety promptly and diligently complied with all its obligations, and immediately cured any issues that were brought to its attention. In contrast, PTK

has flouted basic obligations under the Agreement—as demonstrated by the materials it filed in support of its motion—and has done so for the purpose of harming HonorSociety and interfering with HonorSociety's ability to perform under the Agreement.

PTK's motion papers show numerous violations of the Agreement. For example, PTK agreed that "████████████████████████████████████████ ███████████████████████████████████████████████████████████ ████████████████████████████████████" Agreement § 11. Despite this commitment to ███████████████—which HonorSociety repeatedly indicated would help immediately and effectively ensure ██████████████████████ █████ in light of the now-resolved Ongage technical limitation, which is in neither party's interests—PTK has withheld information about additional ███████████████████ ███████████████████████ while continuing to widely solicit students for information it could attempt to use to show "violations."

Additionally, PTK's emails with █████████████████████████ ████████████████████████████████████████████ But PTK agreed that "██████████████████████████████." Agreement § 13. PTK's outreach was not organic evidence gathering; it was a coordinated effort to fish for isolated examples of alleged noncompliance. By contacting what appears to be a vast number of students and advisors in search of supposed violations, PTK transformed its obligation of cooperation into a campaign to create litigation material, in clear violation of the Agreement's ████████████████ ███████████ provisions.

### Argument

**A.    HonorSociety complied with its obligations under the Agreement in good faith and when PTK provided notices of alleged breaches, it timely cured them consistent with the Agreement.**

As discussed above, HonorSociety timely complied with the Agreement's ██████████ provision by adding ██████████████████████████████ to the Agreement to the

███████████████████ provided by its email-service provider, Ongage. This was effective.

PTK has not identified a single alleged ████████████████████████████

███████████████████████████████████████████████████████████

██████████████████ the parties agreed to.

And when PTK brought to HonorSociety's attention that a few ███████████

████████████████████████, HonorSociety immediately investigated it, identified

the potential issue as arising from a previously unknown technical shortcoming with Ongage's

████████████████████████████████████, and took steps to

manually address the issue as quickly and completely as possible.

The parties agreed that ████████████████████████████

██████████████████████████████. Agreement § 12. And ███████

████████████████████████████████████████████

██████████████████████████. *Id.* Under Mississippi law, material breach does not

occur when a party's violations are trivial or reflect relatively minor failures of performance.

*Watkins Dev., LLC v. Jackson Redevelopment Auth.*, 283 So. 3d 170, 175 (Miss. 2019). Rather, a

material breach requires a showing that the alleged breach "substantially defeats [the] purpose"

of the contract. *Gulf S. Cap. Corp. v. Brown*, 183 So. 2d 802, 805 (Miss. 1966). Here,

HonorSociety's good-faith efforts to cure the alleged ████████████ effectively and timely

secured the purpose of the Agreement, which, as PTK puts it, was for HonorSociety to "leave

the community college space." Dkt. No. 576 at 3.

As a result of HonorSociety's efforts, not only did it ████████████████████

████████████████████. It also—based on extensive efforts to identify all possible

████████████████████████████████████████████

████████████████████████████A. The

Agreement's ██████████ exists precisely for situations like this. The system was adjusted as soon

as the previously unknown technical limitation came to light—that's compliance in action, not

defiance.

And contrary to PTK's rhetoric, this effort by HonorSociety was extremely effective. Even assuming PTK's purported examples were all violations of the ███████████ restriction (which they are not, because they include ████████████████████████████), and even assuming PTK can demonstrate that HonorSociety ████████████████████████████████ ████████████████████████████████████ (which it cannot), any remaining ████████████████████████████ represent a vanishingly small number of supposed violations when compared to the many millions of enrolled community college students. And that's even without taking into account that, as a result of HonorSociety's demands, Ongage is implementing domain wildcarding for its ███████████ tools. Now that that functionality is in place, there is no reason to believe that any emails could be sent to any of the schools listed on Exhibit A.

Because of HonorSociety's good faith efforts to cure PTK's claimed breach and the successful result, PTK is ███████████████████████ under Section 11 of the parties' Agreement.

**B.    PTK cannot rewrite the Agreement to add new terms that were not negotiated and to which the parties did not agree.**

PTK demands that the Court order HonorSociety to do certain things that are beyond the scope of the parties' Agreement and which PTK never bargained for. For example, it asks the Court to permanently enjoin HonorSociety from ever using registration pages without the ████████████████████████████████████████. Agreement § 2(a) (████████████████████████████████ ███████████). Nothing in the Agreement applies to recipients not enrolled in community colleges and PTK identifies no legal basis upon which the Court could impose such a broad injunction imposing permanent restrictions on HonorSociety's business and marketing so unrelated to the actual Agreement. Nor is there any basis for PTK's claim that HonorSociety is required under the Agreement to handle opt out requests in any particular way. The Court should decline PTK's request that it "enforce" contractual provisions that were never agreed to and which do not exist.

- 14 -

**C.    The Agreement must be construed against PTK, as the party that drafted it.**

PTK's motion repeatedly seeks to reinterpret the Agreement's language as though HonorSociety drafted it. In reality, PTK's counsel authored nearly the entire Agreement— including Section 2 ███████████████) and Section 5 (███████████████)—and HonorSociety signed the document relying on PTK's own wording and definitions. PTK now attempts to weaponize that same language by expanding it beyond its plain terms.

Under long-settled Mississippi law, ambiguities in a contract are construed against the drafter. PTK itself invokes that rule when convenient, reminding the Court that "ambiguities must be resolved in favor of the non-drafting party." *U.S. Fid. & Guar. Co. of Miss. v. Martin*, 998 So.2d 956, 963 (Miss. 2008).

But the record is clear: PTK drafted Sections 2 and 5, including the operative terms ███████████████ HonorSociety simply agreed to the terms PTK proposed in good faith and implemented them exactly as written. If PTK now believes its own language is imprecise or overly permissive, that is a matter of its own drafting—not evidence of breach by HonorSociety. Similarly, despite PTK's demands that HonorSociety be required to handle opt out requests in a particular way, that is not part of the parties' Agreement and PTK has no right to "enforce" any such requirements against HonorSociety.

HonorSociety has honored both the letter and the spirit of the contract PTK wrote. The organization has followed the "████████" standard PTK insisted upon, applied the precise ███████████████ PTK drafted, and implemented ██████████ reflected in PTK's own Exhibit B. The Court should view PTK's attempt to reinterpret its own language as what it is: an effort to rewrite the bargain after the fact. Settlements are meant to bring closure, not perpetual redrafting. HonorSociety complied fully with the Agreement as written and as drafted by PTK.

**D.    Honor Society is entitled to fees for opposing this motion.**

The Agreement provides that ███████████████████████████ ████████████████. Agreement § 8(a). Upon entry by the Court

of an order denying PTK's requested relief, as the prevailing party, HonorSociety will submit an application for its costs and permitted attorneys' fees.

## Conclusion

HonorSociety complied with the Agreement and, in any event, timely and materially cured the isolated issues PTK identified. The Agreement cannot be rewritten after the fact to add terms PTK now wishes it had secured. The parties entered the Agreement to achieve finality—not to invite a cycle of perpetual litigation over minor or technical matters. Re-litigating every small disagreement wastes resources for both sides and consumes judicial time that should be reserved for genuine disputes. HonorSociety remains committed to the cooperative spirit and finality that this Settlement was intended to achieve. The Court should deny PTK's motion in its entirety and award HonorSociety its fees and costs as the prevailing party.

Dated: October 22, 2025

Respectfully Submitted,

s/ Derek Linke
Derek A. Newman (pro hac vice)
Derek Linke (pro hac vice)
Keith P. Scully (pro hac vice)
Gregory M. Scialabba (pro hac vice)
Newman LLP
100 Wilshire Blvd, Suite 700
Santa Monica, CA 90401
Telephone: 310-359-8200
dn@newmanlaw.com
linke@newmanlaw.com
keith@newmanlaw.com
gs@newmanlaw.com

Robert L. Gibbs, MSB No. 4816
Jamie D. Travis, MSB No. 99692
Gibbs Travis PLLC
210 East Capital Street, Suite 1801
Jackson, Mississippi 39201
Telephone: 601-487-2631
Facsimile: 601-366-4295

rgibbs@gibbstravis.com
jtravis@gibbstravis.com

Attorneys for Defendant, Counter-Claimant,
and Third-Party Plaintiff HonorSociety.org Inc.
and Defendant Honor Society Foundation, Inc.

## Certificate of Service

I hereby certify that on October 22, 2025, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system. Participants in the case are registered CM/ECF users and service will be accomplished by the CM/ECF system.

Executed the 22nd day of October 2025        s/ Derek Linke
                                              Derek Linke