IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

| | |
|---|---|
| **PHI THETA KAPPA HONOR SOCIETY,** *Plaintiff / Counter-Defendant*, v. **HONORSOCIETY.ORG, INC., ET AL.,** *Defendants/ Counter-Plaintiffs*, v. **DR. LYNN TINCHER-LADNER,** *Third-Party Defendant.* | CAUSE NO. 3:22-CV-208-CWR-RPM |

### Order

On May 19, 2025, after contentious and numbing litigation that had the parties in this Court and simultaneously in the Fifth Circuit Court of Appeals, Plaintiff Phi Theta Kappa Honor Society ("PTK") reached a confidential settlement agreement (the "Agreement") with Defendant HonorSociety.org, Inc., and Defendant Honor Society Foundation, Inc. (collectively, "Honor Society"). The Court entered an Order of Dismissal on May 20, 2025. Docket No. 563. Pursuant to that Order, the Court retains jurisdiction to enforce the Agreement. *Id*. at 1.

Before the Court are PTK's two motions to enforce the Agreement, Docket Nos. 567 and 575. The Court heard argument on these motions on November 25, 2025. Based on argument, the papers, and reasons discussed below, PTK's first motion to enforce the

settlement agreement, Docket No, 567, is granted. Plaintiff's second motion to enforce the settlement agreement, Docket No. 575, is denied.

I. **First Motion to Enforce**

Paragraph One of the Agreement states that "HonorSociety.org shall donate to PTK the sum of $_____[1], payable: (a) [approximately 45%] by June 20, 2025, and (b) [approximately 55%] by February 16, 2026." Agreement ¶ 1. Before the first amount was due, Honor Society, on June 18, 2025, made a donation in the agreed upon amount via a "Donate Now" button on PTK's website. Mr. Michael Moradian, on behalf of Honor Society, used a credit card to make this initial payment.

PTK's online donation mechanism was operated by Classy, which collects a service fee to process transactions. PTK's website made these transaction fees known. There was an option for donators to absorb the transaction costs themselves. The website clearly provided an option stating: "I'd like to cover the 5% transaction fees so that 100% of my donation goes to the Phi Theta Kappa Foundation." Tincher-Lander Decl., Docket No. 567, Ex. B ¶ 6, Fig. 1. Honor Society donated $XX through this mechanism, but it elected not to absorb the transaction fees, which were more than $35,000. PTK provided an initial webpage confirmation that Honor Society had donated the amount agreed upon, and PTK also sent a follow-up email with a donation receipt attached.

Soon thereafter, PTK refunded Honor Society's donation, maintaining that Honor Society had to pay any transaction costs. Honor Society disagreed, arguing it fulfilled its

---

[1] The parties agreed to a confidential sum. They know that amount, and the Court will not disclose the amount in this Order. Instead at times in this Order, the Court will refer to the amount as "XX" or "the amount agreed upon," or in other ways so as not to disclose the sum.

obligation to donate $XX. Moradian, on behalf of Honor Society, had clicked on the donate button, and he made a payment of $XX to PTK. He thought this action sufficiently fulfilled Honor's Society obligation under the Agreement. The Court now must decide whether Honor Society materially breached the Agreement by donating $XX, knowing full well that PTK would receive more than $35,000 less than what was contemplated by the Agreement.

The Agreement is silent as to how—that is via what method—Honor Society was to donate to PTK. In fact, the only payment-related term in the Agreement is that Honor Society is to "donate" the funds, as opposed to "pay," "transfer," or "wire." Docket No. 572 at 1. Honor Society received an initial webpage confirmation and also an email confirmation that stated, "You have donated $XX to Phi Theta Kappa Foundation." Moradian Decl., Docket No. 571 at 2; *Id.* at Ex. 1. Attached to the email confirmation was an "Official Donation Receipt." Moradian Decl., Docket No. 571 at 2; *Id.* at Ex. 2. The receipt also has an authorized signature of Amanda Gorman, Interim Executive Director of PTK, and the receipt indicates that the total amount tax deductible for Honor Society is $XX.

There is no need to engage in extensive textual and legal analysis. The word "donate" is not ambiguous, and the payment provision of the Agreement is clear. "When a court interprets a contract, the first thing that court must do is determine if the contract is ambiguous, and if it is not, then it must be enforced as written." *Cascio v. Cascio Invs. LLC*, 327 So. 3d. 59, 71 (Miss. 2021) (citations and internal quotations omitted). As such, the Court is required to enforce the Agreement as written. *Id.*

While Honor Society quips that it did donate $XX, the Court disagrees. Moradian *intentionally* chose not to click the following button: "I'd like to cover the 5% transaction fees so that 100% of my donation goes to the Phi Theta Kappa Foundation." Tincher-Lander Decl.,

3

Ex. B ¶ 6, Fig. 1. By failing to click this button, Moradian ensured that PTK would not receive the full bargained-for amount. Under the Agreement, Honor Society had to donate $XX to PTK, and Moradian's actions thwarted that requirement.

It is also nonsensical that Honor Society attempted to force PTK to absorb transaction fees totaling tens of thousands of dollars. Moradian thought that he could shortchange PTK. He was wrong.

The Court finds that Honor Society breached the Agreement. PTK's first motion to enforce, Docket No. 567, is granted. Honor Society must satisfy both payment obligations under the Agreement, and Honor Society must now pay PTK's attorneys' fees for engaging in this tomfoolery.

The original agreement contemplated two payments on dates June 20, 2025, and February 16, 2026. That means PTK would be in receipt of the full amount agreed upon by the date of the second payment. Given Honor Society's antics, PTK is still awaiting its first payment. The second payment is now almost due. To ensure that Honor Society complies with the Agreement, the Court orders as follows:

(1) By February 16, 2026, Honor Society shall donate the full amount to PTK.

(2) The Court declines to order Honor Society to use a specific payment method. Regardless of method, Honor Society must donate in such a manner that PTK, as the beneficiary, receives the full amount set forth in the Agreement.

II.    **Second Motion to Enforce**

As part of the Agreement, Honor Society agreed to not knowingly solicit or accept membership of persons that are enrolled at a community college, junior college, technical school, trade school or college that primarily offers associate-type degrees or credentials with

program length 2-years or less. Agreement ¶ 2(a). PTK provided Honor Society with a "do not solicit" list. Agreement, Exhibit A. Honor Society has been prohibited from soliciting or accepting these students since July 22, 2025. There is, however, an exception to the non-solicitation provision. Honor Society may service existing members, even if they would have otherwise been prohibited students under ¶ 2(a). *Id*. at ¶ 5.

Honor Society is also required to display screening questions so that students, who fall under the criteria in ¶ 2(a), cannot become members. Furthermore, Honor Society agreed to purge or suppress from its database any email or contact information of a prohibited member that it knows about. If any party is accused of breach, the Agreement provides for a fourteen-day opportunity to cure after a party provides written notice of a breach. *Id*. at ¶ 12.[2]

After the no-solicitation deadline of July 22, 2025, PTK found out that Honor Society was sending membership invitations to prohibited persons under the Agreement. Some of those email invitations were sent to students' personal email accounts, others to official community college emails. PTK also asserts that Honor Society did not display the "requisite screening questions" on its membership registration pages. Docket No. 575 at 2. PTK notified Honor Society of breach on August 12, 2025. Per the Agreement, Honor Society had fourteen days to materially cure the breach.

PTK alleges that Honor Society still has not cured the breach. On October 8, 2025, PTK filed its second motion to enforce the Agreement, Docket No. 575. It requests that the Court

---

[2] The provision reads in full: "If any party claims a breach of this agreement by the other party, the claimant must first provide written notice of the alleged breach to the other party and a 14-day opportunity to cure before the claimant will be entitled to enforce any right arising from the claimed breach and, if materially cured, the claimant will not have any claim." Agreement ¶ 12.

5

enjoin Honor Society from 1) employing registration pages without the Agreement's requisite screening questions; and 2) issuing any member solicitations for fourteen days, at which time Honor Society must show cause as to whether the injunction should be lifted and that it is in compliance with the Agreement. Honor Society denies any material breach, but to the extent there is, it argues that it materially cured any breach.

PTK provides a handful of examples to illustrate that Honor Society sent member solicitations to prohibited individuals. *See* Docket No. 576 at 12-17 (listing instances when Honor Society sent messages to prohibited persons under Exhibit A). Honor Society, however, explained in detail why certain prohibited members may have been solicited.[3] Docket No. 579 at 4-6 (explaining the issue with suppressing subdomains). Honor Society also articulated its attempts to materially cure any breach. *Id.* at 6-7.

The Court is satisfied with Honor Society's cure, and furthermore, PTK has not convinced the Court that any potential breaches were material under the Agreement. *See, e.g.*, *Watkins Dev., LLC v. Jackson Redevelopment Auth.*, 283 So. 3d 170, 175 (Miss. 2019) (explaining that a material breach of a contract under Mississippi law does not occur when there is a minor or trivial failure of performance); *Gulf S. Cap. Corp. v. Brown*, 183 So. 2d 802, 805 (Miss. 1966) (determining that a material breach is one that "substantially defeats [the contract's] purpose").

PTK maintains that Honor Society is not displaying the requisite screening questions, but the Agreement actually makes no such demand. *See* Agreement, Ex. B. Nowhere does the

---

[3] Honor Society also articulates why some of the purported breaches were not in fact breaches. Docket No. 579 at 7 (discussing how Honor Society is only required to suppress, as opposed to purge, records); *id.* at 7-8) (discussing how Honor Society is permitted to solicit existing members under the Agreement).

6

Agreement require Honor Society to include screening language in its email communications. The Agreement also does not require Honor Society to include the verbatim questions listed in Exhibit B. Honor Society, nonetheless, states that it adopted the Exhibit B screening questions beginning on September 24, 2025.

As evidenced by PTK's Reply and Honor Society's Surreply, Docket Nos. 582 and 584, these parties are relentless. Both PTK and Honor continue to quibble over what is and is not a breach. *Compare e.g.*, Docket No. 582 at 2-4, 8-11, *with* Docket No. 584 at 3-4, 7-10.[4] The Court does not wish to be an umpire, calling balls and strikes for these parties, in perpetuity. Yet, at least for now, the Court must.

The Court finds that Honor Society has not materially breached the Agreement as to these issues. Honor Society states that it has suppressed 395,420 potential community-college addresses. Docket No. 579 at 5. Whereas, PTK has identified roughly twenty solicitations by Honor Society that may have violated the Agreement. Docket No. 584 at 15. Even if these were material breaches, Honor Society has further demonstrated, as it becomes aware of non-compliance allegations, that it will suppress the contact information of prohibited persons. This is what is required under the Agreement—that Honor Society not knowingly solicit or accept prohibited persons and that any breach be materially cured within fourteen days. Agreement ¶¶ 2, 12. PTK's second motion to enforce, Docket No. 575, is denied, and Honor Society is entitled to attorneys' fees.

### III.     Conclusion

---

[4] PTK even has asked for the Court to appoint a qualified expert to review Honor Society's procedures. Docket No. 582 at 2. That request is denied.

Pursuant to the Agreement, the prevailing parties are entitled to attorneys' fees. Agreement ¶ 8(a). Since PTK is entitled to attorneys' fees for Docket No. 567 and Honor Society is entitled to attorneys' fees for Docket No. 575, both parties may file their request for their attorneys' fees. The Court, though, encourages the parties to come to a resolution on their own.

Lastly, there are also a few outstanding requests. Both parties have filed multiple motions for leave to file restricted documents. Docket Nos. 568, 570, 574, 577, 583, and 585. The law in this area favors public access. "Judicial records are public records. And public records, by definition, presume public access." *Binh Hoa Le v. Exeter Fin. Corp.*, 990 F.3d 410, 416 (5th Cir. 2021). "The public has a common law right to inspect and copy judicial records." *Bradley on behalf of AJW v. Ackal*, 954 F.3d 216, 224 (5th Cir. 2020) (citations and internal quotations omitted).

"The public's right of access is not absolute, however. It creates only a 'presumption' of access, which can be overcome by a strong showing of the need for confidentiality." *State Farm Fire and Cas. Co. v. Hood*, No. 2:07-CV-188-DCB-MTP, 2010 WL 3522445, at *2 (S.D. Miss. Sept. 2, 2010) (citations omitted). As such, this Court "must undertake a case-by-case, 'document-by-document,' 'line-by-line' balancing of 'the public's common law right of access against the interests favoring nondisclosure.'" *Binh Hoa Le*, 990 F.3d at 419.

The parties respectively request that specifics about the Agreement remain under seal. Neither party has persuasively articulated a need for confidentiality, except for the amount the parties agreed that Honor Society would pay to PTK. This Court has previously allowed certain documents in order to "protect legitimate business interests." *See, e.g.*, Docket No. 383 at 2. That is not the case here. These motions are denied, in part.

**SO ORDERED**, this the 2nd day of February, 2026.

s/ Carlton W. Reeves
UNITED STATES DISTRICT JUDGE
